No. 24-6654

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOHN TRENTON PENDARVIS,
*Plaintiff-Appellant*

v.

ALAN M. WILSON, Attorney General; MARK A. KEEL, Chief of SLED; HUGH E. WEATHERS, Commissioner of South Carolina Department of Agriculture; L. C. KNIGHT, Sheriff of Dorchester County Sheriff's Office; W. JEFFREY YOUNG, Chief Deputy of South Carolina Attorney General's Office; ROBERT D. COOK, Solicitor General; EMORY SMITH, JR., Deputy Solicitor General; DAVID S. JONES, Assistant Attorney General; T. STEPHEN LYNCH, Deputy Attorney General; HARLEY L. KIRKLAND, Assistant Attorney General; WESLEY VORBERGER, Assistant Attorney General; ROBERT KITTLE, Communications Director of SCAG; ADAM L. WHITSETT, General Counsel for SLED; FRANK O'NEAL, Major for SLEDs Narcotics, Alcohol and Vice services; JASON WELLS, Captain for SLEDs Narcotics division; GLENN WOOD, Lieutenant for SLED; JOHN NEALE, Agent/employee of SLED; RHETT HOLDEN, Agent/employee of SLED; ALDEN G. TERRY, General Counsel for DAG; DEREK M. UNDERWOOD, Assistant Commissioner of DAGs Consumer Protection Division; J. CLINT LEACH, Assistant Commissioner of DAGs External Affairs & Economic Development Division; AARON WOOD, Assistant Commissioner of DAGs Agency Operations Division; JOHN STOKES, Program Manager of DAGs Consumer Protection Division; VANESSA ELSALAH, Coordinator of DAGs Hemp Program; BRITTANY JEFFCOAT, Coordinator in DAGs Consumer Protection Division; EVA MOORE, Communications Director for DAG; RAY DIXSON, Captain for DCSO; FRANK THOMPSON, Lieutenant for DCSO; ROBERT KRUTAK, Deputy Sheriff for DCSO; JONATHAN CALORE, Supervisory agent/employee; CHARLIE SCRUBBS, Agent/employee with the S.C. Forestry Commission; WAYNE EADDY, agent/employee with the S.C. Forestry Commission
*Defendants-Appellees*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

# JOINT APPENDIX

Jason Scott Luck
P.O. Box 47
Bennettsville, SC 29512
843.479.6863
*Counsel for Plaintiff-Appellant*

Patrick James McLaughlin
Wukela Law Firm
P.O. Box 13057
Florence, SC 29504
843.669.5634
*Counsel for Plaintiff-Appellant*

Eugene H Matthews
Richardson Plowden and Robinson
PO Drawer 7788
Columbia, SC 29202
803-771-4400
*Counsel for Defendant-Appellees
Alan M. Wilson, W. Jeffrey Young,
Robert D. Cook, Emory Smith, Jr.,
David S. Jones, T. Stephen Lynch,
Harley L. Kirkland, Wesley
Vorberger, and Robert Kittle*

William Henry Davidson, II
Davidson Wren and DeMasters PA
1611 Devonshire Drive
2nd Floor
PO Box 8568
Columbia, SC 29202-8568
803-806-8222
*Counsel for Defendant-Appellees
Hugh E. Weathers, Alden G. Terry,
Derek M. Underwood, J. Clint
Leach, Aaron Wood, John Stokes,
Vanessa Elsalah, Brittany Jeffcoat,
and Eva Moore*

Charles Bradley Hutto
Williams and Williams
P.O. Box 1084
Orangeburg, SC 29116
803.534.5218
*Counsel for Plaintiff-Appellant*

Daniel C Plyler
Austin Tyler Reed
Frederick Newman Hanna, Jr.
Smith Robinson Holler DuBose and
Morgan, LLC
3200 Devine Street
Columbia, SC 29205
803-254-5445
*Counsel for Defendant-Appellees Mark
A. Keel, Adam L. Whitsett, Frank
O'Neal, Jason Wells, Glenn Wood, John
Neale, and Rhett Holden*

G Wade Cooper
Jeffrey Herman Lappin
Buyck Sanders and Simmons
PO Box 2424
Mt Pleasant, SC 29465
843-377-1400
*Counsel for Defendant-Appellees L.C.
Knight, Ray Dixson, Frank Thompson,
and Robert Krutak*

Michael Hart Montgomery
Montgomery Willard
PO Box 11886
Columbia, SC 29211
803-779-3500
*Counsel for Defendant-Appellees
Jonathan Calore, Charlie Scrubbs, and
Wayne Eaddy*

# TABLE OF CONTENTS

1.  Docket Report from U.S. District Court .............................................................1

2.  Complaint (09/16/22) (Entry 1) .......................................................................12

3.  Order Granting Motions for a More Definite Statement (02/03/23)
    (Entry 47) .......................................................................................................104

4.  Amended Complaint (02/24/23) (Entry 49)....................................................109

5.  Exhibit to memorandum in opposition to South Carolina Law
    Enforcement Division's Motion to Dismiss (03/23/23) (Entry 60-1).............153

6.  Exhibit to memorandum in opposition to South Carolina Attorney
    General's Motion to Dismiss (03/24/23) (Entry 61-1) ...................................193

7.  Exhibit to memorandum in opposition to South Carolina
    Department of Agriculture's Motion to Dismiss (03/24/23)
    (Entry 62-1).....................................................................................................258

8.  Exhibit to memorandum in opposition to South Carolina Forestry
    Commission's Motion to Dismiss (03/24/23) (Entry 63-1)............................288

9.  Order Granting Motions for a More Definite Statement (08/11/23)
    (Entry 73) .......................................................................................................290

10. Second Amended Complaint (08/25/23) (Entry 74)......................................304

11. Report and Recommendation (10/19/23) (Entry 92) .....................................337

12. Proposed Third Amended Complaint (11/01/23) (Entry 95-1)......................350

13. Order dismissing case (06/07/24) (Entry 103)...............................................389

14. Judgment (06/07/24) (Entry 104)....................................................................397

15. Notice of Appeal (07/03/24) (Entry 105)........................................................398

7/18/24, 3:25 PM                  CM/ECF - scd

APPEAL,CLOSED,JURY

# U.S. District Court
## District of South Carolina (Charleston)
## CIVIL DOCKET FOR CASE #: 2:22-cv-03142-BHH

Pendarvis v. Wilson et al                  Date Filed: 09/16/2022
Assigned to: Honorable Bruce Howe Hendricks      Date Terminated: 06/07/2024
Case in other court: US Court of Appeals for the Fourth Circuit,    Jury Demand: Both
           24-06654                   Nature of Suit: 550 Prisoner: Civil Rights
Cause: 42:1983pr (Other)                  Jurisdiction: Federal Question

| Date Filed | # | Docket Text |
|---|---|---|
| 09/16/2022 | 1 | COMPLAINT against Jonathan Calore, Robert D. Cook, Ray Dixson, Wayne Eaddy, Vanessa Elsalah, Rhett Holden, Brittany Jeffcoat, David S. Jones, Mark A. Keel, Harley L. Kirkland, Robert Kittle, L.C. Knight, Robert Krutak, J. Clint Leach, Joanne Lee, T. Stephen Lynch, Eva Moore, John Neale, Frank O'Neal, Charlie Scrubbs, Emory Smith, Jr., John Stokes, Alden G. Terry, Frank Thompson, Derek M. Underwood, Wesley Vorberger, Hugh E. Weathers, Jason Wells, Adam L. Whitsett, Alan M. Wilson, Aaron Wood, Glenn Wood, W. Jeffrey Young ( Filing fee $ 402 receipt number ASCDC-10703583.), filed by John Trenton Pendarvis. Service due by 12/15/2022.(apsn) (Entered: 09/16/2022) |
| 09/16/2022 | 2 | Local Rule 26.01 Answers to Interrogatories by John Trenton Pendarvis.(apsn) (Entered: 09/16/2022) |
| 09/16/2022 | 4 | Summons Issued as to All Defendants. Service due by 12/15/2022. (apsn) (Entered: 09/16/2022) |
| 09/26/2022 | 6 | WAIVER OF SERVICE by Aaron Wood, Eva Moore, J. Clint Leach, John Stokes, Vanessa Elsalah, Derek M. Underwood, Alden G. Terry, Brittany Jeffcoat, Hugh E. Weathers. Aaron Wood waiver executed on 9/16/2022, answer due 11/15/2022; Eva Moore waiver executed on 9/16/2022, answer due 11/15/2022; J. Clint Leach waiver executed on 9/16/2022, answer due 11/15/2022; John Stokes waiver executed on 9/16/2022, answer due 11/15/2022; Vanessa Elsalah waiver executed on 9/16/2022, answer due 11/15/2022; Derek M. Underwood waiver executed on 9/16/2022, answer due 11/15/2022; Alden G. Terry waiver executed on 9/16/2022, answer due 11/15/2022; Brittany Jeffcoat waiver executed on 9/16/2022, answer due 11/15/2022; Hugh E. Weathers waiver executed on 9/16/2022, answer due 11/15/2022. (Attachments: # 1 Waiver-Elsalah, # 2 Waiver-Jeffcoat, # 3 Waiver-Leach, # 4 Waiver-Moore, # 5 Waiver-Stokes, # 6 Waiver-Terry, # 7 Waiver-Underwood, # 8 Waiver-Weathers, # 9 Waiver-Wood)(Davidson, William) (Entered: 09/26/2022) |
| 09/27/2022 | 7 | NOTICE of Appearance by William Henry Davidson, II on behalf of Vanessa Elsalah, Brittany Jeffcoat, J. Clint Leach, Eva Moore, John Stokes, Alden G. Terry, Derek M. Underwood, Hugh E. Weathers, Aaron Wood (Davidson, William) (Entered: 09/27/2022) |
| 09/27/2022 | 8 | WAIVER OF SERVICE by John Trenton Pendarvis. L.C. Knight waiver executed on 9/16/2022, answer due 11/15/2022; Ray Dixson waiver executed on 9/16/2022, answer due 11/15/2022; Robert Krutak waiver executed on 9/16/2022, answer due 11/15/2022; Frank Thompson waiver executed on 9/16/2022, answer due 11/15/2022. (Attachments: # |

**JA001**

CM/ECF - scd

| | | |
|---|---|---|
| | | 1 Waivers Signed)(McLaughlin, Patrick) Modified docket text to add defendant Ray Dixson's date of service on 9/27/2022 (hcor, ). (Entered: 09/27/2022) |
| 09/27/2022 | 9 | WAIVER OF SERVICE by John Trenton Pendarvis. Robert D. Cook waiver executed on 9/16/2022, answer due 11/15/2022; David S. Jones waiver executed on 9/16/2022, answer due 11/15/2022; Harley L. Kirkland waiver executed on 9/16/2022, answer due 11/15/2022; Robert Kittle waiver executed on 9/16/2022, answer due 11/15/2022; Joanne Lee waiver executed on 9/16/2022, answer due 11/15/2022; T. Stephen Lynch waiver executed on 9/16/2022, answer due 11/15/2022; Emory Smith, Jr. waiver executed on 9/16/2022, answer due 11/15/2022; Wesley Vorberger waiver executed on 9/16/2022, answer due 11/15/2022; Alan M. Wilson waiver executed on 9/16/2022, answer due 11/15/2022; W. Jeffrey Young waiver executed on 9/16/2022, answer due 11/15/2022. (Attachments: # 1 Waivers Signed)(McLaughlin, Patrick) (Entered: 09/27/2022) |
| 10/13/2022 | 10 | WAIVER OF SERVICE by Rhett Holden. Rhett Holden waiver executed on 9/16/2022, answer due 11/15/2022. (Lindemann, Andrew) (Entered: 10/13/2022) |
| 10/13/2022 | 11 | WAIVER OF SERVICE by Mark A. Keel. Mark A. Keel waiver executed on 9/16/2022, answer due 11/15/2022. (Lindemann, Andrew) (Entered: 10/13/2022) |
| 10/13/2022 | 12 | WAIVER OF SERVICE by John Neale. John Neale waiver executed on 9/16/2022, answer due 11/15/2022. (Lindemann, Andrew) (Entered: 10/13/2022) |
| 10/13/2022 | 13 | WAIVER OF SERVICE by Frank O'Neal. Frank O'Neal waiver executed on 9/16/2022, answer due 11/15/2022. (Lindemann, Andrew) (Entered: 10/13/2022) |
| 10/13/2022 | 14 | WAIVER OF SERVICE by Jason Wells. Jason Wells waiver executed on 9/16/2022, answer due 11/15/2022. (Lindemann, Andrew) (Entered: 10/13/2022) |
| 10/13/2022 | 15 | WAIVER OF SERVICE by Adam L. Whitsett. Adam L. Whitsett waiver executed on 9/16/2022, answer due 11/15/2022. (Lindemann, Andrew) (Entered: 10/13/2022) |
| 10/13/2022 | 16 | Summons Returned Unexecuted (Restricted Access) by Glenn Wood as to Glenn Wood., WAIVER OF SERVICE by Glenn Wood. (Lindemann, Andrew) (Entered: 10/13/2022) |
| 10/13/2022 | 17 | WAIVER OF SERVICE by Glenn Wood. Glenn Wood waiver executed on 9/16/2022, answer due 11/15/2022. (Lindemann, Andrew) (Entered: 10/13/2022) |
| 10/17/2022 | 18 | NOTICE of Appearance by Andrew F Lindemann on behalf of Rhett Holden, Mark A. Keel, John Neale, Frank O'Neal, Jason Wells, Adam L. Whitsett, Glenn Wood (Lindemann, Andrew) (Entered: 10/17/2022) |
| 10/25/2022 | 19 | WAIVER OF SERVICE by Charlie Scrubbs. Charlie Scrubbs waiver executed on 9/16/2022, answer due 11/15/2022. (Montgomery, Michael) (Entered: 10/25/2022) |
| 10/25/2022 | 20 | USM 285 RETURN OF SERVICE by Jonathan Calore , WAIVER OF SERVICE by Jonathan Calore. Jonathan Calore waiver executed on 9/16/2022, answer due 11/15/2022. (Montgomery, Michael) (Entered: 10/25/2022) |
| 10/25/2022 | 21 | WAIVER OF SERVICE by Wayne Eaddy. Wayne Eaddy waiver executed on 9/16/2022, answer due 11/15/2022. (Montgomery, Michael) (Entered: 10/25/2022) |
| 11/14/2022 | 22 | MOTION to Dismiss *of the South Carolina Attorney General Defendants* by Robert D. Cook, David S. Jones, Harley L. Kirkland, Robert Kittle, Joanne Lee, T. Stephen Lynch, Emory Smith, Jr., Wesley Vorberger, Alan M. Wilson, W. Jeffrey Young. Response to Motion due by 11/28/2022. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.Motions referred to Molly H Cherry.(Matthews, Eugene) (Entered: 11/14/2022) |

7/18/24, 3:25 PM                                        CM/ECF - scd

| 11/15/2022 | 23 | MOTION to Dismiss by Vanessa Elsalah, Brittany Jeffcoat, J. Clint Leach, Eva Moore, John Stokes, Alden G. Terry, Derek M. Underwood, Hugh E. Weathers, Aaron Wood. Response to Motion due by 11/29/2022. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit, # 2 Exhibit)No proposed order.Motions referred to Molly H Cherry.(Davidson, William) (Entered: 11/15/2022) |
|---|---|---|
| 11/15/2022 | 24 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Charlie Scrubbs. Response to Motion due by 11/29/2022. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit A, # 2 Exhibit B)No proposed order.Motions referred to Molly H Cherry. (Montgomery, Michael) (Entered: 11/15/2022) |
| 11/15/2022 | 25 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Jonathan Calore. Response to Motion due by 11/29/2022. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit A, # 2 Exhibit B)No proposed order.Motions referred to Molly H Cherry. (Montgomery, Michael) (Entered: 11/15/2022) |
| 11/15/2022 | 26 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Wayne Eaddy. Response to Motion due by 11/29/2022. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit A, # 2 Exhibit B)No proposed order.Motions referred to Molly H Cherry. (Montgomery, Michael) (Entered: 11/15/2022) |
| 11/15/2022 | 27 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *or Alternatively, Motion for More Definite Statement* by Rhett Holden, Mark A. Keel, John Neale, Frank O'Neal, Jason Wells, Adam L. Whitsett, Glenn Wood. Response to Motion due by 11/29/2022. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Memo in Support)No proposed order.Motions referred to Molly H Cherry.(Lindemann, Andrew) (Entered: 11/15/2022) |
| 11/15/2022 | 28 | Local Rule 26.01 Answers to Interrogatories by Rhett Holden, Mark A. Keel, John Neale, Frank O'Neal, Jason Wells, Adam L. Whitsett, Glenn Wood.(Lindemann, Andrew) (Entered: 11/15/2022) |
| 11/16/2022 | 29 | Local Rule 26.01 Answers to Interrogatories by Vanessa Elsalah, Brittany Jeffcoat, J. Clint Leach, Eva Moore, John Stokes, Alden G. Terry, Derek M. Underwood, Hugh E. Weathers, Aaron Wood.(Davidson, William) (Entered: 11/16/2022) |
| 11/16/2022 | 30 | Local Rule 26.01 Answers to Interrogatories by Jonathan Calore, Wayne Eaddy, Charlie Scrubbs.(Montgomery, Michael) (Entered: 11/16/2022) |
| 11/28/2022 | 31 | RESPONSE in Opposition re 22 MOTION to Dismiss *of the South Carolina Attorney General Defendants* Response filed by John Trenton Pendarvis.Reply to Response to Motion due by 12/5/2022 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (McLaughlin, Patrick) (Entered: 11/28/2022) |
| 11/28/2022 | 32 | RESPONSE in Opposition re 23 MOTION to Dismiss Response filed by John Trenton Pendarvis.Reply to Response to Motion due by 12/5/2022 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (McLaughlin, Patrick) (Entered: 11/28/2022) |
| 11/28/2022 | 33 | RESPONSE in Opposition re 26 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 25 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 24 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM Response filed by John Trenton Pendarvis.Reply to Response to Motion due by 12/5/2022 Add an additional 3 |

**JA003**

CM/ECF - scd

| | | |
|---|---|---|
| | | days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (McLaughlin, Patrick) (Entered: 11/28/2022) |
| 11/28/2022 | 34 | RESPONSE in Opposition re 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *or Alternatively, Motion for More Definite Statement* Response filed by John Trenton Pendarvis.Reply to Response to Motion due by 12/5/2022 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (McLaughlin, Patrick) (Entered: 11/28/2022) |
| 11/28/2022 | 35 | First MOTION for Entry of Default by John Trenton Pendarvis. Response to Motion due by 12/12/2022. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Affidavit)No proposed order.Motions referred to Molly H Cherry.(McLaughlin, Patrick) (Entered: 11/28/2022) |
| 11/28/2022 | 36 | NOTICE of Appearance by George Buist Smythe, Jr on behalf of Ray Dixson, L.C. Knight, Robert Krutak, Frank Thompson (Smythe, George) (Entered: 11/28/2022) |
| 11/28/2022 | 37 | NOTICE of Appearance by Jeffrey Herman Lappin on behalf of Ray Dixson, L.C. Knight, Robert Krutak, Frank Thompson (Lappin, Jeffrey) (Entered: 11/28/2022) |
| 11/28/2022 | 38 | NOTICE of Appearance by Hugh Willcox Buyck on behalf of Ray Dixson, L.C. Knight, Robert Krutak, Frank Thompson (Buyck, Hugh) (Entered: 11/28/2022) |
| 11/28/2022 | 39 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *or in the alternative*, MOTION for More Definite Statement ( Response to Motion due by 12/12/2022. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. ) by Ray Dixson, L.C. Knight, Robert Krutak, Frank Thompson. (Attachments: # 1 Memo in Support)No proposed order.Motions referred to Molly H Cherry.(Smythe, George) (Entered: 11/28/2022) |
| 11/29/2022 | 40 | RESPONSE in Opposition re 39 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *or in the alternative* MOTION for More Definite Statement Response filed by John Trenton Pendarvis.Reply to Response to Motion due by 12/6/2022 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (McLaughlin, Patrick) (Entered: 11/29/2022) |
| 12/05/2022 | 41 | REPLY to Response to Motion re 22 MOTION to Dismiss *of the South Carolina Attorney General Defendants* Response filed by Robert D. Cook, David S. Jones, Harley L. Kirkland, Robert Kittle, Joanne Lee, T. Stephen Lynch, Emory Smith, Jr., Wesley Vorberger, Alan M. Wilson, W. Jeffrey Young. (Matthews, Eugene) (Entered: 12/05/2022) |
| 12/05/2022 | 42 | REPLY to Response to Motion re 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *or Alternatively, Motion for More Definite Statement* Response filed by Rhett Holden, Mark A. Keel, John Neale, Frank O'Neal, Jason Wells, Adam L. Whitsett, Glenn Wood. (Lindemann, Andrew) (Entered: 12/05/2022) |
| 12/06/2022 | 43 | MOTION for Extension of Time to File Response/Reply by Ray Dixson, L.C. Knight, Robert Krutak, Frank Thompson. Response to Motion due by 12/20/2022. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. Proposed order is being emailed to chambers with copy to opposing counsel.Motions referred to Molly H Cherry.(Lappin, Jeffrey) (Entered: 12/06/2022) |
| 12/06/2022 | 44 | **TEXT ORDER granting 43 Motion for Extension of Time. The deadline for L.C. Knight, Ray Dixson, Frank Thompson, and Robert Krutek to file a Reply is December 13, 2022.Entered at the direction of Magistrate Judge Molly H Cherry on 12/06/2022.(apsn)** (Entered: 12/06/2022) |
| 12/13/2022 | 45 | REPLY to Response to Motion re 39 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *or in the alternative* MOTION for More Definite Statement Response filed by |

**JA004**

| | | |
|---|---|---|
| | | Ray Dixson, L.C. Knight, Robert Krutak, Frank Thompson. (Smythe, George) (Entered: 12/13/2022) |
| 02/03/2023 | 46 | **ORDER denying 35 Motion for Entry of Default. Signed by Magistrate Judge Molly H Cherry on 02/03/2023.(apsn)** (Entered: 02/03/2023) |
| 02/03/2023 | 47 | **ORDER. It is ORDERED that Plaintiff shall have until February 24, 2023, to file an amended complaint. The Court instructs Plaintiff to limit the amended complaint to no more than 45 pages in length. Evidentiary matters shall not be embedded in the new complaint. If Plaintiff timely files an amended complaint, the pending motions to dismiss will become moot. Further details set forth in Order. Signed by Magistrate Judge Molly H Cherry on 02/03/2023.** (apsn) (Entered: 02/03/2023) |
| 02/24/2023 | 49 | AMENDED COMPLAINT against All Defendants, filed by John Trenton Pendarvis. Service due by 5/25/2023 (McLaughlin, Patrick) (Entered: 02/24/2023) |
| 02/24/2023 | 51 | **TEXT ORDER. The following motions are MOOT: 22 Motion to Dismiss by the SC Attorney General Defendants; 23 Motion to Dismiss by the SC Department of Agriculture Defendants; 24 Motion to Dismiss by Charlie Scrubbs; 25 Motion to Dismiss by Jonathan Calore; 26 Motion to Dismiss by Wayne Eaddy; 27 Motion to Dismiss by the SLED Defendants; and 39 Motion to Dismiss by the DCSO Defendants. On February 24, 2023, Plaintiff filed an Amended Complaint, ECF No. 49, in accordance with the Order issued on February 3, 2023. See ECF No. 47. Accordingly, the Motions to Dismiss the initial Complaint are moot. Defendants may answer or otherwise plead in response to the Amended Complaint in accordance with the Federal Rules of Civil Procedure. AND IT IS SO ORDERED.Entered at the direction of Magistrate Judge Molly H Cherry on 02/24/2023.(apsn)** (Entered: 02/24/2023) |
| 03/07/2023 | 52 | NOTICE of Appearance by Joseph Daniel Dickey, Jr on behalf of Robert D. Cook, David S. Jones, Harley L. Kirkland, Robert Kittle, T. Stephen Lynch, Emory Smith, Jr., Wesley Vorberger, Alan M. Wilson, W. Jeffrey Young (Dickey, Joseph) (Entered: 03/07/2023) |
| 03/08/2023 | 53 | NOTICE of Request for Protection from Court Appearance by Patrick James McLaughlin for 4/19/23 - 4/21/23 and 8/2/23 - 8/4/23 (McLaughlin, Patrick) (Entered: 03/08/2023) |
| 03/09/2023 | 54 | **TEXT ORDER granting 53 Request for Protection. The undersigned grants protection from court appearances to Patrick James McLaughlin for the following time periods: 4/19/23 - 4/21/23 and 8/2/23 - 8/4/23. This Order does not afford protection from any appearance required before the District Court Judge assigned to this case, although the District Judge may separately grant such protection. AND IT IS SO ORDERED. Entered at the direction of Magistrate Judge Molly H Cherry on 03/09/2023.** (apsn) (Entered: 03/09/2023) |
| 03/09/2023 | 55 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Robert D. Cook, David S. Jones, Harley L. Kirkland, Robert Kittle, T. Stephen Lynch, Emory Smith, Jr., Wesley Vorberger, Alan M. Wilson, W. Jeffrey Young. Response to Motion due by 3/23/2023. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.Motions referred to Molly H Cherry.(Matthews, Eugene) (Entered: 03/09/2023) |
| 03/10/2023 | 56 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , MOTION to Dismiss ( Response to Motion due by 3/24/2023. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. ) by Jonathan Calore, Wayne Eaddy, Charlie Scrubbs. No proposed order.Motions referred to Molly H Cherry. (Montgomery, Michael) (Entered: 03/10/2023) |

| | | |
|---|---|---|
| 03/10/2023 | 57 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Ray Dixson, L.C. Knight, Robert Krutak, Frank Thompson. Response to Motion due by 3/24/2023. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.Motions referred to Molly H Cherry.(Smythe, George) (Entered: 03/10/2023) |
| 03/10/2023 | 58 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *or Alternatively, Motion for More Definite Statement* by Rhett Holden, Mark A. Keel, John Neale, Frank O'Neal, Jason Wells, Adam L. Whitsett, Glenn Wood. Response to Motion due by 3/24/2023. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Memo in Support)No proposed order.Motions referred to Molly H Cherry.(Lindemann, Andrew) (Entered: 03/10/2023) |
| 03/10/2023 | 59 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Vanessa Elsalah, Brittany Jeffcoat, J. Clint Leach, Eva Moore, John Stokes, Alden G. Terry, Derek M. Underwood, Hugh E. Weathers, Aaron Wood. Response to Motion due by 3/24/2023. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Memo in Support)No proposed order.Motions referred to Molly H Cherry.(Davidson, William) (Entered: 03/10/2023) |
| 03/23/2023 | 60 | RESPONSE in Opposition re 55 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM Response filed by John Trenton Pendarvis.Reply to Response to Motion due by 3/30/2023 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Attachments: # 1 Exhibit Documents and Communcations referenced in Amended Complaint)(McLaughlin, Patrick) (Entered: 03/23/2023) |
| 03/24/2023 | 61 | RESPONSE in Opposition re 58 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *or Alternatively, Motion for More Definite Statement* Response filed by John Trenton Pendarvis.Reply to Response to Motion due by 3/31/2023 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Attachments: # 1 Exhibit Document & Communication Referenced in Amended Complaint)(McLaughlin, Patrick) (Entered: 03/24/2023) |
| 03/24/2023 | 62 | RESPONSE in Opposition re 59 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM Response filed by John Trenton Pendarvis.Reply to Response to Motion due by 3/31/2023 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Attachments: # 1 Exhibit Document & Communication Referenced in Amended Complaint)(McLaughlin, Patrick) (Entered: 03/24/2023) |
| 03/24/2023 | 63 | RESPONSE in Opposition re 56 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MOTION to Dismiss Response filed by John Trenton Pendarvis.Reply to Response to Motion due by 3/31/2023 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Attachments: # 1 Exhibit Document & Communication Referenced in Amended Complaint)(McLaughlin, Patrick) (Entered: 03/24/2023) |
| 03/24/2023 | 64 | RESPONSE in Opposition re 57 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM Response filed by John Trenton Pendarvis.Reply to Response to Motion due by 3/31/2023 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (McLaughlin, Patrick) (Entered: 03/24/2023) |
| 03/29/2023 | 65 | REPLY to Response to Motion re 55 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM Response filed by Robert D. Cook, David S. Jones, Harley L. Kirkland, Robert Kittle, T. Stephen Lynch, Emory Smith, Jr., Wesley Vorberger, Alan M. Wilson, W. Jeffrey Young. (Matthews, Eugene) (Entered: 03/29/2023) |

| 03/31/2023 | 66 | REPLY to Response to Motion re 59 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM Response filed by Vanessa Elsalah, Brittany Jeffcoat, J. Clint Leach, Eva Moore, John Stokes, Alden G. Terry, Derek M. Underwood, Hugh E. Weathers, Aaron Wood. (Davidson, William) (Entered: 03/31/2023) |
|---|---|---|
| 03/31/2023 | 67 | REPLY to Response to Motion re 58 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *or Alternatively, Motion for More Definite Statement* Response filed by Rhett Holden, Mark A. Keel, John Neale, Frank O'Neal, Jason Wells, Adam L. Whitsett, Glenn Wood. (Lindemann, Andrew) (Entered: 03/31/2023) |
| 07/17/2023 | 68 | Consent MOTION to Substitute Attorney by Rhett Holden, Mark A. Keel, John Neale, Frank O'Neal, Jason Wells, Adam L. Whitsett, Glenn Wood. Response to Motion due by 7/31/2023. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.Motions referred to Molly H Cherry.(Plyler, Daniel) (Entered: 07/17/2023) |
| 07/18/2023 | 69 | **TEXT ORDER granting 68 Motion to Substitute Attorney. Daniel C. Plyler is hereby substituted as counsel for Defendants Mark A. Keel, Adam L. Whitsett, Frank O'Neal, Jason Wells, Glenn Wood, John Neale, and Rhett Holden. Andrew F. Lindemann of Lindemann Law Firm P.A. is hereby relieved as counsel for those Defendants. IT IS SO ORDERED. Entered at the direction of Magistrate Judge Molly H Cherry on 7/18/2023.(dgar)** (Entered: 07/18/2023) |
| 07/19/2023 | 71 | NOTICE of Appearance by Austin Tyler Reed on behalf of Rhett Holden, Mark A. Keel, John Neale, Frank O'Neal, Jason Wells, Adam L. Whitsett, Glenn Wood (Reed, Austin) (Entered: 07/19/2023) |
| 07/19/2023 | 72 | NOTICE of Appearance by Frederick Newman Hanna, Jr on behalf of Rhett Holden, Mark A. Keel, John Neale, Frank O'Neal, Jason Wells, Adam L. Whitsett, Glenn Wood (Hanna, Frederick) (Entered: 07/19/2023) |
| 08/11/2023 | 73 | **ORDER: It is ORDERED that Defendants' Rule 12(e) Motions for a More Definite Statement (ECF Nos. 55, 56, 57, 58, 59) are GRANTED, and their alternative motions to dismiss are HELD IN ABEYANCE. Plaintiff is ORDERED to file a Second Amended Complaint within fourteen days of this Order, consistent with Federal Rules of Civil Procedure 8(a) and 12(e) and this Court's February 3 Order (ECF No. 47), and addressing the defects discussed in this Order. Signed by Magistrate Judge Molly H Cherry on 8/11/2023. (dgar)** (Entered: 08/11/2023) |
| 08/25/2023 | 74 | AMENDED COMPLAINT against John Trenton Pendarvis, filed by John Trenton Pendarvis. Service due by 11/27/2023 (McLaughlin, Patrick) (Entered: 08/25/2023) |
| 08/25/2023 | 75 | **TEXT ORDER. The following motions to dismiss are MOOT: 55 Motion to Dismiss by the SC Attorney General Defendants; 56 Motion to Dismiss by the SC Forestry Commission Defendants; 57 Motion to Dismiss by the Dorchester Defendants; 58 Motion to Dismiss by the SLED Defendants; and 59 Motion to Dismiss by the SC Department of Agriculture Defendants. On August 25, 2023, Plaintiff filed a Second Amended Complaint. ECF No. 74. Accordingly, the Motions to Dismiss the Amended Complaint are moot. Defendants may answer or otherwise plead in response to the Second Amended Complaint in accordance with the Federal Rules of Civil Procedure. Entered at the direction of Magistrate Judge Molly H Cherry on 08/25/2023. (agaz)** (Entered: 08/25/2023) |
| 08/31/2023 | 76 | MOTION to Dismiss *Plaintiff's Second Amended Complaint* by Robert D. Cook, David S. Jones, Harley L. Kirkland, Robert Kittle, T. Stephen Lynch, Emory Smith, Jr., Wesley Vorberger, Alan M. Wilson, W. Jeffrey Young. Response to Motion due by 9/14/2023. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. |

**JA007**

| | | |
|---|---|---|
| | | P. 6 or Fed. R. Crim. P. 45. Proposed order is being emailed to chambers with copy to opposing counsel.Motions referred to Molly H Cherry.(Matthews, Eugene) (Entered: 08/31/2023) |
| 09/01/2023 | 77 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *PLAINTIFF'S SECOND AMENDED Complaint (ECF 74)* by Jonathan Calore, Wayne Eaddy, Charlie Scrubbs. Response to Motion due by 9/15/2023. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.Motions referred to Molly H Cherry.(Montgomery, Michael) (Entered: 09/01/2023) |
| 09/07/2023 | 78 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Plaintiff's Second Amended Complaint* by Rhett Holden, Mark A. Keel, John Neale, Frank O'Neal, Jason Wells, Adam L. Whitsett, Glenn Wood. Response to Motion due by 9/21/2023. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.Motions referred to Molly H Cherry.(Plyler, Daniel) (Entered: 09/07/2023) |
| 09/08/2023 | 79 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Plaintiff's Second Amended Complaint in Lieu of Answer* by Ray Dixson, L.C. Knight, Robert Krutak, Frank Thompson. Response to Motion due by 9/22/2023. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.Motions referred to Molly H Cherry.(Lappin, Jeffrey) (Entered: 09/08/2023) |
| 09/08/2023 | 80 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(Second Amended Complaint)* by Vanessa Elsalah, Brittany Jeffcoat, J. Clint Leach, Eva Moore, John Stokes, Alden G. Terry, Derek M. Underwood, Hugh E. Weathers, Aaron Wood. Response to Motion due by 9/22/2023. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Memo in Support) No proposed order. Motions referred to Molly H Cherry.(Davidson, William) (Main Document 80 and Attachment 1 replaced on 9/11/2023) (agaz). (Entered: 09/08/2023) |
| 09/14/2023 | 82 | RESPONSE in Opposition re 77 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *PLAINTIFF'S SECOND AMENDED COMPLAINT (ECF 74) Plaintiff's Memorandum in Opposition of the Motion to Dismiss (Forestry Defendants)* Response filed by John Trenton Pendarvis.Reply to Response to Motion due by 9/21/2023 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Hutto, Charles) (Entered: 09/14/2023) |
| 09/14/2023 | 83 | RESPONSE in Opposition re 76 MOTION to Dismiss *Plaintiff's Second Amended Complaint Plaintiff's Memorandum in Opposition of the Motion to Dismiss (SCAG Defendants)* Response filed by John Trenton Pendarvis.Reply to Response to Motion due by 9/21/2023 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Hutto, Charles) (Entered: 09/14/2023) |
| 09/18/2023 | 84 | REPLY to Response to Motion re 76 MOTION to Dismiss *Plaintiff's Second Amended Complaint* Response filed by Robert D. Cook, David S. Jones, Harley L. Kirkland, Robert Kittle, T. Stephen Lynch, Emory Smith, Jr., Wesley Vorberger, Alan M. Wilson, W. Jeffrey Young. (Matthews, Eugene) (Entered: 09/18/2023) |
| 09/21/2023 | 85 | RESPONSE in Opposition re 80 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(Second Amended Complaint)* Response filed by John Trenton Pendarvis.Reply to Response to Motion due by 9/28/2023 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (McLaughlin, Patrick) (Entered: 09/21/2023) |

**JA008**

CM/ECF - scd

| | | |
|---|---|---|
| 09/21/2023 | 86 | RESPONSE in Opposition re 78 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Plaintiff's Second Amended Complaint* Response filed by John Trenton Pendarvis.Reply to Response to Motion due by 9/28/2023 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (McLaughlin, Patrick) (Entered: 09/21/2023) |
| 09/21/2023 | 87 | RESPONSE in Opposition re 79 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Plaintiff's Second Amended Complaint in Lieu of Answer* Response filed by John Trenton Pendarvis.Reply to Response to Motion due by 9/28/2023 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (McLaughlin, Patrick) (Entered: 09/21/2023) |
| 09/21/2023 | 88 | NOTICE of Appearance by G Wade Cooper on behalf of Ray Dixson, L.C. Knight, Robert Krutak, Frank Thompson (Cooper, G) (Entered: 09/21/2023) |
| 09/28/2023 | 89 | REPLY to Response to Motion re 78 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Plaintiff's Second Amended Complaint* Response filed by Rhett Holden, Mark A. Keel, John Neale, Frank O'Neal, Jason Wells, Adam L. Whitsett, Glenn Wood. (Plyler, Daniel) (Entered: 09/28/2023) |
| 09/28/2023 | 90 | REPLY to Response to Motion re 80 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(Second Amended Complaint)* Response filed by Vanessa Elsalah, Brittany Jeffcoat, J. Clint Leach, Eva Moore, John Stokes, Alden G. Terry, Derek M. Underwood, Hugh E. Weathers, Aaron Wood. (Davidson, William) (Entered: 09/28/2023) |
| 09/28/2023 | 91 | REPLY to Response to Motion re 79 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Plaintiff's Second Amended Complaint in Lieu of Answer* Response filed by Ray Dixson, L.C. Knight, Robert Krutak, Frank Thompson. (Smythe, George) (Entered: 09/28/2023) |
| 10/19/2023 | 92 | **REPORT AND RECOMMENDATION: It is RECOMMENDED that the Motions to Dismiss 76 , 77 , 77 , 78 , 79 be GRANTED and that this action be DISMISSED WITHOUT PREJUDICE for failure to state a claim pursuant to Rule 12(b)(6). Alternatively, the undersigned RECOMMENDS allowing Plaintiff to file a Third Amended Complaint, adhering to the standards of Twombly/Iqbal, the Federal Rules of Civil Procedure, and this Court's Orders. Objections to R&R due by 11/2/2023 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. Signed by Magistrate Judge Molly H Cherry on 10/19/2023. (agaz)** (Entered: 10/19/2023) |
| 10/31/2023 | 94 | OBJECTION to 92 Report and Recommendation by Rhett Holden, Mark A. Keel, John Neale, Frank O'Neal, Jason Wells, Adam L. Whitsett, Glenn Wood. Reply to Objections due by 11/14/2023 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Plyler, Daniel) (Entered: 10/31/2023) |
| 11/01/2023 | 95 | OBJECTION to 92 Report and Recommendation *of Magistrate Judge* by All Plaintiffs. Reply to Objections due by 11/15/2023 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Attachments: # 1 Exhibit Plaintiff's Third Amended Complaint)(Hutto, Charles) (Entered: 11/01/2023) |
| 11/02/2023 | 96 | OBJECTION to 92 Report and Recommendation by Robert D. Cook, David S. Jones, Harley L. Kirkland, Robert Kittle, T. Stephen Lynch, Emory Smith, Jr., Wesley Vorberger, Alan M. Wilson, W. Jeffrey Young. Reply to Objections due by 11/16/2023 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Matthews, Eugene) (Entered: 11/02/2023) |
| 11/02/2023 | 97 | OBJECTION to 92 Report and Recommendation by Ray Dixson, L.C. Knight, Robert Krutak, Frank Thompson. Reply to Objections due by 11/16/2023 Add an additional 3 |

**JA009**

7/18/24, 3:25 PM          CM/ECF - scd

| | | |
|---|---|---|
| | | days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Cooper, G) (Entered: 11/02/2023) |
| 11/02/2023 | 98 | OBJECTION to 92 Report and Recommendation by Vanessa Elsalah, Brittany Jeffcoat, J. Clint Leach, Eva Moore, John Stokes, Alden G. Terry, Derek M. Underwood, Hugh E. Weathers, Aaron Wood. Reply to Objections due by 11/16/2023 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Davidson, William) (Entered: 11/02/2023) |
| 11/02/2023 | 99 | OBJECTION to 92 Report and Recommendation by Jonathan Calore, Wayne Eaddy, Charlie Scrubbs. Reply to Objections due by 11/16/2023 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Montgomery, Michael) (Entered: 11/02/2023) |
| 11/14/2023 | 100 | REPLY by John Trenton Pendarvis to 94 Objection to Report and Recommendation, *and GLOBAL REPLY to 96-99*. (McLaughlin, Patrick) (Entered: 11/14/2023) |
| 11/15/2023 | 101 | REPLY by Rhett Holden, Mark A. Keel, John Neale, Frank O'Neal, Jason Wells, Adam L. Whitsett, Glenn Wood to 95 Objection to Report and Recommendation, . (Plyler, Daniel) (Entered: 11/15/2023) |
| 11/15/2023 | 102 | REPLY by Vanessa Elsalah, Brittany Jeffcoat, J. Clint Leach, Eva Moore, John Stokes, Alden G. Terry, Derek M. Underwood, Hugh E. Weathers, Aaron Wood to 95 Objection to Report and Recommendation, . (Grimes, John) (Entered: 11/15/2023) |
| 06/07/2024 | 103 | **ORDER The Court adopts the Magistrate Judge's Report (ECF No. 92) and overrules the parties' objections (ECF Nos. 94, 95, 96, 97, 98, 99). For the reasons set forth in the Report and herein, the Court grants Defendants' motions to dismiss (ECF Nos. 76, 77, 78, 79, and 80) pursuant to Rule 12(b)(6) for failure to comply with Rule 8(a), and the Court dismisses this action without prejudice. Signed by Honorable Bruce Howe Hendricks on 06/07/2024.(hcor, )** (Entered: 06/07/2024) |
| 06/07/2024 | 104 | JUDGMENT : Plaintiff, John Trenton Pendarvis, shall take nothing of Defendants, as to the complaint filed pursuant to 42 U.S.C. § 1983 and this action is dismissed without prejudice. (hcor, ) (Entered: 06/07/2024) |
| 07/03/2024 | 105 | NOTICE OF APPEAL as to 103 Order on Motion to Dismiss,,, Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,,, Order on Report and Recommendation,, by John Trenton Pendarvis. - Filing fee $ 605, receipt number ASCDC-11858316. The Docketing Statement form, Transcript Order form and CJA 24 form may be obtained from the Fourth Circuit website at www.ca4.uscourts.gov (McLaughlin, Patrick) (Entered: 07/03/2024) |
| 07/09/2024 | 106 | Transmittal Sheet for Notice of Appeal to USCA re 105 Notice of Appeal, The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (rhei, ) (Main Document 106 replaced on 7/10/2024) (rhei, ). Modified to replace with corrected transmittal sheet on 7/10/2024 (rhei, ). (Entered: 07/09/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/18/2024 15:25:04 | | |
| **PACER Login:** | JasonLuck | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:22-cv-03142-BHH |

**JA010**

CM/ECF - scd

| Billable Pages: | 10 | Cost: | 1.00 |
|---|---|---|---|
| Exempt flag: | Not Exempt | Exempt reason: | Not Exempt |

**JA011**

## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| John Trenton Pendarvis, | ) C/A No: <u>2:22−cv−03142-BHH-MHC</u> |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Alan M. Wilson, Mark A. Keel, Hugh E. | ) **COMPLAINT** |
| Weathers, L.C. Knight, W. Jeffrey Young, | ) **(42 U.S.C. § 1983 *et seq.*)** |
| Robert D. Cook, Emory Smith, Jr., Joanne Lee, | ) **(Jury Trial Demanded)** |
| David S. Jones, T. Stephen Lynch, Harley L. | ) |
| Kirkland, Wesley Vorberger, Robert Kittle, | ) |
| Adam L. Whitsett, Frank O'Neal, Jason Wells, | ) |
| Glenn Wood, John Neale, Rhett Holden, Alden | ) |
| G. Terry, Derek M. Underwood, J. Clint Leach, | ) |
| Aaron Wood, John Stokes, Vanessa Elsalah, | ) |
| Brittany Jeffcoat, Eva Moore, Ray Dixson, | ) |
| Frank Thompson, Robert Krutak, Jonathan | ) |
| Calore, Charlie Scrubbs, and Wayne Eaddy, | ) |
| | ) |
| Defendants. | ) |

Plaintiff named herein, complaining of Defendants herein, would respectfully show unto this Honorable Court and allege as follows:

## PRELIMINARY STATEMENT OF CASE & PARTIES

1. Plaintiff John Trenton Pendarvis (hereinafter sometimes referred to as "Plaintiff," "Pendarvis," or as "Trent") is a citizen and resident of Dorchester County, South Carolina. At all times relevant to this action, Trent was a 4th generation farmer, cultivating crops on family farmlands in Dorchester County, South Carolina.

2. Pendarvis brings this lawsuit alleging violations of his constitutional rights by the defendants in their individual capacities pursuant 42 U.S.C. §§1983 *et seq.*, for the defendants' conduct, individually and in concert with others, under color of state law in falsely arresting Pendarvis, maliciously prosecuting him, unlawful taking and destruction of his property, depriving him

of due process and conspiring to do the same, then further conspiring to obstruct justice and deny Pendarvis due process through intentional and willful discovery abuse in state court actions. This conduct includes willfully attempting to mislead a state court judge to authorize their seizure and destruction action, conspiring to seize and destroy the Pendarvis' property after that state court judge had refused to authorize such, then denying that the state court judge had refused to authorize the seizure and destruction of the Pendarvis' property, and the willful and intentional obstruction of justice through discovery misconduct in both the criminal and state court cases arising from these matters.

3. Pendarvis is informed and believes that all defendants holding constitutional offices, Class I law enforcement positions and/or licenses to practice law had sworn duties to preserve, protect and defend the Constitution of the United States. Those sworn duties included preserving, protecting and defending Pendarvis' Constitutional rights by refusing to act in such ways that would violate his constitutional rights and/or speaking out and stopping others from acting in such ways that would violate his constitutional rights and/or supervising those agents/employees under their supervision in such a way to prohibit them from violating his constitutional rights.

## AGENCY HEAD DEFENDANTS

4. Plaintiff is informed and believes that Alan M. Wilson (hereinafter sometimes referred to as "WILSON"), is a citizen and resident of Lexington County, South Carolina. At all times relevant to this action, WILSON was the Attorney General for the State of South Carolina and as such was the head of and supervisory agent of the South Carolina Attorney General's Office (SCAG). WILSON is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as the head of and supervisory agent/employee for

**JA013**

SCAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, WILSON acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's constitutional rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SCAG, escape liability.

5. Plaintiff is informed and believes that Mark A. Keel (hereinafter sometimes referred to as "KEEL"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, KEEL was the Chief for the South Carolina Law Enforcement Division (SLED) and as such was the head of and supervisory agent of SLED. KEEL is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as the head of and supervisory agent/employee for SLED and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, KEEL acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's constitutional rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SLED, escape liability.

6. Plaintiff is informed and believes that Hugh E. Weathers (hereinafter sometimes referred to as "Weathers"), is a citizen and resident of Orangeburg County, South Carolina. At all times relevant to this action, Weathers was the Commissioner of the South Carolina Department of Agriculture (DAG) and as such was the head of and supervisory agent of DAG. WEATHERS

3

**JA014**

is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as the head of and supervisory agent/employee for DAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, WEATHERS acted independently and/or conspired with the other defendants to KEEL acting independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's constitutional rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, DAG, escape liability.

7.  Plaintiff is informed and believes that L.C. Knight (hereinafter sometimes referred to as "KNIGHT"), is a citizen and resident of Dorchester County, South Carolina. At all times relevant to this action, KNIGHT was the Sheriff for Dorchester County Sheriff's Office (DCSO) and as such was the head of and supervisory agent of DCSO. KNIGHT is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as the head of and supervisory agent/employee for DCSO and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, KNIGHT acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, DCSO, escape liability.

**JA015**

## SCAG DEFENDANTS

8. The following individual defendants listed in this section, along with WILSON, may hereinafter collectively be referred to as "SCAG Defendants."

9. Plaintiff is informed and believes that W. Jeffrey Young (hereinafter sometimes referred to as "YOUNG"), is a citizen and resident of Sumter County, South Carolina. At all times relevant to this action, YOUNG was the Chief Deputy of the South Carolina Attorney General's Office (SCAG) and as such was a supervisory agent/employee of SCAG. YOUNG is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for SCAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, YOUNG acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SCAG, escape liability.

10. Plaintiff is informed and believes that Robert D. Cook (hereinafter sometimes referred to as "COOK"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, COOK was the Solicitor General (SG) and head of SCAG's Solicitor General Division and as such was a supervisory agent/employee of SCAG. COOK is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for SCAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, COOK acted independently

**JA016**

and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SCAG, escape liability.

11. Plaintiff is informed and believes that Emory Smith, Jr. (hereinafter sometimes referred to as "SMITH"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, SMITH was the Deputy Solicitor General (DSG) of SCAG's Solicitor General Division and as such was a supervisory agent/employee of SCAG. SMITH is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for SCAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, SMITH acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SCAG, escape liability.

12. Plaintiff is informed and believes that Joanne Lee (hereinafter sometimes referred to as "LEE"), is a citizen and resident of Lexington County, South Carolina. At all times relevant to this action, LEE was the Administrative Coordinator (AC) with SCAG's Solicitor General Division and as such was a supervisory agent/employee of SCAG. LEE is being sued in her individual capacity under 42 U.S.C. §§1983, *et seq*, for her conduct under the color of state law as a supervisory agent/employee for SCAG and her efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the

6

**JA017**

constitutional violations against the Plaintiff. Specifically, but not limited to, LEE acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that her and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and her agency, SCAG, escape liability.

13. Plaintiff is informed and believes that David S. Jones (hereinafter sometimes referred to as "JONES"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, JONES was an Assistant Attorney General (AAG) with SCAG's Solicitor General Division. JONES is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as an agent/employee for SCAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, JONES acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SCAG, escape liability.

14. Plaintiff is informed and believes that T. Stephen Lynch (hereinafter sometimes referred to as "LYNCH"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, LYNCH was the Deputy Attorney General (DAG) of SCAG's Legal Services Division and as such was a supervisory agent/employee of SCAG. LYNCH is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for SCAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the

**JA018**

constitutional violations against the Plaintiff. Specifically, but not limited to, LYNCH acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SCAG, escape liability.

15. Plaintiff is informed and believes that Harley L. Kirkland (hereinafter sometimes referred to as "KIRKLAND"), is a citizen and resident of Lexington County, South Carolina. At all times relevant to this action, KIRKLAND was an Assistant Attorney General (AAG) with SCAG's Civil Litigation Division. KIRKLAND is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as an agent/employee for SCAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, KIRKLAND acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SCAG, escape liability.

16. Plaintiff is informed and believes that Wesley Vorberger (hereinafter sometimes referred to as "VORBERGER"), is a citizen and resident of Greenville County, South Carolina. At all times relevant to this action, VORBERGER was an Assistant Attorney General (AAG) with SCAG. VORBERGER is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as an agent/employee for SCAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to,

8

**JA019**

VORBERGER acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SCAG, escape liability.

17. Plaintiff is informed and believes that Robert Kittle (hereinafter sometimes referred to as "KITTLE"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, KITTLE was the Communications Director of SCAG and as such was a supervisory agent/employee of SCAG. KITTLE is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for SCAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, KITTLE acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SCAG, escape liability.

**SLED DEFENDANTS**

18. The following individual defendants listed in this section, along with KEEL, may hereinafter collectively be referred to as "SLED Defendants."

19. Plaintiff is informed and believes that Adam L. Whitsett (hereinafter sometimes referred to as "WHITSETT"), is a citizen and resident of Lexington County, South Carolina. At all times relevant to this action, WHITSETT was General Counsel for SLED and as such was a supervisory agent/employee of SLED. WHITSETT is being sued in his individual capacity

9

**JA020**

under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for SLED and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, WHITSETT acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SLED, escape liability.

20. Plaintiff is informed and believes that Frank O'Neal (hereinafter sometimes referred to as "ONEAL"), is a citizen and resident of Lexington County, South Carolina. At all times relevant to this action, ONEAL was a Major for SLED's Narcotics, Alcohol and Vice services and as such was a supervisory agent/employee of SLED. ONEAL is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for SLED and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, ONEAL acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SLED, escape liability.

21. Plaintiff is informed and believes that Jason Wells (hereinafter sometimes referred to as "WELLS"), is a citizen and resident of Lexington County, South Carolina. At all times relevant to this action, WELLS was a Captain for SLED's Narcotics division and as such was a

supervisory agent/employee of SLED. WELLS is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for SLED and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff.  Specifically, but not limited to, WELLS acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SLED, escape liability.

22. Plaintiff is informed and believes that Glenn Wood (hereinafter sometimes referred to as "WOOD"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, WOOD was a Lieutenant for SLED and as such was a supervisory agent/employee of SLED. WOOD is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for SLED and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff.  Specifically, but not limited to, WOOD acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SLED, escape liability.

23. Plaintiff is informed and believes that John Neale (hereinafter sometimes referred to as "NEALE"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, NEALE was an agent/employee of SLED. NEALE is being sued in his individual

11

**JA022**

capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as an agent/employee for SLED and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, NEALE acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SLED, escape liability.

24. Plaintiff is informed and believes that Rhett Holden (hereinafter sometimes referred to as "HOLDEN"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, HOLDEN was an agent/employee of SLED. HOLDEN is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as an agent/employee for SLED and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, HOLDEN acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SLED, escape liability.

**DAG DEFENDANTS**

25. The following individual defendants listed in this section, along with WEATHERS, may hereinafter collectively be referred to as "DAG Defendants."

**JA023**

26. Plaintiff is informed and believes that Alden G. Terry (hereinafter sometimes referred to as "TERRY"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, TERRY was General Counsel for DAG and as such was a supervisory agent/employee of DAG. TERRY is being sued in her individual capacity under 42 U.S.C. §§1983, *et seq*, for her conduct under the color of state law as a supervisory agent/employee for DAG and her efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, TERRY acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that her and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and her agency, DAG, escape liability.

27. Plaintiff is informed and believes that Derek M. Underwood (hereinafter sometimes referred to as "UNDERWOOD"), is a citizen and resident of Newberry County, South Carolina. At all times relevant to this action, UNDERWOOD was the Assistant Commissioner of DAG's Consumer Protection Division and as such was a supervisory agent/employee of DAG. UNDERWOOD is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for DAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, UNDERWOOD acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, DAG, escape liability.

**JA024**

28. Plaintiff is informed and believes that J. Clint Leach (hereinafter sometimes referred to as "LEACH"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, LEACH was the Assistant Commissioner of DAG's External Affairs & Economic Development Division and as such was a supervisory agent/employee of DAG. LEACH is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for DAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, LEACH acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, DAG, escape liability.

29. Plaintiff is informed and believes that Aaron Wood (hereinafter sometimes referred to as "WOOD"), is a citizen and resident of McCormick County, South Carolina. At all times relevant to this action, WOOD was the Assistant Commissioner of DAG's Agency Operations Division and as such was a supervisory agent/employee of DAG. WOOD is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for DAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, WOOD acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights

**JA025**

and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, DAG, escape liability.

30. Plaintiff is informed and believes that John Stokes (hereinafter sometimes referred to as "STOKES"), is a citizen and resident of Lexington County, South Carolina. At all times relevant to this action, STOKES was a Program Manager of DAG's Consumer Protection Division and as such was a supervisory agent/employee of DAG. STOKES is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for DAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, STOKES acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, DAG, escape liability.

31. Plaintiff is informed and believes that Vanessa Elsalah (hereinafter sometimes referred to as "ELSALAH"), is a citizen and resident of Lexington County, South Carolina. At all times relevant to this action, ELSALAH was the Coordinator of DAG's Hemp Program and as such was a supervisory agent/employee of DAG. ELSALAH is being sued in her individual capacity under 42 U.S.C. §§1983, *et seq*, for her conduct under the color of state law as a supervisory agent/employee for DAG and her efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, ELSALAH acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up

15

**JA026**

the fact that her and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and her agency, DAG, escape liability.

32. Plaintiff is informed and believes that Brittany Jeffcoat (hereinafter sometimes referred to as "JEFFCOAT"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, JEFFCOAT was the Coordinator in DAG's Consumer Protection Division and as such was a supervisory agent/employee of DAG. JEFFCOAT is being sued in her individual capacity under 42 U.S.C. §§1983, *et seq*, for her conduct under the color of state law as a supervisory agent/employee for DAG and her efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, JEFFCOAT acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that her and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and her agency, DAG, escape liability.

33. Plaintiff is informed and believes that Eva Moore (hereinafter sometimes referred to as "MOORE"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, MOORE was the Communications Director for DAG and as such was a supervisory agent/employee of DAG. MOORE is being sued in her individual capacity under 42 U.S.C. §§1983, *et seq*, for her conduct under the color of state law as a supervisory agent/employee for DAG and her efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, MOORE acted independently and/or

**JA027**

conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that her and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and her agency, DAG, escape liability.

## DCSO DEFENDANTS

34. The following individual defendants listed in this section, along with KNIGHT, may hereinafter collectively be referred to as "DCSO Defendants."

35. Plaintiff is informed and believes that Ray Dixson (hereinafter sometimes referred to as "DIXSON"), is a citizen and resident of Dorchester County, South Carolina. At all times relevant to this action, DIXSON was a Captain for DCSO and as such was a supervisory agent/employee of DCSO. DIXSON is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for DCSO and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, DIXSON acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, DCSO, escape liability.

36. Plaintiff is informed and believes that Frank Thompson (hereinafter sometimes referred to as "THOMPSON"), is a citizen and resident of Berkeley County, South Carolina. At all times relevant to this action, THOMPSON was a Lieutenant for DCSO and as such was a supervisory agent/employee of DCSO. THOMPSON is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory

agent/employee for DCSO and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, THOMPSON acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, DCSO, escape liability.

37. Plaintiff is informed and believes that Robert Krutak (hereinafter sometimes referred to as "KRUTAK"), is a citizen and resident of Berkeley County, South Carolina. At all times relevant to this action, KRUTAK was a Deputy Sheriff for DCSO. KRUTAK is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as an agent/employee for DCSO and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, KRUTAK acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, DCSO, escape liability.

**SC FORESTRY DEFENDANTS**

38. Plaintiff is informed and believes that Jonathan Calore (hereinafter sometimes referred to as "CALORE"), is a citizen and resident of Lexington County, South Carolina. At all times relevant to this action, CALORE was a supervisory agent/employee with the S.C. Forestry Commission (hereinafter "FORESTRY"), serving as the "Assistant LE Chief." CALORE is

**JA029**

being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for FORESTRY and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, CALORE acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, FORESTRY, escape liability.

39. Plaintiff is informed and believes that Charlie Scrubbs (hereinafter sometimes referred to as "Scrubbs"), is a citizen and resident of Charleston County, South Carolina. At all times relevant to this action, Scrubbs was an agent/employee with the S.C. Forestry Commission (hereinafter "FORESTRY"). SCRUBBS is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as an agent/employee for FORESTRY and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, SCRUBBS acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, FORESTRY, escape liability.

40. Plaintiff is informed and believes that Wayne Eaddy (hereinafter sometimes referred to as "EADDY"), is a citizen and resident of Clarendon County, South Carolina. At all times relevant to this action, Scrubbs was an agent/employee with the S.C. Forestry Commission (hereinafter "FORESTRY"). EADDY is being sued in his individual capacity under 42 U.S.C.

19

**JA030**

§§1983, *et seq*, for his conduct under the color of state law as an agent/employee for FORESTRY and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, EADDY acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, FORESTRY, escape liability.

## NATURE OF ACTION

41. This is an action for compensatory damages, punitive damages, attorneys' fees, costs and all other available damages proximately caused by the Defendants' deliberate indifference of and violation of the Plaintiff's established constitutional rights.

42. Plaintiff's claims are brought pursuant to 42 U.S.C.A. §§1983, *et seq*., and the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and under the common law, the statutory law, and the Constitution of the State of South Carolina, against the Defendants. The Plaintiff's claims would specifically include, but not be limited to, claims under 42 U.S.C. §1983, §1985, §1986 & §1988(b).

43. During the time in question, the Plaintiff's Constitutional rights were well established and well known to the Defendants, including and not limited to, the Plaintiff's right to bodily integrity, right to be free from unreasonable searches and seizures, right to Due Process, and all other constitutional established and recognized as arising from the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

44. During the time in question , the Defendants had actual and/or constructive knowledge that their conduct posed an unreasonable risk of Constitutional injury to the Plaintiff and their responses with that knowledge were subjectively and objectively unreasonable regarding the offense(s) as alleged herein; and there is a causal link between their actions and the Constitutional injuries suffered by the Plaintiff.

## JURISDICTION/VENUE

45. Subject matter jurisdiction is conferred upon the Court by 28 U.S.C.A. §§ 1331, 1367 (a), (b), (c), (d), and 1343, and 28 U.S.C.A. §§ 2201 and 2202.

46. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), (2) & (3).

## FACTUAL HISTORY AND TIMELINE
### The Hemp Farming Act and legalization in South Carolina

47. In late December 2018, the United States Congress passed a Federal Farm Bill that legalized the production of hemp, which is generally legally defined as the cannabis sativa L plant with THC levels below federally defined levels.

48. Following the passage of the Federal Farm Bill legalizing the production of hemp, the South Carolina General Assembly followed suit, with Gov. Henry McMaster signing the South Carolina Hemp Farming Act into law on or about March 28, 2019.

49. South Carolina's Hemp Farming Act ("the Act") is contained within S.C. Code §46-55-10 *et seq.* In passing the Act, the South Carolina General Assembly specifically found that "hemp has the potential to provide a cash crop for South Carolina's farmers with broad commercial application that will enhance the economic diversity and stability of our state's agricultural industry." *See* 2014 Act No.216, Section 1, findings.

50. In passing the Act, the South Carolina General Assembly provided statutory safeguards to protect South Carolina farmers. Specifically, the General Assembly codified these safeguards

21

**JA032**

via S.C. Code §46-55-40, Corrective Action Plans. That statute provides that South Carolina farmers "shall" be allowed "to conduct a corrective action plan if the commissioner, or his designee, determines that the licensee negligently violated" the Act.

51. Included in S.C. Code §46-55-40, are the following specific examples of violations for which a South Carolina farmer licensed under the Act shall be allowed to conduct a corrective action plan:

      a.  Failing to provide a legal description and global positioning coordinates of the land on which the licensee cultivates hemp;

      b.  Failing to obtain a proper license or other required authorization from the commissioner; or,

      c.  Producing Cannabis sativa L with more than the federally defined THC level for hemp.

*See* S.C. Code §46-55-40(A)(1)(a)(b)and(c).

52. The South Carolina General Assembly further safeguarded South Carolina farmers by specifically directing that the corrective plans described in S.C. Code §46-55-40 were "**the sole remedy for negligent violations of this chapter**, regulations promulgated pursuant to this chapter, or the state plan. A licensee who violates a provision of this chapter, regulations promulgated pursuant to this chapter, or the state plan **shall not be subject to any criminal or civil enforcement action**." S.C. Code §46-55-40(A)(3), emphasis added.

53. The South Carolina General Assembly directed WEATHERS and his agency to submit a "state plan" to the United States Department of Agriculture (USDA) within sixty (60) days of the effective date of the Act that proposed to regulate hemp production and was required to include "a procedure to comply with the enforcement outlined in this act." *See* 2019 Act No.14, Section 2(A)(4).

**JA033**

54. Pendarvis is informed and believes WEATHERS did **not** timely submit a "state plan" as required by the Act, no "state plan" was submitted by WEATHERS prior to the administrative and enforcement actions taken against him as detailed in this complaint, leading to state plan for South Carolina not being approved by USDA until March 31, 2020:



55. Both WILSON and KEEL and their agents/employees and agencies have been vehemently and publicly opposed to cannabis legalization efforts in South Carolina. This opposition is exemplified by a joint press conference featuring WILSON and KEEL in January 2019 at which WILSON referred to cannabis as "the most dangerous drug":



Attorney General Alan Wilson, State Law Enforcement Chief Mark Keel and the South Carolina Medical Association came out in opposition to legislation to legalize medical marijuana. Andrew Brown/Staff

BY ANDREW BROWN ABROWN@POSTANDCOURIER.COM

23

**JA034**

and through a June 14, 2021, letter KEEL sent to leadership of South Carolina's Behavioral Health Services Association (BHSA) and Department of Alcohol and Other Drug Abuse Services (DAODAS) voicing his "disappointment" they were not opposing legalization of medical marijuana in South Carolina by stating:

> I have spent 43 years in law enforcement standing up for those who can't stand for themselves. This is why I have consistently voiced my concerns about legalizing marijuana in any form. Of course, I am compassionate to those who are suffering from

56. Pendarvis is informed and believes that ONEAL is a frequent speaker on behalf of KEEL and SLED at various public and private functions with a presenter bio that states he "regularly speaks and educates civic and community groups on the dangers of marijuana legalization and the collateral damage it causes our country."

### The Plaintiff and the Hemp Farming Program

57. Subsequent to the passage of the Act and its signing into law, the DAG Defendants actively promoted their Hemp Farming Program, going so far as to publish a logo for the South Carolina program:



58. WEATHERS publicly pushed the Hemp Farming Program, stating in a press release on June 28, 2019, that "More hemp farmers means more opportunities to learn about hemp's long-term potential for South Carolina agriculture. Agribusiness is South Carolina's largest industry, and we welcome the chance to push it in new directions."

59. TERRY and ENSALAH both solicit speaking engagements as "speakers" listed on U.S. Hemp expos website.

**JA035**

60. With signing into law of the Act, and through promotion by DAG Defendants, South Carolina went from approximately 256 acres of hemp being cultivated in 2018 to approximately 3,300 acres in 2019, with MOORE publicly stating on January 31, 2020 that the program had "grown from 20 farmers in 2018 to 114 permitted farmers and 43 processors at the end of the 2019 season" and later announcing on April 2, 2020 that "some 350 people applied to farm hemp in South Carolina this year."

61. Pendarvis is a fourth-generation farmer, having begun farming on family farmlands in 1997, farming over 2000 acres, primarily corn, cotton, peanuts and soybeans.

62. Pendarvis bought in to the DAG Defendants' promotion of hemp as a potential cash crop and applied to participate in the DAG Defendants hemp farming program, paying a $500 Dollar application fee and being issued License #1992 on or about May 1, 2019:



63. To obtain the license described above, Pendarvis was required to enter in to a "Hemp Farming Program Participation Agreement" (hereinafter "Agreement").

64. Any South Carolina farmer wishing to grow hemp had to enter in to the Agreement in order to be issued a hemp grower license.

65. Section VIII of the Agreement, titled "Plant Destruction," stated:

25

**JA036**

a. Permitted Grower acknowledges and consents to the forfeiture or destruction, without compensation, of hemp material:

   i. Found to have a measured delta-9 THC content of more than 0.3 percent on a dry weight basis;

   ii. Bearing off-label pesticide resideues (or believed by [DAG] to have had pesticides applied off-label), regardless of the source or cause of contamination; and

   iii. Growing in an area that is not licensed by [DAG].

b. Notwithstanding the foregoing, Permitted Grower or processors may retain any hemp that tests between three-tenths of one percent to one percent delta-9 tetrahydrocannabinol on a dry weight basis and recondition the hemp product by grinding it with the stem and stalk. Hemp product must not exceed three-tenths of one percent delta-9 tetrahydrocannabinol.

66. The language of Section VIII quoted verbatim above is directly contradicted by the plain language of the statute, which specifically directs that for two of the three listed conditions for destruction from VIII, the corrective action plans as required under S.C. Code §46-55-40 **are the sole remedy**.

67. Notably, there is no language in the Agreement outlining the procedure by which DAG will enact enforcement, as was required in the Act. *See* 2019 Act No.14, Sec.2(A)(4). Specifically, despite the WEATHERS having sworn a duty to uphold and protect the Constitution of the United States and the State of South Carolina, nowhere in the Agreement is there any language explaining how a finding by DAG that a violation of the Act has occurred can be challenged, despite South Carolina's Constitution specifically enshrining that due process right:

No person shall be finally bound by a judicial or quasi-judicial decision of an administrative agency affecting private rights **except on due notice and an opportunity to be heard**; **nor shall he be subject to the same person for both prosecution and adjudication**; nor shall he be deprived of liberty or property unless by a mode of procedure described by the General Assembly, and **he shall have in all such instances the right to judicial review**.

South Carolina Constitution, Art.I, Sec.22, emphasis added.

26

**JA037**

68. Pendarvis is informed and believes that the SC General Assembly's requirements that certain violations of the Act be afforded corrective action plans, is based on the inevitable variable conditions encountered with farming, an occupation subject to unforeseen, unpredictable, and uncontrollable environmental and market conditions.

**Plaintiff's Hemp Crops**

69. Unfortunately, upon receiving his license, Pendarvis was confronted with the fickle nature of farming. The very month Pendarvis was awarded his license, South Carolina publicly acknowledged his farmlands were facing drought conditions:



70. These drought conditions were so extreme, that they ultimately led to the USDA designating six (6) South Carolina counties as natural disaster areas, with WEATHERS publicly acknowledging on October 31, 2019 the "flash drought" that had struck many South Carolina farmers and warning "we may be seeing its effects for a long time."

71. Despite the tough hand Mother Nature dealt farmers that year, Pendarvis was able to successfully cultivate a healthy hemp crop:

**JA038**



**Allegations of Plaintiff Violating Hemp Agreement**

72. On July 30, 2019, ENSALAH visited Pendarvis' Dorchester County property for a farm visit pursuant to Pendarvis' participation in the Hemp Farming Program. While ENSALAH was on site, it was discovered that Pendarvis' had planted his Dorchester County crop on coordinates other than those that had been submitted to DAG. Pendarvis is informed and believes he sent the correct coordinates via a text message during or immediately following ENSALAH's visit.

73. On July 31, 2019, at 2:52 p.m., UNDERWOOD sent Pendarvis an email, courtesy copying TERRY, titled "Narrative of Hemp Growing," marking the importance as "high."



**JA039**

74. Pendarvis responded back that afternoon, with the following email:



75. Apparently, that same day, UNDERWOOD spoke with Pendarvis on the phone and told

Pendarvis that he would need to submit an official amendment form for review.

76. The next day, Thursday, August 1, 2019, Pendarvis submitted a "Hemp Farming Program

Acreage Amendment Application":

77. Via email dated that same Thursday, August 1, 2019, at 11:58 a.m., and which was courtesy

copied to ELSALAH and TERRY, UNDERWOOD told Pendarvis his case would be reviewed

"with our Attorney to determine if a willful violation of the grower's agreement is present"

and **"<u>once we make a final decision, we will be in touch</u>":**

**JA040**



From: Underwood, Derek <dunder@scda.sc.gov>
Sent: Thursday, August 1, 2019 11:58 AM
To: Trent Pendarvis
Cc: Dalton, Alden; Elsalah, Vanessa; Hemp, SCDA
Subject: RE: [External] Fwd: Hemp Acreage Amendment
Attachments: Scanned from a Xerox multifunction device.pdf

Follow Up Flag: Follow up
Flag Status: Flagged

Trent,

Thanks for your amendment submission.

I will be reviewing your case with our Attorney to determine if a willful violation of the grower's agreement is present.

We have your narrative.

Once we make a final decision, we will be in touch.

Sincerely,

Derek M. Underwood
*Assistant Commissioner, Consumer Protection Division*

78. Four days later, UNDERWOOD sent the following August 5th email to WELLS, courtesy copying ELSALAH, TERRY and ONEAL, at 11:51 a.m.:

From: Underwood, Derek <dunder@scda.sc.gov>
Sent: Monday, August 5, 2019 11:51 AM
To: jwells@sled.sc.gov
Cc: Elsalah, Vanessa; Dalton, Alden; foneal@sled.sc.gov
Subject: Trent Pendarvis Violation of SCDA HEMP Agreement email 1 of 3
Attachments: Scanned from a Xerox multifunction device.pdf

Lt. Wells,

Please see attached amendment for acreage that *is currently* growing Hemp.

The participant of the SCDA Hemp program has willfully grown hemp on non-reported or non-listed acreage for 6-8 weeks.

The plants are mature and over 5 FT. tall.

This amendment was filed AFTER he was discovered to be growing on non-permitted land.

I will send all correspondences with Mr. Trent Pendarvis following this email.

V/R,

Derek M. Underwood
*Assistant Commissioner, Consumer Protection Division*

79. That first August 5th email was immediately followed by a 12:30 p.m. email from UNDERWOOD, sent to WELLS and ONEAL, courtesy copied to TERRY and ELSALAH, with the subject heading "Memo to Enact Enforcement," importance labeled "high," and containing the attachment "Memo to SLED 8-5-2019 Pendarvis.pdf":

30

**JA041**

| From: | Underwood, Derek <dunder@scda.sc.gov> |
|---|---|
| Sent: | Monday, August 5, 2019 12:30 PM |
| To: | jwells@sled.sc.gov; foneal@sled.sc.gov |
| Cc: | Dalton, Alden; Elsalah, Vanessa |
| Subject: | Memo to enact enforcement |
| Attachments: | Memo to SLED 8-5-2019 Pendarvis.pdf |
| Importance: | High |

Attached.

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

80. The memo attached to the August 5, 2019, email sent at 12:30 p.m. was:



81. Apparently, the August 5ᵗʰ memo went through a revision process, leading to another email being sent by UNDERWOOD on August 6, 2019, at 9:45 a.m., to WELLS and courtesy copied to ONEAL, TERRY and WEATHERS. This email is titled "Letter to enact enforcement Pendarvis Hemp," was designated "high" importance and had attached "SCDA SLED Memo 8-6-2019 Pendarvis.pdf," wherein UNDERWOOD informed WELLS that he was attaching "the memo regarding willful actions by Mr. Trent Pendarvis (permit #1992)":

From:        Underwood, Derek <dunder@scda.sc.gov>
Sent:        Tuesday, August 6, 2019 9:45 AM
To:          jwells@sled.sc.gov
Cc:          foneal@sled.sc.gov; Dalton, Alden; Weathers, Hugh; Elsalah, Vanessa
Subject:     Letter to enact enforcement Pendarvis Hemp
Attachments: SCDA SLED Memo 8-6-2019 Pendarvis.pdf

Importance:  High

Lt. Wells,

Attached is the memo regarding willful actions by Mr. Trent Pendarvis (permit #1992).

V/R,

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

82. The memo attached to the August 6, 2019, email described above appears to be dated August
    5th (despite being labeled as 8-6-2019 in the attachment line of the email) and has been edited
    to include slightly different language and more information regarding Pendarvis' alleged
    "willful violation" of the Hemp Farming Program:



83. Within two (2) days, UNDERWOOD was asking the SLED Defendants for an update, sending this August 8, 2019, 11:48 a.m. email, importance designated "high," to WELLS and courtesy copying ONEAL, TERRY, WEATHERS and ELSALAH:



84. ONEAL responded, replying that "we are having difficulty in what to address **with so many gray areas concerning enforcement**…We are having to get AG opinions along the way and **the last thing we want to do is an action that will be perceived in a negative light by the media or general assembly**":

From: Oneal, Frank <foneal@sled.sc.gov>
Sent: Thursday, August 8, 2019 1:00 PM
To: Underwood, Derek <dunder@scda.sc.gov>; Wells, Jason <jwells@sled.sc.gov>
Cc: Terry, Alden <aterry@scda.sc.gov>; Weathers, Hugh <hweathe@scda.sc.gov>; Elsalah, Vanessa <velsalah@scda.sc.gov>
Subject: RE: [EXTERNAL] Re: Letter to enact enforcement Pendarvis Hemp
Not yet- we are having difficulty in what to address with so many gray areas concerning enforcement. Unlike Kentucky, we don't really have comprehensive regulation that addresses all of the possible concerns. We are having to get AG opinions along the way and the last thing we want to do is an action that will be perceived in a negative light by the media or general assembly.

85. Completely absent from the August 8th email above are any concerns about the due process rights of Pendarvis. The SLED Defendants concerns are that they may be perceived "**in a negative light by the media or the general assembly**," despite the specific constitutional rights implicated in any enforcement action and the SLED Defendants having taken oaths to protect, preserve and defend those constitutional rights.

**JA044**

86. UNDERWOOD replied all to that email from ONEAL, letting the SLED Defendants know

DAG would not approve Pendarvis' amendment application so there was no "deadline" to act

and to let him know "what we need to do to help."

> On **Aug 8, 2019, at 4:43 PM, Underwood, Derek <dunder@scda.sc.gov> wrote:**
> Thanks for update.
> We will not issue an amendment for acreage with mature plants or any new acreage where hemp is
> currently growing so there is no quote "deadline" to act.
> Let me know what we need to do to help.
> Derek

**August 8, 2019 SCAG Opinion**

87. The SCAG opinion ONEAL's August 8ᵗʰ email referenced, was requested on behalf of the

SLED Defendants by WHITSETT via an August 6, 2019, email to JONES, seeking **"specific**

**guidance…on the proper procedure in this matter"**:

> **From:** Whitsett, Adam [mailto:awhitsett@sled.sc.gov]
> **Sent:** Tuesday, August 06, 2019 5:29 PM
> **To:** David Jones
> **Subject:** Opinion Request
>
> David:
>
> As discussed, SLED received the attached request from the South Carolina Department of Agriculture
> documenting a willful violation of the South Carolina's Hemp Farming Act.  As you can see, this
> request is for SLED to "enact enforcement" of this situation.  In addition, S.C. Code Ann. § 46-55-
> 20(A)(1) provides that it is unlawful for a person to cultivate, handle, or process hemp in this State
> without a hemp license issued by the department".  However, there is no specific direction as to the
> process or procedure to have the illegally grown hemp, which is contraband per se, seized or
> destroyed.  Accordingly, SLED would greatly appreciate any specific guidance you can provide on the
> proper procedure in this matter.
>
> I will touch base tomorrow to further discuss.
>
> Regards,
> Adam

88. That email was forwarded by JONES to COOK the next morning:

**JA045**

| | |
|---|---|
| **From:** | David Jones |
| **To:** | Bob Cook |
| **Subject:** | FW: Opinion Request |
| **Date:** | Wednesday, August 7, 2019 8:30:29 AM |
| **Attachments:** | new doc 2019-08-05 13.25.10.pdf |

Adam's request.

David S. Jones
Assistant Attorney General
Office of the Attorney General

…with Cook promptly replying about how the Act is an "ultra murky" statute, that gives "no direction whatever to law enforcement":

| | |
|---|---|
| **From:** | Bob Cook |
| **To:** | David Jones |
| **Subject:** | RE: Opinion Request |
| **Date:** | Wednesday, August 7, 2019 8:36:00 AM |

I think a compare and contrast with section -2710 is in order. That provision directs law enforcement to seize and take to magistrate. Another example of the "ultra murky" statute. It gives no direction whatever to law enforcement.

Robert D. Cook
Solicitor General
S.C. Attorney General's Office

89. JONES later provides COOK with draft language via August 7, 2019, 5:10 p.m. email, noting that "all the constitutional stuff is ripped from a 2017 opinion I wrote on seizures" and that "**if we want to talk about due process, there it is**":

| | |
|---|---|
| **From:** | David Jones |
| **To:** | Bob Cook |
| **Subject:** | Draft op: Whitsett: Illegal hemp seizure |
| **Date:** | Wednesday, August 7, 2019 5:10:32 PM |
| **Attachments:** | Whitsett. Illegal Hemp Seizure (02061200xD2C78).DOCX |

All the constitutional stuff is ripped from a 2017 opinion I wrote on seizures. Anything that is superfluous or redundant I'm happy to remove. But if we want to talk about due process, there it is.

David S. Jones
Assistant Attorney General

90. On August 8, 2019, after getting COOK's approval that it was "good to go," JONES forwards the final draft to LEE, directing her to tag it as "Constitutional law" with the description "**An**

**opinion on the appropriate procedure to pursue enforcement of the Hemp Farming Act with respect to hemp grown in violation of the Act**":

| | |
|---|---|
| From: | David Jones |
| To: | Joanne Lee |
| Subject: | FW: Draft op: Whitsett: Illegal hemp seizure |
| Date: | Thursday, August 8, 2019 9:51:24 AM |
| Attachments: | Whitsett. Illegal Hemp Seizure (02061200xD2C78).DOCX |

Joanne, please prepare and print the attached op for signature.

Description: "An opinion on the appropriate procedure to pursue enforcement of the Hemp Farming Act with respect to hemp grown in violation of the Act."

Tags: Constitutional law

David S. Jones
Assistant Attorney General

91. The opinion finalized by JONES and COOK on behalf of SCAG on August 8, 2019 (hereinafter "August 8th Op.") was addressed to WHITSETT and specifically provided the "specific guidance" WHITSETT had requested "on the proper procedure" when enforcing a "willful violation" of the hemp farming program.

92. The specific guidance on proper procedure contained within the August 8th Op. was specifically, but not limited to:

**Law/Analysis:**

It is the opinion of this Office that in the absence of legislative direction, SLED should seek judicial authorization for the seizure of illegally-grown hemp in order to ensure that the grower receives due process consistent with the Constitutions of the United States and the State of South Carolina. *See, e.g., State v. 192 Coin-Operated Video Game Machines*, 338 S.C. 176, 525 S.E.2d 872 (2000). We advise that this authorization be sought with notice to the grower and an opportunity for them to be heard in a hearing in an abundance of caution. *See id.*

**Seizures Under the South Carolina Hemp Farming Act**

The question presented in your letter does raise a novel issue, however. Numerous prior opinions of this Office have addressed statutory schemes wherein the General Assembly expressly set out procedures for the seizures of contraband. *See, e.g., Op. S.C. Att'y Gen.*, 2017 WL 5053042 (October 24, 2017). However, no such guidance or instructions appear in the Hemp Farming Act. Our Office has concluded that hemp grown in violation of the Hemp Farming Act is contraband *per se* under the Act, *Op. S.C. Att'y Gen.*, 2019 WL 3243864 (July 10, 2019), but the Act is silent on the procedures the State must use to enforce that law. *See* S.C. Code Ann. § 46-55-10 et seq. (Supp. 2019).

**JA047**

> However, the Hemp Farming Act contains no comparable statutory directions for the seizure of contraband product. *See* S.C. Code Ann. § 46-55-10 et seq. (Supp. 2019). Of course, due process would still require an "opportunity for an innocent owner to come forward and show, if he can, why the res should not be forfeited and disposed of as provided for by law." *State v. 192 Coin–Operated Video Game Machines*, 338 S.C. 176, 197, 525 S.E.2d 872, 883 (2000) (citing *Moore v. Timmerman*, 276 S.C. 104, 109, 276 S.E.2d 290, 293 (1981)). Given the absence of any legislative direction in the Hemp Farming Act, we advise that the prudent course of action would be to provide that opportunity in a hearing. We hope that this also will lead to judicial clarification of some of the many questions created as a result of the Hemp Farming Act.

> In conclusion, it is the opinion of this Office that in the absence of legislative direction, SLED should seek judicial authorization for the seizure of illegally-grown hemp in order to ensure that the grower receives due process consistent with the Constitutions of the United States and the State of South Carolina. *See, e.g., State v. 192 Coin-Operated Video Game Machines*, 338 S.C. 176, 525 S.E.2d 872 (2000). We advise that this authorization be sought with notice to the grower and an opportunity for them to be heard in a hearing in an abundance of caution. *See id.* Our opinion here has been expedited, and it should be read in the context of that opinion

> Our Office acknowledged recently that "the Hemp Farming Act of 2019 was not drafted with the greatest of clarity and needs legislative or judicial clarification." *Op. S.C. Att'y Gen.*, 2019 WL 3243864 (July 10, 2019). In this instance you have identified what appears to be a gap, in that the Act requires that a willful violation of state law in connection with cultivated hemp must be reported to SLED, but the Act does not specify what procedures SLED must follow to enforce the law in the situation you describe in your letter. S.C. Code Ann. § 46-55-40(B) (Supp. 2019). This is yet another example of the need for legislative or judicial direction regarding the implementation of South Carolina's industrial hemp program. Therefore our Office advises that SLED proceed with the utmost care to fully ensure that the grower and all interested parties receive due process in any enforcement action.

93. In addition to the "specific guidance" on "proper procedure" for enforcing willful violations of the hemp farming program above, the August 8th Op. concluded by pointing out the DAG Defendants need to promulgate regulations to address some of the numerous issues that had been raised:

> Moreover, we emphasize again the importance of the General Assembly revisiting the Act to address the numerous issues recognized in this, as well as our July 10 opinion. In addition, as the agency designated by the General Assembly to regulate hemp, the Department of Agriculture, working closely with SLED, may wish to promulgate regulations to address the omissions identified in these opinions.

94. Pendarvis is informed and believes that the regulations suggested by SCAG should have been covered within the "state plan" WEATHERS had been tasked by the General Assembly to promulgate and submit to the USDA within sixty (60) days of the Act's effective date (as described above), which WEATHERS and the DAG Defendants failed to do. This is evidenced by the "state plan" which was ultimately submitted and approved **after** the actions taken by the Defendants to arrest and destroy Pendarvis' hemp crop containing an entire section on "Enforcement," detailing "Adjudicatory Proceedings" in which "the Commissioner shall notify the Permittee of the alleged violation as well as an opportunity to respond therein, by certified mail, prior to any scheduled hearing date" (*see* State Plan, Sec.17(1(b)); "no penalty shall be assessed, nor may any permit be suspended or revoked by the Commissioner prior to the holding on an adjudicatory hearing" (Sec.17(1(d)); requiring the adjudicatory hearing to be conducted pursuant to the S.C. Administrative Procedures Act (Sec.17(1(e)); and providing an appeals process (Sec.17(2)).

**Pre-litigation Known Conduct After the August 8th Op.  leading to Arrest & Destruction**

95. On August 28, 2019, while NEALE was at Pendarvis' farm collecting samples, Pendarvis informed NEALE that there were two additional acres he had used for his allotment in Marion Co., subsequently emailing to the DAG Defendants a 2nd Acreage Amendment Application at approximately 10:38 a.m. (the acreage leading to this 2nd amendment application hereinafter referred to as "Marion Co. crop"), providing the following location:

**JA049**

96. On Thursday August 29, 2019 at 11:53 a.m., UNDERWOOD sent Pendarvis an email that was

courtesy copied to ELSALAH and TERRY.

| From: | Underwood, Derek <dunder@scda.sc.gov> |
|---|---|
| Sent: | Thursday, August 29, 2019 11:53 AM |
| To: | trentpendarvis@gmail.com |
| Cc: | Elsalah, Vanessa; Dalton, Alden; Hemp, SCDA |
| Subject: | SCDA Amendment response to existing hemp fields not on record 8-29-2019 |
| Attachments: | Trent Pendarvis Ammendment Letter SCDA 8-28-2019.pdf |

| Importance: | High |
|---|---|

| Follow Up Flag: | Flag for follow up |
|---|---|
| Flag Status: | Flagged |

August 28, 2019

Mr. Trent Pendarvis
967 West Main Street
Harleysville, SC 29448

RE: Trent Pendarvis (permit # 1992) violation of Hemp Farming Program

Mr. Pendarvis,

It has come to our attention that you are unlawfully growing Hemp on acreage that is not on record with the SCDA. This is a willful violation of the Hemp Farming Program which requires a licensed grower to provide the SCDA with a legal description and global positioning coordinates of the land on which the licensee seeks to cultivate hemp.

Amendments submitted on 8-01-2019 and the recent 8-28-2019 for adding acreage where hemp has already been planted, cultivated and matured will not be processed by the SCDA. Therefore, this crop is considered in violation of S.C. Code Ann. Section 46-55-40(B).

SCDA does not believe this violation to be negligent or an oversight on your part, but instead views this conduct as willful.

This letter serves as the official response to your actions and SCDA has notified SLED and fulfilled the requirement of reporting to the Attorney General these culpable violations, greater than negligence, of the Hemp Farm Program as such requirement is set forth in S.C. Code Ann. Section 46-55-40(B).

If you have any questions or would like additional information, please do not hesitate to contact me at dunder@scda.sc.gov or 803-737-9702.

This letter has also been mailed "certified" to your attention.

Derek M. Underwood
Assistant Commissioner, Consumer Protection Division

97. The attachment to the Thursday August 29, 2019, email above, was the following memo:

**JA050**



98. According to a written statement that UNDERWOOD emailed to WELLS (never identified or produced by the SLED Defendants in either of the state civil cases or the state criminal prosecution), Pendarvis called UNDERWOOD "several times" over the weekend following that Thursday, August 29, 2019, email, but UNDERWOOD "waited until first of the week to return his call." UNDERWOOD described that phone call as:

> During that call, Mr. Pendarvis asked several times "what does this letter mean?" I explained the rejection of the amendments was because hemp was already being grown (mature plants over 5 ft) on non-approved GPS coordinates and our program's integrity would not allow SCDA to approve amendments after the fact. He again asked what it the letter means. I tried to reread the letter and what the law required us to do. He seemed confused and asked what he needed to do. I explained that he would need to contact our General Counsel since he was asking questions regarding the legal status and our reporting to SLED and AG's office.
>
> After a few more exchanges repeating the same questions, I ended the call.

99. On September 6, 2019, despite the communications above, JEFFCOAT began emailing Pendarvis asking him about "the two additional acres you wish to amend to your license":

> **From:** Jeffcoat, Brittany
> **Sent:** Friday, September 6, 2019 12:48 PM
> **To:** trentpendarvis@gmail.com
> **Subject:** SCDA Hemp
>
> Mr. Pendarvis,
> We spoke on August 28th about two additional acres you wish to amend to your license. In order for us to maintain an accurate record for your location please reply back with coordinates of those acres by the end of today.

100. On September 10, 2019, UNDERWOOD joined the effort, emailing Pendarvis, JEFFCOAT, ELSALAH and TERRY at 4:52 p.m.:

> **From:** Underwood, Derek <dunder@scda.sc.gov>
> **Sent:** Tuesday, September 10, 2019 4:52 PM
> **To:** Jeffcoat, Brittany; trentpendarvis@gmail.com
> **Cc:** Elsalah, Vanessa; Dalton, Alden
> **Subject:** RE: SCDA Hemp
>
> **Importance:** High
>
> Mr. Pendarvis,
>
> Your cooperation in this matter is of upmost importance.
>
> This is a direct inquiry based on your previous call on 8-28-2019 at 10:38AM about amending another 2 acres where Hemp is being grown by you.
>
> Time is of the essence.

101. Less than five minutes later, JEFFCOAT sends yet another email to Pendarvis, again courtesy copying UNDERWOOD, ELSALAH and TERRY:

> **From:** Jeffcoat, Brittany <bjeffcoat@scda.sc.gov>
> **Sent:** Tuesday, September 10, 2019 4:45 PM
> **To:** trentpendarvis@gmail.com
> **Cc:** Underwood, Derek; Elsalah, Vanessa; Dalton, Alden
> **Subject:** FW: SCDA Hemp
>
> Good Afternoon Mr. Pendarvis,
> I am reaching out again requesting you please provided the location of the additional two acres you wished to amend to your license. Please respond by the end of the business day tomorrow, Wednesday, September 11th.

102.    The next day, September 11, 2019, TERRY emails Pendarvis, courtesy copying UNDERWOOD, JEFFCOAT and ELSALAH and specifically states DAG is being asked to obtain information by SLED:

> **From:** Dalton, Alden <adalton@scda.sc.gov>
> **Sent:** Wednesday, September 11, 2019 10:35 AM
> **To:** Underwood, Derek; Jeffcoat, Brittany; trentpendarvis@gmail.com
> **Cc:** Elsalah, Vanessa
> **Subject:** RE: SCDA Hemp
>
> Mr. Pendarvis,
>
> I just tried to give you a call but I got your voicemail. I am reaching out because SCDA has been asking by SLED to provide them with the location of all places where you are growing hemp. As we understand, you are currently growing on two more additional areas which are not licensed by or on record with SCDA. Please provide the location of these additional two acres (and any other unauthorized or unrecorded growing locations) by close of business today, Wednesday, September 11ᵗʰ. Please note that while SCDA cannot influence the SLED proceedings, your cooperation with SCDA will impact your future participation in the SCDA program. Please give me a call if you have any questions.

103.    Having received the conflicting communications described above, Pendarvis had already responded to TERRY's September 11ᵗʰ 10:35 a.m. email by resubmitting the 2ⁿᵈ Acreage Amendment Application via email dated September 11, 2019, 8:12 a.m. and noting it was the same application "sent on August 28ᵗʰ for Trent Pendarvis":

> **From:** Trent Pendarvis <trentpendarvis@gmail.com>
> **Sent:** Wednesday, September 11, 2019 8:12 AM
> **To:** Hemp, SCDA <scda_hemp@scda.sc.gov>
> **Subject:** [External] Fwd: FW: Scanned from a Xerox multifunction device
>
> See Attached Acreage Amendment that was sent on August 28th for Trent Pendarvis.

and immediately following that email with:

> **From:** Trent Pendarvis <trentpendarvis@gmail.com>
> **Sent:** Wednesday, September 11, 2019 8:14 AM
> **To:** Hemp, SCDA <scda_hemp@scda.sc.gov>
> **Subject:** [External] Hemp
>
> If any further information is needed, please call my cell 843-████

**JA053**

104.    Sometime on the morning of September 19, 2019 (presumably before 11:45 a.m.), NEALE obtained Arrest Warrant 2019A1810300867 for a "Miscellaneous/General Sessions Misdemeanor Offense where no punishment provided by statute" from Dorchester County Magistrate Judge Ryan D. Templeton.   The warranted was prepared by NEALE with assistance/review from WOOD. The affidavit portion of that warrant referenced an "attached affidavit." That affidavit was executed by NEALE and describes the offense as "Unlawful Cultivation of Hemp – 1st Offense (CDR CODE 3554) CODE SECTION: 46-55-20(A)(1)" and then contains the following "probable cause" sworn testimony by NEALE:

> *I further state that there is probable cause to believe that the defendant named above did commit the crime set forth and that probable cause is based on the following facts:*
>
> On and before August 28, 2019, one John Trenton PENDARVIS, did unlawfully cultivate hemp.  This violation taking place at Maple Hill Road (33° 21' 82" N, 80° 47' 30" W) located in or near Harleyville, in Dorchester County, South Carolina.  This being in violation of Section 46-55-20(A)(1), South Carolina Code of Laws, 1976, as amended.

> On July 30, 2019, the South Carolina Department of Agriculture (SCDA) observed mature hemp plants growing on an unlicensed site located on Maple Hill Road.  Following the visit PENDARVIS applied for an amendment to his original application to change his growing location to the Maple Hill Road site.  SCDA determined PENDARVIS' actions willfully violated the Hemp Farming Act, because prior approval of the new growing location was not obtained before the hemp was grown on the Maple Hill Road site and denied the amendment application.  SCDA notified SLED that PENDARVIS was willfully and unlawfully violating the Hemp Farming Act and requested a criminal investigation.  On August 28, 2019, the affiant took samples of the plants at the Maple Hill Road site confirming hemp was growing at the location.

105.    Notably absent from the warrant or affidavit is any notice that the SLED defendants were going to seize and destroy Pendarvis' hemp crop upon serving the requested arrest warrant **or** that the SLED defendants had previously attempted to obtain judicial authorization for seizure and destruction and that judicial authorization had been denied. WHITSETT has verified under oath that information was not relayed to Magistrate Judge Templeton.

**Arrest & Destruction of Dorchester County Hemp Crop**

106.    On September 19, 2019, at approximately 11:45 a.m., numerous Defendants showed up at

Pendarvis' farm in Dorchester County. Pendarvis is informed and believes that specific

individual defendants present at his Dorchester County farm that day were ONEAL, NEALE,

WOOD, HOLDEN, STOKES, DIXSON, THOMPSON, KRUTAK, SCRUBBS and EADDY,

but he believes there may have been other individuals also present. At least one defendant,

THOMPSON, was outfitted as though they were serving a high-risk warrant on a violent

criminal:



107.    Interactions between Pendarvis and some of the defendants at his Dorchester County farm

on September 19, 2019, are memorialized via a body-worn camera (BWC) video that has been

identified by SLED as being WOOD's BWC.

108.    That video shows a SLED Agent (believed to be NEALE), ONEAL and WOOD (not

visible, but present via audio since it is his BWC) having the following exchange with

Pendarvis beginning at the 11:49:00 timestamp and showing Pendarvis refusing to consent to

the destruction of his hemp crop and instead requesting due process (to call his lawyer):

44

**JA055**

-NEALE:      We have got to something with this. So are you good with us, cutting it down or…

-PENDARVIS:  I'd rather you talk to my lawyer first.

-NEALE:      Ok.

-ONEAL:      Who's your lawyer?

-PENDARVIS:  I'll get ahold of Mr. Charles Williams.

-ONEAL:      Ok. (*looking at NEALE and nodding*) Go ahead then.



-NEALE:      Well, right now (*walking over to Pendarvis and grabbing his arm*) we are going to place you under arrest for growing hemp without a license.

-ONEAL:      Cultivating.

-PENDARVIS:  For what?

-NEALE:      Because this is not – this is an unlawful –

-ONEAL:      We'll serve the warrant here in just a minute. Tell you about – what's all involved.

109.    At 11:50:21, as NEALE and ONEAL are cuffing his hands behind his back, Pendarvis asks

for due process a second time:

-PENDARVIS:  Can I call my lawyer before y'all –

45

**JA056**

-WOOD:          **Yes, sir**. **Absolutely**. Let them finish getting your knives and stuff. Then they'll take those cuffs lose for a second and **we'll let you make that telephone call**.

(*ONEAL approaches WOOD and motions for him to follow*)

-ONEAL:          Hey, let me talk to you for a second.

*ONEAL and WOOD walk away from Pendarvis and WOOD's BWC mic is turned off, after which there are no more assurances that Pendarvis will be allowed a call while on the scene. Pendarvis is informed and believes STOKES (seen in image below) is standing in proximity to ONEAL and WOOD when the "unrecorded" conversation takes place, after which no more assurances of phone calls on site are made.*



At 11:52:11, after the mic cut-off conversation, Pendarvis continues to request due process by asking to be able to contact his lawyer **before** the hemp crop is destroyed:

-PENDARVIS:      I mean, I can't call my lawyer before y'all mess with it –

-ONEAL:          No, sir. You can call you lawyer down at the jail. We gonna cut it regardless. Your lawyer can't stop us from cutting it. It's growing in an unlawful location.

At 11:54:49:

-PENDARVIS:      My lawyer  can't talk to y'all before y'all destroy it?—

-WOOD:          We came here to handle this issue –

-PENDARVIS:      I – I – I…I think my lawyer can explain my situation with the paperwork I got.

At 11:54:49:

-WOOD:          I know the Department of Agriculture sent you a letter several weeks ago.

-PENDARVIS:     And they told me to wait and they'd get back with me. I never heard anything from them. I asked him then, did I need to get my attorney to contact him. He said, "you wait and I'll call you back." So…that's what I did.

-WOOD:          Yes, sir.

-PENDARVIS:     But if I'd have known different, I could've got my attorney to contact y'all ahead of time.

At 11:55:38, as NEALE, ONEAL, STOKES and THOMPSON look on:



-WOOD:          I mean, they turned it over to us to handle –

-PENDARVIS:     Well, that's what I'm asking. Can I call my lawyer and let y'all talk to him now.

-WOOD:          (*as ONEAL shakes his head in the background*) We've got a directive to come here today.

-ONEAL:         We'll talk to your lawyer later.

-PENDARVIS:     I mean – How y'all gonna destroy my whole crop?

At 11:56:19, as NEALE, WOOD, STOKES and THOMPSON look on:



47

**JA058**

-ONEAL:      Well, we're out here because the Department of Ag called us out here.

At 11:57:16, as NEALE, WOOD, STOKES and THOMPSON look on:



-ONEAL:      We'll discuss the details with you later, we've got – we've got what the Department told us and – and now what you're telling us. We'll be glad to talk to you with your lawyer –

-PENDARVIS:      Well that's what I don't understand. How can y'all – why are y'all gonna destroy before my attorney can get with y'all and – and they – with the Department?

-ONEAL:      Let me read this warrant to you, sir.

At 12:00:51:

-PENDARVIS:      I really think I should be able to talk to my attorney before y'all destroy it

-WOOD:      This is where we're at, sir.

-PENDARVIS:      I mean, I asked the lady that the other say. And she told me no, that she would get back with me.

-WOOD:      We've been in contact with the Department of Agriculture and they are – uh – in line and lined up with everything we're here for.

110. All told, Pendarvis requested due process **before** his hemp crop was destroyed at least seven (7) times (as memorialized on WOOD's BWC video). All those requests for due process by Pendarvis were ignored by the Defendants on the scene.

48

**JA059**

111.   Pendarvis' was transported by KRUTAK to the Dorchester County Detention Center where he was booked.

112.   While Pendarvis was being transported to the detention center, the on-scene Defendants proceeded to destroy his hemp crop by bushhogging Pendarvis' fields with SC Forestry equipment:



turning thriving fields of hemp:



into barren lots like this:



49

**JA060**

113.    Pendarvis is informed and believes that FORESTRY agents/employees SCRUBBS and

EADDY assisted with the destruction of his hemp crop, using FORESTRY equipment.

114.    Before taking and destroying Pendarvis' hemp crop without providing him due process,

the on-scene Defendants made sure to get videos and selfies to memorialize their "crime-

fighting" work:



115.    On September 20, 2019, both KEEL and WEATHERS publicized written statements to the

media "FOR IMMEDIATE RELEASE" on Pendarvis' arrest:

---

[1] Plaintiff is unsure of the identity of the person pictured in the bed of the truck taking photo/video,
but is informed and believes that the person in the four (4) selfies is STOKES, who was specifically
identified by NEALE as being "Other Personnel" involved in the SLED "Report of Investigation."





South Carolina
Law Enforcement Division

P.O. Box 21398
Columbia, South Carolina
29221-1398

*Henry D. McMaster, Governor*
*Mark A. Keel, Chief*

*Tel: (803) 737-9000*

**Contact: Tommy Crosby**
**Office: (803) 896-8396 After Hours: (803) 737-9000**
**tcrosby@sled.sc.gov**

**FOR IMMEDIATE RELEASE**
**September 20, 2019**

**DORCHESTER MAN CHARGED WITH UNLAWFULLY CULTIVATING HEMP**

Agents of the S.C. Law Enforcement Division Thursday arrested a Dorchester County man for violating the law associated with the South Carolina Hemp Farming Program. The arrest is a result of an investigation requested by the South Carolina Department of Agriculture (SCDA). This is the first arrest of a Hemp farmer following the implementation of the program.

John Trenton Pendarvis, 38, is charged with unlawfully cultivating hemp on property off Maple Hill Road near Harleyville in Dorchester County.

Pendarvis was booked at the Dorchester County Detention Center.

The case will be prosecuted by the First Circuit Solicitor's Office.

###

Warrant Attached.
LTC-002
www.sled.sc.gov

South Carolina
**DEPARTMENT OF AGRICULTURE**
Hugh E. Weathers, Commissioner

**Media Contact:** Eva Moore, 803-734-2196, emoore@scda.sc.gov

**FOR IMMEDIATE RELEASE – September 20, 2019**

**Statement Regarding SLED's Sept. 19 Arrest**

The South Carolina Department of Agriculture takes seriously the integrity of the Hemp Farming Program. Hemp is legal within the parameters of program, which SCDA administers. We are not a law enforcement agency — we are required to report certain violations of the program to law enforcement.

As part of the permitting process, permitted hemp farmers sign an agreement that says they will report all acreage on which they intend to grow hemp. It's important that we have a record of GPS coordinates of acreage with permitted hemp growing on it – not only is it required by law, but we've shared that information with law enforcement when they have questions.

SCDA is required to report to SLED and the SC Attorney General any violations of the hemp program that we believe are willful, which is what we did in this case. The decision to take action – and what action to take – lies with law enforcement.

This incident hasn't dampened SCDA's enthusiasm about the Hemp Farming Program. We have more than 100 permitted farmers this year, many of them getting ready to harvest their 2019 crops, and we're committed to supporting this growing industry.

###

116. Also on September 20, 2019, counsel retained to defend Pendarvis on the criminal charges sent evidence preservation correspondence to KEEL which requested the preservation and production of the following:

- Any and all surveillance video and/or photographs taken from Pendarvis Farms located in Harleyville, South Carolina;
- Any and all video and/or photographs taken before or after the crop located in Harleyville, South Carolina was destroyed;
- The names and addresses of agents working and on location during the arrest of John Trenton Pendarvis and the destruction of his crop on September 19, 2019;
- Any and all communications including emails, phone calls and text messages between South Carolina Law Enforcement Division and South Carolina Department of Agriculture regarding John Trenton Pendarvis and/or Pendarvis Farms;

If you fail to preserve and maintain this evidence, we will seek sanctions provided under South Carolina law including spoliation of evidence. It is necessary to preserve all the requested evidence in order for Mr. Pendarvis to be able to make a determination about the culpability and punitive exposure of any party to a potential action.

Please forward copies of the preserved information to our attention as well as documentation indicating that the above information has likewise been preserved. If there are any fees associated, please let us know. Should you have any questions, please do not hesitate to contact my office.

117.    Via correspondence dated November 4, 2019, WHITSETT responded to Pendarvis'

counsel's September 20, 2019, correspondence:

Dear Attorney Hutto,

I write today in response to your previous FOIA requests that have been assigned the above SLED FOIA Tracking number. Attached you will find all of the non-exempt public records in SLED's possession that are responsive to your request at this time. Be advised that SLED's criminal investigation into this matter remains ongoing at this time. As such, in accordance with FOIA, any and all additional records in SLED's possession that may be responsive to your request are records and other information compiled for law enforcement purposes the production of which at this time would interfere with SLED's prospective law enforcement proceedings in this matter, any forthcoming prosecution that may be determined warranted by the appropriate prosecutor, and the constitutional guarantees associated therewith. Accordingly, the records sought in your request are specifically exempt from disclosure at this time pursuant to S.C. Code Ann. § 30-4-40(a)(3)(A). In addition, some of the materials sought are not "public records" as defined by S.C. Code Ann. § 30-4-20(c). Further, some of the materials are additionally exempt pursuant to S.C. Code Ann. § 30-4-40(a)(2), (a)(3)(B), (a)(3)(C), (a)(3)(D), (a)(3)(E), (a)(4), (a)(7), and (a)(15).

If you have any questions or concerns, please do not hesitate to contact me.

Sincerely,

Adam L. Whitsett
SLED General Counsel

118.    Via correspondence dated January 22, 2020, the First Circuit Solicitor's Office produced

Rule 5/*Brady* material to Pendarvis' attorney on the criminal case.

119. Of note, in neither of the two responses above, did the SLED defendants identify and/or produce any AG opinions requested or produced **after** the August 8th AG Op. or any communications with Chief Administrative Judge for the First Circuit.

### Pre-litigation Known Conduct – Marion County Case

120. On or about September 25, 2019, Pendarvis' counsel became aware that the SLED and DAG Defendants intended to conduct the same seizure and destruction action on two (2) acres of his hemp allotment that he had planted in Marion County on land owned by a friend, Lawton Drew. These were the two acres subject to the 2nd Acreage Amendment Application that Pendarvis had emailed DAG on August 28, 2019 and was subsequently emailed numerous times about in early September by DAG Defendants, before resending to DAG via email on September 11, 2019 (hereinafter "Marion crop").

121. Subsequent to learning that the SLED and DAG Defendants intended to seize and destroy the Marion crop, on September 26, 2019, Pendarvis' attorneys filed a *Petition for an Ex Parte Temporary Restraining Order, Motion for Preliminary Injunction, and Complaint for Declaratory and Injunctive Relief* in the Marion County Court of Common Pleas (hereinafter "Marion Case," *see* C/A No.: 2019-CP-33-00675).

122. On September 26, 2019, the Marion County Court of Common Pleas, through order issued by the Hon. William H. Seals, Jr., temporarily restrained and issued a preliminary injunction against SLED and DAG, temporarily restraining and enjoining on a preliminary basis SLED and DAG from entering onto the property "for the purposes of destroying the hemp crop planted thereon." That Order specifically ordered that the parties would be given an opportunity to be heard in a hearing on the merits at a later date.

123.    Subsequent to the above, Pendarvis' attorneys began communicating with both WHITSETT and TERRY the filings, the Court's order and trying to coordinate dates for a hearing.

124.    On October 7, 2016, SLED filed *Response in Opposition Ex Parte Temporary Order and Preliminary Injunction and Request to Dissolve Such Order*. SLED devoted an entire page in that filing to allegations that the Marion hemp crop was "too hot" (i.e., had tested above 0.03% delta-9 dry weight). *See* p.6, October 7, 2019, SLED Response, Marion case.

125.    Nowhere in their October 7, 2016, filing did SLED mention a) that no one had ever noticed Pendarvis about any of his hemp being "too hot," or b) that the very statute and participation agreement SLED was citing as justification for their enforcement action specifically allows that hemp testing too hot can be "reconditioned." *See* S.C. Code §46-55-40(A)(1-4) and Sec. XIII(b) of Hemp Participation Agreement.

126.    On October 8, 2019, Pendarvis filed a *Supplemental Memorandum* in the Marion case. In that filing, Pendarvis argued he had never been given any notice about any of his crop being "too hot," pointing out the SLED lab report attached to SLED's response in opposition was dated September 24, 2019 (well after the August 28, 2019 "official response" correspondence from DAG that SLED cited in support of their argument and which did not mention the "too hot" issue at all) and providing his own lab report dated September 27, 2019 showing the Marion crop testing a Total THC% of 0.26%, within the statutory THC limits.

127.    Pendarvis' October 8, 2019, *Supplemental Memo* also noted that DAG had notified SLED that it was finding Pendarvis in "willful violation" as early as the August 5, 2019, Memo from UNDERWOOD to NEALE (exhibit D to the Oct. 8th *Supp Memo*) and that SLED had in response, requested the Aug. 8th Op. from SCAG (exhibit E to the Oct. 8th *Supp Memo*).

**JA065**

Pendarvis then quoted verbatim from the Aug. 8th Opinion's "Conclusion" section before noting that "Defendant SLED did none of the above…"

128.    On October 8, 2019, the parties in the Marion case appeared before Judge Seals in Horry County for a hearing on the merits regarding the injunctive relief requested by Pendarvis in the Marion County case. As the issue being contested at the time was the "enforcement" efforts, SLED argued on behalf of the Defendants. The Court heard arguments from both sides and took the matter under advisement to allow for sufficient time to review the submitted materials.

129.    Of note, during the October 8, 2019, SLED's trial counsel conceded the "too hot" issue during oral argument, stating "I'm not going to get into the weight issue because Patrick's right. I learned yesterday via talking to the investigator that yeah, I might test four of these plants and they may be out of compliance but these two plants might be in compliance."

130.    Later that day, via email timestamped 3:10 p.m., the Court notified the parties that the preliminary injunction was being granted and providing instructions to Pendarvis' attorneys to draft a proposed order.

131.    On November 8, 2019, the Court e-filed an Order on the Marion case. In that Order, the Court specifically noted the protection against unconstitutional takings citizens have pursuant to case law, the Federal Due Process clauses (found in the Fifth and Fourteenth Amendments) and the South Carolina Constitution:

> "When a property interest has been created, the due process clause, not state regulations, defines what process is constitutionally mandated. At a minimum, due process usually requires adequate notice of the charges and a fair opportunity to meet them." Bowens v. N.C. Dept. of Human Resources, 710 F.2d 1015, 1019 (4th Cir. 1983), internal citations omitted. "An impartial decision maker is an essential element of due process." Bowens at 1020, internal citations omitted.

55

JA066

While case law recognizes the level of process due may be "flexible" dependent upon the demands of the situation, South Carolina appellate courts have refused to interpret this to mean the flexibility is so pliable as to allow a governmental agency to refuse to announce the rules of procedure it intends to use to confiscate property. John M. McIntyre & Silver Oak Land Mgt. v. Sec. Comm'r of S.C., 425 S.C. 439, 449, 823 S.E.2d 193, 198 (Ct. App. 2018), citing Kurschner

Furthermore, the South Carolina Constitution specifically declares that:

No person shall be finally bound by a judicial or quasi-judicial decision of an administrative agency affecting private rights except on due notice and an opportunity to be heard; nor shall he be subject to the same person for both prosecution and adjudication; nor shall he be deprived of liberty or property unless by a mode of procedure prescribed by the General Assembly, and he shall have in all such instances the right to judicial review. (1970 (56) 2684; 1971 (57) 315.)

South Carolina Constitution, Art. I, §22.

The very next section of our state constitution provides that provisions such as Art. I, §22 "shall be taken, deemed, and construed to be mandatory and prohibitory, and not merely directory, except where expressly made directory and permissory by its own terms." South Carolina

Constitution, Art. I, §23.

The necessity for notice, an opportunity to be heard and the right to appeal an administrative agency's decision is embodied by this dispute. While the Defendants contend that

Despite stating that it serves as "the official response" to Pendarvis' "actions," there is no notice within the August 28, 2019 correspondence to Pendarvis that his crops will be seized and destroyed. The correspondence merely states Defendant SCDA has "notified SLED and fulfilled the requirement of reporting to the Attorney General these culpable violations, greater than negligence, of the Hemp Farm Program as such requirement is set forth in S.C. Code Ann. Section 46-55-40(B)." Likewise, there is no notification anywhere in the correspondence as to what administrative appellate procedure Pendarvis is entitled to or any deadline he has to challenge any of these "findings" by Defendant SCDA. Finally, there is no notice whatsoever in that correspondence that the Plaintiffs' plants tested "too hot."

56

**JA067**

132. The Court's November 8, 2019 Order in the Marion case specifically discussed the August 8th Op, citing to Pendarvis' *Supplemental Memo* and its exhibits.:

> The Court notes that the Plaintiffs right to due process was recognized by the South Carolina Attorney General's Office in an opinion which it appears Defendant SLED sought in response to being informed of Plaintiff Pendarvis' alleged violations. Via memorandum dated August 5, 2019, Defendant SCDA requested Defendant SLED "enact enforcement of this willful violation by Mr. Pendarvis." *Supplemental Memo*, Ex. D. Within three (3) days, Defendant SLED had requested an opinion from the South Carolina Attorney General, apparently an "expedited" request, seeking guidance as to the appropriate procedure by which to enforce a "willful violation of the South Carolina Hemp Farming Act." *Supplemental Memo*, Exhibit E. That opinion from the South Carolina Attorney General stated:
>
> > In conclusion, it is the opinion of this Office that in absence of legislative direction, SLED should seek judicial authorization for the seizure of illegally-grown hemp in order to ensure that the grower receives due process consistent with the Constitutions of the United States and the State of South Carolina. *See, e.g., State v. 192 Coin-Operated Video Game Machines*, 338 S.C. 176, 525 S.E.2d 872 (2000). We advise that this authorization be sought with notice to the grower and an opportunity for them to be heard in a hearing in an abundance of cautions. *See id*....Therefore our Office advises that SLED proceed with the utmost care to fully ensure that the grower and all interested parties receive due process in any enforcement action.
>
> *Supplemental Memo*, Exhibit E., p.5.
>
> While Attorney General opinions are not binding, our appellate courts have instructed that "they should not be disregarded without cogent reason." Marchant v. Hamilton, 279 S.C. 497, 502, 309 S.E.2d 781, 784 (Ct. App. 1983), *citing* Etiwan Fertilizer Co. v. South Carolina Tax Commission, 217 S. Ct. 354, 60 S.E. (2d) 682 (1950). Under the facts as presented, the Court can find no cogent reason to disregard the reasoning set forth by the South Carolina Attorney General opinion issued at Defendant SLED's request in this matter.

133. On December 9, 2019, SLED, through new counsel, filed a *Notice of Appeal* in the Marion case, appealing the November 8, 2019, Order leaving the injunctive relief in place during the pendency of the declaratory judgment action.

134. On January 13, 2020, Pendarvis' served SLED and DAG with interrogatories (IROGs) and requests for production (RFPs) in the Marion case.

135. On February 20, 2020, Pendarvis' counsel sent an email to SLED's counsel and TERRY inquiring of the status of responses to the January 13, 2020, discovery requests in the Marion case.

136. On February 25, 2020, having received no response to the February 20, 2020, email, Pendarvis' counsel noted the failure by SLED or DAG to respond and that a motion to compel would be filed. Later that day, SLED's counsel sent an email that he was traveling out of state, had provided the discovery to his client, but requested a 30-day extension. Pendarvis' counsel responded noting the new deadline with an extension would be March 13, 2020, and that was fine, provided "your clients actually produce responses and not form objections with no information" specifically noting a "recent case with SLED has been like pulling teeth."

137. On April 1, 2020, DAG provided discovery responses in the Marion case.

138. Of note in DAG's April 1, 2020, discovery responses, in response to IROG#12, which asked DAG to "list with specificity all contact/communications between the Defendants about the Plaintiffs and/or their crops in both Marion and Dorchester Counties," DAG identified a single communication:

> **ANSWER**: Defendant sent a memorandum to Defendant SLED regarding Plaintiff's unlawfully grown hemp on or about August 5, 2019.

139. Of note in DAG's April 1, 2020, discovery responses, in response to IROG#13, which asked DAG to list with specificity all contact/communications between you and any third party regarding the Plaintiffs, DAG identified only:

58

**JA069**

> **ANSWER**: Defendant asserts it contacted by way of letter the South Carolina Law Enforcement Division on or about August 5, 2019 and the Attorney General for the State of South Carolina on or about August 21, 2019. Further Answering, Defendant would crave reference to the documents being produced contemporaneously herewith in response to Plaintiff's First Set of Requests for Production of Documents.

The documents produced contemporaneously did not contain numerous emails between the DAG defendants and SLED defendants that were later produced in the Dorchester County state case, a fact best exemplified with the DAG produced documents in the Marion case being 52 pages produced versus 195 pages produced in the Dorchester case. Nor were there any communications the DAG defendants engaged in/were copied on with the SCAG defendants identified or produced (other than the identification of the letter to SCAG identified in IROG#13 answer above).

140.    Of note in DAG's April 1, 2020 response to IROG#17, which asked DAG to list with specificity "every prosecutor/attorney general, judicial officer, clerk of court and/or other court personnel the Defendants communicated with about seizing and destroying the Plaintiffs' crops in both Dorchester and Marion Counties," identify if the information of the communication was subsequently share with other parties and if so, identify the other parties, DAG identified only:

> **ANSWER**:    Defendant asserts it sent a letter to the Attorney General for the State of South Carolina regarding the Plaintiff's violations of the Hemp Farming Act on August 21, 2019.

141.    Via April 2, 2020, emails, Pendarvis' counsel inquired of SLED's counsel the status on SLED's discovery responses and was told by SLED's counsel that draft responses had been done, documents requested but not received, and that he would be checking with WHITSETT on the status.

59

**JA070**

142.   On May 15, 2020, SLED filed their initial brief and designation of matter for the Marion

County appeal. At no time in any filing at the trial level, or in any appellate filing, did SLED

ever identify or refer to any attorney general opinion other than the August 8, 2019, AG Op.

143.   On July 28, 2020, SLED finally produced discovery responses for the Marion case, 197

days late. Notably, in responses WHITSETT participated in answering, SLED did not identify

or produce any AG opinion requested, created or amended **after** the August 8th AG Op. and

SLED flat-out refused to identify or produce anything related to the Dorchester County crop.

SLED's IROG#17 answer in the Marion case is a perfect example of SLED's obstructionist

conduct:

> 17.   Please list with specificity every prosecutor/attorney general, judicial officer, clerk of court and/or other court personnel the Defendants communicated with about seizing and destroying the Plaintiffs' crops in both Dorchester and Marion Counties. For the purposes of this interrogatory, such responses should identify the parties to the communication, the date/time/method of communication, the party who instigated the communication and the information relayed in the communication. If the information of the communication was subsequently shared with other parties, please so identify the other parties.
>
> **RESPONSE #17:**
>
> Objection. **The Defendant objects to the production of any information relative to any matters in Dorchester County** as such is **irrelevant and immaterial** to the matter before this Court. Notwithstanding this objection and expressly reserving it, **as to the Marion County matter**, upon information and belief, **Plaintiff's counsel, Patrick McLaughlin, was copied on every communication from the Defendant to any prosecutor or judicial officer related to this matter.** [2]

---

[2] The response that Plaintiff's counsel was copied on every communication from SLED to any prosecutor or judicial officer related to this matter ignores numerous communications between the SLED Defendants and SCAG Defendants **after** the Marion case was filed and ignores the fact that the previous communications with SCAG Defendants and Judge Diane S. Goodstein's office were directly related to establishing the legal authority to conduct the enforcement actions that SLED conducted on the Dorchester crop and then attempted to conduct on the Marion crop.

**JA071**

144.    Via Rule 11 correspondence dated February 18, 2021, Pendarvis notified Attorney Lindemann of deficiencies in SLED's discovery responses in the Marion case. Specifically, Pendarvis noticed that SLED's objections to providing "any information relative to any matters in Dorchester County as such is irrelevant and immaterial" were improper under the rules. That the evidence sought was reasonably calculated to lead to admissible evidence and as such, demanded the production of such evidence. Pendarvis also noted that the blanket "any communications to and from Adam Whitsett are privileged as attorney-client communications" was improper without an adequate privilege log. Pendarvis demanded the noticed deficiencies be cured within fourteen (14) days or warned that a motion would be filed seeking sanctions.

145.    On March 12, 2021, having received no response from SLED or their attorney regarding their deficient discovery responses, Pendarvis filed a *Motion to Compel Discovery Responses from SLED* on the Marion case. In that motion, Pendarvis argued that SLED's attempt to deny discovery related the Dorchester County crop was not credible because there had actually never been a referral to SLED about the Marion County crop, only a referral for the Dorchester County crop, pointing out "SLED cannot refuse producing discovery of information related to Dorchester since the entire Marion Couny matter arises from the Dorchester matter. The two cannot be separated." 3/12/2021 *Motion*, p.7.

146.    In the March 12, 2021 Marion County motion to compel, Pendarvis specifically argued:

> For instance, if SLED was involved in communications regarding the seizure of Pendarvis' hemp crop in Dorchester and was told by a judicial officer, other agency and or internally that a hearing would be necessary, that is wholly relevant and material to the current litigation. If communications show willful attempts to ignore warnings that seizing and destroying the hemp crop in Dorchester would violate Pendarvis' due process rights, then the subsequent attempts to follow the same procedure in Marion would make such communications and discussion relevant and material as to notice in the present matter.

3/12/2021 *Motion*, p.7.

147.    In the March 12, 2021 Marion County motion to compel, Pendarvis specifically noticed SLED that despite their interrogatory answers having stated "there are numerous emails and memorandum from the Attorney General as well as the Department of Agriculture" and "communications with the Attorney General's Office included opinions from the Attorney General. This includes emails between Adam Whitsett and David Jones," no such communications had been produced. Pendarvis specifically noticed SLED that "if there are communications that involved other parties/agencies, those need to be produced" and any claims of privilege needed to actually comply with the requirements of Rule 26(b)(5)(A) SCRCP to clearly identify what was being withheld.

148.    On March 10, 2022, less than two (2) hours before a hearing on Pendarvis' Marion County motion to compel was to be heard, KEEL's attorney contacted Pendarvis' counsel by telephone, asking if the hearing was necessary since they had subsequently produced "everything" in the Dorchester County case. Pendarvis' counsel noted that KEEL had not produced everything, as there had been specific discovery identified, yet not produced in either case despite multiple notices. KEEL subsequently produced 79-pages of missing discovery.

**Dorchester County State Civil Case**

149.    On August 23, 2021, Pendarvis filed a civil complaint in the Dorchester County Court of

Common Pleas, C/A No.: 2021-CP-18-01486 (hereinafter "Dorchester case"). That complaint

was filed against KNIGHT, KEEL and WEATHERS in their official capacities and John

Doe(s), asserting causes of action for False/unlawful arrest/imprisonment and assault and

battery against KEEL in his official capacity and outrage, abuse of process,

defamation/defamation per se, negligence/gross negligence/recklessness and conversion

against all defendants.

150.    Upon serving the state case summons and complaint, Pendarvis also served discovery

requests upon the defendants. In addition to interrogatories and requests for production,

Pendarvis also served KEEL with two (2) requests for admission (RFAs) pursuant to Rule 36

SCRCP:

> 1,    Admit that SLED sought judicial approval to destroy Plaintiff's hemp crop.
>
> 2.    Admit that judicial approval of SLED's action was denied.

151.    Pendarvis asked those RFAs because he knew about the August 8 AG Op., had never seen

any judicial authorization for the seizure and destruction of his hemp crop, had never been

afforded an opportunity to be heard to challenge any findings that led to the destruction of his

hemp crop and could not understand why KEEL would ask the SCAG defendants for an

opinion about the appropriate procedure to take in his case and then not follow that procedure.

152.    Via email dated October 15, 2021, KEEL's attorney asked for a twenty-one (21) day

extension to respond to Plaintiff's written discovery requests. Plaintiff's counsel responded

back that same day agreeing to an extension provided "we get full and complete answers" (a

**JA074**

condition necessitated by the discovery conduct already being engaged in by SLED in the

Marion case and detailed above):

| | |
|---|---|
| From: | Brad Hutto |
| To: | Andrew Lindemann |
| Cc: | patrick@wukelalaw.com |
| Subject: | Re: Pendarvis v. LC Knight, Mark Keel et al. - 2021-CP-18-1486 |
| Date: | Friday, October 15, 2021 4:57:44 PM |

We not have a problem granting an extension provided that we get full and complete answers so that we can move forward with a deposition schedule with written discovery in hand. Have a great weekend

153.    The same day that extension was requested, KEEL responded to Pendarvis' request for

admissions (RFAs) as such:

1.    Admit that SLED sought judicial approval to destroy Plaintiff's hemp crop.

**RESPONSE #1:**

Denied as stated.  Further answering, on September 19, 2019, Special Agent John Neale with the South Carolina Law Enforcement Division (SLED) obtained an arrest warrant for the Plaintiff for Unlawful Cultivation of Hemp.  Special Agent John Neale met with Dorchester County Magistrate Judge Ryan Templeton who issued the arrest warrant.

2.    Admit that judicial approval of SLED's action was denied.

**RESPONSE #2:**

The Defendant Keel objects to this request in that the reference to "SLED's action" is vague and ambiguous.  The Plaintiff does not specify the "action" to which he is referring.  To the extent a response is required, the Defendant Keel denies the request as stated.

154.    Via Rule 11 correspondence dated November 9, 2021, Pendarvis notified KEEL that he

believed KEEL's responses to RFA#1 and RFA#1 were "bad faith efforts to evade properly

responding under the rules."

155.    Specifically, Pendarvis noticed that KEEL's response to RFA#1 was improper:

The response for RFA#1 is improper, as it does not admit or deny the request submitted. The Plaintiff is not asking SLED whether or not they sought judicial approval to arrest the Plaintiff, which is what your response to RFA#1 "admits." We are specifically asking SLED to admit they sought judicial approval to destroy the Plaintiff's hemp crop.

and pointed out that KEEL should be well aware of the distinction between arrest and seizure/destruction since he had specifically requested an Attorney General opinion to instruct him "on the appropriate procedure to pursue enforcement of the Hemp Farming Act with hemp grown in violation of the Act" and the AG opinion had specifically told KEEL he "should seek judicial authorization **for the seizure** of illegally-grown hemp **in order to ensure that the grower receives due process**…" 11/9/2021 *Rule 11 letter,* p.4. Pendarvis noticed KEEL that:

> "Admitting" that SLED sought approval to **arrest** the Plaintiff is a blatant attempt to avoid admitting or denying whether or not SLED actually attempted to comply with opinion they received from the South Carolina Attorney General.

156.    Pendarvis also noticed KEEL his RFA#2 response that the reference to "SLED's action" is vague and ambiguous was not credible since the "action" referred to was the action identified through the only other RFA served (the seizure and destruction of the crop) and violated Hon. Joseph J. Anderson Jr.'s oft-cited discovery opinion's instruction on making such objections ("If the party believes that the request is vague, that party shall attempt to obtain clarification prior to objecting on this ground." – *Curtis v. Time Warner Ent'ment-Advance/Newhouse P'ship*, C/A No.: 3:12-cv-2370-JFA, May 13, 2013, p.3). Nevertheless, Pendarvis proceeded to clarify for KEEL what he was referring to by "action":

> Be that as it may, the "action" referred to in RFA#2 is the destruction of the Plaintiff's hemp crop.

157.    Pendarvis' November 9, 2021, Rule 11 letter further noticed KEEL that his discovery was deficient in that he had failed to produce a Rule 33 verification (despite such being specifically demanded) and that KEEL had only produced discovery Bates stamped *SLED-001-089*, yet referenced Bates stamped pages beyond those numbered pages.

158.    KEEL refused to cure the deficiencies noticed via Pendarvis' November 9, 2021, Rule 11 letter.

159.    As noted above, at the last minute before a motion hearing on Pendarvis' motion to compel in the Marion Co. case, KEEL produced 79-pages of missing discovery. After review of that missing discovery, Pendarvis sent KEEL another Rule 11 letter on March 14, 2022.

160.    In the March 14, 2022, Rule 11 letter, Pendarvis specifically noticed KEEL that the newly produced discovery showed his responses to RFA#1 and RFA#2 were bad faith efforts to evade properly responding under the rules. Pendarvis specifically pointed out email correspondence between WHITSETT and Gil Gatch, then law clerk to the Hon. Dianne S. Goodstein, Chief Administrative Judge for Dorchester County. That correspondence was courtesy copied to NEALE, ONEAL and WELLS and shows that KEEL specifically sought the very judicial approval which KEEL had specifically denied seeking, via an *ex parte* submission of a proposed *Hemp/Marijuana Seizure Order and Order of Destruction*:



From: Whitsett, Adam <awhitsett@sled.sc.gov>
Sent: Wednesday, September 11, 2019 9:10 AM
To: Goodstein, Diane S. Law Clerk (Gil Gatch) <DGoodsteinLC@sccourts.org>
Cc: Neale II, John <jneale@sled.sc.gov>; Oneal, Frank <foneal@sled.sc.gov>; Wells, Jason <jwells@sled.sc.gov>
Subject: Proposed Hemp/Marijuana Seizure Order and Order of Destruction

*** EXTERNAL EMAIL: This email originated from outside the organization. Please exercise caution before clicking any links or opening attachments. ***

Mr. Gatch:

I hope this correspondence finds you well. Be advised that SLED S/A John Neale and I would like to meet with Judge Goodstein this afternoon to discuss the attached proposed Hemp/Marijuana Seizure Order and Order of Destruction in the hope that the Judge will sign such. It is my understanding that you spoke with SLED Major Frank O'Neal and it is my understanding that Judge Goodstein would be available for such a meeting at 1:30 PM today; however, I thought it prudent to confirm with you before S/A Neale and I make our respective trips to the courthouse. Is 1:30 still a convenient time? My cell number is below should you need to speak with me at any time.

With kind regards, I am
Sincerely,
Adam

Adam L. Whitsett, Esquire
General Counsel
South Carolina Law Enforcement Division

66

**JA077**

161.    Pendarvis noted the obvious evasiveness of KEEL's original response to RFA#1 explaining in detail NEALE's actions to obtain the **arrest warrant**, yet ignoring all the actions NEALE, ONEAL and WHITSETT took to obtain the very judicial approval RFA#1 had specifically requested KEEL admit to seeking.

162.    The proposed order submitted by NEALE and WHITSETT on September 11, 2019, was drafted by WHITSETT and ordered "the destruction of all of the plants at the above-listed property location in any manner and at such time and in such manner deemed appropriate by SLED. **A copy of the July 10, 2019, Attorney General's Opinion on this issue is attached hereto and hereby incorporated herein**."

163.    The inclusion/submission of the July 10th AG opinion is notable in that it is **not** the opinion specifically requested by KEEL for the appropriate procedure in enforcing Pendarvis' alleged willful violation and does not contain the specific warnings by SCAG defendants that "SLED **proceed with the utmost care to fully ensure that the grower and all interested parties receive due process**." That July 10th AG Op. specifically does **not** have the instruction to seek judicial authorization by providing "notice to the grower and an opportunity for them to be heard in a hearing."

164.    Pendarvis believes the submission of the July 10th AG Op. instead of the August 8th AG Op. was an intentional and willful attempt on the part of KEEL, WHITSETT, NEALE and ONEAL to mislead the Court into signing an *ex parte* order authorizing SLED's seizure and destruction of Pendarvis' Dorchester Co. hemp crop in direct contradiction of the "proper procedure" they had sought and obtained specifically for his case via the August 8th AG Op.

165.    When specifically asked to admit this misleading conduct to the Court was intentional, KEEL, through responses verified under oath by WHITSETT, denied and instead blamed

Judge Goodstein (*See* KEEL's *Responses to Plaintiff's Second Set of RFAs* dated May 20, 2022 and WHITSETT executed *Verification* dated May 31, 2022 in Dorchester case):

> 12.    Admit that KEEL chose **not** to share with Judge Goodstein the August 8, 2019 AG opinion.
>
> **RESPONSE #12:**
>
>     **Denied as stated.  The Defendant Keel admits that the Sworn Application for Hemp/Marijuana Seizure Order and Order of Destruction sent to the law clerk of Judge Diane Goodstein did not include as an attachment a copy of the August 8, 2019 Attorney General's Opinion; however, a request was made to Judge Goodstein for a meeting to discuss the situation, and that was declined.**

166.    KEEL made similar claims via correspondence to WILSON dated September 23, 2019, when he attempted to post-seizure/destruction obtain a "formal" opinion from the SCAG defendants by claiming that following the issuance of the August 8th Op. "SLED attempted to secure an order of destruction from a circuit court as discussed in the August opinion; however, **the court would not entertain such**. **While no specific reasoning was provided by the court**…"

> S.C. Code Ann. § 46-55-40(B).  To that end, on August 5, 2019, the Department of Agriculture notified SLED and The Attorney General of a willful violation of the Hemp Farming Act. However, there is no further guidance in the statute on this issue and no regulations have been promulgated.  In that regard, SLED requested an opinion regarding the appropriate procedures to take in this instance and your office provided such.  At that time, SLED had not received a copy of the Participation Agreement from the individual involved and was not aware of the consent to forfeiture and destruction contained therein.  In addition, following the issuance of August opinion, SLED attempted to secure an order of destruction from a circuit court as discussed in the August opinion; however, the court would not entertain such.  While no specific reasoning was provided by the court, there is simply no statutory or regulatory authorization for a court to entertain such request.

167.    Judge Goodstein did not refuse "to entertain" SLED's attempts to comply with the August 8th AG Op. because the SLED defendants were specifically attempting to **avoid** following the proper procedure of the August 8th  AG Op, by seeking an *ex parte* order of destruction **without** a hearing.

68

168.    Judge Goodstein's law clerk specifically notified WHITSETT that while the judge would

not sign the SLED defendants proposed order *ex parte*, she would be glad to give them a

hearing on the matter:



From: **Goodstein, Diane S. Law Clerk** (Gil Gatch) <DGoodsteinLC@sccourts.org>
Sent: Wednesday, September 11, 2019 3:04 PM
To: **Whitsett, Adam** <awhitsett@sled.sc.gov>
Cc: **Neale II, John** <jneale@sled.sc.gov>; **Oneal, Frank** <foneal@sled.sc.gov>; **Wells, Jason** <jwells@sled.sc.gov>
Subject: [EXTERNAL] RE: Proposed Hemp/Marijuana Seizure Order and Order of Destruction

EXTERNAL EMAIL: Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Mr. Whitsett,

The judge has reviewed your proposed order and has decided not to sign it. She told me to let you know that if you would like a hearing on the matter, she would be glad to give you one.

Best Regards,

Gil Gatch

169.    Rather than accept Judge Goodstein's offer to conduct the actual "proper procedure"

proscribed by the August 8th AG Op. he had requested, KEEL, through WHITSETT, refused:



From: **Whitsett, Adam**
Sent: Wednesday, September 11, 2019 4:24 PM
To: Goodstein, Diane S. Law Clerk (Gil Gatch) <DGoodsteinLC@sccourts.org>
Subject: RE: [EXTERNAL] RE: Proposed Hemp/Marijuana Seizure Order and Order of Destruction

Mr. Gatch,

I appreciate your assistance today. Please let the Judge know that we appreciate her consideration and do not anticipate needing a hearing on this matter at this time.

Regards,
Adam

170.    Pendarvis noticed KEEL via his March 13, 2022, Rule 11 letter that his response to RFA#2

was a bad faith effort to evade properly responding under the rules, as the above-emails show

KEEL did seek judicial approval to destroy Pendarvis' hemp crop and that judicial approval of

that action was denied.

171.    Pendarvis demanded that the bad faith responses be amended:

**JA080**

Let me be clear: we view Defendant Keel's responses to RTA#1 and RTA#2 to be **intentional and willful bad faith attempts to obstruct and delay discovery**. Those RFAs directly asked Defendant Keel to admit that SLED sought judicial approval to destroy the Plaintiff's hemp crop and that judicial approval of such action was denied and Defendant Keel has now produced emails which show SLED asked a Judge for authorization and the Judge said NO.

Based on the above, the **Plaintiff is specifically demanding Defendant Keel amend his RFA responses to properly respond to RFAs#1 and #2.**

172.    KEEL refused to amend and correct his responses, willfully and intentionally obstructing justice and denying/delaying discovery and due process in the Dorchester County state case.

### Known Conspiracy Conduct to Date

173.    Despite the ongoing and repeated attempts to deny/delay discovery in the state cases, as that discovery has painstakingly come about, it has established conduct amongst the defendants to conspire to violate Pendarvis' constitutional rights, deny him civil and criminal protections afforded him by law, take his property unlawfully, deny him of due process and obstruct justice.

174.    After refusing Judge Goodstein's offer to have a hearing and comply with actual advice given by the August 8th AG Op., the SLED defendants conspired with the DAG and SCAG defendants to "amend" the opinion and take Pendarvis' hemp crop in violation of his due process rights.

175.    According to KEEL's *Responses to Plaintiff's Second Set of IROGs* in the Dorchester case dated April 18, 2022, that conspiring began between WELLS and UNDERWOOD after Judge Goodstein refused to sign the proposed *ex parte* order without a hearing on September 11, 2019:

**JA081**

35.   Did Defendant Keel and/or any of his agents/employees inform Defendant Weathers and/or any of Defendant Weathers' agents/employees that SLED had attempted to obtain judicial authorization for the seizure and destruction of the Plaintiff's hemp crop, but that Circuit Court Judge Diane S. Goodstein had refused to sign the order **without** having a hearing? If so, please explain in detail the who, what, when, where, why and how of any such communications.

**RESPONSE #35:**

The Department of Agriculture was aware of the attempt that was made to obtain pre-seizure judicial authorization from Judge Diane Goodstein on September 11, 2019. It was thereafter that further discussions between Captain Jason Wells and SCDA Assistant Commissioner Derek Underwood led to SLED first learning of the Hemp Farming Program Participation Agreement on September 17, 2019.

176.   Emails withheld and not identified by KEEL at all in the state cases, but subsequently obtained by Pendarvis' via subpoena to the SCAG defendants show that WELLS, ONEAL, NEALE, WHITSETT and WOOD were all planning to seize and destroy Pendarvis' Dorchester Co. hemp crop the **day before** his arrest and any "amended" AG opinion was sought or obtained:

---

**From:** "Wells, Jason" <jwells@sled.sc.gov>
**Date:** September 18, 2019 at 3:16:13 PM EDT
**To:** "Oneal, Frank" <foneal@sled.sc.gov>
**Cc:** "Neale II, John" <jneale@sled.sc.gov>, "Whitsett, Adam" <awhitsett@sled.sc.gov>, "Wood III, Glenn" <gwood@sled.sc.gov>
**Subject:** Plan for Destruction of Hemp Field in Dorchester Co. - Trent Pendarvis

Major,

This email is to inform you of the plan we have in mind to deal with the unlawful hemp farm being operated by John Trenton "Trent" Pendarvis in Harleyville (Dorchester County).  S/A John Neale is going to obtain one arrest warrant tomorrow morning

---

**JA082**

Today, I contacted the SC Forestry Commission to ask when is the first availability they will have to bring equipment to the farm in Harleyville for destruction of the plants. My contact at Forestry should get back with me today to let me know. Once we have a date set for destruction, we will meet at the farm in Harleyville and contact Pendarvis. Pendarvis will then be informed of the arrest warrant and the plans for destruction.

The destruction is based on the agreement (see attached copy) that Pendarvis entered into with the SCDA on May 13, 2019. The agreement Pendarvis signed stated that:

"Permitted grower acknowledges and consents to the forfeiture or destruction, without compensation, of hemp material:
1) Found to have a measured delta-9 THC content of more than 0.3 percent on a dry weight basis
2) Bearing off-label pesticide residues regardless of the source or cause of contamination
3) Growing in an area that is not licensed by SCDA

177.    In response to a specific subsequent interrogatory referencing the unidentified and unproduced email above, KEEL has identified that WELLS' "contact" at FORESTRY as CALORE, who helped set up the FORESTRY agents/employees SCRUBBS and EADDY who showed up with FORESTRY equipment and destroyed Pendarvis' crop.

178.    Pendarvis is informed and believes the reason for not identifying and producing the above September 18, 2019, email is obvious: it shows how the SLED and DAG defendants conspired with the SCAG defendants to violate Pendarvis' due process rights the August 8th AG Op. had warned KEEL to protect.

179.    Pendarvis is informed and believes that conspiracy is further supported by the email exchanges which occurred on the morning of his arrest, September 19, 2019. Those emails begin at 7:20 am, with WHITSETT emailing COOK:

-----Original Message-----
From: Whitsett, Adam <awhitsett@sled.sc.gov>
Sent: Thursday, September 19, 2019 7:20 AM
To: Bob Cook <BCook@scag.gov>
Subject: Hemp Update

You available for a phone call this morning? We have had an update that Chief wants me to discuss.

180.    WHITSETT has verified under oath that "Chief" in the above-email is KEEL, showing

KEEL's personal involvement in violating Pendarvis' rights.

181.    Thirty minutes later, at 7:50 am, WHITSETT forwards COOK the email WELLS had sent

the day before titled *Plan for Destruction of Hemp Field in Dorchester Co. – Trent Pendarvis*.

COOK in turn forwards that email to JONES at 7:57 a.m.

182.    In an attempt to further justify their action, WHITSETT sends JONES and COOK the

following email at 8:34 a.m.:

| From: | Whitsett, Adam |
|-------|----------------|
| To: | David Jones; Bob Cook |
| Subject: | Hemp |
| Date: | Thursday, September 19, 2019 8:34:57 AM |
| Attachments: | Pendarvis Trent Participation Agreement.pdf |

David and Bob:

Attached is the agreement that this hemp farmer signed with the relevant portions highlighted. In addition, be advised that 2 of the 6 samples SLED tested from this illegal field were above the .3 allowable threshold.

At that time, no one had ever noticed Pendarvis that any of his plants were "too hot" nor

allowed him the opportunity specifically allowed for under the Act to "recondition" the plants.

183.    By 10:11 a.m., JONES and COOK "amended" their August 8th AG Op. to agree with

SLED's "conclusion in the abstract that if there has been a valid consent as you describe, no

judicial authorization for seizure upon notice from the Department of Agriculture that it has

found hemp grown unlawfully in willful violation of applicable law," claiming that:

**JA084**

Based on these additional facts, we supplement our previous advice to you such that where a grower has consented to the seizure and destruction of unlawfully-grown hemp, SLED or another appropriate law enforcement authority with jurisdiction may proceed with the destruction upon notification from the Department of Agriculture that it has found cannabis sativa grown in willful violation of applicable law. Of course the scenario you present involves highly fact-specific questions which this Office cannot determine. We reiterate that we defer to law enforcement's determination of these factual questions in the first instance, and that they ultimately must be determined by a court.

184.    Pendarvis is informed and believes that the issuance of this "amended" emailed opinion

was a *fait accompli* provided by the SCAG defendants as legal cover for the SLED, DAG and

DCSO defendants to arrest Pendarvis without affording him the specific protections of the Act

and take Pendarvis property' in violation of his due process rights, a course of action that was

already set in motion to the point that agents/equipment were merely waiting on this email to

come through before acting. COOK and JONES conduct in providing this legal cover to the

SLED, DAG and DCSO defendants' unconstitutional acts was so vital, that they got an

"attaboy" from WHITSETT:



**JA085**

185.    Pendarvis is informed and believes that email communications show that the DAG
defendants willfully and intentionally withheld notice from Pendarvis that he was being found
in "willful violation" of the hemp act at the request of the SLED defendants, who wanted to
deny Pendarvis any opportunity to be heard in challenging such finding. Pendarvis believes
the August 28, 2019, email from UNDERWOOD to WELLS and ONEAL, courtesy copied to
TERRY and ELSALAH is a good example of such conduct:

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Wednesday, August 28, 2019 11:54 AM |
| **To:** | Wells, Jason; Oneal, Frank |
| **Cc:** | Dalton, Alden; Elsalah, Vanessa |
| **Subject:** | Trent Pendarvis |
| | |
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Flagged |

Guys,

I know John Neale is at farm today, however, during their sample visit, Trent has now **mentioned another 2 acres** not
registered with SCDA.

He has sent in an amendment (@10:38 AM, 8-28-2019) to add these where hemp is CURRENTLY growing.

I need some direction as to when I can inform him that SCDA has rejected his amendment request and that he is willfully
violation the agreement and law.

Please advise.

Derek M. Underwood
*Assistant Commissioner, Consumer Protection Division*

186.    Despite knowing that the SLED defendants intended to seize and destroy his hemp crop
with no opportunity to be heard in challenge of the willful violation finding, the DAG
defendants stood silent, denying Pendarvis the notice to inform his legal counsel of the planned
seizure and destruction of his hemp crop and seek legal remedy to such action.

187.    Pendarvis is informed and believes that UNDERWOOD went so far as to share his "sample
email" to Pendarvis with WELLS and ONEAL, courtesy copying TERRY, so that all those
defendants knew how/when Pendarvis was being notified of his "willful violation" and that
UNDERWOOD and/or DAG was providing Pendarvis with no notice as to how to challenge

**JA086**

that administrative finding nor any opportunity to be heard in challenging that administrative finding.

188.    Pendarvis is informed and believes that the SLED defendants were aware that the administrative finding of a "willful violation" had **not** been made by an impartial decision maker, rather it had been made by the same DAG defendants who were coordinating with the SLED defendants to try to help them seize and destroy Pendarvis' hemp crop.

189.    Pendarvis is informed and believes WEATHERS was specifically copied with the "rejection letter" for Pendarvis' amendment applications via August 28, 2019, email and, thus, was fully aware of the actions and conduct being taken by his agents against Pendarvis.

190.    Pendarvis is informed and believes the SLED and DAG defendants were aware that Pendarvis did not understand the seizure and destruction of his hemp crop was being pursued for the alleged "willful violation" and that they sought to limit any such explanation and information from being provided to him as evidenced by the following emails shared amongst multiple SLED and DAG defendants following Pendarvis receiving his "official response" from UNDERWOOD:

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Thursday, August 29, 2019 11:55 AM |
| **To:** | Dalton, Alden; Elsalah, Vanessa; Leach, Clint; Wood, Aaron; Weathers, Hugh; Attaway, Alicia; Jeffcoat, Brittany |
| **Cc:** | Oneal, Frank; Wells, Jason |
| **Subject:** | FW: SCDA Amendment response to existing hemp fields not on record 8-29-2019 |
| **Attachments:** | Trent Pendarvis Ammendment Letter SCDA 8-28-2019.pdf |
| | |
| **Importance:** | High |
| | |
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Flagged |

Staff,

Mr. Pendarvis was officially notified today that his two (2) amendment submissions were denied.

I am out until Tuesday so if he calls, please make sure our staff directs him to either me or Alden ONLY.

cciing SLED

Derek

> During that call, Mr. Pendarvis asked several times "what does this letter mean?" I explained the rejection of the amendments was because hemp was already being grown (mature plants over 5 ft) on non-approved GPS coordinates and our program's integrity would not allow SCDA to approve amendments after the fact. He again asked what it the letter means. I tried to reread the letter and what the law required us to do. He seemed confused and asked what he needed to do. I explained that he would need to contact our General Counsel since he was asking questions regarding the legal status and our reporting to SLED and AG's office.
>
> After a few more exchanges repeating the same questions, I ended the call.

191.  Pendarvis is informed and believes that DAG defendants JEFFCOAT and UNDERWOOD continued to attempt to assist SLED defendants in enforcement action against him **after** DAG had found him in willful violation by sending emails to Pendarvis asking him to provide the location of the Marion Co. hemp crop, some such emails being courtesy copied to TERRY and ENSALAH.

192.  Pendarvis is informed and believes that the DAG defendants coordinated their public comments about Pendarvis' arrest and the seizure/destruction of his hemp crop as noted by this September 18, 2019, email:



---

[3] Plaintiff would note that in the state case discovery, WEATHERS has redacted out pretty much any email sent internally that his general counsel, Alden TERRY, was included on and that this conduct is just more discovery abuse meant to deny due process: "Information – in and of itself – does not become privileged merely because it was communicated to an attorney." In re Mt. Hawley Ins. Co., 427 S.C. 159, 167-168 (2019). "Courts have consistently refused to apply privilege to information that the client intends his attorney to impart to others…or which the client intends shall be published or made known to others…" In re Grand Jury Proceedings, 727 F.2d 1352, 1356 (4th Cir. 1984).

193.    Pendarvis is informed and believes that the SLED and DAG defendants coordinated their

public statements about his arrest and the destruction of his hemp crop, as evidenced by emails

back and forth on September 20, 2019, sharing the agencies' press releases:



194.    After receiving SLED's press release, MOORE shared DAG's release again with LEACH,

TERRY and UNDERWOOD before issuing it at 12:32 p.m. on September 20, 2019:

195.    Pendarvis is informed and believes that the defendants' conduct violating his constitutional

rights has continued since the time of his arrest and the destruction of his hemp crop. Such

conduct includes, but is not limited to, the continued willful and intentional bad faith discovery

conduct in the State cases meant to obstruct justice and deny him due process, as well as the

**JA089**

post-arrest and seizure attempts to establish more "legal cover" for their conduct in the wake of legal counsel appearing on behalf of Pendarvis.

196.    KEEL's request for such "legal cover" continued when Pendarvis filed for the TRO in Marion County.

197.    In emails neither identified nor produced by KEEL in either state case, but obtained via subpoena to the SCAG defendants, the SCAG defendants continued attempts to provide the SLED defendants legal cover for violating Pendarvis' constitutional rights:



198.    SMITH, YOUNG, COOK, WILSON, LYNCH, KIRKLAND and VORBARGER all communicated about giving KEEL the "help" he really needed:

**From:** Bob Cook
**To:** Jeff Young
**Cc:** Emory Smith; Alan Wilson; Steve Lynch; Harley Kirkland; Wesley Vorberger
**Subject:** Re: Representation Request
**Date:** Thursday, September 26, 2019 4:44:19 PM
**Attachments:** image001.jpg
image002.jpg

Copy me please

Sent from my iPhone

On Sep 26, 2019, at 4:33 PM, Jeff Young <JYoung@scag.gov> wrote:

Thank you.
<image001.jpg> **W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

**From:** Emory Smith <ESmith@scag.gov>
**Sent:** Thursday, September 26, 2019 4:31 PM
**To:** Jeff Young <JYoung@scag.gov>; Bob Cook <BCook@scag.gov>
**Cc:** Alan Wilson <agwilson.scag.gov@scag.gov>; Steve Lynch <slynch@scag.gov>; Harley Kirkland <HKirkland@scag.gov>; Wesley Vorberger <WVorberger@scag.gov>
**Subject:** RE: Representation Request
IF you would like, I will work w/ Harley on this matter. Wes's last day, as you probably know, is next Thursday so he may not be able to assist.
Emory

199. COOK, having conspired with WHITSETT to "amend" the August 8th AG opinion via email on September 19, 2019, as the SLED and DCSO defendants sat ready to take Pendarvis' hemp crop without due process, wanted to be kept "advised" of the Marion Co. case:

**From:** Bob Cook
**To:** Jeff Young; Alan Wilson; Emory Smith; Steve Lynch; Harley Kirkland; Wesley Vorberger
**Subject:** RE: Representation Request
**Date:** Thursday, September 26, 2019 4:51:23 PM
**Attachments:** image002.jpg
image003.jpg

Emory please keep me advised and copy me on pleadings. Thanks
Robert D. Cook
Solicitor General
S.C. Attorney General's Office

200. KIRKLAND, VORBERGER and SMITH conferred with WHITSETT over the phone on September 26, 2019, who was supposed to stop by their office to meet with them the next day.

None of those communications were ever disclosed by KEEL in either state case, despite discovery requests in both specifically asking for all communications about Pendarvis to be described with specificity:

| From: | Emory Smith |
|---|---|
| To: | Bob Cook; Jeff Young; Harley Kirkland; Wesley Vorberger |
| Cc: | Steve Lynch |
| Subject: | RE: Representation Request |
| Date: | Thursday, September 26, 2019 5:11:55 PM |
| Attachments: | image001.jpg |
| | image002.jpg |

Will do.

Harley, Wes and I just talked to Adam on the phone. He's sent us some dox and will stop by to meet w/ us tomorrow pm. Harley, Wes and I have discussed several options of responding.

FYI, one of the attys for the Plaintiffs is Sen. Brad Hutto. We may call him but will check w/ you before doing so.

201.    WHITSETT and TERRY specifically shared Judge Seals' October 8, 2019 email informing the parties he was granting Pendarvis' motion for preliminary injunction with SMITH. Via email dated October 22, 2019, WHITSETT and TERRY told SMITH that the Court's ruling "effectively ends this case and renders the entire Hemp licensure program meaningless."

202.    SMITH in turn forwarded that email to COOK on October 22, 2019, quoting from a section of Pendarvis' memo that specifically discussed SLED's obtaining the August 8th AG Op. only to ignore it. That email appears to have included as an attachment, SLED's "Return to TRO," thus providing SMITH, COOK and the SCAG Defendants with the arguments SLED had made in response to the TRO, namely the failure to argue or refer to any attorney general opinion other than the August 8th AG Op.

203.    In short, KEEL and WEATHERS and their agents have repeatedly refused to identify/produce responsive discovery and/or comply with the South Carolina Rules of Civil Procedure in a continued attempt to deny Pendarvis due process and obstruct discovery.

204. Pendarvis is informed and believes that there were no emergent cirsumstances that supported denying him notice and an opportunity to be heard at hearing. It was simply the will of the defendants that he not be afforded his due process rights and they conspired together to violate his rights.

205. Pendarvis is informed and believes that none of the defendants were ever provided with an order authorizing the seizure and destruction of his hemp crop, yet all of the defendants stood by and allowed his property to be taken in violation of his due process rights, despite his vocal challenges to the legality of doing so.

206. Pendarvis is informed and believes that KEEL, through WHITSETT, specifically told WILSON and the SCAG defendants that Judge Goodstein had refused to authorize the seizure and destruction of Pendarvis' hemp crop.

207. Pendarvis and is informed and believes that when NEALE appeared in front of Dorchester County Magistrate Judge Ryan Templeton to obtain the arrest warrant for Pendarvis, NEALE failed to inform Judge Templeton that they intended to seize and destroy Pendarvis' hemp crop or that Judge Goodstein had specicially refused to authorize such action.

208. Pendarvis is informed and believes that ONEAL specifically contacted Judge Goodstein's law clerk "to ascertain which judge was the appropriate one in Dorchester County to contact to secure pre-seizure judicial authorization for the seizure of Pendarvis'" hemp crop. Despite having been told Judge Goodstein was the appropriate Judge for such judicial authorization, and knowing that Judge Goodstein had refused to authorize such conduct withouth having a hearing, ONEAL led and was the on-scene decision-maker for KEEL on September 19, 2019, seizing and destroying Pendarvis' hemp crop, specifically refusing to allow anyone to let Pendarvis contact his lawyer prior to the destruction of the crop.

JA093

209.    The criminal charges against Pendarvis were dismissed on or about August 5, 2022, with the Solicitor's Office specifically noting on the General Sessions tracking sheet that there was insufficient evidence to prove Pendarvis' actions were willful.

210.    Neither the SLED or DAG defendants issued any press release regarding the dismissal of the criminal charges against Pendarvis.

211.    Both the SLED defendants and the SCAG defendants have repeatedly claimed that the Hemp Farming Act is unclear and does not adequately explain the enforcement process, with the SCAG defendants citing as much in their opinions and even going so far to monitor press stories and respond to media about how unclear the law is, lest they and their opinion(s) be portrayed in a negative light:

> **From:** Robert Kittle <RKittle@scag.gov>
> **Sent:** Friday, October 4, 2019 9:09 AM
> **To:** Bob Cook <BCook@scag.gov>; Jeff Young <JYoung@scag.gov>
> **Subject:** RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html
>
> He reached out to us back in August and wanted to get a copy of our opinion, which I gave him. Other than that he didn't talk to us. So he does have our opinion but didn't include what we said about the fact that the law needs to be clarified, although he did include in the story other people saying that. I'll give him a call.
>
> ---
>
> **From:** Bob Cook
> **Sent:** Friday, October 04, 2019 8:25 AM
> **To:** Jeff Young
> **Cc:** Robert Kittle
> **Subject:** RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html
>
> Robert I suggest you call him and mention our first opinion where we said the law needs legislative or judicial clarification. He should have called us
>
> Robert D. Cook
> Solicitor General

212.    Pendarvis is informed and believes the emails above show the SCAG defendants are complaining about being denied similar "notice" and "oppoturnity to be heard" they conspired

with the other Defendants to deny him, with the noted exception their liberty or property were not being taken.

213.    Notably, the article SCAG Defendants were concerned about contained KEEL's response that "his agency sought proper legal advice before taking action in every step of the case," neglecting to inform the media and the public how he and his agency ignored the legal advice the SCAG Defendants had provided in their August 8th AG Op., a fact the SCAG Defendants did not care to share with the reporter or the public. *See* Gregory Yee, *Arrest of SC hemp farmer underscores growing pains for budding industry*, The Post & Courier, October 3, 2019.

214.    Despite the claimed 'murky' nature of the Act, the South Carolina General Assembly clearly wanted to protect South Carolina farmers from the arbitrary actions taken against Pendarvis by specifically directing that the corrective action plans described in S.C. Code §46-55-40 were "the sole remedy" for negligent violations and a licensee with such violations "shall not be subject to any criminal or civil enforcement action." S.C. Code §46-55-40(A)(3).

215.    Plaintiff is informed and believes that WEATHERS and the DAG defendants were aware at the time Pendarvis was being arrested and his hemp crop was being destroyed without due process, that WEATHERS had failed to submit a plan within sixty (60) days of the effective date of the Act that adequately including "a procedure to comply with the enforcement outlined in this act." *See* 2019 Act No.14, Section 2(A)(4).

216.    Pendarvis is informed and believes that since his arrest and the destruction of his hemp crop without due process, WEATHERS has submitted a state plan in accordance with S.C. Code §46-55-10 *et seq.* that actually includes the procedures for enforcement and that those procedures require notice, an opportunity to be heard and no action by the Commissioner "prior to the holding of an adjudicatory hearing" which "shall be conducted in accordance with the

requirements of the South Carolian Administrative Procedure Act" and further includes a section on how to appeal the findings of such hearings.

217.    Pendarvis is informed and believes that the DAG, SCAG, SLED, DCSO and FORESTRY defendants all knew such procedures did not exist at the time they conspired with the other defendants to seize and destroy Pendarvis' hemp crop and/or stood idly by allowing such to happen.

218.    Pendarvis is informed and believes that through their conduct documented above the defendants recklessly, intentionally and willfully violated his constitutional rights and denied him the specific protections of the Act.

**FOR A FIRST CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF DUE PROCESS – 4TH, 8TH AND 14TH AMENDMENTS – FALSE**
**ARREST/IMPRISONMENT AGAINST SLED AND DCSO DEFENDANTS)**

219.    Plaintiff incorporates each of the preceding paragraphs herein as if set forth verbatim.

220.    At all times mentioned herein, the SLED and DCSO defendants were acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy.  Additionally, during the time period in question, the Defendants were well aware of the Pendarvis' constitutional rights, including his right to due process, to be free from false arrest/imprisonment and to be free from cruel and unusual punishment.

221.    As described above, the SLED and DCSO defendants obtained and executed an arrest warrant versus Pendarvis for a willful violation of the hemp farming act, through misleading omissions to the magistrate (specifically that the Chief Administrative Judge for the circuit had refused to approve their action), while knowingly and intentionally depriving Pendarvis of the protections afforded him under the act (specficially his statutory right to a corrective action

**JA096**

plan being the sole remedy for a negligent violation, pursuant to S.C. Code §46-55-40), without

need and in bad faith.

222.    That after the SLED defendants used force on Pendarvis and handcuffed him, DCSO

defendants took Pendarvis into custody and transported him to the detention center.

223.    As a direct and proximate result of the SLED and DCSO defendants conduct, Pendarvis

suffered deprivations of his rights secured by the Fourth, Eighth and Fourteenth Amendments

to the United States Constitution.

224.    At all times relevant to this action, the SLED and DCSO defendants knew or should have

known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff.

225.    The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional

rights through the acts and omissions of the SLED and DCSO defendants.

**FOR A SECOND CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF DUE PROCESS – 4TH, 8TH AND 14TH AMENDMENTS – MALICIOUS**
**PROSECUTION AGAINST SLED AND DAG DEFENDANTS)**

226.    The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional

rights through the acts and omissions of the SLED and DAG defendants.

227.    At all times mentioned herein, the SLED and DAG defendants were acting under the color

or pretense of South Carolina State law, customs, practices, usage, and/or policy.  Additionally,

during the time period in question, the Defendants were well aware of Pendarvis' constitutional

rights, including his right to due process, to be free from false arrest/imprisonment and to be

free from cruel and unusual punishment.

228.    As described above, the SLED and DAG defendants instituted the criminal prosecution

against Pendarvis and pushed for their continued prosecution while knowing that Pendarvis

had been deprived of the protections afforded him under the Hemp Farming Act and S.C.

86

**JA097**

Constitution (specficially his statutory right to a corrective action plan being the sole remedy for a negligent violation, pursuant to S.C. Code §46-55-40 and his constitutional right under Art. I, §22 of the South Carolina Constitution to challenge DAG's finding), without need and in bad faith.

229.    Further, both the SLED and DAG defendants attempted to further their desired criminal prosecution of Pendarvis by knowingly and intentionally withholding relevant and/or reasonably calculated to lead to admissible evidence that, once obtained through other means, successfully helped get the criminal charges dismissed.

230.    That the criminal charges against Pendarvis were ended in his favor, specifically they were dismissed with the Solicitor's Office finding there was not enough evidence to support that Pendarvis had acted willfully.

231.    That Pendarvis is informed and believes that the SLED defendants specifically opposed the dismissal of the criminal charges.

232.    That Pendarvis is informed and believes that there was no probable cause to institute the criminal proceedings against him. Specifically, had Pendarvis been provided the statutory protections he was entitled to under the Act, the sole remedy for the alleged violations would have been corrective action plans.

233.    That the SLED and DAG defendants acted maliciously, as evidenced through their conduct described in the factual allegations above.

234.    That Pendarvis suffered deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceedings against him.

87

**JA098**

235.    As a direct and proximate result of the SLED and DAG defendants conduct, Pendarvis suffered deprivations of his rights secured by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

236.    At all times relevant to this action, the SLED and DAG defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff.

237.    The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional rights through the acts and omissions of the SLED and DAG defendants.

<div align="center">

**FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1985**
**(CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS – OBSTRUCTING JUSTICE**
**& DENYING THE PLAINTIFF RIGHTS AND PRIVILEGES AGAINST ALL**
**DEFENDANTS)**

</div>

238.    Plaintiff incorporates each of the preceding paragraphs herein as if set forth verbatim.

239.    At all times mentioned above, the Defendants were all acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy.

240.    Additionally, during the time period in question, the Defendants were well aware of Pendarvis' constitutional rights, including his rights to:

    a.    due process of law;

    b.    to be free from unnecessary and unwarranted force;

    c.    to be free from false arrest and/or imprisonment;

    d.    to be free from the deprivation of property without due process of law;

    e.    to be free from the deprivation of liberty without due process of law; and,

<div align="center">

88

**JA099**

</div>

f.   to the fair, efficient and speedy administration of justice through the
criminal and civil justice system.

241.   As described through the factual allegations above, the Defendants conducted themselves
repeatedly in violation of the Plaintiff's constitutional rights, specifically seeking to deny him
due process and obstruct justice.

242.   As a direct and proximate result of the Defendants acts and omissions, the Plaintiff suffered
deprivations of his rights secured by the Fourth, Fifth, Sixth, Eighth and Fourteenth
Amendments to the United States Constitution.

243.   At all times relevant to this action, the Defendants knew or should have known of the
wrongfulness of their conduct and the risk of substantial harm to the Plaintiff, but they
repeatedly violated the Plaintiff's constitutional rights despite that knowledge.

244.   That the Defendants had notice and knowledge that the Plaintiff was being denied his due
process rights prior to the instigation of the State cases by the Plaintiff.

245.   That despite having the notice and knowledge that the Plaintiff's constitutional rights were
being violated prior to the instigation of the State cases, the Defendants conspired to impede,
hinder, obstruct and/or defeat the due course of justice with the intent to deny the Plaintiff the
equal protection of the law. Specifically, but not limited to, those Defendants conspired to deny
facts they know to be true to shield themselves and others from civil liability for the violation
of the Plaintiff's civil rights.

246.   Plaintiff was harmed and suffered injury because of the Defendants violation of the
Plaintiff's constitutional rights and that harm has been exacerbated by the conduct of the
Defendants in conpiring to impede, hinder, obstruct and/or defeat the due course of justice with
the intent to deny the Plaintiff the equal protection of the law.

**JA100**

## FOR A FOURTH CAUSE OF ACTION
## VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1986
### (NEGLECT TO PREVENT CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS – OBSTRUCTING JUSTICE & DENYING THE PLAINTIFF RIGHTS AND PRIVILEGES AGAINST ALL DEFENDANTS)

247.    Plaintiff incorporates each of the preceding paragraphs herein as if set forth verbatim.

248.    At all times mentioned above, when the Defendants violated Pendarvis' constitutional rights, they were acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy.

249.    Additionally, during the time period in question, the Defendants were well aware of Pendarvis' constitutional rights, including his right to due process, to be free from false arrest/imprisonment, and to be free from malicious prosecution.

250.    As described above, the Defendants repeatedly have violated the Plaintiff's constitutional rights to due process and equal protection under the law.

251.    As a direct and proximate result of the Defendants acts and omissions, the Plaintiff has suffered deprivations of his rights secured by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

252.    At all times relevant to this action, the Defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff, but they repeatedly vioalted the Plaintiff's constitutional rights.

253.    That the Defendants had notice and knowledge that they and/or other Defendants were violating the Plaintiff's civil rights prior to the instigation of the State cases.

254.    That despite having the notice and knowledge that they and/or other Defendants were violating the Plaintiff's civil rights prior to the instigation of the State case, the Defendants conspired to impede, hinder, obstruct and/or defeat the due course of justice with the intent to

deny the Plaintiff the equal protection of the law. Specifically, but not limited to, the Defendants conspired to deny facts they know to be true to shield themselves and others from civil liability for the violation of the Plaintiff's civil rights.

255.    Plaintiff was harmed and suffered injury because of the Defendants violations of the Plaintiff's constitutional rights and that harm has been exacerbated by the conduct of the Defendants in conpiring to impede, hinder, obstruct and/or defeat the due course of justice with the intent to deny the Plaintiff the equal protection of the law.

256.    That Defendants had knowledge of the wrongs that were conspired to be done against the Plaintiff as described above, had the power to prevent or aid in preventing the commission of those wrongs, but neglected or refused to do so, causing further and/or exacerbating the harm to the Plaintiff.

**<u>PRAYER</u>**

WHEREFORE, Plaintiff prays that the Court entered judgment against the Defendants and award him:

  i.    Actual and consequential damages to compensate the Plaintiff for his out-of-pocket expenses, pain, suffering, mental anguish, humiliation, and the indignity he has suffered because of the Defendants' conduct and the violation of his civil rights;

  ii.    Punitive damages;

  iii.    Attorneys' fees and costs recoverable under 42 U.S.C. § 1988; and

  iv.    Such further relief as is allowed by law and that the Court deems just and proper.

**JA102**

## **REQUEST FOR TRIAL BY JURY**

The Plaintiff, John Trenton Pendarvis, hereby demands a trial by jury on all claims so triable.

Respectfully submitted by:

**WUKELA LAW FIRM**

s/Patrick J. McLaughlin
Patrick J. McLaughlin (Fed. ID No. 9665)
PO Box 13057
Florence, SC 29504-3057
Phone:  (843) 669-5634
Fax:  (843) 669-5150
E-mail: patrick@wukelalaw.com
-*and*-
**WILLIAMS & WILLIAMS**
C. Bradley Hutto (Fed. ID. No. 2024)
P.O. Box 1084
Orangeburg, SC 29116
Phone: (803)534-5218
Fax:    (903)536-6298
cbhutto@williamsattys.com

Florence, SC
September 16, 2022

**ATTORNEYS FOR PLAINTIFF**

**JA103**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| John Trenton Pendarvis, | ) | C.A. No. 2:22-cv-03142-BHH-MHC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Alan M. Wilson, Mark A Keel, | ) | |
| Hugh E. Weathers, L.C. Knight, | ) | |
| W. Jeffrey Young, Robert D. Cook, | ) | |
| Emory Smith, Jr., Joanne Lee, | ) | |
| David S. Jones, T. Stephen Lynch, | ) | |
| Harley L. Kirkland, Wesley Vorberger, | ) | |
| Robert Kittle, Adam Whitsett, | ) | **ORDER** |
| Frank O'Neal, Jason Wells, Glenn Wood, | ) | |
| John Neale, Rhett Holder, Alden G. Terry, | ) | |
| Derek M. Underwood, J. Clint Leach, | ) | |
| Aaron Wood, John Stokes, | ) | |
| Vanessa Elsalah, Brittany Jeffcoat, | ) | |
| Eva Moore, Ray Dixson, Frank Thompson, | ) | |
| Robert Krutak, Jonathan Calore, | ) | |
| Charlie Scrubbs and Wayne Eaddy, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, represented by counsel, brings this action alleging violations of his civil rights. The Complaint comprises 92 pages, 256 paragraphs, and 101 images embedded among the paragraphs. ECF No. 1. A total of 33 Defendants are named, including various state agency heads and numerous state employees. The Complaint alleges the following causes of action: (1) a civil rights claim pursuant to 42 U.S.C. § 1983 against 11 Defendants for false arrest and imprisonment, in violation of the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution; (2) a § 1983 claim against 17 Defendants for malicious prosecution, in violation of the Fourth, Eighth, and Fourteenth Amendments; (3) a claim against all 33 Defendants pursuant to 42 U.S.C. § 1985 for conspiracy to interfere with civil rights by obstructing justice and denying Plaintiff his rights

1

and privileges; and (4) a claim against all 33 Defendants pursuant to 42 U.S.C. § 1986 for "neglect to prevent conspiracy to interfere with civil rights – obstructing justice [and] denying the Plaintiff rights and privileges." *Id.* at 85–91.

In response to the Complaint, all Defendants have filed motions to dismiss. Some Defendants seek dismissal pursuant to Rule 12(b) for failure to state a claim. *See* ECF Nos. 22, 24, 25 & 26. Other Defendants move for dismissal pursuant to Rule 8(a) or, in the alternative, for a more definite statement pursuant to Rule 12(e). *See* ECF Nos. 23, 27 & 39. Plaintiff filed responses in opposition to the motions, arguing that the Complaint is sufficient to state the alleged causes of action and does not violate Rule 8. ECF Nos. 31, 32, 33, 34 & 39. In the alternative, Plaintiff asks for leave to amend the Complaint to correct any deficiencies. *See* ECF Nos. 31 at 16–19; 32 at 10; 33 at 13; 34 at 11; 40 at 14.

This Court has spent a considerable amount of time reviewing the arguments contained in the memoranda in support of the motions to dismiss, Plaintiff's responses thereto, and the Complaint. The Court's task has been made extremely difficult by virtue of the fact that the Complaint contains an enormous amount of information, including embedded evidentiary material, that is inappropriate in a traditional federal court complaint. *See Est. of Valentine by & through Grate v. South Carolina*, No. CV 3:18-895-JFA, 2018 WL 11383502, at *1 (D.S.C. Nov. 28, 2018) (ordering plaintiffs to file an amended complaint without inclusion of "[e]videntiary matters" and explaining that "[e]videntiary development is to be had by way of discovery and presentation of evidence at a subsequent trial"). The Court notes that while more than 18 paragraphs in the Complaint detail the minutia of discovery disputes between counsel in a state civil action, the Complaint's factual allegations regarding certain Defendants are confined to only one sentence, notwithstanding that two causes of action are alleged against all 33 Defendants.

2

**JA105**

Rule 1 of the Federal Rules of Civil Procedure sets out the Rules' scope and purpose, explaining that "[t]hey should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Pleadings are governed by Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Further, "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). As Judge Childs explained in dismissing an amended complaint under Rule 8(a):

> The principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial. The statement should be short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.

*Holt v. Stroman*, No. 3:12-CV-03539-JMC, 2015 WL 1061990, at *2 (D.S.C. Mar. 11, 2015), *aff'd*, 648 F. App'x 367 (4th Cir. 2016) (internal quotation marks and citations omitted).

The Complaint appears to share many similarities with the amended complaint dismissed by Judge Childs in *Holt*. Specifically, within the individual causes of action, Plaintiff states that he "incorporates each of the preceding paragraphs herein as if set forth verbatim," ECF No. 1 at ¶¶ 219, 238, 247, and makes "only conclusory statements, outline[s] the relevant law with only vague allusions to the alleged facts, or mention[s] a few facts that still fall far short of showing how Defendants' actions meet the elements of the causes of action alleged." *See Holt*, 2015 WL 1061990, at *3; ECF No. 1 at 85–91. While Plaintiff's Complaint makes numerous factual allegations against certain Defendants, it makes almost no factual allegations against others, yet vaguely refers to all "Defendants" in the paragraphs pled under the § 1985 and § 1986 causes of action, making it difficult "to figure out what legally sufficient claim the plaintiff[] [is] making and against whom [he is] making it." *See North Carolina v. McGuirt*, 114 Fed. App'x 555, 559

3

**JA106**

(4th Cir. 2004) (finding the district court did not abuse its discretion when dismissing a complaint that was "long and complex" and forced the reader to cross reference the factual background section to match to the legal claims); *see also Parkins by & through Turner v. South Carolina*, No. CV 7:21-2641-HMH, 2022 WL 3644052, at *4 n.5 (D.S.C. Aug. 24, 2022) ("Plaintiffs' repeated ambiguous references to 'these defendants' throughout the amended complaint have made it, at best, exceedingly difficult to discern what allegations pertain to which defendants.").

It appears that there may be some merit to various arguments asserted in the motions to dismiss, but the Court has determined that, at this juncture, the most feasible course of action is to grant Plaintiff's request for leave to file an amended complaint. It would not serve the interests of judicial economy to research and rule on the pending motions based on Plaintiff's current allegations, if the Court then allows Plaintiff to amend his Complaint. Moreover, pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, Plaintiff has a right to amend his pleading once as a matter of course within 21 days after service of a motion under Rule 12(b) or (e). Additionally, leave to amend a complaint should be "freely" given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Foreman v. Davis*, 371 U.S. 178 (1962); *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). Accordingly, the Court grants Plaintiff's request for leave to amend his Complaint and affords Plaintiff the opportunity to cure the purported pleading defects with an amended complaint that complies with Rule 8(a) of the Federal Rules of Civil Procedure.

For the foregoing reasons, IT IS ORDERED that Plaintiff shall have until February 24, 2023, to file an amended complaint. The Court instructs Plaintiff to limit the amended complaint to no more than 45 pages in length. Evidentiary matters shall not be embedded in the new complaint. *See Estate of Valentine*, 2018 WL 11383502, at *1 (D.S.C. Nov. 28, 2018) (instructing Plaintiff to file a second amended complaint, limited to no more than 35 pages in length with no

4

**JA107**

evidentiary matters pleaded in the new complaint); *see also Parkins by and through Turner v. South Carolina*, C.A. No. 7:21-2641-HMH, ECF No. 27 at 3 (Oct. 6, 2021 Opinion & Order instructing Plaintiffs to file an amended complaint limited to no more than 35 pages in length with no evidentiary matters pleaded in the new complaint). If Plaintiff timely files an amended complaint, the pending motions to dismiss will become moot.

**IT IS SO ORDERED.**

Molly H. Cherry
United States Magistrate Judge

February 3, 2023
Charleston, South Carolina

## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| John Trenton Pendarvis, | ) | C/A No: 2:22-CV-03142-BHH-MHC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **AMENDED** |
| Alan M. Wilson, Mark A. Keel, Hugh E. | ) | **COMPLAINT** |
| Weathers, L.C. Knight, W. Jeffrey Young, | ) | **(42 U.S.C. § 1983 _et seq._)** |
| Robert D. Cook, Emory Smith, Jr., David S. | ) | **(Jury Trial Demanded)** |
| Jones, T. Stephen Lynch, Harley L. Kirkland, | ) | |
| Wesley Vorberger, Robert Kittle, Adam L. | ) | |
| Whitsett, Frank O'Neal, Jason Wells, Glenn | ) | |
| Wood, John Neale, Rhett Holden, Alden G. | ) | |
| Terry, Derek M. Underwood, J. Clint Leach, | ) | |
| Aaron Wood, John Stokes, Vanessa Elsalah, | ) | |
| Brittany Jeffcoat, Eva Moore, Ray Dixson, | ) | |
| Frank Thompson, Robert Krutak, Jonathan | ) | |
| Calore, Charlie Scrubbs, and Wayne Eaddy, | ) | |
| | ) | |
| Defendants. | ) | |

The Plaintiff, by and through his undersigned attorneys and complaining of the Defendants herein, hereby alleges and pleads the following:

### PRELIMINARY STATEMENT OF CASE, PARTIES & JURISDICTION

1.  Plaintiff John Trenton Pendarvis (Pendarvis) is a citizen and resident of, and the majority of events giving rise to this litigation took place in, Dorchester County, South Carolina, within the Charleston Division of the District of South Carolina.

2.  Pendarvis alleges violations of his constitutional rights by the Defendants in their individual capacities pursuant 42 U.S.C. §§1983 _et seq._, for the Defendants' conduct individually and in concert with others, under color of state law in falsely arresting Pendarvis, maliciously prosecuting him, unlawful taking and destruction of his property, depriving him of due process,

1

conspiring to do the same, then further conspiring to obstruct justice and deny Pendarvis due process through intentional and willful discovery abuse in state court actions.

3. At all times relevant to this action, all Defendants were acting under the color of state law as agents, employees and/or heads of state governmental agencies. These Defendants are being sued for their own individual and personal conduct, their conduct in concert and/or conspiring with others and, for those with supervisory capacity, their supervisory conduct over subordinate Defendants.

4. Plaintiff is informed and believes that Alan M. Wilson (WILSON), W. Jeffery Young (YOUNG), Robert D. Cook (COOK), Emory Smith Jr. (SMITH), T. Stephen Lynch (LYNCH), Robert Kittle (KITTLE), David S. Jones (JONES), Harvey K. Kirkland (KIRKLAND), and Wesley Vorberger (VORBERGER), collectively referred to as "SCAG Defendants," are being sued in their individual capacities under 42 U.S.C. §§1983, *et seq*, for their conduct under the color of state law as the head of, supervisory agent/employees and/or agents/employees for SCAG and their efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff.

5. Plaintiff is informed and believes that Mark A. Keel (KEEL), Adam L. Whitsett (WHITSETT), Frank O'Neal (ONEAL), Jason Wells (WELLS), Glenn Wood (GWOOD), John Neale (NEALE), and Rhett Holden (HOLDEN) , collectively referred to as "SLED Defendants" are being sued in their individual capacities under 42 U.S.C. §§1983, *et seq*, for their conduct under the color of state law as the head of, supervisory agent/employees and/or agents/employees for SLED and their efforts to act independently and/or conspire with others to violate the

Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff.

6. Plaintiff is informed and believes that Hugh E. Weathers (WEATHERS), Alden G. Terry (TERRY), Derek M. Underwood (UNDERWOOD), J. Clint Leach (LEACH), Aaron Wood (AWOOD), John Stokes (STOKES), Vanessah Elsalah (ELSALAH), Brittany Jeffcoat (JEFFCOAT), and Eva Moore (MOORE), collectively referred to as "DAG Defendants," are being sued in their individual capacities under 42 U.S.C. §§1983, *et seq*, for their conduct under the color of state law as the head of, supervisory agent/employees and/or agents/employees for DAG and their efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff.

7. Plaintiff is informed and believes that L.C. Knight (KNIGHT), Ray Dixson (DIXSON), Frank Thompson (THOMPSON), and Robert Krutak (KRUTAK), collectively referred to as "DCSO Defendants," are being sued in their individual capacities under 42 U.S.C. §§1983, *et seq*, for their conduct under the color of state law as the head of, supervisory agent/employees and/or agents/employees for DCSO and their efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff.

8. Plaintiff is informed and believes that Jonathan Calore (CALORE), Charlie Scrubbs (SCRUBBS) and Wayne Eaddy (EADDY), collectively referred to as "FORESTRY Defendants," are being sued in their individual capacities under 42 U.S.C. §§1983, *et seq*, for their conduct under the color of state law as the head of, supervisory agent/employees and/or agents/employees for FORESTRY and their efforts to act independently and/or conspire with

**JA111**

others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff.

9. Subject matter jurisdiction is conferred upon the Court by 28 U.S.C.A. §§ 1331, 1367 and 1343.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), (2) & (3).

<u>**NATURE OF ACTION**</u>

11. Plaintiff's claims are brought pursuant to 42 U.S.C.A. §§1983, *et seq*., and the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and under the common law, the statutory law, and the Constitution of the State of South Carolina, against the Defendants. The Plaintiff's claims would specifically include, but not be limited to, claims under 42 U.S.C. §1983 *et seq*.

12. During the time in question, the Plaintiff's Constitutional rights were well established and well known to the Defendants, including and not limited to, the Plaintiff's right to bodily integrity, right to be free from unreasonable searches and seizures, right to Due Process, and all other constitutional established and recognized as arising from the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

13. During the time in question, the Defendants had actual and/or constructive knowledge that their conduct posed an unreasonable risk of Constitutional injury to the Plaintiff and their responses with that knowledge were subjectively and objectively unreasonable regarding the offense(s) as alleged herein; and there is a causal link between their actions and the Constitutional injuries suffered by the Plaintiff.

<u>**FACTUAL ALLEGATIONS**</u>
**The Hemp Farming Act and legalization in South Carolina**

4

14. South Carolina's Hemp Farming Act (HFA), 2014 Act No.216, was signed into law on March 28, 2019, and is contained within S.C. Code §46-55-10 *et seq.*

15. In passing the HFA, the South Carolina General Assembly provided statutory safeguards to protect South Carolina farmers, codifying these safeguards via S.C. Code §46-55-40, Corrective Action Plans, which provides that South Carolina farmers "shall" be allowed "to conduct a corrective action plan if the commissioner, or his designee, determines that the licensee negligently violated" the HFA.

16. Included in S.C. Code §46-55-40 are the following specific examples of violations for which a South Carolina farmer licensed under the HFA shall be allowed to conduct a corrective action plan:

    a. Failing to provide a legal description and global positioning coordinates of the land on which the licensee cultivates hemp;

    b. Failing to obtain a proper license or other required authorization from the commissioner; or,

    c. Producing Cannabis sativa L with more than the federally defined THC level for hemp.

*See* S.C. Code §46-55-40(A)(1)(a)(b)and(c).

17. The South Carolina General Assembly further safeguarded South Carolina farmers by specifically directing that the corrective plans described in S.C. Code §46-55-40 were "**the sole remedy for negligent violations of this chapter**, regulations promulgated pursuant to this chapter, or the state plan. A licensee who violates a provision of this chapter, regulations promulgated pursuant to this chapter, or the state plan **shall not be subject to any criminal or civil enforcement action**." S.C. Code §46-55-40(A)(3), emphasis added.

18. The SC General Assembly directed WEATHERS and DAG to submit a "state plan" to the United States Department of Agriculture (USDA) within sixty (60) days of the effective date

**JA113**

of the Act that proposed to regulate hemp production and was required to include "a procedure
to comply with the enforcement outlined in this act." *See* 2019 Act No.14, Section 2(A)(4).

19. WEATHERS, TERRY, UNDERWOOD, LEACH, AWOOD, STOKES, ELSALAH,
JEFFOCOAT and MOORE failed to timely submit a "state plan" as required by the Act, with
no "state plan" being submitted, let alone approved, until (according to a press release by
MOORE on behalf of DAG), April 2, 2020.

20. Both WILSON and KEEL and their agents/employees and agencies have been vehemently and
publicly opposed to cannabis legalization efforts in South Carolina. This opposition is
exemplified by a joint press conference featuring WILSON and KEEL in January 2019 at
which WILSON referred to cannabis as "the most dangerous drug" and by KEEL having his
agents/employees like ONEAL regularly speak to civic, community and law enforcement
groups in opposition to the legalization of cannabis in any form or fashion.

**The Plaintiff and the Hemp Farming Program**

21. Subsequent to the passage of the Act and its signing into law, the DAG Defendants actively
promoted their Hemp Farming Program, with WEATHERS, TERRY, ENSALAH and
MOORE all actively promoting hemp farming through public statements and speaking
engagements in the community.

22. Pendarvis bought in to the DAG Defendants' promotion of hemp as a potential cash crop and
applied to participate in the DAG Defendants hemp farming program, paying a $500 Dollar
application fee and being issued License #1992 on or about May 1, 2019, a license that
authorized Pendarvis to grow and cultivate hemp.

6

**JA114**

23. To obtain the license described above, Pendarvis was required to enter in to a "Hemp Farming Program Participation Agreement" (HPA), as any South Carolina farmer wishing to grow hemp had to enter in to the HPA in order to be issued a hemp grower license.

24. Section VIII of the HPA, titled "Plant Destruction," stated:

   a. Permitted Grower acknowledges and consents to the forfeiture or destruction, without compensation, of hemp material:

   i. Found to have a measured delta-9 THC content of more than 0.3 percent on a dry weight basis;

   ii. Bearing off-label pesticide resideues (or believed by [DAG] to have had pesticides applied off-label), regardless of the source or cause of contamination; and

   iii. Growing in an area that is not licensed by [DAG].

   b. Notwithstanding the foregoing, Permitted Grower or processors may retain any hemp that tests between three-tenths of one percent to one percent delta-9 tetrahydrocannabinol on a dry weight basis and recondition the hemp product by grinding it with the stem and stalk. Hemp product must not exceed three-tenths of one percent delta-9 tetrahydrocannabinol.

25. The language of Section VIII quoted verbatim above is directly contradicted by the plain language of the statute, which specifically directs that for two of the three listed conditions for destruction under VIII(a), the corrective action plans as required under S.C. Code §46-55-40 **are the sole remedy** for negligent violations.

26. There is no language in the Agreement outlining the procedure by which DAG will enact enforcement, as was required in the HFA. *See* 2019 Act No.14, Sec.2(A)(4). Specifically, despite the WEATHERS having sworn a duty to uphold and protect the Constitution of the United States and the State of South Carolina, nowhere in the Agreement is there any language explaining how a finding by DAG that a violation of the HFA has occurred, or a finding of whether the alleged violation is negligent or willful, can be challenged, despite South

7

Carolina's Constitution specifically guaranteeing 4th, 5th and 8th Amendment rights to due process right apply to such agency decisions:

> No person shall be finally bound by a judicial or quasi-judicial decision of an administrative agency affecting private rights **except on due notice and an opportunity to be heard**; **nor shall he be subject to the same person for both prosecution and adjudication**; nor shall he be deprived of liberty or property unless by a mode of procedure described by the General Assembly, and **he shall have in all such instances the right to judicial review**.

South Carolina Constitution, Art. I, Sec.22, emphasis added.

27. Pendarvis is informed and believes that throughout the enforcement action taken against him by the Defendants as detailed in this complaint, all of the Defendants were aware that: a) Pendarvis had these constitutional rights, and b) that at no time had Pendarvis ever waived such rights.

**Allegations of Plaintiff Violating Hemp Agreement**

28. After receiving his license, Pendarvis was confronted with drought conditions so severe that WEATHERS publicly warned on October 31, 2019 "we may be seeing its effects for a long time."

29. Those drought conditions led to Pendarvis being unable to plant his hemp crop on the GPS coordinates he had originally designated to DAG.

30. On July 30, 2019, while ELSALAH conducted a farm visit at Pendarvis' Dorchester County property it was discovered that Pendarvis' had planted his Dorchester County crop on coordinates other than those that had been submitted to DAG. Pendarvis is informed and believes he sent the correct coordinates via a text message during or immediately following ELSALAH's visit.

31. On July 31, 2019, at 2:52 p.m., UNDERWOOD sent Pendarvis an email, courtesy copying TERRY, asking Pendarvis to "provide a narrative of your reasoning for not sending in an amendment and planting hemp on 10 acres of non-amended farm land."

32. Pendarvis replied with an email that same afternoon explaining that weather/soil conditions had prohibited him from using the GPS coordinates originally reported, he had not realized the fields used were not on file (believing he had reported multiple fields) and that he had believed "everything would be finalized during inspection." Pendarvis pointed out the additional field was within a two-mile radius of the original reported field and that it had not increased acreage. That same day, UNDERWOOD spoke with Pendarvis on the phone and told Pendarvis that he would need to submit an official amendment form for review, which Pendarvis did the next day.

33. Via email dated that same Thursday, August 1, 2019, at 11:58 a.m., and which was courtesy copied to ELSALAH and TERRY, UNDERWOOD told Pendarvis his case would be reviewed "with our Attorney to determine if a willful violation of the grower's agreement is present" and **"once we make a final decision, we will be in touch**."

34. Four days later on August 5, 2019, UNDERWOOD sent an email to WELLS, courtesy copying ELSALAH, TERRY and ONEAL, in which he reported to SLED that DAG had found Pendarvis "has willfully grown hemp on non-reported or non-listed acreage for 6-8 weeks."

35. That first August 5th email was immediately followed by another email from UNDERWOOD, sent to WELLS and ONEAL, courtesy copied to TERRY and ELSALAH, with the subject heading "Memo to Enact Enforcement," importance labeled "high," and containing the attachment "Memo to SLED 8-5-2019 Pendarvis.pdf" which informed SLED that DAG had

decided Pendarvis' growing location issue was a "willful violation of the Hemp Farming Act" and "request SLED enact enforcement of this violation."

36. On August 6, 2019, UNDERWOOD sent an email to WELLS and courtesy copied to ONEAL, TERRY and WEATHERS, attaching an edited version of the memo which had new language stating that "[DAG] does not believe this violation to be negligent or an oversight on the part of Mr. Pendarvis."

37. On August 8, 2019, 11:48 a.m. UNDERWOOD sent an email to WELLS, courtesy copying ONEAL, TERRY, WEATHERS and ELSALAH, wherein DAG was asking SLED "Any update?" regarding the "Letter to enact enforcement Pendarvis Hemp."

38. ONEAL responded to UNDERWOOD, TERRY, WEATHERS, ELSALAH, and WELLS, replying that "we are having difficulty in what to address **with so many gray areas concerning enforcement**…We are having to get AG opinions along the way and **the last thing we want to do is an action that will be perceived in a negative light by the media or general assembly**."

39. At no time above did UNDERWOOD, TERRY, WEATHERS or ELSALAH, inform ONEAL, WELLS or any other Defendant the reason there were "so many gray areas" in enforcement was because the DAG Defendants had failed to create and/or submit a state plan to the USDA within sixty days (which would have been May 27, 2019), as required by the HFA.

40. UNDERWOOD replied to that email letting ONEAL, WELLS, TERRY, WEATHERS and ELSALAH all know DAG would not approve Pendarvis' amendment application so there was no "deadline" to act and for SLED to let DAG know "what we need to do to help" in the enforcement actions being taken against Pendarvis.

**August 8, 2019 SCAG Opinion**

10

**JA118**

41. The SCAG opinion ONEAL's August 8th email referenced, was requested on behalf of the SLED Defendants by WHITSETT via an August 6, 2019, email to JONES, seeking **"specific guidance…on the proper procedure in this matter"**:

42. WHITSETT's email was forwarded by JONES to COOK the morning of August 7, 2019, with COOK promptly replying about how the HFA is an "ultra murky" statute, that gives "no direction whatever to law enforcement."

43. JONES and COOK traded emails with draft language, noting at one point that "**if we want to talk about due process, there it is**," before forwarding a final draft to SCAG admin staff directing the opinion be tagged as "Constitutional law" with the description "**An opinion on the appropriate procedure to pursue enforcement of the Hemp Farming Act with respect to hemp grown in violation of the Act**."

44. The final opinion signed by JONES and COOK on behalf of SCAG dated August 8, 2019 (August 8th Op.) was addressed to WHITSETT and specifically provided the "specific guidance" WHITSETT had requested "on the proper procedure" when enforcing a "willful violation" included that "SLED should seek judicial authorization for illegally-grown hemp in order to ensure that the grower receives due process," that authorization be sought "with notice to the grower and an opportunity for them to be heard in a hearing in an abundance of caution."

45. The August 8th Op. concluded by pointing out the DAG Defendants need to promulgate regulations to address some of the "numerous issues" that had been raised by SLED and SCAG regarding their perceived shortcomings with the HFA as drafted by the SC Legislature, but failed to mention the state plan or the 4th, 5th and 8th amendment due process protections required by Art. I, Sec.22 of the South Carolina Constitution.

46. The regulations suggested by JONES and COOK should have been covered within the "state plan" WEATHERS and the DAG Defendants were required to promulgate and submit to the USDA within sixty (60) days of the HFA's effective date, which WEATHERS and the DAG Defendants failed to do. This is evidenced by the "state plan" which was ultimately submitted and approved **<u>after</u>** the actions taken by the Defendants to arrest and destroy Pendarvis' hemp crop containing an entire section on "Enforcement," detailing "Adjudicatory Proceedings" in which "the Commissioner shall notify the Permittee of the alleged violation as well as an opportunity to respond therein, by certified mail, prior to any scheduled hearing date" (*see* State Plan, Sec.17(1(b)); "no penalty shall be assessed, nor may any permit be suspended or revoked by the Commissioner prior to the holding on an adjudicatory hearing" (Sec.17(1(d)); requiring the adjudicatory hearing to be conducted pursuant to the S.C. Administrative Procedures Act (Sec.17(1(e)); and providing an appeals process (Sec.17(2)).

**Pre-litigation Known Conduct After the August 8th Op. leading to Arrest & Destruction**

47. On August 28, 2019, while NEALE was at Pendarvis' farm collecting samples, Pendarvis informed NEALE there were two additional acres he had used for his allotment in Marion Co., subsequently emailing to DAG a 2nd Acreage Amendment Application at approximately 10:38 a.m. ("Marion Co. crop"), providing both a street address and GPS coordinates.

48. On Thursday August 29, 2019, at 11:53 a.m., UNDERWOOD sent Pendarvis an email, courtesy copied to ELSALAH and TERRY, which informed Pendarvis it was the "official response" to his actions and that DAG was not processing his location amendment applications because DAG believed it was a willful violation. Despite stating DAG had notified SLED of "these culpable violations, greater than negligence," the correspondence did not explain to Pendarvis SLED had been notified 24 days prior, what rights/procedure Pendarvis had to

challenge DAG's decision, and/or what enforcement action was being pursued against Pendarvis.

49. Pendarvis called UNDERWOOD "several times" over the weekend following that Thursday, August 29, 2019, email, but UNDERWOOD "waited until first of the week to return his call." UNDERWOOD describes Pendarvis asking "what does this letter mean," and that Pendarvis "seemed confused and asked what he needed to do." UNDERWOOD offered no explanation beyond the letter and an instruction that Pendarvis could contact TERRY.

50. On September 6, 2019, JEFFCOAT began emailing Pendarvis asking him about "the two additional acres you wish to amend to your license," i.e., the Marion Co. crop.

51. On September 10, 2019, UNDERWOOD joined the effort, emailing Pendarvis, JEFFCOAT, ELSALAH and TERRY at 4:52 p.m., telling Pendarvis his "cooperation in this matter is of upmost importance" and "time is of the essence" regarding the Marion Co. crop, with JEFFCOAT following up with another email courtesy copying UNDERWOOD, ELSALAH and TERRY again requesting Pendarvis provide the location of the additional two acres.

52. The next day, September 11, 2019, TERRY emails Pendarvis, courtesy copying UNDERWOOD, JEFFCOAT and ELSALAH and specifically stating DAG is being asked to obtain the location information by SLED.

53. Pendarvis responded via email dated September 11, 2019, 8:12 a.m., by email resubmitting the 2nd Acreage Amendment Application, noting it was the same application "**sent on August 28th for Trent Pendarvis**" and explaining to call if anything else was needed.

54. Sometime before 11:45 a.m. on September 19, 2019, NEALE obtained Arrest Warrant 2019A1810300867 for a "Miscellaneous/General Sessions Misdemeanor Offense where no punishment provided by statute" from Dorchester County Magistrate Judge Ryan D.

Templeton. The warrant was prepared by NEALE with assistance/review from GWOOD. The affidavit portion of that warrant referenced an "attached affidavit." That affidavit was executed by NEALE and describes the offense as "Unlawful Cultivation of Hemp – 1st Offense (CDR CODE 3554) CODE SECTION: 46-55-20(A)(1)" and contains "probable cause" sworn testimony by NEALE that states DAG determined Pendarvis willfully violated the HFA because he grew hemp on "the Maple Hill Road site" without obtaining prior approval and his amendment application was denied.

55. Notably absent from the warrant or affidavit is any notice that the SLED Defendants were going to seize and destroy Pendarvis' hemp crop upon serving the requested arrest warrant **or** that the SLED Defendants had previously attempted to obtain judicial authorization for seizure and destruction and that judicial authorization had been denied. WHITSETT has verified under oath such information was **not** relayed to Magistrate Judge Templeton.

### Arrest & Destruction of Dorchester County Hemp Crop

56. On September 19, 2019, at approximately 11:45 a.m., numerous Defendants showed up at Pendarvis' farm in Dorchester County. Pendarvis is informed and believes that specific individual Defendants present at his Dorchester County farm that day were ONEAL, NEALE, GWOOD, HOLDEN, STOKES, DIXSON, THOMPSON, KRUTAK, SCRUBBS and EADDY, but he believes there may have been other individuals also present. At least one Defendant, THOMPSON, was outfitted as though they were serving a high-risk warrant on a violent criminal, dressed in a tactical vest sporting multiple loaded 30-round high-capacity assault rifle magazines.

**JA122**

57. Interactions between Pendarvis and some of the Defendants at his Dorchester County farm on September 19, 2019, are memorialized via a body-worn camera (BWC) video that has been identified by SLED as being GWOOD's BWC.

58. That video shows a SLED Agent (believed to be NEALE), ONEAL and GWOOD (not visible, but present via audio since it is his BWC) having the following exchange with Pendarvis beginning at the 11:49:00 timestamp and showing Pendarvis **refusing to consent to the destruction of his hemp crop** and instead requesting due process (to call his lawyer):

-NEALE:        We have got to something with this. So are you good with us, cutting it down or…

-PENDARVIS:    I'd rather you talk to my lawyer first.

-NEALE:        Ok.

-ONEAL:        Who's your lawyer?

-PENDARVIS:    I'll get ahold of Mr. Charles Williams.

-ONEAL:        Ok. (*looking at NEALE and nodding*) **Go ahead then**.

-NEALE:        Well, right now (*walking over to Pendarvis and grabbing his arm*) we are going to place you under arrest for growing hemp without a license.

-ONEAL:        Cultivating.

-PENDARVIS:    For what?

-NEALE:        Because this is not – this is an unlawful –

-ONEAL:        We'll serve the warrant here in just a minute. Tell you about – what's all involved.

59. At 11:50:21, as NEALE and ONEAL are cuffing his hands behind his back, Pendarvis asks for due process a second time:

-PENDARVIS:    Can I call my lawyer before y'all –

15

**JA123**

-GWOOD:         **Yes, sir**. **Absolutely**. Let them finish getting your knives and stuff. Then they'll take those cuffs lose for a second and **we'll let you make that telephone call**.

(*ONEAL approaches GWOOD and motions for him to follow*)

-ONEAL:          Hey, let me talk to you for a second.

60. ONEAL and GWOOD walk away from Pendarvis and GWOOD's BWC mic is turned off, after which there are no more assurances that Pendarvis will be allowed a call while on the scene. STOKES is standing in proximity to ONEAL and GWOOD when the "unrecorded" conversation takes place, after which no more assurances of phone calls on site are made.

61. Plaintiff is informed and believes that ONEAL and GWOOD intentionally cut off GWOOD's BWC mic so as to willfully and intentionally fail to preserve video evidence, conduct which violates SLED Policy 13.43 "Body Worn Cameras." Specifically, "Operating Procedures," subsection (3), which states "during these types of encounters, once the BWC is activated it **should remain on until the incident has reached a conclusion or the agent leaves the scene**"; subsection (11) which details the requirements of stopping a BWC recording if it becomes necessary; or subsection (14) prohibiting agents from attempting "to edit or erase any BWC recordings without express permission from the Chief."

62. All told, Pendarvis requested due process **before** his hemp crop was destroyed at least seven (7) times, with the BWC videos showing these requests for being made in full view and hearing of ONEAL, NEALE, GWOOD, STOKES, and THOMPSON. Those requests by Pendarvis included specific requests to contact his lawyer **before** his hemp crop was destroyed with Pendarvis specifically being told by ONEAL, in full view and hearing of the other on-scene defendants, that "we're gonna cut it regardless. Your lawyer can't stop us from cutting it," and "we'll talk to your lawyer later."

16

**JA124**

63. Pendarvis' was arrested, handcuffed and transported by KRUTAK to the Dorchester County Detention Center where he was booked.

64. While Pendarvis was being transported to the detention center, the on-scene Defendants proceeded to completely destroy his Dorchester County hemp crop by bushhogging Pendarvis' fields with SC Forestry equipment. Plaintiff is informed and believes ONEAL, NEALE, WELLS and GWOOD personally took part in the destruction of his hemp crop, physically taking possession of and destroying hemp plants.

65. Pendarvis is informed and believes that FORESTRY agents/employees SCRUBBS and EADDY personally assisted with the destruction of his hemp crop, using FORESTRY equipment (tractors and bush hogs) to mow down his hemp crop.

66. Before taking and destroying Pendarvis' hemp crop without providing him due process, the on-scene Defendants made videos and selfies to memorialize their "crime-fighting" work. Specifically, ONEAL was video recorded chopping-up plants by another SLED Defendant on-scene and STOKES took selfies.

67. On September 20, 2019, both KEEL and WEATHERS publicized written statements to the media "FOR IMMEDIATE RELEASE" on Pendarvis' arrest, identifying Pendarvis by name. In DAG's statement, MOORE stated "the decision to take action – and what action to take – lies with law enforcement," leaving out the active role DAG took in helping SLED with the seizure and forfeiture enforcement.

68. Via correspondence dated November 4, 2019, WHITSETT responded to Pendarvis' counsel's September 20, 2019, evidence preservation correspondence, acknowledging receipt and producing "all non-exempt public records in SLED's possession that are responsive to your request at this time."

69. Via correspondence dated January 22, 2020, the First Circuit Solicitor's Office produced Rule 5/*Brady* material to Pendarvis' counsel on the criminal case.

70. In neither the response to Pendarvis's counsel above or within the materials SLED had provided the First Circuit Solicitor's office, did SLED identify and/or produce any AG opinions requested or produced **after** the August 8th AG Op. or any communications with Chief Administrative Judge for the First Circuit.

**Pre-litigation Known Conduct – Marion County Case**

71. On or about September 25, 2019, Pendarvis' counsel became aware that the SLED and DAG Defendants intended to seize and destroy the two acres in Marion Co.

72. On September 26, 2019, Pendarvis' attorneys filed a *Petition for an Ex Parte Temporary Restraining Order, Motion for Preliminary Injunction, and Complaint for Declaratory and Injunctive Relief* in the Marion County Court of Common Pleas (Marion Case, *see* C/A No.: 2019-CP-33-00675).

73. On September 26, 2019, the Hon. William H. Seals, Jr., temporarily restrained and issued a preliminary injunction against SLED and DAG, temporarily restraining and enjoining on a preliminary basis SLED and DAG from entering onto the property "for the purposes of destroying the hemp crop planted thereon."

74. On October 7, 2016, SLED filed *Response in Opposition Ex Parte Temporary Order and Preliminary Injunction and Request to Dissolve Such Order*. SLED devoted an entire page in that filing to allegations that the Marion hemp crop was "too hot" (i.e., had tested above 0.03% delta-9 dry weight). *See* p.6, October 7, 2019, SLED Response, Marion case.

75. Nowhere in their October 7, 2016, filing did SLED mention a) that Pendarvis had never been noticed about any of his hemp being "too hot," or b) that both the HFA and HPA specifically

allow that hemp testing as much as 1.0% "too hot" can be "reconditioned." *See* S.C. Code §46-55-40(A)(1-4) and Sec. XIII(b) of HPA.

76. Pendarvis filed a *Supplemental Memorandum* in the Marion case, arguing he had never been given any notice about any of his crop being "too hot," providing his own lab report showing the Marion crop testing within the statutory THC limits and noting in response to being notified by DAG that Pendarvis was in "willful violation," SLED had requested the Aug. 8th Op. from SCAG, then proceeded to ignore all of the advice provided in that Aug. 8th Op. for the "proper procedure" to utilize in dealing with Pendarvis.

77. On October 8, 2019, the parties in the Marion case appeared before Judge Seals in Horry County for a hearing on the merits regarding the injunctive relief requested by Pendarvis. SLED's trial counsel conceded the "too hot" issue during oral argument and, upon specific questioning by the Court, confirmed the only issue SLED was arguing was the location issue.

78. Later that day, the Court notified the parties via email that the preliminary injunction was being granted and providing instructions to Pendarvis' attorneys to draft a proposed order.

79. On November 8, 2019, the Court e-filed an Order on the Marion case that specifically noted the protection against unconstitutional takings citizens have pursuant to case law, the Federal Due Process clauses (found in the Fifth and Fourteenth Amendments) and Art. I, Sec.22 of the South Carolina Constitution and the requirements under the law for a valid waiver of such.

80. That November 8, 2019, Order specifically discussed the August 8th Op., quoting directly from that Aug. 8th Op. in the order before stating "The Court can find no cogent reason to disregard the reasoning set forth by the South Carolina Attorney General opinion issued at Defendant SLED's request in this matter."

19

**JA127**

81. On December 9, 2019, through new counsel, SLED filed a *Notice of Appeal*, appealing the November 8, 2019, Order.

82. On April 1, 2020, DAG provided discovery responses in the Marion case. Of note, in response to IROG#12, which asked DAG to "list with specificity all contact/communications between the Defendants about the Plaintiffs and/or their crops in both Marion and Dorchester Counties," DAG identified only a single communication, sending the memorandum for enforcement to SLED "on or about August 5, 2019."

83. Of additional note in DAG's April 1 Marion discovery responses to IROG#13, which asked DAG to list with specificity all contact/communications between you and any third party regarding the Plaintiffs, DAG identified only letters dated August 5, 2019 to SLED and August 21, 2019 to SCAG, then craving reference "to the documents being produced contemporaneously herewith. The actual produced documents did not contain numerous emails between the DAG and SLED Defendants that were later produced in the Dorchester County state case, exemplified by DAG produced documents in the Marion case being 52 pages produced versus 195 pages produced in the Dorchester case. Nor were any communications the DAG Defendants engaged in/were copied on with the SCAG Defendants identified or produced (other than the identification of the letter to SCAG identified in IROG#13 answer above).

84. Of additional note in DAG's April 1 Marion discovery response to IROG#17, which asked DAG to list with specificity "every prosecutor/attorney general, judicial officer, clerk of court and/or other court personnel the Defendants communicated with about seizing and destroying the Plaintiffs' crops in both Dorchester and Marion Counties," identify if the information of the communication was subsequently shared with other parties and if so, identify the other

parties, DAG identified only the letter DAG sent to SCAG dated August 21, 2019, notifying SCAG of Pendarvis' violation.

85. On May 15, 2020, SLED filed their initial brief and designation of matter for the Marion County appeal. At no time in any filing at the trial level, or in any appellate filing, did SLED ever identify or refer to any attorney general opinion other than the August 8, 2019, AG Op., **nor** did SLED ever refer to the USDA-approved state plan which requires many of the exact same due process safeguards Judge Seals' found had been denied Pendarvis in granting the injunction.

86. On July 28, 2020, SLED finally produced discovery responses for the Marion case, 197 days late. In responses WHITSETT participated in answering, SLED did not identify or produce any AG opinion requested, created or amended **after** the August 8th AG Op. and SLED refused to identify or produce anything related to the Dorchester County crop. SLED's IROG#17 answer is an example of SLED's obstructionist conduct in that it claims Pendarvis' attorney "was copied on every communication from the Defendant to any prosecutor or judicial officer related to this matter." That is false. Pendarvis' counsel was not copied on numerous communications between the SLED and SCAG Defendants about the matter, nor on any communications between WHITSETT, NEALE, ONEAL, WELLS and the Hon. Diane S. Goodstein or her law clerk.

87. Via Rule 11 correspondence dated February 18, 2021, Pendarvis notified SLED's counsel of deficiencies in SLED's discovery responses in the Marion case.

88. On March 12, 2021, having received no response from SLED or their attorney regarding their deficient discovery responses, Pendarvis filed a *Motion to Compel Discovery Responses from SLED* on the Marion case.

21

**JA129**

89. In the March 12, 2021 Marion County motion to compel, Pendarvis specifically argued that if SLED was involved in communications regarding the seizure of Pendarvis' hemp crop in Dorchester and was told by a judicial officer, other agency and/or internally that a hearing would be necessary, those communications would be relevant/material to the Marion Co. case.

90. In that Marion County motion to compel, Pendarvis specifically noticed SLED that despite their interrogatory answers having stated "there are numerous emails and memorandum from the Attorney General as well as the Department of Agriculture" and "communications with the Attorney General's Office included opinions from the Attorney General. This includes emails between Adam Whitsett and David Jones," no such communications had been produced, that "if there are communications that involved other parties/agencies, those need to be produced" and any claims of privilege needed to actually comply with the requirements of Rule 26(b)(5)(A) SCRCP to clearly identify what was being withheld.

91. On March 10, 2022, less than two (2) hours before a hearing on Pendarvis' Marion County motion to compel was to be heard, SLED/KEEL's attorney contacted Pendarvis' counsel by telephone, asking if the hearing was necessary since they had subsequently produced "everything" in the Dorchester County case. Pendarvis' counsel noted that KEEL had not produced everything, as there had been specific discovery identified, yet not produced in either case despite multiple notices. KEEL subsequently produced 79-pages of missing discovery.

**Dorchester County State Civil Case**

92. On August 23, 2021, Pendarvis filed a civil complaint in the Dorchester County Court of Common Pleas, C/A No.: 2021-CP-18-01486 (hereinafter "Dorchester case"). That complaint was filed against KNIGHT, KEEL and WEATHERS in their official capacities and John Doe(s), asserting causes of action for False/unlawful arrest/imprisonment and assault and

22

**JA130**

battery against KEEL in his official capacity and outrage, abuse of process, defamation/defamation per se, negligence/gross negligence/recklessness and conversion against all defendants.

93. Pendarvis served the Dorchester complaint along with discovery requests upon the defendants. In addition to interrogatories and requests for production, Pendarvis served KEEL with two (2) requests for admission (RFAs) pursuant to Rule 36 SCRCP. RFA#1: "Admit that SLED sought judicial approval to destroy Plaintiff's hemp crop; RFA#2: "Admit that judicial approval of SLED's action was denied."

94. Via email dated October 15, 2021, KEEL's attorney asked for a twenty-one (21) day extension to respond to Plaintiff's written discovery requests. Plaintiff's counsel responded back that same day agreeing to an extension provided "we get full and complete answers" (a condition necessitated by the discovery conduct already being engaged in by SLED in the Marion case and detailed above).

95. The same day that extension was requested, KEEL responded to Pendarvis' request for admissions (RFAs). RFA#1: was "denied as stated," with SLED going into great length about what NEALE had done to obtain the arrest warrant. RFA#2: SLED objected claiming "SLED's action" was "vague and ambiguous," before denying "the request as stated."

96. Via Rule 11 correspondence dated November 9, 2021, Pendarvis notified KEEL that he believed KEEL's responses to RFA#1 and RFA#1 were "bad faith efforts to evade properly responding under the rules," providing specifics for why the responses failed to comply with the South Carolina Rules of Civil Procedure; that his discovery was deficient in that he had failed to produce a Rule 33 verification and that KEEL had failed to produce specifically referenced *BATES STAMPED* pages.

97. KEEL refused to cure the deficiencies noticed via Pendarvis' November 9, 2021, Rule 11 letter, but after receiving KEEL's last-minute produced 79-pages of missing discovery in the Marion case and reviewing that missing discovery, Pendarvis sent KEEL another Rule 11 letter on March 14, 2022.

98. The March 14, 2022, Rule 11 letter specifically noticed KEEL that the newly produced missing discovery showed his responses to RFA#1 and RFA#2 were bad faith efforts to evade properly responding under the rules. Specifically, the September 11, 2019 email correspondence between WHITSETT, NEALE, ONEAL, WELLS and Judge Goodstein's law clerk showed KEEL had specifically sought the very judicial approval he had denied seeking, via the submission of an *ex parte* order for seizure and destruction submitted to Judge Goodstein.

99. The proposed order submitted by NEALE and WHITSETT on September 11, 2019, was drafted by WHITSETT and ordered "the destruction of all of the plants at the above-listed property location in any manner and at such time and in such manner deemed appropriate by SLED. **A copy of the July 10, 2019, Attorney General's Opinion on this issue is attached hereto and hereby incorporated herein**."

100.    The inclusion/submission of the July 10th AG opinion is notable in that it is **not** the opinion specifically requested by KEEL for the appropriate procedure in enforcing Pendarvis' alleged willful violation and does not contain the specific warnings by SCAG defendants that "SLED **proceed with the utmost care to fully ensure that the grower and all interested parties receive due process**." That July 10th AG Op. specifically does **not** have the instruction to seek judicial authorization by providing "notice to the grower and an opportunity for them to be heard in a hearing."

101.    Pendarvis is informed and believes the submission of the July 10th AG Op. instead of the August 8th AG Op. was an intentional and willful attempt on the part of KEEL, WHITSETT, NEALE, ONEAL and WELLS to mislead the Court into signing an *ex parte* order authorizing SLED's seizure and destruction of Pendarvis' Dorchester Co. hemp crop in direct contradiction of the "proper procedure" they had sought and obtained specifically for his case via the August 8th AG Op.

102.    When specifically asked to admit this misleading conduct to the Court was intentional, KEEL, through responses verified under oath by WHITSETT, denied and instead blamed Judge Goodstein, claiming "a request was made to Judge Goodstein for a meeting to discuss the situation, and that was declined."

103.    KEEL made similar claims via correspondence to WILSON dated September 23, 2019, when he attempted, post-seizure/destruction, to obtain a "formal" opinion from the SCAG Defendants by claiming that following the issuance of the August 8th Op. "SLED attempted to secure an order of destruction from a circuit court as discussed in the August opinion; however, **the court would not entertain such**. **While no specific reasoning was provided by the court**…" KEEL also claimed he "was not aware of the consent to forfeiture and destruction contained" within the HPA at the time he sought the August 8, 2019 AG Op.

104.    Judge Goodstein did not refuse "to entertain" SLED's attempts to comply with the August 8th AG Op., rather KEEL, WHITSETT, ONEAL, NEALE and WELLS were specifically attempting to **avoid** following the proper procedure of the August 8th AG Op, as evidenced by their refusal to refer to or provide the Aug. 8th AG Op. when submitting their proposed order.

105.    Judge Goodstein, through her law clerk, specifically offered KEEL, WHITSETT, NEALE, ONEAL and WELLS a hearing on the matter.

25

**JA133**

106.    Rather than accept Judge Goodstein's offer to conduct the actual "proper procedure" proscribed by the August 8th AG Op. he had requested, KEEL, through WHITSETT, refused, stating "we appreciate [Judge Goodstein's] consideration and do not anticipate needing a hearing on this matter at this time."

107.    Pendarvis noticed KEEL via his March 13, 2022, Rule 11 letter that his responses to the RFAs was a bad faith effort to evade properly responding under the rules, as the above-emails show KEEL did seek judicial approval to destroy Pendarvis' hemp crop and that judicial approval of that action was denied and demanded the bad faith responses be amended.

108.    KEEL refused to amend and correct his responses, willfully and intentionally obstructing justice and denying/delaying discovery and due process in the Dorchester County state case.

109.    Despite the ongoing and repeated attempts to deny/delay discovery in the state cases, as that discovery has painstakingly come about, it has established conduct amongst the Defendants to conspire to violate Pendarvis' constitutional rights, deny him civil and criminal protections afforded him by law, take his property unlawfully, deny him of due process and obstruct justice.

110.    After refusing Judge Goodstein's offer to have a hearing and comply with actual advice given by the August 8th AG Op., the SLED defendants conspired with the DAG and SCAG defendants to "amend" the opinion and take Pendarvis' hemp crop in violation of his due process rights.

111.    Soon after Judge Goodstein refused to sign the proposed *ex parte* order without a hearing on September 11, 2019, WELLS and UNDERWOOD began conspiring on how to get around Judge Goodstein's refusal to sign the proposed order and the proper procedure as advised by

26

**JA134**

the Aug. 8ᵗʰ AG Op., through communications supposedly culminating in "SLED first learning of the [HPA] on September 17, 2019."

112.    Emails withheld and not identified by KEEL at all in the state cases, but subsequently obtained by Pendarvis' via subpoena to the SCAG defendants, show SLED planning to seize and destroy Pendarvis' Dorchester Co. hemp crop the **day before** his arrest. In an email from WELLS to ONEAL, NEALE, WHITSETT and GWOOD on September 18, 2019 at 3:16 p.m., titled "Plan for Destruction of Hemp Field In Dorchester Co.- Trent Pendarvis," WELLS informs ONEAL of the plan WELLS, NEALE, WHITSETT and GWOOD "have in mind to deal with the unlawful hemp farm being operated by [Pendarvis]." NEALE was going to obtain one arrest warrant "tomorrow morning." WELLS had already contacted CALORE to get the availability on when FORESTRY could bring the equipment for destroying the crop and expected to find out later that day. "Once we have a date set for destruction, we will meet at the farm in Harleyville and contact Pendarvis. Pendarvis will then be informed of the arrest warrant and the plans for destruction." WELLS went on to explain the destruction is based on the [HPA], attaching a copy of the HPA and quoting section VIII(a) of the HPA.

113.    CALORE assisted by arranging for SCRUBBS and EADDY to show up with FORESTRY equipment and taking part in the destruction of Pendarvis' crop on September 19, 2019.

114.    On September 19, 2019, WHITSETT emailed COOK, wanting to provide "an update that [KEEL] wants me to discuss," before forwarding COOK the *Plan for Destruction of Hemp Field in Dorchester Co. – Trent Pendarvis* email WELLS had sent the day before, and COOK in turn forwarding that email to JONES at 7:57 a.m.

115.    In furtherance of a scheme/goal to violate Pendarvis' constitutional rights, WHITSETT sent JONES and COOK another email on September 19, 2019, attaching the HPA "with

relevant portions highlighted. In addition, be advised that 2 of the 6 samples SLED tested from this illegal field were above the .3 allowable threshold." WHITSETT sent that knowing Pendarvis had never been noticed of any plants testing "too hot," nor was he ever noticed of such prior to his arrest and the destruction of his Dorchester crop on September 19, 2019. Notably, the only SLED drug analysis ever produced in this matter is dated **September 24, 2019** and **was allegedly for the Marion Co. crop**.

116.    In concert with KEEL's wishes relayed through WHITSETT, JONES and COOK "amended" their August 8th AG Op. via an email sent at 10:11 a.m. on September 19, 2019. Claiming to "understand additional facts have come to light since we issued that opinion," agreeing with SLED's "conclusion in the abstract that if there has been a valid consent as you describe, no judicial authorization for seizure upon notice from the Department of Agriculture that it has found hemp grown unlawfully in willful violation of applicable law," claiming "that where a grower has consented to the seizure and destruction of unlawfully-grown hemp, SLED or another appropriate law enforcement authority with jurisdiction may proceed with the destruction upon notification from the [DAG] that it has found cannabis sativa grown in willful violation of applicable law." JONES and COOK did this knowing a circuit court had refused to authorize the seizure and destruction of the hemp crop and knowing KEEL intended to use the "amended" email opinion to do precisely what the circuit court had refused to authorize.

117.    Pendarvis is informed and believes that the issuance of this "amended" emailed opinion was intended by JONES and COOK to provide legal cover for the SLED, DAG and DCSO Defendants to arrest Pendarvis without affording him the specific protections of the HFA allowing those Defendants along with the FORESTRY Defendants to seize/destroy Pendarvis' property' in violation of his due process rights, a course of action in concert with the fact that

28

**JA136**

agents/equipment were waiting on this email to come through before acting. COOK and JONES conduct in providing this legal cover to the SLED, DAG and DCSO Defendants' unconstitutional acts was so vital, that they got an "attaboy" from WHITSETT that afternoon.

118.    Pendarvis is informed and believes the reason KEEL intentionally failed to identify and produce the September 18, 2019, email, was to hide evidence of how the SCAG, SLED, DAG and FORESTRY Defendants had conspired to violate Pendarvis' constitutional rights in this manner.

119.    Other email communications show the DAG Defendants willfully and intentionally withheld notice from Pendarvis that he was being found in "willful violation" of the HFA at the request of the SLED Defendants, in order to deny Pendarvis any opportunity to be heard in challenging such finding. On August 28, 2019, in an email from UNDERWOOD to WELLS and ONEAL, courtesy copied to TERRY and ELSALAH, UNDERWOOD states "I need some direction as to when I can inform [Pendarvis] that [DAG] has rejected his amendment request and that he is willfully violation the [HPA] and law."

120.    Knowing the SLED Defendants intended to seize and destroy Pendarvis hemp crop with no opportunity for him to be heard and challenge the willful violation finding, the DAG Defendants acted in concert, withholding notice to Pendarvis so as to deny him his right to challenge the planned seizure and destruction of his hemp crop and seek legal remedy to such action. WEATHERS, UNDERWOOD, TERRY and ELSALAH all sat silent knowing they had themselves violated the HFA by **not** submitting a state plan which would have provided Pendarvis due process protections.

121.    UNDERWOOD went so far as to share his "sample email" to Pendarvis with WELLS and ONEAL, courtesy copying TERRY, so that all those defendants knew how/when Pendarvis

was being notified of his "willful violation" and that UNDERWOOD and/or DAG was providing Pendarvis with no notice as to how to challenge that administrative finding nor any opportunity to be heard in challenging that administrative finding.

122.  Pendarvis is informed and believes that the SLED Defendants were aware that the administrative finding of a "willful violation" had **not** been made by an impartial decision maker, rather it had been made by the same DAG Defendants who were acting in concert with the SLED Defendants to help them seize and destroy Pendarvis' hemp crop with Pendarvis being provided no opportunity to challenge that agency decision by DAG.

123.  WEATHERS was specifically copied with the "rejection letter" for Pendarvis' amendment applications via August 28, 2019, email and, thus, was fully aware of the actions and conduct being taken by his agents against Pendarvis and knew at the time he was himself in willful violation of the HFA, having failed to timely create/submit SC's state plan as required by the HFA, and set out the specific rules/regulations that were statutorily required to protect hemp farming program participants like Pendarvis.

124.  The SLED and DAG Defendants were aware that Pendarvis had no knowledge seizure and destruction of his hemp crop was being pursued for the alleged violation, intentionally withholding such information from being provided to Pendarvis as evidenced by emails shared amongst UNDERWOOD, TERRY, ELSALAH, LEACH, GWOOD, WEATHERS, JEFFOCAT, MOORE, ONEAL and WELLS.

125.  DAG Defendants JEFFCOAT and UNDERWOOD worked in concert with the SLED Defendants to violate Pendarvis' constitutional right **after** DAG had found him in willful violation by sending emails to Pendarvis asking him to provide the location of the Marion Co. hemp crop, some such emails being courtesy copied to TERRY and ELSALAH.

30

**JA138**

126.  UNDERWOOD, LEACH, MOORE and TERRY coordinated DAG's public comments about Pendarvis' arrest and the seizure/destruction of the hemp crop in concert with KEEL's public comments, to hide DAG's active participation in concert with SLED and SCAG to deny Pendarvis his constitutional rights.

127.  The coordinated constitutionally violative conduct continued when Pendarvis filed for the TRO in Marion County as evidenced by emails neither identified nor produced by KEEL in either state case but obtained via subpoena to the SCAG Defendants. Those emails document SCAG Defendants continued attempts to provide the SLED Defendants legal cover for violating Pendarvis' constitutional rights, showing WHITSETT sending correspondence to KEEL via email dated September 26, 2019 to YOUNG and courtesy copying KEEL, with YOUNG then forwarding those communications to WILSON, COOK, SMITH, LYNCH, KIRKLAND and VORBERGER with the statement that "Chief Keele says he really needs our help on this."

128.  SMITH, YOUNG, COOK, WILSON, LYNCH, KIRKLAND and VORBARGER all subsequently communicated about giving KEEL the "help" he really needed.

129.  Emails document that KIRKLAND, VORBERGER and SMITH conferred with WHITSETT over the phone on September 26, 2019, who was supposed to stop by their office to meet with them the next day. None of those communications were ever disclosed by KEEL in either state case, despite discovery requests in both specifically asking for all communications about Pendarvis to be described with specificity:

130.  WHITSETT and TERRY specifically shared Judge Seals' October 8, 2019 email informing the parties he was granting Pendarvis' motion for preliminary injunction with SMITH. Via email dated October 22, 2019, WHITSETT and TERRY told SMITH that the Court's ruling

31

**JA139**

"effectively ends this case and renders the entire Hemp licensure program meaningless," a statement whose falsity is proven by the fact that the reasons cited by Judge Seals in the order have all been adopted as proper procedure in SC via the USDA-approved state plan.

131.    SMITH forwarded that email to COOK on October 22, 2019, quoting from a section of Pendarvis' memo that specifically discussed SLED's obtaining the August 8th AG Op. only to ignore it. That email had an attachment (SLED's "Return to TRO") providing SMITH, COOK and the SCAG Defendants with the arguments SLED had made in response to the TRO, thus notifying them of SLED's failure to disclose any attorney general opinion other than the August 8th AG Op.

132.    KEEL and WEATHERS and their agents have repeatedly refused to identify/produce responsive discovery and/or comply with the South Carolina Rules of Civil Procedure in a continued attempt to deny Pendarvis due process, obstruct discovery and hide the conduct in concert between all the Defendants that led to Pendarvis' constitutional injuries.

133.    There were no emergent cirsumstances that supported denying Pendarvis notice and an opportunity to be heard at hearing. It was simply the desire of KEEL, ONEAL, WHITSETT, NEALE, WELLS, GWOOD, WEATHERS, TERRY, UNDERWOOD and ELSALAH that Pendarvis be denied his due process rights. Those Defendants then acted in concert with each other and WILSON, COOK and JONES to provide legal justification to achieve that goal.

134.    Pendarvis is informed and believes that none of the Defendants were ever provided an order authorizing the seizure and destruction of his hemp crop, yet all of the Defendants stood by and allowed his property to be taken in violation of his due process rights, despite Pendarvis'specific challenges to the legality of doing so.

32

**JA140**

135.    KEEL, through WHITSETT, specifically told WILSON and the SCAG Defendants that Judge Goodstein had refused to authorize the seizure and destruction of Pendarvis' hemp crop.

136.    When NEALE appeared in front of Dorchester County Magistrate Judge Ryan Templeton to obtain the arrest warrant for Pendarvis, NEALE intentionally refused to inform Judge Templeton that the plan was to seize and destroy Pendarvis' hemp crop **or** that Judge Goodstein had specicially refused to authorize such action.

137.    ONEAL specifically contacted Judge Goodstein's law clerk "to ascertain which judge was the appropriate one in Dorchester County to contact to secure pre-seizure judicial authorization for the seizure of Pendarvis'" hemp crop. Despite having been told Judge Goodstein was the appropriate Judge for such judicial authorization, and knowing that Judge Goodstein had refused to authorize such conduct without having a hearing, ONEAL was the on-scene decision-maker for KEEL on September 19, 2019, seizing and destroying Pendarvis' hemp crop and specifically refusing to allow anyone to let Pendarvis contact his lawyer prior to the destruction of the crop, in spite of Pendarvis' repeated requests for due process on the scene.

138.    The criminal charges against Pendarvis were dismissed on or about August 5, 2022, with the First Circuit Solicitor's Office specifically noting on the General Sessions tracking sheet that there was insufficient evidence to prove Pendarvis' actions were willful.

139.    Neither the SLED or DAG Defendants issued any press release regarding the dismissal of the criminal charges against Pendarvis, in a continued effort to hide their consitutionally violative conduct.

140.    Both the SLED Defendants and the SCAG Defendants have repeatedly claimed that the HFA is unclear and does not adequately explain the enforcement process, with the SCAG Defendants citing as much in their opinions and even going so far to monitor press stories and

respond to media about how unclear the law is, lest they and their opinion(s) be portrayed in a negative light. COOK and YOUNG complained in emails about being denied similar "notice" and "oppoturnity to be heard" when the media reported on Pendarvis' case in a light they felt was unfair to SCAG, yet sat silent while Pendarvis' suffered the same.

141.    One article that led COOK and YOUNG to direct SCAG's spokesperson respond to notably contained KEEL's response that "his agency sought proper legal advice before taking action in every step of the case," neglecting to inform the media and the public how he and his agency ignored the legal advice the SCAG Defendants had provided in their August 8th AG Op., a fact neither COOK nor YOUNG cared disclose. *See* Gregory Yee, *Arrest of SC hemp farmer underscores growing pains for budding industry*, The Post & Courier, October 3, 2019.

142.    Despite the claimed 'murky" nature of the HFA, the South Carolina General Assembly clearly intended to protect South Carolina farmers from the arbitrary actions taken against Pendarvis by specifically directing that the corrective action plans described in S.C. Code §46-55-40 were "the sole remedy" for negligent violations and a licensee with such violations "shall not be subject to any criminal or civil enforcement action." S.C. Code §46-55-40(A)(3).

143.    WEATHERS and the DAG Defendants were aware when Pendarvis was arrested and his hemp crop was destroyed without due process, that WEATHERS had failed to submit a plan within sixty (60) days of the effective date of the Act that adequately including "a procedure to comply with the enforcement outlined in this act." *See* 2019 Act No.14, Section 2(A)(4).

144.    WEATHERS has since submitted a state plan in accordance with S.C. Code §46-55-10 *et seq.* that includes procedures for enforcement requiring notice, an opportunity to be heard and no action by the Commissioner "prior to the holding of an adjudicatory hearing" which "shall

34

**JA142**

be conducted in accordance with the requirements of the South Carolina Administrative Procedure Act" and further includes a section on how to appeal the findings of such hearings.

145.    Pendarvis is informed and believes that the DAG, SCAG, SLED, DCSO and FORESTRY Defendants all knew such procedures did not exist at the time they conspired with the other Defendants to seize and destroy Pendarvis' hemp crop and/or stood idly by allowing such to happen.

146.    Pendarvis is informed and believes that through their conduct documented above the Defendants recklessly, intentionally and willfully violated his constitutional rights and denied him the specific protections of the HFA, as set forth within the causes of action below.

<div align="center">

**FOR A FIRST CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF DUE PROCESS – 4TH, 8TH AND 14TH AMENDMENTS – FALSE**
**ARREST/IMPRISONMENT AGAINST SLED AND DCSO DEFENDANTS)**

</div>

147.    At all times mentioned herein, the SLED and DCSO Defendants were acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy. Additionally, during the time period in question, the Defendants were well aware of the Pendarvis' constitutional rights, including his right to due process, to be free from false arrest/imprisonment and to be free from cruel and unusual punishment.

148.    As described above, the SLED and DCSO Defendants obtained and executed an arrest warrant versus Pendarvis for a willful violation of the HFA, through misleading omissions to the magistrate (specifically that the Chief Administrative Judge for the circuit had refused to approve their action), while knowingly and intentionally depriving Pendarvis of the protections afforded him under HFA and S.C. Cnst (specficially the 4th, 5th and 8th amendment protections of Art.I, Sec.22 S.C. Cnst and his statutory right to a corrective action plan being the sole remedy for a negligent violation, pursuant to S.C. Code §46-55-40), without need and in bad

<div align="center">

35

**JA143**

</div>

faith. Specifically, but not limited to, NEALE's conduct in personally obtaining the warrant; WELLS, ONEAL, WHITSETT and GWOOD assistance in formulating that plan with NEALE. Then WELLS, NEALE, ONEAL, GWOOD, and HOLDEN's execution of that plan, displaying and deploying force in the execution of the warrant and taking Pendarvis into custody. DIXON, THOMPSON and KRUTAK all assisted the SLED Defedndants in the execution of that plan, displaying and deploying force in the execution of that warrant, taking Pendarvis into custody and transporting him while in custody.

149.    As a direct and proximate result of these Defendants' conduct, Pendarvis suffered deprivations of his rights secured by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

150.    At all times relevant to this action, these Defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff.

151.    The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional rights through the acts and omissions of these Defendants.

**FOR A SECOND CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF DUE PROCESS – 4TH, 5th, 8TH AND 14TH AMENDMENTS –**
**UNREASONABLE SEIZURE AND UNLAWFUL TAKING AGAINST SCAG, SLED,**
**DAG AND FORESTRY DEFENDANTS)**

152.    At all times mentioned herein, the SCAG, SLED, DAG and FORESTRY Defendants were acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy.  Additionally, during the time period in question, the Defendants were well aware of Pendarvis' constitutional rights, including his right to due process, to be free from unreasonable seizures and to be free from cruel and unusual punishment, including unlawful takings.

**JA144**

153.    At all times mentioned hererin, the SCAG, SLED, DAG and FORESTRY Defendants were well aware of Pendarvis' constitutional rights, including his rights to due process and to be free from unlawful seizures and takings.

154.    As described above, the SCAG, SLED, DAG and FORESTRY Defendants seized and destroyed Pendarvis' property without legal basis, without due process, without need and in bad faith, knowingly, willfully and deliberately violating Pendarvis constitutional rights secured by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Specifically, but not limited to, WEATHERS, TERRY, UNDERWOOD, ELSALAH and STOKES all played a part in finding Pendarvis' violation was "willful" and denying him due process in regards to that finding. STOKES then took part with ONEAL, WELLS, GWOOD, NEALE, HOLDEN, DIXSON, THOMPSON, KRUTAK, SCRUBBS and EADDY in actually unlawfully seizing and destroying Pendarvis' hemp crop, with CALORE assisting by approving SCRUBBS and EADDY's involvement, along with authorizing the use of FORESTRY equipment to destroy the crop. UNDERWOOD, WHITSETT, COOK and JONES assisted these Defendants with their unlawful seizing and taking, by providing the last-minute emailed "amended opinion" as legal cover for the unlawful seizing and taking of Pendarvis hemp crop, at the urging of KEEL.

155.    As a direct and proximate result of these Defendants' conduct, Pendarvis suffered deprivations of his rights secured by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

156.    At all times relevant to this action, these Defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff.

37

**JA145**

157.    The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional

rights through the acts and omissions of these defendants.

**FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF DUE PROCESS – 4TH, 5th, 8TH AND 14TH AMENDMENTS –**
**MALICIOUS PROSECUTION AGAINST SLED AND DAG DEFENDANTS)**

158.    At all times mentioned herein, the SLED and DAG Defendants, acting under the color or

pretense of South Carolina State law, customs, practices, usage, and/or policy, instituted the

criminal prosecution against Pendarvis and pushed for their continued prosecution while

knowing that Pendarvis had been deprived of the protections afforded him under the HFA and

S.C. Constitution (specficially his statutory right to a corrective action plan being the sole

remedy for a negligent violation, pursuant to S.C. Code §46-55-40 and his constitutional rights

protected under Art. I, §22 of the South Carolina Constitution to challenge DAG's finding),

without need and in bad faith. Specifically, but not limtied to, WEATHERS, TERRY,

UNDERWOOD, LEACH, AWOOD, STOKES and MOORE all knew that DAG had not

provided Pendarvis his constitutionally protected right to challenge DAG's decision, had not

submitted a state plan to set out the rules/regulations to protect farmers like Pendarvis as

required by the HFA and that SLED was attempting to justify the criminal prosecution against

Pendarvis citing alleged violations DAG had never noticed Pendarvis about (THC levels).

Despite that knowledge, all of those DAG Defendants, supported the criminal prosecution of

Pendarvis, seeking updates about the status of criminal enforcement; coordinating DAG's

willful violation notification to Pendarvis with SLED; with UNDERWOOD, TERRY,

ELSALAH, and JEFFCOAT attempting to assist SLED in gathering evidence to use to

criminally prosecute Pendarvis.

38

**JA146**

159. KEEL, WHITSETT, ONEAL, WELLS, GWOOD and NEALE all took part in instituting the criminal proseuction against Pendarvis, through their actions described above.

160. Both the SLED and DAG Defendants attempted to further their desired criminal prosecution of Pendarvis by knowingly and intentionally withholding relevant and/or reasonably calculated to lead to admissible evidence, as described above, that once obtained through other means, successfully helped get the criminal charges dismissed. Plaintiff is informed and believes such conduct would have specifically included KEEL, WEATHERS, WHITSETT, TERRY and UNDERWOOD.

161. Pendarvis is informed and believes that KEEL, WHITSETT, ONEAL and NEALE specifically opposed the dismissal of the criminal charges, pushing for his continued criminal prosecution.

162. The criminal charges against Pendarvis were ended in his favor, being dismissed by the First Circuit Solicitor's Office upon a specific finding there was not enough evidence to support that Pendarvis had acted willfully.

163. That there was no probable cause to institute the criminal proceedings against him. Specifically, had Pendarvis been provided the statutory protections he was entitled to under the HFA, the sole remedy for the alleged violations would have been corrective action plans pursuant to S.C. Code §46-55-40.

164. That these Defendants acted maliciously, as evidenced through their conduct described in the factual allegations above.

165. That Pendarvis suffered deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceedings against him.

166.    At all times relevant to this action, these Defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff.

167.    The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional rights through the acts and omissions of these defendants.

**FOR A FOURTH CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF DUE PROCESS – 4TH, 5th, 8TH AND 14TH AMENDMENTS ON A THEORY OF BYSTANDER LIABILITY FOR FAILURE TO PROTECT THE PLAINTIFF FROM FALSE ARREST, MALICIOUS PROSECUTION and UNLAWFUL SEIZURE AND TAKINGS AGAINST SCAG, SLED, DAG, DCSO and FORESTRY DEFENDANTS)**

168.    The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional rights through the acts and omissions of the SCAG, SLED, DAG, DCSO and FORESTRY Defedants for false arrest, malicious prosecution, unlawful seizure and takings as described above, who were at all times acting under the color or pretense of South Carolina State law, customs, practices, usage and/or policy.

169.    That COOK, JONES, KEEL, WHITSETT, ONEAL, WELLS, GWOOD, NEALE, HOLDEN, WEATHERS, TERRY, UNDERWOOD, LEACH, AWOOD, STOKES, ELSALAH, MOORE, DIXSON, THOMPSON, KRUTAK, CALORE, SCRUBBS and EADDY knew or should have known that the basis for Pendarvis' arrest and/or the seizure/taking of his hemp crop and/or criminal prosecution violated Pendarvis' constitutional rights, they all had opportunity to prevent Pendarvis' such conduct and/or directly participated in and/or condoned such conduct knowing it was illegal and violated Pendarvis' constitutional rights.

170.    That WILSON, YOUNG, SMITH, LYNCH, KITTLE, KIRKLAND, VORBERGER and KNIGHT knew or should have known that the continued criminal prosecution of Pendarvis for

40

**JA148**

criminal charges that should never have been brought and the attempts to unlawfully seize and take Pendarvis property, in light of the total deprivation of due process rights to Pendarvis regarding his alleged violation of the HFA, violated Pendarvis' constitutional rights, they all had opportunity to prevent the continued criminal prosecution and/or unlawful seizure/taking and/or directly participated in sustaining the criminal prosecution and/or unlawful seizure/taking and/or condoned it.

171. At all times relevant to this action, these Defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff.

172. The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional rights through the acts and omissions of these defendants.

**FOR A FIFTH CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF DUE PROCESS – 4TH, 5th, 8TH AND 14TH AMENDMENTS ON A THEORY OF SUPERVISOR LIABILITY AGAINST SCAG, SLED, DAG, DCSO and FORESTRY SUPERVISORY DEFENDANTS)**

173. The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional rights through the acts and omissions of SCAG, SLED, DAG, DCSO and FORESTRY'S supervisory defendants.

174. Based upon all of the factual and legal allegations made above, those Defendants with supervisory responsibility are liable for the constitutional violations suffered by the Plaintiff. Those Defendants would be WILSON, YOUNG, COOK, SMITH, KITTLE, LYNCH, KEEL, WHITSETT, ONEAL, WELLS, GWOOD, WEATHERS, TERRY, UNDERWOOD, LEACH, AWOOD, STOKES, ELSALAH, JEFFCOAT, MOORE, KNIGHT, DIXSON, THOMPSON and CALORE, who were at all times acting under the color or pretense of South Carolina State law, customs, practices, usage and/or policy.

41

**JA149**

175.   These Defendants had actual and/or constructive knowledge of a risk of constitutional injury to the Plaintiff, were deliberately indifferent to that risk and their inaction affirmatively led to the constitutional injuries suffered by the Plaintiff. Specifically, all these Defendants had subordinates who actually violated the Plaintiff's constitutional rights, they all failed to adequately train and/or supervise their subordinates to the rights of persons in similar situations to the Plaintiff, and those failures to train/supervise caused the subordinates to violate the Plaintiff's rights.

176.   At all times relevant to this action, these Defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff.

177.   The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional rights through the acts and omissions of these supervisory defendants.

**FOR A SIXTH CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(CONSPIRACY TO VIOLATE DUE PROCESS RIGHTS – 4TH, 5TH, 6TH, 8TH, AND 14TH**
**AMENDMENTS, OBSTRUCT JUSTICE & DENYING THE PLAINTIFF RIGHTS AND**
**PRIVILEGES AGAINST ALL DEFENDANTS)**

178.   At all times mentioned above, the Defendants were all acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy.

179.   Additionally, during the time period in question, the Defendants were well aware of Pendarvis' constitutional rights, including his rights to:

      a.   due process of law;

      b.   to be free from unnecessary and unwarranted force;

      c.   to be free from false arrest and/or imprisonment;

      d.   to be free from the deprivation of property without due process of law;

42

**JA150**

    e.  to be free from the deprivation of liberty without due process of law; and,

    f.  to the fair, efficient and speedy administration of justice through the criminal and civil justice system.

180.   As described through the factual and legal allegations above, the Defendants conducted themselves repeatedly in violation of the Plaintiff's constitutional rights, specifically seeking to deny him due process and obstruct justice.

181.   As a direct and proximate result of the Defendants acts and omissions, the Plaintiff suffered deprivations of his rights secured by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

182.   At all times relevant to this action, the Defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff, but they repeatedly violated the Plaintiff's constitutional rights despite that knowledge.

183.   That the Defendants had notice and knowledge that the Plaintiff was being denied his due process rights prior to the instigation of the State cases by the Plaintiff.

184.   That despite having the notice and knowledge that the Plaintiff's constitutional rights were being violated prior to the instigation of the State cases, the Defendants conspired to impede, hinder, obstruct and/or defeat the due course of justice with the intent to deny the Plaintiff the equal protection of the law. Specifically, but not limited to, those Defendants conspired to deny facts they know to be true to shield themselves and others from civil liability for the violation of the Plaintiff's civil rights.

185.   Plaintiff was harmed and suffered injury because of the Defendants violation of the Plaintiff's constitutional rights and that harm has been exacerbated by the conduct of the

**JA151**

Defendants in conpiring to impede, hinder, obstruct and/or defeat the due course of justice with the intent to deny the Plaintiff the equal protection of the law.

## **PRAYER**

WHEREFORE, Plaintiff prays that the Court entered judgment against the Defendants and award him:

i. Actual and consequential damages to compensate the Plaintiff for his out-of-pocket expenses, pain, suffering, mental anguish, humiliation, and the indignity he has suffered because of the Defendants' conduct and the violation of his civil rights;

ii. Punitive damages;

iii. Attorneys' fees and costs recoverable under 42 U.S.C. § 1988; and

iv. Such further relief as is allowed by law and that the Court deems just and proper.

## **REQUEST FOR TRIAL BY JURY**

The Plaintiff, John Trenton Pendarvis, hereby demands a trial by jury on all claims.

Respectfully submitted by:

**WUKELA LAW FIRM**

s/Patrick J. McLaughlin
Patrick J. McLaughlin (Fed. ID No. 9665)
PO Box 13057
Florence, SC 29504-3057
T: (843) 669-5634
F: (843) 669-5150
patrick@wukelalaw.com
*-and-*
**WILLIAMS & WILLIAMS**
C. Bradley Hutto (Fed. ID. No. 2024)
P.O. Box 1084
Orangeburg, SC 29116
T:  (803)534-5218
F:  (803)536-6298
cbhutto@williamsattys.com
**ATTORNEYS FOR PLAINTIFF**

Florence, SC
February 24, 2023

44

**JA152**

**From:** Bob Cook
**To:** David Jones
**Subject:** FW: Plan for Destruction of Hemp Field in Dorchester Co. - Trent Pendarvis
**Date:** Thursday, September 19, 2019 7:57:00 AM
**Attachments:** ATT00001.htm
ATT00002.htm
Pendarvis Drug Analysis L19-15784.pdf
ATT00003.htm
SCDA SLED Memo 8-6-2019 Pendarvis.pdf
ATT00004.htm
SCDA SLED Memo 8-6-2019 Pendarvis.pdf
ATT00005.htm
Pendarvis, Trent Participation Agreement.pdf
ATT00006.htm

---

Robert D. Cook

Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

---

**From:** Whitsett, Adam <awhitsett@sled.sc.gov>
**Sent:** Thursday, September 19, 2019 7:51 AM
**To:** Bob Cook <BCook@scag.gov>
**Subject:** Fwd: Plan for Destruction of Hemp Field in Dorchester Co. - Trent Pendarvis


Sent from my iPhone

Begin forwarded message:

> **From:** "Wells, Jason" <jwells@sled.sc.gov>
> **Date:** September 18, 2019 at 3:16:13 PM EDT
> **To:** "Oneal, Frank" <foneal@sled.sc.gov>
> **Cc:** "Neale II, John" <jneale@sled.sc.gov>, "Whitsett, Adam" <awhitsett@sled.sc.gov>,
> "Wood III, Glenn" <gwood@sled.sc.gov>
> **Subject:** Plan for Destruction of Hemp Field in Dorchester Co. - Trent Pendarvis

Major,

This email is to inform you of the plan we have in mind to deal with the unlawful hemp
farm being operated by John Trenton "Trent" Pendarvis in Harleyville (Dorchester
County).  S/A John Neale is going to obtain one arrest warrant tomorrow morning
(9/19/2019) for Unlawful cultivation of hemp.  Statute – 46-55-20(A)(1) (CDR Code –
3554 Penalty section – 17-25-0030).  This warrant is based on a request (See Attached)
SLED received from the SC Department of Agriculture (SCDA) on August 6, 2019, asking

**JA153**

that SLED conduct enforcement action with regard to Pendarvis.  Derek Underwood
(SCDA Assistant Commissioner – Consumer protection Division) stated in his request
letter that Pendarvis committed a willful violation in that he was growing hemp on
acreage that was not on record with the SCDA.  The acreage involved is approximately
10 acres (See attached photo).  S/A John Neale went to the property on August 28,
2019, and collected numerous plant samples.  The Drug analysis Report (see attached)
stated that two of the samples tested over the .3 % THC limit (samples tested .42 and
.41).  Also on August 28, 2019, Underwood (SCDA) emailed Pendarvis a violation letter
(see attached) stating that his amendments to add the acreage involved would not be
approved by the SCDA because he already had mature grown hemp plants on the
property.  Underwood confirmed that Pendarvis had indeed received the violation
letter.

Today, I contacted the SC Forestry Commission to ask when is the first availability they
will have to bring equipment to the farm in Harleyville for destruction of the plants.  My
contact at Forestry should get back with me today to let me know.  Once we have a
date set for destruction, we will meet at the farm in Harleyville and contact Pendarvis.
Pendarvis will then be informed of the arrest warrant and the plans for destruction.

The destruction is based on the agreement (see attached copy) that Pendarvis entered
into with the SCDA on May 13, 2019.  The agreement Pendarvis signed stated that:

"Permitted grower acknowledges and consents to the forfeiture or destruction,
without compensation, of hemp material:
1) Found to have a measured delta-9 THC content of more than 0.3 percent on a
dry weight basis
2) Bearing off-label pesticide residues regardless of the source or cause of
contamination
3) Growing in an area that is not licensed by SCDA

**Jason Wells**
**Interim Captain - Narcotics**
**South Carolina Law Enforcement Division (SLED)**
803-608-3201
jwells@sled.sc.gov

EX.1 −000000003

# WILLIAMS & WILLIAMS
## ATTORNEYS AT LAW

MARSHALL B. WILLIAMS, (1912 - 1995)
CHARLES H. WILLIAMS, II
C. BRADLEY HUTTO
RUSSELL A. BLANCHARD, IV

DAVID R. WILLIAMS
CHARLIE H. WILLIAMS, III
VIRGINIA W. WILLIAMS
SKYLER B. HUTTO, (ADMITTED SC & DC)

September 20, 2019

RECEIVED 2019 SEP 24 AM 10: 44 SLED OFFICE OF CHIEF

Mr. Mark A. Keel, Chief
South Carolina Law Enforcement Division
PO Box 21398
Columbia, SC 29221-1398

**Re: John Trenton Pendarvis**

Dear Chief Keel,

Please be advised our firm is investigating an incident that occurred at or about on September 19, 2019, involving my client John Trenton Pendarvis. By this letter, we are requesting preservation of information relating to this incident, including but not limited to the following;

- Any and all surveillance video and/or photographs taken from Pendarvis Farms located in Harleyville, South Carolina;
- Any and all video and/or photographs taken before or after the crop located in Harleyville, South Carolina was destroyed;
- The names and addresses of agents working and on location during the arrest of John Trenton Pendarvis and the destruction of his crop on September 19, 2019;
- Any and all communications including emails, phone calls and text messages between South Carolina Law Enforcement Division and South Carolina Department of Agriculture regarding John Trenton Pendarvis and/or Pendarvis Farms;

If you fail to preserve and maintain this evidence, we will seek sanctions provided under South Carolina law including spoliation of evidence. It is necessary to preserve all the requested evidence in order for Mr. Pendarvis to be able to make a determination about the culpability and punitive exposure of any party to a potential action.

Please forward copies of the preserved information to our attention as well as documentation indicating that the above information has likewise been preserved. If there are any fees associated, please let us know. Should you have any questions, please do not hesitate to contact my office.

Sincerely,

C. Bradley Hutto

SLED-102

**JA155**

EX.1 -000000004

9864-10404



**South Carolina
Law Enforcement Division**

P.O. Box 21398
Columbia, South Carolina
29221-1398

*Henry D. McMaster, Governor*
*Mark A. Keel, Chief*

*Tel: (803) 737-9000*

RECEIVED

SEP 25 2019

Referred to *COOK/PB*
Answered _____

September 23, 2019

The Honorable Alan Wilson
South Carolina Attorney General
Post Office Box 11549
Columbia, South Carolina 29211-1549

Re:    Opinion Request

Dear General Wilson:

I write today to respectfully request an opinion on several additional aspects of The Hemp Farming Act (Act 14 of 2019, formerly H.3449) and its application in South Carolina. As an initial matter, SLED is informed and believes that only individuals and businesses operating in accordance with this Act can legally "cultivate, handle, or process hemp" in South Carolina, and that any and all such cultivation can only be on land specifically approved and authorized by the Department of Agriculture. As such, any attempt to grow outside the approved auspices of the Hemp Farming Act is illegal. In that regard, in addition to the criminal penalties discussed in the July 10, 2019 Opinion, S.C. Code Ann. § 46-55-40 also states that:

> If the commissioner determines that a licensee has violated state law with a culpable mental state greater than negligence, then the commissioner shall immediately report the hemp producer to the Attorney General and the Chief of the South Carolina Law Enforcement Division, and subsection (A)(2) shall not apply to the violation.

S.C. Code Ann. § 46-55-40(B). To that end, on August 5, 2019, the Department of Agriculture notified SLED and The Attorney General of a willful violation of the Hemp Farming Act. However, there is no further guidance in the statute on this issue and no regulations have been promulgated. In that regard, SLED requested an opinion regarding the appropriate procedures to take in this instance and your office provided such. At that time, SLED had not received a copy of the Participation Agreement from the individual involved and was not aware of the consent to forfeiture and destruction contained therein. In addition, following the issuance of August opinion, SLED attempted to secure an order of destruction from a circuit court as discussed in the August opinion; however, the court would not entertain such. While no specific reasoning was provided by the court, there is simply no statutory or regulatory authorization for a court to entertain such request.



*An Accredited Law Enforcement Agency*

ANAB ACCREDITED
FORENSIC TESTING LABORATORY

Opinion Request
September 23, 2019
Page 2 of 2

Subsequently, SLED was provided a copy of the Participant Agreement in question which clearly and unequivocally states that the "**Permitted Grower acknowledges and consents to the forfeiture and destruction, without compensation, of hemp material: i. Found to have a measured delta-9 THC content more than .3 percent on a dry weight basis;...and iii. Growing in an area that is not licensed by SCDA.**" Upon receipt of such additional information, SLED provided this information to your office and sought further clarification of the impact of such. On Thursday, September 9, 2019, your office acknowledged in an email that "in the abstract that if there has been a valid consent as you describe, no judicial authorization for seizure upon notice from the Department of Agriculture that it has found hemp grown unlawfully in willful violation of applicable law. It is a well-established principle of law that legal barriers to the seizure of property may be waived by consent."  Further, your office noted that

Based on these additional facts, we supplement our previous advice to you such that where a grower has consented to the seizure and destruction of unlawfully-grown hemp, SLED or another appropriate law enforcement authority with jurisdiction may proceed with the destruction upon notification from the Department of Agriculture that it has found cannabis sativa grown in willful violation of applicable law. Of course the scenario you present involves highly fact-specific questions which this Office cannot determine. We reiterate that we defer to law enforcement's determination of these factual questions in the first instance, and that they ultimately must be determined by a court.

In addition, SLED would also note that the Participation Agreement also contains an Indemnification and Release section that states:

Permitted Grower agrees to indemnify, hold harmless, and release forever the State of South Carolina, its departments, agencies, officers, employees, and agents of any kind from all liability claims arising out of Pilot Grower's negligent or illegal actions or actions otherwise in violation of the terms of the Program involving the domestic or international acquisition, cultivation, or processing of hemp and Permitted Grower's participation in the Program.

Accordingly, SLED would respectfully request a formal opinion supplementing and clarifying the effect of the Participation Agreement regarding the due process discussed in the August Opinion.

Respectfully,

Mark A. Keel
Chief of SLED

EX.1 −000000006

**From:** Joanne Lee
**To:** Bob Cook
**Subject:** PLEASE ASSIGN: KeelM, OS-10404 REQ Ltr, 9-23-2019 SUBJECT: Hemp Farming Act - Whether anyone growing/handling/or processing hemp under the Hemp Farming Act on land not approved by the Dept. of Agriculture is illegal.
**Date:** Monday, September 23, 2019 2:39:33 PM
**Attachments:** KeelM, OS-10404 REQ Ltr, 9-23-2019 (02097775xD2C78).pdf

| From: | Bob Cook |
|---|---|
| To: | Joanne Lee |
| Subject: | RE: PLEASE ASSIGN: KeelM, OS-10404 REQ Ltr, 9-23-2019 SUBJECT: Hemp Farming Act - Whether anyone growing/handling/or processing hemp under the Hemp Farming Act on land not approved by the Dept. of Agriculture is illegal. |
| Date: | Monday, September 23, 2019 2:45:10 PM |

David

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

**From:** Joanne Lee <JLee@scag.gov>
**Sent:** Monday, September 23, 2019 2:40 PM
**To:** Bob Cook <BCook@scag.gov>
**Subject:** PLEASE ASSIGN: KeelM, OS-10404 REQ Ltr, 9-23-2019 SUBJECT: Hemp Farming Act - Whether anyone growing/handling/or processing hemp under the Hemp Farming Act on land not approved by the Dept. of Agriculture is illegal.

| | |
|---|---|
| **From:** | Westlaw@westlaw.com |
| **To:** | Bob Cook |
| **Subject:** | Adam L. Whitsett, Esq. |
| **Date:** | Thursday, September 26, 2019 5:33:16 PM |
| **Attachments:** | Adam L Whitsett Esq.rtf |

robert cook sent you content from Westlaw Edge.
Please see the attached file.

| | |
|---|---|
| Item: | Adam L. Whitsett, Esq. |
| Citation: | 2019 WL 3855186 |
| Sent On: | Thursday, September 26, 2019 |
| Sent By: | robert cook |
| Client ID: | OP |

Note:


--------------------------------------------------------------------------

Westlaw © 2019 Thomson Reuters. No claim to original U.S. Government Works.

| From: | Bob Cook |
|---|---|
| To: | Emory Smith |
| Subject: | FW: Adam L. Whitsett, Esq. |
| Date: | Thursday, September 26, 2019 5:34:00 PM |
| Attachments: | Adam L Whitsett Esq.rtf |

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524


-----Original Message-----
From: Westlaw@westlaw.com <Westlaw@westlaw.com>
Sent: Thursday, September 26, 2019 5:33 PM
To: Bob Cook <BCook@scag.gov>
Subject: Adam L. Whitsett, Esq.

robert cook sent you content from Westlaw Edge.
Please see the attached file.

Item:     Adam L. Whitsett, Esq.
Citation:   2019 WL 3855186
Sent On:   Thursday, September 26, 2019
Sent By:   robert cook
Client ID:  OP

Note:


--------------------------------------------------------------------------
Westlaw © 2019 Thomson Reuters. No claim to original U.S. Government Works.

| From: | Bob Cook |
|---|---|
| To: | Emory Smith |
| Subject: | FW: Consent and destruction of unlawful hemp |
| Date: | Thursday, September 26, 2019 5:45:00 PM |

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3564

**From:** David Jones <DJones@scag.gov>
**Sent: Thursday, September 19, 2019 10:11 AM**
**To:** Whitsett, Adam <awhitsett@sled.sc.gov>
Cc: Joanne Lee <JLee@scag.gov>
**Subject:** Consent and destruction of unlawful hemp

Dear Adam:

Thank you for reaching out to our Office regarding our recent opinion addressed to you concerning the appropriate process to seize illegally-grown hemp. See Op. S.C. Att'y Gen., 2019 WL 3855186 (August 8, 2019). That expedited opinion noted that we deferred to law enforcement's determination of the relevant factual questions. I understand that additional facts have come to light since we issued that opinion. Specifically, it appears that the hemp grower whose crop precipitated the August 8 opinion entered into a participation agreement with the SC Department of Agriculture to participate in the South Carolina Hemp Farming Program. In that agreement the hemp grower expressly consented "to the forfeiture or destruction, without compensation, of hemp material: 1. Found to have a measured delta-9 THC content of more than 0.3 percent on a dry weight basis; . . . and iii. Growing in an area that is not licensed by SCDA." You believe that this consent removes the need to seek judicial authorization for the seizure and destruction of such hemp.  You also note that, in addition to the field not being licensed, subsequent testing has indicated that some of the unlawfully-grown plants have a measured delta-9 THC content of more than 0.3 percent on a dry weight basis.

Bob and I have discussed the question and we agree with your conclusion in the abstract that if there has been a valid consent as you describe, no judicial authorization for seizure upon notice from the Department of Agriculture that it has found hemp grown unlawfully in willful violation of applicable law. It is a well-established principle of law that legal barriers to the seizure of property may be waived by consent. As explained by the South Carolina Supreme Court:

"The constitutional immunity from unreasonable searches and seizures may be waived by valid consent. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Warrantless searches and seizures are reasonable within the meaning of the Fourth Amendment when conducted under the authority of voluntary consent. United States v.

**JA162**

<u>Durades</u>, 929 F.2d 1160 (7th Cir.1991). The existence of consent is determined from the totality of the circumstances. <u>United States v. Zapata</u>, 997 F.2d 751 (10th Cir.1993).

<u>Palacio v. State</u>, 333 S.C. 506, 514, 511 S.E.2d 62, 66 (1999).

Based on these additional facts, we supplement our previous advice to you such that where a grower has consented to the seizure and destruction of unlawfully-grown hemp, SLED or another appropriate law enforcement authority with jurisdiction may proceed with the destruction upon notification from the Department of Agriculture that it has found cannabis sativa grown in willful violation of applicable law. Of course the scenario you present involves highly fact-specific questions which this Office cannot determine. We reiterate that we defer to law enforcement's determination of these factual questions in the first instance, and that they ultimately must be determined by a court.

Sincerely,

David S. Jones
Assistant Attorney General
Office of the Attorney General
State of South Carolina
PO Box 11549
Columbia, SC  29211
803-734-3188

**From:** Emory Smith
**To:** Bob Cook
**Subject:** RE: Consent and destruction of unlawful hemp
**Date:** Thursday, September 26, 2019 5:53:08 PM

May I forward to Harley and Wes?

**From:** Bob Cook
**Sent:** Thursday, September 26, 2019 5:46 PM
**To:** Emory Smith
**Subject:** FW: Consent and destruction of unlawful hemp


Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524


**From:** David Jones <DJones@scag.gov>
**Sent:** Thursday, September 19, 2019 10:11 AM
**To:** Whitsett, Adam <awhitsett@sled.sc.gov>
**Cc:** Joanne Lee <JLee@scag.gov>
**Subject:** Consent and destruction of unlawful hemp

Dear Adam:

Thank you for reaching out to our Office regarding our recent opinion addressed to you concerning the appropriate process to seize illegally-grown hemp. See Op. S.C. Att'y Gen., 2019 WL 3855186 (August 8, 2019). That expedited opinion noted that we deferred to law enforcement's determination of the relevant factual questions. I understand that additional facts have come to light since we issued that opinion. Specifically, it appears that the hemp grower whose crop precipitated the August 8 opinion entered into a participation agreement with the SC Department of Agriculture to participate in the South Carolina Hemp Farming Program. In that agreement the hemp grower expressly consented "to the forfeiture or destruction, without compensation, of hemp material: 1. Found to have a measured delta-9 THC content of more than 0.3 percent on a dry weight basis; . . . and iii. Growing in an area that is not licensed by SCDA." You believe that this consent removes the need to seek judicial authorization for the seizure and destruction of such hemp.  You also note that, in addition to the field not being licensed, subsequent testing has indicated that some of the unlawfully-grown plants have a measured delta-9 THC content of more than 0.3 percent on a dry weight basis.

Bob and I have discussed the question and we agree with your conclusion in the abstract that if there has been a valid consent as you describe, no judicial authorization for seizure upon notice from the Department of Agriculture that it has found hemp grown unlawfully in willful violation of applicable law. It is a well-established principle of law that legal barriers to the

**JA164**

seizure of property may be waived by consent. As explained by the South Carolina Supreme Court:

"The constitutional immunity from unreasonable searches and seizures may be waived by valid consent. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Warrantless searches and seizures are reasonable within the meaning of the Fourth Amendment when conducted under the authority of voluntary consent. United States v. Durades, 929 F.2d 1160 (7th Cir.1991). The existence of consent is determined from the totality of the circumstances. United States v. Zapata, 997 F.2d 751 (10th Cir.1993).

Palacio v. State, 333 S.C. 506, 514, 511 S.E.2d 62, 66 (1999).

Based on these additional facts, we supplement our previous advice to you such that where a grower has consented to the seizure and destruction of unlawfully-grown hemp, SLED or another appropriate law enforcement authority with jurisdiction may proceed with the destruction upon notification from the Department of Agriculture that it has found cannabis sativa grown in willful violation of applicable law. Of course the scenario you present involves highly fact-specific questions which this Office cannot determine. We reiterate that we defer to law enforcement's determination of these factual questions in the first instance, and that they ultimately must be determined by a court.

Sincerely,

David S. Jones
Assistant Attorney General
Office of the Attorney General
State of South Carolina
PO Box 11549
Columbia, SC  29211
803-734-3188

EX.1 —000000014

| | |
|---|---|
| **From:** | Bob Cook |
| **To:** | Emory Smith |
| **Subject:** | Re: Consent and destruction of unlawful hemp |
| **Date:** | Thursday, September 26, 2019 5:53:49 PM |

Certainly

Sent from my iPhone

On Sep 26, 2019, at 5:53 PM, Emory Smith <ESmith@scag.gov> wrote:

> May I forward to Harley and Wes?
>
> **From:** Bob Cook
> **Sent:** Thursday, September 26, 2019 5:46 PM
> **To:** Emory Smith
> **Subject:** FW: Consent and destruction of unlawful hemp
>
> Robert D. Cook
> Solicitor General
> S.C. Attorney General's Office
> P.O. Box 11549
> Columbia, S.C. 29211
> P: 803-734-3736
> F: 803-734-3524
>
> **From:** David Jones <DJones@scag.gov>
> **Sent:** Thursday, September 19, 2019 10:11 AM
> **To:** Whitsett, Adam <awhitsett@sled.sc.gov>
> **Cc:** Joanne Lee <JLee@scag.gov>
> **Subject:** Consent and destruction of unlawful hemp
>
> Dear Adam:
>
> Thank you for reaching out to our Office regarding our recent opinion addressed to you concerning the appropriate process to seize illegally-grown hemp. See Op. S.C. Att'y Gen., 2019 WL 3855186 (August 8, 2019). That expedited opinion noted that we deferred to law enforcement's determination of the relevant factual questions. I understand that additional facts have come to light since we issued that opinion. Specifically, it appears that the hemp grower whose crop precipitated the August 8 opinion entered into a participation agreement with the SC Department of Agriculture to participate in the South Carolina Hemp Farming Program. In that agreement the hemp grower expressly consented "to the forfeiture or destruction, without compensation, of hemp material: 1. Found to have a measured delta-9 THC content of more than 0.3 percent on a dry weight basis; . . . and iii. Growing in an area that is not licensed by SCDA." You believe

**JA166**

that this consent removes the need to seek judicial authorization for the seizure and destruction of such hemp. You also note that, in addition to the field not being licensed, subsequent testing has indicated that some of the unlawfully-grown plants have a measured delta-9 THC content of more than 0.3 percent on a dry weight basis.

Bob and I have discussed the question and we agree with your conclusion in the abstract that if there has been a valid consent as you describe, no judicial authorization for seizure upon notice from the Department of Agriculture that it has found hemp grown unlawfully in willful violation of applicable law. It is a well-established principle of law that legal barriers to the seizure of property may be waived by consent. As explained by the South Carolina Supreme Court:

"The constitutional immunity from unreasonable searches and seizures may be waived by valid consent. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Warrantless searches and seizures are reasonable within the meaning of the Fourth Amendment when conducted under the authority of voluntary consent. United States v. Durades, 929 F.2d 1160 (7th Cir.1991). The existence of consent is determined from the totality of the circumstances. United States v. Zapata, 997 F.2d 751 (10th Cir.1993).

Palacio v. State, 333 S.C. 506, 514, 511 S.E.2d 62, 66 (1999).

Based on these additional facts, we supplement our previous advice to you such that where a grower has consented to the seizure and destruction of unlawfully-grown hemp, SLED or another appropriate law enforcement authority with jurisdiction may proceed with the destruction upon notification from the Department of Agriculture that it has found cannabis sativa grown in willful violation of applicable law. Of course the scenario you present involves highly fact-specific questions which this Office cannot determine. We reiterate that we defer to law enforcement's determination of these factual questions in the first instance, and that they ultimately must be determined by a court.

Sincerely,

David S. Jones
Assistant Attorney General
Office of the Attorney General
State of South Carolina
PO Box 11549
Columbia, SC 29211
803-734-3188

JA167

EX.1 –000000016

| From: | David Jones |
|---|---|
| To: | Bob Cook |
| Subject: | Draft op: Keel: Hemp seizure by consent |
| Date: | Friday, September 27, 2019 4:57:56 PM |
| Attachments: | Keel. Hemp Seizure By Consent (02097903xD2C78).DOCX |

I'll do a proofing pass Monday a.m., but this is the substance of it.

David S. Jones
Assistant Attorney General
Office of the Attorney General
State of South Carolina
PO Box 11549
Columbia, SC  29211
803-734-3188

EX.1 −000000017

| | |
|---|---|
| **From:** | David Jones |
| **To:** | Bob Cook |
| **Subject:** | FW: Draft op: Keel: Hemp seizure by consent |
| **Date:** | Monday, September 30, 2019 12:36:54 PM |

What about:

"Without such regulations, law enforcement agents finds themselves bound to enforce a statute which creates a general framework but lacks many of the specific protocols which normally guide all stakeholders in a regulatory enforcement process. Indeed, your letter notes that one court already has declined to entertain a request to authorize an enforcement action, apparently as a result of the absence of established protocols. Promulgating regulations at the administrative level may provide some much-needed certainty until such a time as the General Assembly clarifies the Hemp Farming Act."

I'm not sure how fine a point you want to put on it, but we could keep going.

David S. Jones
Assistant Attorney General
Office of the Attorney General
State of South Carolina
PO Box 11549
Columbia, SC  29211
803-734-3188

---

**From:** David Jones
**Sent:** Friday, September 27, 2019 4:58 PM
**To:** Bob Cook
**Subject:** Draft op: Keel: Hemp seizure by consent

I'll do a proofing pass Monday a.m., but this is the substance of it.

David S. Jones
Assistant Attorney General
Office of the Attorney General
State of South Carolina
PO Box 11549
Columbia, SC  29211
803-734-3188

| From: | Bob Cook |
|---|---|
| To: | David Jones |
| Subject: | RE: Draft op: Keel: Hemp seizure by consent |
| Date: | Monday, September 30, 2019 12:40:00 PM |

"find themselves in an extraordinarily difficult situation. They are required to enforce a statute which creates……

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

---

**From:** David Jones <DJones@scag.gov>
**Sent:** Monday, September 30, 2019 12:37 PM
**To:** Bob Cook <BCook@scag.gov>
**Subject:** FW: Draft op: Keel: Hemp seizure by consent

What about:

"Without such regulations, law enforcement agents finds themselves bound to enforce a statute which creates a general framework but lacks many of the specific protocols which normally guide all stakeholders in a regulatory enforcement process. Indeed, your letter notes that one court already has declined to entertain a request to authorize an enforcement action, apparently as a result of the absence of established protocols. Promulgating regulations at the administrative level may provide some much-needed certainty until such a time as the General Assembly clarifies the Hemp Farming Act."

I'm not sure how fine a point you want to put on it, but we could keep going.

David S. Jones
Assistant Attorney General
Office of the Attorney General
State of South Carolina
PO Box 11549
Columbia, SC 29211
803-734-3188

---

**From:** David Jones
**Sent:** Friday, September 27, 2019 4:58 PM
**To:** Bob Cook
**Subject:** Draft op: Keel: Hemp seizure by consent

I'll do a proofing pass Monday a.m., but this is the substance of it.

David S. Jones
Assistant Attorney General

**JA170**

EX.1 −000000019

**From:** David Jones
**To:** Bob Cook
**Subject:** RE: Draft op: Keel: Hemp seizure by consent
**Date:** Monday, September 30, 2019 12:42:25 PM

Should we be specific that we are talking about enforcement in the sense of seizing contraband hemp? I don't see them asking about any arrest.

David S. Jones
Assistant Attorney General
Office of the Attorney General
State of South Carolina
PO Box 11549
Columbia, SC 29211
803-734-3188

**From:** Bob Cook
**Sent:** Monday, September 30, 2019 12:40 PM
**To:** David Jones
**Subject:** RE: Draft op: Keel: Hemp seizure by consent

"find themselves in an extraordinarily difficult situation. They are required to enforce a statute which creates……

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

**From:** David Jones <DJones@scag.gov>
**Sent:** Monday, September 30, 2019 12:37 PM
**To:** Bob Cook <BCook@scag.gov>
**Subject:** FW: Draft op: Keel: Hemp seizure by consent

What about:

"Without such regulations, law enforcement agents finds themselves bound to enforce a statute which creates a general framework but lacks many of the specific protocols which normally guide all stakeholders in a regulatory enforcement process. Indeed, your letter notes that one court already has declined to entertain a request to authorize an enforcement action, apparently as a result of the absence of established protocols. Promulgating regulations at the administrative level may provide some much-needed certainty until such a time as the General Assembly clarifies the Hemp Farming Act."

I'm not sure how fine a point you want to put on it, but we could keep going.

David S. Jones

| From: | David Jones |
|---|---|
| To: | Whitsett, Adam |
| Cc: | Joanne Lee |
| Subject: | Opinion attached: Seizure of hemp by consent |
| Date: | Monday, September 30, 2019 2:28:20 PM |
| Attachments: | KeelM, OS-10404 FINAL Opinion, 9-30-2019 (02102586xD2C78).PDF |

Adam:

Sending to you since I don't believe I have the Chief's email address. A hard copy is coming in the mail.

David S. Jones
Assistant Attorney General
Office of the Attorney General
State of South Carolina
PO Box 11549
Columbia, SC  29211
803-734-3188



**ALAN WILSON**
**ATTORNEY GENERAL**

September 30, 2019

Mark A. Keel, Chief
South Carolina Law Enforcement Division
PO Box 21398
Columbia, SC 29221-1398

Dear Chief Keel:

We received your request seeking a follow-up opinion on the appropriate procedure to pursue enforcement of the Hemp Farming Act with respect to hemp grown in violation of the Act where the grower has consented to seizure of such hemp. This opinion sets out our Office's understanding of your question and our response.

**Issue (as quoted from your letter):**

I write today to respectfully request an opinion on several aspects of The Hemp Farming Act (Act 14 of 2019, formerly H.3449) and its application in South Carolina. As an initial matter, SLED is informed and believes that only individuals and businesses operating in accordance with this Act can legally "cultivate, handle, or process hemp" in South Carolina, and that any and all such cultivation can only be on land specifically approved and authorized by the Department of Agriculture. As such, any attempt to grow outside the approved auspices of the Hemp Farming Act is illegal. In that regard, in addition to the criminal penalties discussed in the July 10, 2019 Opinion, S.C. Code Ann. § 46-55-40 also states that:

> If the commissioner determines that a licensee has violated state law with a culpable mental state greater than negligence, then the commissioner shall immediately report the hemp producer to the Attorney General and the Chief of the South Carolina Law Enforcement Division, and subsection (A)(2) shall not apply to the violation.

S.C. Code Ann. § 46-55-10(B). To that end, on August 5, 2019, the Department of Agriculture notified SLED and the Attorney General of a willful violation of the Hemp Farming Act. However, there is no further guidance in the statute on this issue and no regulations have been promulgated. In that regard, SLED requested an opinion regarding the appropriate procedures to take in this instance and your office provided such. At that time, SLED had not received a copy of the

REMBERT C. DENNIS BUILDING  •  POST OFFICE BOX 11549  •  COLUMBIA, SC 29211-1549  •  TELEPHONE 803-734-3970  •  FACSIMILE 803-253-6283

SLED-134

Mark A. Keel, Chief
Page 2
September 30, 2019

Participation Agreement from the individual involved and was not aware of the consent to forfeiture and destruction contained therein. In addition, following the issuance of the August opinion, SLED attempted to secure an order of destruction from a circuit court as discussed in the August opinion; however, the court would not entertain such. While no specific reasoning was provided by the court, there is simply no statutory or regulatory authorization for a court to entertain such request.

Subsequently, SLED was provided a copy of the Participation Agreement in question which clearly and unequivocally states that the "**Permitted Grower acknowledges and consents to the forfeiture and destruction, without compensation, of hemp material: i. Found to have a measured delta-9 THC content more than 0.3 percent on a dry weight basis;...and iii. Growing in an area that is not licensed by SCDA.**" . . . .

In addition, SLED would also note that the Participation Agreement also contains an Indemnification and Release section that states:

Permitted Grower agrees to indemnify, hold harmless, and release forever the State of South Carolina, its departments, agencies, officers, employees, and agents of any kind from all liability claims arising out of Pilot Grower's negligent or illegal actions or actions otherwise in violation of the terms of the Program involving the domestic or international acquisition, cultivation, or processing of hemp and Permitted Grower's participation in the Program.

Accordingly, SLED would respectfully request a formal opinion supplementing and clarifying the effect of the Participation Agreement regarding the due process discussed in the August opinion.

**Law/Analysis:**

It is the opinion of this Office that if there has been a valid consent as you describe then no judicial authorization is required for seizure upon notice from the Department of Agriculture that it has found hemp grown unlawfully in willful violation of applicable law. We emphasize that this conclusion is offered in the abstract, and that the scenario you present involves highly fact-specific questions which this Office cannot determine.

Mark A. Keel, Chief
Page 4
September 30, 2019

destruction upon notification from the Department of Agriculture that it has found cannabis sativa grown in willful violation of applicable law. *See* S.C. Code Ann. § 46-55-20(B)(2) (Supp. 2018); *see also Palacio v. State*, 333 S.C. 506, 514, 511 S.E.2d 62, 66 (1999). Of course the scenario you present involves highly fact-specific questions which this Office cannot determine. We reiterate that we defer to law enforcement's determination of these factual questions in the first instance, and that they ultimately must be determined by a court.

**Conclusion:**

In conclusion, it is the opinion of this Office that if there has been a valid consent as you describe then no judicial authorization is required for seizure upon notice from the Department of Agriculture that it has found hemp grown unlawfully in willful violation of applicable law. We emphasize that this conclusion is offered in the abstract, and that the scenario you present involves highly fact-specific questions which this Office cannot determine. This formal opinion is intended to supplement and clarify our August 8 opinion in light of the new information presented to us. *See Op. S.C. Att'y Gen.*, 2019 WL 3855186 (August 8, 2019).

Our opinion here has been expedited, and it should be read in the context of our prior opinions dated July 10 and August 8, 2019. *Id.; see also Op. S.C. Att'y Gen.*, 2019 WL 3243864 (July 10, 2019). In the factual scenario you present to us, law enforcement is prepared to proceed on information that hemp is being grown in violation of the law and is therefore contraband *per se*. Consistent with our prior opinions and the longstanding policy of this Office, we defer to law enforcement's determination of that factual question. Our opinion here is focused solely on the procedure SLED should follow in pursuing an enforcement action. Additionally, this opinion is not an attempt to comment on any pending litigation or criminal proceeding.

Our Office acknowledged more than once that "the Hemp Farming Act of 2019 was not drafted with the greatest of clarity and needs legislative or judicial clarification." *Op. S.C. Att'y Gen.*, 2019 WL 3243864 (July 10, 2019). We reiterate that this is another example of the need for legislative or judicial direction regarding the implementation of South Carolina's industrial hemp program.

Moreover, we emphasize again the importance of the General Assembly revisiting the Act to address the numerous issues recognized in this, as well as our July 10 and August 8 opinion. In addition, as the agency designated by the General Assembly to regulate hemp, the Department of Agriculture, working closely with SLED, may wish to promulgate regulations to address the omissions identified in these opinions. Without such regulations, law enforcement agents find themselves in an extraordinarily difficult situation. They are required to enforce a statute which creates a general framework but lacks many of the specific protocols which

SLED-137

**JA175**

EX.1 —000000024

Mark A. Keel, Chief
Page 5
September 30, 2019

normally guide all stakeholders in a regulatory enforcement process. Indeed, your letter notes that one court already has declined to entertain a request to authorize an enforcement action, apparently as a result of the absence of established protocols. Promulgating regulations at the administrative level may provide some much-needed certainty until such a time as the General Assembly clarifies the Hemp Farming Act.

Because our opinion is advisory only, we strongly reiterate that either the courts or the legislature must resolve the difficult issues in the statute outlined in our July 10 and August 8 opinions.

Sincerely,

Robert D. Cook
Solicitor General

David S. Jones
Assistant Attorney General

SLED-138

EX.1 −000000025

**From:** Jeff Young
**To:** Alan Wilson; Bob Cook; Emory Smith; Steve Lynch; Harley Kirkland; Wesley Vorberger
**Subject:** FW: Representation Request
**Date:** Thursday, September 26, 2019 4:26:32 PM
**Attachments:** image001.jpg
SKM_364e19092616090.pdf
image002.jpg

Chief Keele says he really needs our help on this.



**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

**From:** Whitsett, Adam <awhitsett@sled.sc.gov>
**Sent:** Thursday, September 26, 2019 4:04 PM
**To:** Jeff Young <JYoung@scag.gov>
**Cc:** Keel, Mark <MKeel@sled.sc.gov>
**Subject:** Representation Request

Judge Young:

Please see attached correspondence sent on behalf of Chief Keel.

Regards,
Adam

Adam L. Whitsett
General Counsel
South Carolina Law Enforcement Division
Office: (803) 896-0647
Cell: (803) 206-4636

**JA177**



**South Carolina
Law Enforcement Division**

*Henry D. McMaster, Governor*
*Mark A. Keel, Chief*

P.O. Box 21398
Columbia, South Carolina
29221-1398

*Tel: (803) 737-9000*

September 26, 2019

**VIA EMAIL**
Chief Deputy Attorney General Jeffrey W. Young
Office of the Attorney General
State of South Carolina
Rembert Dennis Building
1000 Assembly Street, Room 519
Columbia, SC 29201

Dear Chief Deputy Young:

    I write today to formally request the assistance of the South Carolina Attorney General's Office in providing legal representation to SLED in the attached ***Ex Parte* Temporary Restraining Order and Preliminary Injunction** matter that has been filed against SLED. For your convenience, I have also enclosed the correspondence SLED received from the attorney in question.

    Should your office need any additional information of any kind to assist with this request, please do not hesitate to let me know. Know that SLED greatly appreciates the assistance of the Attorney General's Office in this matter.

Sincerely,

Mark A. Keel
Chief of SLED

Enclosures – listed in text



*An Accredited Law Enforcement Agency*



| From: | Jeff Young |
|-------|-----------|
| To: | Emory Smith; Bob Cook |
| Cc: | Alan Wilson; Steve Lynch; Harley Kirkland; Wesley Vorberger |
| Subject: | RE: Representation Request |
| Date: | Thursday, September 26, 2019 4:33:23 PM |
| Attachments: | image001.jpg |
| | image002.jpg |

Thank you.

**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

**From:** Emory Smith <ESmith@scag.gov>
**Sent:** Thursday, September 26, 2019 4:31 PM
**To:** Jeff Young <JYoung@scag.gov>; Bob Cook <BCook@scag.gov>
**Cc:** Alan Wilson <agwilson.scag.gov@scag.gov>; Steve Lynch <slynch@scag.gov>; Harley Kirkland <HKirkland@scag.gov>; Wesley Vorberger <WVorberger@scag.gov>
**Subject:** RE: Representation Request

IF you would like, I will work w/ Harley on this matter. Wes's last day, as you probably know, is next Thursday so he may not be able to assist.

Emory

**From:** Jeff Young
**Sent:** Thursday, September 26, 2019 4:27 PM
**To:** Alan Wilson; Bob Cook; Emory Smith; Steve Lynch; Harley Kirkland; Wesley Vorberger
**Subject:** FW: Representation Request

Chief Keele says he really needs our help on this.

**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

**From:** Whitsett, Adam <awhitsett@sled.sc.gov>
**Sent:** Thursday, September 26, 2019 4:04 PM
**To:** Jeff Young <JYoung@scag.gov>
**Cc:** Keel, Mark <MKeel@sled.sc.gov>
**Subject:** Representation Request

Judge Young:

Please see attached correspondence sent on behalf of Chief Keel.

Regards,
Adam

Adam L. Whitsett
General Counsel
South Carolina Law Enforcement Division
Office: (803) 896-0647
Cell: (803) 206-4636

**JA179**

| | |
|---|---|
| **From:** | Bob Cook |
| **To:** | Jeff Young |
| **Cc:** | Emory Smith; Alan Wilson; Steve Lynch; Harley Kirkland; Wesley Vorberger |
| **Subject:** | Re: Representation Request |
| **Date:** | Thursday, September 26, 2019 4:44:19 PM |
| **Attachments:** | image001.jpg |
| | image002.jpg |

---

Copy me please

Sent from my iPhone

On Sep 26, 2019, at 4:33 PM, Jeff Young <JYoung@scag.gov> wrote:

> Thank you.
> <image001.jpg>
>
> **W. Jeffrey Young**
> Chief Deputy Attorney General
> Office: (803) 734-6680
> jyoung@scag.gov
> Rembert C. Dennis Building
> 1000 Assembly Street
> Columbia, SC 29201
>
> **From:** Emory Smith <ESmith@scag.gov>
> **Sent:** Thursday, September 26, 2019 4:31 PM
> **To:** Jeff Young <JYoung@scag.gov>; Bob Cook <BCook@scag.gov>
> **Cc:** Alan Wilson <agwilson.scag.gov@scag.gov>; Steve Lynch <slynch@scag.gov>;
> Harley Kirkland <HKirkland@scag.gov>; Wesley Vorberger <WVorberger@scag.gov>
> **Subject:** RE: Representation Request
>
> IF you would like, I will work w/ Harley on this matter. Wes's last day, as you probably
> know, is next Thursday so he may not be able to assist.
> Emory
>
> **From:** Jeff Young
> **Sent:** Thursday, September 26, 2019 4:27 PM
> **To:** Alan Wilson; Bob Cook; Emory Smith; Steve Lynch; Harley Kirkland; Wesley Vorberger
> **Subject:** FW: Representation Request
> Chief Keele says he really needs our help on this.
> <image001.jpg>
>
> **W. Jeffrey Young**
> Chief Deputy Attorney General
> Office: (803) 734-6680
> jyoung@scag.gov
> Rembert C. Dennis Building
> 1000 Assembly Street
> Columbia, SC 29201
>
> **From:** Whitsett, Adam <awhitsett@sled.sc.gov>
> **Sent:** Thursday, September 26, 2019 4:04 PM
> **To:** Jeff Young <JYoung@scag.gov>
> **Cc:** Keel, Mark <MKeel@sled.sc.gov>
> **Subject:** Representation Request
> Judge Young:
>
> Please see attached correspondence sent on behalf of Chief Keel.

**From:** Bob Cook
**To:** Jeff Young; Alan Wilson; Emory Smith; Steve Lynch; Harley Kirkland; Wesley Vorberger
**Subject:** RE: Representation Request
**Date:** Thursday, September 26, 2019 4:51:23 PM
**Attachments:** image002.jpg
image003.jpg

Emory please keep me advised and copy me on pleadings. Thanks

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

**From:** Jeff Young <JYoung@scag.gov>
**Sent:** Thursday, September 26, 2019 4:27 PM
**To:** Alan Wilson <agwilson.scag.gov@scag.gov>; Bob Cook <BCook@scag.gov>; Emory Smith <ESmith@scag.gov>; Steve Lynch <slynch@scag.gov>; Harley Kirkland <HKirkland@scag.gov>; Wesley Vorberger <WVorberger@scag.gov>
**Subject:** FW: Representation Request

Chief Keele says he really needs our help on this.



**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

**From:** Whitsett, Adam <awhitsett@sled.sc.gov>
**Sent:** Thursday, September 26, 2019 4:04 PM
**To:** Jeff Young <JYoung@scag.gov>
**Cc:** Keel, Mark <MKeel@sled.sc.gov>
**Subject:** Representation Request

Judge Young:

Please see attached correspondence sent on behalf of Chief Keel.

Regards,
Adam

Adam L. Whitsett
General Counsel
South Carolina Law Enforcement Division
Office: (803) 896-0647
Cell: (803) 206-4636

**JA181**

| From: | Emory Smith |
|---|---|
| To: | Bob Cook; Jeff Young; Harley Kirkland; Wesley Vorberger |
| Cc: | Steve Lynch |
| Subject: | RE: Representation Request |
| Date: | Thursday, September 26, 2019 5:11:55 PM |
| Attachments: | image001.jpg |
| | image002.jpg |

Will do.

Harley, Wes and I just talked to Adam on the phone. He's sent us some dox and will stop by to meet w/ us tomorrow pm. Harley, Wes and I have discussed several options of responding.

FYI, one of the attys for the Plaintiffs is Sen. Brad Hutto. We may call him but will check w/ you before doing so.

**From:** Bob Cook
**Sent:** Thursday, September 26, 2019 4:51 PM
**To:** Jeff Young; Alan Wilson; Emory Smith; Steve Lynch; Harley Kirkland; Wesley Vorberger
**Subject:** RE: Representation Request

Emory please keep me advised and copy me on pleadings. Thanks

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

**From:** Jeff Young <JYoung@scag.gov>
**Sent:** Thursday, September 26, 2019 4:27 PM
**To:** Alan Wilson <agwilson.scag.gov@scag.gov>; Bob Cook <BCook@scag.gov>; Emory Smith <ESmith@scag.gov>; Steve Lynch <slynch@scag.gov>; Harley Kirkland <HKirkland@scag.gov>; Wesley Vorberger <WVorberger@scag.gov>
**Subject:** FW: Representation Request

Chief Keele says he really needs our help on this.

 **W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

**From:** Whitsett, Adam <awhitsett@sled.sc.gov>
**Sent:** Thursday, September 26, 2019 4:04 PM
**To:** Jeff Young <JYoung@scag.gov>
**Cc:** Keel, Mark <MKeel@sled.sc.gov>
**Subject:** Representation Request

Judge Young:

Please see attached correspondence sent on behalf of Chief Keel.

Regards,

Adam
Adam L. Whitsett

| | |
|---|---|
| From: | Harley Kirkland |
| To: | Bob Cook; Emory Smith; Wesley Vorberger |
| Subject: | RE: Representation Request |
| Date: | Thursday, September 26, 2019 5:40:00 PM |
| Attachments: | Pendarvis - Summons and Complaint (02100725xD2C78).PDF |
| | Pendarvis - Complaint Ex A (02100724xD2C78).PDF |
| | Pendarvis - Complaint Ex B (02100723xD2C78).PDF |
| | image001.jpg |
| | image002.jpg |

The Summons, Complaint, and Exhibits are attached.

Thanks!

**Harley L. Kirkland**
Assistant Attorney General
Office of the Attorney General
State of South Carolina
Post Office Box 11549
Columbia, South Carolina 29211
Phone: 803.734.0406
Fax: 803.734.3677
E-mail: HKirkland@scag.gov

**From:** Bob Cook
**Sent:** Thursday, September 26, 2019 5:17 PM
**To:** Emory Smith; Jeff Young; Harley Kirkland; Wesley Vorberger
**Cc:** Steve Lynch
**Subject:** RE: Representation Request
What is the relief sought?

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

**From:** Emory Smith <ESmith@scag.gov>
**Sent:** Thursday, September 26, 2019 5:12 PM
**To:** Bob Cook <BCook@scag.gov>; Jeff Young <JYoung@scag.gov>; Harley Kirkland
<HKirkland@scag.gov>; Wesley Vorberger <WVorberger@scag.gov>
**Cc:** Steve Lynch <slynch@scag.gov>
**Subject:** RE: Representation Request
Will do.

Harley, Wes and I just talked to Adam on the phone. He's sent us some dox and will stop by to meet
w/ us tomorrow pm. Harley, Wes and I have discussed several options of responding.
FYI, one of the attys for the Plaintiffs is Sen. Brad Hutto. We may call him but will check w/ you
before doing so.

**From:** Bob Cook
**Sent:** Thursday, September 26, 2019 4:51 PM
**To:** Jeff Young; Alan Wilson; Emory Smith; Steve Lynch; Harley Kirkland; Wesley Vorberger
**Subject:** RE: Representation Request
Emory please keep me advised and copy me on pleadings. Thanks

EX.1 –000000032

| | |
|---|---|
| From: | Emory Smith |
| To: | Bob Cook |
| Subject: | FW: [EXTERNAL] FW: Pendarvis and Dew v. SLED and SCDA CA No. 2019 CP 33 00675 |
| Date: | Tuesday, October 22, 2019 9:40:26 AM |
| Attachments: | Return to TRO.pdf |
| | Plaintiff's Memo.pdf |
| | PIImageDisplay (10).pdf |

**Adam was not at the hearing but as far as he knows**, the Judge simply said he was taking the matter under advisement.  Seals' email below gives no reason.

The injunctions requested in the 2d and 3d documents do not expressly request that prosecution be enjoined, but Adam believes that an order would have that effect.  **Given the absence of an express request for prosecution to be enjoined, I believe that we would not be able to limit our involvement just to that issue.**  Set forth below are some of the Plaintiffs' requests for relief.

The Plaintiffs' Petition for a TRO / PI Motion and Complaint  said a "TRO should issue here to prevent Defendants SCDA and SLED from destroying crops and taking ultra vires action." The c/a for injunctive relief broadly says "Pursuant to South Carolina Code §15-53-120, the Court should enter a temporary and, after a plenary merits hearing, permanent injunction enjoining the Defendants from any further violation South Carolina Code § 59-117-40 and any such further relief necessary to conform the Defendants conduct to the law and effectuate the orders and judgement of this Court."

The memo says:

Defendant SLED, in turn on August 8, 2019, appears to have sought an opinion from the South Carolina
Attorney General regarding the appropriate procedure by which to enforce a "willful violation
of the South Carolina Hemp Farming Act." See Exhibit E. That opinion concluded:

In conclusion, it is the opinion of this Office that in absence of legislative direction, SLED should seek judicial authorization for the seizure of illegallygrown
hemp in order to ensure that the grower receives due process
consistent with the Constitutions of the United States and the State of South Carolina. See, e.g., State v. 192 Coin-Operated Video Game Machines, 338 S.C.
176, 525 S.E.2d 872 (2000). We advise that this authorization be sough with notice to the grower and an opportunity for them to be heard in a hearing in an abundance of cautions. See id….Therefore our Office advises that SLED proceed with the utmost care to fully ensure that the grower and all interested parties receive due process in any enforcement action.
Exhibit E, p.5, emphasis added.

Defendant SLED did none of the above, instead merely calling the Plaintiffs and

**JA184**

telling them that the crop in question was going to be destroyed in the coming days. Faced
with the information that SLED intended to destroy the crop in question within days, after
already having destroyed Plaintiff Pendarvis' crop in Dorchester County in violation of his
due process rights, the Plaintiffs had no remedy other than seeking emergency relief from the
circuit court.

**From:** Whitsett, Adam [mailto:awhitsett@sled.sc.gov]
**Sent:** Tuesday, October 22, 2019 9:08 AM
**To:** Emory Smith
**Cc:** aterry@scda.sc.gov
**Subject:** FW: [EXTERNAL] FW: Pendarvis and Dew v. SLED and SCDA CA No. 2019 CP 33 00675

Emory:

On behalf of Alden Terry, General Counsel at the Dept. of Ag, who is copied on this email and myself,
we appreciate your review and consideration of this matter. As we discussed, below is Judge Seals'
ruling that effectively ends this case and renders the entire Hemp licensure program meaningless in
that it authorizes and immunizes the illegal cultivation and sale of illegal, unlicensed hemp that was
cultivated in complete disregard of South Carolina law.  In addition, I have attached our
memorandum detailing the complete failure to follow or apply Rule 65 of the Rules of Civil
Procedure in this matter.

At your request, I have also included the Plaintiff's filings in this matter.

Please let me know if there is anything else we can provide to assist.

Regards,
Adam

Adam L. Whitsett
General Counsel
South Carolina Law Enforcement Division
Office: (803) 896-0647
Cell:   (803) 206-4636



EX.1 –000000034

| | |
|---|---|
| **From:** | Jeff Young |
| **To:** | Bob Cook |
| Subject: | https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html |
| **Date:** | Friday, October 4, 2019 8:10:02 AM |



**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

| | |
|---|---|
| **From:** | Bob Cook |
| **To:** | Jeff Young |
| **Subject:** | RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html |
| **Date:** | Friday, October 4, 2019 8:16:00 AM |

**Did anyone reach out to us on this? Seems like only Keel.**

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

**From:** Jeff Young <JYoung@scag.gov>
**Sent:** Friday, October 4, 2019 8:10 AM
**To:** Bob Cook <BCook@scag.gov>
**Subject:** https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html



**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

**JA187**

| | |
|---|---|
| **From:** | Bob Cook |
| **To:** | Robert Kittle |
| **Cc:** | Jeff Young |
| Subject: | FW: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html |
| Date: | Friday, October 4, 2019 8:20:00 AM |

Robert, did this guy reach out to you before writing?

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

**From:** Jeff Young <JYoung@scag.gov>
**Sent:** Friday, October 4, 2019 8:10 AM
**To:** Bob Cook <BCook@scag.gov>
**Subject:** https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html



**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

**JA188**

EX.1 –000000037

| | |
|---|---|
| **From:** | Jeff Young |
| **To:** | Bob Cook |
| **Subject:** | RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html |
| **Date:** | Friday, October 4, 2019 8:22:31 AM |

Not to my knowledge.



**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

---

**From:** Bob Cook <BCook@scag.gov>
**Sent:** Friday, October 4, 2019 8:17 AM
**To:** Jeff Young <JYoung@scag.gov>
**Subject:** RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html

Did anyone reach out to us on this? Seems like only Keel.

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

---

**From:** Jeff Young <JYoung@scag.gov>
**Sent:** Friday, October 4, 2019 8:10 AM
**To:** Bob Cook <BCook@scag.gov>
**Subject:** https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html

**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building

| From: | Bob Cook |
|---|---|
| To: | Jeff Young |
| Cc: | Robert Kittle |
| Subject: | RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html |
| Date: | Friday, October 4, 2019 8:25:00 AM |

Robert I suggest you call him and mention our first opinion where we said the law needs legislative or judicial clarification. He should have called us

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

---

**From:** Jeff Young <JYoung@scag.gov>
**Sent:** Friday, October 4, 2019 8:23 AM
**To:** Bob Cook <BCook@scag.gov>
**Subject:** RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html

Not to my knowledge.

     **W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

---

**From:** Bob Cook <BCook@scag.gov>
**Sent:** Friday, October 4, 2019 8:17 AM
**To:** Jeff Young <JYoung@scag.gov>
**Subject:** RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html

Did anyone reach out to us on this? Seems like only Keel.

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211

**JA190**

| From: | Bob Cook |
|---|---|
| To: | David Jones |
| Subject: | FW: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html |
| Date: | Friday, October 4, 2019 8:46:00 AM |

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

**From:** Jeff Young <JYoung@scag.gov>
**Sent:** Friday, October 4, 2019 8:10 AM
**To:** Bob Cook <BCook@scag.gov>
**Subject:** https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html



**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

**JA191**

| From: | Robert Kittle |
|---|---|
| To: | Bob Cook; Jeff Young |
| Subject: | RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html |
| Date: | Friday, October 4, 2019 9:08:57 AM |

He reached out to us back in August and wanted to get a copy of our opinion, which I gave him. Other than that he didn't talk to us. So he does have our opinion but didn't include what we said about the fact that the law needs to be clarified, although he did include in the story other people saying that. I'll give him a call.

**From:** Bob Cook
**Sent:** Friday, October 04, 2019 8:25 AM
**To:** Jeff Young
**Cc:** Robert Kittle
**Subject:** RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html

Robert I suggest you call him and mention our first opinion where we said the law needs legislative or judicial clarification. He should have called us

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

**From:** Jeff Young <JYoung@scag.gov>
**Sent:** Friday, October 4, 2019 8:23 AM
**To:** Bob Cook <BCook@scag.gov>
**Subject:** RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html

Not to my knowledge.



**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

**From:** Bob Cook <BCook@scag.gov>

**JA192**

**From:** Bob Cook
**To:** David Jones
**Subject:** FW: Plan for Destruction of Hemp Field in Dorchester Co. - Trent Pendarvis
**Date:** Thursday, September 19, 2019 7:57:00 AM
**Attachments:** ATT00001.htm
ATT00002.htm
Pendarvis Drug Analysis L19-15784.pdf
ATT00003.htm
SCDA SLED Memo 8-6-2019 Pendarvis.pdf
ATT00004.htm
SCDA SLED Memo 8-6-2019 Pendarvis.pdf
ATT00005.htm
Pendarvis, Trent Participation Agreement.pdf
ATT00006.htm

---

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

---

**From:** Whitsett, Adam <awhitsett@sled.sc.gov>
**Sent:** Thursday, September 19, 2019 7:51 AM
**To:** Bob Cook <BCook@scag.gov>
**Subject:** Fwd: Plan for Destruction of Hemp Field in Dorchester Co. - Trent Pendarvis


Sent from my iPhone

Begin forwarded message:

> **From:** "Wells, Jason" <jwells@sled.sc.gov>
> **Date:** September 18, 2019 at 3:16:13 PM EDT
> **To:** "Oneal, Frank" <foneal@sled.sc.gov>
> **Cc:** "Neale II, John" <jneale@sled.sc.gov>, "Whitsett, Adam" <awhitsett@sled.sc.gov>,
> "Wood III, Glenn" <gwood@sled.sc.gov>
> **Subject:** Plan for Destruction of Hemp Field in Dorchester Co. - Trent Pendarvis
>
> Major,
>
> This email is to inform you of the plan we have in mind to deal with the unlawful hemp
> farm being operated by John Trenton "Trent" Pendarvis in Harleyville (Dorchester
> County).  S/A John Neale is going to obtain one arrest warrant tomorrow morning
> (9/19/2019) for Unlawful cultivation of hemp.  Statute – 46-55-20(A)(1) (CDR Code –
> 3554 Penalty section – 17-25-0030).  This warrant is based on a request (See Attached)
> SLED received from the SC Department of Agriculture (SCDA) on August 6, 2019, asking

**JA193**

that SLED conduct enforcement action with regard to Pendarvis.  Derek Underwood (SCDA Assistant Commissioner – Consumer protection Division) stated in his request letter that Pendarvis committed a willful violation in that he was growing hemp on acreage that was not on record with the SCDA.  The acreage involved is approximately 10 acres (See attached photo).  S/A John Neale went to the property on August 28, 2019, and collected numerous plant samples.  The Drug analysis Report (see attached) stated that two of the samples tested over the .3 % THC limit (samples tested .42 and .41).  Also on August 28, 2019, Underwood (SCDA) emailed Pendarvis a violation letter (see attached) stating that his amendments to add the acreage involved would not be approved by the SCDA because he already had mature grown hemp plants on the property.  Underwood confirmed that Pendarvis had indeed received the violation letter.

Today, I contacted the SC Forestry Commission to ask when is the first availability they will have to bring equipment to the farm in Harleyville for destruction of the plants.  My contact at Forestry should get back with me today to let me know.  Once we have a date set for destruction, we will meet at the farm in Harleyville and contact Pendarvis.  Pendarvis will then be informed of the arrest warrant and the plans for destruction.

The destruction is based on the agreement (see attached copy) that Pendarvis entered into with the SCDA on May 13, 2019.  The agreement Pendarvis signed stated that:

"Permitted grower acknowledges and consents to the forfeiture or destruction, without compensation, of hemp material:
1) Found to have a measured delta-9 THC content of more than 0.3 percent on a dry weight basis
2) Bearing off-label pesticide residues regardless of the source or cause of contamination
3) Growing in an area that is not licensed by SCDA

**Jason Wells**
**Interim Captain - Narcotics**
**South Carolina Law Enforcement Division (SLED)**
803-608-3201
jwells@sled.sc.gov

# WILLIAMS & WILLIAMS
## ATTORNEYS AT LAW

MARSHALL B. WILLIAMS, (1912 - 1995)
CHARLES H. WILLIAMS, II
C. BRADLEY HUTTO
RUSSELL A. BLANCHARD, IV

DAVID R. WILLIAMS
CHARLIE H. WILLIAMS, III
VIRGINIA W. WILLIAMS
SKYLER B. HUTTO, (ADMITTED SC & DC)

September 20, 2019

2019 SEP 24  AM 10: 44
RECEIVED
SLED OFFICE OF CHIEF

Mr. Mark A. Keel, Chief
South Carolina Law Enforcement Division
PO Box 21398
Columbia, SC 29221-1398

Re: John Trenton Pendarvis

Dear Chief Keel,

Please be advised our firm is investigating an incident that occurred at or about on September 19, 2019, involving my client John Trenton Pendarvis. By this letter, we are requesting preservation of information relating to this incident, including but not limited to the following;

- Any and all surveillance video and/or photographs taken from Pendarvis Farms located in Harleyville, South Carolina;
- Any and all video and/or photographs taken before or after the crop located in Harleyville, South Carolina was destroyed;
- The names and addresses of agents working and on location during the arrest of John Trenton Pendarvis and the destruction of his crop on September 19, 2019;
- Any and all communications including emails, phone calls and text messages between South Carolina Law Enforcement Division and South Carolina Department of Agriculture regarding John Trenton Pendarvis and/or Pendarvis Farms;

If you fail to preserve and maintain this evidence, we will seek sanctions provided under South Carolina law including spoliation of evidence. It is necessary to preserve all the requested evidence in order for Mr. Pendarvis to be able to make a determination about the culpability and punitive exposure of any party to a potential action.

Please forward copies of the preserved information to our attention as well as documentation indicating that the above information has likewise been preserved. If there are any fees associated, please let us know. Should you have any questions, please do not hesitate to contact my office.

Sincerely,

C. Bradley Hutto

SLED-102

**JA195**



**South Carolina**
**Law Enforcement Division**

P.O. Box 21398
Columbia, South Carolina
29221-1398

*Henry D. McMaster, Governor*
*Mark A. Keel, Chief*

*Tel: (803) 737-9000*

RECEIVED

SEP 25 2019

Referred to COOK/PB
Answered

September 23, 2019

The Honorable Alan Wilson
South Carolina Attorney General
Post Office Box 11549
Columbia, South Carolina 29211-1549

Re:     Opinion Request

Dear General Wilson:

I write today to respectfully request an opinion on several additional aspects of The Hemp Farming Act (Act 14 of 2019, formerly H.3449) and its application in South Carolina. As an initial matter, SLED is informed and believes that only individuals and businesses operating in accordance with this Act can legally "cultivate, handle, or process hemp" in South Carolina, and that any and all such cultivation can only be on land specifically approved and authorized by the Department of Agriculture. As such, any attempt to grow outside the approved auspices of the Hemp Farming Act is illegal. In that regard, in addition to the criminal penalties discussed in the July 10, 2019 Opinion, S.C. Code Ann. § 46-55-40 also states that:

> If the commissioner determines that a licensee has violated state law with a culpable mental state greater than negligence, then the commissioner shall immediately report the hemp producer to the Attorney General and the Chief of the South Carolina Law Enforcement Division, and subsection (A)(2) shall not apply to the violation.

S.C. Code Ann. § 46-55-40(B). To that end, on August 5, 2019, the Department of Agriculture notified SLED and The Attorney General of a willful violation of the Hemp Farming Act. However, there is no further guidance in the statute on this issue and no regulations have been promulgated. In that regard, SLED requested an opinion regarding the appropriate procedures to take in this instance and your office provided such. At that time, SLED had not received a copy of the Participation Agreement from the individual involved and was not aware of the consent to forfeiture and destruction contained therein. In addition, following the issuance of August opinion, SLED attempted to secure an order of destruction from a circuit court as discussed in the August opinion; however, the court would not entertain such. While no specific reasoning was provided by the court, there is simply no statutory or regulatory authorization for a court to entertain such request.


*CALEA®*

*An Accredited Law Enforcement Agency*


*ANAB ACCREDITED*
*FORENSIC TESTING LABORATORY*

**JA196**

Opinion Request
September 23, 2019
Page 2 of 2

Subsequently, SLED was provided a copy of the Participant Agreement in question which clearly and unequivocally states that the "**Permitted Grower acknowledges and consents to the forfeiture and destruction, without compensation, of hemp material: i. Found to have a measured delta-9 THC content more than .3 percent on a dry weight basis;…and iii. Growing in an area that is not licensed by SCDA.**" Upon receipt of such additional information, SLED provided this information to your office and sought further clarification of the impact of such. On Thursday, September 9, 2019, your office acknowledged in an email that "in the abstract that if there has been a valid consent as you describe, no judicial authorization for seizure upon notice from the Department of Agriculture that it has found hemp grown unlawfully in willful violation of applicable law. It is a well-established principle of law that legal barriers to the seizure of property may be waived by consent." Further, your office noted that

Based on these additional facts, we supplement our previous advice to you such that where a grower has consented to the seizure and destruction of unlawfully-grown hemp, SLED or another appropriate law enforcement authority with jurisdiction may proceed with the destruction upon notification from the Department of Agriculture that it has found cannabis sativa grown in willful violation of applicable law. Of course the scenario you present involves highly fact-specific questions which this Office cannot determine. We reiterate that we defer to law enforcement's determination of these factual questions in the first instance, and that they ultimately must be determined by a court.

In addition, SLED would also note that the Participation Agreement also contains an Indemnification and Release section that states:

Permitted Grower agrees to indemnify, hold harmless, and release forever the State of South Carolina, its departments, agencies, officers, employees, and agents of any kind from all liability claims arising out of Pilot Grower's negligent or illegal actions or actions otherwise in violation of the terms of the Program involving the domestic or international acquisition, cultivation, or processing of hemp and Permitted Grower's participation in the Program.

Accordingly, SLED would respectfully request a formal opinion supplementing and clarifying the effect of the Participation Agreement regarding the due process discussed in the August Opinion.

Respectfully,

Mark A. Keel
Chief of SLED

**JA197**

| | |
|---|---|
| **From:** | Westlaw@westlaw.com |
| **To:** | Bob Cook |
| **Subject:** | Adam L. Whitsett, Esq. |
| **Date:** | Thursday, September 26, 2019 5:33:16 PM |
| **Attachments:** | Adam L Whitsett Esq.rtf |

robert cook sent you content from Westlaw Edge.
Please see the attached file.

Item:        Adam L. Whitsett, Esq.
Citation:     2019 WL 3855186
Sent On:     Thursday, September 26, 2019
Sent By:    robert cook
Client ID:   OP

Note:


-----------------------------------------------------------------------------
Westlaw © 2019 Thomson Reuters. No claim to original U.S. Government Works.

| From: | Bob Cook |
|---|---|
| To: | Emory Smith |
| Subject: | FW: Adam L. Whitsett, Esq. |
| Date: | Thursday, September 26, 2019 5:34:00 PM |
| Attachments: | Adam L Whitsett Esq.rtf |

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

-----Original Message-----
From: Westlaw@westlaw.com <Westlaw@westlaw.com>
Sent: Thursday, September 26, 2019 5:33 PM
To: Bob Cook <BCook@scag.gov>
Subject: Adam L. Whitsett, Esq.

robert cook sent you content from Westlaw Edge.
Please see the attached file.

Item:    Adam L. Whitsett, Esq.
Citation:  2019 WL 3855186
Sent On:   Thursday, September 26, 2019
Sent By:   robert cook
Client ID:  OP

Note:

----------------------------------------------------------------
Westlaw © 2019 Thomson Reuters. No claim to original U.S. Government Works.

**JA199**

| From: | Bob Cook |
|---|---|
| To: | Emory Smith |
| Subject: | FW: Consent and destruction of unlawful hemp |
| Date: | Thursday, September 26, 2019 5:45:00 PM |

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

**From:** David Jones <DJones@scag.gov>
**Sent:** Thursday, September 19, 2019 10:11 AM
**To:** Whitsett, Adam <awhitsett@sled.sc.gov>
**Cc:** Joanne Lee <JLee@scag.gov>
**Subject:** Consent and destruction of unlawful hemp

Dear Adam:

Thank you for reaching out to our Office regarding our recent opinion addressed to you concerning the appropriate process to seize illegally-grown hemp. See Op. S.C. Att'y Gen., 2019 WL 3855186 (August 8, 2019). That expedited opinion noted that we deferred to law enforcement's determination of the relevant factual questions. I understand that additional facts have come to light since we issued that opinion. Specifically, it appears that the hemp grower whose crop precipitated the August 8 opinion entered into a participation agreement with the SC Department of Agriculture to participate in the South Carolina Hemp Farming Program. In that agreement the hemp grower expressly consented "to the forfeiture or destruction, without compensation, of hemp material: 1. Found to have a measured delta-9 THC content of more than 0.3 percent on a dry weight basis; . . . and iii. Growing in an area that is not licensed by SCDA." You believe that this consent removes the need to seek judicial authorization for the seizure and destruction of such hemp. You also note that, in addition to the field not being licensed, subsequent testing has indicated that some of the unlawfully-grown plants have a measured delta-9 THC content of more than 0.3 percent on a dry weight basis.

Bob and I have discussed the question and we agree with your conclusion in the abstract that if there has been a valid consent as you describe, no judicial authorization for seizure upon notice from the Department of Agriculture that it has found hemp grown unlawfully in willful violation of applicable law. It is a well-established principle of law that legal barriers to the seizure of property may be waived by consent. As explained by the South Carolina Supreme Court:

"The constitutional immunity from unreasonable searches and seizures may be waived by valid consent. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Warrantless searches and seizures are reasonable within the meaning of the Fourth Amendment when conducted under the authority of voluntary consent. United States v.

<u>Durades,</u> 929 F.2d 1160 (7th Cir.1991). The existence of consent is determined from the totality of the circumstances. <u>United States v. Zapata,</u> 997 F.2d 751 (10th Cir.1993).

<u>Palacio v. State,</u> 333 S.C. 506, 514, 511 S.E.2d 62, 66 (1999).

Based on these additional facts, we supplement our previous advice to you such that where a grower has consented to the seizure and destruction of unlawfully-grown hemp, SLED or another appropriate law enforcement authority with jurisdiction may proceed with the destruction upon notification from the Department of Agriculture that it has found cannabis sativa grown in willful violation of applicable law. Of course the scenario you present involves highly fact-specific questions which this Office cannot determine. We reiterate that we defer to law enforcement's determination of these factual questions in the first instance, and that they ultimately must be determined by a court.

Sincerely,

David S. Jones
Assistant Attorney General
Office of the Attorney General
State of South Carolina
PO Box 11549
Columbia, SC  29211
803-734-3188

| | |
|---|---|
| **From:** | Emory Smith |
| **To:** | Bob Cook |
| **Subject:** | RE: Consent and destruction of unlawful hemp |
| **Date:** | Thursday, September 26, 2019 5:53:08 PM |

May I forward to Harley and Wes?

**From:** Bob Cook
**Sent:** Thursday, September 26, 2019 5:46 PM
**To:** Emory Smith
**Subject:** FW: Consent and destruction of unlawful hemp


Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

**From:** David Jones <DJones@scag.gov>
**Sent:** Thursday, September 19, 2019 10:11 AM
**To:** Whitsett, Adam <awhitsett@sled.sc.gov>
**Cc:** Joanne Lee <JLee@scag.gov>
**Subject:** Consent and destruction of unlawful hemp

Dear Adam:

Thank you for reaching out to our Office regarding our recent opinion addressed to you concerning the appropriate process to seize illegally-grown hemp. See Op. S.C. Att'y Gen., 2019 WL 3855186 (August 8, 2019). That expedited opinion noted that we deferred to law enforcement's determination of the relevant factual questions. I understand that additional facts have come to light since we issued that opinion. Specifically, it appears that the hemp grower whose crop precipitated the August 8 opinion entered into a participation agreement with the SC Department of Agriculture to participate in the South Carolina Hemp Farming Program. In that agreement the hemp grower expressly consented "to the forfeiture or destruction, without compensation, of hemp material: 1. Found to have a measured delta-9 THC content of more than 0.3 percent on a dry weight basis; . . . and iii. Growing in an area that is not licensed by SCDA." You believe that this consent removes the need to seek judicial authorization for the seizure and destruction of such hemp.  You also note that, in addition to the field not being licensed, subsequent testing has indicated that some of the unlawfully-grown plants have a measured delta-9 THC content of more than 0.3 percent on a dry weight basis.

Bob and I have discussed the question and we agree with your conclusion in the abstract that if there has been a valid consent as you describe, no judicial authorization for seizure upon notice from the Department of Agriculture that it has found hemp grown unlawfully in willful violation of applicable law. It is a well-established principle of law that legal barriers to the

**JA202**

seizure of property may be waived by consent. As explained by the South Carolina Supreme Court:

"The constitutional immunity from unreasonable searches and seizures may be waived by valid consent. <u>Katz v. United States</u>, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Warrantless searches and seizures are reasonable within the meaning of the Fourth Amendment when conducted under the authority of voluntary consent. <u>United States v. Durades</u>, 929 F.2d 1160 (7th Cir.1991). The existence of consent is determined from the totality of the circumstances. <u>United States v. Zapata</u>, 997 F.2d 751 (10th Cir.1993).

<u>Palacio v. State</u>, 333 S.C. 506, 514, 511 S.E.2d 62, 66 (1999).

Based on these additional facts, we supplement our previous advice to you such that where a grower has consented to the seizure and destruction of unlawfully-grown hemp, SLED or another appropriate law enforcement authority with jurisdiction may proceed with the destruction upon notification from the Department of Agriculture that it has found cannabis sativa grown in willful violation of applicable law. Of course the scenario you present involves highly fact-specific questions which this Office cannot determine. We reiterate that we defer to law enforcement's determination of these factual questions in the first instance, and that they ultimately must be determined by a court.

Sincerely,

David S. Jones
Assistant Attorney General
Office of the Attorney General
State of South Carolina
PO Box 11549
Columbia, SC 29211
803-734-3188

**JA203**

**From:** Bob Cook
**To:** Emory Smith
Subject:      Re: Consent and destruction of unlawful hemp
**Date:**      Thursday, September 26, 2019 5:53:49 PM

Certainly

Sent from my iPhone

On Sep 26, 2019, at 5:53 PM, Emory Smith <ESmith@scag.gov> wrote:

May I forward to Harley and Wes?

**From:** Bob Cook
**Sent:** Thursday, September 26, 2019 5:46 PM
**To:** Emory Smith
Subject: FW: Consent and destruction of unlawful hemp

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

**From:** David Jones <DJones@scag.gov>
**Sent:** Thursday, September 19, 2019 10:11 AM
**To:** Whitsett, Adam <awhitsett@sled.sc.gov>
Cc: Joanne Lee <JLee@scag.gov>
Subject: Consent and destruction of unlawful hemp

Dear Adam:

Thank you for reaching out to our Office regarding our recent opinion addressed to you concerning the appropriate process to seize illegally-grown hemp. See Op. S.C. Att'y Gen., 2019 WL 3855186 (August 8, 2019). That expedited opinion noted that we deferred to law enforcement's determination of the relevant factual questions. I understand that additional facts have come to light since we issued that opinion. Specifically, it appears that the hemp grower whose crop precipitated the August 8 opinion entered into a participation agreement with the SC Department of Agriculture to participate in the South Carolina Hemp Farming Program. In that agreement the hemp grower expressly consented "to the forfeiture or destruction, without compensation, of hemp material: 1. Found to have a measured delta-9 THC content of more than 0.3 percent on a dry weight basis; . . . and iii. Growing in an area that is not licensed by SCDA." You believe

**JA204**

that this consent removes the need to seek judicial authorization for the seizure and destruction of such hemp. You also note that, in addition to the field not being licensed, subsequent testing has indicated that some of the unlawfully-grown plants have a measured delta-9 THC content of more than 0.3 percent on a dry weight basis.

Bob and I have discussed the question and we agree with your conclusion in the abstract that if there has been a valid consent as you describe, no judicial authorization for seizure upon notice from the Department of Agriculture that it has found hemp grown unlawfully in willful violation of applicable law. It is a well-established principle of law that legal barriers to the seizure of property may be waived by consent. As explained by the South Carolina Supreme Court:

"The constitutional immunity from unreasonable searches and seizures may be waived by valid consent. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Warrantless searches and seizures are reasonable within the meaning of the Fourth Amendment when conducted under the authority of voluntary consent. United States v. Durades, 929 F.2d 1160 (7th Cir.1991). The existence of consent is determined from the totality of the circumstances. United States v. Zapata, 997 F.2d 751 (10th Cir.1993).

Palacio v. State, 333 S.C. 506, 514, 511 S.E.2d 62, 66 (1999).

Based on these additional facts, we supplement our previous advice to you such that where a grower has consented to the seizure and destruction of unlawfully-grown hemp, SLED or another appropriate law enforcement authority with jurisdiction may proceed with the destruction upon notification from the Department of Agriculture that it has found cannabis sativa grown in willful violation of applicable law. Of course the scenario you present involves highly fact-specific questions which this Office cannot determine. We reiterate that we defer to law enforcement's determination of these factual questions in the first instance, and that they ultimately must be determined by a court.

Sincerely,

David S. Jones
Assistant Attorney General
Office of the Attorney General
State of South Carolina
PO Box 11549
Columbia, SC  29211
803-734-3188

| | |
|---|---|
| **From:** | David Jones |
| **To:** | Bob Cook |
| **Subject:** | Draft op: Keel: Hemp seizure by consent |
| **Date:** | Friday, September 27, 2019 4:57:56 PM |
| **Attachments:** | Keel. Hemp Seizure By Consent (02097903xD2C78).DOCX |

I'll do a proofing pass Monday a.m., but this is the substance of it.

David S. Jones
Assistant Attorney General
Office of the Attorney General
State of South Carolina
PO Box 11549
Columbia, SC  29211
803-734-3188

| From: | David Jones |
|---|---|
| To: | Bob Cook |
| Subject: | FW: Draft op: Keel: Hemp seizure by consent |
| Date: | Monday, September 30, 2019 12:36:54 PM |

What about:

"Without such regulations, law enforcement agents finds themselves bound to enforce a statute which creates a general framework but lacks many of the specific protocols which normally guide all stakeholders in a regulatory enforcement process. Indeed, your letter notes that one court already has declined to entertain a request to authorize an enforcement action, apparently as a result of the absence of established protocols. Promulgating regulations at the administrative level may provide some much-needed certainty until such a time as the General Assembly clarifies the Hemp Farming Act."

I'm not sure how fine a point you want to put on it, but we could keep going.

David S. Jones
Assistant Attorney General
Office of the Attorney General
State of South Carolina
PO Box 11549
Columbia, SC  29211
803-734-3188

From: David Jones
Sent: Friday, September 27, 2019 4:58 PM
To: Bob Cook
Subject: Draft op: Keel: Hemp seizure by consent

I'll do a proofing pass Monday a.m., but this is the substance of it.

David S. Jones
Assistant Attorney General
Office of the Attorney General
State of South Carolina
PO Box 11549
Columbia, SC  29211
803-734-3188

**From:** Bob Cook
**To:** David Jones
**Subject:** RE: Draft op: Keel: Hemp seizure by consent
**Date:** Monday, September 30, 2019 12:40:00 PM

"find themselves in an extraordinarily difficult situation. They are required to enforce a statute which creates……

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

---

**From:** David Jones <DJones@scag.gov>
**Sent:** Monday, September 30, 2019 12:37 PM
**To:** Bob Cook <BCook@scag.gov>
**Subject:** FW: Draft op: Keel: Hemp seizure by consent

What about:

"Without such regulations, law enforcement agents finds themselves bound to enforce a statute which creates a general framework but lacks many of the specific protocols which normally guide all stakeholders in a regulatory enforcement process. Indeed, your letter notes that one court already has declined to entertain a request to authorize an enforcement action, apparently as a result of the absence of established protocols. Promulgating regulations at the administrative level may provide some much-needed certainty until such a time as the General Assembly clarifies the Hemp Farming Act."

I'm not sure how fine a point you want to put on it, but we could keep going.

David S. Jones
Assistant Attorney General
Office of the Attorney General
State of South Carolina
PO Box 11549
Columbia, SC  29211
803-734-3188

---

**From:** David Jones
**Sent:** Friday, September 27, 2019 4:58 PM
**To:** Bob Cook
**Subject:** Draft op: Keel: Hemp seizure by consent

I'll do a proofing pass Monday a.m., but this is the substance of it.

David S. Jones
Assistant Attorney General

| From: | David Jones |
|---|---|
| To: | Bob Cook |
| Subject: | RE: Draft op: Keel: Hemp seizure by consent |
| Date: | Monday, September 30, 2019 12:42:25 PM |

Should we be specific that we are talking about enforcement in the sense of seizing contraband hemp? I don't see them asking about any arrest.

David S. Jones
Assistant Attorney General
Office of the Attorney General
State of South Carolina
PO Box 11549
Columbia, SC  29211
803-734-3188

---

**From:** Bob Cook
**Sent:** Monday, September 30, 2019 12:40 PM
**To:** David Jones
**Subject:** RE: Draft op: Keel: Hemp seizure by consent

"find themselves in an extraordinarily difficult situation. They are required to enforce a statute which creates......

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3265

---

**From:** David Jones <DJones@scag.gov>
**Sent:** Monday, September 30, 2019 12:37 PM
**To:** Bob Cook <BCook@scag.gov>
**Subject:** FW: Draft op: Keel: Hemp seizure by consent

What about:

"Without such regulations, law enforcement agents finds themselves bound to enforce a statute which creates a general framework but lacks many of the specific protocols which normally guide all stakeholders in a regulatory enforcement process. Indeed, your letter notes that one court already has declined to entertain a request to authorize an enforcement action, apparently as a result of the absence of established protocols. Promulgating regulations at the administrative level may provide some much-needed certainty until such a time as the General Assembly clarifies the Hemp Farming Act."

I'm not sure how fine a point you want to put on it, but we could keep going.

David S. Jones

| From: | David Jones |
|---|---|
| To: | Whitsett, Adam |
| Cc: | Joanne Lee |
| Subject: | Opinion attached: Seizure of hemp by consent |
| Date: | Monday, September 30, 2019 2:28:20 PM |
| Attachments: | KeelM, OS-10404 FINAL Opinion, 9-30-2019 (02102586xD2C78).PDF |

Adam:

Sending to you since I don't believe I have the Chief's email address. A hard copy is coming in the mail.

David S. Jones
Assistant Attorney General
Office of the Attorney General
State of South Carolina
PO Box 11549
Columbia, SC  29211
803-734-3188



**ALAN WILSON**
ATTORNEY GENERAL

September 30, 2019

Mark A. Keel, Chief
South Carolina Law Enforcement Division
PO Box 21398
Columbia, SC 29221-1398

Dear Chief Keel:

We received your request seeking a follow-up opinion on the appropriate procedure to pursue enforcement of the Hemp Farming Act with respect to hemp grown in violation of the Act where the grower has consented to seizure of such hemp. This opinion sets out our Office's understanding of your question and our response.

**Issue (as quoted from your letter):**

I write today to respectfully request an opinion on several aspects of The Hemp Farming Act (Act 14 of 2019, formerly H.3449) and its application in South Carolina. As an initial matter, SLED is informed and believes that only individuals and businesses operating in accordance with this Act can legally "cultivate, handle, or process hemp" in South Carolina, and that any and all such cultivation can only be on land specifically approved and authorized by the Department of Agriculture. As such, any attempt to grow outside the approved auspices of the Hemp Farming Act is illegal. In that regard, in addition to the criminal penalties discussed in the July 10, 2019 Opinion, S.C. Code Ann. § 46-55-40 also states that:

> If the commissioner determines that a licensee has violated state law with a culpable mental state greater than negligence, then the commissioner shall immediately report the hemp producer to the Attorney General and the Chief of the South Carolina Law Enforcement Division, and subsection (A)(2) shall not apply to the violation.

S.C. Code Ann. § 46-55-10(B). To that end, on August 5, 2019, the Department of Agriculture notified SLED and the Attorney General of a willful violation of the Hemp Farming Act. However, there is no further guidance in the statute on this issue and no regulations have been promulgated. In that regard, SLED requested an opinion regarding the appropriate procedures to take in this instance and your office provided such. At that time, SLED had not received a copy of the

REMBERT C. DENNIS BUILDING  •  POST OFFICE BOX 11549  •  COLUMBIA, SC 29211-1549  •  TELEPHONE 803-734-3970  •  FACSIMILE 803-253-6283

SLED-134

JA211

Responsive Materials.PDF

Mark A. Keel, Chief
Page 2
September 30, 2019

Participation Agreement from the individual involved and was not aware of the consent to forfeiture and destruction contained therein. In addition, following the issuance of the August opinion, SLED attempted to secure an order of destruction from a circuit court as discussed in the August opinion; however, the court would not entertain such. While no specific reasoning was provided by the court, there is simply no statutory or regulatory authorization for a court to entertain such request.

Subsequently, SLED was provided a copy of the Participation Agreement in question which clearly and unequivocally states that the "**Permitted Grower acknowledges and consents to the forfeiture and destruction, without compensation, of hemp material: i. Found to have a measured delta-9 THC content more than 0.3 percent on a dry weight basis;...and iii. Growing in an area that is not licensed by SCDA."** . . . .

In addition, SLED would also note that the Participation Agreement also contains an Indemnification and Release section that states:

Permitted Grower agrees to indemnify, hold harmless, and release forever the State of South Carolina, its departments, agencies, officers, employees, and agents of any kind from all liability claims arising out of Pilot Grower's negligent or illegal actions or actions otherwise in violation of the terms of the Program involving the domestic or international acquisition, cultivation, or processing of hemp and Permitted Grower's participation in the Program.

Accordingly, SLED would respectfully request a formal opinion supplementing and clarifying the effect of the Participation Agreement regarding the due process discussed in the August opinion.

### Law/Analysis:

It is the opinion of this Office that if there has been a valid consent as you describe then no judicial authorization is required for seizure upon notice from the Department of Agriculture that it has found hemp grown unlawfully in willful violation of applicable law. We emphasize that this conclusion is offered in the abstract, and that the scenario you present involves highly fact-specific questions which this Office cannot determine.

SLED-135

JA212

Mark A. Keel, Chief
Page 4
September 30, 2019

destruction upon notification from the Department of Agriculture that it has found cannabis
sativa grown in willful violation of applicable law. *See* S.C. Code Ann. § 46-55-20(B)(2) (Supp.
2018); *see also Palacio v. State*, 333 S.C. 506, 514, 511 S.E.2d 62, 66 (1999). Of course the
scenario you present involves highly fact-specific questions which this Office cannot determine.
We reiterate that we defer to law enforcement's determination of these factual questions in the
first instance, and that they ultimately must be determined by a court.

**Conclusion:**

In conclusion, it is the opinion of this Office that if there has been a valid consent as you
describe then no judicial authorization is required for seizure upon notice from the Department of
Agriculture that it has found hemp grown unlawfully in willful violation of applicable law. We
emphasize that this conclusion is offered in the abstract, and that the scenario you present
involves highly fact-specific questions which this Office cannot determine. This formal opinion
is intended to supplement and clarify our August 8 opinion in light of the new information
presented to us. *See Op. S.C. Att'y Gen.*, 2019 WL 3855186 (August 8, 2019).

Our opinion here has been expedited, and it should be read in the context of our prior
opinions dated July 10 and August 8, 2019. *Id.; see also Op. S.C. Att'y Gen.*, 2019 WL 3243864
(July 10, 2019). In the factual scenario you present to us, law enforcement is prepared to proceed
on information that hemp is being grown in violation of the law and is therefore contraband *per
se*. Consistent with our prior opinions and the longstanding policy of this Office, we defer to law
enforcement's determination of that factual question. Our opinion here is focused solely on the
procedure SLED should follow in pursuing an enforcement action. Additionally, this opinion is
not an attempt to comment on any pending litigation or criminal proceeding.

Our Office acknowledged more than once that "the Hemp Farming Act of 2019 was not
drafted with the greatest of clarity and needs legislative or judicial clarification." *Op. S.C. Att'y
Gen.*, 2019 WL 3243864 (July 10, 2019). We reiterate that this is another example of the need
for legislative or judicial direction regarding the implementation of South Carolina's industrial
hemp program.

Moreover, we emphasize again the importance of the General Assembly revisiting the
Act to address the numerous issues recognized in this, as well as our July 10 and August 8
opinion. In addition, as the agency designated by the General Assembly to regulate hemp, the
Department of Agriculture, working closely with SLED, may wish to promulgate regulations to
address the omissions identified in these opinions. Without such regulations, law enforcement
agents find themselves in an extraordinarily difficult situation. They are required to enforce a
statute which creates a general framework but lacks many of the specific protocols which

SLED-137

**JA213**

Mark A. Keel, Chief
Page 5
September 30, 2019

normally guide all stakeholders in a regulatory enforcement process. Indeed, your letter notes that one court already has declined to entertain a request to authorize an enforcement action, apparently as a result of the absence of established protocols. Promulgating regulations at the administrative level may provide some much-needed certainty until such a time as the General Assembly clarifies the Hemp Farming Act.

Because our opinion is advisory only, we strongly reiterate that either the courts or the legislature must resolve the difficult issues in the statute outlined in our July 10 and August 8 opinions.

Sincerely,

Robert D. Cook
Solicitor General

David S. Jones
Assistant Attorney General

SLED-138

**JA214**

**From:** Jeff Young
**To:** Alan Wilson; Bob Cook; Emory Smith; Steve Lynch; Harley Kirkland; Wesley Vorberger
**Subject:** FW: Representation Request
**Date:** Thursday, September 26, 2019 4:26:32 PM
**Attachments:** image001.jpg
SKM_364e19092616090.pdf
image002.jpg

─────────────────────────────────────────

Chief Keele says he really needs our help on this.



**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

**From:** Whitsett, Adam <awhitsett@sled.sc.gov>
**Sent:** Thursday, September 26, 2019 4:04 PM
**To:** Jeff Young <JYoung@scag.gov>
**Cc:** Keel, Mark <MKeel@sled.sc.gov>
**Subject:** Representation Request

Judge Young:

Please see attached correspondence sent on behalf of Chief Keel.

Regards,
Adam

Adam L. Whitsett
General Counsel
South Carolina Law Enforcement Division
Office: (803) 896-0647
Cell: (803) 206-4636

**JA215**



**South Carolina**
**Law Enforcement Division**

P.O. Box 21398
Columbia, South Carolina
29221-1398

*Henry D. McMaster, Governor*
*Mark A. Keel, Chief*

*Tel:* (803) 737-9000

<mark>September 26, 2019</mark>

**VIA EMAIL**
Chief Deputy Attorney General Jeffrey W. Young
Office of the Attorney General
State of South Carolina
Rembert Dennis Building
1000 Assembly Street, Room 519
Columbia, SC 29201

Dear Chief Deputy Young:

    I write today <mark>to formally request the assistance of the South Carolina Attorney General's Office</mark> in <mark>providing legal representation to SLED</mark> in the attached *Ex Parte* **Temporary Restraining Order and Preliminary Injunction** matter that has been filed against SLED. For your convenience, I have also enclosed the correspondence SLED received from the attorney in question.

    Should your office need any additional information of any kind to assist with this request, please do not hesitate to let me know. Know that <mark>SLED greatly appreciates the assistance of the Attorney General's Office in this matter.</mark>

        Sincerely,

        Mark A. Keel
        Chief of SLED

Enclosures – listed in text

 

*An Accredited Law Enforcement Agency*

**JA216**

| | |
|---|---|
| **From:** | Jeff Young |
| **To:** | Emory Smith; Bob Cook |
| **Cc:** | Alan Wilson; Steve Lynch; Harley Kirkland; Wesley Vorberger |
| **Subject:** | RE: Representation Request |
| **Date:** | Thursday, September 26, 2019 4:33:23 PM |
| **Attachments:** | image001.jpg |
| | image002.jpg |

Thank you.

**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

**From:** Emory Smith <ESmith@scag.gov>
**Sent:** Thursday, September 26, 2019 4:31 PM
**To:** Jeff Young <JYoung@scag.gov>; Bob Cook <BCook@scag.gov>
**Cc:** Alan Wilson <agwilson.scag@scag.gov>; Steve Lynch <slynch@scag.gov>; Harley Kirkland <HKirkland@scag.gov>; Wesley Vorberger <WVorberger@scag.gov>
**Subject:** RE: Representation Request

IF you would like, I will work w/ Harley on this matter. Wes's last day, as you probably know, is next Thursday so he may not be able to assist.

Emory

**From:** Jeff Young
**Sent:** Thursday, September 26, 2019 4:27 PM
**To:** Alan Wilson; Bob Cook; Emory Smith; Steve Lynch; Harley Kirkland; Wesley Vorberger
**Subject:** FW: Representation Request

Chief Keele says he really needs our help on this.

**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

**From:** Whitsett, Adam <awhitsett@sled.sc.gov>
**Sent:** Thursday, September 26, 2019 4:04 PM
**To:** Jeff Young <JYoung@scag.gov>
**Cc:** Keel, Mark <MKeel@sled.sc.gov>
**Subject:** Representation Request

Judge Young:

Please see attached correspondence sent on behalf of Chief Keel.

Regards,
Adam

Adam L. Whitsett
General Counsel
South Carolina Law Enforcement Division
Office: (803) 896-0647
Cell: (803) 206-4636

**JA217**

| | |
|---|---|
| **From:** | Bob Cook |
| **To:** | Jeff Young |
| **Cc:** | Emory Smith; Alan Wilson; Steve Lynch; Harley Kirkland; Wesley Vorberger |
| **Subject:** | Re: Representation Request |
| **Date:** | Thursday, September 26, 2019 4:44:19 PM |
| **Attachments:** | image001.jpg |
| | image002.jpg |

---

Copy me please

Sent from my iPhone

On Sep 26, 2019, at 4:33 PM, Jeff Young <JYoung@scag.gov> wrote:

> Thank you.
> <image001.jpg>                    **W. Jeffrey Young**
>                                    Chief Deputy Attorney General
>                                    Office: (803) 734-6680
>                                    jyoung@scag.gov
>                                    Rembert C. Dennis Building
>                                    1000 Assembly Street
>                                    Columbia, SC 29201
>
> **From:** Emory Smith <ESmith@scag.gov>
> **Sent:** Thursday, September 26, 2019 4:31 PM
> **To:** Jeff Young <JYoung@scag.gov>; Bob Cook <BCook@scag.gov>
> **Cc:** Alan Wilson <agwilson.scag.gov@scag.gov>; Steve Lynch <slynch@scag.gov>;
> Harley Kirkland <HKirkland@scag.gov>; Wesley Vorberger <WVorberger@scag.gov>
> **Subject:** RE: Representation Request
>
> IF you would like, I will work w/ Harley on this matter. Wes's last day, as you probably
> know, is next Thursday so he may not be able to assist.
>
> Emory
>
> **From:** Jeff Young
> **Sent:** Thursday, September 26, 2019 4:27 PM
> **To:** Alan Wilson; Bob Cook; Emory Smith; Steve Lynch; Harley Kirkland; Wesley Vorberger
> **Subject:** FW: Representation Request
>
> Chief Keele says he really needs our help on this.
> <image001.jpg>                    **W. Jeffrey Young**
>                                    Chief Deputy Attorney General
>                                    Office: (803) 734-6680
>                                    jyoung@scag.gov
>                                    Rembert C. Dennis Building
>                                    1000 Assembly Street
>                                    Columbia, SC 29201
>
> **From:** Whitsett, Adam <awhitsett@sled.sc.gov>
> **Sent:** Thursday, September 26, 2019 4:04 PM
> **To:** Jeff Young <JYoung@scag.gov>
> **Cc:** Keel, Mark <MKeel@sled.sc.gov>
> **Subject:** Representation Request
>
> Judge Young:
>
> Please see attached correspondence sent on behalf of Chief Keel.

**JA218**

| | |
|---|---|
| **From:** | Bob Cook |
| **To:** | Jeff Young; Alan Wilson; Emory Smith; Steve Lynch; Harley Kirkland; Wesley Vorberger |
| **Subject:** | RE: Representation Request |
| **Date:** | Thursday, September 26, 2019 4:51:23 PM |
| **Attachments:** | image002.jpg |
| | image003.jpg |

Emory please keep me advised and copy me on pleadings. Thanks

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

**From:** Jeff Young <JYoung@scag.gov>
**Sent:** Thursday, September 26, 2019 4:27 PM
**To:** Alan Wilson <agwilson.scag.gov@scag.gov>; Bob Cook <BCook@scag.gov>; Emory Smith
<ESmith@scag.gov>; Steve Lynch <slynch@scag.gov>; Harley Kirkland <HKirkland@scag.gov>;
Wesley Vorberger <WVorberger@scag.gov>
**Subject:** FW: Representation Request

Chief Keele says he really needs our help on this.

 **W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

**From:** Whitsett, Adam <awhitsett@sled.sc.gov>
**Sent:** Thursday, September 26, 2019 4:04 PM
**To:** Jeff Young <JYoung@scag.gov>
**Cc:** Keel, Mark <MKeel@sled.sc.gov>
**Subject:** Representation Request

Judge Young:

Please see attached correspondence sent on behalf of Chief Keel.

Regards,
Adam

Adam L. Whitsett
General Counsel
South Carolina Law Enforcement Division
Office: (803) 896-0647
Cell: (803) 206-4636

**JA219**

| | |
|---|---|
| **From:** | Emory Smith |
| **To:** | Bob Cook; Jeff Young; Harley Kirkland; Wesley Vorberger |
| **Cc:** | Steve Lynch |
| **Subject:** | RE: Representation Request |
| **Date:** | Thursday, September 26, 2019 5:11:55 PM |
| **Attachments:** | image001.jpg |
| | image002.jpg |

---

Will do.

Harley, Wes and I just talked to Adam on the phone. He's sent us some dox and will stop by to meet w/ us tomorrow pm. Harley, Wes and I have discussed several options of responding.

FYI, one of the attys for the Plaintiffs is Sen. Brad Hutto. We may call him but will check w/ you before doing so.

**From:** Bob Cook
**Sent:** Thursday, September 26, 2019 4:51 PM
**To:** Jeff Young; Alan Wilson; Emory Smith; Steve Lynch; Harley Kirkland; Wesley Vorberger
**Subject:** RE: Representation Request

Emory please keep me advised and copy me on pleadings. Thanks

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

**From:** Jeff Young <JYoung@scag.gov>
**Sent:** Thursday, September 26, 2019 4:27 PM
**To:** Alan Wilson <agwilson.scag.gov@scag.gov>; Bob Cook <BCook@scag.gov>; Emory Smith <ESmith@scag.gov>; Steve Lynch <slynch@scag.gov>; Harley Kirkland <HKirkland@scag.gov>; Wesley Vorberger <WVorberger@scag.gov>
**Subject:** FW: Representation Request

Chief Keele says he really needs our help on this.



**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

**From:** Whitsett, Adam <awhitsett@sled.sc.gov>
**Sent:** Thursday, September 26, 2019 4:04 PM
**To:** Jeff Young <JYoung@scag.gov>
**Cc:** Keel, Mark <MKeel@sled.sc.gov>
**Subject:** Representation Request

Judge Young:

Please see attached correspondence sent on behalf of Chief Keel.

Regards,

Adam
Adam L. Whitsett

**JA220**

| | |
|---|---|
| **From:** | Harley Kirkland |
| **To:** | Bob Cook; Emory Smith; Wesley Vorberger |
| **Subject:** | RE: Representation Request |
| **Date:** | Thursday, September 26, 2019 5:40:00 PM |
| **Attachments:** | Pendarvis - Summons and Complaint (02100725xD2C78).PDF |
| | Pendarvis - Complaint Ex A (02100724xD2C78).PDF |
| | Pendarvis - Complaint Ex B (02100723xD2C78).PDF |
| | image001.jpg |
| | image002.jpg |

The Summons, Complaint, and Exhibits are attached.

Thanks!

**Harley L. Kirkland**
Assistant Attorney General
Office of the Attorney General
State of South Carolina
Post Office Box 11549
Columbia, South Carolina 29211
Phone: 803.734.0406
Fax: 803.734.3677
E-mail: HKirkland@scag.gov

**From:** Bob Cook
**Sent:** Thursday, September 26, 2019 5:17 PM
**To:** Emory Smith; Jeff Young; Harley Kirkland; Wesley Vorberger
**Cc:** Steve Lynch
**Subject:** RE: Representation Request
What is the relief sought?

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

**From:** Emory Smith <ESmith@scag.gov>
**Sent:** Thursday, September 26, 2019 5:12 PM
**To:** Bob Cook <BCook@scag.gov>; Jeff Young <JYoung@scag.gov>; Harley Kirkland
<HKirkland@scag.gov>; Wesley Vorberger <WVorberger@scag.gov>
**Cc:** Steve Lynch <slynch@scag.gov>
**Subject:** RE: Representation Request
Will do.
Harley, Wes and I just talked to Adam on the phone. He's sent us some dox and will stop by to meet
w/ us tomorrow pm. Harley, Wes and I have discussed several options of responding.
FYI, one of the attys for the Plaintiffs is Sen. Brad Hutto. We may call him but will check w/ you
before doing so.

**From:** Bob Cook
**Sent:** Thursday, September 26, 2019 4:51 PM
**To:** Jeff Young; Alan Wilson; Emory Smith; Steve Lynch; Harley Kirkland; Wesley Vorberger
**Subject:** RE: Representation Request
Emory please keep me advised and copy me on pleadings. Thanks

**JA221**

| | |
|---|---|
| From: | Emory Smith |
| To: | Bob Cook |
| Subject: | FW: [EXTERNAL] FW: Pendarvis and Dew v. SLED and SCDA CA No. 2019 CP 33 00675 |
| Date: | Tuesday, October 22, 2019 9:40:26 AM |
| Attachments: | Return to TRO.pdf |
| | Plaintiff's Memo.pdf |
| | PIImageDisplay (10).pdf |

---

**Adam was not at the hearing but as far as he knows**, the Judge simply said he was taking the matter under advisement.  Seals' email below gives no reason.

**The injunctions requested in the 2d and 3d documents do not expressly request that prosecution be enjoined, but Adam believes that an order would have that effect.  <u>Given the absence of an express request for prosecution to be enjoined, I believe that we would not be able to limit our involvement just to that issue.</u>  Set forth below are some of the Plaintiffs' requests for relief.**

The Plaintiffs' Petition for a TRO / PI Motion and Complaint  said a "TRO should issue here to prevent Defendants SCDA and SLED from destroying crops and taking ultra vires action." The c/a for injunctive relief broadly says "Pursuant to South Carolina Code §15-53-120, the Court should enter a temporary and, after a plenary merits hearing, permanent injunction enjoining the Defendants from any further violation South Carolina Code § 59-117-40 and any such further relief necessary to conform the Defendants conduct to the law and effectuate the orders and judgement of this Court."

The memo says:

Defendant SLED, in turn on August 8, 2019, appears to have sought an opinion from the South Carolina
Attorney General regarding the appropriate procedure by which to enforce a "willful violation
of the South Carolina Hemp Farming Act." See Exhibit E. That opinion concluded:

In conclusion, it is the opinion of this Office that in absence of legislative direction, SLED should seek judicial authorization for the seizure of illegallygrown
hemp in order to ensure that the grower receives due process consistent with the Constitutions of the United States and the State of South Carolina. See, e.g., State v. 192 Coin-Operated Video Game Machines, 338 S.C.
176, 525 S.E.2d 872 (2000). We advise that this authorization be sough with notice to the grower and an opportunity for them to be heard in a hearing in an abundance of cautions. See id….Therefore our Office advises that SLED proceed with the utmost care to fully ensure that the grower and all interested parties receive due process in any enforcement action.
Exhibit E, p.5, emphasis added.

Defendant SLED did none of the above, instead merely calling the Plaintiffs and

**JA222**

| | |
|---|---|
| **From:** | Jeff Young |
| **To:** | Bob Cook |
| **Subject:** | https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html |
| **Date:** | Friday, October 4, 2019 8:10:02 AM |



**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

| **From:** | Bob Cook |
|---|---|
| **To:** | Jeff Young |
| **Subject:** | RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html |
| **Date:** | Friday, October 4, 2019 8:16:00 AM |

**Did anyone reach out to us on this? Seems like only Keel.**

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

---

**From:** Jeff Young <JYoung@scag.gov>
**Sent:** Friday, October 4, 2019 8:10 AM
**To:** Bob Cook <BCook@scag.gov>
**Subject:** https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html



**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

**JA224**

| From: | Bob Cook |
|---|---|
| To: | Robert Kittle |
| Cc: | Jeff Young |
| Subject: | FW: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html |
| Date: | Friday, October 4, 2019 8:20:00 AM |

Robert, did this guy reach out to you before writing?

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

---

**From:** Jeff Young <JYoung@scag.gov>
**Sent:** Friday, October 4, 2019 8:10 AM
**To:** Bob Cook <BCook@scag.gov>
**Subject:** https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html



**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

**JA225**

| From: | Jeff Young |
|---|---|
| To: | Bob Cook |
| Subject: | RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html |
| Date: | Friday, October 4, 2019 8:22:31 AM |

Not to my knowledge.



**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

---

**From:** Bob Cook <BCook@scag.gov>
**Sent:** Friday, October 4, 2019 8:17 AM
**To:** Jeff Young <JYoung@scag.gov>
**Subject:** RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html

Did anyone reach out to us on this? Seems like only Keel.

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

**From:** Jeff Young <JYoung@scag.gov>
**Sent:** Friday, October 4, 2019 8:10 AM
**To:** Bob Cook <BCook@scag.gov>
**Subject:** https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html

**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building

**JA226**

| From: | Bob Cook |
| To: | Jeff Young |
| Cc: | Robert Kittle |
| Subject: | RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html |
| Date: | Friday, October 4, 2019 8:25:00 AM |

Robert I suggest you call him and mention our first opinion where we said the law needs legislative or judicial clarification. He should have called us

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

**From:** Jeff Young <JYoung@scag.gov>
**Sent:** Friday, October 4, 2019 8:23 AM
**To:** Bob Cook <BCook@scag.gov>
**Subject:** RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html


Not to my knowledge.



**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

**From:** Bob Cook <BCook@scag.gov>
**Sent:** Friday, October 4, 2019 8:17 AM
**To:** Jeff Young <JYoung@scag.gov>
**Subject:** RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html

Did anyone reach out to us on this? Seems like only Keel.

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211

**JA227**

| From: | Bob Cook |
|---|---|
| To: | David Jones |
| Subject: | FW: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html |
| Date: | Friday, October 4, 2019 8:46:00 AM |

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

**From:** Jeff Young <JYoung@scag.gov>
**Sent:** Friday, October 4, 2019 8:10 AM
**To:** Bob Cook <BCook@scag.gov>
**Subject:** https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html



**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

**JA228**

| | |
|---|---|
| **From:** | Robert Kittle |
| **To:** | Bob Cook; Jeff Young |
| **Subject:** | RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html |
| **Date:** | Friday, October 4, 2019 9:08:57 AM |

He reached out to us back in August and wanted to get a copy of our opinion, which I gave him. Other than that he didn't talk to us. So he does have our opinion but didn't include what we said about the fact that the law needs to be clarified, although he did include in the story other people saying that. I'll give him a call.

**From:** Bob Cook
**Sent:** Friday, October 04, 2019 8:25 AM
**To:** Jeff Young
**Cc:** Robert Kittle
**Subject:** RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html

Robert I suggest you call him and mention our first opinion where we said the law needs legislative or judicial clarification. He should have called us

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

**From:** Jeff Young <JYoung@scag.gov>
**Sent:** Friday, October 4, 2019 8:23 AM
**To:** Bob Cook <BCook@scag.gov>
**Subject:** RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html

Not to my knowledge.



**W. Jeffrey Young**
Chief Deputy Attorney General
Office: (803) 734-6680
jyoung@scag.gov
Rembert C. Dennis Building
1000 Assembly Street
Columbia, SC 29201

**From:** Bob Cook <BCook@scag.gov>

**JA229**

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Thursday, August 1, 2019 11:58 AM |
| **To:** | Trent Pendarvis |
| **Cc:** | Dalton, Alden; Elsalah, Vanessa; Hemp, SCDA |
| **Subject:** | RE: [External] Fwd: Hemp Acreage Amendment |
| **Attachments:** | Scanned from a Xerox multifunction device.pdf |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Trent,

Thanks for your amendment submission.

I will be reviewing your case with our Attorney to determine if a willful violation of the grower's agreement is present.

We have your narrative.

Once we make a final decision, we will be in touch.

Sincerely,

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



**From:** Trent Pendarvis <trentpendarvis@gmail.com>
**Sent:** Thursday, August 1, 2019 11:21 AM
**To:** Underwood, Derek <dunder@scda.sc.gov>
**Subject:** [External] Fwd: Hemp Acreage Amendment

See attached for Hemp Acreage Amendment Application

1

10754-B-005

**JA230**

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Monday, August 5, 2019 11:51 AM |
| **To:** | jwells@sled.sc.gov |
| **Cc:** | Elsalah, Vanessa; Dalton, Alden; foneal@sled.sc.gov |
| **Subject:** | Trent Pendarvis Violation of SCDA HEMP Agreement email 1 of 3 |
| **Attachments:** | Scanned from a Xerox multifunction device.pdf |

Lt. Wells,

Please see attached amendment for acreage that *is currently* growing Hemp.

The participant of the SCDA Hemp program <u>has willfully grown hemp on non-reported or non-listed acreage for 6-8 weeks.</u>

The plants are mature and over 5 FT. tall.

This amendment was filed AFTER he was discovered to be growing on non-permitted land.

I will send all correspondences with Mr. Trent Pendarvis following this email.

V/R,


**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



1

10754-B-010

**JA231**

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Monday, August 5, 2019 12:30 PM |
| **To:** | jwells@sled.sc.gov; foneal@sled.sc.gov |
| **Cc:** | Dalton, Alden; Elsalah, Vanessa |
| **Subject:** | Memo to enact enforcement |
| **Attachments:** | Memo to SLED 8-5-2019 Pendarvis.pdf |
| **Importance:** | High |

Attached.

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



1

10754-B-017

**JA232**



## South Carolina
# DEPARTMENT OF AGRICULTURE
### CONSUMER PROTECTION DIVISION
123 Ballard Court, West Columbia, SC 29172

Hugh E. Weathers, Commissioner

MEMORANDUM

To:     Lt. Jason D. Wells, Narcotics
        South Carolina Law Enforcement Div.

From:   Derek M. Underwood, Assistant Commissioner
        Consumer Protection Division, SCDA

Date: August 5, 2019

RE: Trent Pendarvis (permit # 1992) violation of Hemp Agreement


It has come to our attention that Mr. Trent Padarvis is unlawfully growing Hemp on acreage that was not permitted by the SCDA.  This is a willful violation of the Hemp Farming Act which requires a licensed grower only grow on acreage submitted and approved in advance by SCDA.

This memo is to request SLED enact enforcement of this violation by Mr. Trent Pedarvis.

---

Consumer Services          Food and Feed Safety & Compliance     Grading & Inspection     Laboratory Services     Metrology Services     Produce Safety
803-737-9690                    803-734-7321                    803-737-4597          803-737-9700          803-253-4052          803-753-7267

agriculture.sc.gov

10754-B-018

**JA233**

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Tuesday, August 6, 2019 9:45 AM |
| **To:** | jwells@sled.sc.gov |
| **Cc:** | foneal@sled.sc.gov; Dalton, Alden; Weathers, Hugh; Elsalah, Vanessa |
| **Subject:** | Letter to enact enforcement Pendarvis Hemp |
| **Attachments:** | SCDA SLED Memo 8-6-2019 Pendarvis.pdf |

| | |
|---|---|
| **Importance:** | High |

Lt. Wells,

Attached is the memo regarding willful actions by Mr. Trent Pendarvis (permit #1992).

V/R,

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



1

10754-B-019

**JA234**



South Carolina
# DEPARTMENT OF AGRICULTURE
## CONSUMER PROTECTION DIVISION
123 Ballard Court, West Columbia, SC 29172

Hugh E. Weathers, Commissioner

MEMORANDUM

To:     Lt. Jason D. Wells, Narcotics
        South Carolina Law Enforcement Div.

From:   Derek M. Underwood, Assistant Commissioner
        Consumer Protection Division, SCDA

Date: August 5, 2019

RE: Trent Pendarvis (permit # 1992) violation of Hemp Farming Program

It has come to our attention that Mr. Trent Pendarvis is unlawfully growing Hemp on acreage that is not on record with the SCDA. This is a willful violation of the Hemp Farming Program which requires a licensed grower to provide the SCDA with a legal description and global positioning coordinates of the land on which the licensee seeks to cultivate hemp.

Mr. Pendarvis, during an SCDA farm visit, acknowledged to an SCDA employee that the land at issue was not on record with SCDA, yet the SCDA employee observed the land to be planted with mature hemp plants. SCDA does not believe this violation to be negligent or an oversight on the part of Mr. Pendarvis and instead views this conduct as willful. This memo is to request SLED enact enforcement of this willful violation by Mr. Pendarvis.

Consumer Services          Food and Feed Safety & Compliance     Grading & Inspection     Laboratory Services     Metrology Services     Produce Safety
803-737-9690               803-734-7321                         803-737-4597             803-737-9700            803-253-4052        803-753-7267

agriculture.sc.gov

10754-B-020

JA235

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Thursday, August 8, 2019 11:48 AM |
| **To:** | jwells@sled.sc.gov |
| **Cc:** | foneal@sled.sc.gov; Dalton, Alden; Weathers, Hugh; Elsalah, Vanessa |
| **Subject:** | Re: Letter to enact enforcement Pendarvis Hemp |
| | |
| **Importance:** | High |

Any update?

Also any date for SLED SCDA meeting in September?

*Derek Underwood*
*Assistant Commissioner*
*South Carolina Department of Agriculture*
*803-737-9700*

*Sent from my mobile device*

------ Original message------
**From:** Underwood, Derek
**Date:** Tue, Aug 6, 2019 9:44 AM
**To:** jwells@sled.sc.gov;
**Cc:** foneal@sled.sc.gov;Terry, Alden;Weathers, Hugh;Elsalah, Vanessa;
**Subject:**Letter to enact enforcement Pendarvis Hemp

Lt. Wells,
Attached is the memo regarding willful actions by Mr. Trent Pendarvis (permit #1992).
V/R,
**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*
**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook

1

10754-B-021

**JA236**

**Adam Bruyere**

| | |
|---|---|
| **From:** | Oneal, Frank <foneal@sled.sc.gov> |
| **Sent:** | Thursday, August 8, 2019 5:05 PM |
| **To:** | Underwood, Derek |
| **Cc:** | Wells, Jason; Dalton, Alden; Weathers, Hugh; Elsalah, Vanessa |
| **Subject:** | Re: [EXTERNAL] Re: Letter to enact enforcement Pendarvis Hemp |
| **Attachments:** | image001.jpg |

Thank you

Sent from my iPhone

On Aug 8, 2019, at 4:43 PM, Underwood, Derek <dunder@scda.sc.gov> wrote:

> EXTERNAL EMAIL: Do not click any links or open any attachments unless you trust the sender and know the content is safe.
> Thanks for update.
> We will not issue an amendment for acreage with mature plants or any new acreage where hemp is currently growing so there is no quote "deadline" to act.
> Let me know what we need to do to help.
> Derek
> **From:** Oneal, Frank <foneal@sled.sc.gov>
> **Sent:** Thursday, August 8, 2019 1:00 PM
> **To:** Underwood, Derek <dunder@scda.sc.gov>; Wells, Jason <jwells@sled.sc.gov>
> **Cc:** Terry, Alden <aterry@scda.sc.gov>; Weathers, Hugh <hweathe@scda.sc.gov>; Elsalah, Vanessa <velsalah@scda.sc.gov>
> **Subject:** RE: [EXTERNAL] Re: Letter to enact enforcement Pendarvis Hemp
> Not yet- we are having difficulty in what to address with so many gray areas concerning enforcement. Unlike Kentucky, we don't really have comprehensive regulation that addresses all of the possible concerns. We are having to get AG opinions along the way and the last thing we want to do is an action that will be perceived in a negative light by the media or general assembly.
> **From:** Underwood, Derek <dunder@scda.sc.gov>
> **Sent:** Thursday, August 08, 2019 11:48 AM
> **To:** Wells, Jason <jwells@sled.sc.gov>
> **Cc:** Oneal, Frank <foneal@sled.sc.gov>; Terry, Alden <aterry@scda.sc.gov>; Weathers, Hugh <hweathe@scda.sc.gov>; Elsalah, Vanessa <velsalah@scda.sc.gov>
> **Subject:** [EXTERNAL] Re: Letter to enact enforcement Pendarvis Hemp
> **Importance:** High
>
>
> **EXTERNAL EMAIL:** Do not click any links or open any attachments unless you trust the sender and know the content is safe.
>
> Any update?
> Also any date for SLED SCDA meeting in September?
> *Derek Underwood*
> *Assistant Commissioner*

1

10754-B-022

**JA237**



South Carolina
# DEPARTMENT OF AGRICULTURE
## CONSUMER PROTECTION DIVISION
123 Ballard Court, West Columbia, SC 29172

Hugh E. Weathers, Commissioner

August 21, 2019

The Honorable Alan Wilson
P.O. Box 11549
Columbia, S.C. 29211

RE: Trent Pendarvis (permit # 1992) violation of Hemp Farming Program

Dear Attorney General Wilson,

    It has come to our attention that Mr. Trent Pendarvis is likely unlawfully growing Hemp on acreage that is not on record with the SCDA. This is a willful violation of the Hemp Farming Program which requires a licensed grower to provide the SCDA with a legal description and global positioning coordinates of the land on which the licensee seeks to cultivate hemp.

    Mr. Pendarvis, during an SCDA farm visit, acknowledged to an SCDA employee that the land at issue was not on record with SCDA, yet the SCDA employee observed the land to be planted with mature hemp plants. SCDA does not believe this violation to be negligent or an oversight on the part of Mr. Pendarvis and instead views this conduct as willful. This memo is to fill the requirement of reporting to the Attorney General any culpable violations, greater than negligence, of the Hemp Farm Program as such requirement is set forth in S.C. Code Ann. Section 46-55-40(B).

    If you have any questions or would like additional information, please do not hesitate to contact me at dunder@scda.sc.gov or 803-737-9702.

                       Respectfully,

                       Derek Underwood
                       Assistant Commissioner
                       South Carolina Department of Agriculture

| Consumer Services | Food and Feed Safety & Compliance | Grading & Inspection | Laboratory Services | Metrology Services | Produce Safety |
|---|---|---|---|---|---|
| 803-737-9690 | 803-734-7321 | 803-737-4597 | 803-737-9700 | 803-253-4052 | 803-753-7267 |

agriculture.sc.gov

10754-B-027

JA238

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Tuesday, August 27, 2019 3:13 PM |
| **To:** | jneale@sled.sc.gov |
| **Cc:** | Dalton, Alden; Elsalah, Vanessa; Stokes, John |
| **Subject:** | FW: [External] Fwd: Hemp Acreage Amendment |
| **Attachments:** | Scanned from a Xerox multifunction device.pdf |
| | |
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Flagged |

---

**From:** Underwood, Derek
**Sent:** Thursday, August 1, 2019 11:58 AM
**To:** Trent Pendarvis <trentpendarvis@gmail.com>
**Cc:** Terry, Alden <aterry@scda.sc.gov>; Elsalah, Vanessa <velsalah@scda.sc.gov>; Hemp, SCDA
<scda_hemp@scda.sc.gov>
**Subject:** RE: [External] Fwd: Hemp Acreage Amendment

Trent,

Thanks for your amendment submission.

I will be reviewing your case with our Attorney to determine if a willful violation of the grower's agreement is present.

We have your narrative.

Once we make a final decision, we will be in touch.

Sincerely,


**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



1

10754-B-028

**JA239**

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Wednesday, August 28, 2019 11:54 AM |
| **To:** | Wells, Jason; Oneal, Frank |
| **Cc:** | Dalton, Alden; Elsalah, Vanessa |
| **Subject:** | Trent Pendarvis |

| | |
|---|---|
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Flagged |

Guys,

I know John Neale is at farm today, however, during their sample visit, Trent has now **mentioned another 2 acres** not registered with SCDA.

He has sent in an amendment (@10:38 AM, 8-28-2019) to add these where hemp is CURRENTLY growing.

I need some direction as to when I can inform him that SCDA has rejected his amendment request and that he is willfully violation the agreement and law.

Please advise.

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



1

10754-B-035

**JA240**

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Wednesday, August 28, 2019 1:41 PM |
| **To:** | Oneal, Frank; Wells, Jason |
| **Cc:** | Dalton, Alden |
| **Subject:** | sample email to Pedarvis |

| | |
|---|---|
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Flagged |

Mr. Trent Pendarvis,

It has come to our attention that you are unlawfully growing Hemp on acreage **that is not on record with the SCDA.** This is a willful violation of the Hemp Farming Program which requires a licensed grower to provide the SCDA with a legal description and global positioning coordinates of the land on which the licensee **seeks to cultivate hemp.**

Amendments submitted on 8-01-2019 and 8-28-2019 for adding acreage where hemp has already been planted, cultivated and matured **will not be processed by the SCDA.** Therefore, this crop is considered in violation of S.C. Code Ann. Section 46-55-40(B).

SCDA does not believe this violation to be negligent or an oversight on the part you and instead views this conduct as willful.

This email serves as **the official response** to your actions and SCDA has notified SLED and fulfilled the requirement of reporting to the Attorney General these culpable violations, greater than negligence, of the Hemp Farm Program as such requirement is set forth in S.C. Code Ann. Section 46-55-40(B).

Sincerely,

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



1

10754-B-036

**JA241**

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Thursday, August 29, 2019 11:55 AM |
| **To:** | Dalton, Alden; Elsalah, Vanessa; Leach, Clint; Wood, Aaron; Weathers, Hugh; Attaway, Alicia; Jeffcoat, Brittany |
| **Cc:** | Oneal, Frank; Wells, Jason |
| **Subject:** | FW: SCDA Amendment response to existing hemp fields not on record 8-29-2019 |
| **Attachments:** | Trent Pendarvis Ammendment Letter SCDA 8-28-2019.pdf |

| | |
|---|---|
| **Importance:** | High |

| | |
|---|---|
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Flagged |

Staff,

Mr. Pendarvis was officially notified today that his two (2) amendment submissions were denied.

I am out until Tuesday so if he calls, please make sure our staff directs him to either me or Alden ONLY.

ccing SLED

Derek

---

**From:** Underwood, Derek
**Sent:** Thursday, August 29, 2019 11:53 AM
**To:** 'trentpendarvis@gmail.com' <trentpendarvis@gmail.com>
**Cc:** Elsalah, Vanessa <velsalah@scda.sc.gov>; Terry, Alden <aterry@scda.sc.gov>; Hemp, SCDA <scda_hemp@scda.sc.gov>
**Subject:** SCDA Amendment response to existing hemp fields not on record 8-29-2019
**Importance:** High

August 28, 2019

Mr. Trent Pendarvis
967 West Main Street
Harleysville, SC 29448

RE: Trent Pendarvis (permit # 1992) violation of Hemp Farming Program

Mr. Pendarvis,

It has come to our attention that you are unlawfully growing Hemp on acreage that is not on record with the SCDA. This is a willful violation of the Hemp Farming Program which requires a licensed grower to provide the SCDA with a legal description and global positioning coordinates of the land on which the licensee seeks to cultivate hemp.

Amendments submitted on 8-01-2019 and the recent 8-28-2019 for adding acreage where hemp has already been planted, cultivated and matured will not be processed by the SCDA. Therefore, this crop is considered in violation of S.C. Code Ann. Section 46-55-40(B).

1

10754-B-042

**JA242**

SCDA does not believe this violation to be negligent or an oversight on your part, but instead views this conduct as willful.

==This letter serves as **the official response** to your actions== and SCDA has notified SLED and fulfilled the requirement of reporting to the Attorney General these culpable violations, greater than negligence, of the Hemp Farm Program as such requirement is set forth in S.C. Code Ann. Section 46-55-40(B).

If you have any questions or would like additional information, please do not hesitate to contact me at dunder@scda.sc.gov or 803-737-9702.

**This letter has also been mailed "certified" to your attention.**

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



10754-B-043

**JA243**



South Carolina
# DEPARTMENT OF AGRICULTURE
CONSUMER PROTECTION DIVISION
123 Ballard Court, West Columbia, SC 29172

Hugh E. Weathers, Commissioner

August 28, 2019

Mr. Trent Pendarvis
967 West Main Street
Harleysville, SC 29448

RE: Trent Pendarvis (permit # 1992) violation of Hemp Farming Program

Mr. Pendarvis,

It has come to our attention that you are unlawfully growing Hemp on acreage that is not on record with the SCDA. This is a willful violation of the Hemp Farming Program which requires a licensed grower to provide the SCDA with a legal description and global positioning coordinates of the land on which the licensee seeks to cultivate hemp.

Amendments submitted on 8-01-2019 and 8-28-2019 for adding acreage where hemp has already been planted, cultivated and matured will not be processed by the SCDA. Therefore, this crop is considered in violation of S.C. Code Ann. Section 46-55-40(B).

SCDA does not believe this violation to be negligent or an oversight on your part, but instead views this conduct as willful.

This letter serves as the official response to your actions and SCDA has notified SLED and fulfilled the requirement of reporting to the Attorney General these culpable violations, greater than negligence, of the Hemp Farm Program as such requirement is set forth in S.C. Code Ann. Section 46-55-40(B).

If you have any questions or would like additional information, please do not hesitate to contact me at dunder@scda.sc.gov or 803-737-9702.

Respectfully,

Derek Underwood
Assistant Commissioner
South Carolina Department of Agriculture

---

| Consumer Services 803-737-9690 | Food and Feed Safety & Compliance 803-734-7321 | Grading & Inspection 803-737-4597 | Laboratory Services 803-737-9700 | Metrology Services 803-253-4052 | Produce Safety 803-753-7267 |

agriculture.sc.gov

10754-B-041

**JA244**

EX 55 – 000000053

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Tuesday, September 3, 2019 4:22 PM |
| **To:** | Wells, Jason; Oneal, Frank |
| **Cc:** | Dalton, Alden; Elsalah, Vanessa |
| **Subject:** | Pendarvis |

Guys,

Trent P. has called SCDA and Rep. Russell Ott since we dot not approve his amended acreage for 10 + 2 = 12 areas.

What else does SLED need from SCDA and any word on test results?

Sincerely,

Derek

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



1

10754-B-046

**JA245**

**Adam Bruyere**

| | |
|---|---|
| **From:** | Dalton, Alden <adalton@scda.sc.gov> |
| **Sent:** | Wednesday, September 11, 2019 10:35 AM |
| **To:** | Underwood, Derek; Jeffcoat, Brittany; trentpendarvis@gmail.com |
| **Cc:** | Elsalah, Vanessa |
| **Subject:** | RE: SCDA Hemp |

Mr. Pendarvis,

I just tried to give you a call but I got your voicemail. I am reaching out because SCDA has been asking by SLED to provide them with the location of all places where you are growing hemp. As we understand, you are currently growing on two more additional areas which are not licensed by or on record with SCDA. Please provide the location of these additional two acres (and any other unauthorized or unrecorded growing locations) by close of business today, Wednesday, September 11th. Please note that while SCDA cannot influence the SLED proceedings, your cooperation with SCDA will impact your future participation in the SCDA program. Please give me a call if you have any questions.

**Alden G. Terry**
*General Counsel*
**South Carolina Department of Agriculture**
Office: 803-734-2225

---

**From:** Underwood, Derek <dunder@scda.sc.gov>
**Sent:** Tuesday, September 10, 2019 4:52 PM
**To:** Jeffcoat, Brittany <bjeffcoat@scda.sc.gov>; trentpendarvis@gmail.com
**Cc:** Elsalah, Vanessa <velsalah@scda.sc.gov>; Terry, Alden <aterry@scda.sc.gov>
**Subject:** RE: SCDA Hemp
**Importance:** High

Mr. Pendarvis,

Your cooperation in this matter is of upmost importance.

This is a direct inquiry based on your previous call on 8-28-2019 at 10:38AM about amending another 2 acres where Hemp is being grown by you.

Time is of the essence.

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook

1

10754-B-050

**JA246**

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Tuesday, September 10, 2019 4:52 PM |
| **To:** | Jeffcoat, Brittany; trentpendarvis@gmail.com |
| **Cc:** | Elsalah, Vanessa; Dalton, Alden |
| **Subject:** | RE: SCDA Hemp |
| | |
| **Importance:** | High |

Mr. Pendarvis,

Your cooperation in this matter is of upmost importance.

This is a direct inquiry based on your previous call on 8-28-2019 at 10:38AM about amending another 2 acres where Hemp is being grown by you.

Time is of the essence.

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



---

**From:** Jeffcoat, Brittany
**Sent:** Tuesday, September 10, 2019 4:45 PM
**To:** trentpendarvis@gmail.com
**Cc:** Underwood, Derek <dunder@scda.sc.gov>; Elsalah, Vanessa <velsalah@scda.sc.gov>; Terry, Alden <aterry@scda.sc.gov>
**Subject:** FW: SCDA Hemp

Good Afternoon Mr. Pendarvis,
I am reaching out again requesting you please provided the location of the additional two acres you wished to amend to your license. Please respond by the end of the business day tomorrow, Wednesday, September 11th.

Thanks,
**Brittany G. Jeffcoat**
*Administrative Assistant, Consumer Protection Division*

1

10754-B-048

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9690 | Fax: 803-737-9703
bjeffcoat@scda.sc.gov | agriculture.sc.gov | Facebook



---

**From:** Jeffcoat, Brittany
**Sent:** Friday, September 6, 2019 12:48 PM
**To:** trentpendarvis@gmail.com
**Subject:** SCDA Hemp

Mr. Pendarvis,
We spoke on August 28th about two additional acres you wish to amend to your license. In order for us to maintain an accurate record for your location please reply back with coordinates of those acres by the end of today.

Thanks,

**Brittany G. Jeffcoat**
*Administrative Assistant, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9690 | Fax: 803-737-9703
bjeffcoat@scda.sc.gov | agriculture.sc.gov | Facebook



2

10754-B-049

**JA248**

**Adam Bruyere**

| | |
|---|---|
| **From:** | Hemp, SCDA <scda_hemp@scda.sc.gov> |
| **Sent:** | Wednesday, September 11, 2019 12:02 PM |
| **To:** | Dalton, Alden; Elsalah, Vanessa; Underwood, Derek |
| **Subject:** | FW: [External] Fwd: FW: Scanned from a Xerox multifunction device |
| **Attachments:** | Scanned from a Xerox multifunction device.pdf; hemp.jpg |

**Brittany G. Jeffcoat**
*Administrative Assistant, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9690 | Fax: 803-737-9703
bjeffcoat@scda.sc.gov | agriculture.sc.gov | Facebook



**From:** Trent Pendarvis <trentpendarvis@gmail.com>
**Sent:** Wednesday, September 11, 2019 8:12 AM
**To:** Hemp, SCDA <scda_hemp@scda.sc.gov>
**Subject:** [External] Fwd: FW: Scanned from a Xerox multifunction device

See Attached Acreage Amendment that was sent on August 28th for Trent Pendarvis.

Please open the attached document. It was sent to you using a Xerox multifunction printer.

Attachment File Type: pdf, Multi-Page

Multifunction Printer Location:
Device Name: ASASCSTG7C7830PTG01

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

1

10754-B-053

**JA249**

**Adam Bruyere**

| | |
|---|---|
| **From:** | Hemp, SCDA <scda_hemp@scda.sc.gov> |
| **Sent:** | Wednesday, September 11, 2019 12:02 PM |
| **To:** | Underwood, Derek; Elsalah, Vanessa; Dalton, Alden |
| **Subject:** | FW: [External] Hemp |

**Brittany G. Jeffcoat**
*Administrative Assistant, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9690 | Fax: 803-737-9703
bjeffcoat@scda.sc.gov | agriculture.sc.gov | Facebook



**From:** Trent Pendarvis <trentpendarvis@gmail.com>
**Sent:** Wednesday, September 11, 2019 8:14 AM
**To:** Hemp, SCDA <scda_hemp@scda.sc.gov>
**Subject:** [External] Hemp

If any further information is needed, please call my cell 843-

1

10754-B-058

**JA250**

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Tuesday, September 17, 2019 4:52 PM |
| **To:** | Jeffcoat, Brittany |
| **Cc:** | Wells, Jason; Elsalah, Vanessa; Attaway, Alicia; Dalton, Alden |
| **Subject:** | Trent Pendarvis Compliance Enforcement info |

Please send Jason ALL documents, amendments, signed agreement, everything in a zip file or One Folder regarding to T Pendarvis.

D

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



1

10754-B-065

**JA251**

**Adam Bruyere**

**From:** Moore, Eva <emoore@scda.sc.gov>
**Sent:** Friday, September 20, 2019 11:26 AM
**To:** Leach, Clint; Dalton, Alden; Underwood, Derek
**Subject:** Fw: [External] SLED News Release
**Attachments:** 20190920-NR002_DORCHESTER MAN CHARGED WITH UNLAWFULLY CULTIVATING HEMP.pdf

**From:** Berry, Thom <tberry@sled.sc.gov>
**Sent:** Friday, September 20, 2019 11:24 AM
**To:** Moore, Eva <emoore@scda.sc.gov>
**Cc:** Crosby, Tommy <tcrosby@sled.sc.gov>; Richardson, Kathryn <KRichardson@sled.sc.gov>
**Subject:** [External] SLED News Release

Attached...

1

10754-B-112

**JA252**



**South Carolina
Law Enforcement Division**

P.O. Box 21398
Columbia, South Carolina
29221-1398

*Henry D. McMaster, Governor*
*Mark A. Keel, Chief*

Tel: (803) 737-9000

Contact: Tommy Crosby
Office: (803) 896-8396  After Hours: (803) 737-9000
tcrosby@sled.sc.gov

**FOR IMMEDIATE RELEASE**
**September 20, 2019**

### DORCHESTER MAN CHARGED WITH UNLAWFULLY
### CULTIVATING HEMP

Agents of the S.C. Law Enforcement Division Thursday arrested a Dorchester County man for violating the law associated with the South Carolina Hemp Farming Program. The arrest is a result of an investigation requested by the South Carolina Department of Agriculture (SCDA). This is the first arrest of a Hemp farmer following the implementation of the program.

John Trenton Pendarvis, 38, is charged with unlawfully cultivating hemp on property off Maple Hill Road near Harleyville in Dorchester County.

Pendarvis was booked at the Dorchester County Detention Center.

The case will be prosecuted by the First Circuit Solicitor's Office.

###

Warrant Attached.
LTC-002
www.sled.sc.gov



*An Accredited Law Enforcement Agency*



10754-B-113

**JA253**



South Carolina
# DEPARTMENT OF AGRICULTURE
Hugh E. Weathers, Commissioner

**Media Contact:** Eva Moore, 803-734-2196, emoore@scda.sc.gov

**FOR IMMEDIATE RELEASE** – September 20, 2019

## Statement Regarding SLED's Sept. 19 Arrest

The South Carolina Department of Agriculture takes seriously the integrity of the Hemp Farming Program. Hemp is legal within the parameters of program, which SCDA administers. We are not a law enforcement agency — we are required to report certain violations of the program to law enforcement.

As part of the permitting process, permitted hemp farmers sign an agreement that says they will report all acreage on which they intend to grow hemp. It's important that we have a record of GPS coordinates of acreage with permitted hemp growing on it – not only is it required by law, but we've shared that information with law enforcement when they have questions.

SCDA is required to report to SLED and the SC Attorney General any violations of the hemp program that we believe are willful, which is what we did in this case. The decision to take action – and what action to take – lies with law enforcement.

This incident hasn't dampened SCDA's enthusiasm about the Hemp Farming Program. We have more than 100 permitted farmers this year, many of them getting ready to harvest their 2019 crops, and we're committed to supporting this growing industry.

###

1200 Senate Street, Columbia, SC 29201
Wade Hampton Building, 5th Floor
PO Box 11280 Columbia, SC 29211

agriculture.sc.gov
803-734-2210
Fax 803-734-2192

10754-B-119

**Adam Bruyere**

| | |
|---|---|
| **From:** | Dalton, Alden <adalton@scda.sc.gov> |
| **Sent:** | Thursday, October 3, 2019 9:46 AM |
| **To:** | Moore, Eva |
| **Subject:** | FW: Derek Underwood Statement |
| **Attachments:** | Derek Underwood Statement 10-2-19.docx |

**Alden G. Terry**
*General Counsel*
**South Carolina Department of Agriculture**
Office: 803-734-2225

**From:** Underwood, Derek <dunder@scda.sc.gov>
**Sent:** Wednesday, October 2, 2019 1:02 PM
**To:** Wells, Jason <jwells@sled.sc.gov>
**Cc:** Terry, Alden <aterry@scda.sc.gov>
**Subject:** Derek Underwood Statement

Capt. Wells,

Attached is my statement for your files as requested.

1

10754-B-134

On 7-31-2019, after SCDA staff visit to unlicensed hemp farming location, Mr. Trent Pendarvis contacted me via phone and asked what was going on with his field. I asked him whether the field was approved by SCDA prior to planting, he said "no".

I asked him, why didn't he contact SCDA prior to planting, as the law requires him to gain approval "prior to seeking land to cultivate hemp". He stated, "I did not want to bother with it...I figured I would let y'all know when y'all showed up."

He went on to say he sent the coordinates in a text message during/or immediately after the SCDA visit. I told him that we need to receive an actual official amendment form to review prior to any further discussion and that he must send this in ASAP. I also told Trent that it would be an issue to approve acreage where mature plants are being grown. I asked Trent, "what if law enforcement officers showed up instead of SCDA, how would they know this was SCDA approved Hemp fields? Would they want SCDA to amend the acreage where hemp is already being cultivated?" Mr. Pendarvis replied, "I guess you are right, I hadn't thought of that". I again mentioned that the law requires you to only plant on prior approved acreage and you are not permitted to seek approval after the fact.

I later followed up with an email requesting a narrative of the reasons he failed to report these acres to SCDA prior to planting.

On 8-1-2019, Mr. Pendarvis submitted his amendment for a location where mature plants were present. SCDA Staff and legal counsel reviewed the law, accounts of conversations with Mr. Pendarivs, and written correspondence with Mr. Pendarvis, and made the determination that the violation was made with a culpable mental state greater than negligence. After making this determination, SCDA reported the violation to SLED and later to the Attorney General's Office.

During the collection of information pertaining to this violation, Mr. Pendarvis submitted additional acres (8-28-2019) that had not been approved where mature hemp plants were being grown. This time at a "friend's" house with two (2) acres according to Mr. Pendarvis. These 2 additional acres in Marion County were never mentioned during any conversations, emails, or inquiries. The second willful violation of the hemp farming act was now evident by another amendment being submitted for acreage where SCDA has no record, no prior approval, nor no listing of a responsible party by the said land owner.

On 8-28-2019, SCDA sent a letter to Mr. Pendarvis to notify him that SCDA could not approve the amendments. The letter also detailed the two willful violations; failure to gain permission and approval and provide amendments (GPS coordinates) prior to seeking cultivation, nor provide responsible party approval for the 10 and now 2 additional acres.

Mr. Pendarvis called me several times over that weekend (August 31-Sept 1) and I waited until first of the week to return his call.

During that call, Mr. Pendarvis asked several times "what does this letter mean?" I explained the rejection of the amendments was because hemp was already being grown (mature plants over 5 ft) on non-approved GPS coordinates and our program's integrity would not allow SCDA to approve amendments after the fact. He again asked what it the letter means. I tried to reread the letter and what the law required us to do. He seemed confused and asked what he needed to do. I explained that he would need to contact our General Counsel since he was asking questions regarding the legal status and our reporting to SLED and AG's office.

After a few more exchanges repeating the same questions, I ended the call.

Statement of Derek Underwood

10754-B-135

**JA256**

telling them that the crop in question was going to be destroyed in the coming days. Faced
with the information that SLED intended to destroy the crop in question within days, after
already having destroyed Plaintiff Pendarvis' crop in Dorchester County in violation of his
due process rights, the Plaintiffs had no remedy other than seeking emergency relief from the
circuit court.

---

**From:** Whitsett, Adam [mailto:awhitsett@sled.sc.gov]
**Sent:** Tuesday, October 22, 2019 9:08 AM
**To:** Emory Smith
**Cc:** aterry@scda.sc.gov
**Subject:** FW: [EXTERNAL] FW: Pendarvis and Dew v. SLED and SCDA CA No. 2019 CP 33 00675

Emory:

On behalf of Alden Terry, General Counsel at the Dept. of Ag, who is copied on this email and myself,
we appreciate your review and consideration of this matter. As we discussed, below is Judge Seals'
ruling that effectively ends this case and renders the entire Hemp licensure program meaningless in
that it authorizes and immunizes the illegal cultivation and sale of illegal, unlicensed hemp that was
cultivated in complete disregard of South Carolina law.  In addition, I have attached our
memorandum detailing the complete failure to follow or apply Rule 65 of the Rules of Civil
Procedure in this matter.

At your request, I have also included the Plaintiff's filings in this matter.

Please let me know if there is anything else we can provide to assist.

Regards,
Adam

Adam L. Whitsett
General Counsel
South Carolina Law Enforcement Division
Office: (803) 896-0647
Cell:   (803) 206-4636



EX.1 —000000001

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Thursday, August 1, 2019 11:58 AM |
| **To:** | Trent Pendarvis |
| **Cc:** | Dalton, Alden; Elsalah, Vanessa; Hemp, SCDA |
| **Subject:** | RE: [External] Fwd: Hemp Acreage Amendment |
| **Attachments:** | Scanned from a Xerox multifunction device.pdf |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Trent,

Thanks for your amendment submission.

I will be reviewing your case with our Attorney to determine if a willful violation of the grower's agreement is present.

We have your narrative.

Once we make a final decision, we will be in touch.

Sincerely,

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



**From:** Trent Pendarvis <trentpendarvis@gmail.com>
**Sent:** Thursday, August 1, 2019 11:21 AM
**To:** Underwood, Derek <dunder@scda.sc.gov>
**Subject:** [External] Fwd: Hemp Acreage Amendment

See attached for Hemp Acreage Amendment Application

1

10754-B-005

**JA258**

EX.1 –000000002

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Monday, August 5, 2019 11:51 AM |
| **To:** | jwells@sled.sc.gov |
| **Cc:** | Elsalah, Vanessa; Dalton, Alden; foneal@sled.sc.gov |
| **Subject:** | Trent Pendarvis Violation of SCDA HEMP Agreement email 1 of 3 |
| **Attachments:** | Scanned from a Xerox multifunction device.pdf |

Lt. Wells,

Please see attached amendment for acreage that *is currently* growing Hemp.

The participant of the SCDA Hemp program <u>has willfully grown hemp on non-reported or non-listed acreage for 6-8 weeks.</u>

The plants are mature and over 5 FT. tall.

This amendment was filed AFTER he was discovered to be growing on non-permitted land.

I will send all correspondences with Mr. Trent Pendarvis following this email.

V/R,


**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



1

10754-B-010

**JA259**

EX.1 —000000003

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Monday, August 5, 2019 12:30 PM |
| **To:** | jwells@sled.sc.gov; foneal@sled.sc.gov |
| **Cc:** | Dalton, Alden; Elsalah, Vanessa |
| **Subject:** | Memo to enact enforcement |
| **Attachments:** | Memo to SLED 8-5-2019 Pendarvis.pdf |
| **Importance:** | High |

Attached.

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



1

10754-B-017

**JA260**

EX.1 —000000004



## South Carolina
# DEPARTMENT OF AGRICULTURE
### CONSUMER PROTECTION DIVISION
123 Ballard Court, West Columbia, SC 29172

Hugh E. Weathers, Commissioner

MEMORANDUM

To:     Lt. Jason D. Wells, Narcotics
        South Carolina Law Enforcement Div.

From:    Derek M. Underwood, Assistant Commissioner
         Consumer Protection Division, SCDA

Date: August 5, 2019

RE: Trent Pendarvis (permit # 1992) violation of Hemp Agreement

It has come to our attention that Mr. Trent Padarvis is unlawfully growing Hemp on acreage that was not permitted by the SCDA. This is a willful violation of the Hemp Farming Act which requires a licensed grower only grow on acreage submitted and approved in advance by SCDA.

This memo is to request SLED enact enforcement of this violation by Mr. Trent Pedarvis.

---

| Consumer Services 803-737-9690 | Food and Feed Safety & Compliance 803-734-7321 | Grading & Inspection 803-737-4597 | Laboratory Services 803-737-9700 | Metrology Services 803-253-4052 | Produce Safety 803-753-7267 |

agriculture.sc.gov

10754-B-018

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Tuesday, August 6, 2019 9:45 AM |
| **To:** | jwells@sled.sc.gov |
| **Cc:** | foneal@sled.sc.gov; Dalton, Alden; Weathers, Hugh; Elsalah, Vanessa |
| **Subject:** | Letter to enact enforcement Pendarvis Hemp |
| **Attachments:** | SCDA SLED Memo 8-6-2019 Pendarvis.pdf |

| | |
|---|---|
| **Importance:** | High |

Lt. Wells,

Attached is the memo regarding willful actions by Mr. Trent Pendarvis (permit #1992).

V/R,

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



1

10754-B-019



South Carolina
# DEPARTMENT OF AGRICULTURE
## CONSUMER PROTECTION DIVISION
123 Ballard Court, West Columbia, SC 29172

Hugh E. Weathers, Commissioner

MEMORANDUM

To:   Lt. Jason D. Wells, Narcotics
      South Carolina Law Enforcement Div.

From: Derek M. Underwood, Assistant Commissioner
      Consumer Protection Division, SCDA

Date: August 5, 2019

RE: Trent Pendarvis (permit # 1992) violation of Hemp Farming Program

It has come to our attention that Mr. Trent Pendarvis is unlawfully growing Hemp on
acreage that is not on record with the SCDA. This is a willful violation of the Hemp
Farming Program which requires a licensed grower to provide the SCDA with a legal
description and global positioning coordinates of the land on which the licensee seeks to
cultivate hemp.

Mr. Pendarvis, during an SCDA farm visit, acknowledged to an SCDA employee that the
land at issue was not on record with SCDA, yet the SCDA employee observed the land to
be planted with mature hemp plants. SCDA does not believe this violation to be negligent or
an oversight on the part of Mr. Pendarvis and instead views this conduct as willful. This
memo is to request SLED enact enforcement of this willful violation by Mr. Pendarvis.

Consumer Services       Food and Feed Safety & Compliance   Grading & Inspection   Laboratory Services   Metrology Services   Produce Safety
803-737-9690            803-734-7321                     803-737-4597           803-737-9700          803-253-4052        803-753-7267

agriculture.sc.gov

10754-B-020

JA263

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Thursday, August 8, 2019 11:48 AM |
| **To:** | jwells@sled.sc.gov |
| **Cc:** | foneal@sled.sc.gov; Dalton, Alden; Weathers, Hugh; Elsalah, Vanessa |
| **Subject:** | Re: Letter to enact enforcement Pendarvis Hemp |
| | |
| **Importance:** | High |

Any update?

Also any date for SLED SCDA meeting in September?

*Derek Underwood*
*Assistant Commissioner*
*South Carolina Department of Agriculture*
*803-737-9700*

*Sent from my mobile device*

------ Original message------
**From:** Underwood, Derek
**Date:** Tue, Aug 6, 2019 9:44 AM
**To:** jwells@sled.sc.gov;
**Cc:** foneal@sled.sc.gov;Terry, Alden;Weathers, Hugh;Elsalah, Vanessa;
**Subject:**Letter to enact enforcement Pendarvis Hemp

Lt. Wells,
Attached is the memo regarding willful actions by Mr. Trent Pendarvis (permit #1992).
V/R,
**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*
**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



EX.1 –000000008

**Adam Bruyere**

| | |
|---|---|
| **From:** | Oneal, Frank <foneal@sled.sc.gov> |
| **Sent:** | Thursday, August 8, 2019 5:05 PM |
| **To:** | Underwood, Derek |
| **Cc:** | Wells, Jason; Dalton, Alden; Weathers, Hugh; Elsalah, Vanessa |
| **Subject:** | Re: [EXTERNAL] Re: Letter to enact enforcement Pendarvis Hemp |
| **Attachments:** | image001.jpg |

Thank you

Sent from my iPhone

On Aug 8, 2019, at 4:43 PM, Underwood, Derek <dunder@scda.sc.gov> wrote:

> EXTERNAL EMAIL: Do not click any links or open any attachments unless you trust the sender and know the content is safe.
> Thanks for update.
> We will not issue an amendment for acreage with mature plants or any new acreage where hemp is currently growing so there is no quote "deadline" to act.
> Let me know what we need to do to help.
> Derek
> **From:** Oneal, Frank <foneal@sled.sc.gov>
> **Sent:** Thursday, August 8, 2019 1:00 PM
> **To:** Underwood, Derek <dunder@scda.sc.gov>; Wells, Jason <jwells@sled.sc.gov>
> **Cc:** Terry, Alden <aterry@scda.sc.gov>; Weathers, Hugh <hweathe@scda.sc.gov>; Elsalah, Vanessa <velsalah@scda.sc.gov>
> **Subject:** RE: [EXTERNAL] Re: Letter to enact enforcement Pendarvis Hemp
> Not yet- we are having difficulty in what to address with so many gray areas concerning enforcement. Unlike Kentucky, we don't really have comprehensive regulation that addresses all of the possible concerns. We are having to get AG opinions along the way and the last thing we want to do is an action that will be perceived in a negative light by the media or general assembly.
> **From:** Underwood, Derek <dunder@scda.sc.gov>
> **Sent:** Thursday, August 08, 2019 11:48 AM
> **To:** Wells, Jason <jwells@sled.sc.gov>
> **Cc:** Oneal, Frank <foneal@sled.sc.gov>; Terry, Alden <aterry@scda.sc.gov>; Weathers, Hugh <hweathe@scda.sc.gov>; Elsalah, Vanessa <velsalah@scda.sc.gov>
> **Subject:** [EXTERNAL] Re: Letter to enact enforcement Pendarvis Hemp
> **Importance:** High
>
>
> **EXTERNAL EMAIL:** Do not click any links or open any attachments unless you trust the sender and know the content is safe.
>
> Any update?
> Also any date for SLED SCDA meeting in September?
> *Derek Underwood*
> *Assistant Commissioner*

1

10754-B-022



South Carolina
# DEPARTMENT OF AGRICULTURE
**CONSUMER PROTECTION DIVISION**
123 Ballard Court, West Columbia, SC 29172

Hugh E. Weathers, Commissioner

August 21, 2019

The Honorable Alan Wilson
P.O. Box 11549
Columbia, S.C. 29211

RE: Trent Pendarvis (permit # 1992) violation of Hemp Farming Program

Dear Attorney General Wilson,

It has come to our attention that Mr. Trent Pendarvis is likely unlawfully growing Hemp on acreage that is not on record with the SCDA. This is a willful violation of the Hemp Farming Program which requires a licensed grower to provide the SCDA with a legal description and global positioning coordinates of the land on which the licensee seeks to cultivate hemp.

Mr. Pendarvis, during an SCDA farm visit, acknowledged to an SCDA employee that the land at issue was not on record with SCDA, yet the SCDA employee observed the land to be planted with mature hemp plants. SCDA does not believe this violation to be negligent or an oversight on the part of Mr. Pendarvis and instead views this conduct as willful. This memo is to fill the requirement of reporting to the Attorney General any culpable violations, greater than negligence, of the Hemp Farm Program as such requirement is set forth in S.C. Code Ann. Section 46-55-40(B).

If you have any questions or would like additional information, please do not hesitate to contact me at dunder@scda.sc.gov or 803-737-9702.

Respectfully,

Derek Underwood
Assistant Commissioner
South Carolina Department of Agriculture

---

| Consumer Services | Food and Feed Safety & Compliance | Grading & Inspection | Laboratory Services | Metrology Services | Produce Safety |
|---|---|---|---|---|---|
| 803-737-9690 | 803-734-7321 | 803-737-4597 | 803-737-9700 | 803-253-4052 | 803-753-7267 |

agriculture.sc.gov

10754-B-027

EX.1 –000000010

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Tuesday, August 27, 2019 3:13 PM |
| **To:** | jneale@sled.sc.gov |
| **Cc:** | Dalton, Alden; Elsalah, Vanessa; Stokes, John |
| **Subject:** | FW: [External] Fwd: Hemp Acreage Amendment |
| **Attachments:** | Scanned from a Xerox multifunction device.pdf |
| | |
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Flagged |

---

**From:** Underwood, Derek
**Sent:** Thursday, August 1, 2019 11:58 AM
**To:** Trent Pendarvis <trentpendarvis@gmail.com>
**Cc:** Terry, Alden <aterry@scda.sc.gov>; Elsalah, Vanessa <velsalah@scda.sc.gov>; Hemp, SCDA <scda_hemp@scda.sc.gov>
**Subject:** RE: [External] Fwd: Hemp Acreage Amendment

Trent,

Thanks for your amendment submission.

I will be reviewing your case with our Attorney to determine if a willful violation of the grower's agreement is present.

We have your narrative.

Once we make a final decision, we will be in touch.

Sincerely,


**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



1

10754-B-028

**JA267**

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Wednesday, August 28, 2019 11:54 AM |
| **To:** | Wells, Jason; Oneal, Frank |
| **Cc:** | Dalton, Alden; Elsalah, Vanessa |
| **Subject:** | Trent Pendarvis |

| | |
|---|---|
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Flagged |

Guys,

I know John Neale is at farm today, however, during their sample visit, Trent has now **mentioned another 2 acres** not registered with SCDA.

He has sent in an amendment (@10:38 AM, 8-28-2019) to add these where hemp is CURRENTLY growing.

I need some direction as to when I can inform him that SCDA has rejected his amendment request and that he is willfully violation the agreement and law.

Please advise.

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



1

10754-B-035

**JA268**

EX.1 –000000012

**Adam Bruyere**

| | |
|---|---|
| From: | Underwood, Derek <dunder@scda.sc.gov> |
| Sent: | Wednesday, August 28, 2019 1:41 PM |
| To: | Oneal, Frank; Wells, Jason |
| Cc: | Dalton, Alden |
| Subject: | sample email to Pedarvis |

| | |
|---|---|
| Follow Up Flag: | Flag for follow up |
| Flag Status: | Flagged |

Mr. Trent Pendarvis,

It has come to our attention that you are unlawfully growing Hemp on acreage **that is not on record with the SCDA.** This is a willful violation of the Hemp Farming Program which requires a licensed grower to provide the SCDA with a legal description and global positioning coordinates of the land on which the licensee **seeks to cultivate hemp.**

Amendments submitted on 8-01-2019 and 8-28-2019 for adding acreage where hemp has already been planted, cultivated and matured **will not be processed by the SCDA.** Therefore, this crop is considered in violation of S.C. Code Ann. Section 46-55-40(B).

SCDA does not believe this violation to be negligent or an oversight on the part you and instead views this conduct as willful.

This email serves as **the official response** to your actions and SCDA has notified SLED and fulfilled the requirement of reporting to the Attorney General these culpable violations, greater than negligence, of the Hemp Farm Program as such requirement is set forth in S.C. Code Ann. Section 46-55-40(B).

Sincerely,

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



1

10754-B-036

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Thursday, August 29, 2019 11:53 AM |
| **To:** | trentpendarvis@gmail.com |
| **Cc:** | Elsalah, Vanessa; Dalton, Alden; Hemp, SCDA |
| **Subject:** | SCDA Amendment response to existing hemp fields not on record 8-29-2019 |
| **Attachments:** | Trent Pendarvis Ammendment Letter SCDA 8-28-2019.pdf |
| **Importance:** | High |
| | |
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Flagged |

August 28, 2019

Mr. Trent Pendarvis
967 West Main Street
Harleysville, SC 29448

RE: Trent Pendarvis (permit # 1992) violation of Hemp Farming Program

Mr. Pendarvis,

It has come to our attention that you are unlawfully growing Hemp on acreage that is not on record with the SCDA. This is a willful violation of the Hemp Farming Program which requires a licensed grower to provide the SCDA with a legal description and global positioning coordinates of the land on which the licensee seeks to cultivate hemp.

Amendments submitted on 8-01-2019 and *the recent* 8-28-2019 for adding acreage where hemp has already been planted, cultivated and matured will not be processed by the SCDA. Therefore, this crop is considered in violation of S.C. Code Ann. Section 46-55-40(B).

SCDA does not believe this violation to be negligent or an oversight on your part, but instead views this conduct as willful.

This letter serves as the official response to your actions and SCDA has notified SLED and fulfilled the requirement of reporting to the Attorney General these culpable violations, greater than negligence, of the Hemp Farm Program as such requirement is set forth in S.C. Code Ann. Section 46-55-40(B).

If you have any questions or would like additional information, please do not hesitate to contact me at dunder@scda.sc.gov or 803-737-9702.

This letter has also been mailed "certified" to your attention.

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**

1

10754-B-039



South Carolina
# DEPARTMENT OF AGRICULTURE
**CONSUMER PROTECTION DIVISION**
123 Ballard Court, West Columbia, SC 29172

Hugh E. Weathers, Commissioner

August 28, 2019

Mr. Trent Pendarvis
967 West Main Street
Harleysville, SC 29448

RE: Trent Pendarvis (permit # 1992) violation of Hemp Farming Program

Mr. Pendarvis,

It has come to our attention that you are unlawfully growing Hemp on acreage that is not on record with the SCDA. This is a willful violation of the Hemp Farming Program which requires a licensed grower to provide the SCDA with a legal description and global positioning coordinates of the land on which the licensee seeks to cultivate hemp.

Amendments submitted on 8-01-2019 and 8-28-2019 for adding acreage where hemp has already been planted, cultivated and matured will not be processed by the SCDA. Therefore, this crop is considered in violation of S.C. Code Ann. Section 46-55-40(B).

SCDA does not believe this violation to be negligent or an oversight on your part, but instead views this conduct as willful.

This letter serves as the official response to your actions and SCDA has notified SLED and fulfilled the requirement of reporting to the Attorney General these culpable violations, greater than negligence, of the Hemp Farm Program as such requirement is set forth in S.C. Code Ann. Section 46-55-40(B).

If you have any questions or would like additional information, please do not hesitate to contact me at dunder@scda.sc.gov or 803-737-9702.

Respectfully,

Derek Underwood
Assistant Commissioner
South Carolina Department of Agriculture

| Consumer Services | Food and Feed Safety & Compliance | Grading & Inspection | Laboratory Services | Metrology Services | Produce Safety |
|---|---|---|---|---|---|
| 803-737-9690 | 803-734-7321 | 803-737-4597 | 803-737-9700 | 803-253-4052 | 803-753-7267 |

agriculture.sc.gov

10754-B-041

**JA271**

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Thursday, August 29, 2019 11:55 AM |
| **To:** | Dalton, Alden; Elsalah, Vanessa; Leach, Clint; Wood, Aaron; Weathers, Hugh; Attaway, Alicia; Jeffcoat, Brittany |
| **Cc:** | Oneal, Frank; Wells, Jason |
| **Subject:** | FW: SCDA Amendment response to existing hemp fields not on record 8-29-2019 |
| **Attachments:** | Trent Pendarvis Ammendment Letter SCDA 8-28-2019.pdf |

**Importance:**     High

**Follow Up Flag:**     Flag for follow up
**Flag Status:**     Flagged

Staff,

Mr. Pendarvis was officially notified today that his two (2) amendment submissions were denied.

I am out until Tuesday so if he calls, please make sure our staff directs him to either me or Alden ONLY.

ccing SLED

Derek

---

**From:** Underwood, Derek
**Sent:** Thursday, August 29, 2019 11:53 AM
**To:** 'trentpendarvis@gmail.com' <trentpendarvis@gmail.com>
**Cc:** Elsalah, Vanessa <velsalah@scda.sc.gov>; Terry, Alden <aterry@scda.sc.gov>; Hemp, SCDA <scda_hemp@scda.sc.gov>
**Subject:** SCDA Amendment response to existing hemp fields not on record 8-29-2019
**Importance:** High

August 28, 2019

Mr. Trent Pendarvis
967 West Main Street
Harleysville, SC 29448

RE: Trent Pendarvis (permit # 1992) violation of Hemp Farming Program

Mr. Pendarvis,

It has come to our attention that you are unlawfully growing Hemp on acreage that is not on record with the SCDA. This is a willful violation of the Hemp Farming Program which requires a licensed grower to provide the SCDA with a legal description and global positioning coordinates of the land on which the licensee seeks to cultivate hemp.

Amendments submitted on 8-01-2019 and the recent 8-28-2019 for adding acreage where hemp has already been planted, cultivated and matured will not be processed by the SCDA. Therefore, this crop is considered in violation of S.C. Code Ann. Section 46-55-40(B).

1

10754-B-042

**JA272**

`EX.1 –000000016`

SCDA does not believe this violation to be negligent or an oversight on your part, but instead views this conduct as willful.

This letter serves as **the official response** to your actions and SCDA has notified SLED and fulfilled the requirement of reporting to the Attorney General these culpable violations, greater than negligence, of the Hemp Farm Program as such requirement is set forth in S.C. Code Ann. Section 46-55-40(B).

If you have any questions or would like additional information, please do not hesitate to contact me at dunder@scda.sc.gov or 803-737-9702.

**This letter has also been mailed "certified" to your attention.**

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



2

10754-B-043

**JA273**

EX.1 −000000017

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Tuesday, September 3, 2019 4:22 PM |
| **To:** | Wells, Jason; Oneal, Frank |
| **Cc:** | Dalton, Alden; Elsalah, Vanessa |
| **Subject:** | Pendarvis |

Guys,

Trent P. has called SCDA and Rep. Russell Ott since we dot not approve his amended acreage for 10 + 2 = 12 areas.

What else does SLED need from SCDA and any word on test results?

Sincerely,

Derek

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



1

10754-B-046

**JA274**

**Adam Bruyere**

| | |
|---|---|
| **From:** | Dalton, Alden <adalton@scda.sc.gov> |
| **Sent:** | Wednesday, September 11, 2019 10:35 AM |
| **To:** | Underwood, Derek; Jeffcoat, Brittany; trentpendarvis@gmail.com |
| **Cc:** | Elsalah, Vanessa |
| **Subject:** | RE: SCDA Hemp |

Mr. Pendarvis,

I just tried to give you a call but I got your voicemail. I am reaching out because SCDA has been asking by SLED to provide them with the location of all places where you are growing hemp. As we understand, you are currently growing on two more additional areas which are not licensed by or on record with SCDA. Please provide the location of these additional two acres (and any other unauthorized or unrecorded growing locations) by close of business today, Wednesday, September 11th. Please note that while SCDA cannot influence the SLED proceedings, your cooperation with SCDA will impact your future participation in the SCDA program. Please give me a call if you have any questions.

**Alden G. Terry**
*General Counsel*
**South Carolina Department of Agriculture**
Office: 803-734-2225

---

**From:** Underwood, Derek <dunder@scda.sc.gov>
**Sent:** Tuesday, September 10, 2019 4:52 PM
**To:** Jeffcoat, Brittany <bjeffcoat@scda.sc.gov>; trentpendarvis@gmail.com
**Cc:** Elsalah, Vanessa <velsalah@scda.sc.gov>; Terry, Alden <aterry@scda.sc.gov>
**Subject:** RE: SCDA Hemp
**Importance:** High

Mr. Pendarvis,

Your cooperation in this matter is of upmost importance.

This is a direct inquiry based on your previous call on 8-28-2019 at 10:38AM about amending another 2 acres where Hemp is being grown by you.

Time is of the essence.

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook

Adam Bruyere

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Tuesday, September 10, 2019 4:52 PM |
| **To:** | Jeffcoat, Brittany; trentpendarvis@gmail.com |
| **Cc:** | Elsalah, Vanessa; Dalton, Alden |
| **Subject:** | RE: SCDA Hemp |
| **Importance:** | High |

Mr. Pendarvis,

Your cooperation in this matter is of upmost importance.

This is a direct inquiry based on your previous call on 8-28-2019 at 10:38AM about amending another 2 acres where Hemp is being grown by you.

Time is of the essence.


**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



---

**From:** Jeffcoat, Brittany
**Sent:** Tuesday, September 10, 2019 4:45 PM
**To:** trentpendarvis@gmail.com
**Cc:** Underwood, Derek <dunder@scda.sc.gov>; Elsalah, Vanessa <velsalah@scda.sc.gov>; Terry, Alden <aterry@scda.sc.gov>
**Subject:** FW: SCDA Hemp

Good Afternoon Mr. Pendarvis,
I am reaching out again requesting you please provided the location of the additional two acres you wished to amend to your license. Please respond by the end of the business day tomorrow, Wednesday, September 11th.

Thanks,
**Brittany G. Jeffcoat**
*Administrative Assistant, Consumer Protection Division*

1

10754-B-048

EX.1 –000000020

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9690 | Fax: 803-737-9703
bjeffcoat@scda.sc.gov | agriculture.sc.gov | Facebook



---

**From:** Jeffcoat, Brittany
**Sent:** Friday, September 6, 2019 12:48 PM
**To:** trentpendarvis@gmail.com
**Subject:** SCDA Hemp

Mr. Pendarvis,
We spoke on August 28th about two additional acres you wish to amend to your license. In order for us to maintain an accurate record for your location please reply back with coordinates of those acres by the end of today.

Thanks,

**Brittany G. Jeffcoat**
*Administrative Assistant, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9690 | Fax: 803-737-9703
bjeffcoat@scda.sc.gov | agriculture.sc.gov | Facebook



2

10754-B-049

**Adam Bruyere**

| | |
|---|---|
| **From:** | Hemp, SCDA <scda_hemp@scda.sc.gov> |
| **Sent:** | Wednesday, September 11, 2019 12:02 PM |
| **To:** | Dalton, Alden; Elsalah, Vanessa; Underwood, Derek |
| **Subject:** | FW: [External] Fwd: FW: Scanned from a Xerox multifunction device |
| **Attachments:** | Scanned from a Xerox multifunction device.pdf; hemp.jpg |

**Brittany G. Jeffcoat**
*Administrative Assistant, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9690 | Fax: 803-737-9703
bjeffcoat@scda.sc.gov | agriculture.sc.gov | Facebook



**From:** Trent Pendarvis <trentpendarvis@gmail.com>
**Sent:** Wednesday, September 11, 2019 8:12 AM
**To:** Hemp, SCDA <scda_hemp@scda.sc.gov>
**Subject:** [External] Fwd: FW: Scanned from a Xerox multifunction device

See Attached Acreage Amendment that was sent on August 28th for Trent Pendarvis.

Please open the attached document. It was sent to you using a Xerox multifunction printer.

Attachment File Type: pdf, Multi-Page

Multifunction Printer Location:
Device Name: ASASCSTG7C7830PTG01

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

1

10754-B-053

**JA278**

EX.1 −000000022

**Adam Bruyere**

| | |
|---|---|
| **From:** | Hemp, SCDA <scda_hemp@scda.sc.gov> |
| **Sent:** | Wednesday, September 11, 2019 12:02 PM |
| **To:** | Underwood, Derek; Elsalah, Vanessa; Dalton, Alden |
| **Subject:** | FW: [External] Hemp |

**Brittany G. Jeffcoat**
*Administrative Assistant, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9690 | Fax: 803-737-9703
bjeffcoat@scda.sc.gov | agriculture.sc.gov | Facebook



**From:** Trent Pendarvis <trentpendarvis@gmail.com>
**Sent:** Wednesday, September 11, 2019 8:14 AM
**To:** Hemp, SCDA <scda_hemp@scda.sc.gov>
**Subject:** [External] Hemp

If any further information is needed, please call my cell 843-

1

10754-B-058

**JA279**

**Adam Bruyere**

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Tuesday, September 17, 2019 4:52 PM |
| **To:** | Jeffcoat, Brittany |
| **Cc:** | Wells, Jason; Elsalah, Vanessa; Attaway, Alicia; Dalton, Alden |
| **Subject:** | Trent Pendarvis Compliance Enforcement info |

Please send Jason ALL documents, amendments, signed agreement, everything in a zip file or One Folder regarding to T Pendarvis.

D

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

**South Carolina Department of Agriculture**
123 Ballard Court | West Columbia, South Carolina 29172
Office: 803-737-9702 | Cell: 803-271-2972
dunder@scda.sc.gov | agriculture.sc.gov | Facebook



1

10754-B-065

**JA280**

EX.1 −000000024

**Adam Bruyere**

| | |
|---|---|
| From: | Underwood, Derek <dunder@scda.sc.gov> |
| Sent: | Wednesday, September 18, 2019 5:04 PM |
| To: | Leach, Clint; Moore, Eva; Dalton, Alden |
| Cc: | Weathers, Hugh |
| Subject: | RE: Draft statement |

From: Underwood, Derek
Sent: Wednesday, September 18, 2019 5:03 PM
To: Leach, Clint <jcleach@scda.sc.gov>; Moore, Eva <emoore@scda.sc.gov>; Terry, Alden <aterry@scda.sc.gov>
Subject: RE: Draft statement

Derek and Alden

1

10754-B-108

**JA281**

EX.1 −000000025

**Adam Bruyere**

| | |
|---|---|
| **From:** | Moore, Eva <emoore@scda.sc.gov> |
| **Sent:** | Friday, September 20, 2019 11:26 AM |
| **To:** | Leach, Clint; Dalton, Alden; Underwood, Derek |
| **Subject:** | Fw: [External] SLED News Release |
| **Attachments:** | 20190920-NR002_DORCHESTER MAN CHARGED WITH UNLAWFULLY CULTIVATING HEMP.pdf |

**From:** Berry, Thom <tberry@sled.sc.gov>
**Sent:** Friday, September 20, 2019 11:24 AM
**To:** Moore, Eva <emoore@scda.sc.gov>
**Cc:** Crosby, Tommy <tcrosby@sled.sc.gov>; Richardson, Kathryn <KRichardson@sled.sc.gov>
**Subject:** [External] SLED News Release

Attached...

1

10754-B-112

EX.1 –000000026



**South Carolina**
**Law Enforcement Division**

P.O. Box 21398
Columbia, South Carolina
29221-1398

*Henry D. McMaster, Governor*
*Mark A. Keel, Chief*

Tel: (803) 737-9000

Contact: Tommy Crosby
Office: (803) 896-8396   After Hours: (803) 737-9000
tcrosby@sled.sc.gov

**FOR IMMEDIATE RELEASE**
**September 20, 2019**

**DORCHESTER MAN CHARGED WITH UNLAWFULLY**
**CULTIVATING HEMP**

Agents of the S.C. Law Enforcement Division Thursday arrested a Dorchester County man for violating the law associated with the South Carolina Hemp Farming Program. The arrest is a result of an investigation requested by the South Carolina Department of Agriculture (SCDA). This is the first arrest of a Hemp farmer following the implementation of the program.

John Trenton Pendarvis, 38, is charged with unlawfully cultivating hemp on property off Maple Hill Road near Harleyville in Dorchester County.

Pendarvis was booked at the Dorchester County Detention Center.

The case will be prosecuted by the First Circuit Solicitor's Office.

###

Warrant Attached.
LTC-002
www.sled.sc.gov

    *An Accredited Law Enforcement Agency*    

10754-B-113

**JA283**



South Carolina
# DEPARTMENT OF AGRICULTURE
Hugh E. Weathers, Commissioner

**Media Contact:** Eva Moore, 803-734-2196, emoore@scda.sc.gov

**FOR IMMEDIATE RELEASE – September 20, 2019**

## Statement Regarding SLED's Sept. 19 Arrest

The South Carolina Department of Agriculture takes seriously the integrity of the Hemp Farming Program. Hemp is legal within the parameters of program, which SCDA administers. We are not a law enforcement agency — we are required to report certain violations of the program to law enforcement.

As part of the permitting process, permitted hemp farmers sign an agreement that says they will report all acreage on which they intend to grow hemp. It's important that we have a record of GPS coordinates of acreage with permitted hemp growing on it – not only is it required by law, but we've shared that information with law enforcement when they have questions.

SCDA is required to report to SLED and the SC Attorney General any violations of the hemp program that we believe are willful, which is what we did in this case. The decision to take action – and what action to take – lies with law enforcement.

This incident hasn't dampened SCDA's enthusiasm about the Hemp Farming Program. We have more than 100 permitted farmers this year, many of them getting ready to harvest their 2019 crops, and we're committed to supporting this growing industry.

###

1200 Senate Street, Columbia, SC 29201
Wade Hampton Building, 5th Floor
PO Box 11280 Columbia, SC 29211

agriculture.sc.gov
803-734-2210
Fax 803-734-2192

10754-B-119

**JA284**

EX.1 −000000028

**Adam Bruyere**

| | |
|---|---|
| **From:** | Dalton, Alden <adalton@scda.sc.gov> |
| **Sent:** | Thursday, October 3, 2019 9:46 AM |
| **To:** | Moore, Eva |
| **Subject:** | FW: Derek Underwood Statement |
| **Attachments:** | Derek Underwood Statement 10-2-19.docx |

**Alden G. Terry**
*General Counsel*
**South Carolina Department of Agriculture**
Office: 803-734-2225

**From:** Underwood, Derek <dunder@scda.sc.gov>
**Sent:** Wednesday, October 2, 2019 1:02 PM
**To:** Wells, Jason <jwells@sled.sc.gov>
**Cc:** Terry, Alden <aterry@scda.sc.gov>
**Subject:** Derek Underwood Statement

Capt. Wells,

Attached is my statement for your files as requested.

1

10754-B-134

EX.1 –000000029

On 7-31-2019, after SCDA staff visit to unlicensed hemp farming location, Mr. Trent Pendarvis contacted me via phone and asked what was going on with his field. I asked him whether the field was approved by SCDA prior to planting, he said "no".

I asked him, why didn't he contact SCDA prior to planting, as the law requires him to gain approval "prior to seeking land to cultivate hemp". He stated, "I did not want to bother with it...I figured I would let y'all know when y'all showed up."

He went on to say he sent the coordinates in a text message during/or immediately after the SCDA visit. I told him that we need to receive an actual official amendment form to review prior to any further discussion and that he must send this in ASAP. I also told Trent that it would be an issue to approve acreage where mature plants are being grown. I asked Trent, "what if law enforcement officers showed up instead of SCDA, how would they know this was SCDA approved Hemp fields? Would they want SCDA to amend the acreage where hemp is already being cultivated?" Mr. Pendarvis replied, "I guess you are right, I hadn't thought of that". I again mentioned that the law requires you to only plant on prior approved acreage and you are not permitted to seek approval after the fact.

I later followed up with an email requesting a narrative of the reasons he failed to report these acres to SCDA prior to planting.

On 8-1-2019, Mr. Pendarvis submitted his amendment for a location where mature plants were present. SCDA Staff and legal counsel reviewed the law, accounts of conversations with Mr. Pendarivs, and written correspondence with Mr. Pendarvis, and made the determination that the violation was made with a culpable mental state greater than negligence. After making this determination, SCDA reported the violation to SLED and later to the Attorney General's Office.

During the collection of information pertaining to this violation, Mr. Pendarvis submitted additional acres (8-28-2019) that had not been approved where mature hemp plants were being grown. This time at a "friend's" house with two (2) acres according to Mr. Pendarvis. These 2 additional acres in Marion County were never mentioned during any conversations, emails, or inquiries. The second willful violation of the hemp farming act was now evident by another amendment being submitted for acreage where SCDA has no record, no prior approval, nor no listing of a responsible party by the said land owner.

On 8-28-2019, SCDA sent a letter to Mr. Pendarvis to notify him that SCDA could not approve the amendments. The letter also detailed the two willful violations; failure to gain permission and approval and provide amendments (GPS coordinates) prior to seeking cultivation, nor provide responsible party approval for the 10 and now 2 additional acres.

Mr. Pendarvis called me several times over that weekend (August 31-Sept 1) and I waited until first of the week to return his call.

During that call, Mr. Pendarvis asked several times "what does this letter mean?" I explained the rejection of the amendments was because hemp was already being grown (mature plants over 5 ft) on non-approved GPS coordinates and our program's integrity would not allow SCDA to approve amendments after the fact. He again asked what it the letter means. I tried to reread the letter and what the law required us to do. He seemed confused and asked what he needed to do. I explained that he would need to contact our General Counsel since he was asking questions regarding the legal status and our reporting to SLED and AG's office.

After a few more exchanges repeating the same questions, I ended the call.

Statement of Derek Underwood

10754-B-135

**JA286**

EX.1 –000000030

telling them that the crop in question was going to be destroyed in the coming days. Faced
with the information that SLED intended to destroy the crop in question within days, after
already having destroyed Plaintiff Pendarvis' crop in Dorchester County in violation of his
due process rights, the Plaintiffs had no remedy other than seeking emergency relief from the
circuit court.

**From:** Whitsett, Adam [mailto:awhitsett@sled.sc.gov]
**Sent:** Tuesday, October 22, 2019 9:08 AM
**To:** Emory Smith
**Cc:** aterry@scda.sc.gov
**Subject:** FW: [EXTERNAL] FW: Pendarvis and Dew v. SLED and SCDA CA No. 2019 CP 33 00675

Emory:

On behalf of Alden Terry, General Counsel at the Dept. of Ag, who is copied on this email and myself,
we appreciate your review and consideration of this matter. As we discussed, below is Judge Seals'
ruling that effectively ends this case and renders the entire Hemp licensure program meaningless in
that it authorizes and immunizes the illegal cultivation and sale of illegal, unlicensed hemp that was
cultivated in complete disregard of South Carolina law.  In addition, I have attached our
memorandum detailing the complete failure to follow or apply Rule 65 of the Rules of Civil
Procedure in this matter.

At your request, I have also included the Plaintiff's filings in this matter.

Please let me know if there is anything else we can provide to assist.

Regards,
Adam

Adam L. Whitsett
General Counsel
South Carolina Law Enforcement Division
Office: (803) 896-0647
Cell:   (803) 206-4636



**JA287**

EX.1 –000000001

**From:** Bob Cook
**To:** David Jones
**Subject:** FW: Plan for Destruction of Hemp Field in Dorchester Co. - Trent Pendarvis
**Date:** Thursday, September 19, 2019 7:57:00 AM
**Attachments:** ATT00001.htm
ATT00002.htm
Pendarvis Drug Analysis L19-15784.pdf
ATT00003.htm
SCDA SLED Memo 8-6-2019 Pendarvis.pdf
ATT00004.htm
SCDA SLED Memo 8-6-2019 Pendarvis.pdf
ATT00005.htm
Pendarvis, Trent Participation Agreement.pdf
ATT00006.htm

---

Robert D. Cook
Solicitor General
S.C. Attorney General's Office
P.O. Box 11549
Columbia, S.C. 29211
P: 803-734-3736
F: 803-734-3524

---

**From:** Whitsett, Adam <awhitsett@sled.sc.gov>
**Sent:** Thursday, September 19, 2019 7:51 AM
**To:** Bob Cook <BCook@scag.gov>
**Subject:** Fwd: Plan for Destruction of Hemp Field in Dorchester Co. - Trent Pendarvis

Sent from my iPhone

Begin forwarded message:

> **From:** "Wells, Jason" <jwells@sled.sc.gov>
> **Date:** September 18, 2019 at 3:16:13 PM EDT
> **To:** "Oneal, Frank" <foneal@sled.sc.gov>
> **Cc:** "Neale II, John" <jneale@sled.sc.gov>, "Whitsett, Adam" <awhitsett@sled.sc.gov>, "Wood III, Glenn" <gwood@sled.sc.gov>
> **Subject:** Plan for Destruction of Hemp Field in Dorchester Co. - Trent Pendarvis

Major,

This email is to inform you of the plan we have in mind to deal with the unlawful hemp farm being operated by John Trenton "Trent" Pendarvis in Harleyville (Dorchester County). S/A John Neale is going to obtain one arrest warrant tomorrow morning (9/19/2019) for Unlawful cultivation of hemp. Statute – 46-55-20(A)(1) (CDR Code – 3554 Penalty section – 17-25-0030). This warrant is based on a request (See Attached) SLED received from the SC Department of Agriculture (SCDA) on August 6, 2019, asking

that SLED conduct enforcement action with regard to Pendarvis. Derek Underwood (SCDA Assistant Commissioner – Consumer protection Division) stated in his request letter that Pendarvis committed a willful violation in that he was growing hemp on acreage that was not on record with the SCDA. The acreage involved is approximately 10 acres (See attached photo). S/A John Neale went to the property on August 28, 2019, and collected numerous plant samples. The Drug analysis Report (see attached) stated that two of the samples tested over the .3 % THC limit (samples tested .42 and .41). Also on August 28, 2019, Underwood (SCDA) emailed Pendarvis a violation letter (see attached) stating that his amendments to add the acreage involved would not be approved by the SCDA because he already had mature grown hemp plants on the property. Underwood confirmed that Pendarvis had indeed received the violation letter.

Today, I contacted the SC Forestry Commission to ask when is the first availability they will have to bring equipment to the farm in Harleyville for destruction of the plants. My contact at Forestry should get back with me today to let me know. Once we have a date set for destruction, we will meet at the farm in Harleyville and contact Pendarvis. Pendarvis will then be informed of the arrest warrant and the plans for destruction.

The destruction is based on the agreement (see attached copy) that Pendarvis entered into with the SCDA on May 13, 2019. The agreement Pendarvis signed stated that:

"Permitted grower acknowledges and consents to the forfeiture or destruction, without compensation, of hemp material:
1) Found to have a measured delta-9 THC content of more than 0.3 percent on a dry weight basis
2) Bearing off-label pesticide residues regardless of the source or cause of contamination
3) Growing in an area that is not licensed by SCDA

**Jason Wells**
**Interim Captain - Narcotics**
**South Carolina Law Enforcement Division (SLED)**
803-608-3201
jwells@sled.sc.gov

**JA289**

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| John Trenton Pendarvis, | ) | CA No. 2:22-cv-03142-BHH-MHC |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| v. | ) | |
| | ) | |
| Alan M. Wilson, Mark A. Keel, Hugh E. | ) | |
| Weathers, L.C. Knight, W. Jeffrey Young, | ) | |
| Robert D. Cook, Emory Smith, Jr., Joanne Lee, | ) | |
| David S. Jones, T. Stephen Lynch, Harley L. | ) | |
| Kirkland, Wesley Vorberger, Robert Kittle, | ) | |
| Adam Whitsett, Frank O'Neal, Jason Wells, | ) | |
| Glenn Wood, John Neale, Rhett Holder, Alden | ) | |
| G. Terry, Derek M. Underwood, J. Clint | ) | |
| Leach, Aaron Wood, John Stokes, Vanessa | ) | |
| Elsalah, Brittany Jeffcoat, Eva Moore, Ray | ) | |
| Dixon, Frank Thompson, Robert Krutak, | ) | |
| Jonathan Calore, Charlie Scrubbs, and Wayne | ) | |
| Eaddy, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff John Trenton Pendarvis ("Plaintiff") filed this action against the above-named Defendants for alleged violations of his constitutional rights. Defendants have filed Motions to Dismiss. ECF Nos. 55, 56, 57, 58, 59. Defendants Jonathan Calore, Charlie Scruggs,[1] Wayne Eaddy, L.C. Knight, Ray Dixson, Frank Thompson, and Robert Krutak,[2] Mark A. Keel, Adam L. Whitsett, Frank O'Neal, Jason Wells, Glenn Wood, John Neale, and Rhett Holden, Hugh E. Weathers, Alden G. Terry, Derek M. Underwood, J. Clint Leach, Aaron Wood, John Stokes, Vanessa Elsalah, Brittany Jeffcoat, and Eva Moore also moved, in the alternative, pursuant to Rule

---

[1] Defendant's last name is spelled "Scrubbs" in the case caption; however, parties agree the correct spelling is "Scruggs." *See* ECF No. 56 at 3 n.1; ECF No. 63 at 1 n.1.

[2] Defendant's last name is spelled "Krutak" in the case caption; however, parties agree the correct spelling is "Krutek." *See* ECF No. 57 at 1 n.1; ECF No. 64 at 1 n.1.

12(e), for a More Definite Statement. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(f) (D.S.C.).

## I.    <u>BACKGROUND</u>

Plaintiff filed his original Complaint on September 16, 2022. ECF No. 1. That Complaint totaled 92 pages with 256 separate paragraphs and dozens of exhibits consisting of documents, photographs, transcripts, letters, emails, or selected segments thereof, all of which were copied and pasted or otherwise embedded within the Complaint. Plaintiff pled four separate causes of action against a total of 33 different individual Defendants, including employees of the South Carolina Attorney General's Office ("SCAG"), the South Carolina State Law Enforcement Division ("SLED"), the South Carolina Department of Agriculture ("SC Dep't. Agric."), the Dorchester County Sheriff's Office, and the South Carolina Forestry Commission.

In response to the Complaint, all Defendants filed Motions to Dismiss. Some Defendants sought dismissal pursuant to Rule 12(b) for failure to state a claim. *See* ECF Nos. 22, 24, 25, 26. Other Defendants moved for dismissal pursuant to Rule 8(a) or, in the alternative, for a more definite statement pursuant to Rule 12(e). *See* ECF Nos. 23, 27, 39. Plaintiff filed Responses in Opposition to the Motions, arguing that the Complaint was sufficient to state the alleged causes of action and did not violate Rule 8. ECF Nos. 31, 32, 33, 34, 40. In the alternative, Plaintiff asked the Court for leave to amend the Complaint to correct any deficiencies. *See* ECF Nos. 31 at 16–19; 32 at 10; 33 at 13; 34 at 11; 40 at 14.

By Order filed February 3, 2023, the undersigned granted Plaintiff leave to amend his Complaint so that he could cure pleading defects and file an Amended Complaint that complied with Rule 8(a) of the Federal Rules of Civil Procedure. ECF No. 47. In addition, the Court

instructed Plaintiff that evidentiary matters should not be embedded in the Amended Complaint and to limit the Amended Complaint to no more than 45 pages in length.

Plaintiff filed his Amended Complaint on February 24, 2023. ECF No. 49. The Amended Complaint totals 44 pages with 185 separate paragraphs. Plaintiff names 32 individual Defendants, specifically: Alan M. Wilson, W. Jeffrey Young, Robert D. Cook, Emory Smith, Jr., David S. Jones, T. Stephen Lynch, Harley L. Kirkland, Wesley Vorberger, and Robert Kittle ("SCAG Defendants"); Jonathan Calore, Charlie Scruggs, and Wayne Eaddy ("Forestry Defendants"); L.C. Knight, Ray Dixson, Frank Thompson, and Robert Krutek ("Dorchester Defendants"); Mark A. Keel, Adam L. Whitsett, Frank O'Neal, Jason Wells, Glenn Wood, John Neale, and Rhett Holden ("SLED Defendants"); Hugh E. Weathers, Alden G. Terry, Derek M. Underwood, J. Clint Leach, Aaron Wood, John Stokes, Vanessa Elsalah, Brittany Jeffcoat, and Eva Moore ("SC Dep't. Agric. Defendants").

The Amended Complaint alleges six causes of action: (1) a § 1983 cause of action against the SLED and Dorchester Defendants for violation of Plaintiff's due process rights under the Fourth, Eighth, and Fourteenth Amendments for false arrest/imprisonment; (2) a § 1983 cause of action against the SCAG, SLED, SC Dep't. Agric., and Forestry Defendants for violation of Plaintiff's due process rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments for unreasonable seizure and unlawful taking; (3) a § 1983 cause of action against the SLED and SC Dep't. Agric. Defendants for violation of Plaintiff's due process rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments for malicious prosecution; (4) a § 1983 cause of action against all Defendants for violation of Plaintiff's due process rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments for bystander liability for failure to protect Plaintiff; (5) a § 1983 cause of action against all supervisory Defendants for violation of Plaintiff's due process rights

under the Fourth, Fifth, Eighth, and Fourteenth Amendments for supervisory liability; and (6) a § 1983 cause of action against all Defendants for a conspiracy to violate Plaintiff's due process rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. ECF No. 49 at 35–44.

## II.    <u>LEGAL STANDARD</u>

Defendants move for dismissal of the Amended Complaint pursuant to Rules 8, 10, and 12(b)(6) of the Federal Rules of Civil Procedure. ECF Nos. 55, 56, 57, 58, 59. In the alternative, the majority of Defendants move for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant will have "fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). Under Rule 8(d), "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "This requires that the pleadings contain the basis for a plaintiff's claim *against each defendant.*" *vonRosenberg v. Lawrence*, No. CV 2:13-587-RMG, 2018 WL 4039324, at *5 (D.S.C. Aug. 23, 2018) (cleaned up) (emphasis in original). As to § 1983 claims, the Supreme Court has made clear that a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Rule 10(b) of the Federal Rules of Civil Procedure requires that parties state claims or defenses "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "Rules 8 and 10 serve the purposes of (1) giving the opposing party fair notice of what the claims are and the grounds upon which they [rest], and

(2) framing the issues and providing the basis for informed pretrial proceedings." *In re SCANA Corp. Sec. Litig.*, No. CV 3:17-2616-MBS, 2019 WL 1427443, at *6 (D.S.C. Mar. 29, 2019) (citation omitted).

In other words, Rules 8 and 10 prohibit "shotgun pleading." *See id.* at *5. A complaint is a shotgun pleading if it is one that "fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading or one in which it is virtually impossible to know which allegations of fact are intended to support which claims for relief." *Alexander v. S.C. Dep't of Transportation*, No. CV 3:20-4480-TLW-SVH, 2021 WL 2635446, at *2 (D.S.C. June 25, 2021) (citation and internal quotation marks omitted). "Not only do pleadings of this sort fail to apprise the opposing party of the particular claims against it (and the potential extent of its liability), they also water down the rights of parties to have valid claims litigated efficiently and waste scarce judicial resources." *Id.* (citation and internal quotation marks omitted).

In determining whether to dismiss a complaint under Rule 8(a), "courts may consider various factors, such as the length and complexity of the complaint, whether the complaint was clear enough to allow defendants to know how to defend themselves against the charges, and whether plaintiff was represented by counsel." *Holt v. Stroman*, No. 3:12-CV-03539-JMC, 2015 WL 1061990, at *2 (D.S.C. Mar. 11, 2015) (citing *Sewraz v. Long*, 407 Fed. App'x 718, 718–19 (4th Cir. 2011)), *aff'd,* 648 F. App'x 367 (4th Cir. 2016).

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 531 (D.S.C. 2014) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)); *see Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or

the applicability of [affirmative] defenses."). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not analogous to a "probability requirement," rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Rule 12(e) must be read in conjunction with Rule 8. *Hodgson v. Va. Bapt. Hosp., Inc.*, 482 F.2d 821, 822 (4th Cir. 1973). As already noted, Rule 8 establishes the general rules for pleading, and makes three elements mandatory in a complaint: (1) a statement of the grounds upon which the court's jurisdiction depends, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment. *Id.* "A Rule 12(e) motion is typically 'designed to strike at unintelligibility rather than simple want of detail.'" *Howes v. SN Servicing Corp.*, Civil Action No. CCB-20-670, 2021 WL 878354, at *2 (D. Md. Mar. 9, 2021) (quoting *Gladney v. Am. Western Home Ins. Co.*, No. ELH-15-1559, 2015 WL 5009088, at *5 (D. Md. Aug. 20, 2015)). Consequently, a "Rule 12(e) motion has a higher standard than that of a Rule 12(b)(6) motion in that a pleading which satisfies the liberal pleading standards above described may be nonetheless appropriately challenged as overly vague with a Rule 12(e) motion." *White v. Homer Laughlin China Co.*, Civil Action No.

5:18CV151, 2019 WL 2518138, at *2 (N.D.W. Va. Jun. 18, 2019) (citing 5B Wright & Miller, *Federal Practice and Procedure* § 1356).

### III.     DISCUSSION

Defendants generally seek dismissal of the Amended Complaint for failure to adhere to the pleading requirements of Rules 8 and 10, for failure to adhere to this Court's February 3 Order, or for failure to state a claim pursuant to Rule 12(b)(6). ECF Nos. 55, 56, 57, 58, 59. In the alternative, some Defendants move pursuant to Rule 12(e) for a more definite statement and request this Court to issue another Order directing Plaintiff to file a Second Amended Complaint that adheres to Rule 8. ECF Nos. 56, 57, 58.

Plaintiff generally argues that his Amended Complaint complies with Rule 8 and this Court's February 3 Order. He argues that this case is not "a typical § 1983 case" and maintains that the facts and legal claims are multi-faceted and complex. *See, e.g.*, ECF No. 61 at 2. Plaintiff argues that his Amended Complaint sufficiently states a claim for the various causes of action, that it provides specific factual allegations that support those causes of action, and that Defendants have sufficient notice of the claims against them. The Court disagrees with Plaintiff.

Here, Plaintiff's Amended Complaint fails to meet the pleading requirements of Rule 8. As an initial matter, the Amended Complaint totals 44 pages with 185 separate paragraphs and alleges six causes of action (instead of the previous four) against a total of 32 individual Defendants. It still contains a vast array of information, including legislative history (*see, e.g.*, ECF No. 49, ¶¶ 14–17), statutory and constitutional text and legal conclusions (*see, e.g.*, ECF No. 49, ¶¶ 16, 25–26, 142–44), and the details of discovery disputes between counsel in state civil actions (*see, e.g.*, ECF No. 49, ¶¶ 82–98, 107–09). While it appears Plaintiff has removed some evidentiary matters—namely various pictures/screenshots previously pasted in the original Complaint—

7
**JA296**

Plaintiff has still embedded evidentiary matters in his Amended Complaint.[3] *See* ECF No. 49. In essence, although Plaintiff shortened his Amended Complaint to comply with the length limitation from this Court's February 3 Order, he has done little to bring the Amended Complaint in compliance with Rule 8.

Moreover, the Amended Complaint is not clear enough to allow any of the individual Defendants to know how to defend themselves. Indeed, the Amended Complaint repeats most of the deficiencies of the original Complaint and, in adding new causes of action, created more issues.

The problem is evident from examining the six causes of action. The Amended Complaint commingles causes of action and references various sources of rights that Defendants purportedly violated. The first five causes of action are all captioned as "Violation of Due Process" followed by a string cite of multiple amendments to the United States Constitution. The first cause of action cites the Fourth, Eighth, and Fourteenth Amendments. The next four causes of action all cite the Fourth, Fifth, Eighth, and Fourteenth Amendments. The captions commingle such distinct claims as "unreasonable seizure" and "unlawful taking." The body of each of these causes of action likewise cites three or four different amendments in the same count. The sixth cause of action— which was just added—cites five different amendments for a cause of action described as

---

[3] For example, the Amended Complaint continues to incorporate portions of hearings, discovery pleadings, motions, and Orders from Plaintiff's various state court actions against some of these same Defendants. Twenty-one paragraphs specifically pertain to a civil case Plaintiff has filed in Marion County, and touch on subjects including: recitations of hearings, emails between the state court and attorneys, various motions filed by Plaintiff, and allegations of improper discovery procedures by attorneys in that case. Plaintiff also references specific discovery issues in a state court claim filed in Dorchester County stemming from the same arrest at the root of this case (notably, fifty-five paragraphs are under the "Dorchester County State Civil Case" heading, though it does not appear that all those paragraphs necessarily relate to that civil case). The undersigned makes no determination as to whether this information bears on any entitlement to relief in this action; however, its inclusion in this manner runs afoul of this Court's previous instructions and the requirements of Rule 8 for a "short and plain statement of the claim" showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2).

"conspiracy to violate due process rights." In addition to violations to the Federal Constitution, the

causes of action also make repeated references to apparent state law claims under South Carolina

Statutes and the South Carolina Constitution.

The commingling of these causes of action is made more complicated by the minimal

factual allegations within any of the six causes of action, which are pled against a minimum of 17

Defendants for some causes of action and a maximum of all 32 Defendants in others. As a result,

Defendants, and this Court, are left to spend an exorbitant amount of time and effort in guessing

at which allegations are tied to which parties and to which causes of action. For example, in the

first cause of action, Plaintiff maintains that SLED and Dorchester Defendants:

> obtained and executed an arrest warrant versus Pendarvis for a willful violation of
> the HFA, through misleading omissions to the magistrate (specifically that the
> Chief Administrative Judge for the circuit had refused to approve their action),
> while knowingly and intentionally depriving Pendarvis of the protections afforded
> him under HFA and S.C. Cnst (specficially [sic] the 4th, 5th and 8th amendment
> protections of Art.I, Sec.22 S.C. Cnst and his statutory right to a corrective action
> plan being the sole remedy for a negligent violation, pursuant to S.C. Code §46-55-
> 40), without need and in bad faith.

ECF No. 49 ¶ 148. Plaintiff then offers very few facts that fall short of showing how these

Defendants purportedly violated Plaintiff's (1) Federal Constitutional rights, (2) South Carolina

Constitutional rights, or (3) South Carolina Statutory rights. *See* ECF No. 49, ¶ 148. Consequently,

the Amended Complaint "in its present form does not permit the defendants to figure out what

legally sufficient claim [Plaintiff is] making and against whom [he is] making it." *North Carolina*

*v. McGuirt*, 114 F. App'x 555, 559 (4th Cir. 2004).

This shotgun pleading style creates confusion, as noted by the SLED Defendants in moving

to dismiss all claims brought pursuant to the Sixth and Eighth Amendments to the United States

Constitution. ECF No. 58-1 at 9–10. Specifically, the SLED Defendants emphasize they could not

determine what rights they had allegedly violated, noting "Plaintiff has not even pled what rights

under the Sixth Amendment that he claims were infringed, how those rights were infringed, or by

which Defendants." ECF No. 58-1 at 10. Likewise, it was unclear how the Eighth Amendment was

even applicable, "because [Plaintiff] was never a convicted prisoner." ECF No. 58-1 at 10.[4]

In his Response in Opposition, Plaintiff argues that he had sufficiently pled facts to support

a claim under both the Sixth and Eighth Amendments. ECF No. 61 at 10–12. As to the Eighth

Amendment, Plaintiff argues that the "seizing and destroying [of] his property without due process

of law is, at best, an '*excessive fine*' in violation of [] his Eighth Amendment rights." ECF No. 61

at 11 (emphasis added).

As to the Sixth Amendment, Plaintiff argues that his Amended Complaint "pleads

numerous requests by the Plaintiff, to the SLED defendants, invoking his [Sixth] Amendment right

to counsel before that [Eighth] [A]mendment violating 'excessive fine' was imposed and the SLED

defendants willfully and intentionally obstructing the Plaintiff from exercising that right." ECF

No. 61 at 11. Further, for the first time in his Response in Opposition, Plaintiff identifies the factual

allegations that purportedly support his Sixth Amendment claims. *See* ECF No. 61 at 11 n.3 (citing

ECF No. 49, ¶¶ 58–62). Specifically, Plaintiff claims that he was bringing a "right to counsel"

claim based on the allegation that certain SLED Defendants—now identified as Defendants Neale,

O'Neal, and G. Wood—did not permit Plaintiff to call his attorney before or at the time of his

arrest on September 19, 2019. *See* ECF No. 49, ¶¶ 58–62.

As SLED Defendants point out in their Reply, Plaintiff's above clarification illustrates the

very problem with the Amended Complaint. Specifically, there is no mention in the Amended

---

[4] Indeed, Plaintiff vaguely asserts that Defendants were "well aware" of his rights to be free from
cruel and unusual punishment in the First and Second Causes of Action. ECF No. 49, ¶¶ 147, 152.
However, the Eighth Amendment's prohibition against cruel and unusual punishment attaches
after conviction and sentence and, therefore, appears to be inapplicable. *See Ingraham v. Wright*,
430 U.S. 651, 671 n.40 (1977).

Complaint of a violation of the Eighth Amendment's Excessive Fines Clause—in the totality of 44 pages and 185 paragraphs, the words "excessive fine" or "excessive" or "fine" do not appear. Further, the elements of a claim based on a violation of the Excessive Fines Clause are also nowhere to be found in the Amended Complaint. Indeed, Plaintiff appeared to instead invoke the Eighth Amendment's prohibition on *cruel and unusual punishment*, as he vaguely asserted that Defendants were "well aware" of his rights in that regard. *See* ECF No. 49, ¶¶ 147, 152.

The same is true with any claim under the Sixth Amendment. In the Amended Complaint, there is no allegation specifying the provision of the Sixth Amendment on which Plaintiff is basing his claim. The sixth cause of action—which cites five amendments on which that single cause of action is based—makes no mention of the "right to counsel," nor does it identify any factual allegations that could support a claim, nor does it specifically identify which individual Defendants allegedly violated his Sixth Amendment rights. *See* ECF No. 49, ¶¶ 178–85. Indeed, it was not until the Response in Opposition that Plaintiff explained *what* the claim was, identified what *facts* supported that claim, and *specified the individual Defendants* against whom the claim was brought that the semblance of a claim was uncovered. These are all things Plaintiff should have done in amending the original Complaint to bring it in compliance with Rule 8. *See U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud. Federal judges have better things to do[.]").

The above is just one example of the many deficiencies in the Amended Complaint. Indeed, as all Defendants point out in their Motions, there are many other defects that affect all causes of action alleged against all Defendants. The main throughline is that the Amended Complaint frequently fails to connect the actions of various individual Defendants to the causes of action and

fails to explain exactly how each individual Defendant is implicated by Plaintiff's allegations. Consequently, Defendants do not have "fair notice" of the claims against them.[5] *See Twombly*, 550 U.S. at 555. Although there may be facts on which Plaintiff could have stated a claim with respect to the myriad claims, the Amended Complaint as drafted does not readily reveal them.

Finally, this is not a situation where the Amended Complaint was drafted by a pro se litigant who is unfamiliar with Rule 8. Plaintiff is represented by counsel. *See Holt*, 2015 WL 1061990, at *4 ("Here, Plaintiffs have the aid of counsel, and are not navigating unknown legal standards without the guidance of a trained attorney."). Thus, taking all of the above into account, the Court is within its right to recommend dismissal under Rule 8. *See id.* at *2 ("When determining whether a complaint is properly dismissed under Rule 8(a), courts may consider various factors, such as the length and complexity of the complaint, whether the complaint was clear enough to allow defendants to know how to defend themselves against the charges, and whether plaintiff was represented by counsel.").

Nevertheless, although Plaintiff's Amended Complaint is a shotgun pleading, it should not be dismissed with prejudice—as some Defendants urge—without allowing Plaintiff one final opportunity to amend. Indeed, a majority of Defendants have moved, in the alternative, pursuant to Rule 12(e) for an Order instructing Plaintiff to file a Second Amended Complaint.[6] "Rule 12(e)

---

[5] Another example is the fifth cause of action, which purportedly limits that claim against the "supervisory" Defendants of each organization. However, as highlighted by SC Dep't of Ag. Defendants, "Plaintiff went on to list every Defendant from the Department of Agriculture as a 'Supervisory Defendant,'" and, thus, because "Plaintiff has not alleged any actions by any other party from the Department of Agriculture, and it is impossible for each one of these Defendants to be supervisors of one another, Plaintiff has essentially failed to allege even the *existence* of a supervisory relationship on behalf of these Defendants." ECF No. 59-1 at 12 (emphasis in original).

[6] SC Dep't. Agric. Defendants cite Rule 12(e), but they do not alternatively seek an Order instructing Plaintiff to file a Second Amended Complaint. ECF No. 59 at 1. Additionally, SCAG Defendants do not move pursuant to Rule 12(e). *See* ECF No. 55. Nevertheless, the Court construes

motions are particularly useful when addressing so called 'shotgun pleadings,'" as is this case here. *See* 5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1376 (3d ed.).

The Court finds that requiring Plaintiff to file a Second Amended Complaint is in the interest of justice as it will potentially allow for the resolution of this case on the merits. *See Shipp v. Hargan*, No. CV PX-17-3365, 2019 WL 316726, at *3 (D. Md. Jan. 24, 2019) (noting "the Fourth Circuit's strong preference for resolving cases on their merits" and directing a Plaintiff to amend their complaint pursuant to Rule 8), *aff'd,* No. 20-1615, 2023 WL 3172172 (4th Cir. May 1, 2023). Thus, the Court will grant all Defendants' Rule 12(e) Motions.[7] *See Frasier v. McGinley*, No. 2:13-CV-02986-RMG, 2014 WL 5163056, at *6 (D.S.C. Oct. 14, 2014) ("Because the Court finds Rule 12(e) is the proper motion at this time, Plaintiff may amend her Complaint to state the legal grounds on which her § 1983 claim is based and to elaborate on the facts supporting her race discrimination claim."); *see also Hall v. Tyco Int'l Ltd.*, 223 F.R.D. 219, 257 (M.D.N.C. 2004) (converting Defendant's Rule 12(b)(6) motion into a Rule 12(e) motion pursuant to the court's inherent authority because it found "requiring Plaintiff to file a more definite statement is in the interests of justice as it will facilitate the resolution of this issue on the merits"); *Hand v. ABN AMRO Mortg. Grp., Inc.*, No. CV 112-176, 2013 WL 6383128, at *6 (S.D. Ga. Dec. 5, 2013) (noting district courts have a "supervisory obligation to *sua sponte* order repleading pursuant to

---

SC Dep't. Agric Defendants and SCAG Defendants' Motions as seeking, in the alternative, an Order directing Plaintiff to file a Second Amended Complaint pursuant to Rule 12(e). *See Johnson v. Barner*, No. 3:19-CV-01129-JMC, 2020 WL 869962, at *1 (D.S.C. Feb. 21, 2020) ("When a defendant is unclear about the meaning of a particular allegation in the complaint, the proper course of action is not to move to dismiss but to move for a more definite statement." (citation and internal quotation marks omitted)); *Frasier v. McGinley*, No. 2:13-CV-02986-RMG, 2014 WL 5163056, at *6 (D.S.C. Oct. 14, 2014) ("The Court recognizes its inherent authority to convert Defendants' Rule 12(b)(6) motion into one under Rule 12(e)." (cleaned up) (internal quotation marks omitted)).

[7] *See* n.6, *supra.*

Federal Rule of Civil Procedure 12(e) when a shotgun complaint fails to link adequately a cause of action to its factual predicates" (citation omitted)).

### IV.   **CONCLUSION**

For the reasons set forth above, **IT IS ORDERED** that Defendants' Rule 12(e) Motions for a More Definite Statement (ECF Nos. 55, 56, 57, 58, 59) are **GRANTED**, and their alternative motions to dismiss are **HELD IN ABEYANCE**.

Plaintiff is **ORDERED** to file a Second Amended Complaint within fourteen (14) days of this Order, consistent with Federal Rules of Civil Procedure 8(a) and 12(e) and this Court's February 3 Order (ECF No. 47), and addressing the defects discussed herein.

**AND IT IS SO ORDERED.**

Molly H. Cherry
United States Magistrate Judge

August 11, 2023
Charleston, South Carolina

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| John Trenton Pendarvis, | ) | C/A No: 2:22-CV-03142-BHH-MHC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **SECOND AMENDED** |
| | ) | **COMPLAINT** |
| Alan M. Wilson, Mark A. Keel, Hugh E. | ) | **(42 U.S.C. § 1983 *et seq*.)** |
| Weathers, L.C. Knight, W. Jeffrey Young, | ) | **(Jury Trial Demanded)** |
| Robert D. Cook, Emory Smith, Jr., David S. | ) | |
| Jones, T. Stephen Lynch, Harley L. Kirkland, | ) | |
| Wesley Vorberger, Robert Kittle, Adam L. | ) | |
| Whitsett, Frank O'Neal, Jason Wells, Glenn | ) | |
| Wood, John Neale, Rhett Holden, Alden G. | ) | |
| Terry, Derek M. Underwood, J. Clint Leach, | ) | |
| Aaron Wood, John Stokes, Vanessa Elsalah, | ) | |
| Brittany Jeffcoat, Eva Moore, Ray Dixson, | ) | |
| Frank Thompson, Robert Krutek, Jonathan | ) | |
| Calore, Charlie Scruggs, and Wayne Eaddy, | ) | |
| | ) | |
| Defendants. | ) | |

The Plaintiff, by and through his undersigned attorneys and complaining of the Defendants

herein, hereby alleges and pleads the following:

**PRELIMINARY STATEMENT OF CASE, PARTIES & JURISDICTION**

1. Plaintiff John Trenton Pendarvis (Pendarvis) is a citizen and resident of, and the majority of

    events giving rise to this litigation took place in, Dorchester County, South Carolina, within

    the Charleston Division of the District of South Carolina.

2. Pendarvis alleges violations of his constitutional rights by the defendants in their individual

    capacities pursuant 42 U.S.C. §§1983 *et seq.*, for the Defendants' conduct individually and in

    concert with others, under color of state law in falsely arresting Pendarvis, maliciously

    prosecuting him, unlawful seizure and destruction of his property, depriving him of due

1

process, conspiring to do the same, then further conspiring to obstruct justice and deny Pendarvis due process through intentional and willful discovery abuse in state court actions.

3. At all times relevant to this action, all Defendants were acting under the color of state law as agents, employees and/or heads of state governmental agencies. Defendants are being sued for their own individual and personal conduct, their conduct in concert and/or conspiring with others and, for those with supervisory capacity, their supervisory conduct over subordinate defendants.

4. Plaintiff is informed and believes that Alan M. Wilson (WILSON), W. Jeffery Young (YOUNG), Robert D. Cook (COOK), Emory Smith Jr. (SMITH), T. Stephen Lynch (LYNCH), Robert Kittle (KITTLE), David S. Jones (JONES), Harvey K. Kirkland (KIRKLAND), and Wesley Vorberger (VORBERGER), collectively referred to as "SCAG Defendants," are being sued in their individual capacities under 42 U.S.C. §§1983, *et seq*, for their conduct under the color of state law as the head of, supervisory agent/employees and/or agents/employees for SCAG and their efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff.

5. Plaintiff is informed and believes that Mark A. Keel (KEEL), Adam L. Whitsett (WHITSETT), Frank O'Neal (ONEAL), Jason Wells (WELLS), Glenn Wood (GWOOD), John Neale (NEALE), and Rhett Holden (HOLDEN) , collectively referred to as "SLED Defendants" are being sued in their individual capacities under 42 U.S.C. §§1983, *et seq*, for their conduct under the color of state law as the head of, supervisory agent/employees and/or agents/employees for SLED and their efforts to act independently and/or conspire with others to violate the

JA305

Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff.

6. Plaintiff is informed and believes that Hugh E. Weathers (WEATHERS), Alden G. Terry (TERRY), Derek M. Underwood (UNDERWOOD), J. Clint Leach (LEACH), Aaron Wood (AWOOD), John Stokes (STOKES), Vanessah Elsalah (ELSALAH), Brittany Jeffcoat (JEFFCOAT), and Eva Moore (MOORE), collectively referred to as "DAG Defendants," are being sued in their individual capacities under 42 U.S.C. §§1983, *et seq*, for their conduct under the color of state law as the head of, supervisory agent/employees and/or agents/employees for DAG and their efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff.

7. Plaintiff is informed and believes that L.C. Knight (KNIGHT), Ray Dixson (DIXSON), Frank Thompson (THOMPSON), and Robert Krutek (KRUTEK), collectively referred to as "DCSO Defendants," are being sued in their individual capacities under 42 U.S.C. §§1983, *et seq*, for their conduct under the color of state law as the head of, supervisory agent/employees and/or agents/employees for DCSO and their efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff.

8. Plaintiff is informed and believes that Jonathan Calore (CALORE), Charlie Scruggs (SCRUGGS) and Wayne Eaddy (EADDY), collectively referred to as "FORESTRY Defendants," are being sued in their individual capacities under 42 U.S.C. §§1983, *et seq*, for their conduct under the color of state law as the head of, supervisory agent/employees and/or agents/employees for FORESTRY and their efforts to act independently and/or conspire with

3

others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff.

9.  Subject matter jurisdiction is conferred upon the Court by 28 U.S.C.A. §§ 1331, 1367 and 1343.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), (2) & (3).

## NATURE OF ACTION

11. Plaintiff's claims are brought pursuant to 42 U.S.C.A. §§1983, *et seq.*, and the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, for violations of constitutional rights provided by those amendments, rights which were correspondingly protected under the common law, statutory law, and the Constitution of the State of South Carolina. The Plaintiff's claims would specifically include, but not be limited to, claims under 42 U.S.C. §1983 *et seq.*

12. During the time in question, the Plaintiff's Constitutional rights were well established and well known to the Defendants, including and not limited to, the Plaintiff's right to bodily integrity, right to be free from unreasonable searches and seizures, right to Due Process, and all other constitutional established and recognized as arising from the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

13. During the time in question, the Defendants had actual and/or constructive knowledge that their conduct posed an unreasonable risk of Constitutional injury to the Plaintiff and their responses with that knowledge were subjectively and objectively unreasonable regarding the offense(s) as alleged herein; and there is a causal link between their actions and the Constitutional injuries suffered by the Plaintiff.

4

14. Pendarvis is informed and believes that through their conduct documented below the Defendants recklessly, intentionally and willfully violated his constitutional rights as set forth within the causes of action below.

**FOR A FIRST CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF 4TH AND 14TH AMENDMENTS RIGHTS BY DEFENDANTS NEALE, WELLS, ONEAL, WHITSETT, GWOOD, HOLDEN, DIXON, THOMPSON AND KRUTEK)**

15. At all times mentioned herein, these Defendants were acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy.

16. During the time period in question, these Defendants were well aware of Pendarvis' constitutional right under the Fourth Amendment to be secure in his person and effects against unreasonable searches and seizures, with that right not to be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

17. During the time period in question, these Defendants were well aware that the Fourteenth Amendment protected Pendarvis' Fourth Amendment rights from being violated by state actors/conduct such as these Defendants.

18. That these Defendants obtained and executed an arrest warrant against Pendarvis for an alleged willful violation of the South Carolina Hemp Farming Act (HFA), obtained through misleading omissions to the magistrate (specifically that the Chief Administrative Judge for the circuit had refused to approve their action and that did not in any way notify the court that Pendarvis' property would be seized and destroyed), knowing Pendarvis had been and was being intentionally deprived of due process protections afforded him under the law without need and in bad faith.

5

**JA308**

19. Defendant NEALE violated Pendarvis' Fourth Amendment rights by personally obtaining the warrant, formulating the plan to search and seize Pendarvis and his effects, and then actively executing that plan and participating in the unreasonable search and seizure of Pendarvis and his effects, through the displaying and deploying of force to execute the warrant, taking Pendarvis into custody and seizing his effects.

20. Defendant WELLS violated Pendarvis' Fourth Amendment rights by formulating the plan to search and seize Pendarvis and his effects, and then actively executing that plan and participating in the unreasonable search and seizure of Pendarvis and his effects, through the displaying and deploying of force to execute the warrant, taking Pendarvis into custody and seizing his effects.

21. Defendant ONEAL violated Pendarvis' Fourth Amendment rights by formulating the plan to search and seize Pendarvis and his effects, and then actively executing that plan and participating in the unreasonable search and seizure of Pendarvis and his effects, through the displaying and deploying of force to execute the warrant, taking Pendarvis into custody and seizing his effects.

22. Defendant WHITSETT violated Pendarvis' Fourth Amendment rights by formulating the plan to search and seize Pendarvis and his effects.

23. Defendant GWOOD violated Pendarvis' Fourth Amendment rights by formulating the plan to search and seize Pendarvis and his effects, and then actively executing that plan and participating in the unreasonable search and seizure of Pendarvis and his effects, through the displaying and deploying of force to execute the warrant, taking Pendarvis into custody and seizing his effects.

24. Defendant HOLDEN violated Pendarvis' Fourth Amendment rights by executing the plan to search and seize Pendarvis and his effects and actively participating in the unreasonable search and seizure of Pendarvis and his effects, through the displaying and deploying of force to execute the warrant, taking Pendarvis into custody and seizing his effects.

25. Defendant DIXON violated Pendarvis' Fourth Amendment rights by executing the plan to search and seize Pendarvis and his effects and actively participating in the unreasonable search and seizure of Pendarvis and his effects, through the displaying and deploying of force to execute the warrant, taking Pendarvis into custody and seizing his effects.

26. Defendant THOMPSON violated Pendarvis' Fourth Amendment rights by executing the plan to search and seize Pendarvis and his effects and actively participating in the unreasonable search and seizure of Pendarvis and his effects, through the displaying and deploying of force to execute the warrant, taking Pendarvis into custody and seizing his effects.

27. Defendant KRUTEK violated Pendarvis' Fourth Amendment rights by executing the plan to search and seize Pendarvis and his effects and actively participating in the unreasonable search and seizure of Pendarvis and his effects, through the displaying and deploying of force to execute the warrant, taking Pendarvis into custody and seizing his effects.

28. As a direct and proximate result of these defendants conduct, Pendarvis suffered deprivations of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

29. At all times relevant to this action, these defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff.

30. The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional rights through the acts and omissions of these defendants.

7

**FOR A SECOND CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF 5TH, 8th AND 14TH AMENDMENTS RIGHTS BY DEFENDANTS**
**WEATHERS, TERRY, UNDERWOOD, ELSALAH, STOKES, ONEAL, WELLS,**
**GWOOD, NEALE, HOLDEN, DIXSON, THOMPSON, KRUTEK, CALORE, SCRUGGS,**
**EADDY, UNDERWOOD, WHITSETT, COOK, JONES AND KEEL)**

31. At all times mentioned herein, these Defendants were acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy.

32. During the time period in question, these Defendants were well aware of Pendarvis' constitutional right under the Fifth Amendment to not be deprived of his life, liberty or property, without due process of law.

33. During the time period in question, these Defendants were well aware of Pendarvis' constitutional right under the Eighth Amendment to not be subjected to excessive fines.

34. During the time period in question, these Defendants were well aware that the Fourteenth Amendment protected Pendarvis' Fifth and Eighth Amendment rights from being violated by state actors/conduct such as these Defendants.

35. Defendant WEATHERS violated Pendarvis' Fifth and Eighth Amendment rights by participating in finding Pendarvis' alleged violation of the HFA was "willful" in a process that this defendant knew denied Pendarvis his due process rights under the Fifth Amendment and knowing that finding was going to be used to not only arrest Pendarvis, but to also seize and destroy Pendarvis' property without any due process, the practical effect of which would be the destruction of property with significant monetary value, thus violating Pendarvis' Eighth Amendment right against excessive fines.

36. Defendant TERRY violated Pendarvis' Fifth and Eighth Amendment rights by participating in finding Pendarvis' alleged violation of the HFA was "willful" in a process that this defendant knew denied Pendarvis his due process rights under the Fifth Amendment and knowing that

8

**JA311**

finding was going to be used to not only arrest Pendarvis, but to also seize and destroy Pendarvis' property without any due process, the practical effect of which would be the destruction of property with significant monetary value, thus violating Pendarvis' Eighth Amendment right against excessive fines.

37. Defendant UNDERWOOD violated Pendarvis' Fifth and Eighth Amendment rights by participating in finding Pendarvis' alleged violation of the HFA was "willful" in a process that this defendant knew denied Pendarvis his due process rights under the Fifth Amendment and knowing that finding was going to be used to not only arrest Pendarvis, but to also seize and destroy Pendarvis' property without any due process, the practical effect of which would be the destruction of property with significant monetary value, thus violating Pendarvis' Eighth Amendment right against excessive fines.

38. Defendant ELSALAH violated Pendarvis' Fifth and Eighth Amendment rights by participating in finding Pendarvis' alleged violation of the HFA was "willful" in a process that this defendant knew denied Pendarvis his due process rights under the Fifth Amendment and knowing that finding was going to be used to not only arrest Pendarvis, but to also seize and destroy Pendarvis' property without any due process, the practical effect of which would be the destruction of property with significant monetary value, thus violating Pendarvis' Eighth Amendment right against excessive fines.

39. Defendant STOKES violated Pendarvis' Fifth and Eighth Amendment rights by participating in finding Pendarvis' alleged violation of the HFA was "willful" in a process that this defendant knew denied Pendarvis his due process rights under the Fifth Amendment and knowing that finding was going to be used to not only arrest Pendarvis, but to also seize and destroy Pendarvis' property without any due process, the practical effect of which would be the

9

destruction of property with significant monetary value, thus violating Pendarvis' Eighth Amendment right against excessive fines. Defendant STOKES also participated in the seizing and destruction of Pendarvis' property in a manner denying Pendarvis his due process rights under the Fifth Amendment.

40. Defendant ONEAL violated Pendarvis' Fifth and Eighth Amendment rights by participating in the arrest of Pendarvis and the seizure and destruction of his property without due process in violation of Pendarvis' Fifth Amendment rights and in the destruction of Pendarvis' property with significant monetary value, also violated Pendarvis' Eighth Amendment right against excessive fines.

41. Defendant WELLS violated Pendarvis' Fifth and Eighth Amendment rights by participating in the arrest of Pendarvis and the seizure and destruction of his property without due process in violation of Pendarvis' Fifth Amendment rights and in the destruction of Pendarvis' property with significant monetary value, also violated Pendarvis' Eighth Amendment right against excessive fines.

42. Defendant GWOOD violated Pendarvis' Fifth and Eighth Amendment rights by participating in the arrest of Pendarvis and the seizure and destruction of his property without due process in violation of Pendarvis' Fifth Amendment rights and in the destruction of Pendarvis' property with significant monetary value, also violated Pendarvis' Eighth Amendment right against excessive fines.

43. Defendant NEALE violated Pendarvis' Fifth and Eighth Amendment rights by participating in the arrest of Pendarvis and the seizure and destruction of his property without due process in violation of Pendarvis' Fifth Amendment rights and in the destruction of Pendarvis' property

10

**JA313**

with significant monetary value, also violated Pendarvis' Eighth Amendment right against excessive fines.

44. Defendant HOLDEN violated Pendarvis' Fifth and Eighth Amendment rights by participating in the arrest of Pendarvis and the seizure and destruction of his property without due process in violation of Pendarvis' Fifth Amendment rights and in the destruction of Pendarvis' property with significant monetary value, also violated Pendarvis' Eighth Amendment right against excessive fines.

45. Defendant DIXSON violated Pendarvis' Fifth and Eighth Amendment rights by participating in the arrest of Pendarvis and the seizure and destruction of his property without due process in violation of Pendarvis' Fifth Amendment rights and in the destruction of Pendarvis' property with significant monetary value, also violated Pendarvis' Eighth Amendment right against excessive fines.

46. Defendant THOMPSON violated Pendarvis' Fifth and Eighth Amendment rights by participating in the arrest of Pendarvis and the seizure and destruction of his property without due process in violation of Pendarvis' Fifth Amendment rights and in the destruction of Pendarvis' property with significant monetary value, also violated Pendarvis' Eighth Amendment right against excessive fines.

47. Defendant KRUTEK violated Pendarvis' Fifth and Eighth Amendment rights by participating in the arrest of Pendarvis and the seizure and destruction of his property without due process in violation of Pendarvis' Fifth Amendment rights and in the destruction of Pendarvis' property with significant monetary value, also violated Pendarvis' Eighth Amendment right against excessive fines.

11

48. Defendant CALORE violated Pendarvis' Fifth and Eighth Amendment rights by participating in the seizure and destruction of his property without due process in violation of Pendarvis' Fifth Amendment rights and in the destruction of Pendarvis' property with significant monetary value, also violated Pendarvis' Eighth Amendment right against excessive fines, by approving the involvement of DAG personnel and equipment to seize and destroy Pendarvis' property.

49. Defendant SCRUGGS violated Pendarvis' Fifth and Eighth Amendment rights by participating in the seizure and destruction of his property without due process in violation of Pendarvis' Fifth Amendment rights and in the destruction of Pendarvis' property with significant monetary value, also violated Pendarvis' Eighth Amendment right against excessive fines, by operating the DAG equipment to seize and destroy Pendarvis' property.

50. Defendant EADDY violated Pendarvis' Fifth and Eighth Amendment rights by participating in the seizure and destruction of his property without due process in violation of Pendarvis' Fifth Amendment rights and in the destruction of Pendarvis' property with significant monetary value, also violated Pendarvis' Eighth Amendment right against excessive fines, by operating the DAG equipment to seize and destroy Pendarvis' property.

51. Defendant UNDERWOOD violated Pendarvis' Fifth and Eighth Amendment rights by participating in finding Pendarvis' alleged violation of the HFA was "willful" in a process that this defendant knew denied Pendarvis his due process rights under the Fifth Amendment and knowing that finding was going to be used to not only arrest Pendarvis, but to also seize and destroy Pendarvis' property without any due process, the practical effect of which would be the destruction of property with significant monetary value, thus violating Pendarvis' Eighth Amendment right against excessive fines. Defendant UNDERWOOD further violated

12

Pendarvis' Fifth and Eigth Amendment right by also participating in the generation of last minute legal cover in an effort to overcome the denial of Pendarvis' Fifth Amendment due process rights these defendants knew they were engaging in, the purpose of which was to seize and destroy Pendarvis' property with significant monetary value, thus violating Pendarvis' Eighth Amendment right against excessive fines.

52. Defendant WHITSETT violated Pendarvis' Fifth and Eighth Amendment rights by participating in the generation of last minute legal cover in an effort to overcome the denial of Pendarvis' Fifth Amendment due process rights these defendants knew they were engaging in, the purpose of which was to seize and destroy Pendarvis' property with significant monetary value, thus violating Pendarvis' Eighth Amendment right against excessive fines.

53. Defendant COOK violated Pendarvis' Fifth and Eighth Amendment rights by participating in the generation of last minute legal cover in an effort to overcome the denial of Pendarvis' Fifth Amendment due process rights these defendants knew they were engaging in, the purpose of which was to seize and destroy Pendarvis' property with significant monetary value, thus violating Pendarvis' Eighth Amendment right against excessive fines.

54. Defendant JONES violated Pendarvis' Fifth and Eighth Amendment rights by participating in the generation of last minute legal cover in an effort to overcome the denial of Pendarvis' Fifth Amendment due process rights these defendants knew they were engaging in, the purpose of which was to seize and destroy Pendarvis' property with significant monetary value, thus violating Pendarvis' Eighth Amendment right against excessive fines

55. Defendant KEEL violated Pendarvis' Fifth and Eighth Amendment rights by participating in the generation of last minute legal cover in an effort to overcome the denial of Pendarvis' Fifth Amendment due process rights these defendants knew they were engaging in, the purpose of

13

which was to seize and destroy Pendarvis' property with significant monetary value, thus violating Pendarvis' Eighth Amendment right against excessive fines.

56. As a direct and proximate result of these defendants conduct, Pendarvis suffered deprivations of his rights secured by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

57. At all times relevant to this action, these defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff.

58. The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional rights through the acts and omissions of these defendants.

**FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF 4th AND 14TH AMENDMENTS AGAINST DEFENDANTS**
**WEATHERS, TERRY, UNDERWOOD, LEACH, AWOOD, STOKES, MOORE,**
**ELSALAH, JEFFCOAT, KEEL, WHITSETT, ONEAL, WELLS, GWOOD AND NEALE)**

59. At all times mentioned herein, these Defendants were acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy.

60. During the time period in question, these Defendants were well aware of Pendarvis' constitutional right under the Fourth Amendment to be free from unreasonable searches and seizures and to not be deprived of due process of law, which includes the right to be free from malicious prosecution.

61. During the time period in question, these Defendants were well aware that the Fourteenth Amendment protected Pendarvis' Fourth Amendment rights from being violated by state actors/conduct such as these Defendants.

62. That these Defendants initiated or caused to be continued a criminal action against Pendarvis.

63. That the criminal action against Pendarvis was ended in his favor.

14

**JA317**

64. That there was no probable cause to initiate and/or to continue the criminal action against Pendarvis.

65. That these Defendants acted maliciously.

66. That Pendarvis suffered a deprivation of liberty consistent with the concept of siezure as a consequences of these Defendants' conduct.

67. Defendant WEATHERS violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in finding Pendarvis' alleged violation of the HFA was "willful" in a process that this defendant knew denied Pendarvis his due process rights and knowing that finding was going to be used to arrest and initiate criminal process against Pendarvis. Defendant WEATHERS further violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in the gathering of evidence/information to further the criminal process and/or withholding evidence/information from being produced to Pendarvis.

68. Defendant TERRY violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in finding Pendarvis' alleged violation of the HFA was "willful" in a process that this defendant knew denied Pendarvis his due process rights and knowing that finding was going to be used to arrest and initiate criminal process against Pendarvis. Defendant TERRY further violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in the gathering of evidence/information to further the criminal process and/or withholding evidence/information from being produced to Pendarvis.

69. Defendant UNDERWOOD violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in finding Pendarvis' alleged violation of the HFA was "willful" in a process that this defendant knew denied Pendarvis his due process rights and

knowing that finding was going to be used to arrest and initiate criminal process against Pendarvis. Defendant UNDERWOOD further violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in the gathering of evidence/information to further the criminal process and/or withholding evidence/information from being produced to Pendarvis.

70. Defendant LEACH violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in finding Pendarvis' alleged violation of the HFA was "willful" in a process that this defendant knew denied Pendarvis his due process rights and knowing that finding was going to be used to arrest and initiate criminal process against Pendarvis. Defendant LEACH further violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in the gathering of evidence/information to further the criminal process and/or withholding evidence/information from being produced to Pendarvis.

71. Defendant AWOOD violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in finding Pendarvis' alleged violation of the HFA was "willful" in a process that this defendant knew denied Pendarvis his due process rights and knowing that finding was going to be used to arrest and initiate criminal process against Pendarvis. Defendant AWOOD further violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in the gathering of evidence/information to further the criminal process and/or withholding evidence/information from being produced to Pendarvis.

72. Defendant STOKES violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in finding Pendarvis' alleged violation of the HFA was "willful" in a process that this defendant knew denied Pendarvis his due process rights and knowing that finding was going to be used to arrest and initiate criminal process against Pendarvis.

Defendant STOKES further violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in the gathering of evidence/information to further the criminal process and/or withholding evidence/information from being produced to Pendarvis.

73. Defendant MOORE violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in finding Pendarvis' alleged violation of the HFA was "willful" in a process that this defendant knew denied Pendarvis his due process rights and knowing that finding was going to be used to arrest and initiate criminal process against Pendarvis. Defendant MOORE further violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in the gathering of evidence/information to further the criminal process and/or withholding evidence/information from being produced to Pendarvis.

74. Defendant ELSALAH violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in finding Pendarvis' alleged violation of the HFA was "willful" in a process that this defendant knew denied Pendarvis his due process rights and knowing that finding was going to be used to arrest and initiate criminal process against Pendarvis. Defendant ELSALAH further violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in the gathering of evidence/information to further the criminal process and/or withholding evidence/information from being produced to Pendarvis.

75. Defendant JEFFCOAT violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in finding Pendarvis' alleged violation of the HFA was "willful" in a process that this defendant knew denied Pendarvis his due process rights and knowing that finding was going to be used to arrest and initiate criminal process against Pendarvis. Defendant JEFFCOAT further violated Pendarvis' Fourth Amendment right to be free from

17

malicious prosecution by participating in the gathering of evidence/information to further the criminal process and/or withholding evidence/information from being produced to Pendarvis.

76. Defendant KEEL violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in initiating/continuing criminal process against Pendarvis and participating in the withholding evidence/information from being produced to Pendarvis.

77. Defendant WHITSETT violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in initiating/continuing criminal process against Pendarvis and participating in the withholding evidence/information from being produced to Pendarvis.

78. Defendant ONEAL violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in initiating/continuing criminal process against Pendarvis and participating in the gathering of evidence/information to further the criminal process and/or withholding evidence/information from being produced to Pendarvis..

79. Defendant WELLS violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in initiating/continuing criminal process against Pendarvis and participating in the gathering of evidence/information to further the criminal process and/or withholding evidence/information from being produced to Pendarvis..

80. Defendant GWOOD violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in initiating/continuing criminal process against Pendarvis and participating in the gathering of evidence/information to further the criminal process and/or withholding evidence/information from being produced to Pendarvis..

81. Defendant NEALE violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in initiating/continuing criminal process against Pendarvis and

18

**JA321**

participating in the gathering of evidence/information to further the criminal process and/or withholding evidence/information from being produced to Pendarvis..

82. At all times relevant to this action, these defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff.

83. The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional rights through the acts and omissions of these defendants.

**FOR A FOURTH CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(BYSTANDER LIABILITY FOR FAILURE TO PROTECT THE PLAINTIFF FROM**
**CONSTITUTIONAL VIOLATIONS OF PLAINTIFF'S FOURTH, FIFTH, EIGHTH**
**AND FOURTEENTH AMENDMENT RIGHTS BY DEFENDANTS WILSON, YOUNG,**
**COOK, SMITH, LYNCH, KITTLE, JONES, VORBERGER, KEEL, WHITSETT,**
**WEATHERS AND UNDERWOOD)**

84. At all times mentioned herein, these Defendants were acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy.

85. During the time period in question, these Defendants were well aware of Pendarvis' constitutional right under the Fourth Amendment to be free from unreasonable searches and seizures and to not be deprived of due process of law, which includes the right to be free from malicious prosecution.

86. During the time period in question, these Defendants were well aware of Pendarvis' constitutional right under the Fifth Amendment to not be deprived of his life, liberty or property, without due process of law.

87. During the time period in question, these Defendants were well aware of Pendarvis' constitutional right under the Eighth Amendment to not be subjected to excessive fines.

19

**JA322**

88. During the time period in question, these Defendants were well aware that the Fourteenth Amendment protected Pendarvis' Fourth, Fifth and Eighth Amendment rights from being violated by state actors/conduct such as these Defendants.

89. During the time period in question, the Defendants were well aware that state actors may be liable for constitutionally violative conduct of another if they know that a fellow state actor is violating an individual's constitutional rights; have a reasonable opportunity to prevent the harm; and chose not to act.

90. Pendarvis was harmed and suffered injury in violation of his Fourth, Fifth, Eighth and Fourteenth Amendments rights through the acts and omissions of the defendants, as described above, who were at all times acting under the color or pretense of South Carolina State law, customs, practices, usage and/or policy.

91. Defendant WILSON violated Pendarvis' Fourth, Fifth and Eighth amendment rights by knowing, or should have known, that the basis for Pendarvis' arrest and/or the seizure/destruction of Pendarvis' hemp crop and/or the criminal process instituted/continued against Pendarvis' violated Pendarvis Fourth, Fifth and Eighth amendment rights. Specifically, WILSON knew or should have known that Pendarvis' had been/was being denied due process on the basis of opinions sought from his office, opinions WILSON participated in generating and/or providing and/or defending.

92. Defendant YOUNG violated Pendarvis' Fourth, Fifth and Eighth amendment rights by knowing, or should have known, that the basis for Pendarvis' arrest and/or the seizure/destruction of Pendarvis' hemp crop and/or the criminal process instituted/continued against Pendarvis' violated Pendarvis Fourth, Fifth and Eighth amendment rights. Specifically, YOUNG knew or should have known that Pendarvis' had been/was being denied due process

20

**JA323**

on the basis of opinions sought from his office, opinions YOUNG participated in generating and/or providing and/or defending.

93. Defendant COOK violated Pendarvis' Fourth, Fifth and Eighth amendment rights by knowing, or should have known, that the basis for Pendarvis' arrest and/or the seizure/destruction of Pendarvis' hemp crop and/or the criminal process instituted/continued against Pendarvis' violated Pendarvis Fourth, Fifth and Eighth amendment rights. Specifically, COOK knew or should have known that Pendarvis' had been/was being denied due process on the basis of opinions sought from his office, opinions COOK participated in generating and/or providing and/or defending.

94. Defendant SMITH violated Pendarvis' Fourth, Fifth and Eighth amendment rights by knowing, or should have known, that the basis for Pendarvis' arrest and/or the seizure/taking of Pendarvis' hemp crop and/or the criminal process instituted/continued against Pendarvis' violated Pendarvis Fourth, Fifth and Eighth amendment rights. Specifically, SMITH knew or should have known that Pendarvis' had been/was being denied due process on the basis of opinions sought from his office, opinions SMITH participated in generating and/or providing and/or defending.

95. Defendant LYNCH violated Pendarvis' Fourth, Fifth and Eighth amendment rights by knowing, or should have known, that the basis for Pendarvis' arrest and/or the seizure/taking of Pendarvis' hemp crop and/or the criminal process instituted/continued against Pendarvis' violated Pendarvis Fourth, Fifth and Eighth amendment rights. Specifically, LYNCH knew or should have known that Pendarvis' had been/was being denied due process on the basis of opinions sought from his office, opinions LYNCH participated in generating and/or providing and/or defending.

21

**JA324**

96. Defendant KITTLE violated Pendarvis' Fourth, Fifth and Eighth amendment rights by knowing, or should have known, that the basis for Pendarvis' arrest and/or the seizure/taking of Pendarvis' hemp crop and/or the criminal process instituted/continued against Pendarvis' violated Pendarvis Fourth, Fifth and Eighth amendment rights. Specifically, KITTLE knew or should have known that Pendarvis' had been/was being denied due process on the basis of opinions sought from his office, opinions KITTLE participated in generating and/or providing and/or defending.

97. Defendant JONES violated Pendarvis' Fourth, Fifth and Eighth amendment rights by knowing, or should have known, that the basis for Pendarvis' arrest and/or the seizure/taking of Pendarvis' hemp crop and/or the criminal process instituted/continued against Pendarvis' violated Pendarvis Fourth, Fifth and Eighth amendment rights. Specifically, JONES knew or should have known that Pendarvis' had been/was being denied due process on the basis of opinions sought from his office, opinions JONES participated in generating and/or providing and/or defending.

98. Defendant VORBERGER violated Pendarvis' Fourth, Fifth and Eighth amendment rights by knowing, or should have known, that the basis for Pendarvis' arrest and/or the seizure/taking of Pendarvis' hemp crop and/or the criminal process instituted/continued against Pendarvis' violated Pendarvis Fourth, Fifth and Eighth amendment rights. Specifically, VORBERGER knew or should have known that Pendarvis' had been/was being denied due process on the basis of opinions sought from his office, opinions VORBERGER participated in generating and/or providing and/or defending.

99. Defendant KEEL violated Pendarvis' Fourth, Fifth and Eighth amendment rights by knowing, or should have known, that the basis for Pendarvis' arrest and/or the seizure/taking of

22

**JA325**

Pendarvis' hemp crop and/or the criminal process instituted/continued against Pendarvis'
violated Pendarvis Fourth, Fifth and Eighth amendment rights. Specifically, KEEL knew or
should have known that Pendarvis' had been/was being denied due process on the basis of
knowing both the Chief Administrative Judge for the Circuit and the S.C. Attorney General
had advised/requested/suggested Pendarvis' constitutional right be protected by virtue of a
hearing and KEEL specifically pursued a course of conduct to deny Pendarvis those
protections.

100.    Defendant WHITSETT violated Pendarvis' Fourth, Fifth and Eighth amendment rights by
knowing, or should have known, that the basis for Pendarvis' arrest and/or the seizure/taking
of Pendarvis' hemp crop and/or the criminal process instituted/continued against Pendarvis'
violated Pendarvis Fourth, Fifth and Eighth amendment rights. Specifically, WHITSETT knew
or should have known that Pendarvis' had been/was being denied due process on the basis of
knowing both the Chief Administrative Judge for the Circuit and the S.C. Attorney General
had advised/requested/suggested Pendarvis' constitutional right be protected by virtue of a
hearing and WHITSETT specifically pursued a course of conduct to deny Pendarvis those
protections.

101.    Defendant WEATHERS violated Pendarvis' Fourth, Fifth and Eighth amendment rights
by knowing, or should have known, that the basis for Pendarvis' arrest and/or the
seizure/taking of Pendarvis' hemp crop and/or the criminal process instituted/continued against
Pendarvis' violated Pendarvis Fourth, Fifth and Eighth amendment rights. Specifically,
WEATHERS knew or should have known that Pendarvis' had been/was being denied due
process on the basis of knowing DAG's finding of a willful violation had denied due process.

23

**JA326**

Despite knowing that, WEATHERS specifically allowed all the subsequent harmful conduct that flowed from that finding.

102.    Defendant UNDERWOOD violated Pendarvis' Fourth, Fifth and Eighth amendment rights by knowing, or should have known, that the basis for Pendarvis' arrest and/or the seizure/taking of Pendarvis' hemp crop and/or the criminal process instituted/continued against Pendarvis' violated Pendarvis Fourth, Fifth and Eighth amendment rights. Specifically, UNDERWOOD knew or should have known that Pendarvis' had been/was being denied due process on the basis of knowing DAG's finding of a willful violation had denied due process. Despite knowing that, UNDERWOOD specifically allowed all the subsequent harmful conduct that flowed from that finding.

103.    At all times relevant to this action, these defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff.

104.    The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional rights through the acts and omissions of these defendants.

### FOR A FIFTH CAUSE OF ACTION
### VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983
**(SUPERVISOR LIABILITY FOR CONSTITUTIONAL VIOLATIONS OF PLAINTIFF'S FOURTH, FIFTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS BY DEFENDANTS WILSON, KEEL, WEATHERS , KNIGHT AND CALORE)**

105.    At all times mentioned herein, these Defendants were acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy.

106.    During the time period in question, these Defendants were well aware of Pendarvis' constitutional right under the Fourth Amendment to be free from unreasonable searches and seizures and to not be deprived of due process of law, which includes the right to be free from malicious prosecution.

107.    During the time period in question, these Defendants were well aware of Pendarvis'
constitutional right under the Fifth Amendment to not be deprived of his life, liberty or
property, without due process of law.

108.    During the time period in question, these Defendants were well aware of Pendarvis'
constitutional right under the Eighth Amendment to not be subjected to excessive fines.

109.    During the time period in question, these Defendants were well aware that the Fourteenth
Amendment protected Pendarvis' Fourth, Fifth and Eighth Amendment rights from being
violated by state actors/conduct such as these Defendants.

110.    During the time period in question, these Defendants were well aware that of their duty to
adequately train and/or supervise their subordinates to the rights of persons in similar situations
to the Plaintiff.

111.    Pendarvis was harmed and suffered injury in violation of his Fourth, Fifth, Eighth and
Fourteenth Amendments rights through the acts and omissions of the defendants, as described
above, who were at all times acting as subordinates of these Defendants under the color or
pretense of South Carolina State law, customs, practices, usage and/or policy.

112.    Defendant WILSON had duty to supervise YOUNG, COOK, SMITH, LYNCH, KITTLE,
JONES, KIRKLAND and VORBERGER, which included not allowing his office's opinions
to be edited/changed at the request of law enforcement to achieve a desired goal, especially
with knowledge that the edits/changes are going to be used to justify the violation of a person's
constitutional rights.

113.    Defendant KEEL had a duty to supervise WHITSETT, ONEAL, WELLS, GWOOD,
NEALE, and HOLDEN, which included not allowing them formulate a plan designed to arrest

**JA328**

and destroy a person's property in violation of his constitutional rights, especially with knowledge that the law being used to justify your subordinates' actions was "unclear."

114.    Defendant WEATHERS had a duty to supervise TERRY, UNDERWOOD, LEACH, AWOOD, STOKES, ELSALAH, JEFFCOAT and MOORE, which included the duty to not allow them to participate in the violations of a person's constitutional rights through a process which they knew was unclear by reason of his own office's failure to comply with the HFA.

115.    Defendant KNIGHT had duty to supervise DIXSON, THOMPSON and KRUTEK, which included a duty to not allow them to be used to seize and destroy a person's property without a court order in violation of that person's constitutional rights.

116.    Defendant CALORE had a duty to supervise SCRUGGS and EADDY, which included a duty to not allow them to be used to seize and destroy a person's property without a court order in violation of that person's constitutional rights.

117.    At all times relevant to this action, these defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff.

118.    The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional rights through the acts and omissions of these supervisory defendants.

**FOR A SIXTH CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(CONSPIRACY TO VIOLATE FOURTH, FIFTH, EIGHTH AND FOURTEENTH**
**AMENDMENT RIGHTS AGAINST AG, SLED AND DAG DEFENDANTS)**

119.    At all times mentioned above, these Defendants were all acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy.

120.    During the time period in question, these Defendants were well aware of Pendarvis' constitutional right under the Fourth Amendment to be free from unreasonable searches and

26

**JA329**

seizures and to not be deprived of due process of law, which includes the right to be free from malicious prosecution.

121.    During the time period in question, these Defendants were well aware of Pendarvis' constitutional right under the Fifth Amendment to not be deprived of his life, liberty or property, without due process of law.

122.    During the time period in question, these Defendants were well aware of Pendarvis' constitutional right under the Eighth Amendment to not be subjected to excessive fines.

123.    During the time perioud in question, these Defendants were well aware that Pendarvis' due process rights preserved by the Fourth and Fifth Amendments included the rights to the fair, efficient and speedy administration of justice through the criminal and civil justice systems and to be free from the deprivation of liberty without due process of law.

124.    During the time period in question, these Defendants were well aware that the Fourteenth Amendment protected Pendarvis' Fourth, Fifth and Eighth Amendment rights from being violated by state actors/conduct such as these Defendants.

125.    Pendarvis was harmed and suffered injury in violation of his Fourth, Fifth, Eighth and Fourteenth Amendments rights through the acts and omissions of the defendants, as described above, who were at all times acting in concert with these Defendants under the color or pretense of South Carolina State law, customs, practices, usage and/or policy.

126.    As described above, the defendants conducted themselves repeatedly in violation of the Plaintiff's constitutional rights, specifically seeking to deny him due process, obstruct justice and deprive him of liberty without due process of law, not just through their individial actions described in the causes of action, but also by conspiring to impede, hinder, obstruct and/or

defeat the due course of justice with the intent to violate Plaintiff constitutional rights and deny him due process.

127.    Defendant WILSON violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

128.    Defendant YOUNG violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

129.    Defendant COOK violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

130.    Defendant SMITH violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

131.    Defendant LYNCH violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

132.    Defendant KITTLE violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

133.    Defendant JONES violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

134.    Defendant KIRKLAND violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

135.    Defendant VORBERGER violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

136.    Defendant KEEL violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

137.    Defendant WHITSETT violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present

a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

138.    Defendant ONEAL violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

139.    Defendant WELLS violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

140.    Defendant GWOOD violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

141.    Defendant NEALE violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

142.    Defendant HOLDEN violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

30

143.   Defendant WEATHERS violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

144.   Defendant TERRY violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

145.   Defendant UNDERWOOD violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

146.   Defendant LEACH violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

147.   Defendant AWOOD violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

148.   Defendant STOKES violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present

a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

149.    Defendant ELSALAH violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

150.    Defendant JEFFCOAT violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

151.    Defendant MOORE violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other defendants to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Plaintiff's civil rights.

152.    As a direct and proximate result of these Defendants acts and omissions, the Plaintiff suffered deprivations of his rights secured by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

153.    At all times relevant to this action, these Defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff, but they repeatedly violated the Plaintiff's constitutional rights despite that knowledge.

154.    Plaintiff was harmed and suffered injury because of these Defendants violation of the Plaintiff's constitutional rights and that harm has been exacerbated by the conduct of the

Defendants in conspiring to impede, hinder, obstruct and/or defeat the due course of justice with the intent to deny the Plaintiff his constitutional rights.

### PRAYER

WHEREFORE, Plaintiff prays that the Court entered judgment against the Defendants and award him:

    i.    Actual and consequential damages to compensate the Plaintiff for his out-of-pocket expenses, pain, suffering, mental anguish, humiliation, and the indignity he has suffered because of the Defendants' conduct and the violation of his civil rights;

    ii.    Punitive damages;

    iii.    Attorneys' fees and costs recoverable under 42 U.S.C. § 1988; and

    iv.    Such further relief as is allowed by law and that the Court deems just and proper.

### REQUEST FOR TRIAL BY JURY

The Plaintiff, John Trenton Pendarvis, hereby demands a trial by jury on all claims.

Respectfully submitted by:

<div align="right">

**WUKELA LAW FIRM**
s/Patrick J. McLaughlin
Patrick J. McLaughlin (Fed. ID No. 9665)
PO Box 13057
Florence, SC 29504-3057
Phone: (843) 669-5634
Fax: (843) 669-5150
E-mail: patrick@wukelalaw.com
*-and-*
**WILLIAMS & WILLIAMS**
s/C. Bradley Hutto
C. Bradley Hutto (Fed. ID. No. 2024)
P.O. Box 1084
Orangeburg, SC 29116
Phone: (803)534-5218
Fax:   (903)536-6298
cbhutto@williamsattys.com
**ATTORNEYS FOR PLAINTIFF**

</div>

Florence, SC
August 25, 2023

<div align="center">33</div>

**JA336**

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| John Trenton Pendarvis, | ) | CA No. 2:22-cv-03142-BHH-MHC |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | |
| | ) | |
| Alan M. Wilson, Mark A. Keel, Hugh E. | ) | |
| Weathers, L.C. Knight, W. Jeffrey Young, | ) | |
| Robert D. Cook, Emory Smith, Jr., Joanne Lee, | ) | |
| David S. Jones, T. Stephen Lynch, Harley L. | ) | |
| Kirkland, Wesley Vorberger, Robert Kittle, | ) | |
| Adam Whitsett, Frank O'Neal, Jason Wells, | ) | |
| Glenn Wood, John Neale, Rhett Holder, Alden | ) | |
| G. Terry, Derek M. Underwood, J. Clint | ) | |
| Leach, Aaron Wood, John Stokes, Vanessa | ) | |
| Elsalah, Brittany Jeffcoat, Eva Moore, Ray | ) | |
| Dixon, Frank Thompson, Robert Krutak, | ) | |
| Jonathan Calore, Charlie Scrubbs, and Wayne | ) | |
| Eaddy, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff John Trenton Pendarvis ("Plaintiff") filed this action against the above-named Defendants for alleged violations of his constitutional rights. Defendants have filed Motions to Dismiss. ECF Nos. 76, 77, 78, 79, 80. Plaintiff filed Responses in Opposition to the Motions, ECF Nos. 82, 83, 85, 86, 87, and some Defendants filed Replies, ECF Nos. 84, 89, 90, 91. The Motions are ripe for review.  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(f) (D.S.C.). Because the Motions are dispositive, this Report and Recommendation is entered for review by the District Judge.

I.    **BACKGROUND**

Plaintiff filed his original Complaint on September 16, 2022. ECF No. 1. That Complaint totaled 92 pages with 256 separate paragraphs, with dozens of exhibits consisting of documents, photographs, transcripts, letters, emails, or selected segments thereof, all of which were copied and pasted or otherwise embedded within the Complaint. Plaintiff pled four separate causes of action against a total of 33 different individual Defendants, including employees of the South Carolina Attorney General's Office ("SCAG"), the South Carolina State Law Enforcement Division ("SLED"), the South Carolina Department of Agriculture ("SC Dep't. Agric."), the Dorchester County Sheriff's Office, and the South Carolina Forestry Commission.

In response to the Complaint, all Defendants filed Motions to Dismiss. Some Defendants sought dismissal pursuant to Rule 12(b) for failure to state a claim. *See* ECF Nos. 22, 24, 25, 26. Other Defendants moved for dismissal pursuant to Rule 8(a) or, in the alternative, for a more definite statement pursuant to Rule 12(e). *See* ECF Nos. 23, 27, 39. Plaintiff filed Responses in Opposition to the Motions, arguing that the Complaint was sufficient to state the alleged causes of action and did not violate Rule 8. ECF Nos. 31, 32, 33, 34, 40. In the alternative, Plaintiff asked the Court for leave to amend the Complaint to correct any deficiencies. *See* ECF Nos. 31 at 16–19; 32 at 10; 33 at 13; 34 at 11; 40 at 14.

By Order filed February 3, 2023, the undersigned granted Plaintiff leave to amend his Complaint so that he could cure pleading defects and file an Amended Complaint that complied with Rule 8(a) of the Federal Rules of Civil Procedure. ECF No. 47. In addition, the Court instructed Plaintiff that evidentiary matters should not be embedded in the Amended Complaint and to limit the Amended Complaint to no more than 45 pages in length.

Plaintiff filed his Amended Complaint on February 24, 2023. ECF No. 49. The Amended Complaint totaled 44 pages with 185 separate paragraphs. Plaintiff named 32 individual Defendants and alleged six causes of action arising from Plaintiff's Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. ECF No. 49 at 35–44.

All Defendants filed Motions to Dismiss the Amended Complaint, generally seeking dismissal for failure to adhere to the pleading requirements of Rules 8 and 10, for failure to adhere to this Court's February 3 Order, or for failure to state a claim pursuant to Rule 12(b)(6). ECF Nos. 55, 56, 57, 58, 59. In the alternative, some Defendants moved pursuant to Rule 12(e) for a more definite statement and requested this Court to issue another Order directing Plaintiff to file a Second Amended Complaint that adhered to Rule 8. ECF Nos. 56, 57, 58.

The undersigned agreed that the Amended Complaint ran afoul of Rule 8 and generally amounted to a "shotgun pleading," such that Defendants did not have "fair notice" of the claims against them. ECF No. 73. However, the undersigned found that requiring Plaintiff to file a Second Amended Complaint—rather than dismissal with prejudice as some Defendants urged—was the appropriate course of action, as it would allow for the resolution of this case on the merits. ECF No. 73. Thus, the Court granted Defendants' Rule 12(e) Motions and ordered Plaintiff to file a Second Amended Complaint in compliance with Rules 8(a) and 12(e) and this Court's February 3 Order. ECF No. 73.

Plaintiff filed his Second Amended Complaint on August 25, 2023. ECF No. 74. The Second Amended Complaint consists of 33 pages and 154 separate paragraphs, and asserts claims against 32 individuals; specifically: Alan M. Wilson, W. Jeffrey Young, Robert D. Cook, Emory Smith, Jr., David S. Jones, T. Stephen Lynch, Harley L. Kirkland, Wesley Vorberger, and Robert Kittle ("SCAG Defendants"); Jonathan Calore, Charlie Scruggs, and Wayne Eaddy ("Forestry

Defendants"); L.C. Knight, Ray Dixson, Frank Thompson, and Robert Krutek ("Dorchester Defendants"); Mark A. Keel, Adam L. Whitsett, Frank O'Neal, Jason Wells, Glenn Wood, John Neale, and Rhett Holden ("SLED Defendants"); Hugh E. Weathers, Alden G. Terry, Derek M. Underwood, J. Clint Leach, Aaron Wood, John Stokes, Vanessa Elsalah, Brittany Jeffcoat, and Eva Moore ("SC Dep't. Agric. Defendants").

The Second Amended Complaint sets forth six separate causes of action pursuant to 42 U.S.C. § 1983, alleging (1) violations of the Fourth and Fourteenth Amendments to the United States Constitution against various Defendants for unreasonable search and seizure; (2) violations of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution against various Defendants; (3) violations of the Fourth and Fourteenth Amendments against various Defendants for malicious prosecution; (4) bystander liability for failure to protect Plaintiff from violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments against various Defendants; (5) supervisor liability for violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments against various Defendants; and (6) conspiracy to violate the Fourth, Fifth, Eighth, and Fourteenth Amendments against various Defendants. ECF No. 74 at 5–33.

## II.    LEGAL STANDARD

Defendants move for dismissal of the Second Amended Complaint pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 531 (D.S.C. 2014) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)); *see Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of [affirmative] defenses.").

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant will have "fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is not analogous to a "probability requirement," rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III.     <u>DISCUSSION</u>

All Defendants generally seek dismissal of the Second Amended Complaint for failure to adhere to the pleading requirements of Rule 8 and this Court's prior Orders, and for failure to state a claim pursuant to Rule 12(b)(6). ECF Nos. 76, 77, 78, 79, 80. Specifically, Defendants argue that—among other things—the Second Amended Complaint has failed to adhere to the basic requirements set forth by the Supreme Court of the United States in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*.[1] The Court agrees.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court articulated a "two-pronged approach" to test the sufficiency of a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[1] Defendants also raise various arguments regarding qualified immunity and other immunities, bystander and supervisory liability, and standing. *See* ECF Nos. 76, 77, 78, 79, 80. In light of the recommendation for dismissal, the undersigned has not addressed those arguments.

679 (2009). First, the complaint must "contain factual allegations *in addition to* legal conclusions." *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 288 (4th Cir. 2012) (emphasis added). Under Rule 8's pleading standard, "a formulaic recitation of the elements of a cause of action will not do," and "naked assertions devoid of further factual enhancement" will not suffice. *Id.* (cleaned up) (quoting *Twombly*, 550 U.S. at 555 and *Iqbal*, 556 U.S. at 678).

Second, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). That is, the complaint must demonstrate that a plaintiff's right to relief is more than a mere possibility, but it need not rise to the level of evincing a probability of success. *Id.* Accordingly, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When ruling on a Rule 12(b)(6) motion to dismiss, a court must accept as true all the facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See, e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). Courts must determine whether the allegations give rise to a plausible right to relief, *Iqbal*, 556 U.S. at 679; however, courts should "not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments,'" *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Thus, although courts must accept a plaintiff's well-pleaded factual allegations as true for purposes of ruling on a motion to dismiss, the complaint must nevertheless satisfy the "two-pronged" test articulated by the Supreme Court. *Iqbal*, 556 U.S. at 679.

 Here, Plaintiff's Second Amended Complaint falls short of the pleading requirements announced in *Iqbal*/*Twombly*. Whereas the Amended Complaint contained a plethora of information that made it difficult, at best, to discern what factual allegations were important or relevant to the causes of action alleged, the Second Amended Complaint contains no alleged facts whatsoever. Indeed, there is no section of factual allegations at all in the Second Amended Complaint. *See* ECF No. 74. In stripping out all the factual allegations contained in previous iterations of the Complaint and Amended Complaint, only legal conclusions—couched as factual allegations—remain. Such a Complaint is insufficient under *Twombly*/*Iqbal*. *See Robertson*, 679 F.3d at 288 ("[A] complaint must contain factual allegations *in addition to* legal conclusions." (emphasis added)); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

 The Court appreciates that Plaintiff's Second Amended Complaint attempts to address some of the concerns raised in this Court's August 11 Order. For example, in addressing the Court's concern over the confusion that the "shotgun pleading" created for Defendants and this Court, Plaintiff's Second Amended Complaint now specifically describes the allegations relative to each individual Defendant under each cause of action. As a result, it is clear what specific causes of action Plaintiff is alleging against each Defendant.

 However, although these allegations set forth the necessary elements for each cause of action alleged, they are ultimately legal conclusions couched as factual allegations. Outside of these formulaic recitations of the necessary elements for each cause of action, there is no further

factual allegation anywhere in the Second Amended Complaint that supports these legal conclusions. Indeed, while each of the delineated causes of action now contain paragraphs directed at each individual Defendant, these paragraphs are largely repetitive and fall short of alleging any specific facts against the individual Defendants which would give them notice as to *what conduct* Plaintiff claims has violated his rights.

> For example, in Plaintiff's Third Cause of Action, Plaintiff alleges as follows:
>
> Defendant WEATHERS violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in finding Pendarvis' alleged violation of the HFA was "willful" in a process that this defendant knew denied Pendarvis his due process rights and knowing that finding was going to be used to arrest and initiate criminal process against Pendarvis. Defendant WEATHERS further violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in the gathering of evidence/information to further the criminal process and/or withholding evidence/information from being produced to Pendarvis.

ECF No. 74 at 15. Plaintiff recites that same paragraph verbatim, changing only the name of the Defendant to which the allegation is directed. *See* ECF No. 74 at 15–19. Outside of this singular paragraph, the Second Amended Complaint contains no other allegations directed specifically at any of these Defendants as to this cause of action.

As pointed out by several Defendants, throughout the Second Amended Complaint, Plaintiff uses "During the time in question" or during the "time period in question" as a blanket indicator for when events occurred. *See* ECF No. 74 at 4–5, 8, 14, 19–20, 24–27. However, not once does Plaintiff allege a specific date or give an indication as to when the "time period in question" is for the various allegations of constitutional violations. Additionally, Plaintiff omits the specific location that his undated loss occurred.

Plaintiff responds to these points raised by several Defendants by asserting that Defendants are "well aware of the date and location of the loss complained of" in the Second Amended

Complaint. *See* ECF No. 87 at 5; *see also* ECF No. 86 at 3 ("There is no confusion about this incident as SLED Defendants have only arrested Plaintiff on one occasion and have only destroyed his hemp crop on one occasion."). Plaintiff argues (1) that Defendants previously admitted their involvement in the alleged conduct in other filings submitted to this Court; (2) that the existence of an arrest warrant referenced in the Second Amended Complaint—which sets forth the date and location of the incident—is sufficient; and (3) that Defendants produced the arrest warrant via discovery in the related state action, such that they are judicially estopped from questioning the authenticity of the warrant/they are prevented from taking a position that is inconsistent with a stance previously taken in court. *See* ECF No. 87 at 5–8; ECF No. 86 at 7–8.

Although these facts may have been alleged previously in the Complaint and first Amended Complaint, it is well-settled that the Second Amended Complaint supersedes the prior complaints and becomes the operative complaint moving forward, such that any prior complaint no longer performs any function in the case. *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017) ("Because a properly filed amended complaint supersedes the original one and becomes the operative complaint in the case, it renders the original complaint 'of no effect.'" (citation omitted)); *Wellin v. Wellin*, 430 F. Supp. 3d 84, 90 (D.S.C. 2019) ("It is well settled federal law that an amended pleading supersedes the original pleading, renders the original pleading of no effect, and the original pleadings perform no function in deciding the amended pleading."). To require Defendants to cross reference the facts alleged previously in the Complaint or Amended Complaint brings the parties back to the original problem that the Second Amended Complaint was intended to cure. *See North Carolina v. McGuirt*, 114 F. App'x 555, 559 (4th Cir. 2004) (finding the district court did not abuse its discretion when dismissing a complaint that was "long and complex" and

forced the reader to cross reference the factual background section to match to the legal claims). Put simply, the Second Amended Complaint must be able to stand on its own. Here, it does not.

While the complete removal of the specific factual allegations was, perhaps, Plaintiff's attempt to address this Court's concerns over the vast array of extraneous information contained in the Complaint and Amended Complaint, the Court's direction to remove embedded evidentiary matters was not a moratorium on pleading factual allegations. *See* ECF No. 47 at 4–5. Rather, it was aimed at bringing the Complaint in compliance with Rule 8's command that it contain "a *short and plain* statement of the claim showing that the pleader is entitled to relief," such that Defendants would have "fair notice of *what* the claim is and the *grounds upon* which it rests." *See Twombly*, 550 U.S. at 555 (cleaned up) (emphasis added) (internal quotation marks omitted). Indeed, S.C. Dept. of Agric. Defendants properly delineated the distinction between embedding evidentiary matters into the Complaint and pleading specific factual allegations in several of their filings:

> These Defendants do not contest that Plaintiff must plead sufficient factual allegations to support his claims and that he may have to allege specific and detailed factual allegations to do so. Defendants have simply *not* contended that any relevant allegation in the Amended Complaint is too specific. Rather, these Defendants contend that Plaintiff has alleged the existence, authenticity, and contents of various pieces of potential evidence, such as the emails and body-worn camera. **For example, it would likely be proper for Plaintiff to allege that "a SLED Agent had the following exchange with Pendarvis," and then describe the factual contents of that exchange**. It is wholly *improper*, however, to allege that "[i]nteractions between Pendarvis and some of the Defendants at his Dorchester County farm on September 19, 2019, are memorialized via a body-worn camera (BWC) video" and "[t]hat video shows a SLED Agent . . . (not visible, but present via audio since it is his BWC) having the following exchange with Pendarvis beginning at the 11:49:00 timestamp and showing Pendarvis refusing to consent to the destruction of his hemp crop and instead requesting due process[.]" ECF No. 49, ¶¶ 57 – 58. **This goes far beyond simply pleading specific factual allegations** and instead pleads various *evidentiary issues*.

> Further, these Defendants do not contend that Plaintiff may not incorporate documents by reference into his Amended Complaint. Defendants simply contend that, in doing so, it is improper for the Plaintiff to also plead *evidentiary issues* related to those documents.

ECF No. 66 at 3–4 (bold emphasis added); *see also* ECF No. 90 at 4.

In other words, a simple, plain statement describing the conduct is all that Rule 8 requires.[2] Embedding, for example, the verbatim transcript of body-worn camera video is unnecessary, and—when done *excessively* with other evidentiary matters—it turns the "short and plain" pleading into one that is overly "long and complex" that makes it difficult for Defendants, and this Court, to differentiate between the legally significant facts and those facts that are superfluous bloat. *See McGuirt*, 114 F. App'x at 558 (finding the complaint both "long and complex and [it] fails to state its claims clearly enough for the defendants to know how to defend themselves. The factual background section of the complaint . . . is filled with needless details, such as . . . *verbatim contents of conversations*," and further finding it was "virtually impossible to separate the legally significant from the legally insignificant facts in this factual background and then to match them with claims purportedly made in the complaint" (emphasis added)).

To be sure, and as previously acknowledged by the undersigned, there very well "may be facts on which Plaintiff could have stated a claim with respect to the myriad claims."[3] ECF No. 73 at 12. However, Plaintiff's complete removal of the section that contained the factual allegations

---

[2] To the extent Plaintiff wanted to rely upon documents, he was well within his right to *attach* them to the Complaint or *incorporate them by reference* in the factual allegations. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (noting courts "also consider documents that are explicitly incorporated into the complaint by reference, and those attached to the complaint as exhibits" (internal citation omitted)); *Bailey v. Virginia High Sch. League, Inc.*, 488 F. App'x 714, 715 (4th Cir. 2012) ("In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint and any documents attached or incorporated by reference."). Additionally, Plaintiff appears hesitant to attach documents—specifically, the warrant—to his Responses. *See, e.g.*, ECF No. 87 at 8 n.1; ECF No. 86 at 8 n.1. Again, the Court's direction to remove *embedded* evidentiary matters from the Complaint was not a moratorium on attaching documents as exhibits.

[3] Indeed, Plaintiff appears to have obtained much of the evidence that was embedded in his original Complaint from his two state court actions—which necessarily required him to submit a complaint that detailed the same or extremely similar conduct at issue in this case.

upon which his claims could have been based renders the Second Amended Complaint deficient. *See Robertson*, 679 F.3d at 288 (noting "naked assertion[s] devoid of 'further factual enhancement are not enough" and that Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" (citations and internal quotation marks omitted)). Thus, the undersigned recommends dismissal for failure to state a claim.

## IV.    RECOMMENDATION

For the reasons set forth above, it is **RECOMMENDED** that the Motions to Dismiss (ECF Nos. 76, 77, 78, 79, and 80) be **GRANTED** and that this action be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim pursuant to Rule 12(b)(6). Alternatively, the undersigned **RECOMMENDS** allowing Plaintiff to file a Third Amended Complaint, adhering to the standards of *Twombly/Iqbal*, the Federal Rules of Civil Procedure, and this Court's Orders. [4]

Molly H. Cherry
United States Magistrate Judge

October 19, 2023
Charleston, South Carolina

**The parties are directed to the next page for their rights to file objections to this recommendation.**

_____

[4] In the event this alternative recommendation is adopted, should any defendant be successful in dismissing the Third Amended Complaint, in whole or in part, based upon a failure to meet the pleading requirements of Rule 8 or 10, the undersigned will entertain a request and recommendation for awarding costs and fees associated with moving for dismissal of the Third Amended Complaint.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

<div align="center">

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

</div>

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| John Trenton Pendarvis, | ) | C/A No: 2:22-CV-03142-BHH-MHC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **PLAINTIFF'S THIRD AMENDED** |
| | ) | **COMPLAINT** |
| Alan M. Wilson, Mark A. Keel, Hugh E. | ) | **(42 U.S.C. § 1983 *et seq.*)** |
| Weathers, L.C. Knight, W. Jeffrey Young, | ) | **(Jury Trial Demanded)** |
| Robert D. Cook, Emory Smith, Jr., David S. | ) | |
| Jones, T. Stephen Lynch, Harley L. Kirkland, | ) | |
| Wesley Vorberger, Robert Kittle, Adam L. | ) | |
| Whitsett, Frank O'Neal, Jason Wells, Glenn | ) | |
| Wood, John Neale, Rhett Holden, Alden G. | ) | |
| Terry, Derek M. Underwood, J. Clint Leach, | ) | |
| Aaron Wood, John Stokes, Vanessa Elsalah, | ) | |
| Brittany Jeffcoat, Eva Moore, Ray Dixson, | ) | |
| Frank Thompson, Robert Krutek, Jonathan | ) | |
| Calore, Charlie Scruggs, and Wayne Eaddy, | ) | |
| | ) | |
| Defendants. | ) | |

The Plaintiff, by and through his undersigned attorneys and complaining of the Defendants

herein, hereby alleges and pleads the following:

**PRELIMINARY STATEMENT OF CASE, PARTIES & JURISDICTION**

1. Plaintiff John Trenton Pendarvis (Pendarvis) is a citizen and resident of, and the majority of

   events giving rise to this litigation took place in Dorchester County, South Carolina, within the

   Charleston Division of the District of South Carolina.

2. Pendarvis alleges violations of his constitutional rights by the defendants in their individual

   capacities pursuant 42 U.S.C. §§1983 *et seq.*, for the defendants' conduct individually and in

   concert with others, under color of state law in falsely arresting Pendarvis, maliciously

   prosecuting him, unlawful taking and destruction of his property, depriving him of due process,

1

conspiring to do the same, then further conspiring to obstruct justice and deny Pendarvis due process through intentional and willful discovery abuse in state court actions violating his right to access to the courts and remedy for legal injury.

3.  At all times relevant to this action, all defendants were acting under the color of state law as agents, employees and/or heads of state governmental agencies. These defendants are being sued for their own individual and personal conduct, their conduct in concert and/or conspiring with others and, for those with supervisory capacity, their supervisory conduct over subordinate defendants.

4.  Plaintiff is informed and believes that Alan M. Wilson (WILSON), W. Jeffery Young (YOUNG), Robert D. Cook (COOK), Emory Smith Jr. (SMITH), T. Stephen Lynch (LYNCH), Robert Kittle (KITTLE), David S. Jones (JONES), Harvey K. Kirkland (KIRKLAND), and Wesley Vorberger (VORBERGER), all of whom work in the Office of the South Carolina Attorney General, who are collectively referred to as "SCAG Defendants," are being sued in their individual capacities under 42 U.S.C. §§1983, *et seq*, for their conduct under the color of state law as the head of, supervisory agent/employees and/or agents/employees for SCAG and their efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff.

5.  Plaintiff is informed and believes that Mark A. Keel (KEEL), Adam L. Whitsett (WHITSETT), Frank O'Neal (ONEAL), Jason Wells (WELLS), Glenn Wood (GWOOD), John Neale (NEALE), and Rhett Holden (HOLDEN), all of whom work in the Office of the State Law Enforcement Commission, who are collectively referred to as "SLED Defendants" are being sued in their individual capacities under 42 U.S.C. §§1983, *et seq*, for their conduct under the color of state law as the head of, supervisory agent/employees and/or agents/employees for

2

**JA351**

SLED and their efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff.

6. Plaintiff is informed and believes that Hugh E. Weathers (WEATHERS), Alden G. Terry (TERRY), Derek M. Underwood (UNDERWOOD), J. Clint Leach (LEACH), Aaron Wood (AWOOD), John Stokes (STOKES), Vanessah Elsalah (ELSALAH), Brittany Jeffcoat (JEFFCOAT), and Eva Moore (MOORE),  all of whom work in the Office of the South Carolina Department of Agriculture, who are collectively referred to as "DAG Defendants," are being sued in their individual capacities under 42 U.S.C. §§1983, *et seq*, for their conduct under the color of state law as the head of, supervisory agent/employees and/or agents/employees for DAG and their efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff.

7. Plaintiff is informed and believes that L.C. Knight (KNIGHT), Ray Dixson (DIXSON), Frank Thompson (THOMPSON), and Robert Krutek (KRUTEK), all of whom work in the Office of the  Dorchester County Sheriff's Office, who are collectively referred to as "DCSO Defendants," are being sued in their individual capacities under 42 U.S.C. §§1983, *et seq*, for their conduct under the color of state law as the head of, supervisory agent/employees and/or agents/employees for DCSO and their efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff.

8. Plaintiff is informed and believes that Jonathan Calore (CALORE), Charlie Scruggs (SCRUGGS) and Wayne Eaddy (EADDY),  all of whom work in the Office of the South

**JA352**

Carolina Forestry Commission, who are collectively referred to as "FORESTRY Defendants," are being sued in their individual capacities under 42 U.S.C. §§1983, *et seq*, for their conduct under the color of state law as the head of, supervisory agent/employees and/or agents/employees for FORESTRY and their efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff.

9.  Subject matter jurisdiction is conferred upon the Court by 28 U.S.C.A. §§ 1331, 1367 and 1343.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), (2) & (3).

### NATURE OF ACTION

11. Plaintiff's claims are brought pursuant to 42 U.S.C.A. §§1983, *et seq*., and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, for violations of constitutional rights provided by those amendments, rights which were correspondingly protected under the common law, the statutory law, and the Constitution of the State of South Carolina. The Plaintiff's claims would specifically include, but not be limited to, claims under 42 U.S.C. §1983 *et seq*.

12. Between May 2019 and September 2019, the Plaintiff's Constitutional rights were well established and well known to the Defendants, including and not limited to, the Plaintiff's right to bodily integrity, right to be free from unreasonable searches and seizures, right to Due Process, right to access to the courts and remedy for legal injury, and all other constitutional established and recognized as arising from the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

4

**JA353**

13. Between May 2019 and September 2019, and continuing since that time, the Defendants had actual and/or constructive knowledge that their conduct posed an unreasonable risk of Constitutional injury to the Plaintiff and their responses with that knowledge were subjectively and objectively unreasonable regarding the offense(s) as alleged herein; and there is a causal link between their actions and the Constitutional injuries suffered by the Plaintiff.

14. Pendarvis is informed and believes that through their conduct documented below the defendants recklessly, intentionally, and willfully violated his constitutional rights as set forth within the causes of action below.

## FACTUAL ALLEGATIONS

15. South Carolina's Hemp Farming Act (HFA) is contained within S.C. Code §46-55-10 *et seq*.

16. In passing the HFA, the South Carolina General Assembly provided statutory safeguards to protect South Carolina farmers, codifying these safeguards via S.C. Code §46-55-40. The HFA provides that the corrective plans are "the sole remedy for negligent violations of this chapter, regulations promulgated pursuant to this chapter, or the state plan. A licensee who violates a provision of this chapter, regulations promulgated pursuant to this chapter, or the state plan shall not be subject to any criminal or civil enforcement action." S.C. Code §46-55-40(A)(3).

17. The SC General Assembly directed WEATHERS and DAG to submit the "state plan" referenced in S.C. Code §46-55-40(3) to the United States Department of Agriculture (USDA) within sixty (60) days of the effective date of the act and required that state plan to include "a procedure to comply with the enforcement outlined in this act." See 2019 Act No.14, Section 2(A)(4).

18. WEATHERS, TERRY, UNDERWOOD, LEACH, AWOOD, STOKES, ELSALAH, JEFFOCOAT and MOORE were all aware of the statutory requirement of a state plan to create

5

**JA354**

the enforcement procedures under the HFA, were aware that they failed to timely submit the "state plan" as required by the Act, and were aware that failure to create and submit a state plan with enforcement procedures jeopardized the constitutional rights of farmers participating in the hemp farming program, such as the Plaintiff.

19. Both WILSON and KEEL and their agents/employees and agencies have been vehemently and publicly opposed to cannabis legalization efforts in South Carolina.

20. Pendarvis applied to participate in the DAG Defendants hemp farming program, paying a $500 Dollar application fee and being issued License #1992 on or about May 1, 2019, a license that authorized Pendarvis to grow and cultivate hemp.

21. To receive that license, the DAG Defendants required Pendarvis to enter into a "Hemp Farming Program Participation Agreement" (HPA). Section VIII of the HPA, titled "Plant Destruction," purports to be "acknowledgment and consent" by the farmer to the forfeiture and destruction, without compensation of his hemp crop if it is: (i) found to have a measured delta-9 THC content of more than 0.3 percent dry weight; (ii) bears off-label pesticide residues (or believed by DAG to have had pesticides applied off-label; and  (iii) grown in an area that is not licensed by DAG. That section goes on to allow permitted growers may retain hemp testing between 0.3% and 1.0% delta-9 dry weight and "recondition" it by grinding it with stem and stalk.

22.  Section VIII of the HPA created by the DAG Defendants is directly contradicted by the plain language of the statute, which specifically directs that for two of the three listed conditions for destruction under VIII, the corrective action plans as required under S. C. Code §46-55-40 **are the sole remedy** for negligent violations. There is no language in the HPA explaining the procedure by which DAG will enact enforcement, as was required in the HFA. *See* 2019 Act No. 14, SEC.2(A)(4).

6

**JA355**

23. Despite WEATHERS having sworn a duty to uphold and protect the Constitution of the United States and the State of South Carolina, and a duty under the HFA to create and publicize the procedure by which enforcement of the HFA would be conducted, the DAG Defendants failed to create, publicize and/or notice any procedure by which a farmer in their hemp farming program would be noticed of the finding of a violation, could challenge a finding of violation, who would hear such a challenge of a finding of violation and/or how to seek and obtain judicial review of finding of a violation. The DAG Defendants knew or should have known, that such failure posed a likely and unnecessary risk to the due process rights of farmers in the program, guaranteed by the 5th, 8th and 14th Amendments to the United States Constitution and correspondingly protected by Art. I, Sec. 22 of the South Carolina Constitution.

24. Pendarvis is informed and believes that throughout the enforcement action taken against him by the Defendants as detailed in this complaint, all of the Defendants were aware that: a) Pendarvis had these constitutional rights, and b) that at no time had Pendarvis ever waived such rights.

25. After receiving his license, Pendarvis was confronted with drought conditions so severe that he was unable to plant his hemp crop on the GPS coordinates he had originally designated to DAG. The DAG Defendants publicly acknowledged the problems facing farmers from those severe weather conditions as shown by WEATHERS publicly warning on October 31, 2019 "we may be seeing its effects for a long time."

26. On July 30, 2019, while ELSALAH conducted a farm visit at Pendarvis' Dorchester County property it was discovered that Pendarvis' had planted his Dorchester County crop on coordinates other than those that had been submitted to DAG. Pendarvis is informed and

7

**JA356**

believes he sent the correct coordinates via a text message during or immediately following ELSALAH's visit.

27. On July 31, 2019, at 2:52 p.m., UNDERWOOD sent Pendarvis an email asking Pendarvis to "provide a narrative of your reasoning for not sending in an amendment and planting hemp on 10 acres of non-amended farmland."

28. Pendarvis replied with an email that same afternoon explaining that weather/soil conditions had prohibited him from using the GPS coordinates originally reported, he had not realized the fields used were not on file (believing he had reported multiple fields) and that he had believed "everything would be finalized during inspection." Pendarvis pointed out the additional field was within a two-mile radius of the original reported field and that it had not increased acreage. UNDERWOOD told Pendarvis that he would need to submit an official amendment form for review, which Pendarvis did the next day, with UNDERWOOD replying via an email courtesy copied to ELSALAH and TERRY, informing Pendarvis his case would be reviewed "with our Attorney to determine if a willful violation of the grower's agreement is present" and "once we make a final decision, we will be in touch." UNDERWOOD's reply provided no explanation of the process to determine willful violation, of aa process to appeal or review any determination, or of any process for how a "willful" violation would be handled.

29. S. C. Code §46-55-40 (B) provides: If the commissioner determines that a licensee has violated state law with a culpable mental state greater than negligence, then the commissioner shall immediately report the hemp producer to the Attorney General and the Chief of the South Carolina Law Enforcement Division, and subsection (A)(2) shall not apply to the violation. The HFA does not authorize any action other than reporting and makes no provision for criminally charging a non-negligent violation.

8

**JA357**

30. Four days later, on August 5, 2019, UNDERWOOD reported to SLED that DAG had found Pendarvis "has willfully grown hemp on non-reported or non-listed acreage for 6-8 weeks." This determination was intentionally withheld from Pendarvis by the DAG Defendants, at the SLED Defendants request, until August 29, 2019.

31. That first August 5th email was immediately followed by another email from UNDERWOOD, sent to WELLS and ONEAL, courtesy copied to TERRY and ELSALAH, with the subject heading "Memo to Enact Enforcement," importance labeled "high," and containing the attachment "Memo to SLED 8-5-2019 Pendarvis.pdf" which informed SLED that DAG had decided Pendarvis' growing location issue was a "willful violation of the Hemp Farming Act" and "request SLED enact enforcement of this violation."

32. On August 8, 2019, via email sent to WELLS and courtesy copied to ONEAL, TERRY, WEATHERS and ELSALAH, UNDERWOOD, on behalf of the DAG Defendants, was asking the SLED Defendants for "any update" on SLED's enforcement of DAG's willful violation finding against Pendarvis. Contrary to the DAG Defendants position that all they did was "report" the alleged violation to SLED, this email and others below show the DAG Defendants actively participated in assisting SLED with attempting to criminally enforce the Plaintiff's alleged violation.

33. On August 8, 2019, ONEAL responded to UNDERWOOD, TERRY, WEATHERS, ELSALAH, and WELLS, replying that "we are having difficulty in what to address with so many gray areas concerning enforcement...We are having to get AG opinions along the way and the last thing we want to do is an action that will be perceived in a negative light by the media or general assembly."

34. UNDERWOOD replied to that email letting ONEAL, WELLS, TERRY, WEATHERS and ELSALAH all know DAG would not approve Pendarvis' amendment application so there was no "deadline" to act and for SLED to let DAG know "what we need to do to help" in the enforcement actions being taken against Pendarvis. This email shows the coordination between the DAG Defendants and the SLED Defendants to criminally prosecute the Plaintiff for the alleged violation.

35. The SCAG opinion ONEAL's August 8th email referenced, was requested on behalf of the SLED Defendants by WHITSETT via an August 6, 2019, email to JONES, seeking "specific guidance…on the proper procedure in this matter."

36. WHITSETT's email was forwarded by JONES to COOK the morning of August 7, 2019, with COOK promptly replying about how the HFA is an "ultra murky" statute, that gives "no direction whatever to law enforcement."

37. JONES and COOK traded emails with draft language, noting at one point that "if we want to talk about due process, there it is," before forwarding a final draft to SCAG admin staff directing the opinion be tagged as "Constitutional law" with the description "An opinion on the appropriate procedure to pursue enforcement of the Hemp Farming Act with respect to hemp grown in violation of the Act."

38. The final opinion signed by JONES and COOK on behalf of SCAG dated August 8, 2019 (August 8th Op.) was addressed to WHITSETT and specifically provided the "specific guidance" WHITSETT had requested "on the proper procedure" when enforcing a "willful violation" included that "SLED should seek judicial authorization for illegally-grown hemp in order to ensure that the grower receives due process," that authorization be sought "with notice to the grower and an opportunity for them to be heard in a hearing in an abundance of caution."

39. The August 8th Op. concluded by pointing out the DAG Defendants "may wish" to promulgate regulations to address some of the "numerous issues" that had been raised by SLED and SCAG regarding their perceived shortcomings with the HFA as drafted by the SC Legislature, but failed to mention the DAG Defendants were required by law to have done that and had failed to do so. *See* the state plan submission requirement of the HFA described above.

40. The regulations suggested by JONES and COOK should have been covered within the "state plan." This is evidenced by the "state plan" which was ultimately submitted and approved **after** the actions taken by the Defendants to arrest and destroy Pendarvis' hemp crop containing an entire section on "Enforcement," detailing "Adjudicatory Proceedings" in which "the Commissioner shall notify the Permittee of the alleged violation as well as an opportunity to respond therein, by certified mail, prior to any scheduled hearing date" (*see* State Plan, Sec.17(1(b)); "no penalty shall be assessed, nor may any permit be suspended or revoked by the Commissioner prior to the holding on an adjudicatory hearing" (Sec.17(1(d)); requiring the adjudicatory hearing to be conducted pursuant to the S.C. Administrative Procedures Act (Sec.17(1(e)); and providing an appeals process (Sec.17(2)).

41. On August 29, 2019, UNDERWOOD sent Pendarvis an email that was "the official response" of DAG, courtesy copied to TERRY and ELSALAH, wherein DAG finally notified Pendarvis he was being found in willful violation of the HFA for growing hemp on acreage not on record with DAG; that his amendment applications addressing the location violation "will not be processed"; and that DAG had notified SLED. Nowhere in that "official response" was there any notification or explanation about any process by which Pendarvis could challenge that finding or seek judicial review of the finding, nor was there any notification about what, if any, enforcement action was or would be taken against Pendarvis.

11

**JA360**

42. Pendarvis called UNDERWOOD several times during the following weekend, asking UNDERWOOD what that "official response" meant. UNDERWOOD relayed those communications to WELLS via a written statement wherein he described that Pendarvis "seemed confused and asked what he needed to do."

43. Despite the above, from September 6 through September 11, 2019, DAG Defendants JEFFCOAT, UNDERWOOD, ELSALAH, and TERRY began emailing Pendarvis in attempts to obtain evidence to be used against Pendarvis by SLED, threatening Pendarvis' ability to participate in the hemp program if he did not cooperate.

44. During the same time as DAG's campaign to obtain evidence for SLED, SLED was seeking judicial authorization to seize and destroy Pendarvis' hemp crops. Specifically, NEALE, ONEAL, WELLS and WHITSETT all took part in trying to get the Chief Administrative Judge for Dorchester County, Hon. Diane S. Goodstein to sign a proposed *ex parte* "Hemp/Marijuana Seizure Order and Order of Destruction." In trying to get Judge Goodstein to sign their proposed order, these SLED Defendants intentionally provided a different AG opinion, other than the August 8th AG Opinion, with the opinion provided notably missing the due process safeguards of notice and a hearing.

45. Vie email dated September 11, 2019 to WHITSETT and courtesy copied to NEALE, ONEAL and WELLS, Judge Goodstein refused to authorize the SLED Defendants conduct in an *ex parte* manner, instead offering the SLED Defendants the opportunity to have a hearing on the matter. WHITSETT refused Judge Goodstein's offer.

46. After Judge Goodstein refused to allow the SLED Defendant to seize and destroy Pendarvis' hemp crop without notice to him and a hearing, the SLED Defendants, the DAG Defendants and the SCAG Defendants conspired to find a way to seize and destroy Pendarvis' hemp crop

12

**JA361**

without judicial authorization. Specifically, emails dated September 17, 2019 show UNDERWOOD directing JEFFCOAT, with copies to WELLS, ELSALAH and TERRY, to send additional information to WELLS. The next day, WELLS sending an email titled "Plan for Destruction of Hemp Field in Dorchester Co – Trent Pendarvis" to ONEAL, NEALE, WHITSETT and GWOOD, that discusses communications with "my contact" at FORESTRY about equipment for destroying the hemp and further detailing how they will show up Pendarvis' farm and then contact him to inform him about "the arrest warrant and the plants for destruction."

47. Plaintiff is informed and believes that CALORE was the "contact" at FORESTRY and/or the person at FORESTRY who authorized/assigned/approved the use of FORESTRY equipment and SCRUGGS and EADDY in destroying Pendarvis hemp crop.

48. At 7:20 am on September 19, 2029, WHITSETT emailed COOK asking for a phone call that morning because he had a hemp update KEEL wanted him to discuss. Soon after, WHITSETT forwarded COOK the "plan" email WELLS had sent the day before and then forwarded the HPA Pendarvis had signed to JONES and COOK, along with allegations that 2 of 6 samples "from this illegal field were above the .3 allowable threshold."

49. In less than two hours, JONES and COOK "amended" their August 8th AG Opinion to agree with the SLED Defendants new argument that Pendarvis had "consented" to the seizure and destruction of his hemp crop in the HPA and no judicial authorization was necessary.

50. That "amended" AG opinion issued directly to the SLED Defendants via email at 10:11 am on September 19, 2019, was not processed by the SCAG Defendants through normal procedures and was never publicly published. Its existence was unknown until it was discovered during

the civil litigation filed in Dorchester County. It was such an extraordinary event, that JONES got a thank you email from WHITSETT, which he shared with COOK that afternoon.

51. KEEL, through WHITSETT, had specifically informed the SCAG Defendants that Judge Goodstein had refused to judicially authorize their conduct.

52. Sometime the same morning as WHITSETT was getting that extraordinary, amended AG opinion, NEALE obtained Arrest Warrant 2019A1810300867 for a "Miscellaneous/General Sessions Misdemeanor Offense where no punishment provided by statute" from Dorchester County Magistrate Judge Ryan D. Templeton. The warrant was prepared by NEALE with assistance/review from GWOOD.

53. Notably absent from the warrant or its accompanying probable cause affidavit is any notice that the SLED defendants were going to seize and destroy Pendarvis' hemp crop upon serving the requested arrest warrant **or** that the SLED defendants had previously attempted to obtain judicial authorization for seizure and destruction from the Circuit Court and that judicial authorization had been denied. WHITSETT has verified under oath such information was **not** relayed to Magistrate Judge Templeton.

54. On September 19, 2019, at approximately 11:45 a.m., numerous Defendants showed up at Pendarvis' farm in Dorchester County. Pendarvis is informed and believes that specific individual defendants present at his Dorchester County farm that day were ONEAL, NEALE, GWOOD, HOLDEN, STOKES, DIXSON, THOMPSON, KRUTAK, SCRUBBS and EADDY, but he believes there may have been other individuals also present.

55. Interactions between Pendarvis and some of the defendants at his Dorchester County farm on September 19, 2019, are memorialized via a body-worn camera (BWC) video, which shows Pendarvis **refusing to consent to the destruction of his hemp crop** and instead requesting

14

**JA363**

that he be allowed to call his attorney, such communications being made directly to/in the presence of NEALE, ONEAL and GWOOD

56. Plaintiff is informed and believes that ONEAL and GWOOD intentionally cut off GWOOD's BWC mic so as to willfully and intentionally fail to preserve video evidence, conduct which violates SLED Policy 13.43 "Body Worn Cameras."

57. All told, Pendarvis requested due process **before** his hemp crop was destroyed at least seven (7) times, with the BWC videos showing these requests being made in full view and hearing of ONEAL, NEALE, GWOOD, STOKES, and THOMPSON. Those requests by Pendarvis included specific requests to contact his lawyer **before** his hemp crop was destroyed.

58. Pendarvis' was arrested and handcuffed by ONEAL, NEALE and GWOOD, then transported by KRUTAK to the Dorchester County Detention Center where he was booked.

59. While Pendarvis was being transported to the detention center, the on-scene Defendants proceeded to completely destroy his Dorchester County hemp crop by hand and the assistance of bushhogging Pendarvis' fields with SC Forestry equipment. Plaintiff is informed and believes ONEAL, NEALE, WELLS, HOLDEN and GWOOD personally took part in the destruction of his hemp crop, physically taking possession of and destroying hemp plants.

60. Pendarvis is informed and believes that FORESTRY agents/employees SCRUBBS and EADDY personally assisted with the destruction of his hemp crop, using FORESTRY equipment (tractors and bush hogs) to mow down his hemp crop and that their participation and the use of that equipment was approved and arranged by CALORE.

61. That email communications show the DAG Defendants coordination with the SLED Defendants conduct which include withholding notice of the willful violation from Pendarvis at SLED's request, directing that information not be shared with the Plaintiff, coordinating

15

**JA364**

communications from DAG to Pendarvis with SLED, seeking evidence from Pendarvis at SLED's request, and coordinating public statements before the arrest/seizure on September 19, 2019. That UNDERWOOD, TERRY, LEACH, AWOOD, WEATHERS, JEFFCOAT and MOORE were all included on such communications, had knowledge of what was occurring and knew/should have known that such conduct posed a risk of violating the Plaintiff's constitutional rights.

62. That following the arrest of Pendarvis and destruction of his hemp crop, KEEL and WHITSETT requested assistance from the SCAG Defendants in responding to civil litigation filed by Pendarvis' lawyers in Marion County. YOUNG, WILSON, SMITH, LYNCH, KIRKLAND, VORBERGER all communicated via emails about the civil litigation and knew or should have known that the SLED Defendants had not disclosed the "amended" AG Opinion to the Marion County Court or Pendarvis' lawyers, yet never took any action to disclose that information OR instruct the SLED Defendants to do so.

63. That following the arrest of Pendarvis and destruction of his hemp crop, both the SLED Defendants and SCAG Defendants monitored public media reports about the arrest of Pendarvis and the seizure/destruction of his hemp crop, and actively responded to media in efforts to control the narrative of such media coverage. That at no time did either the SLED Defendants or SCAG Defendants disclose the emailed "amended" AG opinion, the unusual nature by which it was generated, that Judge Goodstein had refused to judicially authorize the seizure and destruction of Pendarvis' field or that the DAG Defendants had failed to comply with the HFA and create a state plan. Specifically, involved in this conduct were KITTLE, COOK, YOUNG and KEEL.

64. Since September 19, 2019, the SLED and DAG Defendants have actively and willfully withheld information and discovery from Pendarvis in both the criminal prosecution and the two pending civil actions in Marion and Dorchester County State Courts. They have refused to produce relevant discovery and provided false/misleading responses, resulting in unnecessary and prejudicial delay to Pendarvis due process rights and his right to access the courts.

### FOR A FIRST CAUSE OF ACTION
### VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983
### (VIOLATION OF 4TH AND 14TH AMENDMENTS RIGHTS BY DEFENDANTS NEALE, WELLS, ONEAL, WHITSETT, GWOOD, HOLDEN, DIXON, THOMPSON AND KRUTEK)

65. That these Defendants were acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy.

66. That since the beginning of this matter in May 2019, these Defendants were well aware of Pendarvis' constitutional right under the Fourth Amendment to be secure in his person and effects against unreasonable searches and seizures, with that right not to be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

67. That these Defendants were well aware that the Fourteenth Amendment protected Pendarvis' Fourth Amendment rights from being violated by state actors/conduct such as these Defendants.

68. That during September 2019, these Defendants worked to obtain and execute arrest warrant 2019A1810300867 for the offense of Unlawful Cultivation of Hemp (CDR Code 354); That said warrant was obtained by Defendant NEALE and Defendant GWOOD when they presented an inaccurate and incomplete information to the Magistrate and when they

17

**JA366**

specifically mislead the Magistrate by omitting and failing to advise the Magistrate that the Chief Administrative Judge for the Circuit and previously refused to approve their actions and that they intended to destroy the Plaintiff's property upon execution of the arrest warrant they were seeking.

69. That these Defendants knowingly acted to intentionally deprive Pendarvis of due process protections afforded him under the law; The actions of these Defendants were in bad faith.

70. Defendant NEALE violated Pendarvis' Fourth Amendment rights by personally obtaining the warrant, formulating the plan to wrongfully search and seize Pendarvis and his effects, and then actively executing that plan and participating in the unreasonable search and seizure of Pendarvis and his effects, through the displaying and deploying of force to execute the warrant, taking Pendarvis into custody and seizing his effects; That Defendant NEALE knowingly and intentionaly presented incomplete and misleading information to the Magistrate all to the detriment of Pendarvis.

71. Defendant WELLS violated Pendarvis' Fourth Amendment rights by formulating the plan to search and seize Pendarvis and his effects, and then actively executing that plan and participating in the unreasonable search and seizure of Pendarvis and his effects, through the displaying and deploying of force to execute the warrant, taking Pendarvis into custody and seizing his effects; That this Defendant did participate in the wrongful seizure of Pendarvis and his hemp crop.

72. Defendant ONEAL violated Pendarvis' Fourth Amendment rights by formulating the plan to search and seize Pendarvis and his effects, and then actively executing that plan and participating in the unreasonable search and seizure of Pendarvis and his effects, through the displaying and deploying of force to execute the warrant, taking Pendarvis into custody and

seizing his effects  That this Defendant did participate in the wrongful seizure of Pendarvis and his hemp crop.

73. Defendant WHITSETT violated Pendarvis' Fourth Amendment rights by formulating the plan to search and seize Pendarvis and his effects; That Defendant WHITSETT parficipated in this endeavor by assisting in the formulation of a plan that ignored the opinions of the SCDAG Defendants by working to provide incomplete, inaccurate and misleading information to the Magistrate's Judge and in failing to follow the directives of the Chief Administrative Judge for the Circuit.

74. Defendant GWOOD violated Pendarvis' Fourth Amendment rights by formulating the plan to search and seize Pendarvis and his effects, and then actively executing that plan and participating in the unreasonable search and seizure of Pendarvis and his effects, through the displaying and deploying of force to execute the warrant, taking Pendarvis into custody and seizing his effects  That Defendant GWOOD assisted Defendant NEALE in preparing and reviewing the warrant which they knew had been presented with misleading, inaccurante and incomplete information and was a part of the plan to wrongfully seize Pendarvis and his hemp crop.

75. Defendant HOLDEN, DIXON, THOMPSON, AND KRUTEK violated Pendarvis' Fourth Amendment rights by executing the plan to search and seize Pendarvis and his effects and actively participating in the unreasonable search and seizure of Pendarvis and his effects, through the displaying and deploying of force to execute the warrant, taking Pendarvis into custody and seizing his effects;  That these Defendant actively participated in the wrongful arrest Pendarvis and the seizure of Pendarvis and his hemp crop by their presence and show of force at the Plaintiff's farm on September 19, 2019.

**JA368**

76. As a direct and proximate result of these defendants conduct, Pendarvis suffered deprivations of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

77. At all times relevant to this action, these defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff; These Defendants knowingly engaged in a plan to provide incomplete, inaccurate, misleading information while seeking a warrant, in seizing a lawful hemp crop without judicial authority, and in wrongfully seizing Pendarvis himself.

78. The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional rights through the acts and omissions of these defendants when they all planned and participated in the arrest of Pendarvis; These Defendants knew or should have known that Plaintiff had been issued license #1992 by DAG Defendants; Said license having been issued on May 1, 2019; That said license authorized Pendarvis to grow and cultivate hemp, a legal crop

**FOR A SECOND CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF 5TH, 8th AND 14TH AMENDMENTS RIGHTS BY DEFENDANTS WEATHERS, TERRY, UNDERWOOD, ELSALAH, JEFFCOAT, STOKES, KEEL, WHITSETT, ONEAL, WELLS, GWOOD, NEALE, HOLDEN, DIXSON, THOMPSON, KRUTEK, CALORE, SCRUGGS, EADDY, COOK, AND JONES)**

79. That these Defendants were acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy.

80. That since the beginning of this matter in May 2019, these Defendants were well aware of Pendarvis' constitutional right under the Fifth Amendment to not be deprived of his life, liberty or property, without due process of law.

**JA369**

81. That since the beginning of this matter in May 2019, these Defendants were well aware of Pendarvis' constitutional right under the Eighth Amendment to not be subjected to excessive fines.

82. That these Defendants were well aware that the Fourteenth Amendment protected Pendarvis' Fifth and Eighth Amendment rights from being violated by state actors/conduct such as these Defendants.

83. Pendarvis applied for a Hemp license which was issued by DAG Defndants on or about May 1, 2019; That License #1992 authorized Pendarvis to cultivate and grow hemp in South Carolina.

84. That in obtaining his license, Pendarvis was required to enter into a Hemp Farm Programing Particitation Agreement (HPA) and he did so.

85. Defendant WEATHERS, TERRY, UNDERWOOD, ELSALAH, and STOKES violated Pendarvis' Fifth and Eighth Amendment rights by participating in finding that Pendarvis willfully violated the The South Carolina Hemp Farming Act (HFA), knowing that they had failed to create and submit a state plan which denied Pendarvis information regarding violations of the HFA and due process protections required by law.

86. That Defendant WEATHERS wrongfully determined that Pendarvis' alledged violation was "willful"; that Defendant WEATHERS knew or should have known that there was an inadequate process for making such a finding; that this Defendant knew or should have known his finding denied Pendarvis his due process rights under the Fifth Amendment; that Defendant WEATHERS knew that this erroneous finding was going to be used to not only arrest Pendarvis, but to also seize and destroy Pendarvis' property without any due process; that Defendant WEATHERS knew that the practical effect of his actions would be the destruction

**JA370**

of property with significant monetary value, thus violating Pendarvis' Eighth Amendment right against excessive fines.

87. That during July and August of 2019, Defendants UNDERWOOD, TERRY, ELSALAH communicated with each other and, on information and belief, with Defendant WEATHERS to develop a plan to deny Pendarvis due process and by actively misleading Pendarvis as to what steps that he needed to take in order to be in compliance with the HFA.

88. That during early August of 2019, Defendants WEATHERS, UNDERWOOD, TERRY, ELSALAH, NEALE and ONEAL developed a plan to wrongfully find that Pendarvis had willfully violated the HFA and pursue criminal enforcement against Pendarvis, exchanging emails about said plan; that said Defendants knew that they were developing a plan that afforded no due process to Pendarvis to challenge this finding; that these Defendants discussed language by which to find this violation, acting together to mislabel the violation in such a manner that they knew Pendarvis would be unable to exercise due process; that these Defendants coordinated withholding notice to Pendarvis about the "willful violation" finding; that these Defendants did this while knowing the DAG Defendants had violated state law by not having submitted a state plan, which would have protected the very rights these Defendants were violating; that these Defendants did this for the purpose of seizing and destroying Pendarvis' property with significant monetary value in violation of his Fifth and Eighth Amendment rights.

89. That in August and September of 2019, Defendant ONEAL, WELLS, GWOOD, and NEALE wrongfully participated in a plan to mislabel the actions of Pendarvis as willful to find that the actions of Pendarvis were not negligent and to implement a plan that would prevent Pendarvis from exercising due process to challenge while knowing that this plan would result in the

22

**JA371**

wrongful arrest and seizure of his hemp crop, said participation being documented via email communications; These Defendants violated Pendarvis' Fifth and Eighth Amendment rights by participating in the arrest of Pendarvis and the seizure and destruction of his property without due process in violation of Pendarvis' Fifth Amendment rights and in the destruction of Pendarvis' property with significant monetary value violating Pendarvis' Eighth Amendment right against excessive fines.

90. That on September 2019, Defendants HOLDEN, DIXSON, THOMPSON, and KRUTEK actively participated in the arrest of Pendarvis and the wrongful seizure of his hemp crop by being present at Pendarvis farm and showing force to take him into custody, allowing Pendarvis' hemp crop to be seized and destroyed without Pendarvis able to stop it; That Defendant HOLDEN actively participated in the destruction of Pendarvis' hemp crop. That these Defendants' conduct violated Pendarvis' Fifth and Eighth Amendment rights, denied Pendarvis due process in violation of Pendarvis' Fifth Amendment rights and in the destruction of Pendarvis' property with significant monetary value, violating Pendarvis' Eighth Amendment right against excessive fines.

91. That on September 2019, Defendant CALORE, SCRUGGS, and EADDY actively participated in the seizure and destruction of Pendarvis' hemp crop by CALORE authorizing and assigning SCRUGGS and EADDY to assist with Forestry department equipment in the destruction of Pendarvis and SCRUGGS and EADDY operating that equipment for that purpose; That these Defendants' participation in the seizure and destruction of Pendarvis' hemp crop violated Pendarvis' Fifth and Eighth Amendment rights, denying Pendarvis due process in violation of Pendarvis' Fifth Amendment rights and in the destruction of Pendarvis' property with

significant monetary value, violating Pendarvis' Eighth Amendment right against excessive fines

92. After Judge Goodstein had refused to authorize their conduct, recognizing that any enforcement action against Pendarvis was fraught with legal peril, Defendants KEEL, WHITSETT, ONEAL, WELLS and UNDERWOOD, entered into a plan to circumvent the courts in order to violate Pendarvis' constitutional rights; that these Defendants knew that the DAG Defendants had failed to create and submit a state plan to the USDA as required by the HFA; that these Defendants decided to engage the assistance of SCAG Defendants to circumvent procedure they knew was required to protect Pendarvis' constitutional rights, for the specific purpose of seizing and destroying Pendarvis' property in violation of his Fifth and Eighth Amendment rights, by seeking an "amended" AG opinion.

93. That UNDERWOOD enlisted the assistance of JEFFCOAT, ELSALAH and TERRY to achieve this purpose, including all of them in emails with WELLS on or about September 17, 2019.

94. Defendants KEEL, WHITSETT, COOK, JONES circumvented the usual process for obtaining/issuing an opinion of the AG, issuing an extraordinary, unpublished, last-minute, emailed "amended" opinion to provide legal cover for the SLED Defendants to conduct the seizure and destruction they had conspired with the DAG Defendants to achieve. That COOK and JONES issued that extraordinary opinion knowing it was needing by the SLED Defendants because Judge Goodstein had refused to judicially authorize the seizure and destruction of Pendarvis' property and that the SLED Defendants had the Forestry and DCSO Defendants ready to act immediately upon the issuance of the "amended opinion." KEEL, WHITSETT, COOK and JONES all knew and intended the amended opinion to be used as the basis to deny

**JA373**

Pendarvis his Fifth Amendment due process rights these defendants knew their conduct jeaoparized; that these Defendants knew that their conduct plan would result in the wrongful seizure and destruction of Pendarvis' property with significant monetary value, also violating Pendarvis' Eighth Amendment right against excessive fines.

95. As a direct and proximate result of these defendants conduct above, Pendarvis suffered deprivations of his rights secured by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

96. At all times relevant to this action, these defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff; That these defendants knew that their acts and omissions directed at a South Carolina farmer engaged in growing a lawful crop were in violation of the HFA and would lead to his rights being transgressed These defendants acted in concert to fail to follow the law, to make erroneous findings, to manufacture findings and present inaccurate, misleading, and incomplete information to the Magistrate Court and the Circuit Court, to justify their constitutionally violative conduct.

97. The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional rights through the acts and omissions of these Defendants.

**FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF 4th AND 14TH AMENDMENTS AGAINST DEFENDANTS**
**WEATHERS, TERRY, UNDERWOOD, LEACH, AWOOD, STOKES, MOORE,**
**ELSALAH, JEFFCOAT, KEEL, WHITSETT, ONEAL, WELLS, GWOOD AND NEALE)**

98. That these Defendants were acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy.

25

**JA374**

99. That since the beginning of this matter in May 2019, these Defendants were well aware of Pendarvis' constitutional right under the Fourth Amendment to not be deprived of his life, liberty or property, without due process of law, which includes the right to be free from malicious prosecution.

100.   That these Defendants were well aware that the Fourteenth Amendment protected Pendarvis' Fourth Amendment rights from being violated by state actors/conduct such as these Defendants.

101.   That these Defendants initiated or caused to be continued a criminal action against Pendarvis; these Defendants participated in a plan to use incomplete, inacurate, misleading information to obtain a warrant for the arrest of Pendarvis; that based on the plan to avoid providing full and complete and accurate information to the Court, these Defendants wrongfully obtained arrest warrant 2019A1810300867 on September 19, 2019.

102.   That these Defendants failed to present the Office of the First Circuit Solicitor with all of the file information in this case;  that this plan to provide incomplete information to the Prosecutor of the Solicitor's Office handling the case prevented Pendarvis from receiving full discovery that he was entitled to under the Rules of Criminal Procedure and Brady v. Maryland; that the failure to provide all the evidence to the Solicitor and Pendarvis prolonged the  attempt to prosecute the charge against Pendarvis

103.   That the criminal action against Pendarvis was ended in his favor; that once all of the information that these Defendants withheld and failed to disclose was presented to the Solicitor the charge was dismissed.

104.   That at no time was there  probable cause to initiate and/or to continue the criminal action against Pendarvis; that the acts and omissions of these Defendants in concealing and failing to

26

**JA375**

produce all of the relevant file materials wrongfully prolonged the attempt to prosecute Pendarvis.

105.    That these Defendants acted maliciously in developing a plan to present incomplete, inaccurate, and misleading information to the Magistrate's Court of the State of South Carolina, the Circuit Court of the State of South Carolina, and the Solicitor's Office of the First Judicial Circuit.

106.    That Pendarvis suffered a deprivation of his liberty when the acts of these Defendants resulted in his wrongful seizure and arrest;  That Pendarvis' suffering was a consequence of these Defendants' conduct.

107.    Defendant WEATHERS, TERRY, UNDERWOOD, LEACH, AWOOD, STOKES, MOORE, ELSALAH, and JEFFCOAT participated in a plan to provide inaccurate, incomplete, and misleading information to SLED, the Courts of this State and the Solicitor of the First Judicial Circuit and in so doing violated Pendarvis' Fourth Amendment right to be free from malicious prosecution; that these Defendant's participation in this plan which resulted in a finding that Pendarvis had allegedly violated the HFA in a willful manner; that the actions of these defendants had the result of denying Pendarvis his due process rights; that these Defendants knew or should have known that their wrongful failure to follow the provisions of the HFA and create this wrongful finding would result in injury and damage to Plaintiff; that these Defendants further violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in the gathering of evidence/information to further the criminal process and/or withholding evidence/information from being produced to the Courts, the Solicitor and Pendarvis.

**JA376**

108.    Defendants KEEL, WHITSETT, ONEAL, WELLS and GWOOD violated Pendarvis' Fourth Amendment right to be free from malicious prosecution by participating in initiating/continuing criminal process against Pendarvis and participating in the withholding evidence/information from being produced to Pendarvis; that these Defendants knew of file materials that were relevant to exonerate Pendarvis and failed to disclose and/or actively withheld information from the Office of the Solicitor for the First Judicial Circuit and Pendarvis.

109.    At all times relevant to this action from the time of initiation of the plan to arrest Pendarvis through the time the charges were ultimately ended in his favor, these Defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff; that the acts and omissions of these defendants (a) in concealing or failing to provide evidence to the Courts and Solicitor; (b) in failing to follow the provisions of the HFA; and (c) in wrongfully attempting to prosecute a farmer engaged in the production of a lawful crop caused injury and damages to Plaintiff.

110.    The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional rights through the acts and omissions of these defendants.

**FOR A FOURTH CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATIONS OF PLAINTIFF'S FIRST AMENDMENT RIGHTS BY SCAG DEFENDANTS, KEEL, WHITSETT, ONEAL, WEATHERS, UNDERWOOD AND TERRY)**

111.    That these Defendants were acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy.

112.    That since his arrest on September 19, 2019, all SCAG Defendants, KEEL, WHITSETT, ONEAL, WEATHERS, UNDERWOOD and TERRY were well aware of Plaintiff's

**JA377**

constitutional rights under the First Amendment to access to the courts and remedy for legal injury.

113.    That all SCAG Defendants, KEEL, WHITSETT, ONEAL, WEATHERS, UNDERWOOD and TERRY were well aware that the Fourteenth Amendment protected Plaintiff's First Amendment rights from being violated by state actors/conduct such as these Defendants.

114.    That since his arrest on September 19, 2019, all SCAG Defendants, KEEL, WHITSETT, ONEAL, WEATHERS, UNDERWOOD and TERRY knew or should have known, that the Plaintiff was asserting his First Amendment right to access to the courts and right to remedy for legal injury. That knowledge would have arisen, at a minimum, through the service of, and subsequent responses to, the summons and complaint and discovery requests in C/A No. 2019-CP-33-00675 in the Marion County Court of Common Pleas.

115.    That all SCAG Defendants, KEEL, WHITSETT, ONEAL, WEATHERS, UNDERWOOD and TERRY were well aware that the Fourteenth Amendment protected Plaintiff's First Amendment rights from being violated by state actors/conduct such as these Defendants.

116.    That since his arrest on September 19, 2019, all SCAG Defendants, KEEL, WHITSETT, ONEAL, WEATHERS, UNDERWOOD and TERRY knew or should have known, that the Plaintiff was asserting his First Amendment right to access to the courts and right to remedy for legal injury. That knowledge would have arisen, at a minimum, through the service of, and subsequent responses to, the summons and complaint and discovery requests in C/A No. 2019-CP-33-00675 in the Marion County Court of Common Pleas.

117.    That since his arrest on September 19, 2019, all SCAG Defendants, KEEL, WHITSETT, ONEAL, WEATHERS, UNDERWOOD and TERRY either actively participated in, or failed to act and allowed others to, violate Plaintiff's First Amendment rights through the willful and

intentional denial of facts known to be true and/or willful and intentional misstatement of facts in responding to the allegations of the Plaintiff's state court action and/or failures to fully and properly respond to Plaintiff's discovery requests in that state court action. Specifically, these Defendants failed to identify and produce relevant and responsive discovery and provided false and misleading discovery responses in both the Marion County and Dorchester County state court civil actions.

118.    As a direct and proximate result of all SCAG Defendants, KEEL, WHITSETT, ONEAL, WEATHERS, UNDERWOOD and TERRY conduct as described above, the Plaintiff suffered deprivations of his rights secured by the First and Fourteenth Amendments to the United States Constitution.

119.    At all times relevant to this action, all SCAG Defendants, KEEL, WHITSETT, ONEAL, WEATHERS, UNDERWOOD and TERRY knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff and violation of his constitutional rights.

120.    The Plaintiff was harmed and suffered injury, harm and damages due to all SCAG Defendants, KEEL, WHITSETT, ONEAL, WEATHERS, UNDERWOOD and TERRY violation of his constitutional rights.

**FOR A FIFTH CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(BYSTANDER LIABILITY FOR FAILURE TO PROTECT THE PLAINTIFF FROM**
**CONSTITUTIONAL VIOLATIONS OF PLAINTIFF'S FIRST, FOURTH, FIFTH,**
**EIGHTH AND FOURTEENTH AMENDMENT RIGHTS BY DEFENDANTS WILSON,**
**YOUNG, COOK, SMITH, LYNCH, KITTLE, JONES, VORBERGER, KEEL,**
**WHITSETT, WEATHERS AND UNDERWOOD)**

121.    That these Defendants were acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy.

30

**JA379**

122.    That since the beginning of this matter in May 2019, Defendants WILSON, YOUNG, COOK, SMITH, LYNCH, KITTLE, JONES, VORBERGER, KEEL, WHITSETT, WEATHERS and UNDERWOOD were well aware of Plaintiff's constitutional rights under the First Amendment to access to the courts and remedy for legal injury.

123.    These Defendants were well aware of Pendarvis' constitutional right under the Fourth Amendment to not be deprived of his life, liberty or property, without due process of law, which includes the right to be free from malicious prosecution.

124.    These Defendants were well aware of Pendarvis' constitutional right under the Fifth Amendment to not be deprived of his life, liberty or property, without due process of law.

125.    These Defendants were well aware of Pendarvis' constitutional right under the Eighth Amendment to not be subjected to excessive fines.

126.    These Defendants were well aware that the Fourteenth Amendment protected Pendarvis' First, Fourth, Fifth and Eighth Amendment rights from being violated by state actors/conduct such as these Defendants.

127.    These Defendants were well aware that state actors may be liable for constitutionally violative conduct of another if they know that a fellow state actor is violating an individual's constitutional rights; have a reasonable opportunity to prevent the harm; and chose not to act.

128.    Pendarvis was harmed and suffered injury in violation of his First, Fourth, Fifth, Eighth and Fourteenth Amendments rights through the acts and omissions of these defendants, as described herein, who were at all times acting under the color or pretense of South Carolina State law, customs, practices, usage and/or policy.

129.    Defendants WILSON, YOUNG, COOK, SMITH, LYNCH, KITTLE, JONES, VORBERGER violated Pendarvis' First, Fourth, Fifth and Eighth amendment rights when

**JA380**

they knew or should have known, that the basis for Pendarvis' arrest and/or the seizure/destruction of Pendarvis' hemp crop and/or the criminal process instituted/continued against Pendarvis' were wrongful. Specificically, these Defendants knew or should have known that Pendarvis was being denied due process on the basis of opinions from their own office; that the opinions these Defendants participated in generating and/or providing and/or defending were created, generated, altered, amended, and manipulated in such a manner as to deny Pendarvis said stated constitutional rights; these Defendants knew that their failure to investigate the underlying facts and their failure to follow proper policy and procedure regarding AG opionions would result in Pendarvis' rights being violated; that these Defendants allowed themselves to be wrongfully pursuaded, to alter and amend opinions to cover the actions of the SLED and DAG Defendants; that by making these alterations and amendments and by engaging in conduct to cover for the misdeeds of the DAG and SLED defendants, that these Defendants actively engaged in efforts to violate the rights of Pendarvis; that these Defendants knew information was being withheld and/or false/misleading information was being provided to the Plaintiff in his state court actions which were infringing upon the Plaintiff's rights to access the courts for legal remedy in violation of his First Amendment rights.

130.   Defendants KEEL AND WHISETT violated Pendarvis' First, Fourth, Fifth and Eighth amendment rights when they knew or should have known, that the basis for Pendarvis' arrest and/or the seizure/taking of Pendarvis' hemp crop and/or the criminal process instituted/continued against Pendarvis was wrongful. Specifically, these Defendants knew or should have known that Pendarvis had been/was being denied due process on the basis of failing to adhere to directions from both the Chief Administrative Judge for the Circuit and the

**JA381**

S.C. Attorney General; that both the Chief Administrative Judge for the Circuit and the S. C. Attorney General had advised/instructed Pendarvis' constitutional right be protected by virtue of a hearing before a judge and these Defendants specifically pursued, and/or allowed their subordinates to pursue, a course of conduct to deny Pendarvis those protections; that these Defendants knew information was being withheld and/or false/misleading information was being provided to the Plaintiff in his state court actions which were infringing upon the Plaintiff's rights to access the courts for legal remedy in violation of his First Amendment rights.

131.    Defendants WEATHERS AND UNDERWOOD violated Pendarvis' First, Fourth, Fifth and Eighth amendment rights when they knew or should have known, that the basis for Pendarvis' arrest and/or the seizure/taking of Pendarvis' hemp crop and/or the criminal process instituted/continued against Pendarvis was wrongful. Specifically, WEATHERS and UNDERWOOD knew or should have known that Pendarvis' had been/was being denied due process on the basis of knowing DAG's finding of a willful violation denied due process by failing to protect those due process rights; that these Defendants knew that the willful violation findings was in violation of South Carolina law in that they knew they had failed to timely create and submit a state plan which would have protected the Plaintiff's Fourth, Fifth and Eighth Amendment rights; that these Defendants knew information was being withheld and/or false/misleading information was being provided to the Plaintiff in his state court actions which were infringing upon the Plaintiff's rights to access the courts for legal remedy in violation of his First Amendment rights.

132.    At all times relevant to this action, these Defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff.

33

**JA382**

133.    The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional

rights through the acts and omissions of these Defendants.

<div align="center">

**FOR A SIXTH CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(SUPERVISOR LIABILITY FOR CONSTITUTIONAL VIOLATIONS OF PLAINTIFF'S
FIRST, FOURTH, FIFTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS BY
DEFENDANTS WILSON, KEEL, WEATHERS , KNIGHT AND CALORE)**

</div>

134.    That these Defendants were acting under the color or pretense of South Carolina State law,

customs, practices, usage, and/or policy.

135.    That since the beginning of this matter in May 2019, these Defendants were well aware of

Plaintiff's constitutional rights under the First Amendment to access to the courts and remedy

for legal injury.

136.    That these Defendants were well aware of Pendarvis' constitutional right under the Fourth

Amendment to not be deprived of his life, liberty or property, without due process of law,

which includes the right to be free from malicious prosecution.

137.    That since the beginning of this matter in May 2019, these Defendants were well aware of

Pendarvis' constitutional right under the Fifth Amendment to not be deprived of his life, liberty

or property, without due process of law.

138.    That since the beginning of this matter in May 2019, these Defendants were well aware of

Pendarvis' constitutional right under the Eighth Amendment to not be subjected to excessive

fines.

139.    That these Defendants were well aware that the Fourteenth Amendment protected

Pendarvis' First, Fourth, Fifth and Eighth Amendment rights from being violated by state

actors/conduct such as these Defendants.

<div align="center">

**JA383**

</div>

140.    That since the beginning of this matter in May 2019, these Defendants were well aware that of their duty to adequately train and/or supervise their subordinates to the rights of persons in similar situations to the Plaintiff.

141.    Pendarvis was harmed and suffered injury in violation of his First, Fourth, Fifth, Eighth and Fourteenth Amendments rights through the acts and omissions of the defendants, as described herein, who were at all times acting as subordinates of these Defendants under the color or pretense of South Carolina State law, customs, practices, usage and/or policy.

142.    Defendant WILSON had duty to supervise YOUNG, COOK, SMITH, LYNCH, KITTLE, JONES, KIRKLAND and VORBERGER, which included not allowing his office's opinions to be edited/changed at the request of law enforcement to achieve a desired goal, especially with knowledge that the edits/changes are going to be used to justify the violation of a person's constitutional rights and to ensure that his office, in keeping with its duty of candor to the court and duty to protect the constitutional rights of citizens like the Plaintiff, disclose when information was being withheld and/or inaccurately being presented to the Court and the Plaintiff.

143.    Defendant KEEL had a duty to supervise WHITSETT, ONEAL, WELLS, GWOOD, NEALE, and HOLDEN, which included not allowing them to formulate a plan designed to arrest and destroy a person's property in violation of his constitutional rights, especially with knowledge that the law being used to justify your subordinates' actions was "unclear," and to ensure that his office, in keeping with its duty of candor to the court and duty to protect the constitutional rights of citizens like the Plaintiff, disclose when information was being withheld and/or inaccurately being presented to the Court and the Plaintiff.

JA384

144.    Defendant WEATHERS had a duty to supervise TERRY, UNDERWOOD, LEACH, AWOOD, STOKES, ELSALAH, JEFFCOAT and MOORE, which included the duty to not allow them to participate in the violations of a person's constitutional rights through a process which they knew was unclear by reason of his own office's failure to comply with the HFA, and to ensure that his office, in keeping with its duty of candor to the court and duty to protect the constitutional rights of citizens like the Plaintiff, disclose when information was being withheld and/or inaccurately being presented to the Court and the Plaintiff.

145.    Defendant KNIGHT had a duty to supervise DIXSON, THOMPSON and KRUTEK, which included a duty to not allow them to be used to seize and destroy a person's property without a court order in violation of that person's constitutional rights.

146.    Defendant CALORE had a duty to supervise SCRUGGS and EADDY, which included a duty to not allow them to be used to seize and destroy a person's property without a court order in violation of that person's constitutional rights.

147.    That Defendants WILSON, KEEL WEATHERS, KNIGHT and CALORE improperly supervised the Defendants of their respective agencies and directed them to participate in wrongful conduct that harmed Pendarvis as described herein;

148.    That Defendants WILSON, KEEL, WEATHERS, KNIGHT and CALORE failed to adhere to norms and policies for the conduct of their offices which resulted in violations of the rights of Pendarvis.

149.    At all times relevant to this action, these defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff.

150.    The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional rights through the acts and omissions of these supervisory defendants.

**JA385**

**FOR A SEVENTH CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(CONSPIRACY TO VIOLATE DUE PROCESS RIGHTS – 1st, 4TH, 5TH, 8TH, AND 14TH**
**AMENDMENTS, OBSTRUCT JUSTICE & DENYING THE PLAINTIFF RIGHTS AND**
**PRIVILEGES AGAINST ALL DEFENDANTS)**

151.    That the Defendants were all acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy.

152.    That since the beginning of this matter in May 2019, the Defendants were well aware of Pendarvis' constitutional rights, including his rights to:

      a.   due process of law;

      b.   to be free from unnecessary and unwarranted force;

      c.   to be free from false arrest and/or imprisonment;

      d.   to be free from the deprivation of property without due process of law;

      e.   to be free from the deprivation of liberty without due process of law; and,

      f.   to the fair, efficient and speedy administration of justice through the criminal and civil justice system.

153.    As has been described already in this complaint, the Defendants conducted themselves repeatedly in violation of the Plaintiff's constitutional rights, specifically seeking to deny him due process and obstruct justice; that Defendants participated in plans that involved the use of inaccurate, incomplete, and misleading information, that Defendants engaged in conduct that violated the norms and policies of their respective agencies as discribed herein, and that Defendants wrongfully engaged in plans and acts to provide cover for wrongful acts.

**JA386**

154.    That all of these actions by Defendants violated Pendarvis' constitutional rights, denied Pendarivis due process, and interfered with his access to courts and legal remedies.

155.    As a direct and proximate result of the Defendants acts and omissions, the Plaintiff suffered deprivations of his rights secured by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

156.    At all times relevant to this action, the Defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff, but they repeatedly violated the Plaintiff's constitutional rights despite that knowledge.

157.    That the Defendants had notice and knowledge that the Plaintiff was being denied his due process rights prior to the instigation of the civil cases filed by the Plaintiff in Common Pleas Court in both Orangeburg County and Marion County.

158.    That despite having the notice and knowledge that the Plaintiff's constitutional rights were being violated, the Defendants conspired to impede, hinder, obstruct and/or defeat the due course of justice with the intent to deny the Plaintiff the equal protection of the law. Defendants conspired to deny facts they knew to be true in an effort to shield themselves and others from civil liability for the violation of the Plaintiff's civil rights. Specifically, the Plaintiff's First Amendment right to access the courts and seek legal remedy.

159.    Plaintiff was harmed and suffered injury because of the Defendants' violation of the Plaintiff's constitutional rights and that harm has been exacerbated by the conduct of the Defendants in conpiring to impede, hinder, obstruct and/or defeat the due course of justice with the intent to deny the Plaintiff the equal protection of the law.

**JA387**

**PRAYER**

WHEREFORE, Plaintiff prays that the Court entered judgment against the Defendants and award him:

    i.    Actual and consequential damages to compensate the Plaintiff for his out-of-pocket expenses, pain, suffering, mental anguish, humiliation, and the indignity he has suffered because of the Defendants' conduct and the violation of his civil rights;

   ii.    Punitive damages;

 iii.    Attorneys' fees and costs recoverable under 42 U.S.C. § 1988; and

 iv.    Such further relief as is allowed by law and that the Court deems just and proper.

**REQUEST FOR TRIAL BY JURY**

The Plaintiff, John Trenton Pendarvis, hereby demands a trial by jury on all claims.

Respectfully submitted by:

                  **WILLIAMS & WILLIAMS**
                  *s/*  C. Bradley Hutto
                  C. Bradley Hutto (Fed. ID. No. 2024)
                  P.O. Box 1084
                  Orangeburg, SC 29116
                  Phone: (803)534-5218
                  Fax:   (903)536-6298
                  cbhutto@williamsattys.com
                  *-and-*
                  **WUKELA LAW FIRM**
                  Patrick J. McLaughlin (Fed. ID No. 9665)
                  PO Box 13057
                  Florence, SC 29504-3057
                  Phone:  (843) 669-5634
                  Fax:  (843) 669-5150
Orangeburg, SC         E-mail: patrick@wukelalaw.com
November 1, 2023       **ATTORNEYS FOR PLAINTIFF**

**JA388**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

John Trenton Pendarvis,     )
                          )
        Plaintiff,     )
                          )     Civil Action No. 2:22-3142-BHH
v.                      )
                          )
Alan M. Wilson, Mark A. Keel, Hugh )     <u>**ORDER**</u>
E. Weathers, L.C. Knight, W. Jeffrey )
Young, Robert D. Cook, Emory    )
Smith, Jr., Joanne Lee, David S. Jones, )
T. Stephen Lynch, Harley L. Kirkland, )
Wesley Vorberger, Robert Kittle, Adam )
Whitsett, Frank O'Neal, Jason Wells, )
Glenn Wood, John Neale, Rhett   )
Holder, Alden G. Terry, Derek M.  )
Underwood, J. Clint Leach, Aaron  )
Wood, John Stokes, Vanessa Elsalah, )
Brittany Jeffcoat, Eva Moore, Ray  )
Dixon, Frank Thompson, Robert   )
Krutak, Jonathan Calore, Charlie   )
Scrubbs, and Wayne Eaddy,    )
                          )
        Defendants.   )
_____ )

      Plaintiff John Trenton Pendarvis ("Plaintiff") filed this action against the above-named

Defendants for alleged violations of his constitutional rights.  All Defendants filed motions

to dismiss.  (ECF Nos. 76, 77, 78, 79, 80.)  Plaintiff filed responses in opposition, and some

Defendants filed replies.  (*See* ECF Nos. 82, 83, 84, 85, 86, 87, 89, 90, 91.)  In accordance

with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), the matters were

referred to a United States Magistrate Judge for initial review.

      On October 19, 2023, Magistrate Judge Molly H. Cherry issued a Report and

Recommendation ("Report"), outlining the issues and recommending that the Court grant

the motions to dismiss and dismiss this action without prejudice for failure to state a claim

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In the alternative, the Magistrate Judge recommends allowing Plaintiff to file a third amended complaint that adheres to the applicable rules, case law, and the Court's orders.

All parties filed objections to the Magistrate Judge's Report, and some parties filed replies to some objections.  (ECF Nos. 94, 95, 96, 97, 98, 99, 100, 101, 102.)  After *de novo* review, and for the reasons set forth below, the Court adopts the Magistrate Judge's Report, overrules the parties' objections, grants Defendants' motion to dismiss, and dismisses this action without prejudice.

## STANDARDS OF REVIEW

### I.    The Magistrate Judge's Report

The Magistrate Judge makes only a recommendation to the Court.   The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court.  *Mathews v. Weber*, 423 U.S. 261 (1976).  The Court is charged with making a *de novo* determination only of those portions of the Report to which specific objections are made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1). .

### II.   Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of a plaintiff's complaint.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)  To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level."

2

*Twombly*, 550 U.S. at 555.  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. *Id.*  When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  The Supreme Court has explained that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Twombly*, 550 U.S. at 678.

## **DISCUSSION**

The Magistrate Judge thoroughly outlined the procedural history of this case, which can be summarized as follows.  On September 16, 2022, Plaintiff filed his original complaint, which totaled 92 pages with dozens of exhibits copied and pasted or otherwise embedded into the complaint.  (ECF No. 1.)  The original complaint pleaded four causes of action against 33 different individual Defendants, including employees of the South Carolina Attorney General's Office ("SCAG"), the South Carolina State Law Enforcement Division ("SLED"), the South Carolina Department of Agriculture ("SC Dep't. Agric."), the Dorchester County Sheriff's Office, and the South Carolina Forestry Commission.

Some Defendants moved to dismiss Plaintiff's original complaint pursuant to Rule 12(b) for failure to state a claim.  (*See* ECF Nos. 22, 24, 25, 26.)  Other Defendants moved to dismiss pursuant to Rule 8(a) or, alternatively, for a more definite statement pursuant to Rule 12(e).  (*See* ECF Nos. 23, 27, 39.)  Plaintiff filed responses in opposition, asserting

3

**JA391**

that the complaint was sufficient; alternatively, Plaintiff requested leave to file an amended complaint.  (ECF Nos. 31, 32, 33, 34, 40.)

On February 3, 2023, the Magistrate Judge granted Plaintiff leave to amend his complaint, specifically instructing Plaintiff not to embed evidentiary matters into the amended complaint and to limit the amended to complaint to no more than 45 pages.  (ECF No. 47 at 4-5.)

On February 24, 2023, Plaintiff filed an amended complaint totaling 44 pages, naming 32 individual Defendants, and alleging six causes of action arising out of Plaintiff's Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights.  (ECF No. 49.)

Defendants again moved to dismiss the amended complaint, asserting that it failed to comply with the pleading requirements and the Magistrate Judge's prior order, and that it failed to state claim under Rule 12(b)(6).  (ECF Nos. 55, 56, 57, 58, 59.)  In the alternative, some Defendants moved pursuant to Rule 12(e) for a more definite statement. (ECF Nos. 56, 57, 58.)

The Magistrate Judge ultimately agreed that the amended complaint failed to comply with Rule 8 and that it amounted to an improper "shotgun pleading," which did not give Defendants fair notice of the claims against them.  (ECF No. 73.)  Instead of dismissing the complaint as some Defendants requested, however, the Magistrate Judge granted Defendants' Rule 12(e) Motions and ordered Plaintiff to file a second amended complaint in accordance with Rules 8(a) and 12(e) and her prior instructions.  (*Id.*)

On August 25, 2023, Plaintiff filed a second amended complaint, totaling 33 pages and naming 32 individual Defendants.  (ECF No. 74.)  The second amended complaint includes the following six causes of action pursuant to 42 U.S.C. § 1983: (1) violations of

4

**JA392**

the Fourth and Fourteenth Amendments against various Defendants for unreasonable search and seizure; (2) violations of the Fifth, Eighth, and Fourteenth Amendments against various Defendants; (3) violations of the Fourth and Fourteenth Amendments against various Defendants for malicious prosecution; (4) bystander liability for failure to protect Plaintiff from violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments against various Defendants; (5) supervisor liability for violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments against various Defendants; and (6) conspiracy to violate the Fourth, Fifth, Eighth, and Fourteenth Amendments against various Defendants. (*Id.*)

All Defendants again moved to dismiss the second amended complaint for failure to adhere to the pleading requirements of Rule 8 and the Court's prior orders and for failure to state a claim pursuant to Rule 12(b)(6).[1] (ECF Nos. 76, 77, 78, 79, 80.) The Magistrate Judge ultimately agreed with Defendants that the second amended complaint failed to adhere to the basic requirements set forth by the United States Supreme Court in *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Magistrate Judge explained:

> Here, Plaintiff's Second Amended Complaint falls short of the pleading requirements announced in *Iqbal/Twombly*. Whereas the Amended Complaint contained a plethora of information that made it difficult, at best, to discern what factual allegations were important or relevant to the causes of action alleged, the Second Amended Complaint contains no alleged facts whatsoever. Indeed, there is no section of factual allegations at all in the Second Amended Complaint. *See* ECF No. 74. In stripping out all the factual allegations contained in previous iterations of the Complaint and Amended Complaint, only legal conclusions—couched as factual allegations—remain. Such a Complaint is insufficient under *Twombly/Iqbal*. *See Robertson*, 679 F.3d at 288 ("[A] complaint must contain factual

---

[1] Defendants' motions also include arguments regarding qualified immunity and other immunities, bystander liability, supervisory liability, and standing. (ECF Nos. 76, 77, 78, 79. 80.)

allegations in addition to legal conclusions." (emphasis added)); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

The Court appreciates that Plaintiff's Second Amended Complaint attempts to address some of the concerns raised in this Court's August 11 Order. For example, in addressing the Court's concern over the confusion that the "shotgun pleading" created for Defendants and this Court, Plaintiff's Second Amended Complaint now specifically describes the allegations relative to each individual Defendant under each cause of action. As a result, it is clear what specific causes of action Plaintiff is alleging against each Defendant.

However, although these allegations set forth the necessary elements for each cause of action alleged, they are ultimately legal conclusions couched as factual allegations. Outside of these formulaic recitations of the necessary elements for each cause of action, there is no further factual allegation anywhere in the Second Amended Complaint that supports these legal conclusions. Indeed, while each of the delineated causes of action now contain paragraphs directed at each individual Defendant, these paragraphs are largely repetitive and fall short of alleging any specific facts against the individual Defendants which would give them notice as to what conduct Plaintiff claims has violated his rights.

(ECF No. 92 at 7-8.)

The Magistrate Judge further noted that "not once does Plaintiff allege a specific date" or define the "time period in question" relevant to the alleged constitutional violations. (*Id.* at 8.) In addition, the Magistrate Judge explained that although this type of information may have been alleged in previous complaints, the second amended complaint supersedes the prior complaints and renders the prior complaints "of no effect." *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017). Ultimately, the Magistrate Judge concluded that the complete removal of factual allegations from the second amended complaint rendered it deficient, and her Report recommends dismissal of the complaint without prejudice, or alternatively, that Plaintiff be allowed to file a third amended complaint adhering to the appropriate standards and the Court's prior orders.

**JA394**

In their objections, Defendants do *not* object to the Report's findings that the second amended complaint fails to comply with (1) Rules 8 and 12 of the Federal Rules of Civil Procedure, (2) *Twombly* and *Iqbal*, or (3) the Magistrate Judge's prior orders. Instead, Defendants object to the Magistrate Judge's recommendation that the Court dismiss the second amended complaint *without prejudice*, and they assert any dismissal should be *with prejudice* based on Plaintiff's persistent failure to comply with the applicable rules and the Court's prior directives. (*See* ECF Nos. 94, 96, 97, 98, 99.)

On the other hand, Plaintiff objects to the Magistrate Judge's recommendation that the second amended complaint be dismissed without prejudice and requests that the Court adopt the Magistrate Judge's alternative recommendation and allow him to file a third amended complaint, a proposed copy of which he attached to his objections. (ECF Nos. 95, 95-1.) In response to Plaintiff's objections, certain Defendants assert that the Court should disregard Plaintiff's objections because they are general and conclusory and merely incorporate prior arguments. (ECF Nos. 101, 102.) Certain Defendants also assert that Plaintiff's attempt to file a third amended complaint at this juncture is not appropriate. (*Id.*)

Here, after a careful, *de novo* review, the Court fully agrees with the Magistrate Judge's thorough analysis of the issues and finds no error in her determination that Plaintiff's second amended complaint fails to comply with Rules 8 and 12 of the Federal Rules of Civil Procedure; fails to adhere to the standards set forth in *Twombley* and *Iqbal*; and fails to follow the clear directives provided to Plaintiff in prior orders. As such, the Court agrees with the Magistrate Judge that dismissal of Plaintiff's second amended complaint is appropriate. And while the Court certainly appreciates and understands Defendants' frustration and their argument that any dismissal should be with prejudice, *see*

7

**JA395**

*North Carolina v. McGuirt*, 114 F. App'x 555, 559 (4th Cir. 2004), the Court ultimately finds that dismissal without prejudice is appropriate under the circumstances.[2]

## **CONCLUSION**

Based on the foregoing, the Court adopts the Magistrate Judge's Report (ECF No. 92) and overrules the parties' objections (ECF Nos. 94, 95, 96, 97, 98, 99)**.  For the reasons set forth in the Report and herein, the Court grants Defendants' motions to dismiss (ECF Nos. 76, 77, 78, 79, and 80) pursuant to Rule 12(b)(6) for failure to comply with Rule 8(a), and the Court dismisses this action without prejudice.**

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

June 7, 2024
Charleston, South Carolina

---

[2] The Court notes, however, that dismissal without prejudice does not mean dismissal without consequence.  For example, while dismissal without prejudice is not a decision on the merits, it also does not give Plaintiff the right to successfully refile if the applicable statute of limitations has passed.

**JA396**

AO 450 (SCD 04/2010)   Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of South Carolina

| | |
|---|---|
| John Trenton Pendarvis, | |
| *Plaintiff* | |
| v. | Civil Action No.    2:22-cv-03142-BHH |
| Alan M. Wilson, Mark A. Keel, Hugh E. Weathers, L.C. Knight, W. Jeffrey Young, Robert D. Cook, Emory Smith, Jr., Joanne Lee, David S. Jones, T. Stephen Lynch, Harley L. Kirkland, Wesley Vorberger, Robert Kittle, Adam Whitsett, Frank O'Neal, Jason Wells, Glenn Wood, John Neale, Rhett Holder, Alden G. Terry, Derek M. Underwood, J. Clint Leach, Aaron Wood, John Stokes, Vanessa Elsalah, Brittany Jeffcoat, Eva Moore, Ray Dixon, Frank Thompson, Robert Krutak, Jonathan Calore, Charlie Scrubbs, and Wayne Eaddy, | ) ) ) ) ) |
| *Defendant(s)* | |

**JUDGMENT IN A CIVIL ACTION**

The court has ordered that :


■   other: Plaintiff, John Trenton Pendarvis, shall take nothing of  Defendants, as to the complaint filed pursuant to 42 U.S.C. § 1983 and this action is dismissed without prejudice.




■ decided by the Honorable Bruce Howe Hendricks, United States District Judge, presiding. The Court having adopted the Report and Recommendation set forth by the Honorable Molly H. Cherry, United States Magistrate Judge.


Date:   June 7, 2024                      *ROBIN L. BLUME, CLERK OF COURT*

                                          s/H.Cornwell
                                          _____
                                          *Signature of Clerk or Deputy Clerk*

**JA397**

UNITED STATES DISTRICT COURT FOR THE FOURTH CIRCUIT

DISTRICT OF SOUTH CAROLINA

DOCKET NUMBER: 2:22-3142-BHH

| | |
|---|---|
| John Trenton Pendarvis,<br><br>Plaintiff,<br><br>vs.<br><br>Alan M. Wilson, Mark A. Keel, Hugh E. Weathers, L.C. Knight, W. Jeffrey Young, Robert D. Cook, Emory Smith, Jr., Joanne Lee, David S. Jones, T. Stephen Lynch, Harley L. Kirkland, Wesley Vorberger, Robert Kittle, Adam L. Whitsett, Frank O'Neal, Jason Wells, Glenn Wood, John Neale, Alden G. Terry, Derek M. Underwood, J. Clint Leach, Aaron Wood, John Stokes, Vanessa Elsalah, Brittany Jeffcoat, Eva Moore, Ray Dixson, Frank Thompson, Robert Krutak, Jonathan Calore, Charlie Scrubbs, and Wayne Eaddy,<br><br>Defendants. | **NOTICE OF APPEAL** |

Notice is hereby given that John Trenton Pendarvis, Plaintiff in the above-captioned case, hereby appeals to the United States Court of Appeals for the Fourth Circuit from the Order of the District Court for the District of South Carolina, Charleston Division, Case No. 2:22-3142-BHH, entered in this action on June 7, 2024, dismissing this action without prejudice in favor of Defendants.

**WUKELA LAW FIRM**

s/ Patrick J. McLaughlin
Patrick J. McLaughlin (Fed. ID No. 9665)
PO Box 13057
Florence, SC 29504-3057
Phone:  (843) 669-5634
E-mail: patrick@wukelalaw.com

*and-*

1

**JA398**

USCA4 Appeal: 24-6654     Doc: 28     Filed: 12/02/2024     Pg: 401 of 402

C. Bradley Hutto (Fed. ID. No. 2024)
**WILLIAMS & WILLIAMS**
P.O. Box 1084
Orangeburg, SC 29116
Phone: (803)534-5218
cbhutto@williamsattys.com

Florence, South Carolina
July 3, 2024

**ATTORNEYS FOR PLAINTIFF**

USCA4 Appeal: 24-6654     Doc: 28     Filed: 12/02/2024     Pg: 402 of 402

2

**JA399**