No. 24-6654

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOHN TRENTON PENDARVIS,
*Plaintiff-Appellant*

v.

ALAN M. WILSON, Attorney General; MARK A. KEEL, Chief of SLED; HUGH E. WEATHERS, Commissioner of South Carolina Department of Agriculture; L. C. KNIGHT, Sheriff of Dorchester County Sheriff's Office; W. JEFFREY YOUNG, Chief Deputy of South Carolina Attorney General's Office; ROBERT D. COOK, Solicitor General; EMORY SMITH, JR., Deputy Solicitor General; DAVID S. JONES, Assistant Attorney General; T. STEPHEN LYNCH, Deputy Attorney General; HARLEY L. KIRKLAND, Assistant Attorney General; WESLEY VORBERGER, Assistant Attorney General; ROBERT KITTLE, Communications Director of SCAG; ADAM L. WHITSETT, General Counsel for SLED; FRANK O'NEAL, Major for SLEDs Narcotics, Alcohol and Vice services; JASON WELLS, Captain for SLEDs Narcotics division; GLENN WOOD, Lieutenant for SLED; JOHN NEALE, Agent/employee of SLED; RHETT HOLDEN, Agent/employee of SLED; ALDEN G. TERRY, General Counsel for DAG; DEREK M. UNDERWOOD, Assistant Commissioner of DAGs Consumer Protection Division; J. CLINT LEACH, Assistant Commissioner of DAGs External Affairs & Economic Development Division; AARON WOOD, Assistant Commissioner of DAGs Agency Operations Division; JOHN STOKES, Program Manager of DAGs Consumer Protection Division; VANESSA ELSALAH, Coordinator of DAGs Hemp Program; BRITTANY JEFFCOAT, Coordinator in DAGs Consumer Protection Division; EVA MOORE, Communications Director for DAG; RAY DIXSON, Captain for DCSO; FRANK THOMPSON, Lieutenant for DCSO; ROBERT KRUTAK, Deputy Sheriff for DCSO; JONATHAN CALORE, Supervisory agent/employee; CHARLIE SCRUBBS, Agent/employee with the S.C. Forestry Commission; WAYNE EADDY, agent/employee with the S.C. Forestry Commission
*Defendants-Appellees*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA

# BRIEF OF APPELLANT

Jason Scott Luck
P.O. Box 47
Bennettsville, SC 29512
843.479.6863
*Counsel for Plaintiff-Appellant*

Patrick James McLaughlin
Wukela Law Firm
P.O. Box 13057
Florence, SC 29504
843.669.5634
*Counsel for Plaintiff-Appellant*

Charles Bradley Hutto
Williams and Williams
P.O. Box 1084
Orangeburg, SC 29116
803.534.5218
*Counsel for Plaintiff-Appellant*

## DISCLOSURE STATEMENT

Pursuant to Local Rule 26.1(2), Appellant John Trenton Pendarvis submits the following:

**(A) Information Required by FRAP 26.1.** Not applicable – Appellant is an individual.

**(B) Information About Other Financial Interests.** No publicly-held corporation has a direct financial interest in the outcome of the litigation by reason of a franchise, lease, other profit sharing agreement, insurance, or indemnity agreement.

**(C) Information About Other Publicly Held Legal Entities.** Not applicable.

**(D) Information About Trade Association Members.** Not applicable.

i

## TABLE OF CONTENTS

DISCLOSURE STATEMENT ........................................................................i

TABLE OF CONTENTS ............................................................................ ii

TABLE OF AUTHORITIES .......................................................................iv

JURISDICTIONAL STATEMENT..............................................................1

STATEMENT OF ISSUES..........................................................................2

STATEMENT OF THE CASE .....................................................................3

    I.    Factual Background ........................................................................5

        A.    The Hemp Farming Act and Hemp Legalization in
            South Carolina. ...........................................................5

        B.    Appellant Trent Pendarvis and South Carolina's Hemp
            Farming Program. ........................................................8

        C.    The Discovery of Hemp on Unapproved Fields (July
            30, 2019). ....................................................................9

        D.    The Struggle to Justify the Destruction of Pendarvis's
            Crop (August 5, 2019, to August 8, 2019). .......................10

        E.    Misconduct Subsequent to the August 8, 2019, SCAG
            Opinion. .....................................................................13

        F.    Illegal Arrest and Destruction of Pendarvis's
            Dorchester County Hemp Crop (September 19, 2019). .....................15

        G.    Appellees' attempt to Destroy Pendarvis's Marion
            County Crop, and Pendarvis's Marion County Civil
            Case..........................................................................17

        H.    Pendarvis's Dorchester County Civil Case........................19

    II.    Procedural History of this Action. ..........................................23

STANDARD OF REVIEW ...................................................................24

    I.    Fed. R. Civ. P. 12(b)(6) ......................................................24

    II.   Fed. R. Civ. P. 12(e) ..........................................................24

    III.  Fed. R. Civ. P. 15 ..............................................................25

SUMMARY OF ARGUMENT ............................................................26

ARGUMENT .......................................................................................27

    I.    The Appellant's Complaint and First Amended Complaint complied with Rules 8 and 10. ...........................................27

    II.   The District Court considered the Second Amended Complaint without context. ..................................................31

    III.  The District Court's refusal to allow further amendment prevents this case from being decided on its merits. ..............33

CONCLUSION ....................................................................................35

STATEMENT REGARDING ORAL ARGUMENT ...........................35

CERTIFICATE OF COMPLIANCE ...................................................37

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................*passim*

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................*passim*

*Bennett v. Schmidt*,
153 F.3d 516 (7th Cir. 1998)...................................................28

*B.H. Papasan v. Allain*,
478 U.S. 265 (1986) ................................................................32

*Bowens v. N.C. Dept. of Human Resources*,
710 F.2d 1015 (4th Cir. 1983).................................................18

*Centro Tepeyac v. Montgomery Cnty.*,
722 F.3d 184 (4th Cir. 2013) ...................................................24

*Curtis v. Time-Warner Entm't v. Advance/Newhouse P'ship*,
No. 3:12-cv-2370-JFA, 2013 WL 2099496 (D.S.C. May 14, 2013) .................21

*Dan Ryan Builders v. Crystal Ridge Dev.*,
783 F.3d 976 (4th Cir. 2015)....................................................33

*Davis v. Ruby Foods, Inc.*,
269 F.3d 818 (7th Cir. 2001)....................................................28

*Epcon Homestead, LLC v. Town of Chapel Hill*,
62 F.4th 882 (4th Cir. 2023).....................................................32

*FEC v. Christian Coalition*,
178 F.R.D. 456 (E.D.Va. 1998). .................................................24

*Foman v. Davis*,
371 U.S. 178 (1962) ................................................................33

*Hearns v. San Bernardino Police Dep't*,
530 F.3d 1124 (9th Cir. 2008)...............................................................28

*Kadamovas v. Stevens*,
706 F.3d 843 (7th Cir. 2013)................................................................29

*Laber v. Harvey*,
438 F.3d 404 (4th Cir. 2006)................................................................25

*Mendiondo v. Centinela Hosp. Med. Ct.*,
521 F.3d 1097 (9th Cir. 2008)..............................................................28

*Mylan Laboratories, Inc. v. Matkari*,
7 F.3d 1130 (4th Cir. 1993).................................................................24

*Old Time Enters., Inc. v. Int'l Coffee Corp.*,
862 F.2d 1213 (5th Cir.1989)...............................................................24

*Pashby v. Delia*,
709 F.3d 307 (4th Cir. 2013)................................................................24

*Sara Lee Corp. v. Kayser-Roth Corp.*,
81 F.3d 455 (4th Cir. 1994).................................................................24

*United States ex. rel. Ahumada v. NISH*,
756 F.3d 268 (4th Cir. 2014)................................................................25

*United States ex. rel. Garst v. Lockheed-Martin Corp.*,
328 F.3d 374 (7th Cir. 2003).........................................................28, 31

*Wynder v. McMahon*,
360 F.3d 73 (2d Cir. 2004).................................................................27

## FEDERAL RULES

Fed. R. Civ. P. 8 ............................................................................*passim*

Fed. R. Civ. P. 12 ..........................................................................*passim*

Fed. R. Civ. P. 15 .................................................................................33

Fed. R. Civ. P. 16 .................................................................................34

Fed. R. Civ. P. 26 ..................................................................................34

Local Rule 32.1 (4th Cir.) ....................................................................27

**FEDERAL STATUTES**

7 U.S.C. § 1639o ....................................................................................5

28 U.S.C. § 1291 ....................................................................................1

42 U.S.C. § 1983 ....................................................................................3

**FEDERAL CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I .............................................................................26

U.S. Const. amend. IV ...........................................................................26

U.S. Const. amend. V ............................................................................26

U.S. Const. amend. VIII ........................................................................26

U.S. Const. amend. XIV ........................................................................26

**STATE CASES**

*Marchant v. Hamilton*,
   309 S.E.2d 781 (S.C. Ct. App. 1983) ...............................................18

*Pendarvis v. Knight*,
   No. 2021-CP-18-01486 (S.C. Comm. Pl. Order dated Feb. 28, 2023) ..............20

*Pendarvis v. Knight*,
   No. 2023-000757 (S.C. Ct. App. Order dated July 10, 2023)...........................20

*Pendarvis v. Knight*,
   No. 2023-001533 (S.C. Sup. Ct. Order dated Dec. 13, 2023)..........................20

*Pendarvis v. Knight*,
   No. 2021-CP-18-01486, 2023 WL 9105487
   (S.C. Comm. Pl. Order dated Dec. 27, 2023)....................................................20

*Pendarvis v. Knight*,
   No. 2021-CP-18-01486 (S.C. Comm. Pl. Order dated Oct. 28, 2024) ..............22

*Pendarvis v. S.C. Law Enf't Div.*,
    No. 2019-CP-33-00675 (S.C. Comm. Pl. Order dated Sept. 26, 2019) .............17

*Pendarvis v. S.C. Law Enf't Div.*,
    No. 2019-CP-33-00675 (S.C. Comm. Pl. Order dated Nov. 08, 2019) .............18

*Pendarvis v. S.C. Law Enf't Div.*,
    Op. No. 2023-UP-143, 2023 WL 3722239 (S.C. Ct. App. May 24, 2023) .......19

*State* v. *192 Coin-Operated Video Game Machines*,
    525 S.E.2d 872 (S.C. 2000) ................................................................................13

*Wood v. Lucy, Lady Duff-Gordon*,
    222 N.Y. 88, 118 N.E. 214 (Ct. App. 1917) .....................................................30

**STATE STATUTES**

2014 S.C. Acts No. 216 .............................................................................................5

2019 S.C. Acts No. 14 ...............................................................................................5

S.C. Code § 46-55-10 ................................................................................................5

S.C. Code § 46-55-20 ..............................................................................................15

S.C. Code § 46-55-40 ........................................................................................*passim*

**STATE CONSTITUTIONAL PROVISIONS**

S.C. Const. Art. I Sec. 22 ..........................................................................................9

**OTHER AUTHORITIES**

*Op. S.C. Att'y. Gen.*, 2019 WL 3243864 (July 10, 2019) ................................13, 14

*Op. S.C. Att'y. Gen.*, 2019 WL 3855186 (Aug. 8, 2019) .................................12, 13

*Op. S.C. Att'y. Gen.*, 2019 WL 5089743 (Sept. 30, 2019). ....................................14

*Pendarvis v. S.C. Law Enf't Div.*,
    No. 2019-CP-33-00675 (S.C. Comm. Pl. Compl. dated Sept. 26, 2019)..........17

*Pendarvis v. Knight*,
    No. 2021-CP-18-01486, 2021 WL 12174572
    (S.C. Comm. Pl. Compl. filed Aug. 23, 2021) ..................................................19

## JURISDICTIONAL STATEMENT

This is an appeal of a district court's orders for a more definite statement under Fed. R. Civ. P. 12(e) and dismissing Appellant's Second Amended Complaint under Fed. R. Civ. P. 12(b)(6). The District Court dismissed the Plaintiff's Second Amended Complaint on June 7, 2024. Appellant timely filed his notice of appeal on July 3, 2024.  This Court's jurisdiction rests on 28 U.S.C. § 1291.

**STATEMENT OF ISSUES**

I.  Whether the District Court erred in finding Appellant's Complaint and First Amended Complaint did not meet the requirements of Fed. R. Civ. P. 8, when both pleadings intelligibly set forth the Appellees' misconduct.

II. Whether the District Court erred in dismissing Appellant's Second Amended Complaint when the Appellees were undisputably on notice of the basis of the claims against them and the relevant facts were public record.

III. Whether the District Court erred in refusing to permit the filing of Appellant's Third Amended Complaint, when said refusal would unjustly prevent Appellant from seeking redress for Appellees' conspiracy to violate his constitutional rights and reward Appellees' dilatory conduct.

## STATEMENT OF THE CASE

This is a civil rights action (42 U.S.C. § 1983) arising out of the September 19, 2019, illegal seizure and destruction of Appellant John Trenton "Trent" Pendarvis's stand of legally licensed hemp in Dorchester County, South Carolina. The allegations are complex, necessarily implicating numerous governmental agencies, whose members are Appellees:

- The South Carolina Attorney General's Office (SCAG), of which Appellee Alan M. Wilson is Attorney General, Appellee W. Jeffrey Young is the Chief Deputy, Appellee Robert D. Cook is Solicitor General, Appellee Emory Smith, Jr. is Deputy Solicitor General, Appellee David S. Jones is Assistant Attorney General, Appellee T. Stephen Lynch is Deputy Attorney General, Appellee Harley L. Kirkland is Assistant Attorney General, Appellee Wesley Vorberger is Assistant Attorney General, and Appellee Robert Kittle is Communications Director.

- The South Carolina Law Enforcement Division (SLED), of which Appellee Mark A. Keel is the Chief, Appellee Adam L. Whitsett is General Counsel, Appellee Frank O'Neal is Major for SLED's Narcotics, Alcohol, and Vice Services, Appellee Jason Wells is Captain for SLED's Narcotics Division, Appellee Glenn Wood is a Lieutenant, and Appellee John Neale is an agent/employee.

- The South Carolina Department of Agriculture (DAG), of which Appellee Hugh E. Weathers is the Commissioner, Appellee Alden G. Terry is General Counsel, Appellee Derek M. Underwood is Assistant Commissioner of External Affairs & Economic Development Division, Appellee J. Clint Leach is Assistant Commissioner of External Affairs & Economic Development Division, Appellee Aaron Wood is Assistant Commissioner of Agency Operations Division, Appellee John Stokes is Program Manager of its Consumer Protection Division, Appellee Vanessa Elsalah is Coordinator of its Hemp Program, Appellee Brittany Jeffcoat is Coordinator in its Consumer Product Division, and Appellee Eva Moore is Communications Director.

- The Dorchester County, South Carolina, Sheriff's Office (DCSO), of which L.C. Knight is the Sheriff, Appellee Ray Dixson is Captain, Appellee Frank Thompson is Lieutenant, and Appellee Robert Krutek (Krutak in caption) is Deputy Sheriff.

- The South Carolina Forestry Commission (FORESTRY), of which Appellee Jonathan Calore is a supervisory agent/employee, Appellee Charlie Scruggs (Scrubbs in caption) is an agent/employee, and Appellee Wayne Eaddy is an agent/employee.

I.     **Factual Background**

A.     **The Hemp Farming Act and Hemp Legalization in South Carolina.**

1.     In late December 2018, the United States Congress passed a Federal Farm Bill that legalized the production of hemp, which is generally legally defined as the cannabis sativa L plant with THC levels below federally defined levels. *See generally* 7 U.S.C. § 1639o *et seq*. Following the passage of the Federal Farm Bill legalizing the production of hemp, the South Carolina General Assembly followed suit, with Gov. Henry McMaster signing the South Carolina Hemp Farming Act (Act) into law on or about March 28, 2019. *See* S.C. Code § 46-55-10 *et seq*. In passing the Act, the South Carolina General Assembly specifically found that "hemp has the potential to provide a cash crop for South Carolina's farmers with broad commercial application that will enhance the economic diversity and stability of our state's agricultural industry." *See* 2014 Act No. 216, Section 1, findings. In passing the Act, the South Carolina General Assembly provided statutory safeguards to protect South Carolina farmers. Specifically, the General Assembly codified these safeguards via "Corrective Action Plans", which would provide the farmer an opportunity to course correct without being subject to civil or criminal penalties. *See* S.C. Code § 46-55-40. That statute provides that South Carolina farmers "shall" be allowed "to conduct a corrective action plan if the commissioner, or his designee, determines that the licensee negligently violated" the Act. S.C. Code § 46-55-40.

5

Included in S.C. Code § 46-55-40 are the following specific examples of violations for which a South Carolina farmer licensed under the Act shall be allowed to conduct a corrective action plan:

> (a)    Failing to provide a legal description and global positioning coordinates of the land on which the licensee cultivates hemp;
>
> (b)    Failing to obtain a proper license or other required authorization from the commissioner; or
>
> (c)    Producing Cannabis sativa L with more than the federally defined THC level for hemp.

S.C. Code § 46-55-40(A)(1).

2.    The South Carolina General Assembly further safeguarded South Carolina farmers by specifically directing that the corrective plans described in S.C. Code § 46-55-40 were:

> …the **sole remedy** for negligent violations of this chapter, regulations promulgated pursuant to this chapter, or the state plan. A licensee who violates a provision of this chapter, regulations promulgated pursuant to this chapter, or the state plan shall not be subject to any criminal or civil enforcement action.

S.C. Code § 46-55-40(A)(3) (emphasis added). The South Carolina General Assembly directed DAG, and particularly Appellee Weathers, to submit a "state plan" to the United States Department of Agriculture (USDA) within sixty (60) days of the effective date of the Act that proposed to regulate hemp production and was required to include "a procedure to comply with the enforcement outlined in this act." *See* 2019 Act No.14, Section 2(A)(4). (JA33, JA114).

6

3.    Pendarvis is informed and believes DAG, and particularly Appellee Weathers, did not timely submit a "state plan" as required by the Act, no "state plan" was submitted by DAG prior to the administrative and enforcement actions taken against Pendarvis in 2019, *infra*, leading to state plan for South Carolina not being approved by USDA until March 31, 2020. (JA34, JA114, JA373).

4.    Despite South Carolina's lack of "state plan", DAG actively promoted the Hemp Farming Program. (JA35, JA114). On June 28, 2019, Appellee Weathers specifically stated in a press release: "More hemp farmers means more opportunities to learn about hemp's long-term potential for South Carolina agriculture. Agribusiness is South Carolina's largest industry, and we welcome the chance to push it in new directions." (JA35). Appellees Terry and Ensalah also have solicited speaking engagements as "speakers" on hemp farming. (JA35).

5.    With signing into law of the Act, and through promotion by DAG, South Carolina went from approximately 256 acres of hemp being cultivated in 2018 to approximately 3,300 acres in 2019, with Appellee Moore publicly stating on January 31, 2020 that the program had "grown from 20 farmers in 2018 to 114 permitted farmers and 43 processors at the end of the 2019 season" and later announcing on April 2, 2020 that "some 350 people applied to farm hemp in South Carolina this year." (JA36).

**B.    Appellant Trent Pendarvis and South Carolina's Hemp Farming Program.**

6.    Appellant Trent Pendarvis is a fourth-generation farmer, having begun farming on family farmlands in 1997, farming over 2000 acres, primarily corn, cotton, peanuts and soybeans. (JA36). On or about May 1, 2019, Pendarvis paid a $500.00 application fee to participate in South Carolina's hemp farming program. (JA36, JA114, JA355).

7.    To obtain a license to grow hemp, the Act required Pendarvis to enter into a "Hemp Farming Program Participation Agreement" with DAG, as all other farmers seeking to grow hemp under South Carolina's program. (JA36, JA115, JA355). Pendarvis entered into such an agreement on May 13, 2019 (Agreement); section VIII of the Agreement, titled "Plant Destruction", stated:

a.    Permitted Grower acknowledges and consents to the forfeiture or destruction, without compensation, of hemp material:

   i.    Found to have a measured delta-9 THC content of more than 0.3 percent on a dry weight basis;

   ii.   Bearing off-label pesticide residues (or believed by [DAG] to have had pesticides applied off-label), regardless of the source or cause of contamination; and

   iii.  Growing in an area that is not licensed by [DAG].

b.    Notwithstanding the foregoing, Permitted Grower or processors may retain any hemp that tests between three-tenths of one percent to one percent delta-9 tetrahydrocannabinol on a dry weight basis and recondition the hemp product by grinding it with the stem and stalk. Hemp product must not exceed three-tenths of one percent delta-9 tetrahydrocannabinol.

8

(JA37, JA115, JA355). Unfortunately, the Agreement contradicts the plan language of the Act, which provides that for two of these conditions a farmer would be subject to a corrective action plan, and not destruction of his crop. S.C. Code §§ 46-55-40(A)(1)(a) & 46-55-40(A)(1)(c). Further, the Agreement lacks any mechanism by which a farmer may challenge a finding of a violation by DAG. This omission violates South Carolina's Constitution:

> No person shall be finally bound by a judicial or quasi-judicial decision of an administrative agency affecting private rights except on due notice and an opportunity to be heard; nor shall he be subject to the same person for both prosecution and adjudication; nor shall he be deprived of liberty or property unless by a mode of procedure prescribed by the General Assembly, and he shall have in all such instances the right to judicial review.

S.C. Const. Art. I Sec. 22.

### C.    The Discovery of Hemp on Unapproved Fields (July 30, 2019).

8.    Upon executing his Agreement, Pendarvis obtained his license and began growing hemp. On July 30, 2019, Appellee Elsalah, coordinator of DAG's Hemp Program, visited Pendarvis's farm. (JA39, JA116, JA356). During Elsalah's visit, it became apparent that Pendarvis was inadvertently growing hemp at coordinates different than those he had originally submitted to DAG. (JA39, JA116, JA356). Appellee Underwood of DAG sent Pendarvis an email requesting an explanation for hemp growing on farmland that was not part of his application. (JA39, JA117, JA357). Pendarvis promptly responded, explaining that due to weather conditions

(*i.e.*, an extreme drought followed by heavy rainfall), he was forced to plant different fields. (JA39-41, JA117, JA357). This mistake, he explained, was inadvertent and did not change his overall acreage under cultivation. (JA40, JA117, JA357). Pendarvis promptly submitted an amendment to the Application; Underwood acknowledged receipt and promised a final decision. (JA40-41, JA117, JA357).

### D.     The Struggle to Justify the Destruction of Pendarvis's Crop (August 5, 2019, to August 8, 2019).

9.     To put it mildly, SCAG, SLED, and DAG have a negative view of cannabis. Appellees Wilson and Keel, and their agents/employees and agencies, have been vehemently and publicly opposed to cannabis legalization efforts in South Carolina. (JA34-35, JA114, JA355). This opposition is exemplified by a joint press conference featuring Appellees Wilson and Keel in January 2019 where Wilson referred to cannabis as "the most dangerous drug". (JA34, JA114). It is further evidenced by Appellee Keel's June 14, 2021, letter to the leadership of South Carolina's Behavioral Health Services Association (BHSA) and Department of Alcohol and Other Drug Abuse Services (DAODAS) voicing his "disappointment" they were not opposing legalization of medical marijuana in South Carolina, stating: "I have spent 43 years in law enforcement standing up for those who can't stand for themselves. This is why I have consistently voiced my concerns about legalizing marijuana in any form." (JA35). Finally, Pendarvis is informed and believes Appellee Frank O'Neal is a frequent speaker on behalf of SLED at various public

10

and private functions, and his presenter biography states he "regularly speaks and educates civic and community groups on the dangers of marijuana legalization and the collateral damage it causes our country." (JA35).

10.   This bias instructs the Appellees' actions. On August 5, 2019, Appellee Underwood emailed Appellee Wells, copying Appellees Elsalah, Terry, and O'Neal. (JA41, JA117, JA259, JA358). This email stated, *inter alia*: "The participant of the SCDA Hemp Program [Pendarvis] has willfully grown hemp on non-reported or non-listed acreage for 6-8 weeks." (JA41, JA117, JA259, JA358). Less than an hour later, Appellee Underwood emailed a memorandum to Appellees Wells and O'Neal, copying Appellees Terry and Elsalah; this memorandum requested Appellee Wells "enact enforcement of this violation", which the memorandum characterizes as a "willful violation of the Hemp Farming Act". (JA42, JA118, JA233, JA358).

11.   Appellee Underwood revised this memorandum and re-sent it on August 6, 2019. (JA43, JA235). Among the revisions to the memorandum was the addition of the following sentence: "SCDA does not believe this violation to be negligent or an oversight on the part of Mr. Pendarvis and instead views this conduct as willful." (JA43, JA235). On the same day, Appellee Whitsett emailed Appellee Jones, requesting an opinion of the SCAG. (JA44, JA118, JA237, JA265, JA358). In this email, Whitsett notes:

> …there is no specific direction as to the process or procedure to have the illegally grown hemp, which is contraband per se, seized or

> destroyed. Accordingly, SLED would greatly appreciate any specific guidance you can provide on the proper procedure in this matter. I will touch base tomorrow to further discuss.

(JA44, JA118, JA237, JA265, JA358). In an email sent the next day, Appellee Robert Cook, South Carolina's Solicitor General, described the Act as an "'ultra murky' statute." (JA46, JA119, JA359).

12. On August 8, 2019, Appellee Underwood emailed Appellees Wells, O'Neal, Terry, Weathers, and Elsalah requesting an update. (JA44). On August 8, 2019, O'Neal replied to all with an email stating:

> Not yet- we are having difficulty in what to address with so many gray areas concerning enforcement. Unlike Kentucky, we are having to get [Attorney General] opinions along the way and the last thing we want to do is an action that will be perceived in a negative light by the media or general assembly.

(JA44, JA118, JA237, JA265, JA358). Pendarvis's Due Process rights do not appear to be a consideration by Appellee O'Neal. Appellee Underwood replied to this email, informing Appellees O'Neal, Wells, Terry, Weathers, and Elsalah that DAG would not approve Pendarvis's amendment, so there would be no "deadline" to act, and for SLED to let DAG know "what we need to do to help" in the enforcement actions being taken against Pendarvis.

13. With DAG having eliminated any urgency to resolve this matter, Appellee Whitsett waited on the requested opinion from the SCAG. The SCAG issued its opinion on August 8, 2019; this opinion stated, in relevant part:

It is the opinion of this Office that in the absence of legislative direction, **SLED should seek judicial authorization for the seizure of illegally-grown hemp in order to ensure that the grower receives due process consistent with the Constitutions of the United States and the State of South Carolina.** *See, e.g., State* v. *192 Coin-Operated Video Game Machines,* 338 S.C. 176, 525 S.E.2d 872 (2000). We advise that this authorization be sought with notice to the grower and an opportunity for them to be heard in a hearing in an abundance of caution. *See id.*

\* \* \*

**Our Office acknowledged recently that "the Hemp Farming Act of 2019 was not drafted with the greatest of clarity and needs legislative or judicial clarification."** *Op. S.C. Atty Gen.*, 2019 WL 3243864 (July 10, 2019). In this instance you have identified what appears to be a gap, in that the Act requires that a willful violation of state law in connection with cultivated hemp must be reported to SLED, but the Act does not specify what procedures SLED must follow to enforce the law in the situation you describe in your letter. S.C. Code Ann. § 46-55-40(8) (Supp. 2019). This is yet another example of the need for legislative or judicial direction regarding the implementation of South Carolina's industrial hemp program. **Therefore our Office advises that SLED proceed with the utmost care to fully ensure that the grower and all interested parties receive due process in any enforcement action.**

*Op. S.C. Att'y. Gen.*, 2019 WL 3855186 (August 8, 2019) (emphasis added)*.*

### E.    Misconduct Subsequent to the August 8, 2019, SCAG Opinion.

14.    On September 11, 2019, Appellee Whitsett attempted to obtain an order authorizing the seizure and destruction of Pendarvis's Dorchester Co. Crop from Dorchester County's chief administrative judge Diane Goodstein. Whitsett's request, which copied Appellees Neale, O'Neal, and Wells, was made *ex parte*, and requested a "meeting" (presumably *ex parte*) later that day with the judge. (JA77, JA79, JA80, JA133, JA141). Whitsett's proposed *ex parte* order did not reference

13

the August 8, 2019, SCAG opinion referenced above. (JA78, JA132). Instead, the proposed order referenced (and had attached) an earlier opinion interpreting the Act; this July 10, 2019, opinion did <u>not</u> contain an instruction to seek judicial authorization or provide Due Process prior to a seizure. *See Op. S.C. Att'y. Gen.*, 2019 WL 3243864 (July 10, 2019).

15.    Judge Goodstein refused to sign the proposed *ex parte* order; she also refused to meet with Appellate Whitsett, *et al*., *ex parte*. (JA80, JA361). The judge did offer to conduct a hearing on the request to authorize the destruction of Pendarvis's crop; Appellee Whitsett declined this offer. (JA80, JA361).

16.    After Judge Goodstein's refusal to issue *ex parte* relief, it is apparent the Appellees devised a new "plan" to "deal with" Pendarvis's crop. (JA82-83, JA153-154, JA193-194, JA288-289, JA309). Pendarvis is aware of emails and phone calls took place between Appellees Wells, O'Neal, Neale, Whitsett, Wood, Cook, Jones, and Keel to discuss this new "plan", which culminated with an "amended" opinion Appellee Cook emailed on September 19, 2019.[1] (JA84, JA136, JA162-164, JA200-205, JA362-363). This "amended" opinion authorized the destruction of Pendarvis's crop, without any judicial review whatsoever, on the basis of "consent" found in the

---

[1] This "amended" opinion was not published. Another opinion incorporating this advice was published on September 30, 2019. *Op. S.C. Att'y. Gen.*, 2019 WL 5089743 (Sept. 30, 2019).

Agreement. (JA84, JA136, JA162-164, JA200-205, JA362-363).

**F. Illegal Arrest and Destruction of Pendarvis's Dorchester County Hemp Crop (September 19, 2019).**

17. On the morning of September 19, 2019 (presumably before 11:45 a.m.), Appellee Neale obtained an arrest warrant (No. 2019A1810300867) for a "Miscellaneous/General Sessions Misdemeanor Offense where no punishment provided by statute" from a Dorchester County Magistrate. (JA54, JA121-122, JA363, JA375). This warrant was prepared by Appellee Neale with assistance/review from Appellee Wood. (JA54, JA122, JA363). The affidavit portion of that warrant referenced an "attached affidavit." (JA54, JA122, JA363). That affidavit was executed by Appellee Neale and describes the offense as "Unlawful Cultivation of Hemp – 1st Offense (CDR CODE 3554) CODE SECTION: 46-55-20(A)(1)" and then contains the following "probable cause" sworn testimony by Appellee Neale:

> On July 30, 2019, the South Carolina Department of Agriculture (SCDA) observed mature hemp plants growing on an unlicensed site located on Maple Hill Road. Following the visit PENDARVIS applied for an amendment to his original application to change his growing location to the Maple Hill Road site. The SCDA determined PENDARVIS' actions willfully violated the Hemp Farming Act, because prior approval of the new growing location was not obtained before the hemp was grown on the Maple Hill Road site and denied the amendment application. The SCDA notified SLED that PENDARVIS was willfully and unlawfully violating the Hemp Farming Act and requested a criminal investigation. On August 21, 2019, the affiant took samples of the plants at the Maple Hill Road site confirming hemp was growing at the location.

15

(JA54). Notably absent from this warrant, and the supporting affidavit, is any notice that SLED intended to seize and destroy Pendarvis's crop, or that a court had previously rejected an attempt to obtain authorization.

18. On September 19, 2019, at approximately 11:45 a.m., numerous Appellees showed up at Pendarvis's farm in Dorchester County. (JA55, JA122, JA363). Pendarvis is informed and believes that specifically Appellees O'Neal, Neale, Wood, Holden, Stokes, Dixson, Thompson, Krutak, Scruggs and Eaddy were present, but this list is not exclusive. (JA55, JA122, JA363). Pendarvis was arrested by Appellees Neale and O'Neal. (JA 55-59, JA122-125, JA364). During the course of his arrest, Pendarvis requested at least seven times to consult with his attorney. (JA 57-59, JA124, JA364). Pendarvis also requested he be allowed to consult with counsel before his crop was destroyed. (JA57-59, JA364). None of these things occurred; he was booked in the Dorchester County Detention Center and his hemp crop was destroyed that day. (JA60-61, JA125, JA364).

19. On September 20, 2019, Appellees Keel and Weathers issued press releases about the arrest of Pendarvis and the destruction of Pendarvis's crop. (JA61-62, JA125, JA253-254, JA282-284). Also on that day, Pendarvis retained counsel for his criminal charge; said counsel immediately sent to Appellee Keel a preservation/spoliation letter regarding his arrest and the destruction of his crop. (JA62-63, JA125).

16

### G.     Appellees' attempt to Destroy Pendarvis's Marion County Crop, and Pendarvis's Marion County Civil Case.

20.  On August 28, 2019, while Appellee Neale was at Pendarvis's farm collecting samples, Pendarvis informed Appellee Neale that there were two additional acres he had used for his allotment in Marion County (Marion Crop), subsequently emailing to DAG a Second Acreage Amendment Application at approximately 10:38 a.m. (JA49, JA120). DAG did not accept this amendment, and on August 28, 2019, unilaterally declared Pendarvis's omission of the Marion Crop an intentional violation of the Hemp Farming Act. (JA50-51, JA256, JA286). Despite this unambiguous declaration, Appellees Underwood, Jeffcoat, Terry, and Elsalah participated in a series of communications, via telephone and email, implying that amendment was nonetheless possible and requesting the coordinates of the Marion Crop. (JA120-121, JA270-272, JA276-277, JA286).

21.  On or about September 25, 2019, Pendarvis's counsel became aware that SLED and DAG intended to conduct a seizure and destruction action on the Marion Crop. (JA64, JA126). On September 26, 2019, Pendarvis (and the owner of the land where the Marion Crop was located) went on the offensive, filing a lawsuit in the Marion County Court of Common Pleas seeking injunctive and declaratory relief, and also sought an *ex parte* temporary restraining order preventing the Appellees from destroying the Marion Crop. *Pendarvis v. S.C. Law Enf't Div.*, No. 2019-CP-33-00675 (S.C. Comm. Pl. Compl. dated Sept. 26, 2019) *available at*

https://tinyurl.com/547m4pnr (last visited Nov. 30, 2024). On September 26, 2019,

the Marion County Circuit Court granted Pendarvis a temporary restraining order

preventing certain Appellees from destroying the Marion Crop without providing

Pendarvis Due Process. *Pendarvis v. S.C. Law Enf't Div.*, No. 2019-CP-33-00675

(S.C.     Comm.     Pl.     Order     dated     Sept.     26,     2019)     *available     at*

https://tinyurl.com/2pf4dywv (last visited Nov. 29, 2024). The Marion County

Circuit Court held a hearing on October 8, 2019, and on November 8, 2019, it issued

an order holding:

> …the prelimina[ry] injunction issued by the Court prohibiting the
> Defendants from entering onto the property under cultivation by
> Plaintiffs for the purpose of destroying the hemp crop planted thereon
> be left in place pending resolution of the pending litigation.

*Pendarvis v. S.C. Law Enf't Div.*, No. 2019-CP-33-00675 (S.C. Comm. Pl. Order

dated Nov. 8, 2019) *available at* https://tinyurl.com/4924v8m2 (last visited Nov. 29,

2024).

22. The Marion County Circuit Court also rejected SLED and DAG's

argument that the Agreement waived Pendarvis's rights to Due Process and judicial

review, holding:

> Contrary to the argument put forth by the Defendants, the Plaintiffs did
> not waive "their right to due process and judicial review." […] Unlike
> purely contractual rights, constitutional rights cannot be extinguished
> or waived absent express agreement. A contractual wavier of due
> process rights "must, at the very least, be clear." [*Bowens v. N.C. Dept.
> of Human Resources*, 710 F.2d 1015, 1019 (4th Cir. 1983).] Nowhere

18

> in the participation agreement does it expressly state that licensees
> waive their rights to due process and judicial review[…].

*Id.* The Marion County Circuit Court also found "no cogent reason" to disregard the

August 8, 2019, SCAG opinion requiring due process and judicial authorization for

enforcement. *Id* (citing *Marchant v. Hamilton*, 309 S.E.2d 781, 784 (S.C. Ct. App.

1983) (Attorney General opinions "should not be disregarded without cogent

reason")). SLED appealed this order, and the South Carolina Court of Appeals

affirmed. *Pendarvis v. S.C. Law Enf't Div.*, Op. No. 2023-UP-143, 2023 WL

3722239 (S.C. Ct. App. May 24, 2023) *cert. denied*, No. 2023-001466 (S.C. Sup.

Ct. Order dated Aug. 20, 2024).

### H.    Pendarvis's Dorchester County Civil Case

23.    On August 23, 2021, Pendarvis filed a complaint in the Dorchester

County Circuit Court against Appellees Knight, Keel and Weathers in their official

capacities and John Doe(s), asserting causes of action for false/unlawful

arrest/imprisonment and assault and battery against Appellee Keel in his official

capacity and outrage, abuse of process, defamation/defamation *per se*,

negligence/gross negligence/recklessness and conversion against all those

defendants. *Pendarvis v. Knight*, No. 2021-CP-18-01486, 2021 WL 12174572 (S.C.

Comm. Pl. Compl. filed Aug. 23, 2021).

24.    The Dorchester County Civil Case has been embroiled in discovery

disputes since its inception. Pendarvis served Appellee Keel with his initial

discovery requests on August 31, 2021. (JA131). Keel, was, at best, recalcitrant in providing full responses, necessitating a motion to compel by Pendarvis and a two-hour hearing on October 31, 2022. The Dorchester County Circuit Court took an exceedingly dim view of Keel's discovery misconduct, memorialized in an order compelling production and sanctioning Keel. *Pendarvis v. Knight*, No. 2021-CP-18-01486 (S.C. Comm. Pl. Order dated February 28, 2023) *available at* https://tinyurl.com/3yf5mtcy (last visited Nov. 30, 2024). The Dorchester County Circuit Court amended this order to address privacy concerns in personal files after an appeal[2] by Keel. *Pendarvis v. Knight*, No. 2021-CP-18-01486, 2023 WL 9105487 (S.C. Comm. Pl. Order dated Dec. 27, 2023).

25. The Dorchester County Circuit Court's order detailed a litany of discovery abuses by Appellee Keel:

- Keel did not produce the September 11, 2019, emails between his office and Judge Goodstein's office requesting an *ex parte* conference and order, and Judge Goodstein's refusal to comply. *Id.* at 6-7, 22-25.

---

[2] Keel appealed this order to the South Carolina Court of Appeals, which dismissed his appeal as interlocutory. *Pendarvis v. Knight*, No. 2023-000757 (S.C. Ct. App. Order dated July 10, 2023) *reh'g denied*, No. 2023-000757 (S.C. Ct. App. Order dated Aug. 29, 2023) *available at* https://tinyurl.com/yc7p5vps (last visited Nov. 30, 2024). Keel petitioned the South Carolina Supreme Court for a writ of certiorari, which it granted in part to address an issue of privacy in personnel files. *Pendarvis v. Knight*, No. 2023-001533 (S.C. Sup. Ct. Order dated Dec. 13, 2023) *available at* https://tinyurl.com/436yh8r5 (last visited Nov. 30, 2024).

- Keel refused to verify his interrogatory responses. *Id.* at 12.

- Keel used "generalized, conclusory objections" that were inadequate. *Id.* at 13-14 (citing *Curtis v. Time-Warner Entm't v. Advance/Newhouse P'ship*, No. 3:12-cv-2370-JFA, 2013 WL 2099496, 2013 U.S. Dist. LEXIS 68115, 5-6 (D.S.C. May 14, 2013).

- Keel improperly conditioned production upon Pendarvis obtaining a confidentiality order. *Id.* at 14.

- Keel employed objections that "wast[ed] the time and resources of both the parties and the court" by citing an objection while simultaneously providing an incomplete, confusing answer. *Id.* at 18 (quoting *Curtis*, 2013 U.S. Dist. LEXIS 68115 at 4).

- Keel provided improper, evasive responses to Rule 36 Requests for Admissions, and particularly regarding requests about Keel's failure to obtain judicial authorization to destroy Pendarvis's Dorchester Crop. *Id.* at 19-21.

- Keel failed to produce the September 18, 2019, email between Appellees Wells, O'Neal, Whitsett and Wood setting up the new justification to destroy Pendarvis's crop. *Id.* at 26.

26.  The Dorchester County Circuit Court also made several damning findings regarding Keel's conduct during discovery:

21

I FIND that KEEL's conduct regarding discovery in this case has been dilatory, prejudicial, willful, intentional and in bad faith and that his responses have been false, misleading and incomplete.

*Id.* at 22.

I FIND that KEEL has failed to respond fully and adequately to the Plaintiff's discovery requests. The record documents numerous communications KEEL neither identified nor produced.

*Id.* at 26.

I FIND that the prejudice to the Plaintiff from KEEL's conduct is clear, convincing and substantial. Basic discovery in this case has now been delayed for over a year. The Plaintiff has been forced by KEEL to expend substantial time and resources to obtain initial discovery responses that comply with the rules of civil procedure.

*Id.* at 29.

The fact that KEEL's conduct has been found to be dilatory, willful, intentional, prejudicial and in bad faith supports the awarding attorney's fees and costs in this matter. The fact that KEEL's conduct has been found to include false, misleading, and incomplete discovery responses supports the awarding attorney's fees and costs in this matter.

*Id.* at 29-30.

26.  Discovery misconduct continues in the Dorchester County Civil Case. On October 28, 2024, the Dorchester County Circuit Court found Appellee Weathers, also a defendant, improperly invoked attorney-client privilege and the work product doctrine to prevent disclosure of documents. *See  Pendarvis v. Knight*, No. 2021-CP-18-01486 (S.C. Comm. Pl. Order dated Oct. 28, 2024) *available at* https://tinyurl.com/wf3p7dk7 (last visited Nov. 30, 2024).

## II.    Procedural History of this Action.

Appellant filed suit on September 16, 2022. (JA12-103). Instead of answering the Complaint, the Appellees filed motions to dismiss and/or for a more definite statement, and on February 3, 2023, the Magistrate Judge ordered Appellant file a new, less detailed, complaint. (JA104-108). Appellant filed his Amended Complaint on February 24, 2023. (JA109-152). On August 11, 2023, the Magistrate Judge ordered Appellant amend his complaint again in response to several Appellees' motions. (JA290-303). Appellant filed his Second Amended Complaint on August 25, 2023. (JA304-336). Appellees again filed motions to dismiss. (JA5-6). On September 19, 2023, the Magistrate Judge recommended Appellant's Second Amended Complaint be dismissed. (JA337-349). The parties objected to this order on a variety of grounds; Appellant's objection also included a proposed Third Amended Complaint. (JA389-396). After considering the parties' objections, the District Court adopted the Magistrate Judge's recommendation by order dated June 7, 2024. Appellant filed his notice of appeal on July 3, 2024. (JA398-399).

## STANDARD OF REVIEW

All of the orders in this appeal are reviewed *de novo*:

### I.    Fed. R. Civ. P. 12(b)(6)

This Court reviews a dismissal under Fed. R. Civ. P. 12(b)(6) *de novo*. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993).

### II.    Fed. R. Civ. P. 12(e)

This Court appears to have not established a standard of review for the review of an order for a more definite statement under Fed. R. Civ. P. 12(e). The Fifth Circuit reviews such orders for an abuse of discretion. *See Old Time Enters., Inc. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir.1989). An appellate court utilizing this standard reviews the district court's factual findings for clear error and its legal conclusions *de novo*. *E.g. Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013). A district court abuses its discretion when it misapprehends or misapplies the applicable law. *See e.g. Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013) (*en banc*) *see also Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 460 (4th Cir. 1994) ("…we owe no deference to the district court's findings if they are derived as a result of the court's misapplication of the law."). A lower court's opinion that is internally inconsistent is an abuse of discretion. *See FEC v. Christian Coalition*, 178 F.R.D. 456, 468-469 (E.D.Va. 1998).

### III.    Fed. R. Civ. P. 15

This Court reviews a district court's denial of a motion to amend the complaint for abuse of discretion. *See Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006) (*en banc*). However, if the district court denied such a motion on the grounds that the amendment would have been futile, this Court reviews its legal conclusions *de novo*. *United States ex. rel. Ahumada v. NISH*, 756 F.3d 268, 274 (4th Cir. 2014).

## SUMMARY OF ARGUMENT

The Appellees, both individually and as conspirators, have violated Trent Pendarvis's rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and his Due Process rights under Article I, Section 22 of the South Carolina Constitution. Under these provisions and South Carolina law, Trent Pendarvis' hemp crop could not be seized and destroyed without judicial authorization (*i.e.*, Due Process of law). Reviewing the facts alleged in a light most favorable to Trent Pendarvis, not only did the Appellees fail to afford him Due Process, the Appellees also conspired to deprive him of Due Process.

As with most cases arising out of a conspiracy, the underlying facts are complex, and a lengthy complaint is unavoidable under these circumstances. Unfortunately, the Magistrate and District Court elevated form over substance, finding Trent Pendarvis's complaints to be somehow both too prolix and lacking facts. The Magistrate and District Court's errors of law have prevented Trent Pendarvis from having his claims being heard on their merits and have actually assisted the Appellees in the furtherance of their conspiracy. The Magistrate and District Court should be reversed.

# ARGUMENT

## I.    The Appellant's Complaint and First Amended Complaint complied with Rules 8 and 10.

The bases of the Magistrate's two orders for a more definite statement boil down to the following erroneous findings of law:

- Pendarvis's complaints lack clarity as to which allegations apply to which Appellees. (JA106-107, JA297).

- Pendarvis's complaints are excessively long. (JA107, JA296).

- Pendarvis's original complaint contains embedded exhibits / "evidentiary matters". (JA107-108).

According to the Magistrate, these supposed deficiencies violate Fed. R. Civ. P. 8 and 10.[3] The Magistrate's interpretation of the law was erroneous:

<u>First</u>, it is well-settled in many circuits that a court may not dismiss a complaint merely because it is prolix or contains irrelevant matter. *See*, *e.g.*, *Wynder v. McMahon*, 360 F.3d 73, 79-80. (2d Cir. 2004) (district court abused its discretion in dismissing poorly drafted complaint that provided "fair notice" to enable adverse party to answer and prepare for trial, because prolixity in complaint did not overwhelm defendants' ability to understand it or to mount defense); *United States*

---

[3] The authorities cited by the Magistrate in support of its reason are unpublished and unprecedential. *See*, *e.g.*, Fourth Circuit Local Rule 32.1. Each of them, if reviewed, do not provide sufficient detail to serve as guides for this Court's reasoning.

*ex. rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Surplusage can and should be ignored. Instead of insisting that the parties perfect their pleadings, a judge should bypass the dross and get on with the case."); *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001) (district court was not authorized to dismiss complaint "merely because it contains repetitious and irrelevant matter, a disposable husk around a core of proper pleading"); *Bennett v. Schmidt*, 153 F.3d 516, 517-518 (7th Cir. 1998) (although 12-page complaint in employment discrimination case was longer than model complaints and most averments after page five were unnecessary, complaint was intelligible and gave defendants notice of claim for relief); *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1132-1133 (9th Cir. 2008) (district court abused its discretion by dismissing with prejudice when complaint was 68 pages long and contained excessively detailed factual allegations because, despite prolixity, complaint was intelligible and alleged viable, coherent claims); *Mendiondo v. Centinela Hosp. Med. Ct.*, 521 F.3d 1097, 1105 n.4 (9th Cir. 2008) (dismissal is appropriate only in limited circumstances when complaint proves patently verbose, confusing, and rambling).

Further, thanks to *Twombly/Iqbal*, lengthy complaints are now practically necessary:

> Since a plaintiff must now show plausibility, complaints are likely to be longer — and legitimately so — than before *Twombly* and *Iqbal*. And anyway long before those decisions judges and lawyers had abandoned any effort to keep complaints in federal cases short and plain. Typically complaints are long and complicated. One-hundred page complaints that survive a motion to dismiss are not rarities. The

> Forms Appendix to the civil rules, with its beautifully brief model complaints, is a fossil remnant of the era of reform that produced the civil rules in 1938. Three quarters of a century later a 28-page complaint pleading seven distinct wrongs is not excessively long.

*Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) (Posner, J.).

<u>Second</u>, the Federal Rules do not prohibit embedded exhibits. The Federal Rules specifically contemplate and authorize the use of exhibits. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). There is no functional difference between an exhibit that appears in the body of a complaint and an exhibit that is appended on a separate page.

<u>Third</u>, omitting "evidentiary matters" from a complaint is a practical impossibility. A plaintiff is entitled to make averments of fact in his complaint, and any averment of fact, quotation, or reference to a document disputed by a defendant becomes a disputed evidentiary matter. A prohibition against pleading "evidentiary matters" would result in barebones complaints that would never meet the requirements of *Twombly/Iqbal*. Even the complaints in the Forms Appendix to the Federal Rules contain averments of fact that constitute evidentiary matters.

<u>Fourth</u>, this is a complex case that demands a detailed complaint. Each of the *known* acts violating Pendarvis's rights implicate multiple Appellees. The Appellees' relevant misconduct in Pendarvis's criminal prosecution and in the

Marion County and Dorchester County civil actions adds a level of complexity unusual for a typical civil rights lawsuit.

<u>Finally</u>, a hobbled and truncated complaint only provides the Appellees with another tool to engage in discovery abuse and creates a "double bind" for Pendarvis. Defense counsel frequently attempt to use the allegations of the complaint to limit the scope of discovery. Appellee Keel has shown he will go to great lengths to avoid or delay compliance with discovery requests. (Statement of the Case, Sec. I ¶¶ 23-27). Without a doubt, the same Appellees who complain about the length and detail in Pendarvis's complaint will use the allegations of a shorter and less detailed complaint to refuse to comply with discovery requests.

The Plaintiff's original Complaint and First Amended Complaint were lengthy, but not incomprehensible. In considering Pendarvis's complaints, the Magistrate allowed perfect to be the enemy of good, hearkening to a "…primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal." *Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 118 N.E. 214 (Ct. App. 1917) (Cardozo, J.). The Magistrate should have heeded the advice of the Seventh Circuit:

> Surplusage can and should be ignored. Instead of insisting that the parties perfect their pleadings, a judge should bypass the dross and get on with the case. A district court is not authorized to dismiss a complaint merely because it contains repetitious and irrelevant matter, a disposable husk around a core of proper pleading.

*Garst*, 328 F.3d at 378 (quotation removed). Pendarvis's complaint will never be pled in a manner satisfactory to the Appellees.[4] It has, however, put the Appellees on notice of their misconduct and given them a chance to respond. This is what the Federal Rules require. *See Twombly*, 550 U.S. at 555.

## II.    The District Court considered the Second Amended Complaint without context.

The Magistrate's October 19, 2023, Report and Recommendation, and the District Court's June 7, 2024, Order, dismissed the Second Amended Complaint pursuant to Fed. R. Civ. P. 8(a) & 12(b)(6), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) & *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and noncompliance with the Magistrate's prior orders. (JA341-348, JA395-396). In a remarkable about-face, the Magistrate and District Court's position became that Pendarvis's Second Amended Complaint pled too <u>few</u> facts and lacked exhibits. (JA341-348, JA394).

In a Rule 12(b)(6) context, the reviewing court must determine whether the complaint alleges sufficient facts "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 555. In reviewing a Rule 12(b)(6) order, this "Court may also consider documents attached to the complaint or incorporated by reference, including those attached to the motion to dismiss, so long as they are integral to the complaint and authentic,

---

[4] This is because the Appellees are incentivized to delay this matter (and thus discovery in this matter) via motions practice. *See* Argument III, *infra*.

and may take judicial notice of matters of public record." *Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 885 (4th Cir. 2023). The relevant facts obtained from the public record must be construed in a light most favorable to the non-moving party. *B.H. Papasan v. Allain*, 478 U.S. 265, 283 (1986).

The Magistrate and the District Court both appear to acknowledge that deficiencies they believe are present in the Second Amended Complaint could be addressed by the exhibits found in the original Complaint.[5] (JA345-347, JA394). Both refuse to consider the prior complaints because they are now "of no effect." (JA345, JA394). While these prior complaints are now "of no effect", they have not been erased from the record. The "dozens of exhibits" (JA391) embedded within the original Complaint still exist on the public record.[6] They are properly considered by this Court as both matters of public record and as documents integral to and relied upon by the Second Amended Complaint. The Appellees have "fair notice of what the claim[s are] and the grounds upon which [they] rest[.]" *See Twombly*, 550 U.S. at 555. Accordingly, the District Court erred in ordering the dismissal of the Second Amended Complaint.

---

[5] The Magistrate also appears to acknowledge the relevance of the "embedded evidentiary matters" of the original Complaint by noting they could be attached as exhibits. (JA347).

[6] Many of these documents are also part of this case's record as exhibits to Pendarvis's memoranda in opposition to Appellees' motions. (JA153-289).

**III.  The District Court's refusal to allow further amendment prevents this case from being decided on its merits.**

On November 1, 2023, Pendarvis objected to the Magistrate's October 19, 2023, Report and Recommendation. (JA9). As part of his objection, Pendarvis requested the District Court adopt the Magistrate's alternative recommendation to allow amendment, and attached a proposed Third Amended Complaint. (JA9, JA348, JA350-390, JA396). Though Pendarvis maintains his previous complaints complied with Rule 8 and *Twombly/Iqbal*, this Third Amended Complaint also addresses all of the concerns of the Magistrate, District Court, and the Appellees.

The Federal Rules of Civil Procedure state that a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has emphasized that the "mandate" to freely give leave is one "to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *cf. Dan Ryan Builders v. Crystal Ridge Dev.*, 783 F.3d 976, 986 (4th Cir. 2015) (Rule 15(b) helps litigants and the courts "avoid the tyranny of formalism.").

Justice requires that this Court give Pendarvis leave to file his Third Amended Complaint. Relevant statutes of limitation have expired as to many Appellees, severely prejudicing Pendarvis if this action remains dismissed. A conspiracy to violate Pendarvis's constitutional rights has been ongoing for now for over four years. The Appellees sought to, by hook or by crook, destroy Pendarvis's crops, apparently motivated by the SCAG, SLED, and DAG-affiliated Appellees' distain

for cannabis. (Statement of the Case, Sec. I ¶ 9, *supra*). When the Appellees could not find their justification in the Act, they sought a favorable opinion from SCAG. (Statement of the Case, Sec. I ¶¶ 8-13, *supra*). When the SCAG did not deliver, Appellees attempted to mislead the Dorchester County Circuit Court. (Statement of the Case, Sec. I ¶¶ 14-15, *supra*). When the Dorchester County Circuit Court refused to comply, Appellees shoehorned an "amended" SCAG opinion that met their needs. (Statement of the Case, Sec. I ¶¶ 15-16, *supra*).

The Appellees have gone to extraordinary lengths to obscure evidence of this conspiracy. By filing motions to dismiss, instead of answers, in this action, the Appellees delayed the issuance of a scheduling order and discovery conference. *See* Fed. R. Civ. P. 16(b) (scheduling orders); Fed. R. Civ. P. 26(f) (discovery conference). Without a Rule 26(f) conference, Pendarvis could not seek discovery from Appellees. *See* Fed. R. Civ. P. 26(d)(1) (discovery conference necessary to seek discovery). Much of the evidence of Appellees' conspiracy was uncovered only in the Marion County Civil Action and the Dorchester County Civil Action through the discovery process. (Statement of the Case, Sec. I ¶¶ 20-27, *supra*). The Appellees who are defendants in those cases, and particularly Appellee Keel and his agency (SLED), have, and continue to, obfuscate and delay the production of evidence. (Statement of the Case, Sec. I ¶¶ 24-27, *supra*). Pendarvis's Third Amended Complaint addresses this misconduct consistent with the Federal Rules and the

evidence present in the record supports his claims. (JA350-388). Resolution of this matter on its merits has been delayed too long; the District Court should be reversed and Pendarvis should be granted leave to file his Third Amended Complaint.

**CONCLUSION**

The Magistrate and District Court should be reversed.

**STATEMENT REGARDING ORAL ARGUMENT**

Appellant requests oral argument, which he believes would aid the decisional process, particularly on matters of South Carolina law. In scheduling any oral arguments, Messrs. Luck and Hutto would respectfully request this Court take into consideration their obligations as members of the South Carolina General Assembly, which will be in session from January 14, 2025, until approximately May 8, 2025.

Respectfully submitted,

Dated: 12/02/2024                    /s/ Jason Scott Luck

Jason Scott Luck
P.O. Box 47
Bennettsville, SC 29512
843.479.6863

Charles Bradley Hutto
Williams and Williams
P.O. Box 1084
Orangeburg, SC 29116
803.534.5218

Patrick James McLaughlin
Wukela Law Firm
P.O. Box 13057
Florence, SC 29504
843.669.5634

*Counsel for Plaintiff-Appellant*

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. __24-6654__     **Caption:** Pendarvis v. Wilson, et al._____

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✔] this brief or other document contains __approx. 7738__ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✔] this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word for Mac v.16.91_____ [*identify word processing program*] in
Times New Roman, 14 pt_____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s)  Jason Scott Luck_____

Party Name  John Trenton Pendarvis_____

Dated: 12/02/2024_____

04/12/2020  SCC