# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

---

**C/A No.: 24-6654**
**U.S.D.C. #: 2:22-cv-03142-BHH**

---

John Trenton Pendarvis ........................................................................ Appellant,

vs.

Alan M. Wilson, Attorney General; Marck A. Keel, Chief of SLED; Hugh E. Weathers, Commission of South Carolina Department of Agriculture; L.C. Knight, Sheriff of Dorchester County Sheriff's Office; W. Jeffrey Young, Chief Deputy of South Carolina Attorney General's Office; Robert D. cook, Solicitor General; Emory Smith, Jr., Deputy Solicitor General; David S. Jones, Assistant Attorney General; T. Stephen Lynch, Deputy Attorney General; Harley L, Kirkland, Assistant Attorney General; Wesley Vorberger, Assistant Attorney General; Robert Kittle, Communications Director of SCAG; Adam L. Whitsett, General Counsel for SLED; Frank O'Neal, Major for SLEDs Narcotics, Alcohol and Vice services; Jason Wells, Captain for SLEDs Narcotics division; Glenn Wood, Lieutenant for SLED, John Neale, Agent/employee of SLED; Rhett Holden, Agent/employee of SLED; Alden G. Terry, General Counsel for DAG; Derek M. Underwood, Assistant Commissioner of DAGs Consumer Protection Division; J. Clint Leach, Assistant Commissioner of DAGs External Affairs & Economic Development Division; Aaron Wood, Assistant Commissioner of DAGs Agency Operations Division; John Stokes, Program Manager of DAGs Consumer Protection Division; Vanessa Elsalah, Coordinator of DAGs Hemp Program; Brittany Jeffcoat, Coordinator in DAGs Consumer Protection Division; Eva Moore, Communications Director for DAG; Ray Dixson, Captain for DCSO; Frank Thompson, Lieutenant for DCSO; Robert Krutak, Deputy Sheriff for DCSO; Jonathan Calore, Supervisory agent/employee; Charlie Scrubbs,

Agent/employee with the S.C. Forestry Commission; Wayne Eaddy, Agent/employee with the S.C. Forestry Commission,

.................................................................................................... Appellees

_____

## BRIEF OF APPELLEES

_____


RICHARDSON PLOWDEN & ROBINSON, P.A.

/s/ Eugene H. Matthews
Eugene H. Matthews, ID #7141
Post Office Drawer 7788
Columbia, South Carolina 29202
T: (803) 771-4400
F: (803) 779-0016
Email: gmatthews@RichardsonPlowden.com

**COUNSEL FOR ALAN M. WILSON, W. JEFFREY YOUNG, ROBERT D. COOK, EMORY SMITH, JR., JOANNE LEE, DAVID S. JONES, T. STEPHEN LYNCH, HARLEY L. KIRKLAND, WESLEY VORBERGER, AND ROBERT KITTLE**

TABLE OF CONTENTS

DISCLOSURE STATEMENT .................................................................... iii

TABLE OF AUTHORITIES ..................................................................... iv

STATEMENT OF THE ISSUES.................................................................. 1

STATEMENT OF THE CASE..................................................................... 3

    I.      Factual Background ...................................................................... 4

         A.     The Opinion of August 8, 2019 ...................................... 7

         B.     The Opinion of September 30, 2019..................................... 8

    II.     Procedural Background.................................................................. 12

STANDARD OF REVIEW ........................................................................ 13

         A.     Standing ....................................................................... 13

         B.     Failure to State a Claim.................................................. 15

SUMMARY OF ARGUMENTS.................................................................. 17

    I.      Appellant has raised no issue or argument justifying reversal of the Findings of the District Court under Fed. R. Civ. R. 8(a)..................................... 18

    II.     The Appellees identified as the "SCAG Appellees" also set forth proper and alternative grounds for dismissing with prejudice Appellant's various causes of action against item under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) .................................................................................... 19

         A.  Appellant lacks proper standing to bring suit against the SCAG Appellees ......... 20

             i.     Appellant cannot show an "Injury-in-Fact" that is "causally related" to an act of any of the SCAG Appellees. ........................................... 21

             ii.    Appellant cannot show "Redressability" required to establish requisite standing to sue any of the SCAG Appellees. ........................ 27

         B.  Appellant's claims against the "SCAG Appellees" are barred by quasi-judicial immunity, prosecutorial immunity, and qualified immunity.

i.     Quasi-Judicial Immunity .................................................29

ii.    Prosecutorial Immunity .................................................33

iii.   Qualified Immunity ......................................................38

III.    Did Appellant fail otherwise to state a claim for which relief can be granted against the SCAG Appellees? ............................................................41

A.  Appellant's claims fail under the Iqbal-Twombley pleading standard ...........41

B.  Appellant's Second Cause of Action under 42 U.S.C. § 1983 regarding his right to due process, and to be free of unreasonable seizures and unlawful takings, fails as to the SCAG Appellees ...........................................42

C.  Appellant's Fourth Cause of Action under 42 U.S.C. §1983 for alleged "Bystander Liability" fails because he cannot adequately state the elements of his claim against the SCAG Appellees ......................................................44

D.  Appellant's Fifth Cause of Action under 42 U.S.C. §1983 for alleged "Supervisory Liability" fails because he cannot adequately state the elements of his claim against SCAG Appellee Wilson ...................................................46

E.  Appellant's Sixth Cause of Action 42 U.S.C. §1983 for an alleged "Conspiracy" fails because he cannot adequately state the elements of his claim against the SCAG Appellees ......................................................48

Conclusion ............................................................................................................49

CERTIFICATE OF COMPLIANCE ...................................................................50

## DISCLOSURE STATEMENT

Pursuant to Local Rule 26.1(s), The Appellees Alan M. Wilson, W. Jeffrey Young, Robert D. Cook, Emory Smith, Jr., David S. Jones, T. Stephen Lynch, Harley L. Kirkland, Wesley Vorberger, and Robert Kittle ("SCAG Appellees") submit the following:

A) **Information Required by FRAP 26.1.** Not Applicable – Appellees are not an individual.

B) **Information about other Financial Interests.** No publicly-held corporation has a direct financial interest in the outcome of the litigation by reason of a franchise, lease, or other profit-sharing agreement, insurance, or indemnity agreement.

C) **Information about other Publicly held Legal Entities.** Not applicable.

D) **Information About Trade Association Members.** Not Applicable.

TABLE OF AUTHORITIES

**FEDERAL CASES**

*Anderson v. Creighton,* 483 U.S. 635, 638, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987) ............39

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 570)..................17, 41

*Ashcroft v. al Kidd,* 563 U.S. 731, 743, 131 S.Ct. 2074, 179, L.Ed.2d 1149 (2011)...............39

*Beaufort v. Thompson,* 2021 WL 1085313, at *5 (D.S.C. Mar. 22, 2021))............................48

*Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)* ..........................................................................................................15, 17, 41

*Bessekkuey v. S.C. Dep't of Corr.,* 2021 WL 3260842, at *2 (D.S.C. July 30, 2021) ............48

*Briscoe v. LaHue,* 460 U.S. 325, 103 S. Ct. 1108, 75 L. Ed2d 96 (1983) .............................30

*Bryan v. Friedman,* 2008 WL 5378225 (D.S.C. 2008) .....................................................34, 35

*Buckley v. Fitzsimmons,* 509 U.S. 259, 272 (1993) .................................................................34

*Burns v. Reed, 500 U.S.* 478, 486, 491 (1991) .......................................................................33

*Buschi v. Kirven,* 775 F.2d 1240, 1250 (4th Cir. 1985) ...........................................................26

*Butz v. Economou, supra,* 438 U.S. at 513-514, 98 S.Ct. at 2914 ...........................................30

*Campaign for Southern Equality v. Miss. Dept. of Human Services,* 175 F. Supp. 691, 701-703 (S.D. Miss. 2016) ...........................................................................................24

*Campbell v. Florian,* 872 F.3d 385, 396 (4th Cir. 2020) ........................................................40

*Campbell v. Patterson,* 724 F.2d 41, 43 (6th Cir. 1983) .........................................................31

*City of Glendale,* 2014 WL 12729575 (D. Ariz. 2014) ..........................................................34

*De La Fuente v. North Carolina,* 2016 WL 5922314, at *2 (M.D.N.C Oct. 11, 2016) .........14

*Disability rights v. McMaster,* 24 F.4th 893, 900 (4th Cir. 2022). ....................................15, 29

*Dyer v. Md. State Bd. Ed,* 187 F. Supp.3d 599, 612-13 (D.Md. 2016) ...................................31

*E.I, du Pont de Nemours & Co. v. Kolon Indus.* 637 F.3d 435, 440 (4th Cir. 2011) ...............15

*Erlich v. Guiliana,* 910 F.2d 1220, 1222-24 (4th Cir. 1990) ...................................34

*Fawzy v. Wauquiez Boats SNC,* 873 F.3d 451, 455 (4th Circ. 2017) ........................19

*Field v. McMaster,* 2010 WL 3257888, a t*2 (D.S.C. Aug. 17, 2010), aff'd 398, Fed.
App'x 894 (4th Cir. 2010) (citing Springmen v. Williams, 122 F.3d 211, 213
(4th Cir. 1997)) ..........................................................................................................35

*Forrester v. White,* 484 U.S. 219, 225-27 (1998) ...................................................30

*Fox v. Custis*, 712F.2d 84, 87 (4th Cir. 1983) ........................................................24

*Frank Krasner Enters., Ltd. V. Montgomery County.,* 401 F.3d 230, 234 (4th Cir. 2005) ......27

*Freeman v. Fla. Dept. of Corr.,* 1999 SL 1457480, at *3 (N.D. Fla. 1990) ...........................25

*Gladu v. Magnusson,* 2022 W.L. 17417510, at *1 (D. Me. Dec. 5, 2022), aff'd 2023
WL 346119 (D. Me. Jan. 20, 2023) ............................................................................44

*Gore v. Knight,* 2022 WL 17484818, at *2 (D.S.C. Dec. 7, 2022)............................47

*Greater Birmingham Ministries v. Alabama,* 2017 WL 782776, at *10 *(N.D. Ala 2017)
...................................................................................................................................25

*Gustino v. Stoneybrook West Master Assn., Inc*., 842 F. Appx. 323, 328 (11ty Cir. 2021)
...................................................................................................................................25

*Hafer v. Melo,* 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)) ..............................23

*Hall v. City of Williamsburg,* 768 Fed. App'x 366, 374 (6th Cir. 2019)..................................37

*Henderson v. Lopez,* 790 F.2d 44, 47 (7th Cir. 1986)...............................................32

*Harlow v. Fitzgerald,* 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)
...................................................................................................................................38

*Higginbotham v. Jones,* 2010 WL 1662475, at *2 (W.D. La. Marc. 10, 2010) report and
recommendation adopted, 2010 WL 1686009 (W.D. La. Apr. 22, 2010) (Citing *Hafer v.
Melo,* 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)) .........................................22, 23

*Hinkle v. City of Clarksburg, W.Va.,* 81 F.3d 416, 421 (4th Cir. 1996) ..................................49

*Hudler v. McAfee,* 2023 WL 1936351, at *9 (W.D. Tex. Feb. 10, 2023)................................45

*Ill. Ed. Ass'n. v. Ill. St. Bd.Ed,* 791 N.E.2d 522, 529 (Ill. 2003)................................33

*Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47L.Ed ........................................... 30, 36

*Johnson v. Granholm,* 662 F.2d 449 (6th Cir. 1981), cert denied, 457 U.S. 1120, 102 (S. Ct., 2933, 73 L. Ed. 2d 1332) (1982) .......................................................................................... 32

*Johnson v. Johnson,* 2022 WL 4163050, at *10 (D.S.C. July 11, 2022), report and recommendation adopted, 2022 WL 3224669 (D.S. C. Aug. 10, 2022), aff'd 2023 WL 334418 (4th Cir. Jan. 20, 2023) ..................................................................................................... 44


*Justice 360 v. Stirling,* 42 F. 4th 450, 458 (4th Cir. 2022) ................................................. 27, 28

*Kalber v. Redfearn,* 215 S. C. 224, 237, 54 S.E.2d 791, 796 (1949) ....................................... 31

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) .................................................................................................................................... 14

*Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992) .................................................... 39

*Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 Led2d 271 (1986) ......................... 39

*Mangiafico v. Blumenthal,* 471 F.3d 391 396, (2nd Cir. 2006) ............................................. 37

*Martinez v. State of Cal.,* 444 U.S. 277, 285, 100 S. Ct., 554, 559, 62 L. Ed. 2D 481 (1980) ............................................................................................................................................... 24

*Mata v. City of Glendale, 2014 WL 12729575 (D. Ariz. 2014)* ............................................. 34

*McBurney v. Cuccinelli,* 616 F.3d 393, 400 (4th Cir. 2010) ................................................... 29

*McKenna v. Police Chief,* 2022 WL 15046725, at *11-12 (W.D. Va. 2022) ......................... 23

*Meyer v. McMaster,* 394 F. Supp. 3d 550, 558 (D.S.C. 2019) ............................................... 15

*Monroe v. City of Charlottesville, Va.,* 579 F.3d 380, 385-86 (4th Cir. 2009) ...................... 16

*Moore v. Timmerman,* 276 S.C. 104, 109, 276 S.E.2d 290, 293 (1981) ................................. 43

*Murphy v. Fields,* 2018 WL 1449171, at *2 (D.S.C. Mar. 5, 2018) report and recommendation adopted, 2018 WL 1430957 (D.S.C. March 21, 2018) .............................. 45

*Mylan Labs, Inc. v. Matkari,* 7.F.3d 1130 (4th Cir. 1993) ..................................................... 13

*Ostrzenski v. Seigel,* 177 F.3d 245, 250-41 (4th Cir. 1999) ................................................... 30

*Owens v. Baltimore City State's Atty's Off.,* 767 F.3d 379, 396 (4th Cir.2014) ......................15

*Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18L.Ed.2d 288 (1967) ..............................30, 32

*Planned Parenthood of South Carolina v. rose,* 361 F.3d 786, 789 (4th Cir. 2004)
(alteration in original) (quoting *Simon v. Eastern Kentucky Welfare Rights Org.,*
426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)), cert. denied, 543 U.S. 1119,
125 S.Ct. 1036, 160 Led2d 1067 (2005) ....................................................................14

*Pope v. Chew,* 521 F.2d 400, 405-6 (4th Cir. 1975) .................................................30

Randall v. Prince George's Cnty., 203 F.3d 188, 203 (4th Cir. 2002) Randall v. Prince
George's Cnty., 203 F.3d 188, 203 (4th Cir. 2002)....................................................45

*Reform Party of Ala. V. Bennett,* 18F. Supp2d 1342, 1543-55 (M.D. Alabama 1998), aff'd
158F.3d 1171 *11th Cir.1998)...................................................................................24

*Robinson v. Metts,* 85 F. Supp. 2d 557, 563 (D.S.C. 1997), aff'd 188 F.3d 503 (4th Cir. 1999)
................................................................................................................................49

*Savage v. Maryland,* 896 F.3d 260, 268 *4th Cir. 2018).........................................33

*South Carolina Pub. Int. Found v. Greenville CO.,* 401 S.C. 377, 382, n. 3, 737 S.E.2d 502,
505, n. 3 (S.C. App. 2012)........................................................................................25

*Shaw v. Stroud,* 13 F.3d 791, 799 (4th Circ. 1994)................................................47

*Spivey b. Robertson,* 197 F.3d 772, 776 (5th Circ. 1999)........................................37

*Springmen v. Williams,* 122 F.3d 211 (4th Cit. 1997) ...........................................23, 36

*State v. 192 Coin-Operated Video Game Machines,* 338 S.C. 176, 197, 525 S.E.2d 872, 883
(2000)....................................................................................................................8, 43

*State v. Brown,* 351 S.C., 522, ,532 570 S.E.2d 559, 564 (S.C. App. 2002), recd. On other
grounds, 358 S.C. 382, 596 S.E.2d 39 *2004)...........................................................22

*State v. Long,* 406 S.C. 511, 514, 516, 753 S.E. 2d 425, 426 (2014) ......................34

*State vs. Sanders,* 118 S.C. 498, 110, S.E.808, 810 (1920) ...............................29, 30

*Stevenson v. City of Sea Pleasant, Md.,* 743 F.3d 411, 417 (4th Cir. 2014) (citing Randall v.
Prince George's Cnty., 203 F.3d 188, 203 (4th Cir. 2002)........................................45

*Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L. Ed. 2d 331 (1978)...........32

*Swanson v. Powers,* 837 F.2d 965, 969 (4th Circ. 1991) .......................................22

*Tinsley v. S.C. Dep't of Prob.,* 2017 WL 2416473, at *3 (D.S.C. 2017)................................31

*Torres v. Goddard,* 793, F.3d 1046, 1052 (9th Cir. 2015)........................................34

*United Healthcare Servs., Inc. v. Richards,* 2010 WL 3895709, at *2 (W.D.N.C. July 2, 2010), 2010) report and recommendation adopted, 2010 WL 3895705 (W.D.N.C. Sept. 30, 2010)
.......................................................................................13

*White Tail Park, Inc. v. Stroube,* 413 F. 3d 451, 458 (4th Cir. 2005) .....................................15

*Whitmore v. Arkansas,* 495 U.S. 149, 155-56, 110 S.Ct. 1717, 109 L.Ed. 135 (1990) (citations omitted) .......................................................................15

*Wickstrom v. Ebert,* 585 F. Supp. 925, 936-37 (E.D. Wis. 1984) .............................................32

*Yaselli v. Goff,* 12F2d 396, 404 (2nd Cir. 1926) .......................................................32

*Yoggerst v. Steward,* 623 F.2d 35, 38 (7th Cir.) ...............................................26, 27

*Zell v. Neves,* 423 F. Supp. 3d 231, 244 (D.S.C., 2019) .........................................42

*Ziglar v. Abbasi,* 198 L.Ed. 2d 290, 137 S. Ct. 843, 1966 (2017) ...........................................39

**STATE CASES**

*Pendarvis v. Knight, et al,* 2021-CP-18-1486 ...........................................43

**FEDERAL RULES**

Fed. R. Civ. R. 8(a) .......................................................................12, 17

Fed. R. Civ. R. 12(b)(1) ................................................................13, 17

Fed. R. Civ. R. 12(b)(6) ...............................................................13, 15, 17

**FEDERAL STATUTES**

42 U.S.C. § 1983.......................................................4, 5, 17, 21, 31, 38, 43. 44, 46, 47, 48

**STATE STATUTES**

S.C. Code Ann. § 1-7-110.....................................................................3, 7, 21

S.C. Code Ann. § 23-3-15 ..........................................................................28

S.C. Code Ann. § 23-23-10..........................................................................45

S.C. Code Ann. § 46-55-10............................................................................4

S.C. Code Ann. § 46-55-10(B) ......................................................................9

S.C. Code Ann. § 46-55-40............................................................................9

**OTHER AUTHORITIES**

Art. V § 24 of the South Carolina Constitution ........................................34

Op. S.C. Att'y Gen., 2019 WL 3243864(July 10, 2019) ...................10, 11

Op. S.C. Att'y Gen., 2019 WL 3855186 (S.C.A.G. Aug. 8, 2019) ...............7, 8, 10

Op. S.C. Att'y Gen., 2019 WL 5089743 (S.C.A.G. Sept, 30, 2019) ........7, 8, 9, 10, 11, 28, 41

<u>**STATEMENT OF ISSUES**</u>

I.    Has Appellant raised an issue or argument justifying reversal of the findings of the District Court under Fed. R. Civ. R. 8(a) that dismissed Appellant's Second Amended Complaint without prejudice?

II.   Did the Appellees identified as the "SCAG Appellees" set forth proper and alternative grounds for dismissing with prejudice Appellant's various causes of action against them under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)?

    A. Did Appellant lack proper standing to bring suit against the SCAG Appellees?

      i.    Did Appellant demonstrate an "Injury-in-Fact" that is "causally related" to an act of any of the SCAG Appellees?

      ii.   Appellant cannot show "Redressability" required to establish requisite standing to sue any of the SCAG Appellees.

    B. Are Appellant's claims against the "SCAG Appellees" barred by quasi-judicial immunity, prosecutorial immunity, and qualified immunity?

III.  Did Appellant fail otherwise to state a claim for which relief can be granted against the SCAG Appellees?

    A. Did Appellant's claims fail under the *Iqbal-Twombley* pleading standard?

    B. Did Appellant's Second Cause of Action under 42 U.S.C. § 1983 regarding his right to due process, and to be free of unreasonable seizures and unlawful takings, fail as a matter of law as to the SCAG Appellees?

    C. Did Appellant's Fourth Cause of Action under 42 U.S.C. § 1983 for alleged "Bystander Liability" fail because he cannot adequately state the elements of his claim against the SCAG Appellees?

    D. Did Appellant's Fifth Cause of Action under 42 U.S.C. § 1983 for alleged "Supervisory Liability" against SCAG Appellee Wilson fail because Appellant cannot adequately state the elements of his claim?

E. Did Appellant's Sixth Cause of Action under 42 U.S.C. § 1983 for an alleged "Conspiracy" fail because he cannot adequately state the elements of his claim against the SCAG Appellees?

## STATEMENT OF THE CASE

Appellees Alan M. Wilson, W. Jeffrey Young, Robert D. Cook, Emory Smith, Jr., David S. Jones, T. Stephen Lynch, Harley L. Kirkland, Wesley Vorberger, and Robert Kittle,[1] hereinafter referenced collectively as the "SCAG Appellees," are current or former members of the Office of the South Carolina Attorney General, including Attorney General Wilson, Chief Deputy Attorney General W. Jeffrey Young, Solicitor General Robert D. Cook, Deputy Solicitor General Emory Smith, Jr., now-former Assistant Attorney General David S. Jones, Deputy Attorney General T. Stephen Lynch, Assistant Attorney General Harley L. Kirkland, now-former Assistant Attorney General Wesley Vorberger, and Communications Director Robert Kittle.

Appellant John Trenton Pendarvis (hereinafter "Appellant") has spent several years in a futile attempt to sue the SCAG Appellees for doing exactly what the statutes of South Carolina direct them to do, namely, respond to requests from public officials for legal opinions as required by S.C. Code Ann. § 1-7-110.

---

[1] These Appellees have been referenced collectively as the "SCAG Appellees" in the Joint Appendix.

## I.    FACTUAL BACKGROUND.

Appellant has spent the past few years in the U.S. District Court attempting to conjure a federal cause of action under 42 U.S.C. § 1983 arising out of his arrest and the seizure and destruction of hemp for an alleged violation of the South Carolina Hemp Farming Act, S.C. Code Ann. § 46-55-10 *et seq*.  He has sued myriad state and local officials, including the SCAG Appellees.

After his initial Complaint and his Amended Complaint was dismissed, Appellant was granted an extraordinary <u>third</u> attempt to state a claim against the Appellees, including the SCAG Appellees.  Again, in his third attempt – the Second Amended Complaint – he failed to state a claim against the SCAG Appellees, and failed even to articulate – other than offering facile blandishments of generalized wrongdoing – why he was suing the SCAG Appellees.

In any event, in the Second Amended Complaint, Appellant sought to bring four (4) causes of action against the SCAG Appellees, even though these claims were barred by (a) Appellant's lack of standing, (b) by absolute quasi-judicial immunity, prosecutorial immunity, and qualified immunity, and (c) because Appellant's allegations cannot support his claims against the SCAG Appellees:

1. Appellant's Second Cause of Action under 42 U.S.C. § 1983 was stated against only two of the SCAG Appellees, Cook and Jones. Appellant sued them because they allegedly "participate[ed] in the

generation of last minute legal cover in an effort to overcome the denial of Pendarvis' Fifth Amendment due process rights these Appellees knew they were engaging in [*sic*]." [Second Amended Complaint, ¶¶ 53-54, JA316]. Appellant also alleged that, because the opinions authored by Cook and Jones putatively gave "legal cover" to the other Appellees, whose intent was "to seize and destroy Pendarvis' property with significant monetary value," they violated "Pendarvis' Eighth Amendment right against excessive fines." [Second Amended Complaint, ¶¶ 53-54, JA316].

2. Appellant brought his Fourth Cause of Action against each of the SCAG Appellees – other than Kirkland – for an alleged violation of 42 U.S.C. § 1983 under a theory of "bystander liability." In fact, for each of these SCAG Appellees, Appellant repeats this formulaic allegation:

> [SCAG Appellee] knew or should have known that Pendarvis' [*sic*] had been/was being denied due process on the basis of opinions sought from his office, opinions [SCAG Appellee] participated in generating and/or providing and/or defending.

[Second Amended Complaint, ¶¶ 91-98, JA323-325]. Other than these conclusory banalities, there were no other allegations of note to support this cause of action.

3. The only SCAG Appellee targeted by Appellant's Fifth Cause of Action was Appellee Wilson, for an alleged violation of 42 U.S.C. § 1983 under a theory of "supervisory liability." Specifically, Appellant alleged that:

> Appellee WILSON had duty to supervise YOUNG, COOK, SMITH, LYNCH, KITTLE, JONES, KIRKLAND and VORBERGER, which included not allowing his office's opinions to be edited/changed at the request of law enforcement to achieve a desired goal, especially with knowledge that the edits/changes are going to be used to justify the violation of a person's constitutional rights.

[Second Amended Complaint, ¶ 112, JA328].

4. Finally, Appellant's Sixth Cause of Action was against all SCAG Appellees, alleging that they engaged in a "conspiracy" under 42 U.S.C. § 1983 to violate Appellant's constitutional rights. Again, employing conclusory but otherwise formulaic pleading, Appellant accused each of the SCAG Appellees of the following:

> [SCAG Appellee] violated Pendarvis' Fourth, Fifth and Eighth amendment rights by conspiring with other Appellees to hide and/or deny facts he knew to be true and/or to present a false narrative about the conduct in this case to shield himself and others from civil liability for the violation of the Appellant's civil rights.

[Second Amended Complaint, ¶¶ 127-135, JA331-332].

While one would search the Second Amended Complaint in vain for specific allegations related to these claims, from his earlier pleadings, it appeared that Appellant was arguing that the SCAG Appellees should be held liable for two reasons:

- In August and September of 2019, the South Carolina Office of the Attorney General issued two advisory opinions related to interpretations of the South Carolina's Hemp Farming Act. (Amended Complaint, ¶¶ 116-117, JA136-137).

- In late September 2019, several members of the SCAG Appellees conferred with each other as to whether they would assist the South Carolina Law Enforcement Division ("SLED") with another lawsuit Appellant brought against SLED. (Amended Complaint, ¶¶ 127-131, JA139-140). Appellant abandoned any causes of action based on this allegation in his Second Amended Complaint.

Of course, the Office of the South Carolina Attorney General is statutorily required to respond to requests from public officials for opinions on questions of

law. S.C. Code Ann. § 1-7-110. The opinions in question in this litigation were officially published on August 8, 2019, *Op. S.C. Att'y Gen.*, 2019 WL 3855186 (S.C.A.G. Aug. 8, 2019), and September 30, 2019, *Op. S.C. Att'y Gen.*, 2019 WL 5089743 (S.C.A.G. Sept. 30, 2019).

### A. **The Opinion of August 8, 2019.**

On August 5, 2019, the South Carolina Department of Agriculture ("SCDA") notified the South Carolina Law Enforcement Division ("SLED") of a willful violation of the South Carolina Hemp Farming Act. 2019 WL 5089743, at *1. Prior to engaging in its enforcement action against Appellant under the South Carolina Hemp Farming Act, SLED's General Counsel, Adam Whitsett, requested that SCAG issue an advisory opinion concerning the appropriate procedure to pursue enforcement of the Act with respect to hemp grown in violation of the Act. 2019 WL 3855186, at *1.

Notably, Whitsett's request <u>did not</u> reference the fact that Appellant had signed a "Participation Agreement" consenting to forfeiture and destruction, without compensation, of hemp material growing in an area that is not licensed by SCDA. 2019 WL 5089743, at *1.

In response to this request, SCAG issued an opinion on August 8, 2019, which noted SLED's assertion that "law enforcement is prepared to proceed on information that hemp is being grown in violation of the law and is therefore contraband *per se*."

Deferring to law enforcement's determination of that factual question, SCAG issued an advisory opinion that was "focused solely on the procedure SLED should follow in pursuing an enforcement action." 2019 WL 3855186, at *1. The Office observed as follows:

> In conclusion, it is the opinion of this Office that in the absence of legislative direction, **SLED should seek judicial authorization for the seizure of illegally-grown hemp in order to ensure that the grower receives due process consistent with the Constitutions of the United States and the State of South Carolina**. *See, e.g., State v. 192 Coin-Operated Video Game Machines*, 338 S.C. 176, 525 S.E.2d 872 (2000). We advise that this authorization be sought with notice to the grower and an opportunity for them to be heard in a hearing in an abundance of caution.

2019 WL 3855186, at *4 (emphasis added).

**B. The Opinion of September 30, 2019.**

Subsequently, SLED learned about a "Participation Agreement" signed by Appellant, in which he consented to the forfeiture and destruction of hemp grown in an unlicensed area. 2019 WL 5089743, at *1. Shortly thereafter, SLED Director Mark Keel formally requested an advisory opinion from SCAG concerning the Act in light of the Appellant's previous consent in the Participation Agreement. Specifically, as quoted in the Advisory Opinion, Director Keel made the following request:

> I write today to respectfully request an opinion on several aspects of The Hemp Farming Act (Act 14 of 2019, formerly H.3449) and its application in South Carolina. As an initial matter, SLED is informed

and believes that only individuals and businesses operating in accordance with this Act can legally "cultivate, handle, or process hemp" in South Carolina, and that any and all such cultivation can only be on land specifically approved and authorized by the Department of Agriculture.

As such, any attempt to grow outside the approved auspices of the Hemp Farming Act is illegal. In that regard, in addition to the criminal penalties discussed in the July 10, 2019 Opinion, S.C. Code Ann. § 46-55-40 also states that:

> If the commissioner determines that a licensee has violated state law with a culpable mental state greater than negligence, then the commissioner shall immediately report the hemp producer to the Attorney General and the Chief of the South Carolina Law Enforcement Division, and subsection (A)(2) shall not apply to the violation.

S.C. Code Ann. § 46-55-10(B) [*sic*]. To that end, on August 5, 2019, the Department of Agriculture notified SLED and the Attorney General of a willful violation of the Hemp Farming Act. However, there is no further guidance in the statute on this issue and no regulations have been promulgated. In that regard, SLED requested an opinion regarding the appropriate procedures to take in this instance and your office provided such. **At that time, SLED had not received a copy of the Participation Agreement from the individual involved and was not aware of the consent to forfeiture and destruction contained therein.** [emphasis added]. In addition, following the issuance of the August opinion, SLED attempted to secure an order of destruction from a circuit court as discussed in the August opinion; however, the court would not entertain such. While no specific reasoning was provided by the court, there is simply no statutory or regulatory authorization for a court to entertain such request.

Subsequently, SLED was provided a copy of the Participation Agreement in question which clearly and unequivocally states that the **"Permitted Grower acknowledges and consents to the forfeiture and destruction, without compensation, of hemp material: i. Found to have a measured delta-9 THC content more than 0.3 percent on**

**a dry weight basis;...and iii. Growing in an area that is not licensed by SCDA." ....**

In addition, SLED would also note that the Participation Agreement also contains an Indemnification and Release section that states:

> Permitted Grower agrees to indemnify, hold harmless, and release forever the State of South Carolina, its departments, agencies, officers, employees, and agents of any kind from all liability claims arising out of Pilot Grower's negligent or illegal actions or actions otherwise in violation of the terms of the Program involving the domestic or international acquisition, cultivation, or processing of hemp and Permitted Grower's participation in the Program.

Accordingly, SLED would respectfully request a formal opinion supplementing and clarifying the effect of the Participation Agreement regarding the due process discussed in the August opinion.

2019 WL 5089743, at *1-2 (emphasis added).

Based on this new request, the advisory opinion published on September 30,

2019 concluded as follows:

> **In conclusion, it is the opinion of this Office that if there has been a valid consent as you describe then no judicial authorization is required for seizure upon notice from the Department of Agriculture that it has found hemp grown unlawfully in willful violation of applicable law**. We emphasize that this conclusion is offered in the abstract, and that the scenario you present involves highly fact-specific questions which this Office cannot determine. This formal opinion is intended to supplement and clarify our August 8 opinion in light of the new information presented to us. *See Op. S.C. Att'y Gen.*, 2019 WL 3855186 (August 8, 2019).

Our opinion here has been expedited, and it should be read in the context of our prior opinions dated July 10 and August 8, 2019. *Id.; see also Op. S.C. Att'y Gen.*, 2019 WL 3243864 (July 10, 2019). In the

factual scenario you present to us, law enforcement is prepared to proceed on information that hemp is being grown in violation of the law and is therefore contraband *per se*. **Consistent with our prior opinions and the longstanding policy of this Office, we defer to law enforcement's determination of that factual question.** Our opinion here is focused solely on the procedure SLED should follow in pursuing an enforcement action. **Additionally, this opinion is not an attempt to comment on any pending litigation or criminal proceeding**.

Our Office acknowledged more than once that "the Hemp Farming Act of 2019 was not drafted with the greatest of clarity and needs legislative or judicial clarification." *Op. S.C. Att'y Gen.*, 2019 WL 3243864 (July 10, 2019). We reiterate that this is another example of the need for legislative or judicial direction regarding the implementation of South Carolina's industrial hemp program.

Moreover, we emphasize again the importance of the General Assembly revisiting the Act to address the numerous issues recognized in this, as well as our July 10 and August 8 opinion. In addition, as the agency designated by the General Assembly to regulate hemp, the Department of Agriculture, working closely with SLED, may wish to promulgate regulations to address the omissions identified in these opinions. Without such regulations, law enforcement agents find themselves in an extraordinarily difficult situation. They are required to enforce a statute which creates a general framework but lacks many of the specific protocols which normally guide all stakeholders in a regulatory enforcement process. Indeed, your letter notes that one court already has declined to entertain a request to authorize an enforcement action, apparently as a result of the absence of established protocols. Promulgating regulations at the administrative level may provide some much-needed certainty until such a time as the General Assembly clarifies the Hemp Farming Act.

Because our opinion is advisory only, we strongly reiterate that either the courts or the legislature must resolve the difficult issues in the statute outlined in our July 10 and August 8 opinions.

2019 WL 5089743, at *3-4 (emphasis added).

II.    **PROCEDURAL BACKGROUND.**

As set forth in greater detail below, the District Court has rejected Appellant's attempt to sue the SCAG Appellees on three separate occasions.

First, Magistrate Judge Cherry rejected the initial Complaint, but granted Appellant an opportunity to amend his pleading to comply with Fed. R. Civ. P. 8. (JA104-108).  Judge Cherry did not rule on the substantive arguments raised by the SCAG Appellees in their Motion to Dismiss Appellant's initial Complaint.

Second, after Appellant filed an Amended Complaint, Magistrate Judge Cherry again rejected it.  (JA290-303).  However, she also noted that "although Appellant's Amended Complaint is a shotgun pleading, it should not be dismissed with prejudice – as some Defendants urge – without allowing Plaintiff one final opportunity to amend."  (JA301).  As before, Judge Cherry did not rule on the substantive arguments raised by the SCAG Appellees in their Motion to Dismiss Appellant's Amended Complaint.

After Appellant filed his Second Amended Complaint, Judge Cherry noted that it "contains no alleged facts whatsoever" and that although the pleading set forth the "necessary elements for each cause of action alleged, they are ultimately legal conclusions couched as factual allegations." (JA343). In her Report and Recommendation, Judge Cherry recommended that Appellant's Second Amended Complaint be dismissed without prejudice, and in the alternative, that Appellant be

granted yet another opportunity to amend his pleading. (JA337-349). Again, Judge Cherry did not address the substantive arguments raised by the SCAG Appellees in their Motion to Dismiss Appellant's Second Amended Complaint.

Ultimately, District Judge Bruce Hendricks adopted Judge Cherry's Report and Recommendation and issued an Order dismissing Appellant's lawsuit without prejudice. (JA389-396). Like the Report and Recommendation, the Order did not rule on the substantive arguments raised by the SCAG Appellees in their Motion to Dismiss Appellant's Second Amended Complaint, although it did observe that "Appellees' motions also include arguments regarding qualified immunity and other immunities, bystander liability, supervisory liability, and standing." (JA393, n. 1).

## STANDARD OF REVIEW

The arguments of the SCAG Appellees proceeded under both Fed. R. Civ. P. 12(b)(1), for lack of standing and Fed. R. Civ. P.  12(b)(6), for failure to state a claim for which relief can be granted.  This Court reviews dismissal under these rules *de novo. Mylan Labs, Inc. v. Matkari*, 7. F.3d 1130 (4th Cir. 1993).

### A. STANDING.

As standing "is a fundamental component of a court's subject-matter jurisdiction," a party's standing may be properly challenged by way of a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). *United Healthcare Servs., Inc. v. Richards,* 2010 WL 3895709, at *2 (W.D.N.C. July 2, 2010), *report and recommendation adopted,* 2010 WL 3895705 (W.D.N.C. Sept. 30, 2010).

"A justiciable case or controversy requires a '[Appellant who] has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf.'" *Planned Parenthood of South Carolina v. Rose,* 361 F.3d 786, 789 (4th Cir. 2004) (alteration in original) (quoting *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)), *cert. denied,* 543 U.S. 1119, 125 S.Ct. 1036, 160 L.Ed.2d 1067 (2005). To satisfy the constitutional standing requirement, the Appellant must provide evidence to support

14

the conclusion that: (1) "the [Appellant] ... suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "there [is] a causal connection between the injury and the conduct complained of"; and (3) "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations and internal quotation marks omitted).

In short, when confronted with a motion to dismiss under Fed. R. Civ P. 12(b)(1), to establish his standing to bring his claim, the Appellant bears the burden of showing injury in fact, causation, and redressability. *De La Fuente v. North Carolina*, 2016 WL 5922314, at *2 (M.D.N.C. Oct. 11, 2016); *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005).

Furthermore, "standing inquiry must be evaluated separately as to each [Appellee]." *Disability Rights v. McMaster*, 24 F.4th 893, 900 (4th Cir. 2022). As Judge Childs recognized in *Meyer v. McMaster*, 394 F. Supp.3d 550, 558 (D.S.C. 2019), standing ensures that a party possesses "the requisite stake in the outcome of a case 'at the outset of the litigation.'" For that reason, a federal district court is "powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas*, 495 U.S. 149, 155-56, 110 S.Ct. 1717, 109 L. Ed. 135 (1990) (citations omitted).

## B. FAILURE TO STATE A CLAIM.

To survive a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To satisfy the standard, a party must do more than allege facts that show the "sheer possibility" of wrongdoing. *Owens v. Baltimore City State's Att'ys Off.,* 767 F.3d 379, 396 (4th Cir. 2014).

The court must accept the Appellant's factual allegations as true and draw all reasonable inferences in his favor. *See E.I. du Pont de Nemours & Co. v. Kolon Indus.,* 637 F.3d 435, 440 (4th Cir. 2011). However, the court "need not accept the legal conclusions drawn from the facts, and [ ] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385–86 (4th Cir. 2009).

Under this standard, because Appellant cannot prevail on his claims against any of the SCAG Appellees as a matter of law, his appeal must be dismissed with prejudice.

## SUMMARY OF ARGUMENT

It is certainly the case that the District Court properly dismissed Appellant's pleadings under Fed. R. Civ. P. 12(b)(6) for failing to meet the pleading requirements of Fed. R. Civ. P. 8(a).

Additionally, the SCAG Appellees note that Appellant's pleadings failed to state claims under Fed. R. Civ. P. 12(b)(1) for failure to demonstrate that he had the proper standing to bring any of his claims against any of the SCAG Appellees.

Further, the SCAG Appellees also note that Appellant's claims failed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim under theories of quasi-judicial immunity, prosecutorial immunity, qualified immunity, and his failure to state a claim for alleged violations of due process, bystander liability, supervisory liability, and conspiracy under 42 U.S.C. § 1983.

## ARGUMENT

**I.** **Appellant has raised no issue or argument justifying reversal of the findings of the District Court under Fed. R. Civ. R. 8(a).**

Appellant has utterly failed to present any credible argument that would justify overturning the District Court's ultimate decision to dismiss Appellant's pleading without prejudice.

First, the District Court properly observed that Appellant enjoyed at least three opportunities to state a claim against any the Appellees, including the SCAG Appellees. (JA391-393). It noted that the Magistrate Judge had given Appellant two opportunities to cure the defects in his first two complaints. (JA392). It also noted with apparent approval that Magistrate Judge found the Amended Complaint to be an improper "shotgun pleading," which did not give Appellees fair notice of the claims. *Id.*

Second, the District Court properly agreed with the Magistrate Judge that the Second Amended Complaint failed to meet the pleading standards of *Iqbal/Twombley*. For instance, Appellant does not – and cannot – dispute that "not once does [Appellant] allege a specific date" or define the "time period in question" relevant to the alleged constitutional violations in the Second Amended Complaint. (JA394).

Perhaps most importantly, the District Court anticipated Appellant's argument that the Court should have, *sua sponte*, somehow amalgamized his various pleadings – three separate complaints, no less – into a single, cognizable complaint that presumably would remedy the various defects identified at length by the Magistrate Judge and the District Court. While one is left to guess how such an amalgamation might be engineered, the District Court properly rejected such a notion and relied instead on the binding authority of *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017), to find that "the second amended complaint supersedes the prior complaints and renders the prior complaints 'of no effect.'"

In short, Appellant has offered no cogent argument that should prompt this Court to reverse the decision of the District Court to dismiss his Second Amended Complaint without prejudice. For this reason alone, the appeal before this Court should be dismissed.

## II. The Appellees identified as the "SCAG Appellees" also set forth proper and alternative grounds for dismissing with prejudice Appellant's various causes of action against them under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

At each turn before the trial court, the SCAG Appellees set forth a number of grounds that Appellant's claims specifically alleged against each of them should have been dismissed with prejudice as a matter of law.

### A. **Appellant lacks proper standing to bring suit against the SCAG Appellees.**

Despite having three separate opportunities to state claims against the SCAG Appellees, Appellant failed to demonstrate proper standing to bring suit against any of them.  For this reason alone, his claims against the SCAG Appellees should have been dismissed <u>with</u> prejudice.

As set forth above, Appellant apparently believes that there was something improper about the opinions issued by the Office of the Attorney General concerning its interpretations of South Carolina's Hemp Farming Act, but never alleges <u>why</u> these opinions constituted mere "legal cover" for other Appellees.  Similarly, Appellant's "bystander" and "supervisory" causes of action were derivative of his baseless allegation that there was something illegal about the opinions issued by the Office of the Attorney General.

Appellant also alleged no specific "acts" to support his "conspiracy" claim against any of the SCAG Appellees, other than a general and formulaic allegations indiscriminately applicable to all would-be Appellees.  (JA386-387).  In fact, Appellant failed to describe a <u>single</u> concrete act of <u>any</u> of the SCAG Appellees in furtherance such a conspiracy, and they – and the District Court – were left to guess what any of these acts might have been.

In essence, Appellant attempted to sue the SCAG Appellees based on his allegations that (1) they rendered advisory opinions as mere "legal cover" for the actions of other Appellees, and (2) they later engaged in a unspecified conspiracy to harm Appellant. Appellant alleged that these acts amount to violations of Appellant's civil rights under 42 U.S.C. § 1983. These assertions were not factual allegations. Instead, these assertions were a baseless smear, were unsupported legal conclusions, and they were fatally flawed.

### i.  Appellant cannot show an "Injury-in-Fact" that is "causally related" to an act of any of the SCAG Appellees.

First, Appellant failed to show that he suffered an "injury-in-fact" that could be causally related to conduct of any of the SCAG Appellees. At best, he can show that SCAG promptly responded to SLED's requests for advisory opinions concerning the enforcement of the Act. Appellant appears unaware that S.C. Code Ann. § 1-7-110 actually directs that the South Carolina Attorney General "**shall**, when required by the Secretary of State, State Treasurer, Adjutant General, Comptroller General, or any other State officer or the Public Service Commission, consult and advise with them, respectively, on questions of law relating to their official business." (Emphasis added).

Under this statute, the South Carolina Attorney General <u>must</u> give advice to state officers on "questions of law." He cannot – and did not in this case – determine

facts. As Judge Goolsby wrote in *State v. Brown*, 351 S.C. 522, 532, 570 S.E.2d 559, 564 (S.C. App. 2002), *revd. on other grounds,* 358 S.C. 382, 596 S.E.2d 39 (2004), "[t]hough not binding, opinions generated by the Attorney General's Office constitute secondary authority that many people consult when researching a particular area of law." Opinions are posted on the Attorney General's website for the convenience of the public.

To employ these advisory opinions, or discussions about whether to assist SLED in litigation, as a device to drag the Attorney General and his staff into a civil rights lawsuit is far too remote for Article III standing.[2] Suing the SCAG Appellees in this manner carries the doctrine of standing to ridiculous lengths.

As an initial matter, Appellant has not alleged any fact from which a jury or judge could find that any of the SCAG Appellees performed any act that was outside his or her respective official duties. For that reason alone, Appellant's lawsuit against the SCAG Appellees is barred by the Eleventh Amendment. *Higginbotham v. Jones*, 2010 WL 1662475, at *2 (W.D. La. Mar. 10, 2010), *report and*

---

[2] As the Fourth Circuit has recognized, "[a]bsent extraordinary circumstances . . . , liability will not attach for executing the statutory duties one was appointed to perform. . . . Government would come to a virtual standstill if executive officials concluded that their safest course of action was to ignore the laws of the state and to take no course of action for fear of liability." *Swanson v. Powers*, 937 F.2d 965, 969 (4th Cir. 1991). That is precisely the case here.

*recommendation adopted*, 2010 WL 1686009 (W.D. La. Apr. 22, 2010) (citing *Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)). More importantly, *Higginbotham* also points out the "the mere authoring of an Attorney General's opinion in itself cannot qualify as a "wrongful action" for purposes of stating a cause of action under § 1983." 2010 WL 1662475, at *3. As set forth in *Springmen v. Williams*, 122 F.3d 211 (4th Cir. 1997):

> Springmen sued Williams because he believed that she was the party that had the final say in going forward with his prosecution. If this view is correct, and it is, Williams is obviously protected by *Imbler*. **If, however, it was the action of Officer Rakowski and not Williams' advice that caused Springmen's prosecution, he has sued the wrong party because Williams' action could in no way be considered the proximate cause of any harm resulting from that prosecution**.

122 F.3d at 213 (emphasis added); *McKenna v. Police Chief*, 2022 WL 15046725, at *11-12 (W.D. Va. 2022) ("Boyer, relying on facts provided by Officer Erickson, opined that McKenna *could be charged* with obstruction of justice, and in doing so, he acted as an advocate in professionally evaluating the evidence assembled by the officer Appellees and in approving of a criminal prosecution...It was the officer Appellees' decision, not Boyer's advice, that caused the McKenna's warrantless arrest.").

   For this reason alone, Appellant cannot establish that any of the SCAG Appellees committed an act that is "causally related" to his purported "injury-in-fact," and for that reason, Appellant does not have standing to bring his claims

against any of the SCAG Appellees. *See also Martinez v. State of Cal.*, 444 U.S. 277, 285, 100 S. Ct. 553, 559, 62 L. Ed. 2d 481 (1980) (Parole Board not liable where death caused by parolee "is too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law."); *Fox v. Custis*, 712 F.2d 84, 87 (4th Cir. 1983) (alleged injury was "too remote" from the challenged conduct of the state actors to constitute a "deprivation" of constitutional rights under § 1983, even though "cause and effect relationship concededly less attenuated than that in *Martinez.*"); *Campaign for Southern Equality v. Miss. Dept. of Human Services*, 175 F. Supp. 691, 701-703 (S.D. Miss. 2016) ("[P]laintiff's injuries are not fairly traceable to any act by the Attorney General and could not redress the actual injury Plaintiffs assert even if he rescinded Opinion No. 2011-00515. The claims against the Attorney General are dismissed with prejudice."); *Reform Party of Ala. v. Bennett*, 18 F. Supp.2d 1342, 1354-55 (M.D. Alabama 1998), *aff'd,* 158 F.3d 1171 (11th Cir. 1998) ("Plaintiff's second cause of action alleges that the Opinion of the Attorney General, to the extent that it defines the election laws contained in the Code of Alabama, unconstitutionally deprives 'minor' parties of their right to ballot access in that it requires those parties to name their candidates before they are legally constituted as political parties under the Code. . . . [t]he Appellants are confused as to the legal effect of an opinion of the Attorney General. Attorney General opinions are merely advisory in nature and do not have the effect of law…Thus, the Plaintiffs'

contentions that an Attorney General's opinion in any way 'defined the election laws contained in the Code of Alabama' or was binding on any state official are completely erroneous… <u>The Attorney General has done nothing by writing an advisory opinion to deprive anyone of a constitutional right.</u>") (emphasis added) (citations omitted); *Greater Birmingham Ministries v. Alabama*, 2017 WL 782776, at *10 (N.D. Ala. 2017) ("Advisory opinions simply offer the Attorney General's interpretation of Alabama law; they do not enforce or implement the law and while they are persuasive, advisory opinions are not binding"[3]); *Gustino v. Stoneybrook West Master Assn., Inc.*, 842 F. Appx. 323, 328 (11th Cir. 2021) ("Because Gustino failed to plausibly allege that his injuries are fairly traceable to the Attorney General, he does not have standing to sue her."); *Freeman v. Fla. Dept. of Corr.,* 1999 WL 1457480, at *3 (N.D. Fla. 1999) ("Because Butterworth's advisory opinion does not constitute a 'law' subject to ex post facto prohibition, Freeman cannot state a claim against (Attorney General) Butterworth for violation of the Ex Post Facto clause. Butterworth, in other words, is entitled to dismissal from this action.").

---

[3] Similarly, as the South Carolina Court of Appeals has stated, while Attorney General opinions may be persuasive, they are not "binding authority." *South Carolina Pub. Int. Found. v. Greenville Co.,* 401 S.C. 377, 382, n. 3, 737 S.E.2d 502, 505, n. 3 (S.C. App. 2012).

The Fourth Circuit's decision in *Buschi v. Kirven*, 775 F.2d 1240, 1250 (4th Cir. 1985) stands for the same principle. In that case, several discharged mental patients sued the Governor and numerous other state officials, claiming a conspiracy to deprive patients of their First Amendment and due process rights. Among those named was an Assistant Attorney General whose duty was to advise the Department of Mental Health and the Department of Mental Retardation. The Assistant Attorney General allegedly "had consulted with two officials of the Department and had 'advance knowledge of and condoned'" the disciplinary action taken against two patients, who also alleged that these actions were taken in violation of state law. In finding that the Assistant Attorney General gave legal advice as part of his duties, the Fourth Circuit upheld his dismissal from the lawsuit, stating that "[a]n attorney who offers advice to his client without malice and in good faith, may not be liable." 775 F.2d at 1250.

The *Buschi* Court noted that *Yoggerst v. Stewart*, 623 F.2d 35, 38 (7th Cir. 1980) was "strikingly similar" on its facts to the situation in *Buschi*. In *Yoggerst*, a legal advisor for the Office of Manpower and Human Development was sued for violation of an employee's free speech rights. His role was to give legal counsel to any agency official on any subject matter relating to agency functions. However, as in *Buschi*, he lacked power to discipline the Appellant employee. He merely could give his legal opinion. The Seventh Circuit found that the complaint failed to state

a claim. Attorney Stewart's "'only involvement in the case consisted of the good faith offering of a legal opinion at the request of [the agency]. . . . Stewart was not the efficient cause of any injury to Yoggerst. An attorney, offering advice in good faith, is not liable for the torts of a client.'" 775 F.2d at 1250 (quoting *Yoggerst*, 623 F.2d at 38). Similarly, Appellant's case here attempts to stretch the doctrine of causation beyond the breaking point.

### ii. Appellant cannot show "Redressability" required to establish requisite standing to sue any of the SCAG Appellees.

Second, Appellant must be able to establish that the "injury-in-fact" is likely to be redressed by a favorable judicial decision. *Justice 360 v. Stirling*, 42 F.4th 450, 458 (4ᵗʰ Cir. 2022). To satisfy the redressability requirement, a plaintiff must establish that there exists "a non-speculative likelihood that the [alleged] injury would be redressed by a favorable judicial decision." *Frank Krasner Enters., Ltd. v. Montgomery County.*, 401 F.3d 230, 234 (4th Cir. 2005).

In *Justice 360*, the Fourth Circuit concluded that the plaintiff lacked standing to sue the Attorney General who had issued an advisory opinion regarding its lack of a right to information concerning execution protocols. In so finding, the Fourth Circuit noted that, while standing was somewhat relaxed where First Amendment claims are made, redressability was still absent:

> [e]ven if we were to strike down the Identity statute or the 2015 AG opinion, Justice 360 still would have no legal right – through FOIA

or any other vehicle – to demand the information it seeks. At most, it could ask Stirling [Director of Dept. of Corrections] for it; yet, he appears to retain discretion over whether to release such information. And Justice 360 has put forward no evidence establishing that Stirling would, in fact, provide that information if left to his own discretion. Any suggestion that he would do so is speculation built on speculation. . . . Therefore, granting Justice 360 the relief it seeks in its Amended Complaint would amount to no more than an impermissible advisory opinion, as the organization's alleged injuries would remain unaddressed.

42 F.4th at 460.

Accordingly, as in *Justice 360*, even if this Court found that the advisory opinions of the Attorney General were somehow improper, or did not exist at all, SLED's discretion to seize and destroy the crop and arrest Appellant would not be disturbed. Under S.C. Code Ann. § 23-3-15, SLED – not SCAG – possesses "specific and exclusive jurisdiction and authority" over "general criminal investigations." Indeed, the September 19 opinion expressly advised that SLED must determine the facts and that ultimately a court must make a ruling. *Op. S.C. Att'y Gen.*, 2019 WL 5089743, at *3 (S.C.A.G. Sept. 30, 2019) ("Of course the scenario you present involves highly fact-specific questions which this Office cannot determine. We reiterate that we defer to law enforcement's determination of these factual questions in the first instance, and that they ultimately must be determined by a court.") (emphasis added).

The Attorney General is the State's chief legal officer, not the State's chief law enforcement officer. The Attorney General and staff thus have no "power" whatever to control SLED's discretion regarding criminal enforcement, and did not attempt to do so in this case. Accordingly, standing to sue the SCAG Appellees is completely absent in light of a complete lack of redressability. *See also Disability Rights South Carolina v. McMaster*, 24 F.4th 893, 902 (4th Cir. 2022) ("When a Appellee has no role in enforcing the law at issue, it follows that the Appellant's injury allegedly caused by that law is not traceable to the Appellee."); *McBurney v. Cuccinelli*, 616 F.3d 393, 400 (4th Cir. 2010) (". . . the Attorney General's duty to issue advisory opinions is . . . 'not sufficient to make [him] the proper part[y] to litigation challenging the law.'").

For these reasons alone, Appellant's claims against the SCAG Appellees must be dismissed with prejudice.

## B. Appellant's claims against the "SCAG Appellees" are barred by quasi-judicial immunity, prosecutorial immunity, and qualified immunity.

### i. Quasi-Judicial Immunity.

The South Carolina Supreme Court has recognized that executive officers, such as the Attorney General, generally perform quasi-judicial functions, and in those cases, absolute immunity attaches. *See State v. Sanders*, 118 S.C. 498, 110

S.E. 808, 810 (1920) ("The Attorney General is the highest executive law officer of the State. He is charged with the duty of seeing to the proper administration of the laws of the State, and his duties are quasi-judicial… It was therefore assumed by the Legislature that he would act fairly and impartially in, the discharge of his duties…."). As the U.S. Supreme Court stated in *Forrester v. White*, 484 U.S. 219, 225-27 (1998):

> [i]n the years since *Bradley* was decided, this Court has not been quick to find that federal legislation was meant to diminish the traditional common-law protections extended to the judicial process. See e.g., *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L. Ed.2d 288 (1967). <u>On the contrary, these protections have been held to extend Executive Branch officials who perform quasi-judicial functions, see *Butz v. Economou, supra*, 438 U.S. at 513-514, 98 S.Ct. at 2914, or who perform prosecutorial functions that are intimately associated with the judicial phase of the criminal process</u>," *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L. Ed.2d 128 (1976). The common law's rationale for these decisions – freeing the judicial process of harassment or intimidation – has been thought to require absolute immunity even for advocates and witnesses. See *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L. Ed.2d 96 (1983); *Butz v. Economou*, 438 U.S. at 512, 98 S.Ct. at 2913.

(emphasis added); *see also Ostrzenski v. Seigel*, 177 F.3d 245, 250-51 (4th Cir. 1999) (peer reviewers entitled to absolute immunity because they "exercise their professional discretion in determining whether one of their fellow physicians deviated from the standard of professional care. . . ."); *Pope v. Chew*, 521 F.2d 400, 405-6 (4th Cir. 1975) (parole board members entitled to absolute immunity in

performing a quasi-judicial function); *Dyer v. Md. State Bd. Ed.*, 187 F. Supp.3d 599, 612-13 (D.Md. 2016) (State Board of Education members absolutely immune); *Tinsley v. S.C. Dep't of Prob.,* 2017 WL 2416473, at *3 (D.S.C. 2017) ("[M]embers of the Parole Board, who perform a quasi-judicial function, are immune from suits for damages under 42 U.S.C. § 1983.") (citation omitted).

Undoubtedly, the issuance of an Attorney General's opinion is a quasi-judicial function. In *Kalber v. Redfearn*, 215 S.C. 224, 237, 54 S.E.2d 791, 796 (1949), the South Carolina Supreme Court found that advisory opinions of the Attorney General are researched and written as part of the exercise of a quasi-judicial function, stating that "[w]hile the opinions of the Attorney General are not binding upon the Court, they are persuasive for that office occupies a quasi-judicial position. . . ." (emphasis added).

This conclusion is fully in accord with the general law which recognizes that "[a]n attorney general rendering official advisory opinions acts in a quasi-judicial capacity . . . but is an officer of the state exercising executive authority. . . ." 7A C.J.S. Attorney General § 36.

Other authority strongly supports the principle that the issuance of an Attorney General's opinion is a quasi-judicial function and thus entitled to absolute immunity. For example, in *Campbell v. Patterson*, 724 F.2d 41, 43 (6th Cir. 1983), the Sixth Circuit so found:

31

> . . . it is settled that judicial immunity, which has historically
> protected judges acting in their judicial capacity, *Pierson v. Ray*, 386
> U.S. 547, 87 S.Ct. 1213, 18 L. Ed.2d 288 (1967), also attaches to
> public officials who perform quasi-judicial duties. *Johnson v.
> Granholm*, 662 F.2d 449 (6th Cir. 1981), *cert. denied*, 457 U.S. 1120,
> 102 (S.Ct. 2933, 73 L. Ed.2d 1332 (1982). Moreover, this immunity
> is not forfeit[ed] if the action taken was erroneous, malicious or
> exceeded authority. *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct.
> 1099, 55 L. Ed.2d 331 (1978). . . .
>
> In *Michigan*, the Attorney General is obligated by statute to render
> opinions interpreting law at the request of state agencies or officials.
> . . . Moreover, such opinions are binding upon the state department
> or agent which requested them [unlike in South Carolina]. . . . Thus,
> the district judge correctly ascribed absolute immunity to the
> Attorney General and the prison officials in this case.

Other cases agree. See *Wickstrom v. Ebert*, 585 F. Supp. 925, 936-37 (E.D. Wis.

1984) (claim against Attorney General LaFollette "alleges a violation of section

1983 based solely on his providing the Shawano County District Attorney with

advice on the legality of the purported township, it is wholly frivolous and cannot

form the basis of any civil rights action. In this regard, it is axiomatic that the State

Attorney General, in the exercise of his constitutionally-prescribed powers, has the

right – even the responsibility – to provide other state law enforcement officials with

substantive guidance and practical direction on the performance of their duties under

the law."); *Henderson v. Lopez*, 790 F.2d 44, 47 (7th Cir. 1986) (assistant county

attorney entitled to absolute immunity when advising county officials); *Yaselli v.

Goff*, 12 F.2d 396, 404 (2nd Cir. 1926) ("A United States Attorney, if not a judicial

officer, is at least a quasi-judicial officer, of the government."); *Ill. Ed. Ass'n. v. Ill. St. Bd. Ed.*, 791 N.E.2d 522, 529 (Ill. 2003) (Attorney General's opinion writing function is an inherent part of the Attorney General's duty to represent the State and its agencies.). As noted above, the Attorney General of South Carolina is required by law to issue advisory opinions on questions of law to state officials. Thus, there is ample support that the SCAG Appellees involved in the issuance of the advisory opinions at issue in this case are entitled to absolute quasi-judicial immunity.

For this reason alone, Appellant's claims against the SCAG Appellees, all of whom were performing quasi-judicial functions, must be dismissed with prejudice.

### ii. **Prosecutorial Immunity.**

Even assuming *arguendo* that the issuance of Attorney General opinions is not entitled to absolute <u>quasi-judicial</u> immunity, Appellant's claims against the SCAG Appellees are barred, in any event, by absolute <u>prosecutorial</u> immunity. When a prosecutor is functioning as an <u>advocate for the State</u>, his or her actions are "intimately associated with the judicial phase of the criminal process" and thus he or she is absolutely immune from damages. *Savage v. Maryland*, 896 F.3d 260, 268 (4th Cir. 2018).

Prosecutorial immunity must be based upon functions "intimately associated with the judicial phase of the criminal process" rather than those of an "administrator or investigative officer." *Burns v. Reed*, 500 U.S. 478, 486, 491 (1991).

Prosecutorial immunity necessarily includes "'actions preliminary to the initiation of a prosecution and actions apart from the courtroom.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 272 (1993).

Pursuant to Art. V, § 24 of the South Carolina Constitution, the Attorney General is the "chief prosecuting officer" of South Carolina. In this capacity, the Attorney General possesses "broad common law and statutory authority to prosecute any case on behalf of the State." Art. V, § 24 "firmly establishes the Attorney General as the chief prosecuting officer of the State of South Carolina <u>for both criminal and civil proceedings</u>." *State v. Long*, 406 S.C. 511, 514, 516, 753 S.E.2d 425, 426 (2014) (emphasis added). Courts have consistently recognized that absolute prosecutorial immunity is applicable to not only criminal prosecution but to the initiation of civil forfeiture proceedings. See *Torres v. Goddard*, 793 F.3d 1046, 1052 (9th Cir. 2015) (and cases cited) (including *Erlich v. Guiliani*, 910 F.2d 1220, 1222-24 (4th Cir. 1990)). As the Court held in *Mata v. City of Glendale*, 2014 WL 12729575 (D. Ariz. 2014), the freezing of bank accounts is entitled to absolute prosecutorial immunity.

Federal courts in South Carolina have consistently applied absolute prosecutorial immunity to Assistant Attorneys General. In *Bryan v. Friedman*, 2008 WL 5378225 (D.S.C. 2008), the Court opined:

> . . . even if plaintiff's sparse and conclusory allegations could be liberally interpreted as seeking damages from defendants or their refusal to provide him with the state-court related documents he seeks, his case would still be subjected to summary dismissal for frivolity because both defendants are entitled to absolute immunity from such claims. Defendant Friedman is an Assistant Attorney General or, in other words, a prosecutor for the State of South Carolina. In refusing to provide the requested documents to plaintiff, Friedman was engaging in clearly prosecutorial duties of deciding law to conduct the criminal case in which the Grand Jury documents were prepared.

2008 WL 5378225, at *3.

In *Field v. McMaster*, the Court recognized that a prosecutor is absolutely immune from suit for "conduct in initiating and in presenting the State's case." *Field v. McMaster*, 2010 WL 3257888, at *2 (D.S.C. Aug. 17, 2010), *aff'd*, 398 Fed. App'x 894 (4th Cir. 2010) (citing *Springmen v. Williams*, 122 F.3d 211, 213 (4th Cir. 1997)). In *Field*, the question was whether prosecutorial immunity applied to the actions of Assistant Attorney General Bill Condon for issuance of a "stop order" on behalf of the Securities Division of the Attorney General's Office. The Court determined that "[t]he decision to issue a stop order is a discretionary decision that exceeds mere investigation." 2010 WL 3257888, at * 4. Even if, *arguendo*, Appellant's allegations were true, the SCAG Appellees were performing their duties as <u>prosecutors</u> with respect to arrest and civil forfeiture and thus are absolutely immune from suit, as the September 19 opinion constituted <u>legal advice</u> with respect to the law of consent for seizure and destruction. Even if Appellant casts this advice

as the "last step" before SLED seized and destroyed his hemp crop, this advice is an action of a prosecutor, for which the SCAG Appellees are absolutely immune.

Further, as the Fourth Circuit ruled in *Springmen*, "[t]he doctrine of absolute immunity squarely covers a prosecutor's decision to go forward with a prosecution." 122 F.3d at 212. Although the plaintiff argued that prosecutorial immunity did not apply because the police officer – not the prosecutor – signed the charging documents, the Fourth Circuit rejected this argument:

> We reject Springmen's reading of *Imbler [v. Pachtman, supra]*. That case did not rest on the technicality of a prosecutor's signature on a charging document, but rather more broadly immunized prosecutors from liability for conduct "which is intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430, 96 S.Ct. at 994. **It is difficult to imagine conduct more intimately related to the judicial process than a prosecutor's decision to proceed with a prosecution.** The fact that in this case a police officer implemented the prosecutor's decision does nothing to change this conclusion. Indeed, the irony of Springmen's suit is that it tacitly acknowledges this position. **Springmen sued Williams because he believed that she was the party that had the final say in going forward with his prosecution. If this view is correct, and it is, Williams is obviously protected by *Imbler*. If, however, it was the action of Officer Rakowski and not Williams' advice that caused Springmen's prosecution, he has sued the wrong party because Williams' action could in no way be considered the proximate cause of any harm resulting from that prosecution**.

122 F.3d at 213 (emphasis added). This is precisely the situation here. As argued above, Appellant cannot blame the Attorney General for issuing non-binding advice to SLED, and at the same time, contend this advice was the "last step" before arrest

and seizure/destruction of his hemp crop.  As argued above, non-binding advisory opinions lack causal connection to Appellant's alleged injuries.

But even assuming that somehow the Attorney General possessed the power to order SLED to take action against Appellant – which he does not – such instruction would be protected by prosecutorial immunity.  Indeed, the opinions offered by the Office of the Attorney General are not investigative action, but heavily-caveated advisory opinions that discuss the effect of consent on the procedure of forfeiture, and that specifically notes that a court must hear the matter ultimately.  *See Hall v. City of Williamsburg*, 768 Fed. App'x 366, 374 (6th Cir. 2019) ("legal advice" from prosecutor to trooper instructing him to obtain a search warrant and seize computers is protected by absolute immunity); *Spivey v. Robertson*, 197 F.3d 772, 776 (5th Cir. 1999) ("Because the prosecutors were acting as advocates in supplying legal advice based on facts provided by police officers to support an affidavit for an arrest warrant, the prosecutors in the instant case are absolutely immune.").

Further, the process of decision making that the SCAG Appellees employed to decide whether to assist SLED in its litigation of matters related to Appellant is also fully protected by absolute immunity.  As the Second Circuit reasoned in *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2nd Cir. 2006), "[w]e can divine no meaningful difference between the Attorney General's decision in this case not to

defend a state employee and the decisions of prosecutors and government attorneys to initiate (or not to initiate) civil or administrative proceedings. In both instances, the government attorney is serving as an advocate of the state determining whether to commit the state's resources, reputation and prestige to litigation." In short, the determination of whether or not the Attorney General would represent an officer in a legal proceeding is part and parcel of his or her duty as an advocate for the State.

Accordingly, from beginning to end, the SCAG Appellees have been absolutely immune from suit. These were attorneys giving legal advice in their quasi-judicial capacity, as well as support personnel assisting in rendering that advice. Further, they were attorneys making the decision whether it was appropriate for the Attorney General's Office to represent SLED in litigation. Such quasi-judicial and prosecutorial decisions were all protected by absolute immunity. For this reason alone, Appellant's claims against each of the SCAG Appellees must be dismissed with prejudice.

### iii. Qualified Immunity.

Public officials subject to claims brought under 42 U.S.C. § 1983 are also protected by "qualified immunity." The qualified immunity rule seeks a proper balance between two competing interests. On one hand, damages suits "may offer the only realistic avenue for vindication of constitutional guarantees." *Harlow v. Fitzgerald,* 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "On the other

hand, permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). As one means to accommodate these two objectives, the Court has held that government officials are entitled to qualified immunity with respect to "discretionary functions" performed in their official capacities. *Id.* The doctrine of qualified immunity gives officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al–Kidd,* 563 U.S. 731, 743, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011); *Ziglar v. Abbasi,* 198 L. Ed. 2d 290, 137 S. Ct. 1843, 1866 (2017).

In light of these concerns, our Supreme Court has held that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."). To determine whether a given public official was "plainly incompetent" or "knowingly violate[d] the law," a court must ask whether it would have been clear to a reasonable officer that the alleged conduct "was unlawful in the situation he confronted." *Ziglar,* 137 S. Ct. at 1867. If so, then the defendant officer must have been either

incompetent or else a knowing violator of the law, and thus not entitled to qualified immunity. However, if a reasonable officer might not have known for certain that the conduct was unlawful, the officer is immune from liability.

Our Fourth Circuit has ruled that, even where a state attorney renders an opinion that is later actually <u>reversed</u> by a court of competent jurisdiction, qualified immunity to suit applied. In *Campbell v. Florian*, 972 F.3d 385, 396 (4th Cir. 2020), *as amended*, (Aug. 28, 2020), the court found that in-house counsel for the South Carolina Department of Corrections were protected by qualified immunity even where their interpretation of a state incarceration statute was later reversed by the South Carolina Court of Appeals.

> An incorrect legal opinion often occurs without some negligent (much less reckless) act or omission. In our adversarial legal system, roughly 50% of litigants lose—and thus have pressed an incorrect legal opinion. Competent administrative agencies and lower courts are often overturned despite careful and thoughtful legal interpretations…In sum, Campbell asks us to infer criminal recklessness from a legal conclusion later deemed unreasonable. We cannot. That the South Carolina Court of Appeals reached a different statutory interpretation than Florian does not make out a violation of the Eighth Amendment.

972 F.3d at 396.

The Fourth Circuit's ruling in *Florian* applies squarely to the instant case. Each of the opinions of the SCAG Appellees discusses at length the uncertain nature of the Act and "the need for legislative or judicial direction regarding the implementation of South Carolina's industrial hemp program." *Op. S.C. Att'y Gen.*,

2019 WL 5089743, at *3 (S.C.A.G. Sept. 30, 2019). There is nothing remotely unconstitutional – or even remarkable – about these opinions.

For these reasons, Appellant's claims against the SCAG Appellees must be dismissed with prejudice.

## IV. Because Appellant has otherwise failed to state a claim for which relief can be granted against the SCAG Appellees, his suit against them must be dismissed with prejudice.

### A. Appellant's claims fail under the *Iqbal-Twombley* pleading standard.

Not only do Appellant's allegations fail to state a claim, the Second Amended Complaint – or any of his complaints, for that matter – is devoid of any allegations regarding any action whatsoever against the Appellant. As such, this Complaint fails to meet the following standards recognized by this Court:

> In *Ashcroft v. Iqbal*, the United States Supreme Court stated that to survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when [a party] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Id*. The plausibility standard "asks for more than a sheer possibility that a [party] has acted unlawfully." *Id*. Rather, "[i]t requires [a party] to articulate facts, when accepted as true, that 'show' that [the party] has stated a claim entitling [them] to relief[.]" *Francis*, 588 F.3d at 193 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). Such "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. . . However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged

41

– but it has not 'show[n]'" – "'that the pleader is entitled to relief.'" *Id.*
(quoting Fed. R. Civ. P. 8(a)(2)).

*Zell for Est. of Zell v. Neves*, 423 F. Supp. 3d 231, 244 (D.S.C. 2019).

Completely missing from Appellant's allegations is any claim whatsoever that any of the SCAG Appellees actually did anything that caused Appellant an injury. Carrying out a public officer's assigned duties, quasi-judicial in nature, cannot form the basis for a lawsuit seeking compensation and punitive damages. Thus, each of the SCAG Appellees should be dismissed due to Appellant's failure to state a claim upon which relief can be granted.

**B. Appellant's Second Cause of Action under 42 U.S.C. § 1983 regarding his right to due process, and to be free unreasonable seizures and unlawful takings, fails as to the SCAG Appellees.**

Appellant's Second Cause of Action alleges that the SCAG Appellees Cook and Jones "participat[ed] in the generation of last minute legal cover" to assist others to "seize and destroy Pendarvis' property." (JA316).

As an initial matter, because claims against the SCAG Appellees are barred due to the absolute quasi-judicial immunity, prosecutorial immunity, and qualified immunity described above, Appellant's Second Amended Complaint must be dismissed with prejudice.

Further, there are no allegations that any of the SCAG Appellees actually took part in – or had the authority to order – the seizure and taking of the hemp crop, or arrest of Appellant, or otherwise deprived Appellant of due process.[4]  For this reason alone, Appellant's Second Cause of Action fails. In an analogous case, the court found as follows:

> The record reflects and the Court takes judicial notice of the fact that Ms. O'Brien is an Assistant Attorney General and not an employee of the Maine Department of Corrections. Plaintiff's suggestion, therefore, that Ms. O'Brien had any authority to seize Appellant's property or deprive him of certain publications is not plausible. **Even if Ms. O'Brien provided legal advice to the Department regarding the Department's ability to restrict certain materials in the prison environment, as Plaintiff alleged, that fact alone is generally insufficient to show the personal involvement that is necessary to establish liability under § 1983 for an alleged constitutional violation**.

---

[4] If anything, the opinions of the Attorney General at issue here speak directly to the due process owed to Appellant under the Act.  Indeed, it appears that Appellant is pursuing post-seizure remedies in state court, which amply satisfies due process requirements.  *Pendarvis v. Knight, et al.*, 2021-CP-18-1486, pending in the Dorchester County Court of Common Pleas.    As stated in *State v. 192 Coin-Operated Video Game Machines*, 338 S.C. 176, 197, 525 S.E.2d 872, 883 (2000):

> Plaintiff argues its due process rights were violated because it did not receive a pre-*seizure* hearing. We disagree. The statute does not direct a pre-seizure hearing, nor is one required in a civil forfeiture case. The most due process requires is a post-seizure opportunity for an innocent owner "to come forward and show, if he can, why the *res* should not be forfeited and disposed of as provided for by law." *Moore v. Timmerman,* 276 S.C. 104, 109, 276 S.E.2d 290, 293 (1981).

*Gladu v. Magnusson*, 2022 WL 17417510, at *1 (D. Me. Dec. 5, 2022), *aff'd*, 2023 WL 346119 (D. Me. Jan. 20, 2023) (emphasis added); *see also Johnson v. Johnson,* 2022 WL 4163050, at *10 (D.S.C. July 11, 2022), *report and recommendation adopted*, 2022 WL 3224669 (D.S.C. Aug. 10, 2022), *aff'd*, 2023 WL 334418 (4th Cir. Jan. 20, 2023) ("[T]the undersigned recommends dismissing any claims against Defendant Anderson because there is no genuine issue of material fact as to whether Defendant Anderson had any personal involvement in the incidents giving rise to the allegations in Plaintiff's Complaint sufficient to state a claim under § 1983.").

### C. **Appellant's Fourth Cause of Action under 42 U.S.C. § 1983 for alleged "Bystander Liability" fails because he cannot adequately state the elements of his claim against the SCAG Appellees.**

Appellant's Fourth Cause of Action attempts to state a claim against the SCAG Appellees for "bystander liability" under 42 U.S.C. § 1983, alleging that the SCAG Appellees harmed him because they knew "that the basis for Pendarvis' arrest and/or the seizure/destruction of Pendarvis' hemp crop and/or the criminal process instituted/continued against Pendarvis[]" was somehow constitutionally lacking. (JA323-325).

To succeed on a theory of bystander liability, Appellant must demonstrate that a law-enforcement officer (1) knew that a fellow officer was violating an individual's constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3)

chose not to act. *Stevenson v. City of Seat Pleasant, Md.,* 743 F.3d 411, 417 (4th Cir. 2014) (*citing Randall v. Prince George's Cnty.,* 302 F.3d 188, 203 (4th Cir. 2002).

This Court has found that "bystander liability" under 42 U.S.C. § 1983 applies only to law enforcement officers[5] because of their "duty to uphold the law and protect the public from illegal acts." *Murphy v. Fields,* 2018 WL 1449171, at *2 (D.S.C. Mar. 5, 2018), *report and recommendation adopted,* 2018 WL 1430957 (D.S.C. Mar. 21, 2018); *see also Hudler v. McAfee,* 2023 WL 1936351, at *9 (W.D. Tex. Feb. 10, 2023) ("Hudler identifies no authority for extending bystander liability to district attorneys. The Court recommends that Hudler's claims against McAfee for excessive force and false arrest on a theory of bystander liability be dismissed."). For this reason alone, Appellant's Fourth Cause of Action against the SCAG Appellees must be dismissed with prejudice.

Furthermore, because the defenses of absolute quasi-judicial immunity, prosecutorial immunity, and qualified immunity apply squarely to Appellant's Fourth Cause of Action, it must be dismissed with prejudice.

---

[5] A "Law Enforcement Officer" means "an appointed officer or employee hired by and regularly on the payroll of the State or any of its political subdivisions, who is granted statutory authority to enforce all or some of the criminal, traffic, and penal laws of the State and who possesses, with respect to those laws, the power to effect arrests for offenses committed or alleged to have been committed." S.C. Code Ann. § 23-23-10.

**D. <u>Appellant's Fifth Cause of Action under 42 U.S.C. § 1983 for alleged "Supervisory Liability" fails because he cannot adequately state the elements of his claim against SCAG Appellee Wilson.</u>**

Appellant's Fifth Cause of Action attempted to state a claim only against SCAG Appellee Wilson for "supervisory liability" under 42 U.S.C. § 1983, alleging that he purportedly failed to supervise his subordinates to "not allow[] his office's opinions to be edited/changed at the request of law enforcement to achieve a desired goal, especially with the knowledge that the edits/changes are going to be used to justify a violation of a person's constitutional rights." (JA328). Appellant also alleged that Appellee Wilson failed to "adequately train and/or supervise [his] subordinates to the rights of persons in similar situations to the [Appellant]." (JA328).

Three elements are necessary to establish supervisory liability under 42 U.S.C. § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the Appellant, (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) that there was an

"affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the Appellant. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

To satisfy the requirements of the first element, Appellant must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the Appellant. Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. *Id*. Appellant has not alleged any conduct that poses such a "pervasive and unreasonable" risk of constitutional injury. At most, he appears to take issue with the conclusions of SCAG's advisory opinion from September 2019, or that some SCAG Appellees received emails from SLED. This is woefully insufficient to state a claim against SCAG Appellee Wilson under a "supervisory liability" theory. *Gore v. Knight*, 2022 WL 17484818, at *2 (D.S.C. Dec. 7, 2022) ("The Magistrate Judge correctly noted that the Amended Complaint did not contain any allegations of misconduct by Defendant Doe except for the incident at issue here. And because a 'single allegation of misconduct by a subordinate is not enough to hold a supervisor liable on a § 1983 claim under a theory of supervisory liability,' the Magistrate Judge

47

correctly recommended that plaintiff's claim against Defendant Knight in his individual capacity should be dismissed") (quoting *Beaufort v. Thompson*, 2021 WL 1085313, at \*5 (D.S.C. Mar. 22, 2021)); *Bessellieu v. S.C. Dep't of Corr.*, 2021 WL 3260842, at \*2 (D.S.C. July 30, 2021) ("[E]lemental conclusory allegations, however, are insufficient to state a claim for supervisory liability against Stirling."). Appellant also offers no cognizable allegations to support the second or third elements of the claim.

Furthermore, because the defenses of absolute quasi-judicial immunity, prosecutorial immunity, and qualified immunity apply squarely to Appellant's Fifth Cause of Action, it must be dismissed with prejudice.

### E. **Appellant's Sixth Cause of Action under 42 U.S.C. § 1983 for an alleged "Conspiracy" fails because he cannot adequately state the elements of his claim against the SCAG Appellees.**

Appellant's Sixth Cause of Action attempts to state a claim against the SCAG Appellees for engaging in a "conspiracy" under 42 U.S.C. § 1983 to "impede, hinder, obstruct and/or defeat the due course of justice with the intent to violate [Appellant's] constitutional rights and deny him due process" (JA330-331).

To establish a civil conspiracy under 42 U.S.C. § 1983, Appellant must present evidence that the Appellees acted in concert and committed some overt act in furtherance of the conspiracy that resulted in a deprivation of one of Appellant's

constitutional rights. *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996); *Robinson v. Metts*, 86 F. Supp. 2d 557, 563 (D.S.C. 1997), *aff'd,* 188 F.3d 503 (4th Cir. 1999). For this reason alone, Appellant's Sixth Cause of Action must be dismissed with prejudice, as he has failed to allege any "overt act" committed by any of the SCAG Appellees "in the furtherance of a conspiracy" that resulted in the deprivation of any of Appellant's constitutional rights.

And, as with each of his other claims, because the defenses of absolute quasi-judicial immunity, prosecutorial immunity, and qualified immunity apply squarely to Appellant's Sixth Cause of Action, it must be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, the SCAG Appellees respectfully requests that this Court GRANT their motion, DISMISS Appellant's claims with prejudice, and GRANT any other such relief as the Court deems just and proper.

Dated this the __th day of January, 2025.


Signature page to follow

Respectfully submitted,

RICHARDSON PLOWDEN & ROBINSON, P.A.

/s/ Eugene H. Matthews
Eugene H. Matthews, ID #7141
Post Office Drawer 7788
Columbia, South Carolina 29202
T: (803) 771-4400
F: (803) 779-0016
Email: gmatthews@RichardsonPlowden.com

COUNSEL FOR ALAN M. WILSON, W. JEFFREY
YOUNG, ROBERT D. COOK, EMORY SMITH, JR.,
DAVID S. JONES, T. STEPHEN LYNCH, HARLEY L.
KIRKLAND, WESLEY VORBERGER, AND ROBERT
KITTLE