IN THE
# *UNITED STATES COURT OF APPEALS*
# *FOR THE FOURTH CIRCUIT*

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

---

**C/A No.: 24-6654**
**U.S.D.C. #: 2:22-cv-03142-BHH**

---

John Trenton Pendarvis ......................................................................... Appellant,

vs.

Alan M. Wilson, Attorney General; Marck A. Keel, Chief of SLED; Hugh E. Weathers, Commission of South Carolina Department of Agriculture; L.C. Knight, Sheriff of Dorchester County Sheriff's Office; W. Jeffrey Young, Chief Deputy of South Carolina Attorney General's Office; Robert D. Cook, Solicitor General; Emory Smith, Jr., Deputy Solicitor General; David S. Jones, Assistant Attorney General; T. Stephen Lynch, Deputy Attorney General; Harley L, Kirkland, Assistant Attorney General; Wesley Vorberger, Assistant Attorney General; Robert Kittle, Communications Director of SCAG; Adam L. Whitsett, General Counsel for SLED; Frank O'Neal, Major for SLEDs Narcotics, Alcohol and Vice services; Jason Wells, Captain for SLEDs Narcotics division; Glenn Wood, Lieutenant for SLED, John Neale, Agent/employee of SLED; Rhett Holden, Agent/employee of SLED; Alden G. Terry, General Counsel for DAG; Derek M. Underwood, Assistant Commissioner of DAGs Consumer Protection Division; J. Clint Leach, Assistant Commissioner of DAGs External Affairs & Economic Development Division; Aaron Wood, Assistant Commissioner of DAGs Agency Operations Division; John Stokes, Program Manager of DAGs Consumer Protection Division; Vanessa Elsalah, Coordinator of DAGs Hemp Program; Brittany Jeffcoat, Coordinator in DAGs Consumer Protection Division; Eva Moore, Communications Director for DAG; Ray Dixson,

Captain for DCSO; Frank Thompson, Lieutenant for DCSO; Robert Krutak, Deputy Sheriff for DCSO; Jonathan Calore, Supervisory agent/employee; Charlie Scrubbs, Agent/employee with the S.C. Forestry Commission; Wayne Eaddy, Agent/employee with the S.C. Forestry Commission,

.............................................................................................. Appellees

---

**BRIEF OF SOUTH CAROLINA ATTORNEY
GENERAL APPELLEES**

---

RICHARDSON PLOWDEN & ROBINSON, P.A.

/s/ Eugene H. Matthews
Eugene H. Matthews, ID #7141
Post Office Drawer 7788
Columbia, South Carolina 29202
T: (803) 771-4400
F: (803) 779-0016
Email: gmatthews@RichardsonPlowden.com

COUNSEL FOR ALAN M. WILSON, W. JEFFREY YOUNG, ROBERT D. COOK, EMORY SMITH, JR., JOANNE LEE, DAVID S. JONES, T. STEPHEN LYNCH, HARLEY L. KIRKLAND, WESLEY VORBERGER, AND ROBERT KITTLE

## TABLE OF CONTENTS

DISCLOSURE STATEMENT .................................................................................. iii

TABLE OF AUTHORITIES ................................................................................... iv

STATEMENT OF THE ISSUES.............................................................................. 1

STATEMENT OF THE CASE.................................................................................. 2

    A.    The Opinion of August 8, 2019 ........................................................ 4

    B.    The Opinion of September 30, 2019................................................. 5

STANDARD OF REVIEW ...................................................................................... 6

SUMMARY OF ARGUMENTS .............................................................................. 6

I.    The Appellees identified as the "SCAG Appellees" also set forth proper and alternative grounds for dismissing with prejudice Appellant's various causes of action against item under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) .................................................................................................................. 6

    A.  Appellant lacks proper standing to bring suit against the SCAG Appellees ........... 6

        i.    Appellant cannot show an "Injury-in-Fact" that is "causally related" to an act of any of the SCAG Appellees. ............................................. 7

        ii.    Appellant cannot show "Redressability" required to establish requisite standing to sue any of the SCAG Appellees. ...................... 10

    B.  Appellant's claims against the "SCAG Appellees" are barred by quasi-judicial immunity, prosecutorial immunity, and qualified immunity. ........ 11

        i.    Quasi-Judicial Immunity........................................................ 11

        ii.    Prosecutorial Immunity................................................................. 12

        iii.    Qualified Immunity........................................................................ 15

II.    Did Appellant fail otherwise to state a claim for which relief can be granted against the SCAG Appellees? ........................................................................ 17

    A.  Appellant's claims fail under the Iqbal-Twombley pleading standard............ 17

    B.  Appellant's Second Cause of Action under 42 U.S.C. § 1983 regarding his right to due process, and to be free of unreasonable seizures and

unlawful takings, fails as to the SCAG Appellees............................................17

C.  Appellant's Fourth Cause of Action under 42 U.S.C. §1983 for alleged
    "Bystander Liability" fails because he cannot adequately state the elements
    of his claim against the SCAG Appellees......................................................18

D.  Appellant's Fifth Cause of Action under 42 U.S.C. §1983 for alleged
    "Supervisory Liability" fails because he cannot adequately state the elements
    of his claim against SCAG Appellee Wilson .................................................19

E.  Appellant's Sixth Cause of Action 42 U.S.C. §1983 for an alleged
    "Conspiracy" fails because he cannot adequately state the elements of
    his claim against the SCAG Appellees ...........................................................21

Conclusion ...........................................................................................................22

CERTIFICATE OF COMPLIANCE ....................................................................23

## <u>DISCLOSURE STATEMENT</u>

Pursuant to Local Rule 26.1(s), The Appellees Alan M. Wilson, W. Jeffrey Young, Robert D. Cook, Emory Smith, Jr., David S. Jones, T. Stephen Lynch, Harley L. Kirkland, Wesley Vorberger, and Robert Kittle ("SCAG Appellees") submit the following:

A) **Information Required by FRAP 26.1.** Not Applicable – Appellees are not an individual.

B) **Information about other Financial Interests.** No publicly-held corporation has a direct financial interest in the outcome of the litigation by reason of a franchise, lease, or other profit-sharing agreement, insurance, or indemnity agreement.

C) **Information about other Publicly held Legal Entities.** Not applicable.

D) **Information About Trade Association Members.** Not Applicable.

TABLE OF AUTHORITIES

**FEDERAL CASES**

*Anderson v. Creighton,* 483 U.S. 635, 638, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987) ............15

*Ashcroft v. al Kidd,* 563 U.S. 731, 743, 131 S.Ct. 2074, 179, L.Ed.2d 1149 (2011)..............15

*Beaufort v. Thompson,* 2021 WL 1085313, at *5 (D.S.C. Mar. 22, 2021))............................21

*Bessellieu v. S.C. Dep't of Corr.,* 2021 WL 3260842, at *2 (D.S.C. July 30, 2021) .............21

*Bryan v. Friedman,* 2008 WL 5378225 (D.S.C. 2008) ...........................................................14

*Buckley v. Fitzsimmons,* 509 U.S. 259, 272 (1993) ................................................................13

*Burns v. Reed, 500 U.S.* 478, 486, 491 (1991) ........................................................................13

*Buschi v. Kirven,* 775 F.2d 1240, 1250 (4ᵗʰ Cir. 1985) ...........................................................10

*Campaign for Southern Equality v. Miss. Dept. of Human Services,* 175 F. Supp. 691,
701-703 (S.D. Miss. 2016) ..........................................................................................................9

*Campbell v. Florian,* 872 F.3d 385, 396 (4ᵗʰ Cir. 2020) ........................................................16

*Campbell v. Patterson,* 724 F.2d 41, 43 (6ᵗʰ Cir. 1983) .........................................................12

*Disability rights v. McMaster,* 24 F.4ᵗʰ 893, 900 (4ᵗʰ Cir. 2022). ..........................................11

*Dyer v. Md. State Bd. Ed,* 187 F. Supp.3d 599, 612-13 (D.Md. 2016) ...................................12

*Erlich v. Guiliana,* 910 F.2d 1220, 1222-24 (4ᵗʰ Cir. 1990) ...................................................14

*Field v. McMaster,* 2010 WL 3257888, a t*2 (D.S.C. Aug. 17, 2010), aff'd 398, Fed.
App'x 894 (4ᵗʰ Cir. 2010) (citing Springmen v. Williams, 122 F.3d 211, 213
(4ᵗʰ Cir. 1997)) ..........................................................................................................................14

*Forrester v. White,* 484 U.S. 219, 225-27 (1998) ...................................................................11

*Fox v. Custis*, 712F.2d 84, 87 (4ᵗʰ Cir. 1983) ...........................................................................9

*Frank Krasner Enters., Ltd. V. Montgomery County.,* 401 F.3d 230, 234 (4ᵗʰ Cir. 2005) ......*10*

*Freeman v. Fla. Dept. of Corr.,* 1999 SL 1457480, at *3 (N.D. Fla. 1990)............................10

*Gladu v. Magnusson,* 2022 W.L. 17417510, at *1 (D. Me. Dec. 5, 2022), aff'd 2023 WL 346119 (D. Me. Jan. 20, 2023) .................................................................................18

*Gore v. Knight,* 2022 WL 17484818, at *2 (D.S.C. Dec. 7, 2022)...........................................21

*Greater Birmingham Ministries v. Alabama,* 2017 WL 782776, at *10 *(N.D. Ala 2017) .........................................................................................................................................9

*Gustino v. Stoneybrook West Master Assn., Inc.,* 842 F. Appx. 323, 328 (11ty Cir. 2021) ........................................................................................................................................10

*Hafer v. Melo,* 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)) ................................8

*Hall v. City of Williamsburg,* 768 Fed. App'x 366, 374 (6th Cir. 2019)..................................14

*Harlow v. Fitzgerald,* 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ........................................................................................................................................15

*Henderson v. Lopez,* 790 F.2d 44, 47 (7th Cir. 1986)...............................................................12

*Higginbotham v. Jones,* 2010 WL 1662475, at *2 (W.D. La. Marc. 10, 2010) report and recommendation adopted, 2010 WL 1686009 (W.D. La. Apr. 22, 2010) (Citing *Hafer v. Melo,* 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)) ...................................8

*Hinkle v. City of Clarksburg, W.Va.,* 81 F.3d 416, 421 (4th Cir. 1996) ...................................21

*Hudler v. McAfee,* 2023 WL 1936351, at *9 (W.D. Tex. Feb. 10, 2023)................................19

*Ill. Ed. Ass'n. v. Ill. St. Bd.Ed,* 791 N.E.2d 522, 529 (Ill. 2003).............................................12

*Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47L.Ed.................................................9

*Johnson v. Johnson,* 2022 WL 4163050, at *10 (D.S.C. July 11, 2022), report and recommendation adopted, 2022 WL 3224669 (D. S. C. Aug. 10, 2022), aff'd 2023 WL 334418 (4th Cir. Jan. 20, 2023) .........................................................................................18

*Justice 360 v. Stirling,* 42 F. 4th 450, 458 (4th Cir. 2022).......................................................10

*Kalber v. Redfearn,* 215 S. C. 224, 237, 54 S.E.2d 791, 796 (1949).......................................12

*Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992) ......................................................16

*Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 Led2d 271 (1986) ........................16

*Mangiafico v. Blumenthal,* 471 F.3d 391 396, (2nd Cir. 2006) ...............................................15

*Martinez v. State of Cal.,* 444 U.S. 277, 285, 100 S. Ct., 554, 559, 62 L. Ed. 2D 481 (1980) ................................................................................................................................9

*McBurney v. Cuccinelli,* 616 F.3d 393, 400 (4ᵗʰ Cir. 2010) ......................................11

*McKenna v. Police Chief,* 2022 WL 15046725, at *11-12 (W.D. Va. 2022) ...........9

*Murphy v. Fields,* 2018 WL 1449171, at *2 (D.S.C. Mar. 5, 2018) report and recommendation adopted, 2018 WL 1430957 (D.S.C. March 21, 2018) .............19

*Ostrzenski v. Seigel,* 177 F.3d 245, 250-41 (4ᵗʰ Cir. 1999) .....................................11

*Pope v. Chew,* 521 F.2d 400, 405-6 (4ᵗʰ Cir. 1975) ...........................................11, 12

Randall v. Prince George's Cnty., 203 F.3d 188, 203 (4ᵗʰ Cir. 2002) Randall v. Prince George's Cnty., 203 F.3d 188, 203 (4ᵗʰ Cir. 2002) ....................................19

*Reform Party of Ala. V. Bennett,* 18F. Supp2d 1342, 1543-55 (M.D. Alabama 1998), aff'd 158F.3d 1171 *11ᵗʰ Cir.1998) ......................................................................9

*Robinson v. Metts,* 85 F. Supp. 2d 557, 563 (D.S.C. 1997), aff'd 188 F.3d 503 (4ᵗʰ Cir. 1999) ................................................................................................................22

*Savage v. Maryland,* 896 F.3d 260, 268 *4ᵗʰ Cir. 2018) ..........................................13

*Shaw v. Stroud,* 13 F.3d 791, 799 (4ᵗʰ Circ. 1994) ..................................................20

*Spivey b. Robertson,* 197 F.3d 772, 776 (5ᵗʰ Circ. 1999) .......................................15

*Springmen v. Williams,* 122 F.3d 211 (4ᵗʰ Cit. 1997) ...............................................9

*State v. 192 Coin-Operated Video Game Machines,* 338 S.C. 176, 197, 525 S.E.2d 872, 883 (2000) ............................................................................................................18

*State v. Brown,* 351 S.C., 522, ,532 570 S.E.2d 559, 564 (S.C. App. 2002), recd. On other grounds, 358 S.C. 382, 596 S.E.2d 39 *2004) ...........................................7

*State v. Long,* 406 S.C. 511, 514, 516, 753 S.E. 2d 425, 426 (2014) .....................13

*State vs. Sanders,* 118 S.C. 498, 110, S.E.808, 810 (1920) ....................................11

*Stevenson v. City of Sea Pleasant, Md.,* 743 F.3d 411, 417 (4ᵗʰ Cir. 2014) (citing Randall v. Prince George's Cnty., 203 F.3d 188, 203 (4ᵗʰ Cir. 2002) ...................19

*Swanson v. Powers,* 837 F.2d 965, 969 (4ᵗʰ Circ. 1991) ...........................................8

*Tinsley v. S.C. Dep't of Prob.,* 2017 WL 2416473, at *3 (D.S.C. 2017)................................*12*

*Torres v. Goddard,* 793, F.3d 1046, 1052 (9th Cir. 2015)...........................................13

*Wickstrom v. Ebert,* 585 F. Supp. 925, 936-37 (E.D. Wis. 1984) ............................12

*Yaselli v. Goff,* 12F2d 396, 404 (2nd Cir. 1926) ........................................................12

*Yoggerst v. Steward,* 623 F.2d 35, 38 (7th Cir.) ........................................................10

*Zell v. Neves,* 423 F. Supp. 3d 231, 244 (D.S.C., 2019) ...........................................17

*Ziglar v. Abbasi,* 198 L.Ed. 2d 290, 137 S. Ct. 843, 1966 (2017) ......................15, 16

**STATE CASES**

*Pendarvis v. Knight, et al,* 2021-CP-18-1486 ...........................................................18


**FEDERAL RULES**

Fed. R. Civ. R. 12(b)(1) .............................................................................................6


**FEDERAL STATUTES**

42 U.S.C. § 1983...........................................................................2, 3, 6, 18, 19, 20, 21


**STATE STATUTES**

S.C. Code Ann. § 1-7-110...................................................................................2. 4, 7

S.C. Code Ann. § 23-3-15 ........................................................................................11


**OTHER AUTHORITIES**

7A C.J.S. Attorney General § 36 ...............................................................................12

Art. V § 24 of the South Carolina Constitution ........................................................13

Op. S.C. Att' y Gen., 2019 WL 3243864(July 10, 2019) ...........................................5

Op. S.C. Att'y Gen., 2019 WL 3855186 (S.C.A.G. Aug. 8, 2019) ......................................4, 5

Op. S.C. Att'y Gen., 2019 WL 5089743 (S.C.A.G. Sept, 30, 2019) ..........................4, 5, 6, 17

## STATEMENT OF ISSUES

I.   Did the Appellees identified as the "SCAG Appellees" set forth proper and alternative grounds for dismissing with prejudice Appellant's various causes of action against them under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)?

 A. Did Appellant lack proper standing to bring suit against the SCAG Appellees?

  i.   Did Appellant demonstrate an "Injury-in-Fact" that is "causally related" to an act of any of the SCAG Appellees?

  ii.   Appellant cannot show "Redressability" required to establish requisite standing to sue any of the SCAG Appellees.

 B. Are Appellant's claims against the "SCAG Appellees" barred by quasi-judicial immunity, prosecutorial immunity, and qualified immunity?

II.   Did Appellant fail otherwise to state a claim for which relief can be granted against the SCAG Appellees?

 A. Did Appellant's claims fail under the *Iqbal-Twombley* pleading standard?

 B. Did Appellant's Second Cause of Action under 42 U.S.C. § 1983 regarding his right to due process, and to be free of unreasonable seizures and unlawful takings, fail as a matter of law as to the SCAG Appellees?

 C. Did Appellant's Fourth Cause of Action under 42 U.S.C. § 1983 for alleged "Bystander Liability" fail because he cannot adequately state the elements of his claim against the SCAG Appellees?

 D. Did Appellant's Fifth Cause of Action under 42 U.S.C. § 1983 for alleged "Supervisory Liability" against SCAG Appellee Wilson fail because Appellant cannot adequately state the elements of his claim?

 E. Did Appellant's Sixth Cause of Action under 42 U.S.C. § 1983 for an alleged "Conspiracy" fail because he cannot adequately state the elements of his claim against the SCAG Appellees?

<u>**STATEMENT OF THE CASE**</u>

Appellees Alan M. Wilson, W. Jeffrey Young, Robert D. Cook, Emory Smith, Jr., David S. Jones, T. Stephen Lynch, Harley L. Kirkland, Wesley Vorberger, and Robert Kittle,[1] are hereinafter referenced collectively as the "SCAG Appellees."

Appellant John Trenton Pendarvis (hereinafter "Appellant") has spent several years in a futile attempt to sue the SCAG Appellees for doing exactly what the statutes of South Carolina direct them to do, namely, respond to requests from public officials for legal opinions as required by S.C. Code Ann. § 1-7-110.

I.    <u>**FACTUAL BACKGROUND.**</u>

Under Rule 28(i), FRAP, the SCAG Appellees adopt by reference the "Statement of the Case" and the "Argument" filed by other Appellees in this matter. [USCA4 Appeal #24-6654, Doc. 31, pp. 4-36]. The SCAG Appellees wish to draw the attention of the Court to matters germane only to them.

In the Second Amended Complaint, Appellant sought to bring four (4) causes of action against the SCAG Appellees:

1.  Appellant's Second Cause of Action under 42 U.S.C. § 1983 was stated against only two of the SCAG Appellees, Cook and Jones. Appellant sued them because they allegedly "participate[ed] in the generation of last minute legal cover in an effort to overcome the denial of Pendarvis' Fifth Amendment due process rights these Appellees knew they were engaging in [*sic*]." [Second Amended

---

[1] These Appellees have been referenced collectively as the "SCAG Defendants" in the Joint Appendix.

Complaint, ¶¶ 53-54, JA316]. Appellant also alleged that, because the opinions authored by Cook and Jones putatively gave "legal cover" to the other Appellees, whose intent was "to seize and destroy Pendarvis' property with significant monetary value," they violated "Pendarvis' Eighth Amendment right against excessive fines." [Second Amended Complaint, ¶¶ 53-54, JA316].

2. Appellant brought his Fourth Cause of Action against each of the SCAG Appellees – other than Kirkland – for an alleged violation of 42 U.S.C. § 1983 under a theory of "bystander liability." [Second Amended Complaint, ¶¶ 91-98, JA323-325].

3. The only SCAG Appellee targeted by Appellant's Fifth Cause of Action was Appellee Wilson, for an alleged violation of 42 U.S.C. § 1983 under a theory of "supervisory liability." [Second Amended Complaint, ¶ 112, JA328].

4. Finally, Appellant's Sixth Cause of Action was against all SCAG Appellees, alleging that they engaged in a "conspiracy" under 42 U.S.C. § 1983 to violate Appellant's constitutional rights. Again, employing conclusory but otherwise formulaic pleading, [Second Amended Complaint, ¶¶ 127-135, JA331-332].

While one would search the Second Amended Complaint in vain for specific allegations related to these claims, from his earlier pleadings, it appeared that Appellant was arguing that the SCAG Appellees should be held liable because, in August and September of 2019, the South Carolina Office of the Attorney General issued two advisory opinions related to interpretations of the South Carolina's Hemp Farming Act. (Amended Complaint, ¶¶ 116-117, JA136-137).

Of course, the Office of the South Carolina Attorney General is statutorily required to respond to requests from public officials for opinions on questions of

law.  S.C. Code Ann. § 1-7-110.  The opinions in question in this litigation were officially published on August 8, 2019, *Op. S.C. Att'y Gen.*, 2019 WL 3855186 (S.C.A.G. Aug. 8, 2019), and September 30, 2019, *Op. S.C. Att'y Gen.*, 2019 WL 5089743 (S.C.A.G. Sept. 30, 2019).

### A. **The Opinion of August 8, 2019.**

On August 5, 2019, the South Carolina Department of Agriculture ("SCDA") notified the South Carolina Law Enforcement Division ("SLED") of a willful violation of the South Carolina Hemp Farming Act.  2019 WL 5089743, at *1.  Prior to engaging in its enforcement action against Appellant under the South Carolina Hemp Farming Act, SLED's General Counsel, Adam Whitsett, requested that SCAG issue an advisory opinion concerning the appropriate procedure to pursue enforcement of the Act with respect to hemp grown in violation of the Act.  2019 WL 3855186, at *1.

In response to this request, SCAG issued an opinion on August 8, 2019, which noted SLED's assertion that "law enforcement is prepared to proceed on information that hemp is being grown in violation of the law and is therefore contraband *per se*." Deferring to law enforcement's determination of that factual question, SCAG issued an advisory opinion that was "focused solely on the procedure SLED should follow in pursuing an enforcement action."  2019 WL 3855186, at *1.

**B. <u>The Opinion of September 30, 2019.</u>**

Subsequently, SLED learned about a "Participation Agreement" signed by Appellant, in which he consented to the forfeiture and destruction of hemp grown in an unlicensed area. 2019 WL 5089743, at *1. Shortly thereafter, SLED Director Mark Keel formally requested an advisory opinion from SCAG concerning the Act in light of the Appellant's previous consent in the Participation Agreement.

Based on this new request, the advisory opinion published on September 30, 2019 concluded as follows:

> **<u>In conclusion, it is the opinion of this Office that if there has been a valid consent as you describe then no judicial authorization is required for seizure upon notice from the Department of Agriculture that it has found hemp grown unlawfully in willful violation of applicable law</u>**. We emphasize that this conclusion is offered in the abstract, and that the scenario you present involves highly fact-specific questions which this Office cannot determine. This formal opinion is intended to supplement and clarify our August 8 opinion in light of the new information presented to us. *See Op. S.C. Att'y Gen.*, 2019 WL 3855186 (August 8, 2019).
>
> Our opinion here has been expedited, and it should be read in the context of our prior opinions dated July 10 and August 8, 2019. *Id.; see also Op. S.C. Att'y Gen.*, 2019 WL 3243864 (July 10, 2019). In the factual scenario you present to us, law enforcement is prepared to proceed on information that hemp is being grown in violation of the law and is therefore contraband *per se*. **<u>Consistent with our prior opinions and the longstanding policy of this Office, we defer to law enforcement's determination of that factual question.</u>** Our opinion here is focused solely on the procedure SLED should follow in pursuing an enforcement action. **<u>Additionally, this opinion is not an attempt to comment on any pending litigation or criminal proceeding</u>**.

2019 WL 5089743, at *3-4 (emphasis added).

## STANDARD OF REVIEW

The SCAG Appellees adopt the arguments of other Appellees on the standard of review.

## SUMMARY OF ARGUMENT

In addition to the argument of other Appellees, the SCAG Appellees note that Appellant's pleadings failed to state claims under Fed. R. Civ. P. 12(b)(1) for failure to demonstrate that he had the proper standing to bring any of his claims against any of the SCAG Appellees.

Further, the SCAG Appellees also note that Appellant's claims failed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim under defense of quasi-judicial immunity, prosecutorial immunity, qualified immunity, and his failure to state a claim for alleged violations of due process, bystander liability, supervisory liability, and conspiracy under 42 U.S.C. § 1983.

## ARGUMENT

I. **The Appellees identified as the "SCAG Appellees" also set forth proper and alternative grounds for dismissing with prejudice Appellant's various causes of action against them under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).**

    A. **Appellant lacks proper standing to bring suit against the SCAG Appellees.**

Despite having three separate opportunities to state claims against the SCAG Appellees, Appellant failed to demonstrate proper standing to bring suit against any of them. For this reason alone, his claims against the SCAG Appellees should have been dismissed <u>with</u> prejudice.

### i. **<u>Appellant cannot show an "Injury-in-Fact" that is "causally related" to an act of any of the SCAG Appellees.</u>**

First, Appellant failed to show that he suffered an "injury-in-fact" that could be causally related to conduct of any of the SCAG Appellees. At best, he can show that SCAG promptly responded to SLED's requests for advisory opinions concerning the enforcement of the Act. Appellant appears unaware that S.C. Code Ann. § 1-7-110 actually directs that the South Carolina Attorney General "**<u>shall</u>**, when required by the Secretary of State, State Treasurer, Adjutant General, Comptroller General, or any other State officer or the Public Service Commission, consult and advise with them, respectively, on questions of law relating to their official business." (Emphasis added).

Under this statute, the South Carolina Attorney General <u>must</u> give advice to state officers on "questions of law." He cannot – and did not in this case – determine facts. As Judge Goolsby wrote in *State v. Brown*, 351 S.C. 522, 532, 570 S.E.2d 559, 564 (S.C. App. 2002), *revd. on other grounds,* 358 S.C. 382, 596 S.E.2d 39 (2004), "[t]hough not binding, opinions generated by the Attorney General's Office

constitute secondary authority that many people consult when researching a particular area of law."

To employ these advisory opinions, or discussions about whether to assist SLED in litigation, as a device to drag the Attorney General and his staff into a civil rights lawsuit is far too remote for Article III standing.[2] Suing the SCAG Appellees in this manner carries the doctrine of standing to ridiculous lengths.

Appellant has not alleged any fact from which a jury or judge could find that any of the SCAG Appellees performed any act that was outside his or her respective official duties. For that reason alone, Appellant's lawsuit against the SCAG Appellees is barred by the Eleventh Amendment. *Higginbotham v. Jones*, 2010 WL 1662475, at *2 (W.D. La. Mar. 10, 2010), *report and recommendation adopted*, 2010 WL 1686009 (W.D. La. Apr. 22, 2010) (citing *Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)). More importantly, *Higginbotham* also points out the "the mere authoring of an Attorney General's opinion in itself cannot qualify as a "wrongful action" for purposes of stating a cause of action

---

[2] As the Fourth Circuit has recognized, "[a]bsent extraordinary circumstances . . . , liability will not attach for executing the statutory duties one was appointed to perform. . . . Government would come to a virtual standstill if executive officials concluded that their safest course of action was to ignore the laws of the state and to take no course of action for fear of liability." *Swanson v. Powers*, 937 F.2d 965, 969 (4th Cir. 1991). That is precisely the case here.

under § 1983." 2010 WL 1662475, at *3.  As set forth in *Springmen v. Williams*, 122

F.3d 211 (4th Cir. 1997):

> Springmen sued Williams because he believed that she was the party
> that had the final say in going forward with his prosecution. If this view
> is correct, and it is, Williams is obviously protected by *Imbler.* **If,
> however, it was the action of Officer Rakowski and not Williams'
> advice that caused Springmen's prosecution, he has sued the wrong
> party because Williams' action could in no way be considered the
> proximate cause of any harm resulting from that prosecution**.

122 F.3d at 213 (emphasis added); *McKenna v. Police Chief*, 2022 WL 15046725,

at *11-12 (W.D. Va. 2022) ("Boyer, relying on facts provided by Officer Erickson,

opined that McKenna *could be charged* with obstruction of justice, and in doing so,

he acted as an advocate in professionally evaluating the evidence assembled by the

officer Appellees and in approving of a criminal prosecution…It was the officer

Appellees' decision, not Boyer's advice, that caused the McKenna's warrantless

arrest.").

For this reason alone, Appellant cannot establish that any of the SCAG

Appellees committed an act that is "causally related" to his purported "injury-in-

fact." *See also Martinez v. State of Cal.*, 444 U.S. 277, 285, 100 S. Ct. 553, 559, 62

L. Ed. 2d 481 (1980); *Fox v. Custis*, 712 F.2d 84, 87 (4th Cir. 1983); *Campaign for

Southern Equality v. Miss. Dept. of Human Services*, 175 F. Supp. 691, 701-703

(S.D. Miss. 2016); *Reform Party of Ala. v. Bennett*, 18 F. Supp.2d 1342, 1354-55

(M.D. Alabama 1998), *aff'd,* 158 F.3d 1171 (11th Cir. 1998); *Greater Birmingham

*Ministries v. Alabama*, 2017 WL 782776, at *10 (N.D. Ala. 2017); *Gustino v. Stoneybrook West Master Assn., Inc.*, 842 F. Appx. 323, 328 (11th Cir. 2021); *Freeman v. Fla. Dept. of Corr.*, 1999 WL 1457480, at *3 (N.D. Fla. 1999); *Buschi v. Kirven*, 775 F.2d 1240, 1250 (4th Cir. 1985); *Yoggerst v. Stewart*, 623 F.2d 35, 38 (7th Cir. 1980).

### ii. Appellant cannot show "Redressability" required to establish requisite standing to sue any of the SCAG Appellees.

Second, Appellant must be able to establish that the "injury-in-fact" is likely to be redressed by a favorable judicial decision. *Justice 360 v. Stirling*, 42 F.4th 450, 458 (4th Cir. 2022). To satisfy the redressability requirement, a plaintiff must establish that there exists "a non-speculative likelihood that the [alleged] injury would be redressed by a favorable judicial decision." *Frank Krasner Enters., Ltd. v. Montgomery County.*, 401 F.3d 230, 234 (4th Cir. 2005).

In *Justice 360*, the Fourth Circuit concluded that the plaintiff lacked standing to sue the Attorney General who had issued an advisory opinion regarding its lack of a right to information concerning execution protocols. In so finding, the Fourth Circuit noted that, while standing was somewhat relaxed where First Amendment claims are made, redressability was still absent. *Id.*, 42 F.4th at 460.

Accordingly, as in *Justice 360*, even if this Court found that the advisory opinions of the Attorney General were somehow improper, or did not exist at all,

SLED's discretion to seize and destroy the crop and arrest Appellant would not be disturbed. Under S.C. Code Ann. § 23-3-15, SLED – not SCAG – possesses "specific and exclusive jurisdiction and authority" over "general criminal investigations."

The Attorney General is the State's chief legal officer, not the State's chief law enforcement officer. Accordingly, standing to sue the SCAG Appellees is completely absent in light of a complete lack of redressability. *See also Disability Rights South Carolina v. McMaster*, 24 F.4th 893, 902 (4th Cir. 2022); *McBurney v. Cuccinelli*, 616 F.3d 393, 400 (4th Cir. 2010).

For these reasons alone, Appellant's claims against the SCAG Appellees must be dismissed with prejudice.

**B. Appellant's claims against the "SCAG Appellees" are barred by quasi-judicial immunity, prosecutorial immunity, and qualified immunity.**

**i. Quasi-Judicial Immunity.**

The South Carolina Supreme Court has recognized that executive officers, such as the Attorney General, generally perform quasi-judicial functions, and in those cases, absolute immunity attaches. *See State v. Sanders*, 118 S.C. 498, 110 S.E. 808, 810 (1920); *Forrester v. White*, 484 U.S. 219, 225-27 (1998); *see also Ostrzenski v. Seigel*, 177 F.3d 245, 250-51 (4th Cir. 1999) (peer reviewers); *Pope v.*

*Chew*, 521 F.2d 400, 405-6 (4th Cir. 1975) (parole board members); *Dyer v. Md. State Bd. Ed.*, 187 F. Supp.3d 599, 612-13 (D.Md. 2016) (State Board of Education members); *Tinsley v. S.C. Dep't of Prob.,* 2017 WL 2416473, at *3 (D.S.C. 2017) (parole board members).

Undoubtedly, the issuance of an Attorney General's opinion is a quasi-judicial function. In *Kalber v. Redfearn*, 215 S.C. 224, 237, 54 S.E.2d 791, 796 (1949), the South Carolina Supreme Court found that advisory opinions of the Attorney General are researched and written as part of the exercise of a quasi-judicial function, stating that "[w]hile the opinions of the Attorney General are not binding upon the Court, they are persuasive for <u>that office occupies a quasi-judicial position.</u> . . ." (emphasis added); *see also* 7A C.J.S. Attorney General § 36; *Campbell v. Patterson*, 724 F.2d 41, 43 (6th Cir. 1983); *Wickstrom v. Ebert*, 585 F. Supp. 925, 936-37 (E.D. Wis. 1984); *Henderson v. Lopez*, 790 F.2d 44, 47 (7th Cir. 1986); *Yaselli v. Goff*, 12 F.2d 396, 404 (2nd Cir. 1926) ; *Ill. Ed. Ass'n. v. Ill. St. Bd. Ed.*, 791 N.E.2d 522, 529 (Ill. 2003). Thus, there is ample support that the SCAG Appellees involved in the issuance of the advisory opinions at issue in this case are entitled to absolute quasi-judicial immunity.

### ii. **Prosecutorial Immunity.**

Even assuming *arguendo* that the issuance of Attorney General opinions is not entitled to absolute <u>quasi-judicial</u> immunity, Appellant's claims against the

SCAG Appellees are barred, in any event, by absolute prosecutorial immunity. When a prosecutor is functioning as an advocate for the State, his or her actions are "intimately associated with the judicial phase of the criminal process" and thus he or she is absolutely immune from damages. *Savage v. Maryland*, 896 F.3d 260, 268 (4th Cir. 2018).

Prosecutorial immunity must be based upon functions "intimately associated with the judicial phase of the criminal process" rather than those of an "administrator or investigative officer." *Burns v. Reed*, 500 U.S. 478, 486, 491 (1991). Prosecutorial immunity necessarily includes "'actions preliminary to the initiation of a prosecution and actions apart from the courtroom.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 272 (1993).

Pursuant to Art. V, § 24 of the South Carolina Constitution, the Attorney General is the "chief prosecuting officer" of South Carolina. In this capacity, the Attorney General possesses "broad common law and statutory authority to prosecute any case on behalf of the State." Art. V, § 24 "firmly establishes the Attorney General as the chief prosecuting officer of the State of South Carolina for both criminal and civil proceedings." *State v. Long*, 406 S.C. 511, 514, 516, 753 S.E.2d 425, 426 (2014) (emphasis added). Courts have consistently recognized that absolute prosecutorial immunity is applicable to not only criminal prosecution but to the initiation of civil forfeiture proceedings. See *Torres v. Goddard*, 793 F.3d

1046, 1052 (9th Cir. 2015) (and cases cited) (including *Erlich v. Guiliani*, 910 F.2d 1220, 1222-24 (4th Cir. 1990)).

Federal courts in South Carolina have consistently applied absolute prosecutorial immunity to Assistant Attorneys General. *Bryan v. Friedman*, 2008 WL 5378225 (D.S.C. 2008). In *Field v. McMaster*, the Court recognized that a prosecutor is absolutely immune from suit for "conduct in initiating and in presenting the State's case." *Field v. McMaster*, 2010 WL 3257888, at *2 (D.S.C. Aug. 17, 2010), *aff'd*, 398 Fed. App'x 894 (4th Cir. 2010) (citing *Springmen v. Williams*, 122 F.3d 211, 213 (4th Cir. 1997)). In *Field*, the question was whether prosecutorial immunity applied to the actions of Assistant Attorney General Bill Condon for issuance of a "stop order" on behalf of the Securities Division of the Attorney General's Office. The Court determined that "[t]he decision to issue a stop order is a discretionary decision that exceeds mere investigation." 2010 WL 3257888, at * 4. Even if Appellant casts advice offered by the SCAG Appellees as the "last step" before SLED seized and destroyed his hemp crop, this advice is an action of a prosecutor, for which the SCAG Appellees are absolutely immune.

But even assuming that somehow the Attorney General possessed the power to order SLED to take action against Appellant – which he does not – such instruction would be protected by prosecutorial immunity. *See Hall v. City of Williamsburg*, 768 Fed. App'x 366, 374 (6th Cir. 2019) ("legal advice" from

prosecutor to trooper instructing him to obtain a search warrant and seize computers is protected by absolute immunity); *Spivey v. Robertson*, 197 F.3d 772, 776 (5th Cir. 1999).

Further, the process of decision making that the SCAG Appellees employed to decide whether to assist SLED in its litigation of matters related to Appellant is also fully protected by absolute immunity. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2nd Cir. 2006) ("[w]e can divine no meaningful difference between the Attorney General's decision in this case not to defend a state employee and the decisions of prosecutors and government attorneys to initiate (or not to initiate) civil or administrative proceedings.").

### iii. **Qualified Immunity.**

Public officials subject to claims brought under 42 U.S.C. § 1983 are also protected by "qualified immunity." *Harlow v. Fitzgerald,* 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "The Court has held that government officials are entitled to qualified immunity with respect to "discretionary functions" performed in their official capacities. *Id.* The doctrine of qualified immunity gives officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al–Kidd,* 563 U.S. 731, 743, 131 S.Ct. 2074, 179

L.Ed.2d 1149 (2011); *Ziglar v. Abbasi*, 198 L. Ed. 2d 290, 137 S. Ct. 1843, 1866 (2017).

In light of these concerns, our Supreme Court has held that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.").  To determine whether a given public official was "plainly incompetent" or "knowingly violate[d] the law," a court must ask whether it would have been clear to a reasonable officer that the alleged conduct "was unlawful in the situation he confronted." *Ziglar*, 137 S. Ct. at 1867.

Our Fourth Circuit has ruled that, even where a state attorney renders an opinion that is later actually <u>reversed</u> by a court of competent jurisdiction, qualified immunity to suit applied. In *Campbell v. Florian*, 972 F.3d 385, 396 (4th Cir. 2020), *as amended*, (Aug. 28, 2020), the court found that in-house counsel for the South Carolina Department of Corrections were protected by qualified immunity even where their interpretation of a state incarceration statute was later reversed by the South Carolina Court of Appeals.

The Fourth Circuit's ruling in *Florian* applies squarely to the instant case. Each of the opinions of the SCAG Appellees discusses at length the uncertain nature

of the Act and "the need for legislative or judicial direction regarding the implementation of South Carolina's industrial hemp program." *Op. S.C. Att'y Gen.*, 2019 WL 5089743, at *3 (S.C.A.G. Sept. 30, 2019).

## II.    **Because Appellant has otherwise failed to state a claim for which relief can be granted against the SCAG Appellees, his suit against them must be dismissed with prejudice.**

### A.    **Appellant's claims fail under the *Iqbal-Twombley* pleading standard.**

Not only do Appellant's allegations fail to state a claim, the Second Amended Complaint is devoid of any allegations regarding any action whatsoever against the Appellant.  As such, this Complaint fails to meet the following standards recognized by this Court.  *Zell for Est. of Zell v. Neves*, 423 F. Supp. 3d 231, 244 (D.S.C. 2019).

### B.    **Appellant's Second Cause of Action under 42 U.S.C. § 1983 regarding his right to due process, and to be free from unreasonable seizures and unlawful takings, fails as to the SCAG Appellees.**

Appellant's Second Cause of Action alleges that the SCAG Appellees Cook and Jones "participat[ed] in the generation of last minute legal cover" to assist others to "seize and destroy Pendarvis' property."  (JA316).

There are no allegations that any of the SCAG Appellees actually took part in – or had the authority to order – the seizure and taking of the hemp crop, or arrest of

Appellant, or otherwise deprived Appellant of due process.[3]  For this reason alone, Appellant's Second Cause of Action fails. *Gladu v. Magnusson*, 2022 WL 17417510, at *1 (D. Me. Dec. 5, 2022), *aff'd*, 2023 WL 346119 (D. Me. Jan. 20, 2023) (emphasis added); *see also Johnson v. Johnson,* 2022 WL 4163050, at *10 (D.S.C. July 11, 2022), *report and recommendation adopted*, 2022 WL 3224669 (D.S.C. Aug. 10, 2022), *aff'd*, 2023 WL 334418 (4th Cir. Jan. 20, 2023).

   C. **Appellant's Fourth Cause of Action under 42 U.S.C. § 1983 for alleged "Bystander Liability" fails because he cannot adequately state the elements of his claim against the SCAG Appellees.**

Appellant's Fourth Cause of Action attempts to state a claim against the SCAG Appellees for "bystander liability" under 42 U.S.C. § 1983, alleging that the SCAG Appellees harmed him because they knew "that the basis for Pendarvis' arrest and/or the seizure/destruction of Pendarvis' hemp crop and/or the criminal process instituted/continued against Pendarvis[]" was somehow constitutionally lacking. (JA323-325).

---

[3] If anything, the opinions of the Attorney General at issue here speak directly to the due process owed to Appellant under the Act.  Indeed, it appears that Appellant is pursuing post-seizure remedies in state court, which amply satisfies due process requirements.  *Pendarvis v. Knight, et al.*, 2021-CP-18-1486, pending in the Dorchester County Court of Common Pleas. *See State v. 192 Coin-Operated Video Game Machines*, 338 S.C. 176, 197, 525 S.E.2d 872, 883 (2000).

.

To succeed on a theory of bystander liability, Appellant must demonstrate that a law-enforcement officer (1) knew that a fellow officer was violating an individual's constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act. *Stevenson v. City of Seat Pleasant, Md.,* 743 F.3d 411, 417 (4th Cir. 2014) (*citing Randall v. Prince George's Cnty.,* 302 F.3d 188, 203 (4th Cir. 2002).

This Court has found that "bystander liability" under 42 U.S.C. § 1983 applies only to law enforcement officers because of their "duty to uphold the law and protect the public from illegal acts." *Murphy v. Fields,* 2018 WL 1449171, at *2 (D.S.C. Mar. 5, 2018), *report and recommendation adopted,* 2018 WL 1430957 (D.S.C. Mar. 21, 2018); *see also Hudler v. McAfee*, 2023 WL 1936351, at *9 (W.D. Tex. Feb. 10, 2023) ("Hudler identifies no authority for extending bystander liability to district attorneys. The Court recommends that Hudler's claims against McAfee for excessive force and false arrest on a theory of bystander liability be dismissed.").

**D. Appellant's Fifth Cause of Action under 42 U.S.C. § 1983 for alleged "Supervisory Liability" fails because he cannot adequately state the elements of his claim against SCAG Appellee Wilson.**

Appellant's Fifth Cause of Action attempted to state a claim only against SCAG Appellee Wilson for "supervisory liability" under 42 U.S.C. § 1983, alleging that he purportedly failed to supervise his subordinates to "not allow[] his office's

opinions to be edited/changed at the request of law enforcement to achieve a desired goal, especially with the knowledge that the edits/changes are going to be used to justify a violation of a person's constitutional rights." (JA328). Appellant also alleged that Appellee Wilson failed to "adequately train and/or supervise [his] subordinates to the rights of persons in similar situations to the [Appellant]." (JA328).

Three elements are necessary to establish supervisory liability under 42 U.S.C. § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the Appellant, (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the Appellant. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

To satisfy the requirements of the first element, Appellant must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the Appellant. Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at

least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. *Id.* Appellant has not alleged any conduct that poses such a "pervasive and unreasonable" risk of constitutional injury. At most, he appears to take issue with the conclusions of SCAG's advisory opinion from September 2019, or that some SCAG Appellees received emails from SLED. This is woefully insufficient to state a claim against SCAG Appellee Wilson under a "supervisory liability" theory. *Gore v. Knight*, 2022 WL 17484818, at *2 (D.S.C. Dec. 7, 2022); *Beaufort v. Thompson*, 2021 WL 1085313, at *5 (D.S.C. Mar. 22, 2021); *Bessellieu v. S.C. Dep't of Corr.*, 2021 WL 3260842, at *2 (D.S.C. July 30, 2021). Appellant also offers no cognizable allegations to support the second or third elements of the claim.

E. **Appellant's Sixth Cause of Action under 42 U.S.C. § 1983 for an alleged "Conspiracy" fails because he cannot adequately state the elements of his claim against the SCAG Appellees.**

Appellant's Sixth Cause of Action attempts to state a claim against the SCAG Appellees for engaging in a "conspiracy" under 42 U.S.C. § 1983 to "impede, hinder, obstruct and/or defeat the due course of justice with the intent to violate [Appellant's] constitutional rights and deny him due process" (JA330-331).

To establish a civil conspiracy under 42 U.S.C. § 1983, Appellant must present evidence that the Appellees acted in concert and committed some overt act

in furtherance of the conspiracy that resulted in a deprivation of one of Appellant's constitutional rights. *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996); *Robinson v. Metts*, 86 F. Supp. 2d 557, 563 (D.S.C. 1997), *aff'd,* 188 F.3d 503 (4th Cir. 1999). For this reason alone, Appellant's Sixth Cause of Action must be dismissed with prejudice, as he has failed to allege any "overt act" committed by any of the SCAG Appellees "in the furtherance of a conspiracy" that resulted in the deprivation of any of Appellant's constitutional rights.

## CONCLUSION

For the reasons set forth above, the SCAG Appellees respectfully requests that this Court GRANT their motion, DISMISS Appellant's claims with prejudice, and GRANT any other such relief as the Court deems just and proper.

Dated this the 15th day of January, 2025.

Respectfully submitted,

RICHARDSON PLOWDEN & ROBINSON, P.A.

/s/ Eugene H. Matthews
Eugene H. Matthews, ID #7141
Post Office Drawer 7788
Columbia, South Carolina 29202
T: (803) 771-4400
F: (803) 779-0016
Email: gmatthews@RichardsonPlowden.com

**COUNSEL FOR THE SCAG APPELLEES**

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. _24-6654_    Caption: _Pendarvis vs Wilson, et al_

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains _____5008_____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word _____ [*identify word processing program*] in
Times New Roman 14 pt _____ [*identify font, size, and type style*];

or

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font, size, and type style*].

**NOTE: The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.**

(s) Eugene H. Matthews _____

Party Name SCAG Appelleees _____        Date: _January 15, 2025_