No. 24-6654

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOHN TRENTON PENDARVIS,
*Plaintiff-Appellant*

v.

ALAN M. WILSON, Attorney General; MARK A. KEEL, Chief of SLED; HUGH E. WEATHERS, Commissioner of South Carolina Department of Agriculture; L. C. KNIGHT, Sheriff of Dorchester County Sheriff's Office; W. JEFFREY YOUNG, Chief Deputy of South Carolina Attorney General's Office; ROBERT D. COOK, Solicitor General; EMORY SMITH, JR., Deputy Solicitor General; DAVID S. JONES, Assistant Attorney General; T. STEPHEN LYNCH, Deputy Attorney General; HARLEY L. KIRKLAND, Assistant Attorney General; WESLEY VORBERGER, Assistant Attorney General; ROBERT KITTLE, Communications Director of SCAG; ADAM L. WHITSETT, General Counsel for SLED; FRANK O'NEAL, Major for SLEDs Narcotics, Alcohol and Vice services; JASON WELLS, Captain for SLEDs Narcotics division; GLENN WOOD, Lieutenant for SLED; JOHN NEALE, Agent/employee of SLED; RHETT HOLDEN, Agent/employee of SLED; ALDEN G. TERRY, General Counsel for DAG; DEREK M. UNDERWOOD, Assistant Commissioner of DAGs Consumer Protection Division; J. CLINT LEACH, Assistant Commissioner of DAGs External Affairs & Economic Development Division; AARON WOOD, Assistant Commissioner of DAGs Agency Operations Division; JOHN STOKES, Program Manager of DAGs Consumer Protection Division; VANESSA ELSALAH, Coordinator of DAGs Hemp Program; BRITTANY JEFFCOAT, Coordinator in DAGs Consumer Protection Division; EVA MOORE, Communications Director for DAG; RAY DIXSON, Captain for DCSO; FRANK THOMPSON, Lieutenant for DCSO; ROBERT KRUTAK, Deputy Sheriff for DCSO; JONATHAN CALORE, Supervisory agent/employee; CHARLIE SCRUBBS, Agent/employee with the S.C. Forestry Commission; WAYNE EADDY, agent/employee with the S.C. Forestry Commission
*Defendants-Appellees*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA

# REPLY BRIEF OF APPELLANT

Jason Scott Luck
P.O. Box 47
Bennettsville, SC 29512
843.479.6863
*Counsel for Plaintiff-Appellant*

Patrick James McLaughlin
Wukela Law Firm
P.O. Box 13057
Florence, SC 29504
843.669.5150
*Counsel for Plaintiff-Appellant*

Charles Bradley Hutto
Williams and Williams
P.O. Box 1084
Orangeburg, SC 29116
803.534.5218
*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................... i

TABLE OF AUTHORITIES .................................................................... iii

ARGUMENT IN REPLY ............................................................................ 1

I.    The Appellees' Standing, Redressability, Immunity, and *Twombly/Iqbal* Arguments are not Properly Before this Court.................................................................................................... 1

II.    Appellees Present no Cogent Argument Against Granting Leave to File the Proposed Third Amended Complaint............................ 2

III.    Embedded Exhibits are Permissible under the Rules.................................. 3

IV.    To the extent they are even before this Court, the Appellees' Standing, Redressability, Immunity, and *Twombly/Iqbal* Arguments are without merit. ........................... 3

    A.    Pendarvis has Standing to Bring these Claims. ............................. 4

    B.    Pendarvis has a Suffered Redressable Injury-in-Fact. ......................... 5

    C.    Appellees are not entitled to any form of immunity.......................... 13

        1.    Quasi-Judicial & Prosecutorial Absolute Immunity does not apply............................................. 14

        2.    The Appellees' misconduct is not protected by Qualified Immunity................................................... 18

    D.    Pendarvis's claims against the SCAG Appellees are sufficient under *Twombly/Iqbal*.......................................... 20

        1.    Pendarvis's cause of action under 42 U.S.C. § 1983 for violation of his due process rights through the unreasonable seizure and unlawful taking against the SCAG Appellees is sufficient ....................... 22

        2.    Pendarvis's cause of action under 42 U.S.C. § 1983 for violation of his due process rights through "Bystander Liability" against the SCAG

Appellees is sufficient given the specific facts of
this case ...................................................................................23

3.    Pendarvis's cause of action under 42 U.S.C. §
1983 for violation of his due process rights
through "Supervisory Liability" against the
SCAG Appellees is sufficient .....................................................25

4.    Pendarvis's cause of action under 42 U.S.C. §
1983 for violation of his due process rights
through "Conspiracy" against the SCAG
Appellees is sufficient ...............................................................27

CONCLUSION .................................................................................................28

CERTIFICATE OF COMPLIANCE ...................................................................29

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................*passim*

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................*passim*

*Buckley v. Fitzsimmons*,
   509 U.S. 259 (1993). ...........................................................................14

*Burns v. Reed*,
   500 U.S. 478 (1991) .............................................................................14

*Buschi v. Kirven*,
   775 F.2d 1240 (4th Cir. 1985)............................................................10

*Campbell v. Florian*,
   972 F.3d 385 (4th Cir. 2020)...............................................................19

*Carter v. City of Philadelphia*,
   181 F.3d 339 (3rd Cir. 1999) ..............................................................14

*Charter Sch. Fund v. City of Desoto*,
   2021 U.S. Dist. LEXIS 55794 (N.D. Tex., March 3, 2021)...............13

*Cleavinger v. Saxner*,
   474 U.S. 193 (1985) .............................................................................13

*Cox v. Quinn*,
   828 F.3d 227 (4th Cir. 2016)...............................................................18

*Darton Env'tl, Inc. v. FJUVO Collections, LLC*,
   332 F.Supp.3d 1022 (W.D. Va. 2018) ...............................................21

*Fed. Ins. Co. v. Locash*,
   2014 WL 12588635 (E.D. Va. Feb. 18, 2014)....................................22

*Frey & Son, Inc. v. Cudahy Packing Co.*,
   256 U.S. 208 (1921) ................................................................21

*Garraghty v. Virginia Dep't of Corr.*,
   52 F.3d 1274 (4th Cir. 1995) ...............................................10

*Giuffre v. Bissel*,
   31 F.3d 1241 (3rd Cir. 1994) ...............................................16

*Gladu v. Magnusson*,
   2022 U.S. Dist. LEXIS 218093 (D. Me. Dec. 5, 2022) ....................23

*Hill v. City of New York*,
   45 F.3d 653 (2nd Cir. 1995) ................................................18

*Hudler v. McAfee*,
   2023 WL 1936351 (W.D. Tex. Feb. 10, 2023) ........................23, 24

*Imbler v. Pachtman*,
   424 U.S. 409 (1976) ..........................................................16

*J.W. v. Knight*,
   452 Fed. Appx. 411 (4th Cir. 2011) .......................................13

*McCray v. Maryland*,
   456 F.2d 1 (4th Cir. 1972) .............................................15, 16

*Murphy v. Fields*,
   2018 WL 1449171 (D.S.C. Mar. 5, 2018) ..............................23, 24

*Newburger, Loeb & Co. v. Gross*,
   563 F.2d 1057 (2nd Cir. 1977) .............................................10

*Odd v. Malone*,
   538 F.3d 202 (3rd Cir. 2008) ...............................................14

*Pashby v. Delia*,
   709 F.3d 307 (4th Cir. 2013) ..................................................3

*Poloron Prods., Inc. v. Lybrand Ross Bros. & Montgomery*,
    72 F.R.D. 556 (S.D.N.Y. 1976) ........................................................ 2

*Randall v. Prince George's Cty., Md.*,
    302 F.3d 188 (4th Cir. 2013) ........................................................... 24

*Robertson v. Sea Pines Real Estate Cos.*,
    679 F.3d 278 (4th Cir. 2012) .................................................... 21, 22

*Rosenruist-Gestao E Servicos LDA v. Virgin Enters. Ltd.*,
    511 F.3d 437 (4th Cir. 2007) ............................................................. 1

*Shaw v. Stroud*,
    13 F.3d 791 (4th Cir. 1994) ............................................................. 26

*Stevenson v. City of Seat Pleasant, Md.*,
    743 F.3d 411 (4th Cir. 2014) ........................................................... 25

*Swanson v. Powers*,
    937 F.2d 965 (4th Cir. 1991) ............................................................. 8

*TechINT Sols. Grp., LLC v. Sasnett*,
    2019 U.S. Dist. LEXIS 106416 (W.D. Va., June 26, 2019) ............ 21

*Thompson v. Virginia*,
    878 F.3d 89 (4th Cir. 2017) ............................................................. 18

*Tolan v. Cotton*,
    572 U.S. 650 (2014) ........................................................................ 18

*Wright v. Collins*,
    766 F.2d 841 (4th Cir. 1985) ............................................................. 4

**FEDERAL RULES**

Fed. R. App. P. 3 ................................................................................ 3

Fed. R. App. P. 28 .............................................................................. 3

Fed. R. App. P. 28.1 ........................................................................... 1

Fed. R. Civ. P. 12 ................................................................4

Local Rule 3(b) (4th Cir.) ....................................................3

Local Rule 28(f) (4th Cir.) ...................................................3

Local Rule 28(g) (4th Cir.) ...................................................3

**FEDERAL STATUTES**

42 U.S.C. § 1983 .......................................................*passim*

**STATE CASES**

*Pascoe v. Wilson*,
    416 S.C. 628, 788 S.E.2d 686 (2016)................................11

**STATE RULES**

Rule 3.8(f), RPC, Rule 407, SCACR. ....................................17

**STATE STATUTES**

S.C. Code § 1-7-110 .........................................................15

**STATE CONSTITUTIONAL PROVISIONS**

S.C. Const. Art. I Sec. 22 ...................................................16

S.C. Const. Art. I Sec. 24 ..............................................11, 25

**OTHER AUTHORITIES**

*Op. S.C. Att'y. Gen.*, 2019 WL 5089743 (Sept. 30, 2019)............7, 12, 16

## ARGUMENT IN REPLY

**I.    The Appellees' Standing, Redressability, Immunity, and *Twombly/Iqbal* Arguments are not Properly Before this Court.**

The SCAG Appellees' arguments demand Pendarvis's complaint(s) should be dismissed with prejudice. (SCAG Appellees' Brief pp. 6-22). The remaining Appellees avoid an explicit request for a dismissal with prejudice, but nonetheless advance a qualified immunity argument that would constitute a decision on the merits. (Non-SCAG Appellees' Brief pp. 31-36). A dismissal with prejudice would be an <u>expansion</u> of the relief granted by the District Court, which dismissed Pendarvis's complaint without prejudice.  It is well-settled that if an appellee raises arguments that seek to alter or modify the judgment below, a cross-appeal is required. *See Rosenruist-Gestao E Servicos LDA v. Virgin Enters. Ltd.*, 511 F.3d 437, 447 (4th Cir. 2007); *see also* Fed. R. App. P. 28.1 (cross-appeal). As no Appellee filed a cross-appeal,[1] the arguments set forth above are not properly before this Court and should be disregarded.

---

[1] The SCAG Appellees' attempt to circumvent the Federal Rules of Appellate Procedure also extends to their brief. On January 10, 2025, the Deputy Clerk demanded the SCAG Appellees seek this Court's approval to file a corrected, text-searchable brief. The brief the SCAG Appellees filed on January 15, 2025, was significantly different from its original brief (*i.e.*, not a corrected brief).

## II.     Appellees Present no Cogent Argument Against Granting Leave to File the Proposed Third Amended Complaint.

No Appellee argues that Pendarvis's proposed Third Amended Complaint fails to meet the requirements of *Twombly/Iqbal*. This is because it steers clear of the Scylla and Charybdis created by the Appellees' incessant motions practice and the lower court's decisions. With the alleged deficiencies corrected, the proposed Third Amended Complaint is not futile. Likewise, there is no evidence of bad faith or dilatory motive on the part of Pendarvis. In fact, the delays in this matter have worked far more harm to Pendarvis, who continues to be denied compensation for the destruction of his hemp crop and abridgement of his civil liberties.

With a complaint that now meets their exacting standards before them, the Appellees now stand on punctilios to prevent this complaint's consideration on the merits. The fact that Pendarvis did not make a formal motion to amend (Non-SCAG Appellees' Brief p. 28) is irrelevant and moot, as this was relief the Magistrate issued *sua sponte* in her Report and Recommendation. (JA348). The District Court did not find this relief to be procedurally improper (JA394), and the Appellees did not appeal this finding. The probability that the Appellees will be held liable for their misconduct is not "prejudice" prohibiting relief under Rule 15. *See, e.g., Poloron Prods., Inc. v. Lybrand Ross Bros. & Montgomery*, 72 F.R.D. 556, 561 (S.D.N.Y. 1976) ("A party may hardly resist an amendment curing a defectively stated claim on the ground that it will expose him to a possible liability…").

### III.    Embedded Exhibits are Permissible under the Rules.

The Magistrate's February 3, 2023, order[2] was bottomed and premised on the belief that embedded exhibits or "evidentiary matters" are inappropriate in a complaint. (JA104-108). The Appellees (like the Magistrate) are unable to cite any reported or precedential case law that supported this conceit. Accordingly, the Magistrate's February 3, 2023, order was controlled by an error of law[3] and must be reversed.

### IV.    To the extent they are even before this Court, the Appellees' Standing, Redressability, Immunity, and *Twombly/Iqbal* Arguments are without merit.

As set forth in Argument I, *supra*, the SCAG Appellees' standing, redressability, absolute immunity, qualified immunity, &c. arguments and all

---

[2] The Appellees contend this error was not preserved because this order was not specifically named in his Notice of Appeal. (Non-SCAG Appellees' Brief pp. 18-19). The Rules do not require this level of specificity. *See* Fed. R. App. P. 3(c)(4) ("The notice of appeal encompasses all orders that, for purposes of appeal, merge into the designated judgment or appealable order. It is not necessary to designate those orders in the notice of appeal."). Further, Pendarvis's July 23, 2024, Docketing Statement identified these errors in the Magistrate's orders. Appellees did not object to Pendarvis's Docketing Statement. *See* Local Rule 3(b) (4th Cir.) (Clerk should be notified within 10 days of service if Docketing Statement is "in any way inaccurate, incomplete, or misleading…"). The Appellees advance other preservation arguments, claiming Pendarvis's objections to the Magistrate's orders did not preserve error. (Non-SCAG Appellees' Brief pp. 18-19, 25, 27-28). Appellees' arguments are themselves are not preserved, as the Appellees do not present this Court with citations to the Joint Appendix supporting these arguments. *See* Fed. R. App. P. 28(e); Local Rule 28(f) (4th Cir.); Local Rule 28(g) (4th Cir.).

[3] It is well-settled that legal conclusions are reviewed *de novo*, even under an abuse of discretion standard. *E.g. Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013).

Appellees' qualified immunity arguments are not before this Court because they request this matter be dismissed with prejudice. However, to the extent these arguments are before this Court, they all fail:

### A.    Pendarvis has Standing to Bring these Claims.

To succeed on a §1983 claim, the aggrieved party must show a specific injury that violates his federally guaranteed rights by a person acting under the color or authority of state law. *See* 42 U.S.C. §1983; *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). He must also allege a causal connection or affirmative link between the conduct complained of and the injury he sustained. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985).

Arguing under Fed. R. Civ. P. 12(b)(1) that Pendarvis lacks standing, the SCAG Appellees attempt to frame Pendarvis's factual allegations as dealing solely with the Attorney General opinions that the SCAG Appellees issued, ultimately arguing that Pendarvis's allegations supporting the SCG Appellees' role in the conspiracy against him were unsupported legal conclusions. Pendarvis's allegations are not legal conclusions. They are reasonable inferences that arise from the factual allegations pled. The factual allegations show Appellees Cook and Jones provided, within 3 hours of an early morning request from Appellee Whitsett (at Appellee Keel's behest), an emailed unofficial and unpublished "amended opinion," with knowledge that Appellees SLED, DAG and the Department of Forestry intended to

use such as justification for seizing and destroying Pendarvis' hemp crop without due process that same day.

### B.  Pendarvis has a Suffered Redressable Injury-in-Fact.

The SCAG Appellees go to great lengths to cite case law to support the assertion that authoring of Attorney General opinions cannot qualify as a wrongful action and how any alleged injury from their conduct in issuing the Attorney General opinions is "too remote." (SCAG Appellees' Brief pp. 10-11). These arguments all ignore the factual allegations of the complaint(s) in their entirety, which include facts beyond the authoring of Attorney General opinions.

Pendarvis does not allege it was any advice rendered in the opinions themselves that harmed him: rather it was the SCAG Appellees' willingness to issue informal, unofficial and unpublished "amended opinions" via email, to specifically support a known attempt and effort by the SLED Appellees to circumvent due process, knowing such attempts had previously been rejected by a judge, that contributed to the constitutional violations he suffered. (JA077-079, JA080-084, JA132-133, JA136, JA141, JA153-154, JA162-164, JA193-194, JA200-205, JA288-289, JA309, JA361-363).

Further, the SCAG Appellees continued their harmful conduct by aiding and abetting the SLED Appellees' attempts to hide their conduct, violating Pendarvis's known constitutional rights <u>after</u> September 19, 2019, including these Appellees'

extrajudicial communications and statements to the press. (JA044, JA094-095, JA118, JA142, JA365).

As the complaint(s) allege, the SCAG Appellees' conspiracy with the SLED Appellees began through emails and telephone communications that started in the early morning hours of September 19, 2019, the day the Plaintiff was arrested and his hemp crop was destroyed. (JA083-084, JA134-137, JA362-363). Within 30 minutes of Appellee Whitsett informing Appellee Cook that Appellee Keel "had an update the Chief wants me to discuss," Appellee Whitsett was sharing with Appellee Cook SLED's "Plan for Destruction of Hemp Field in Dorchester Co – Trent Pendarvis," which Appellee Cook subsequently shared with Appellee Jones. (JA084, JA135, JA192-193, JA288, JA362).

For the SCAG Appellees to argue Pendarvis's injury is "too remote" from this challenged conduct, they have to ignore that the SLED Appellees literally "updated" them on their "plan for destruction," that the SCAG Appellees themselves had explained in the August 8th Opinion the constitutional injury that would follow from not affording Pendarvis his due process rights, and the SLED Appellees informed Appellee Jones and Appellee Cook that Judge Goodstein had refused to authorize the seizure and destruction of Pendarvis's hemp crop. (JA077-079, JA080-084, JA132-133, JA136, JA141, JA153-154, JA162-164, JA193-194, JA200-205, JA288-289, JA309, JA361-363).

Evincing the abnormality of the September 19, 2019, emailed unofficial and unpublished "amended opinion," <u>after</u> Pendarvis was arrested, his Dorchester hemp crop destroyed without due process and the benefit of counsel, the SCAG and SLED Appellees conspired to cover-up their conduct. Documents Pendarvis had to obtain via a subpoena *duces tecum* to SCAG in the Dorchester County Civil Case (notably never identified or produced by SLED in the state court discovery), show an official request for an amended opinion was not even generated by Appellee Keel until September 23, 2019, and not received by SCAG and Appellee Cook until September 25, 2019. (JA156-158, JA196-197).

Email communications show on September 26, 2019, Appellee Young relayed that Appellee Keel "really needs our help" on the injunctive and declaratory relief action Pendarvis brought in Marion County against Appellees Wilson, Cook, Smith, Lynch, Kirkland, and Vorberger. (JA178-184). As the SCAG Appellees communicated about that request, Appellee Cook shared the August 8, 2019 email he and Appellee Jones had created at the request of Appellees Whitsett and Keel with Appellee Smith, who wanted to share that email with Appellees Kirkland and Vorberger, with Appellee Cook approving that request. (JA166). It was <u>then</u> that Appellees Jones and Cook prepared a formal Attorney General opinion which was eventually made available to the public as the September 30, 2019, Attorney General opinion. *Op. S.C. Att'y. Gen.*, 2019 WL 5089743 (Sept. 30, 2019). (JA168-176).

Notably absent from the September 30th Attorney General Opinion issued by Appellees Cook and Jones, but present in Appellee Keel's "official request," is any reference to SCAG issuing a previous "amended opinion" via email. (JA156-157, JA173-176).[4] It is a reasonable inference Appellees Cook and Jones willfully and intentionally omitted any reference to the "amended opinion" to hide their conduct.

The SCAG Appellees quote this Court in *Swanson v. Powers*, 937 F.2d 965, 969 (4th Cir. 1991): "[a]bsent extraordinary circumstances…liability will not attach for executing the statutory duties one was appointed to perform…". (SCAG Appellees' Brief p. 8 n. 2).[5] The factual allegations of Pendarvis's complaint(s), and the conduct described above, document that "extraordinary circumstances" are present in his case. Specifically, the SCAG Appellees: (a) acknowledged and warned the SLED Appellees of the likelihood of constitutional injury to Pendarvis if certain procedural constitutional safeguards were not followed; (b) were informed by the SLED Appellees that they attempted to circumvent those procedural constitutional safeguards, but a judge had denied that circumvention; (c) that the SLED Appellees

---

[4] Appellee Keel's "official request" (which was improperly withheld from discovery in the collateral state court litigation and only obtained via a subpoena *duces tecum* to SCAG), states: "On Thursday, September 9, 2019, your office acknowledged in an email…" (JA157, JA197). Pendarvis believes the "9" to be a scrivener's error, and would note SCAG's September 30, 2019, opinion quotes directly from that page of Appellee Keel's official request, stopping right before the mention of the email.

[5] Removed via ellipsis from this quotation (after "circumstances") is the phrase: "which are not present here".

were requesting assistance from the SCAG Appellees to move forward with circumventing those procedural constitutional safeguards; (d) that Appellees Cook and Jones assisted the SLED Appellees in circumventing those procedural constitutional safeguards, doing so in a manner outside the ordinary procedures and publications of advisory opinions; (e) that the known and predicted constitutional injury subsequently followed and upon receiving notice that SLED's constitutionally harmful conduct was being challenged, Appellees Cook and Jones sought to hide their conduct that had aided and abetted SLED by generating a formal advisory opinion and doing so in concert with Appellees Smith, Kirkland, and Vorberger's attempts to "help" Appellee Keel respond to the legal challenges to that constitutionally harmful conduct continuing in Marion County; (f) all of which was known by Appellees Young, Lynch, and Wilson.

The SCAG Appellees took these actions and then said nothing further about their conduct on September 19, 2019, despite learning that Pendarvis and the Marion County court had never been provided information about their September 19, 2019, emailed "amended opinion" or the September 30, 2019, formal opinion. (JA092, JA184-185, JA222).

This appeal involves facts which would comprise the "extraordinary circumstances" that the *Swanson* court was referring to and for which a state actor <u>can</u> be held liable, even if executing statutory duties. *See Garraghty v. Virginia Dep't*

*of Corr.*, 52 F.3d 1274, 1282-1284 (4th Cir. 1995) (affirming District Court's decision denying qualified immunity to high level administrators).

The SCAG Appellees cite *Buschi v. Kirven*, 775 F.2d 1240, 1250 (4th Cir. 1985) in their standing/redressability arguments. *Buschi* holds, *inter alia*, that an attorney who offers advice without malice and in good faith may not be liable, is derived from *Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057 (2nd Cir. 1977), which found that "while an attorney is privileged to give honest advice, even if erroneous, and generally is not responsible for the motives of his clients, admission to the bar does not create a license to act maliciously, fraudulently, or knowingly to tread upon the legal rights of others." *Newburger* at 1080. The Second Circuit upheld the district court's finding of liability against the attorney in *Newburger* for violating that standard.

The question of whether or not the SCAG Appellees' conduct was in "good faith" is a question of fact to be determined by a jury, as the factual allegations pled could lead a reasonable jury to find that conduct was not done in the good faith of just "doing their jobs," but rather in bad faith, to assist the SLED Appellees with violating the specific constitutional rights the SCAG Appellees knew, and warned, such action would endanger, then later obstructing justice by conduct meant to hide SCAG's involvement with the seizure/destruction on September 19, 2019.

The SCAG Appellees' argument that a favorable decision for Pendarvis would not redress the injury he suffered, appears to be based on the notion that had Appellees Cook and Jones not conspired with Appellees Whitsett and Keel via the emailed "amended opinion," SLED would have continued forward with arresting Pendarvis and destroying his crop, arguing that SLED possesses "exclusive jurisdiction and authority" over "general criminal investigations." (SCAG Appellees' Brief pp. 10-11).

*First*, this argument ignores that unlike a municipality seeking an opinion from the Attorney General's office, these opinions were sought by state law enforcement. Pursuant to Art. V, Sec. 24 of the South Carolina Constitution, Appellee Wilson has supervisory authority over SLED's criminal cases.[6]

*Second*, this argument ignores the factual allegations of the complaint and the reasonable inferences those allegations give rise to: that a reasonable jury could conclude that had Appellees Cook and Jones refused to email an informal, unofficial and unpublished "amended opinion" that morning, SLED's "plan for destruction," would not have gone forward.

---

[6] Appellee Wilson and the SCAG Appellees should be familiar with this supervisory authority, as it was an issue in litigation over Appellee Wilson's recusal in *Pascoe v. Wilson*, 416 S.C. 628, 788 S.E.2d 686 (2016).

It is clear from the plead factual allegations how important SCAG's role was in the "plan" going forward on September 19, 2019. It was important enough that the SLED Appellees told the DAG Appellees that they were "having to get AG opinions along the way" specifically for the "legal cover" Pendarvis alleges, to avoid being "perceived in a negative light by the media or general assembly." (JA044, JA094, JA118, JA142, JA237, JA265, JA358). It was important enough that Appellee Whitsett needed to "update" the SCAG Appellees at 7:20 in the morning to get them to "amend" their opinion. (JA083-084, JA362). SCAG's assistance was so vital, that Appellee Keel subsequently requested a "formal" opinion on September 23, 2019, from Appellee Wilson, specifically claiming that "SLED attempted to secure an order of destruction from a circuit court as discussed in the August opinion; however, the court would not entertain such." (JA133, JA174, JA196, JA212). That request ultimately led to an official "amended" opinion by the SCAG Appellees dated September 30, 2019,[7] all of which allowed Appellee Keel to attempt to influence public opinion by commenting to the media "his agency sought proper legal advice before taking action in every step of the case." (JA095, JA142).

---

[7] Unlike the unofficial and unpublished emailed "amended" opinion of September 19, 2019, the "formal" amended AG opinion of September 30, 2019, is an official Attorney General Opinion publicly reported and available through the SCAG website and Westlaw. *See Op. S.C. Att'y. Gen.*, 2019 WL 5089743 (Sept. 30, 2019).

In short, the SCAG Appellees' claim the Attorney General and staff thus have no power to control SLED's discretion regarding criminal enforcement ignores both Appellee Wilson's legal authority under the South Carolina Constitution, the factual allegations pled in the complaint(s) and the reasonable inferences arising therefrom.

Redressability is present if it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *J.W. v. Knight*, 452 Fed. Appx. 411, 414 (4th Cir. 2011). In the present case, the injury has already occurred and is redressable by a favorable decision awarding damages. *See Charter Sch. Fund v. City of Desoto*, 2021 U.S. Dist. LEXIS 55794, *27 (N.D. Tex., March 3, 2021). As such, Pendarvis has adequately pled an injury-in-fact causally related to the SCAG Appellees' conduct.

### C.    Appellees are not entitled to any form of immunity.

The SCAG Appellees begin their arguments for immunity by claiming they are entitled to absolute immunity. Government officials "bear the burden of showing that public policy requires an exemption from suit." *Cleavinger v. Saxner*, 474 U.S. 193 (1985). The actions of prosecutor are not absolutely immune merely because they are performed by a prosecutor. Qualified immunity "represents the norm" for executive officers. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

A prosecutor bears the heavy burden of establishing entitlement to absolute immunity. In light of the Supreme Court's "quite sparing" recognition of absolute

13

immunity to 42 U.S.C. § 1983, a court begins with the presumption that qualified rather than absolute immunity is appropriate. *Odd v. Malone*, 538 F.3d 202, 207-08 (3rd Cir. 2008) (citing to *Carter v. City of Philadelphia*, 181 F.3d 339, 355 (3rd Cir. 1999) and *Burns v. Reed*, 500 U.S. 478, 486-87 (1991).

### 1. Quasi-Judicial & Prosecutorial Absolute Immunity does not apply.

The SCAG Appellees argue they are entitled to quasi-judicial immunity for issuing advisory opinions and deciding whether to represent state officers.[8] These arguments ignore that the actual conduct complained of includes conduct alleging the SCAG Appellees furthered the harm to Pendarvis through attempts to spin public perception and control the media narrative about Pendarvis's arrest and the destruction of his hemp crop. (JA044, JA094-095, JA118, JA142, JA365). This is conduct wholly unrelated to the SCAG Appellees "simply doing their jobs" of issuing advisory opinions, deciding whether to represent state officers, or in a role as advocates for the state as the SCAG Appellees argue.

---

[8] Pendarvis would note the factual allegations detailing the SCAG Appellees' conduct <u>after</u> the September 19, 2019, arrest and destruction of the hemp crop are not offered to allege that the SCAG Appellees harmed him in considering to represent SLED. Rather, they are offered to show the knowledge the SCAG Appellees had and their continued conduct in furtherance of denying Pendarvis due process and obstructing justice <u>after</u> he had been arrested and his hemp crop destroyed, by hiding the nature and extent of their involvement in aiding and abetting the SLED Appellees in seizing and destroying his crop.

The SCAG Appellees contradict themselves with their absolute immunity argument. On one hand, they argue Pendarvis's claims cannot succeed due to a lack of redressability, as they had no power to control SLED's discretion regarding criminal enforcement. (SCAG Appellees' Brief pp. 14-15). Now, they argue they should enjoy an immunity based upon the idea that they "exercise a discretion similar to exercised by judges." *McCray v. Maryland*, 456 F.2d 1, 3 (4th Cir. 1972).[9]

The SCAG Appellees seek to have their cake and eat it too, arguing on one hand, their opinions had no significance in this case, but on the other hand, comparing themselves to a judge, exercising their discretion to render a decision akin to a court order. The SCAG Appellees make this argument while also arguing that they had no discretion in issuing the opinions, claiming under S.C. Code § 1-7-110 directs the SCAG Appellees to issue opinions. (SCAG Appellees' Brief p. 7).[10]

---

[9] The SCAG Appellees' argument also ignores the factual record in this case, which shows the SLED Appellees admitting, to the DAG Appellees, the necessity of obtaining "specific guidance…on the proper procedure in this matter" from the SCAG Appellees before instigating enforcement action. (JA045, JA047-048, JA119, JA359).

[10] Pendarvis would note the blatant contradiction in the SCAG Appellees arguing they are entitled to quasi-judicial immunity, while also arguing for prosecutorial immunity, because the Attorney General is the chief prosecuting officer of the State of South Carolina for both criminal and civil proceedings. (SCAG Appellees' Brief p. 13) Arguing both positions is in direct violation of the South Carolina Constitution. *See* S.C. Const. Art. I Sec. 22 ("No person…shall…be subject to the same person for both prosecution and adjudication…") (emphasis added).

The SCAG Appellees ignore that just because they may typically be "prosecutors" and the official opinions they issue are "legal advice," Courts recognize that does not automatically entitle them to absolute immunity. "A prosecutor is not entitled to absolute immunity when providing police advice during a criminal investigation." *Safar v. Tingle*, 859 F.3d 241, 249 (4th Cir. 2017) (citing *Burns v. Reed*, 500 U.S. 259, 273 (1993)).

Judicial or "quasi-judicial" immunity attaches to actions "intimately associated with the judicial phases of litigation." *Giuffre v. Bissel*, 31 F.3d 1241, 1251 (3rd Cir. 1994) (*quoting Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Issuing an advisory opinion is not intimately associated with the judicial phase of any litigation. In fact, Appellees Jones and Cook noted in the September 30, 2019, Attorney General opinion, "this opinion is not an attempt to comment on any pending litigation or criminal proceeding."[11] (JA175, JA213). *Op. S.C. Att'y. Gen.*, 2019 WL 5089743 (Sept. 30, 2019).

Conversely, where an official is not called upon to exercise judicial or quasi-judicial discretion, courts have "properly refused to extend to him the protection of absolute judicial immunity, regardless of any apparent relationship of his role to the

---

[11] Pendarvis argues that particular statement within the opinion supports a reasonable inference of bad faith, as the record shows the September 30, 2019, opinion was generated in direct response to pending criminal and civil matters involving Pendarvis and at Appellee Keel's specific request for "help" in those matters.

16

judicial system." *McCray*, 456 F.2d at 3-4.

The SCAG Appellees ignore that some of their alleged harmful conduct can in no way be considered quasi-judicial or prosecutorial conduct. Specifically, the complaint(s) plead factual allegations concerning extrajudicial statements to the media (JA044, JA094-095, JA118, JA142, JA365), which is conduct that the South Carolina Rules of Professional Conduct specifically exclude from being acceptable conduct by a prosecutor (and would similarly be unacceptable conduct by anyone in a quasi-judicial role). *See* Rule 3.8(f), RPC, Rule 407, SCACR.

In short, none of the conduct complained of against the SCAG Appellees involves direct advocacy at trial or is closely associated with any judicial phases of litigation, be it civil or criminal. In fact, the SCAG Appellees' conduct in this case specifically provided an avenue for the SLED Appellees to violate Pendarvis's constitutional rights outside of any judicial phase.

"When it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or administrative role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Hill v. City of New York*, 45 F.3d 653, 663 (2nd Cir. 1995) (emphasis added).

### 2. The Appellees' misconduct is not protected by Qualified Immunity.

This Court has noted that officials are likely <u>not</u> entitled to qualified immunity when the officials conduct knowingly violated the law or constituted deliberate indifference. In *Thompson v. Virginia*, this Court suggested the court may skip the "clearly established" prong of the qualified immunity analysis in the event of an "officer's knowing violations of the law" because it is "per se unreasonable." 878 F.3d 89, 97 n.3 (4th Cir. 2017). "If there are genuine issues of fact concerning a defendant's deliberate indifference, the 'defendant may not avoid trial on the grounds of qualified immunity'." *Cox v. Quinn*, 828 F.3d 227, 238 n.4 (4th Cir. 2016). The United States Supreme Court has specifically recognized the importance of drawing inferences in favor of the non-movant in qualified immunity cases, and allowing cases presenting questions of material fact to proceed. *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014).

The facts pled in Pendarvis's complaint(s) establish there is a genuine issue of material fact that the SCAG Appellees, and the other Appellees, knowingly violated the law. Through their own August 8th opinion, the SCAG Appellees made it clear to all Appellees that engaging in the very conduct they subsequently conspired to facilitate could violate Pendarvis's constitutional rights. Further, as pled in the complaint(s), the SCAG Appellees had knowledge that the Chief Administrative Judge for Dorchester County had refused to authorize the destruction

18

of Pendarvis's hemp crop without a hearing. (JA084-085, JA135-136, JA139-142, JA365, JA384-385). Those factual allegations support a reasonable inference of "knowing violations of the law" and deliberate indifference.

The SCAG Appellees cite to *Campbell v. Florian*, 972 F.3d 385 (4th Cir. 2020) arguing that they should be awarded qualified immunity. (SCAG Appellees' Brief p. 16-17). However, *Campbell* – where this Court found the attorney had approached relevant statutory interpretation questions "as a careful attorney would" – is factually distinct from this case. Unlike *Campbell*, Appellees Cook and Jones threw their careful analysis out the window, going outside the official and formal opinion process, to provide the SLED Appellees emailed unofficial and unpublished legal justification to move forward with what Appellees Cook and Jones knew would be constitutionally violative conduct that a South Carolina Circuit Court judge had already refused to approve. They then conspired with their fellow SCAG Appellees and the SLED, DAG and DCSO Appellees in hiding from Pendarvis and the courts the extent of their involvement on September 19, 2019. Additionally, the extrajudicial efforts to influence media coverage by Appellees Cook, Young, and Kittle fall well outside of any role as a prosecutor or "quasi-judicial" official. (JA044, JA094-095, JA118, JA142, JA365).[12]

---

[12] To the extent SCAG Appellees are attempting to deny there are specific allegations against Appellee Kittle, Pendarvis would note Appellee Kittle is SCAG's

All of the above shows that genuine issues of material fact exist as to whether the Appellees violated Pendarvis's clearly established rights, rendering Qualified Immunity inapplicable. This is hardly a "bad guess in a gray area" (Non-SCAG Appellees' Brief p. 35).

**D.    Pendarvis's claims against the SCAG Appellees are sufficient under *Twombly/Iqbal*.**

The SCAG Appellees argue Pendarvis's complaint(s) fail to meet the *Twombly/Iqbal* standard. (SCAG Appellee's Brief p. 17). To the extent this argument (which requests dismissal with prejudice) is even before this Court, this argument ignores the *Twombly/Iqbal* standard, which only requires a complaint "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007).

The complaint(s) document in detail the communications between the SCAG Appellees themselves, and between the SCAG Appellees and the SLED Appellees, by pleading §1983 causes of action for violations of due process rights arising from unreasonable searches/seizures, bystander liability, supervisory liability and conspiracy. The factual allegations specify the persons who engaged in/agreed to the

---

spokesperson (JA141, JA332) a fact Appellee Kittle should be well aware of since he is SCAG's Communications Director and was involved in those email discussions with Appellees Cook and Young. (JA188, JA190, JA192, JA225, JA227, JA229).

conspiracy, specific communications between the conspirators, the manner in which the communications were made, as well as persons who had knowledge of the conspiracy and failed to stop it, the communications through which their knowledge is memorialized, and acts/omissions taken by specific persons to hide information of the conspiracy and/or protect themselves and/or others from liability from the harmful conduct engaged in by themselves and others.

Conspiracy claims fail when plaintiffs fail to allege *any* factual content or with any specificity "the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made." *TechINT Sols. Grp., LLC v. Sasnett*, 2019 U.S. Dist. LEXIS 106416, *8-9 (W.D. Va., June 26, 2019) (citing *Darton Env'tl, Inc. v. FJUVO Collections, LLC*, 332 F.Supp.3d 1022, 1036 (W.D. Va. 2018). Given the clandestine nature of a conspiracy, moreover, often the evidence of agreement or concerted action "may be inferred from the things actually done." *Frey & Son, Inc. v. Cudahy Packing Co.*, 256 U.S. 208, 219 (1921); *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 289-90 (4th Cir. 2012) (concluding that where actions were actually taken in concert, it is not necessary to present other evidence of an agreement). To suffice, the allegations must simply "reasonably lead to the inference that he alleged conspirators positively or tacitly came to a mutual

understanding to try to accomplish a common and unlawful plan." *Fed. Ins. Co. v. Locash*, No. 2:12cv504, 2014 WL 12588635, at *9 (E.D. Va. Feb. 18, 2014).

Based on the above argument and the specific citations below, Pendarvis's complaint(s) meet the *Twombly/Iqbal* standard:

> **1.      Pendarvis's cause of action under 42 U.S.C. § 1983 for violation of his due process rights through the unreasonable seizure and unlawful taking against the SCAG Appellees is sufficient**

Contrary to the case law the SCAG Appellees cite (SCAG Appellees' Brief pp. 17-18), the conduct of Appellees Cook and Jones, as pled in the complaint(s), shows their personal involvement in the seizure and destruction of his Dorchester County hemp crop. Specifically, in a footnote to the language the SCAG Appellees quote from *Gladu*, the Maine District Court noted:

> Plaintiff does not allege any details that would support a finding that there was: (1) a **bad-faith effort or motive to advise**, (2) a special relationship between the attorney and the defendants that would make an inference of more direct personal involvement, such as the prosecutor-police relationship for certain investigatory activities, *See Burns v. Reed*, 500 U.S. 478, 496 (1991) (concluding that when providing certain advice to police, prosecutors have qualified but not absolute immunity from liability), or (3) a **theory of liability based not on good faith legal advice** but rather some other conduct of an attorney, *see, e.g., Miller v Hamm*, No. CIV. CCB-10-243, 2011 U.S. Dist. LEXIS 141, at *15 (D. Md. Jan. 3, 2011) ("[Plaintiff] does not argue the [attorneys] are liable as a result of legal advice provided to the [defendants]. Instead, he contends [the attorneys] received the plaintiff's request for a name-clearing hearing and opted to ignore it without referring it" to the proper officials")…

*Gladu v. Magnusson*, 2022 U.S. Dist. LEXIS 218093, *4, n.1 (D. Me. Dec. 5, 2022) (emphasis added).

Pendarvis's complaint(s) specifically detail the level of personal involvement of Appellees Cook and Jones in the events of September 19, 2019, involvement without which, given the other factual allegations within the complaint, there is a reasonable inference to assume Pendarvis's Dorchester hemp crop would <u>not</u> have been seized and destroyed and upon which a reasonable juror could find Appellees Cook and Jones did <u>not</u> give "good faith" legal advice.

> **2.    Pendarvis's cause of action under 42 U.S.C. § 1983 for violation of his due process rights through "Bystander Liability" against the SCAG Appellees is sufficient given the specific facts of this case**

The SCAG Appellees argue that they cannot be held liable under "bystander liability," citing to two district court opinions: *Murphy v. Fields*, 2018 WL 1449171 (D.S.C. Mar. 5, 2018) and *Hudler v. McAfee*, 2023 WL 1936351 (W.D. Tex. Feb. 10, 2023).

In *Murphy*, the "bystanders" were a teacher and school administrator, two persons with no legal authority invested in them by the state to enforce the law or <u>control</u> a duly appointed law enforcement officer who had such authority, the deputy sheriff who manhandled a student when called to the classroom by the teacher and administrator. In finding that the §1983 bystander liability claims against the teacher

and administrator should be dismissed, the Magistrate Judge in *Murphy* quoted from the Fourth Circuit case of *Randall* that bystander liability "is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." *Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 203 (4th Cir. 2013). The Magistrate Judge in *Murphy* could find no case where a "court extended bystander liability to school personnel…" *Murphy*, 2018 WL 1449171 at *7.

In *Hudler*, while finding that bystander liability could extend to an investigator for the District Attorney's office, the Magisrate Judge found whether "bystander liability applies to a district attorney is a closer call because the district attorney is not tasked with similar duties under Texas law." Because the plaintiff had identified no authority for extending bystander liability to district attorneys, the Magistrate Judge recommended dismissing the claims in that case. *Hudler*, 2023 WL 1936351 at *23.

Under Fourth Circuit precedent, to succeed on bystander liability, a plaintiff must demonstrate that a law enforcement officer: (1) knew that a fellow officer was violating an individual's constitutional rights; (2) had a reasonable opportunity to prevent that harm; and (3) chose not to act. *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 417 (4th Cir. 2014).

The specific facts in this case, showing the integral participation of the SCAG Appellees in the enforcement action against Pendarvis, along with the legal authority of the SCAG Appellees under the South Carolina Constitution[13] to control the SLED Appellees' criminal prosecutions <u>and</u> being the SLED Appellees' first call for "help" when their conduct was challenged, <u>and</u> the SLED Appellees' documented admission to relying on the SCAG Appellees to give them the "legal cover" Pendarvis has alleged, presents a situation supporting bystander liability claims against the SLED and SCAG Appellees.

> **3.    Pendarvis's cause of action under 42 U.S.C. § 1983 for violation of his due process rights through "Supervisory Liability" against the SCAG Appellees is sufficient**

Pendarvis's complaint(s) adequately plead factual allegations to support his supervisory liability §1983 causes of action against the SCAG Appellees. The three elements of a supervisory liability claim are: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) that there was an "affirmative causal link" between the supervisor's inaction

---

[13] S.C. Const. Art. 5 Sec. 24.

and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

The entire purpose of the SLED Appellees seeking the advice from the SCAG Appellees speaks to the "pervasive and unreasonable" risk of constitutional injury. The SLED Appellees made it known to the SCAG Appellees that they were relying on the SCAG Appellees to provide them with "specific guidance…on the proper procedure" with which to enforce "willful violations" of the Hemp Farming Act. (JA045, JA047-048, JA119, JA359). In providing that guidance, the SCAG Appellees acknowledged the risk of constitutional injury if their guidance was not followed, specifically the fundamental due process elements of notice and an opportunity to be heard. (JA45-49, JA119, JA359). The SCAG Appellees, through Appellees Jones and Cook, subsequently chose to aid and abet the SLED Appellees' circumvention of that very guidance meant to avoid constitutional injury, with supervisory agents within SCAG (Appellees Wilson, Young, Smith, Lynch, and Kittle) all becoming aware of Appellee Jones and Appellee Cook's conduct and not just condoning it, but actively assisting in efforts to hide that conduct, causing further constitutional injury to Pendarvis by obstructing justice in his civil litigation, conduct which has continued up through the present.

In short, these supervisors were not just aware of the constitutionally violative conduct, they actively participated in it, condoning it and sitting silent while the conduct was hidden from Pendarvis and the courts. This is actionable conduct.

### 4. Pendarvis's cause of action under 42 U.S.C. § 1983 for violation of his due process rights through "Conspiracy" against the SCAG Appellees is sufficient

Plaintiff addressed his conspiracy cause of action against the SCAG Appellees earlier in section D, and would reiterate that argument here. Addressing the SCAG Appellees' claim that Pendarvis has failed to allege any "overt act," Pendarvis would simply point to his allegations concerning the issuance of the unofficial, unpublished emailed "amended opinion" of September 19, 2019 (JA084-085, JA135-136) the allegations concerning the failure of the SCAG Appellees to speak up when they learned that September 19th conduct was not being disclosed (JA139-142, JA365, JA384-385), and the SCAG Appellees' attempts to aid and abet their co-defendant-appellees with the media (JA044, JA094-095, JA118, JA142, JA365).

*❧ remainder of page intentionally blank ❧*

## CONCLUSION

The Magistrate and District Court should be reversed.

Respectfully submitted,

Dated: 01/24/2025                                  /s/ Jason Scott Luck

Jason Scott Luck
P.O. Box 47
Bennettsville, SC 29512
843.479.6863

Charles Bradley Hutto
Williams and Williams
P.O. Box 1084
Orangeburg, SC 29116
803.534.5218

Patrick James McLaughlin
Wukela Law Firm
P.O. Box 13057
Florence, SC 29504
843.669.5150

*Counsel for Plaintiff-Appellant*

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. __24-6654__    **Caption:** Pendarvis v. Wilson, et al.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✔] this brief or other document contains _____6344_____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✔] this brief or other document has been prepared in a proportionally spaced typeface using
__MS WORD FOR MAC__ [*identify word processing program*] in
__14 PT TIMES NEW ROMAN__ [*identify font, size, and type style*];

**or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font, size, and type style*].

**NOTE: The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.**

(s) Jason Scott Luck

Party Name __Appellant John Trenton Pendarvis__    Date: __01/24/2025__

29

Print to PDF for Filing      Reset Form    12/09/2024 NA/MEO